# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- x
:
IN RE FOREIGN EXCHANGE      :
BENCHMARK RATES ANTITRUST   :   No. 1:13-cv-07789-LGS
LITIGATION                    :
:
:
:
:
:
:
----------------------------------------------------x


# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH JPMORGAN CHASE & CO. AND JPMORGAN CHASE BANK, N.A.

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................. 1

II.   SUMMARY OF CLAIMS, PROCEDURAL HISTORY, SETTLEMENT, AND THE
      SETTLEMENT NEGOTIATIONS ..................................................................................... 2

III.  THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO
      GRANT PRELIMINARY APPROVAL ............................................................................. 3

  A.  Standards for Preliminary Approval ................................................................................. 3

  B.  The Proposed Settlement Is Entitled to a Presumption of Fairness ................................... 4

  C.  The Settlement Is Substantively Fair ................................................................................ 5

     1.   The Complexity, Expense, and Likely Duration of the Litigation ................................. 6

     2.   The Reaction of the Class to the Settlement ............................................................... 7

     3.   The Stage of the Proceedings .................................................................................... 7

     4.   The Risks of Establishing Liability and Damages ......................................................... 9

     5.   The Risks of Maintaining the Class Action Through Trial .......................................... 11

     6.   The Ability of Defendants to Withstand a Greater Judgment ..................................... 11

     7.   The Reasonableness of the Settlement in Light of the Best Possible Recovery and the
          Attendant Risks of Litigation ................................................................................. 12

IV.   CERTIFICATION OF THE SETTLEMENT CLASS UNDER FEDERAL RULE OF
      CIVIL PROCEDURE 23 IS APPROPRIATE .................................................................. 16

  A.  Plaintiffs Satisfy the Rule 23(a) Requirements ............................................................. 16

     1.   Rule 23(a)(1) – Numerosity .................................................................................... 17

     2.   Rule 23(a)(2) – Commonality .................................................................................. 18

     3.   Rule 23(a)(3) – Typicality ...................................................................................... 19

     4.   Rule 23(a)(4) – Adequacy ...................................................................................... 20

  B.  Plaintiffs Satisfy the Rule 23(b)(3) Requirements ......................................................... 21

     1.   Common Questions of Law or Fact Predominate ...................................................... 21

     2.   A Class Action Is Superior to Other Available Methods for the Efficient Adjudication
          of This Controversy .............................................................................................. 23

  C.  The Court Should Appoint Lead Counsel as Counsel for the Class ................................. 24

V.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
      NOTICE TO THE CLASS ............................................................................................... 24

VI.   THE COURT SHOULD APPOINT THE HUNTINGTON NATIONAL BANK AS
      ESCROW AGENT ........................................................................................................... 26

VII.   THE COURT SHOULD APPROVE LEAD COUNSEL'S SELECTION OF KENNETH
       R. FEINBERG AS THE SETTLEMENT ADMINISTRATOR AND HEFFLER CLAIMS
       GROUP AS THE CLAIMS ADMINISTRATOR ............................................................. 27

VIII.  THE PLAN OF DISTRIBUTION .................................................................................... 27

IX.    PROPOSED SCHEDULE ............................................................................................... 28

X.     CONCLUSION ............................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09-CV-230, 2011 WL 1706778 (D. Vt. May 4, 2011) .................................................3

*Amchem Prods, Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231 (1997)................................................................16, 17, 22, 24

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*,
  133 S. Ct. 1184 (2013)..........................................................................................................21

*Bolanos v. Norwegian Cruise Lines Ltd.*,
  212 F.R.D. 144 (S.D.N.Y. 2002) ..........................................................................................19

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. 2006) ..........................................................................................17

*Buxbaum v. Deutsche Bank AG*,
  216 F.R.D. 72 (S.D.N.Y. 2003) ......................................................................................25, 26

*Capsolas v. Pasta Res. Inc.*,
  No. 10-CV-5595 RLE, 2012 WL 1656920 (S.D.N.Y. May 9, 2012).......................................5

*Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*,
  No. 85 CIV. 3048 (JMW), 1987 WL 7030 (S.D.N.Y. Feb. 13, 1987) ....................................11

*Charron v. Pinnacle Grp. N.Y. LLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731 F.3d
  241 (2d Cir. 2013)..................................................................................................................10

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).............................................................................................6, 13

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y. 2009) ..........................................................................................16

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426, 185 L.Ed.2d 515 (2013)..............................................................................11

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)....................................................................................................17

*D'Alauro v. GC Servs. Ltd. P'ship*,
  168 F.R.D. 451 (E.D.N.Y. 1996)...........................................................................................20

*Dziennik v. Sealift, Inc.*,
  No. 05-CV-4659 (DLI), 2007 WL 1580080 (E.D.N.Y. May 29, 2007)................................20

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................11

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982)........................................................................................20

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..............................................................................6

*Gross v. Washington Mut. Bank, F.A.*,
  No. 02 CV 4135 (RML), 2006 WL 318814 (E.D.N.Y. Feb. 9, 2006)......................................5

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) .....................................................................12

*In re Agent Orange Prod. Liab. Litig. MDL No. 381*,
  818 F.2d 145 (2d Cir. 1987)............................................................................28

*In re Alcoholic Beverages Litig.*,
  95 F.R.D. 321 (E.D.N.Y. 1982) ........................................................................21

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................7, 8, 13

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)....................................................................4

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012)..................................................................13

*In re Blech Sec. Litig.*,
  187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................23

*In re Corrugated Container Antitrust Litig.*,
  No. M.D.L. 310, 1981 WL 2093 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th
  Cir. 1981) ....................................................................................9, 14, 15

*In re Corrugated Container Antitrust Litigation*,
  659 F.2d 1322 (5th Cir. 1981) ........................................................................13

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) .......................................................................20

*In re Currency Conversion Fee Antitrust Litig.*,
  No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ............................................3

*In re Fine Paper Antitrust Litig.*,
 No. MDL 323, 1979 WL 1743 (E.D. Pa. Oct. 2, 1979)..........................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
 574 F.3d 29 (2d Cir. 2009)..........................................................................................................19

*In re Flat Glass Antitrust Litig.*,
 191 F.R.D. 472 (W.D. Pa. 1999) ...............................................................................................18

*In re Folding Cartons Antitrust Litig.*,
 75 F.R.D. 727 (N.D. Ill. 1977)...................................................................................................22

*In re Global Crossing Sec. and ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................................18

*In re High-Tech Employee Antitrust Litig.*,
 No. 11-CV-2509-LHK, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)...................................15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
 210 F.R.D. 476 (S.D.N.Y. 2002) ...............................................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
 226 F.R.D. 186 (S.D.N.Y. 2005) .................................................................................11, 15, 17

*In re Ionosphere Clubs, Inc.*,
 156 B.R. 414 (S.D.N.Y. 1993)....................................................................................................12

*In re Linerboard Antitrust Litig*,
 292 F. Supp. 2d 631 (2003) .................................................................................................14, 15

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
 No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..........................25, 26

*In re Master Key Antitrust Litig.*,
 70 F.R.D. 23 (D. Conn. 1975).....................................................................................................22

*In re Masters Mates & Pilots Pension Plan and IRAP Litig.*,
 957 F.2d 1020 (2d Cir.1992)..........................................................................................................4

*In re Mercedes-Benz Antitrust Litig.*,
 213 F.R.D. 180 (D.N.J. 2003).....................................................................................................19

*In re Michael Milken and Assocs. Sec. Litig.*,
 150 F.R.D. 57 (S.D.N.Y. 1993) ....................................................................................................5

*In re Mid-Atl. Toyota Antitrust Litig.*,
 564 F. Supp. 1379 (D. Md. 1983) ..............................................................................................15

*In re NASDAQ Market-Makers Antitrust Litig.*,
169 F.R.D. 493 (S.D.N.Y.1996) ("*Nasdaq I*") .......................................................18, 19, 20, 22

*In re NASDAQ Market-Makers Antitrust Litig.*,
No. 94 Civ. 3996, 1999 WL 395407 (S.D.N.Y. June 15, 1999)..............................................25

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................................3, 14

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................................. *passim*

*In re Oxford Health Plans, Inc. Sec. Litig.*,
191 F.R.D. 369 (S.D.N.Y. 2000) ...........................................................................................18

*In re Packaged Ice Antitrust Litig.*,
No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)...................................14, 15

*In re PaineWebber Ltd. P'hips Litig.*,
171 F.R.D. 104 (S.D.N.Y.) ......................................................................................................4

*In re Partsearch Technologies, Inc.*,
453 B.R. 84 (2011)..................................................................................................................8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...........................................................................6, 7, 9

*In re Platinum and Palladium Commodities Litig.*,
No. 10CV3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014)..................................................4

*In re Playmobil Antitrust Litig.*,
35 F. Supp. 2d 231 (E.D.N.Y. 1998) ................................................................................19, 20

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 607 (M.D. Pa. 2008) ..............................................................................12, 14

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) .........................................................................1, 18, 26

*In re Ready-Mixed Concrete Antitrust Litig.*,
261 F.R.D. 154 (S.D. Ind. 2009).............................................................................................19

*In re Salomon Analyst Metromedia Litigation*,
544 F.3d 474 (2d Cir. 2008)....................................................................................................21

*In re Stock Exchanges Options Trading Antitrust Litig.*,
No. 99 CIV.0962(RCC), 2005 WL 1635158 (S.D.N.Y. July 8, 2005)....................................3

*In re Tronox Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ..........................................................................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001), *overruled on other grounds by In re Initial Public*
    *Offerings Sec. Litig.*, 471 F. 3d 24 (2d Cir. 2006) ................................................21

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ......................6

*In re Warner Chilcott Ltd. Sec. Litig.*,
    No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)............................5

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985)........................................................................10

*Jennings Oil Co., Inc. v. Mobil Oil Corp.*,
    80 F.R.D. 124 (S.D.N.Y. 1978) ..........................................................................22

*Kromer v. Saks & Co.*,
    No. 77 Civ. 2914, 1977 WL 1513 (S.D.N.Y. Dec. 8, 1977)...................................22

*Larsen v. JBC Legal Group, P.C.*,
    235 F.R.D. 191 (E.D.N.Y. 2006) ........................................................................21

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)...........................................................................18, 20

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) ...........................................................................10

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010)........................................................................4, 26

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)................................................................................12

*Park v. The Thomson Corp.*,
    No. 05 CIV.2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008)....................9, 10, 11

*Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.*,
    No. 08-CV-42 JG VVP, 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ...............................28

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ........................................................................5, 7

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)................................................................................19

*Shelter Realty Corp. v. Allied Maint. Corp.*,
   75 F.R.D. 34 (S.D.N.Y. 1977) ...................................................................................21, 22

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011)...............................................................................................22

*U.S. Football League v. Nat'l Football League*,
   644 F. Supp. 1040 (S.D.N.Y. 1986), *aff'd*, 842 F.2d 1335 (2d Cir. 1988) ............................10

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
   257 F.3d 256 (2d Cir. 2001)..................................................................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................................3, 25

*Weber v. Gov't Emps. Ins. Co.*,
   262 F.R.D. 431 (D.N.J. 2009)...............................................................................................12

*Weil v. Long Island Sav. Bank, FSB*,
   200 F.R.D. 164 (E.D.N.Y. 2001) ........................................................................................18

*Weseley v. Spear, Leeds & Kellogg*,
   711 F. Supp. 713 (E.D.N.Y. 1989) ........................................................................................6

STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 ...............................................................................................................16, 25
   Rule 23(a)..................................................................................................16, 20, 21
   Rule 23(a)(1)........................................................................................................17
   Rule 23(a)(2)........................................................................................................18
   Rule 23(a)(3)..................................................................................................19, 20
   Rule 23(a)(4)..................................................................................................20, 21
   Rule 23(b) .....................................................................................................16, 21
   Rule 23(b)(3)............................................................................................21, 23, 24
   Rule 23(c)(2)(B)...............................................................................................24, 26
   Rule 23(e)..........................................................................................................3, 25
   Rule 23(e)(1)...................................................................................................24, 26
   Rule 23(f).............................................................................................................6
   Rule 23(g)............................................................................................................24
   Rule 23(g)(1)(A)(i-iv).........................................................................................24
   Rule 23(g)(1)(B) .................................................................................................24

**PROLOGUE**

> Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class. In the circumstances of such a case as this, it may be preferable to take the bird in the hand instead of the prospective flock in the bush.

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (internal citations omitted).

# I.   INTRODUCTION

Plaintiffs[1] respectfully submit this memorandum in support of their motion for preliminary approval of the settlement ("Settlement") reached between Plaintiffs and defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPM," and together with Plaintiffs, the "Parties") in the above-captioned litigation (the "Action").[2]  If approved, the proposed Settlement, consisting of, among other things, $99,500,000 cash[3] and an agreement to provide significant cooperation to Class Plaintiffs in pursuing their case against the Non-Settling Defendants (the "Cooperation Provisions"),[4] will resolve this complex antitrust case against JPM.[5]   The claims asserted against the Non-Settling Defendants are not released by the Settlement and are being vigorously pursued by Plaintiffs.

---

[1]     Plaintiffs are Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System ("Haverhill"); Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Tiberius OC Fund, Ltd.; Value Recovery Fund L.L.C.; and United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund (collectively, "Plaintiffs" or "Class Plaintiffs").

[2]     Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Stipulation and Agreement of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., dated January 5, 2015 ("Stipulation").

[3]     The settlement amount is $99,000,000.  JPM is also required to pay $500,000 in notice and administration costs.

[4]     The Cooperation Provisions are found in paragraph 14 of the Stipulation.

[5]     The Non-Settling Defendants are Bank of America Corporation and Bank of America, N.A.; Barclays Bank PLC and Barclays Capital Inc.; BNP Paribas Group and BNP Paribas North America Inc.; Citigroup, Inc. and

Plaintiffs' motion seeks entry of an order: (i) granting preliminary approval of the proposed Settlement; (ii) certifying the putative Class for settlement purposes; (iii) approving the proposed form and manner of giving notice of the Settlement to the Class; (iv) approving Plaintiffs' choice of a Settlement Administrator, Claims Administrator, and Escrow Agent; and (v) setting a hearing date for final approval of the Settlement (the "Fairness Hearing") and a schedule for various deadlines relevant thereto ("Preliminary Approval Order").   As demonstrated below, the proposed Settlement is an excellent result for the Class, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants approval by this Court.

## II.   SUMMARY OF CLAIMS, PROCEDURAL HISTORY, SETTLEMENT, AND THE SETTLEMENT NEGOTIATIONS

The concurrently-filed declarations of Christopher M. Burke and Kenneth R. Feinberg in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (the "Burke Decl." and "Feinberg Decl.," respectively) are integral parts of this submission.   The Court is respectfully referred to the declarations for a summary of Plaintiffs' claims, the procedural history of the Action, the terms of the Settlement, and the settlement negotiations.

---

Citibank, N.A.; Credit Suisse Group AG and Credit Suisse Securities (USA) LLC; Deutsche Bank AG; The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.; HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., and HSBC Bank USA, N.A.; Morgan Stanley; Royal Bank of Scotland Group PLC and RBS Securities, Inc.; and UBS AG and UBS Securities LLC (collectively, the "Non-Settling Defendants," and together with JPM, "Defendants").

### III.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

#### A.    Standards for Preliminary Approval

"Rule 23(e) requires court approval of a class action settlement." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006).   "In determining whether to grant preliminary approval, the court starts with the proposition that 'there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.'"   *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).[6]   Settlements usually "advance the public interest because they minimize the expense of litigation, avoid the expenditure of judicial resources, and ensure injured parties' recoveries without the time, expense, and inconvenience of litigation." *Dairy Farmers*, 2011 WL 1706778, at *2.

"Preliminary approval is generally the first step in a two-step process before a class-action settlement is approved."   *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 CIV.0962(RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005).   "In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice." *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*Nasdaq II*"). "Once preliminary approval is bestowed, the second step of the process ensues:  notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *Id*.

In conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's

---

[6]     Unless otherwise noted, citations are omitted and emphasis is added.

substantive terms, *i.e.*, substantive fairness.'" *In re Platinum and Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).  Preliminary approval is appropriate where the settlement "'is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies . . . , and where the settlement appears to fall within the range of possible approval.'" *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 101 (D. Conn. 2010).  "The decision to grant or deny such approval lies squarely within the discretion of the trial court." *In re PaineWebber Ltd. P'hips Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y.); *In re Masters Mates & Pilots Pension Plan and IRAP Litig.*, 957 F.2d 1020, 1026 (2d Cir.1992).

As demonstrated below, the proposed Settlement merits preliminary approval because it is both procedurally and substantively fair.

### B.     The Proposed Settlement Is Entitled to a Presumption of Fairness

Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000).  Moreover, in such circumstances, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *PaineWebber*, 171 F.R.D. at 125.

Here, the Court previously found that Lead Counsel have the requisite class action and antitrust experience to lead this litigation on behalf the proposed Class (*see* ECF Nos. 96 and 145), and it cannot be disputed that JPM is represented by highly experienced and sophisticated counsel.  In addition, as the Feinberg Decl. makes clear, the negotiations took place over the course of several months, were at arm's-length, and settlement was only reached with the

assistance of a nationally-recognized mediator.  *See* Feinberg Decl., ¶¶6-7.   Under such circumstances, there is "a strong initial presumption that the compromise is fair and reasonable." *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Capsolas v. Pasta Res. Inc.*, No. 10-CV-5595 RLE, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.").

### C.      The Settlement Is Substantively Fair

"In terms of the overall fairness, adequacy, and reasonableness of the settlement, a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval."  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Although a complete analysis of [the *Grinnell*] factors is required for final approval, at the preliminary approval stage, 'the Court need only find that the proposed settlement fits within the range of possible approval to proceed.'").  Nevertheless, some courts have utilized the so-called *Grinnell* factors in assessing whether a proposed settlement merits preliminary approval.  *See Reade-Alvarez*, 237 F.R.D. at 34 ("At this stage, brief consideration of these factors leads to the conclusion that the proposed relief awarded to class members under the settlement is within the range of possible approval."); *Gross v. Washington Mut. Bank, F.A.*, No. 02 CV 4135 (RML), 2006 WL 318814, at *4-*5 (E.D.N.Y. Feb. 9, 2006).  The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible

recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

As discussed in detail below, each of the applicable *Grinnell* factors supports preliminary approval of the Settlement.

### 1.    The Complexity, Expense, and Likely Duration of the Litigation

Numerous courts have recognized that "'[f]ederal antitrust cases are complicated, lengthy . . . bitterly fought,' as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (antitrust class actions "are notoriously complex, protracted, and bitterly fought"). This case is no different. There is little doubt that, in this case, there will be discovery motions, summary judgment motions, *Daubert* motions, and a class certification motion. As to the class certification motion, the losing party would likely seek interlocutory review by the Second Circuit under Federal Rule of Civil Procedure 23(f), which would only cause further delay in resolving the litigation. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013) ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").

Furthermore, fact discovery will be protracted and expensive. This is especially true given that the Complaint makes allegations of wrongdoing against 11 Non-Settling Defendants (and their affiliates) over a 12-year class period, including conduct alleged to have occurred

overseas.  There will also be extensive expert discovery in light of the complex subject matter of

the litigation.  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y.

1998) ("*Nasdaq III*") ("The proof would involve the fixing of spreads, not on a single security

for a single discrete period, but the fixing of spreads varying from hour to hour or day to day

(over a period of 7 years) on 1,659 different securities.").

Finally, the trial of this action after completion of discovery would be lengthy and

difficult and would likely take several months.  *See Payment Card Interchange Fee & Merch.

Disc.*, 986 F. Supp. 2d at 212; *Nasdaq III*, 187 F.R.D. at 477 (estimating that trial could consume

over a year).  "The losing parties would likely appeal any adverse jury verdicts, thereby

extending the duration of litigation."  *Payment Card Interchange Fee & Merch. Disc.*, 986 F.

Supp. 2d at 212.

In sum, "[t]here can be no doubt that this class action would be enormously expensive to

continue, extraordinarily complex to try, and ultimately uncertain of result."  *Nasdaq III*, 187

F.R.D. at 477.  This factor plainly weighs in favor of preliminary approval.

### 2.     The Reaction of the Class to the Settlement

This factor is generally inapplicable prior to the dissemination of notice.  *See Reade-

Alvarez*, 237 F.R.D. at 34.  All of the Plaintiffs have, however, approved the Settlement.  In the

event objections are received after notice is disseminated, Lead Counsel will address them in

connection with the motion for final approval of the Settlement.

### 3.     The Stage of the Proceedings

"The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient

understanding of the case to gauge the strengths and weaknesses of their claims and the

adequacy of the settlement."  *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL

903236, at *10 (S.D.N.Y. Apr. 6, 2006).  Neither the lack of complete formal discovery, nor the lack of "extensive discovery" will preclude approval of a settlement.  *Id*.  Rather, "it is enough for the Parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement." *AOL Time Warner*, 2006 WL 903236, at *10.

Here, the volume and substance of Lead Counsel's knowledge of the merits and potential weaknesses of Plaintiffs' claims support preliminary approval of the proposed Settlement.  This knowledge is based on Lead Counsel's extensive investigation during the initiation and prosecution of this Action, including: (i) reviewing all publicly available press releases, news articles, and other media reports; (ii) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iii) drafting two detailed complaints; (iv) preparing the opposition to, and arguing, the motion to dismiss; (v) undertaking extensive interviews with market participants and traders; (vi) consulting with leading experts on the FX market; (vii) developing economic and statistical evidence of Defendants' manipulation of the FX market in consultation with economic and financial experts; (viii) preparing for mediation and participating in multiple in-person and telephonic mediation sessions; (ix) holding multiple in-person and telephonic discussions with JPM's Counsel; and (x) negotiating the Stipulation with JPM.  *See* Burke Decl., ¶¶6-11.  The accumulation of the information obtained from these sources has informed Lead Counsel about the strengths and weaknesses of their case and allowed them to engage in effective settlement discussions with JPM.  In addition, "[t]he fact that the parties were represented by capable and experienced counsel further indicates that each side had sufficient opportunity to understand the underlying factual issues." *In re Partsearch Technologies, Inc*., 453 B.R. 84, 100 (2011).

The Court should, therefore, find that this factor supports the Settlement.

**4.      The Risks of Establishing Liability and Damages**

'"In assessing the Settlement, the Court should balance the benefits afforded the Class, including the *immediacy* and *certainty* of a recovery, against the continuing risks of litigation.'" *Payment Card Fee & Merch. Disc.*, 986 F. Supp. 2d at 212 (emphasis in the original).  Here, Plaintiffs face significant risks to proving liability due to, among other things, the complexity of the subject matter of this litigation and the fact that Defendants are well financed and can afford to litigate for years.[7]

While Plaintiffs are confident they will prevail, success is not assured.  Settlement at this early stage not only provides a significant and immediate cash settlement to the putative Class, it also delivers JPM's cooperation.  The cooperation provided under the Settlement will, among other things, apply substantial pressure on the Non-Settling Defendants to seriously consider engaging in settlement negotiations.  *See In re Corrugated Container Antitrust Litig.*, No. M.D.L. 310, 1981 WL 2093, at *23 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322 (5th Cir. 1981).

Additionally, this is an extremely complex case.  Not only does it involve complicated issues of antitrust law, but its subject matter – FX trading – can be tremendously complex.  "The complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . .  A trial on these issues would likely be confusing to a jury."  *Park v. The Thomson Corp.*, No. 05 CIV.2931 (WHP), 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008); *Nasdaq III*, 187 F.R.D. at 475 (noting difficulty and uncertainty of proving liability to a jury, "especially in a case of this complexity and magnitude").

---

[7]      Since Lead Counsel may well have to litigate against the Non-Settling Defendants through trial and appeal, their duties to the putative Class preclude a full discussion of the potential risks in the Action.

Further risk is added by the fact that JPM is extremely well financed and is represented by one of the most reputable law firms in the country.  Had JPM not settled, it was prepared, and had the wherewithal, to vigorously contest liability.  JPM has denied, and continues to deny, any wrongdoing whatsoever.  *See* Stipulation at 2.  "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom.*, *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).  Put simply, "[l]iability is never automatic." *Park*, 2008 WL 4684232, at *4.

Even if liability is established, Plaintiffs would still face the problems and complexities inherent in proving damages to the jury. Plaintiffs' theory of damages would be hotly contested at trial, and there is no doubt that at trial the issue would inevitably involve a "battle of the experts"*. Nasdaq III*, 187 F.R.D. at 476.  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).  Thus, there is a substantial risk that a jury might accept one or more of Defendants' damage arguments, and award far less than the $99.5 million settlement and notice and administration amount, or nothing at all.  "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *Nasdaq III*, 187 F.R.D. at 476.[8]

---

[8]     *See also U.S. Football League v. Nat'l Football League*, 644 F. Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335, 1377 (2d Cir. 1988); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166–69 (7th Cir. 1983) (antitrust judgment was remanded for a new trial and damages).

In short, "[t]here is a substantial risk that the plaintiff might not be able to establish liability at all and, even assuming a favorable jury verdict, if the matter is fully litigated and appealed, any recovery would be years away." *Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85 CIV. 3048 (JMW), 1987 WL 7030, at *3 (S.D.N.Y. Feb. 13, 1987). "These factors therefore weigh in favor of the Settlement." *See Park*, 2008 WL 4684232, at *4.

### 5.    The Risks of Maintaining the Class Action Through Trial

While Plaintiffs are confident that the Court will certify their proposed litigation class,[9] they are well aware that JPM would be sure to advance substantial arguments in opposition. There are no guarantees.  Further, even if the Court certifies the proposed litigation class, class certification can be reviewed and modified at any time before trial.  Thus, there is always a risk that this litigation, or particular claims, might not be maintained as a class through trial.  *See Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 185 L.Ed.2d 515 (2013) (reversing class certification in antitrust case based on an inadequate damages model). The risks associated with class certification plainly weigh in favor of approving the Settlement.

### 6.    The Ability of Defendants to Withstand a Greater Judgment

There is no evidence on the record that JPM could not withstand a greater judgment than provided for by the settlement agreement.  While some courts would conclude that this factor weighs against finding that a settlement is fair (*Park*, 2008 WL 4684232, at *4), other courts have observed that "in any class action against a large corporation, the defendant entity is likely

---

[9]        The proposed settlement class (Stipulation, ¶3(a)) is slightly broader than the litigation class, as alleged in the Complaint (¶43).  A settlement class that is broader than a litigation class is not an impediment to the Court certifying the settlement class.  *See, c.f.*, *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) (certifying a settlement class that was broader than a previously-certified litigation class and citing similar cases).

to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009).  Moreover, "the benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 607, 702 (M.D. Pa. 2008).  Given the extent of the cooperation being provided by JPM, the fact that it has been secured so early in the case, and that the settlement amount represents a significant commitment by JPM, Plaintiffs respectfully submit that this factor weighs in favor of preliminary approval.

### 7.     The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The range of reasonableness "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In applying this factor, "[d]ollar amounts [in class action settlement agreements] are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 431 (S.D.N.Y. 1993) ("'The weighing of a claim against compensation cannot be . . . exact.  Nor should it be, since an exact judicial determination of the values in issue would defeat the purpose of compromising the claim.'").

"Ultimately, the exact amount of damages need not be adjudicated for purposes of settlement approval." *Nasdaq III*, 187 F.R.D. at 478.  As noted in one prominent antitrust case, the "essence of a settlement is compromise.  A just result is often no more than an arbitrary point

between competing notions of reasonableness." *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1322, 1325 (5th Cir. 1981).  Consequently, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Continuing this complex litigation against JPM would entail a lengthy, highly expensive legal battle involving complex legal and factual issues.  Establishing damages would require reliance upon challengeable assumptions, presenting a very real risk of no recovery for the putative Class.  These risks are substantial, and potentially dispositive.  *See In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("the propriety of a given settlement amount is a function of both (1) the size of the amount relative to the best possible recovery; and (2) the likelihood of non-recovery (or reduced recovery)").

In contrast, this "ice-breaker" Settlement provides both a significant cash component and the Cooperation Provisions.  That the cash component will be paid in the near future weighs in favor of approval.  *See AOL Time Warner*, 2006 WL 903236, at *13 (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  The mediator, Kenneth R. Feinberg, has opined that based upon his review of the preliminary economic analysis conducted by financial experts retained by Lead Counsel, the Settlement Amount appears "to be consistent with Lead Counsel's evaluation of JPM's role in the FX market and JPM's market share over the Class Period (6%)."  Feinberg Decl., ¶14.

The Settlement Amount is also reasonable based on JPM's global market share.  Indeed, it equates to approximately $16,392,092 per percentage point of JPM's 6.07% global market share in 2013 ($99,500,000 divided by 6.07 = $16,392,092).  Courts have approved settlements

for less. *Nasdaq II*, 176 F.R.D. at 102 (granting preliminary approval to settlements ranging between $4.375 million and $8.25 million per percentage point of market share); *In re Linerboard Antitrust Litig*, 292 F. Supp. 2d 631, 643 (2003) ("The settlement equals roughly $750,000.00 per point of settling defendants' total market share which is in the range of settlements approved by other courts on such a basis.").[10]  Moreover, though the above analysis is based on JPM's global market share, it is important to note that the Release explicitly carves out claims based on transactions executed solely outside the United States arising under foreign laws belonging to any Releasing Party or Person that is domiciled outside the United States.

Although it is not quantifiable, the Cooperation Provisions are likewise extremely valuable to Plaintiffs and the putative Class.  *In re Packaged Ice Antitrust Litig*., No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (cooperation "has already been beneficial to the Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"); *Pressure Sensitive Labelstock*, 584 F. Supp. 2d at 702.  Significantly, JPM agreed to provide cooperation not only as to the conduct alleged in the Complaint, *e.g*., fixing of the WM/Reuters benchmarks, but also potential new claims that may arise related to the FX market.  Moreover, JPM's cooperation obligations began immediately after execution of the Stipulation.  The scope and timing of JPM's cooperation is comprehensive and immediate; as a result, it is highly valuable as it approaches the cooperation an "amnesty applicant" would be required to provide pursuant to Section 213 of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 117 Stat. 661 (2004).  As such, it should be considered when determining whether the Settlement is within the range of reasonableness.  *See Linerboard*, 292

---

[10]     *See also Corrugated Container*, 1981 WL 2093, at *20 ("The second settlement negotiated was with International Paper Company, for $8.3 million.  This constitutes a payment of 1 million per percentage point of International Paper's 8.3 percent share of the defendants' market."); *In re Fine Paper Antitrust Litig.*, No. MDL 323, 1979 WL 1743, at *2 (E.D. Pa. Oct. 2, 1979) (approving an initial partial settlement of $30 million where the settling defendants had a 38% share of the market, which translated into $790,000 per percentage point of market share).

F. Supp. 2d at 643 ("[T]he Settlement Agreement obligates the settling defendants to provide significant cooperation to class plaintiffs in pursuing their case against the non-settling defendants immediately upon execution . . . .  The provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.").[11]

Finally, it is important to recognize that this Settlement has added value as an "ice-breaker" in a multi-party antitrust case.  *Id.*; *Packaged Ice*, 2011 WL 717519, at *10.  Such settlements add value because they can "'break the ice' and bring other defendants to the point of serious negotiations."  *Linerboard*, 292 F. Supp. 2d at 643.  The fact that JPM's cooperation comes relatively early in the case greatly enhances its value to the putative Class.  It will also assist Plaintiffs in prosecuting the Action against the Non-Settling Defendants.

Pressure is also applied on the Non-Settling Defendants by the fact that "the Non-Settling Defendants remain jointly and severally liable for all damages caused by the conspiracy, including damages from [JPM's] conduct."  *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013).  As the court in *Corrugated Container* explained, "this strategy was designed to achieve a maximum aggregate recovery for the class and the fact that the later settlements were at considerably higher rates tends to show that the strategy was successful."  *Corrugated Container*, 1981 WL 2093, at *23.  *A fortiori*, "ice-breaker" settlements in antitrust actions have an intrinsically higher value.

Given that the Settlement is both procedurally and substantively fair, Plaintiffs respectfully request that the Court grant preliminary approval.

---

[11]   *See also In re IPO Sec. Litig.*, 226 F.R.D. 186, 198–99 (S.D.N.Y. 2005) (approving settlement largely on the basis of intangible benefits, including cooperation against non-settling defendants); *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D. Md. 1983) (concluding that commitment to cooperate is an appropriate factor to consider in approving partial settlement); *Corrugated Container*, 1981 WL 2093, at *16 ("The cooperation clauses constituted a substantial benefit to the class.").

## IV.    CERTIFICATION OF THE SETTLEMENT CLASS UNDER FEDERAL RULE OF CIVIL PROCEDURE 23 IS APPROPRIATE

In accordance with the Stipulation, Plaintiffs respectfully request that the Court certify the following Class for the purposes of settlement:

> All Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into an FX Instrument directly with a Defendant, or a Released Party, at or around the time of the fixing of any of the FX Benchmark Rates, or who entered into an FX Instrument directly with a Defendant, or a Released Party, settled in whole or in part on the basis of any such FX Benchmark Rates, where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.[12]

Stipulation, ¶3(a).

A court may certify a class for settlement purposes where the proposed settlement class meets the requirements for Rule 23(a) class certification, as well as one of the three subsections of Rule 23(b).  *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231 (1997). When considering certification in the context of a proposed settlement, "'courts must take a liberal rather than restrictive approach.'"  *Cohen v. J.P. Morgan Chase & Co*., 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009).  As demonstrated below, the proposed settlement Class easily meets the requirements for certification.

### A.    Plaintiffs Satisfy the Rule 23(a) Requirements

In *Amchem*, the Supreme Court concisely set forth the parameters of the Rule 23(a) inquiry:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality

---

[12]      "Specifically excluded from the Class are Defendants; the officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant and any person acting on their behalf. Also excluded from the Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action."  Stipulation, ¶3(a).

(named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

521 U.S. at 613, 117 S. Ct. 2231.

### 1. Rule 23(a)(1) – Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). In this Circuit, numerosity is presumed when a class consists of 40 or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *IPO*, 260 F.R.D. at 90-91. "While 'a precise quantification of [the] class is not required, some evidence . . . or [a] reasonabl[e] estimate [of] the number of class members' must be provided." *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 350-51 (E.D.N.Y. 2006) (ellipses and alterations in original). In making this determination, "the court may 'make some common sense assumptions' and 'rely on reasonable inferences drawn from the available facts.'" *Id.* at 351.

As set forth in the Complaint, trading in the domestic FX market averaged $1.263 trillion per day in April 2013, and Defendants are the dominant dealers in the FX market. Complaint, ¶2. Given that the proposed Class includes, among others, all Persons domiciled in the United States or its territories who, over a 12-year period entered into an FX Instrument directly with a Defendant at or around the time of the fixing of any of the FX Benchmark Rates, or who entered into an FX Instrument directly with a Defendant, settled in whole or in part on the basis of any such FX Benchmark Rates, there is little question that the numerosity requirement has been met. In cases involving widely-traded instruments like those at issue here, common sense militates in

favor of finding numerosity.  *Cf. In re Oxford Health Plans, Inc. Sec. Litig*., 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Here, because Oxford stock was traded in high volume during the class period, the precise number of class members could be, and very likely is, numbered in the thousands.").

### 2.    Rule 23(a)(2) – Commonality

Rule 23(a)(2) requires that there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). Commonality "'does not require an identity of claims or facts among class members; instead, [t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'"  *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *Weil v. Long Island Sav. Bank, FSB*, 200 F.R.D. 164, 169 (E.D.N.Y. 2001) ("A single common issue of law will satisfy the commonality requirement.").   Because it requires only one common question, Rule 23(a)(2) is generally considered a "'low hurdle' easily surmounted."  *Prudential Sec. Inc. Ltd. P'ships*, 163 F.R.D. at 206 n.8.   "Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2*)."  In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y.1996) ("*Nasdaq I*") (collecting cases); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 478 (W.D. Pa. 1999)) (stating same and collecting cases).

Here, the overarching question is whether Defendants conspired to fix prices in the FX market.  "Proof of the alleged conspiracy is the heart of this case, and is crucial to the claims of all members of the class.  Each of the putative class members has a common interest in proving the existence, scope, effectiveness and impact of that conspiracy, as well as the appropriate

injunctive and monetary relief to remedy the injury caused by the conspiracy." *Nasdaq I*, 169 F.R.D. at 510.  Thus, the commonality requirement is satisfied.

### 3.   Rule 23(a)(3) – Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class.  This requirement is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  "'Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.'"  *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002).  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."  *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).  Typicality "'in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants.'"  *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998); *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 168 (S.D. Ind. 2009); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (typicality found where all harmed by illegal price-fixing conspiracy).

Here, the claims of the purported representative parties are co-extensive with those of the potential class members.  The central claim for the named Plaintiffs is that they were harmed by Defendants' conspiracy to fix prices in the FX market.  This will be the same for all of the class members.  Furthermore, to the extent differences exist as to the facts relevant to the claim of each class member or the damages suffered by each potential class member, such disparities do

not preclude a finding of typicality.  *See D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456-57 (E.D.N.Y. 1996); *Playmobil*, 35 F. Supp. 2d at 242 ("Differences in the damages sustained by individual class members does not preclude a showing of typicality, nor defeat class certification.").  Rule 23(a)(3)'s typicality requirement has, therefore, been met.[13]

### 4.   Rule 23(a)(4) – Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This requirement is met if a plaintiff does not have interests that are antagonistic to those of the class, and his chosen counsel is qualified, experienced, and generally able to conduct the litigation.  *See In re Tronox Sec. Litig.*, 262 F.R.D. 338, 343 (S.D.N.Y. 2009).  "'Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'"  *Dziennik v. Sealift, Inc.*, No. 05-CV-4659 (DLI), 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007).  "[T]he great weight of authority in price-fixing conspiracy cases, absent special circumstances such as arbitration, holds that the victim of one alleged co-conspirator is adequate to prove liability for victims of all co-conspirators."  *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 112–13 (S.D.N.Y. 2010) (citing cases).  To warrant denial of class certification, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation."  *Nasdaq I*, 169 F.R.D. at 514-15.

Plaintiffs satisfy both prongs of the adequacy test.  Indeed, they have already effectively represented the interests of the proposed Class by selecting qualified counsel, whose qualifications are discussed at §IV.C., *infra*, and they have further demonstrated their adequacy by aggressively pursuing this Action on behalf of the Class.  Moreover, Plaintiffs have no

---

[13]     The Supreme Court has noted that the "commonality and typicality requirements of Rule 23(a) tend to merge."  *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Marisol*, 126 F.3d at 376. Accordingly, inasmuch as commonality has been established, typicality has been established as well.

interests antagonistic to those of the proposed Class.  All members of the Class have claims arising from the same allegedly wrongful conduct and the same legal theories as the claims advanced by Plaintiffs.  *A fortiori*, the requirements of Rule 23(a)(4) are satisfied.

### B.    Plaintiffs Satisfy the Rule 23(b)(3) Requirements

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification must also satisfy one of the requirements of Rule 23(b).  *See Larsen v. JBC Legal Group, P.C.*, 235 F.R.D. 191, 196 (E.D.N.Y. 2006).  Certification of a class under Rule 23(b)(3) requires that: (i) common issues predominate over individual issues; and (ii) the class action mechanism be superior to other methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).

### 1.    Common Questions of Law or Fact Predominate

Predominance exists where "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3). To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof."  *In re Salomon Analyst Metromedia Litigation*, 544 F.3d 474, 480 (2d Cir. 2008), *abrogated on other grounds by Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013).  Rule 23(b)(3) "calls only for predominance, not exclusivity, of common questions."  *Shelter Realty Corp. v. Allied Maint. Corp.*, 75 F.R.D. 34, 37 (S.D.N.Y. 1977).  "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001), *overruled on other grounds by In re Initial Public Offerings Sec. Litig.*, 471 F. 3d 24, 42 (2d Cir. 2006); *In re Alcoholic Beverages Litig.*, 95 F.R.D. 321, 327 (E.D.N.Y. 1982).

Because Plaintiffs allege a conspiracy from which all Plaintiffs' injuries arise, issues common to the Class – for example, the existence and scope of the alleged conspiracy among Defendants to fix the FX market, the market impact of Defendants' conspiracy, and the aggregate amount of damage suffered by the Class as a result of an alleged violation of Section 1 of the Sherman Act – predominate over any individual questions, and therefore, class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."); *Nasdaq I*, 169 F.R.D. at 518 ("Since a single conspiracy is alleged, the relevant proof of this will not vary among class members, and clearly presents a common question fundamental to all class members."); *In re Folding Cartons Antitrust Litig.*, 75 F.R.D. 727, 734 (N.D. Ill. 1977) ("contentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected.  Courts have consistently found the conspiracy issue the overriding, predominant question.").[14]  In short:

> Issues of predominance and fairness do not undermine this settlement. All plaintiffs here claim injury that by reason of defendants' conduct . . . has caused a common and measurable form of economic damage . . . .  All claims arise out of the same course of defendants' conduct; all share a common nucleus of operative fact, supplying the necessary cohesion.  Class members' interests are aligned . . . . shared issues of fact or law outweigh issues not common to the class and individual issues do not predominate.

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 338 (3d Cir. 2011) (Scirica, J., concurring).

---

[14]     *See also Jennings Oil Co., Inc. v. Mobil Oil Corp.*, 80 F.R.D. 124, 130 (S.D.N.Y. 1978) ("Where an antitrust conspiracy has been at issue, the courts have tended to find that common questions predominated despite the existence of individual questions."); *In re Master Key Antitrust Litig.*, 70 F.R.D. 23, 26 (D. Conn. 1975) (characterizing the question of the existence of a conspiracy as "the central and common element of these cases"); *Shelter Realty*, 75 F.R.D. at 37 (despite customized services priced separately for each plaintiff, existence of a conspiracy is a predominating issue "when allegations of anti-competitive behavior embracing all of the various products and distribution patterns have been credibly pleaded"); *Kromer v. Saks & Co*., No. 77 Civ. 2914, 1977 WL 1513 (S.D.N.Y. Dec. 8, 1977) ("other questions regarding damages and the like are subordinate to the common question of the existence of the alleged conspiracy").

### 2.     A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy

Not only do common questions predominate in the present litigation, but, as further required by Rule 23(b)(3), "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3) identifies four factors to be considered in making a "superiority" determination.

First, in this litigation, the interest of members of the Class in individually controlling the prosecution of separate actions is minimal because the costs and expenses of individual actions, when weighed against the individual recoveries potentially obtainable, would be prohibitive. Further, to the extent any individual class members might be dissatisfied with the Settlement, they will have the right to object to it or to exclude themselves.  Thus, the first superiority factor is satisfied.  *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999).

With respect to the second factor, Plaintiffs are not aware of any similar individual suits currently pending against Defendants.  Accordingly, this factor supports certification.

Regarding the third factor, Plaintiffs have shown a desire to focus the litigation in this Court by filing the first action, and each of the other actions, in the Southern District of New York.  Plaintiffs are not aware of other cases filed by class members in other jurisdictions, and several of Defendants are headquartered in this district.  Furthermore, the Court is familiar with the facts and legal issues of the case, having presided over this complex action for approximately one year and having heard argument and ruled on Defendants' motion to dismiss.  The third factor, therefore, supports certification of the Class.

Finally, courts certifying a settlement class do not need to consider the fourth factor, which focuses on the manageability of a class action.  As the Supreme Court noted in *Amchem*, when "[c]onfronted with a request for settlement-only class certification, a district court need not

inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial."  521 U.S. at 620.

C.    **The Court Should Appoint Lead Counsel as Counsel for the Class**

Under Rule 23(g), a court that certifies a class must appoint class counsel.  Class counsel is charged with fairly and adequately representing the interests of the class.  *See* Fed. R. Civ. P. 23(g)(1)(B).  In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims; (ii) counsel's experience in handling class actions, other complex litigation, and similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.  *See* Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

The Scott+Scott and Hausfeld firms have significant experience litigating antitrust class actions.  *See* Burke Decl., Exs. 2, 3 (the firms' résumés).  Indeed, the Court has already assessed the qualifications of the firms and has chosen to appoint them to serve as Lead Counsel.  ECF Nos. 96 and 145.  Following their appointment, Scott+Scott and Hausfeld have committed the resources necessary to effectively and efficiently litigate this case, and they have vigorously done so.  For these reasons, the Court should now appoint Scott+Scott and Hausfeld as Class Counsel for the settlement Class and permit them to act as Class Counsel for purposes of the Settlement.

V.    **THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS**

Federal Rule of Civil Procedure 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]."  For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In terms of content, Rule 23(c)(2)(B)

requires a notice to clearly state: (1) the nature of the action; (2) the class definition; (3) the claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude any member from the class who so requests; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment.

The standard for adequacy of a settlement notice is ultimately one of reasonableness.  As the Second Circuit has held, "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  *Wal-Mart Stores, Inc.*, 396 F.3d at 113-14.  Neither Rule 23 nor due process requires actual notice to each possible class member.  *See Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 80 (S.D.N.Y. 2003) ("It is 'widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected.'")  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *23 (S.D.N.Y. Dec. 23, 2009); *In re NASDAQ Market-Makers Antitrust Litig.*, No. 94 Civ. 3996, 1999 WL 395407, at *2 n.3 (S.D.N.Y. June 15, 1999).

Here, Plaintiffs propose providing individual, mailed notice to the extent practicable. The Notice (attached to the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") as Exhibit A-1) will be mailed, First Class, postage-prepaid, to all members of the Class identified by JPM.  Lead Counsel is consulting with the Settlement Administrator and Claims Administrator to develop a proof of claim form, which will be included with the Notice.  The Summary Notice (attached to the Preliminary Approval Order

as Exhibit A-2) will be published once in the national edition of the *Wall Street Journal,* once in the national edition of *Investor's Business Daily*, and once over *PR Newswire*.  In addition, the Notice, proof of claim form, Summary Notice, and Stipulation will be posted on the Settlement Website on the Internet and a toll-free phone number will be set up to answer potential Class Members' questions and to facilitate the filing of claims.  Notice plans with a mix of direct and publication notice following similar procedures have been approved by numerous district courts in this Circuit.  *See Marsh*, 2009 WL 5178546, at *12-13; *Menkes*, 270 F.R.D. at 106; *Deutsche Bank AG*, 216 F.R.D. at 81; *Prudential*, 164 F.R.D. at 368.

Plaintiffs also believe that the content of the Notice and Summary Notice fulfill the requirements of Rules 23(c)(2)(B) and 23(e)(1) and due process.  The Notice apprises Class members of the nature of the Action, the settlement Class definition, the class claims, that members of the Class may enter an appearance through the member's own counsel, the material Settlement terms, the procedures available to members regarding the Settlement (and related deadlines), information requesting exclusion from the Class, the date, time, and place of the Final Approval hearing, and about the binding effect of a class judgment.  The Summary Notice informs class members of some of this information, and also sets forth multiple ways by which class members may learn more about the Settlement and their options pursuant thereto.  Accordingly, Plaintiffs respectfully request that the Notices and the notice plan be approved.

## VI.  THE COURT SHOULD APPOINT THE HUNTINGTON NATIONAL BANK AS ESCROW AGENT

Plaintiffs propose The Huntington National Bank ("HNB") as escrow agent.  JPM has approved this selection and, as indicated in HBN's résumé, the bank is eminently qualified to serve as escrow agent.  *See* Burke Decl., Ex. 4.  HNB was established in 1866, holds over $60 billion in assets, and has more than 700 branches nationwide.  HNB's National Settlement Team

has handled more than 1,000 settlements for law firms, claims administrators, and regulatory agencies.  Accordingly, Plaintiffs respectfully request that the Court appoint HNB to serve as escrow agent.

## VII.   THE COURT SHOULD APPROVE LEAD COUNSEL'S SELECTION OF KENNETH R. FEINBERG AS THE SETTLEMENT ADMINISTRATOR AND HEFFLER CLAIMS GROUP AS THE CLAIMS ADMINISTRATOR

Plaintiffs respectfully request that the Court appoint Kenneth R. Feinberg as the Settlement Administrator and the Heffler Claims Group as the Claims Administrator.  The roles of the Settlement Administrator and Claims Administrator are set forth in paragraphs 7 and 11 of the Stipulation.

The Feinberg Decl., and the *curriculum vitae* attached thereto, demonstrate that Mr. Feinberg is eminently qualified to serve as the Settlement Administrator in this Action. Likewise, as indicated in the Heffler Claims Group's firm résumé, it has substantial experience carrying out class action notice and payment projects, and has handled the administration of numerous antitrust class action settlements.  *See* Burke Decl., Ex. 5.  Mr. Feinberg and the Heffler Claims Group have the expertise and resources to effectively and efficiently administer this Settlement.

## VIII.   THE PLAN OF DISTRIBUTION

The Net Settlement Fund will be distributed in a reasonable and equitable fashion to Class Members.  Although the Plan of Distribution is still in the process of being formulated by Kenneth R. Feinberg, Lead Counsel anticipates that the proceeds of the Settlement will be distributed on a *pro rata* basis, based on calculations and comparisons of the dollar amounts of claimants' transactions in the affected products and resulting estimates of the overcharges or other damages they have suffered.  As set forth below, Lead Counsel respectfully requests that

the Court approve a schedule pursuant to which the Plan of Distribution will be filed with the Court and posted on the Settlement Website within 45 days of the entry of the Preliminary Approval Order.  *See* §IX, *infra*.  Class Members will be able to view the Plan of Distribution on the Settlement Website, or register on the Settlement Website to have the plan emailed or mailed to them in advance of the Fairness Hearing.[15]

## IX.    PROPOSED SCHEDULE

If the Court grants preliminary approval to the proposed Settlement, Plaintiffs respectfully submit the following procedural schedule for the Court's consideration.  The proposed Preliminary Approval Order includes blank dates that must be established by the Court to properly effectuate the Settlement.  In this regard, Plaintiffs present the following general schedule of events to the Court:

| EVENT | DATE FORMULA | REFERENCED IN DOCUMENTS |
|---|---|---|
| Defendants provide Class Action Fairness Act Notice | 10 days after Preliminary Approval Motion filed | Statutory |
| Preliminary Approval Order Entered | Day 1 | Preliminary Approval Order |
| Plaintiffs mail Notice, publish Summary Notice, and post Notice, Summary Notice, and Stipulation on Settlement Website ("Notice Date") | Day 30 | ¶¶8 and 9 of Preliminary Approval Order |

---

[15]    Although a court must find that the plan for distributing the settlement fund is reasonable, it is appropriate to defer the submission of a plan until after a court has approved the overall adequacy of the settlement. *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 170 (2d Cir. 1987) ("The prime function of the district court in holding a hearing on the fairness of the settlement is to determine that the amount paid is commensurate with the value of the case. This can be done before a distribution scheme has been adopted so long as the distribution scheme does not affect the obligations of the defendants under the settlement agreement. The formulation of the plan in a case such as this is a difficult, time-consuming process."); *Nasdaq III*, 187 F.R.D. at 480 (noting that "it is appropriate, and often prudent, in massive class actions" to defer consideration of the plan of distribution).  Here, Plaintiffs request that the Court preliminary approve the settlement, and during the notice period, they will file and post a proposed Plan of Distribution, which they will seek approval of in conjunction with their motion for final approval of the settlement.  Similar procedures were followed in recent antitrust class action settlements in *Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP, 2013 WL 4525323, at *6 (E.D.N.Y. Aug. 27, 2013) and *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388, ECF No. 1042, at ¶6.3.7 (D. Mass. Sept. 9, 2014) (Burke Decl., Ex. 6).

| **EVENT** | **DATE FORMULA** | **REFERENCED IN DOCUMENTS** |
|---|---|---|
| Plaintiffs file with the Court and post on the Settlement Website a proposed Plan of Distribution ("Posting Date") | Day 45 | ¶13 of Preliminary Approval Order |
| Claims Administrator emails or mails proposed Plan of Distribution to Class Members who registered on Settlement Website to receive it | Day 59 | ¶14 of Preliminary Approval Order |
| Plaintiffs file Motion for Final Approval and Motion for Award of Attorneys' Fees and/or Expenses | Day 76 | ¶20 of Preliminary Approval Order |
| Objections received by counsel and filed with Court | Day 90 | ¶18 of Preliminary Approval Order |
| Opt-outs from settlement class members post marked | Day 90 | ¶16 of Preliminary Approval Order |
| Plaintiffs file proof of mailing and publishing notice | Day 113 | ¶9(d) of Preliminary Approval Order |
| Replies re: Final Approval and Attorneys' Fees and/or Expenses | Day 113 | ¶20 of Preliminary Approval Order |
| Fairness Hearing | Day 120 | ¶2 of Preliminary Approval Order |
| Claims forms postmarked | Day 150 | ¶14(b) of Preliminary Approval Order |

If this schedule is not convenient for the Court, Plaintiffs respectfully request that the Court use at least the same or greater intervals between each event listed in the proposed schedule to provide all Parties sufficient time to comply with the proposed Preliminary Approval Order.

## X.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant their motion.

January 30, 2015                                  Respectfully submitted,

                                                  SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

                                                  s/ Christopher M. Burke
                                                  CHRISTOPHER M. BURKE (*pro hac vice*)
                                                  WALTER W. NOSS (*pro hac vice*)
                                                  KRISTEN M. ANDERSON (*pro hac vice*)
                                                  707 Broadway, Suite 1000
                                                  San Diego, CA 92101
                                                  Telephone: 619-233-4565
                                                  Facsimile:  619-233-0508
                                                  cburke@scott-scott.com
                                                  wnoss@scott-scott.com
                                                  kanderson@scott-scott.com

                                                        -and-

                                                  SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
                                                  DAVID R. SCOTT (DS-8053)
                                                  JOSEPH P. GUGLIELMO (JG-2447)
                                                  DONALD A. BROGGI (DB-9661)
                                                  SYLVIA SOKOL
                                                  THOMAS K. BOARDMAN
                                                  The Chrysler Building
                                                  405 Lexington Avenue, 40th Floor
                                                  New York, NY 10174
                                                  Telephone: 212-223-6444
                                                  Facsimile:  212-223-6334
                                                  david.scott@scott-scott.com
                                                  jguglielmo@scott-scott.com
                                                  dbroggi@scott-scott.com
                                                  ssokol@scott-scott.com
                                                  tboardman@scott-scott.com

HAUSFELD LLP
MICHAEL D. HAUSFELD
WILLIAM P. BUTTERFIELD
REENA ARMILLAY GAMBHIR
TIMOTHY S. KEARNS
NATHANIEL C. GIDDINGS
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7143
Facsimile:  202-5407201
mhausfeld@hausfeldllp.com
wbutterfield@hausfeldllp.com
rgambhir@hausfeldllp.com
tkearns@hausfeldllp.com
ngiddings@hausfeldllp.com

-and-

HAUSFELD LLP
MICHAEL LEHMAN
CHRISTOPHER LEBSOCK
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: 415-633-1949
Facsimile:  415-693-0770
mlehman@hausfeldllp.com
clebsock@hausfeldllp.com

*Interim Co-Lead Counsel*

GOLD BENNETT CERA & SIDENER LLP
SOLOMON B. CERA
C. ANDREW DIRKSEN
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: 415-777-2230
Facsimile:  415-777-5189
scera@gbcslaw.com
cdirksen@gbcslaw.com

COHEN MILSTEIN SELLERS & TOLL, PLLC
MANUEL JOHN DOMINGUEZ
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: 561-833-6575
Facsimile:  561-515-1401
dominguez@cohenmilstein.com

MICHAEL B. EISENKRAFT (ME-6974)
88 Pine Street, Fourteenth Floor
New York, NY 10005
Telephone: 212-828-7797
Facsimile:  212-828-7745
meisenkraft@cohenmilstein.com

*Counsel for Plaintiff Aureus Currency Fund L.P.*

OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
WILLIAM J. LEONARD
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
Telephone: 215-665-3000
Facsimile:  215-665-3165
william.leonard@obermayer.com

BONI & ZACK LLC
MICHAEL J. BONI
JOSHUA D. SNYDER
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
Facsimile:  610-822-0206
mboni@bonizack.com
jsnyder@bonizack.com

*Counsel for Plaintiff the City of Philadelphia,*
*Board of Pensions and Retirement*

ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

*Counsel for Plaintiff Employees' Retirement System
of the Government of the Virgin Islands*

WOLF POPPER LLP
MARIAN R. ROSNER
PATRICIA I. AVERY
FEI-LU QIAN
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: 212-759-4600
Facsimile:  212-486-2093
mrosner@wolfpopper.com
pavery@wolfpopper.com
fqian@wolfpopper.com

*Counsel for Plaintiff Employees' Retirement
System of Puerto Rico Electric Power Authority*

BERMAN DeVALERIO
JOSEPH J. TABACCO, JR. (JJT-1994)
TODD A. SEAVER
SARAH KHORASANEE MCGRATH
JESSICA MOY
One California Street, Suite 900
San Francisco, CA 94111
Telephone: 415-433-3200
Facsimile:  415-433-6382
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com
smcgrath@bermandevalerio.com
jmoy@bermandevalerio.com

*Counsel for Plaintiff Fresno County Employees'
Retirement Association*

THE MOGIN LAW FIRM, P.C.
DANIEL J. MOGIN
JODIE M. WILLIAMS
PHILLIP E. STEPHAN
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-687-6611
Facsimile:  619-687-6610
dmogin@moginlaw.com
jwilliams@moginlaw.com
pstephan@moginlaw.com

KOREIN TILLERY, LLC
STEPHEN M. TILLERY
ROBERT L. KING
AARON M. ZIGLER
STEVEN M. BEREZNEY
RICHARD M. ELIAS
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
Saint Louis, MO 63101-1612
Telephone: 314-241-4844
Facsimile:  314-241-3525
stillery@koreintillery.com
rking@koreintillery.com
azigler@koreintillery.com
sberezney@koreintillery.com
relias@koreintillery.com

-and-

KOREIN TILLERY, LLC
GEORGE A. ZELCS
205 N Michigan Ave, Suite 1950
Chicago, IL 60601-5927
Telephone: 312-641-9750
Facsimile:  312-641-9751
gzelcs@koreintillery.com

GLANCY BINKOW & GOLDBERG LLP
LEE ALBERT
122 East 42nd Street, Suite 2920
New York, NY 10168
Telephone: 212-682-5340
lalbert@glancylaw.com

*Counsel for Plaintiffs Haverhill Retirement System
and Oklahoma Firefighters Pension and Retirement
System*

LABATON SUCHAROW LLP
LAWRENCE A. SUCHAROW
GREGORY S. ASCIOLLA
JAY L. HIMES
CHRISTOPHER KELLER
ERIC J. BELFI
MICHAEL W. STOCKER
ROBIN A. VAN DER MEULEN
MATTHEW J. PEREZ
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
Facsimile:  212-818-0477
lsucharow@labaton.com
gasciolla@labaton.com
jhimes@labaton.com
ckeller@labaton.com
ebelfi@labaton.com
mstocker@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com

*Counsel for Plaintiff State-Boston Retirement
System*

35

GRANT & EISENHOFER, P.A.
LINDA P. NUSSBAUM (LN-9334)
PETER A. BARILE III (PB-3354)
485 Lexington Avenue
New York, NY 10017
Telephone: 646-722-8500
Facsimile:  646-722-8501
lnussbaum@gelaw.com
pbarile@gelaw.com

*Counsel for Plaintiff Syena Global Emerging Markets Fund, LP*

ENTWISTLE & CAPPUCCI LLP
ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
280 Park Avenue, 26th Floor West
New York, NY 10017
Telephone: 212-894-7200
Facsimile:  212-894-7272
aentwistle@entwistle-law.com
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

*Counsel for Plaintiffs Tiberius OC Fund, Ltd. and Value Recovery Fund L.L.C.*

LOWEY DANNENBERG COHEN & HART, P.C.
VINCENT BRIGANTI
GEOFFREY M. HORN
PETER D. ST. PHILLIP
RAYMOND P. GIRNYS
One North Broadway
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile:  914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com
rgirnys@lowey.com

-and-

36

LOWEY DANNENBERG COHEN & HART, P.C.
GERALD LAWRENCE, ESQ.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
Telephone: 610-941-2760
Facsimile:  610-862-9777
glawrence@lowey.com

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
ERIC. L. YOUNG
NATALIE FINKELMAN BENNETT
35 East State Street
Media, PA 19063
Telephone: 610-891-9880
Facsimile:  866-300-7367
eyoung@sfmslaw.com
nfinkelman@sfmslaw.com

-and-

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
JAMES E. MILLER
65 Main Street
Chester, CT 06412
Telephone: 860-526-1100
Facsimile:  860-526-1120
jmiller@sfmslaw.com

RADICE LAW FIRM, P.C.
JOHN RADICE
34 Sunset Blvd.
Long Beach, NJ 08008
Telephone: 646-245-8502
Facsimile:  609-385-0745
jradice@radicelawfirm.com

MANDEL BHANDARI LLP
RISHI BHANDARI
EVAN MANDEL
11 Broadway, Suite 615
New York, NY 10004
Telephone: 212-269-5600
Facsimile: 646-964-6667
rb@mandelbhandari.com
em@mandelbhandari.com

*Counsel for Plaintiff United Food and Commercial
Workers Union and Participating Food Industry
Employers Tri-State Pension Fund*

BERGER & MONTAGUE
H. LADDIE MONTAGUE, JR.
MERRILL G. DAVIDOFF
BART D. COHEN
1622 Locust Street
Philadelphia, PA 19103
Telephone: 215-875-3000
Facsimile: 215-875-4604
hlmontague@bm.net
mdavidoff@bm.net
bcohen@bm.net

FINE, KAPLAN AND BLACK, R.P.C.
ROBERTA D. LIEBENBERG
ADAM PESSIN
One South Broad St., Suite 2300
Philadelphia, PA 19107
Telephone: 215-567-6565
Facsimile: 215-568-5872
rliebenberg@finekaplan.com
apessin@finekaplan.com

MOTLEY RICE LLC
WILLIAM H. NARWOLD
DONALD A. MIGLIORI
MICHAEL M. BUCHMAN
JOHN A. IOANNOU
600 Third Avenue, 21st Floor
New York, NY 10016
Telephone: 212-577-0040
Facsimile:  212-577-0054
bnarwold@motleyrice.com
dmigliori@motleyrice.com
mbuchman@motleyrice.com
jioannou@motleyrice.com

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW VAN TINE
115 S. LaSalle St., Suite 2910
Chicago, IL 60603
Telephone: 312-322-3400
Facsimile:  312-676-2676
mmiller@millerlawllc.com
mvantine@millerlawllc.com

*Of Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 30, 2015.

   /s/ Christopher M. Burke
CHRISTOPHER M. BURKE
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
email: cburke@scott-scott.com