UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                  :

IN RE FOREIGN EXCHANGE                :
BENCHMARK RATES ANTITRUST     :    No. 1:13-cv-07789-LGS
LITIGATION                                    :

-------------------------------------------------------x

DECLARATION OF CHRISTOPHER M. BURKE IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH JPMORGAN
CHASE & CO. AND JPMORGAN CHASE BANK, N.A.

Pursuant to 28 U.S.C. §1746, I, Christopher M. Burke, declare:

1. I am a partner in the law firm of Scott+Scott, Attorneys at Law, LLP ("Scott+Scott").[1] By Orders dated February 13, 2014, and March 4, 2014, Scott+Scott and Hausfeld LLP ("Hausfeld") were appointed to serve as interim co-lead counsel for the putative U.S. class in the above-captioned action (the "Action").[2] ECF Nos. 96, 145.

2. I have been actively involved in prosecuting and resolving this action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein. If called upon and sworn as a witness, I could competently testify thereto.

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Stipulation and Agreement of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. dated January 5, 2015 ("Stipulation").

[2] Plaintiffs are Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System ("Haverhill"); Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Tiberius OC Fund, Ltd.; Value Recovery Fund L.L.C.; and United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund (collectively, "Plaintiffs" or "Class Plaintiffs").

3. I submit this declaration in support of Plaintiffs' motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPM," and together with Plaintiffs, the "Parties"). If approved, the proposed Settlement, consisting of $99,500,000 cash and an agreement to provide significant cooperation to Class Plaintiffs in pursuing their case against the Non-Settling Defendants, will resolve this complex antitrust case against JPM.[3]

4. Because this declaration is submitted in support of a Settlement, it is inadmissible in any subsequent proceedings, other than in connection with the Settlement. In the event the Settlement is not approved by the Court, this declaration and the statements contained herein are without prejudice to Plaintiffs' position on the merits of this Action.

5. The following is a summary of the nature of Plaintiffs' claims, the principal events that occurred during the course of the litigation, and the terms of the Settlement.

## I. SUMMARY OF CLAIMS AND THE PROCEDURAL HISTORY OF THE LITIGATION

6. On November 1, 2013, Plaintiff Haverhill filed the first case, *City of Haverhill Ret. Sys. v. Barclays Bank PLC*, No. 13-cv-7789 (the "*Haverhill* Action"), in this Action. The complaint in the *Haverhill* Action was based on a painstaking investigation and research of applicable law and potential defenses conducted by its attorneys at Scott+Scott. This investigation included, among other things, a review of all publicly available press releases, news articles, and other media reports, as well as interviews with market participants and traders.

---

[3] The Non-Settling Defendants are Bank of America Corporation and Bank of America, N.A.; Barclays Bank PLC and Barclays Capital Inc.; BNP Paribas Group and BNP Paribas North America Inc.; Citigroup, Inc. and Citibank, N.A.; Credit Suisse Group AG and Credit Suisse Securities (USA) LLC; Deutsche Bank AG; The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.; HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., and HSBC Bank USA, N.A.; Morgan Stanley; Royal Bank of Scotland Group PLC and RBS Securities, Inc.; and UBS AG and UBS Securities LLC (collectively, the "Non-Settling Defendants," and together with JPM, "Defendants").

Scott+Scott also consulted with leading experts on the FX market, and began working with economic and financial experts to identify economic and statistical evidence of Defendants' manipulation of the FX market. Several additional cases alleging substantially similar conduct by Defendants were subsequently filed.

7. Following a hearing on February 13, 2014, the Court consolidated for all purposes the first-filed *Haverhill* Action with Case Nos. 13-cv-9080, 13-cv-9125, 13-cv-9237, 14-cv-350, 14-cv-475, 14-cv-494, 14-cv-752, 14-cv-787, 14-cv-825, 14-cv-867, 14-cv-876, and 14-cv-902 (as member cases), directed the Clerk to close the later-filed cases, and amended the caption of the case to be "*In re Foreign Exchange Benchmark Rates Antitrust Litigation*." The Court also appointed Scott+Scott to serve as interim lead counsel for the putative U.S. class, and ordered interim lead counsel to file a Consolidated Class Action Complaint no later than March 31, 2014. ECF No. 96. On March 4, 2014, the Court granted Scott+Scott's application for Hausfeld LLP ("Hausfeld") to serve as interim co-lead counsel. ECF No. 145.

8. On March 31, 2014, Plaintiffs, on behalf of themselves and a putative Class, filed the Consolidated Amended Class Action Complaint ("Complaint"), alleging that Defendants conspired to fix prices in the foreign exchange ("FX") market in violation of Section 1 of the Sherman Act, 15 U.S.C. §1. ECF No. 172. Plaintiffs alleged, among other things, that before the calculation of FX Benchmark Rates, Defendants' FX traders communicated in chat rooms (and through other forms of communication) and shared nonpublic price information about customers' orders and Defendants' net trading positions. Plaintiffs further alleged that Defendants engaged in collusive trading strategies in order to move the FX Benchmark Rates in directions favorable to Defendants' trading positions. Plaintiffs alleged that transcripts of private chat room communications between FX traders at the various Defendants show that Defendants'

3

collusive trading strategies worked, thereby allowing each Defendant to obtain profits at the expense of their customers, and resulting in harm to the Class.

9. On May 30, 2014, Defendants, including JPM, moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 208. Plaintiffs filed their opposition to the motion to dismiss on July 29, 2014 (ECF No. 213), and on August 28, 2014, Defendants filed a reply memorandum (ECF No. 214). Oral argument was held on November 20, 2014, and on January 5, 2015, while the motion to dismiss was under submission, the Parties signed the Stipulation. On January 28, 2015, the Court denied Defendants' motion to dismiss the Complaint. ECF No. 242.

## II. THE SETTLEMENT WITH JPM

10. Plaintiffs' settlement with JPM is the first settlement in the litigation – a so-called "ice-breaker" settlement – and represents a significant step forward in the prosecution of this Action. The Settlement is the product of hard-fought, arm's-length negotiations by counsel highly experienced in complex antitrust matters and was reached under the oversight and with the assistance of a well-respected mediator, Kenneth R. Feinberg. *See* Declaration of Kenneth R. Feinberg in Support of the Plaintiffs' Motion for Preliminary Approval of the Settlement with Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("Feinberg Decl."), ¶¶8, 17 (filed concurrently). The consideration provided by JPM in return for a release of U.S. claims is comprised of two parts, cash and cooperation, both of which are extremely valuable. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[S]ignificant cash payout, coupled with Settling Defendants' extensive proffer of facts and information, represents an immediate and valuable benefit to the Class that will aid in ongoing litigation against the non-settling Defendants.").

4

### A.     Settlement Negotiations

11.     The Court is respectfully referred to the concurrently-filed Feinberg Decl. for a detailed description of the factual and procedural history of the settlement negotiations. The Feinberg Decl. is an integral part of this submission. As the Feinberg Decl. reflects, the settlement negotiations occurred over the course of several months and included numerous telephone conversations, face-to-face meetings with the mediator, and a joint mediation session on December 1, 2014, at which time the mediator urged resolution of various issues (*e.g.*, the extent and timing of any cooperation provisions, the settlement class definition, and the scope of the release). Over the course of several more weeks, the mediator participated in numerous telephone conference calls, separately and collectively, regarding specific proposed terms of a settlement agreement. As a result of these discussions and at the urging of the mediator, all outstanding disagreements were eventually resolved.

### B.     The Cash Component

12.     The cash portion of the Settlement consists of $99,000,000, which will comprise the Settlement Fund, and an additional $500,000 that will be used for notice and administration (the "Notice and Administration Fund"). Both the Settlement Fund and the Notice and Administration Fund are non-reversionary if there is final approval of the Settlement by the Court.

### C.     The Cooperation Agreement

13.     The Stipulation obligates JPM to provide extensive cooperation for seven years, or throughout the duration of the Action (whichever is longer), and includes proffers from JPM's Counsel, production of documents (including prompt production of documents produced

pursuant to government investigations), production of transactional data, witness interviews, depositions, declarations and affidavits, and trial witnesses.

14.     Significantly, JPM agreed to provide cooperation not only as to the conduct alleged in the Complaint, *e.g.*, fixing of the WM/Reuters benchmarks, but also potential new claims that may arise related to the FX market.  Moreover, JPM's cooperation obligations began immediately after execution of the Stipulation.

15.     The scope and timing of JPM's cooperation is comprehensive and immediate; as a result, it is highly valuable as it approaches the cooperation an "amnesty applicant" would be required to provide pursuant to Section 213 of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 117 Stat. 661 (2004).

16.     The fact that JPM's cooperation comes relatively early in the case greatly enhances its value to the putative Class.  It will also assist Plaintiffs in prosecuting the Action against the Non-Settling Defendants.

## III. EXHIBITS

17.     Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation and Agreement of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A., dated January 5, 2015.

18.     Attached hereto as Exhibit 2 is a true and correct copy of Scott+Scott's firm résumé.

19.     Attached hereto as Exhibit 3 is a true and correct copy of Hausfeld's firm résumé.

20.     Attached hereto as Exhibit 4 is a true and correct copy of The Huntington National Bank's résumé.

21.     Attached hereto as Exhibit 5 is a true and correct copy of the Heffler Claims Group's résumé.

22.     Attached hereto as Exhibit 6 is a true and correct copy of *Dahl v. Bain Capital Partners*, Case No. 1:07-cv-12388-WGY, ECF No. 1042 (D. Mass. Sept. 9, 2014).

## IV.    CONCLUSION

23.     For the reasons set forth herein, in Plaintiffs' motion for preliminary approval of the Settlement with JPM, and in the documents filed in support thereof, I believe the Settlement is fair, reasonable, and adequate.  As such, I believe that the Court should grant Plaintiffs' application for preliminary approval of the Settlement.

I certify under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.  Executed on January 30, 2015, in San Diego, California.

                                         s/ Christopher M. Burke
                                         CHRISTOPHER M. BURKE
                                         SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
                                         707 Broadway, Suite 1000
                                         San Diego, CA 92101
                                         Telephone: 619-233-4565
                                         Fax: 619-233-0508

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 30, 2015.

    s/ Christopher M. Burke
CHRISTOPHER M. BURKE
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
email: cburke@scott-scott.com