

**CHRISTOPHER M. BURKE**

**Writer's Direct Dial Number**
(619) 798-5300

**Writer's Direct Email Address**
cburke@scott-scott.com

June 12, 2015

<u>Via ECF</u>

Honorable Lorna G. Schofield
U.S. District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

      Re:    *In re Foreign Exchange Benchmark Rates Antitrust Litigation*
                Case No. 1:13-cv-07789-LGS (S.D.N.Y.)

Dear Judge Schofield:

      Pursuant to the Court's April 20, 2015 Order (ECF No. 284), Plaintiffs in the above-referenced action (the "Consolidated Action") write to explain our position on (i) the relationship among the Consolidated Action and the *Taylor* and *Sterk* actions; (ii) the consolidation of the actions for all or limited purposes; and (iii) to respond to the April 15 and April 17 letters to the Court from plaintiffs' counsel in *Taylor* (*Taylor*, ECF No. 67) and *Sterk* (*Sterk*, ECF No. 12).

      For the reasons below, we respectfully submit that the *Taylor* and *Sterk* actions should be consolidated with the Consolidated Action and the requests to establish separate interim class counsel denied. This is because, based on Interim Co-Lead Counsel's investigation to date, including information obtained from settling defendants, there is a single conspiracy to fix and manipulate FX pricing. This conspiracy is effectuated through FX spot trading and impacts the pricing for all FX instruments, whether traded over the counter ("OTC") or on an exchange. There is no evidence to date that supports the existence of a separate conspiracy to fix or manipulate the price of FX instruments traded on exchanges versus FX instruments traded OTC.

**A.**    ***Taylor* and *Sterk* Should Be Consolidated with the Consolidated Action**

      *Taylor* and *Sterk* should not proceed as separate (or even coordinated) cases because, as Taylor and Sterk concede, their follow-on actions "involve[] . . . factual allegations arising from the same core nucleus" (*Taylor*, ECF No. 2) of operative facts and "substantially the same conduct by the named Defendants" (*Sterk*, ECF No. 2) in the Consolidated Action. The fact that plaintiffs in *Taylor* and *Sterk* traded futures contracts is irrelevant to the overlapping commonality of the actions and inconsequential to the alleged need for separateness. The injuries and claims alleged in both *Taylor* and *Sterk* "flow . . . directly from Defendants' collusive manipulation of FX spot prices and benchmark rates" (*Taylor,* ECF No. 1, ¶306;

Honorable Lorna G. Schofield
June 12, 2015
Page 2

*see also id.*, ¶98), the exact conduct at issue in the Consolidated Action.

In addition to the substantial factual overlap, there is substantial overlap between the members of the putative classes in the Consolidated Action and *Taylor* and *Sterk*. The putative class in the Consolidated Action is comprised of persons who traded directly with a Defendant. OTC trading accounts for about 98% of the total FX market. Importantly, numerous class members who trade OTC with Defendants also trade FX futures on an exchange.

Taylor and Sterk cannot ignore this reality by suggesting that futures traders have unique allegations or were separately targeted by Defendants. Neither complaint sets forth any allegations of conduct unique to futures trading; both complaints merely reiterate the allegations made by Plaintiffs in the Consolidated Action, while noting the effect that this conduct had on futures trading. The *Taylor* and *Sterk* complaints do not allege a separate conspiracy to manipulate FX futures contracts, but indicate that because FX spot prices drive the pricing of FX futures, persons involved in futures trading were thereby injured. Thus, any injury allegedly sustained by Taylor, Sterk, and the putative classes they seek to represent stems from, and is a reflection of, Defendants' collusion in fixing FX spot prices.

Given the overlap of facts, defendants, claims, and class members, *Taylor* and *Sterk* should be consolidated with the Consolidated Action pursuant to Federal Rule of Civil Procedure 42(a) to "prevent inconsistent pretrial rulings" and to avoid "[t]he disparate treatment of two sets of litigants suing for the same underlying tort . . . in the same court." *In re Terrorist Attacks On September 11, 2001*, 741 F.3d 353, 358 (2d Cir. 2013).

B. **Taylor and Sterk's Request to Establish Separate Interim Class Counsel Should Be Denied**

1. **Settlements in the Consolidated Action Would Release Claims Covering Exchange Trading**

Contrary to the statements made by counsel in the *Taylor* and *Sterk* actions, the settlements reached to date by Interim Co-Lead Counsel already cover exchange claims. For example, Defendant JPMorgan settled with the putative class in the Consolidated Action for $99,500,000 and extensive cooperation. *See* ECF No. 247-1, ¶¶13-14. In return, Plaintiffs agreed to release all of their predicate conduct claims associated in any manner with any FX instrument "related in any way to FX rates," including the WM/Reuters benchmark. *See* ECF No. 247-1, ¶2(w), (v), (gg). Because numerous putative class members in the Consolidated Action trade both OTC and on exchanges, the release on behalf of such class members included all claims stemming from FX futures contracts and options on FX futures contracts at issue in the *Taylor* and *Sterk* actions.[1]

---

[1]   Plaintiffs have retained Mr. Kenneth Feinberg to assist in the development of the proposed plan of distribution. Mr. Feinberg has participated in the distribution of recoveries in numerous complex cases and will assist Interim Co-Lead Counsel in proposing and creating a fair allocation between OTC and exchange instruments.

### 2.     There Is No Fundamental Conflict Among Class Members

The creation of subclasses and appointment of separate interim class counsel is only warranted where there is a "fundamental conflict" among class members that "goes 'to the very heart of the ligation.'" *Charron v. Weiner*, 731 F.3d 241, 250 (2d Cir. 2013) (citation omitted).

OTC and exchange purchasers have been represented by the same counsel without creating a fundamental conflict. *See, e.g., In re: Gold Fixing Antitrust and Commodity Exchange Act Litig.*, 1:14-cv-3111-VEC, ECF No. 7 at 3 (hereinafter "*Gold Fixing Litigation*") (attached as Exhibit A); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 14-MD-2573, ECF No. 17 at 4 (S.D.N.Y. Nov. 25, 2014) (attached as Exhibit B); *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880 (N.D. Ill. 2011). Based on the common source of injury to both OTC and exchange purchasers, the Court in the *Gold Fixing Litigation* appointed Quinn Emanuel – the same counsel that represent Sterk here – co-lead counsel to represent both OTC and exchange plaintiffs in a single class.[2] The same result should apply here, where both the *Taylor* and *Sterk* actions are "based, primarily, on the impact that manipulation of the FX spot prices had on FX Futures prices," (*see Taylor*, ECF No. 67 at 2) and the plaintiffs who engaged in OTC trading also likely account for a substantial proportion of exchange trades.[3]

### C.     Conclusion.

Given the substantial overlap between the Consolidated Action and *Taylor* and *Sterk*, absence of conflict between OTC and exchange-only futures traders, and risk of inconsistent results, the Court should: (i) consolidate *Taylor* and *Sterk* into the Consolidated Action and (ii) deny their requests for the appointment of separate interim class counsel.

Very truly yours,

| | |
|---|---|
| HAUSFELD LLP | SCOTT+SCOTT, ATTORNEYS AT LAW, LLP |
| */s/*Michael D. Hausfeld | */s/*Christopher M. Burke |
| Michael D. Hausfeld | Christopher M. Burke |

---

[2]     *See In re: Gold Fixing Antitrust and Commodity Exchange Act Litig.*, No. 1:14-cv-02213-VEC, ECF No. 23 (appointment Quinn Emanuel and Berger & Montague as interim co-lead counsel of a single class of OTC and exchange plaintiffs) (attached as Exhibit C).

[3]     While the *LIBOR* court elected to appoint separate counsel, its decision was based on a "potential conflict" before litigation had meaningfully begun and before the scope of actual conflicts could be readily anticipated. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 NRB, 2011 WL 5007957, at *2 (S.D.N.Y. Oct. 18, 2011). In fact, the *LIBOR* Court noted that the counsel seeking to represent both exchange and OTC purchasers had not even made clear "whether plaintiffs supporting [the combined representation] Proposal are over-the-counter or exchange-based purchasers." *Id.*, at *3. This concern is not present here where the Plaintiffs in the Consolidated Action represent approximately 98% of the FX market.

Honorable Lorna G. Schofield
June 12, 2015
Page 4

| | |
|---|---|
| 1700 K Street, NW, Suite 650 | 707 Broadway, Suite 1000 |
| Washington, DC 20006 | San Diego, CA 92101 |
| Telephone: 202-540-7143 | Telephone: 619-233-4565 |
| mhausfeld@hausfeldllp.com | cburke@scott-scott.com |

*Interim Co-Lead Class Counsel*