**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

June 23, 2015

**VIA ECF**

Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

Re:   *Bakizada v. Bank of America Corp., et al.*, Case No. 15-cv-4230-LGS

Dear Judge Schofield:

As permitted by the Court's June 19, 2015 Order, we write in response to the June 18, 2015 letter and motion by interim lead counsel in *In re Foreign Exchange Benchmark Rates Antitrust Litigation* (13-cv-7789) (the "FX spot" action and counsel). Counsel again asks the Court to consolidate the actions brought on behalf of exchange-traded FX futures investors with the FX spot action brought only on behalf of those that were in privity with a Defendant, and then to have themselves appointed as lead counsel in the resulting, all-encompassing case.[1] We oppose this action for the following reasons:

*First*, FX spot counsel had *no* authority to enter into settlement agreements that would compromise—let alone, fully release—claims tied to exchange-traded transactions, even as to the subset of investors who held both exchange-traded and over-the-counter ("OTC") transactions. The complaint in the FX spot action did not state any claims on behalf of futures investors. It sought compensation *only* for transactions made "directly with a Defendant," which by definition excludes the exchange-traded claims FX spot counsel are now seeking to have released. The JPMorgan settlement agreement likewise does not mention futures, and defined the settlement class in a way that expressly excluded exchange-traded transactions. The Second Circuit has held it improper for a settlement agreement to purport to release claims broader than those at issue in the underlying complaint giving rise to the agreement in the first place. *See*

---

[1] Quinn Emanuel is now counsel to Mr. Bakizada, and is today filing an amended complaint along with its co-counsel Cohen Milstein.

*National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 (2d Cir. 1981) ("Having received authority to represent class members solely with respect to liquidated contracts, plaintiffs had no power to release any claims based on any other contracts."); *see also id.* at 19 ("An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class.").

**Second**, in purporting to release claims for no compensation, FX spot counsel have created a structural conflict for themselves. They secured settlements with JPMorgan and other Defendants and will (justifiably) be seeking large fees based on those settlements. They now have strong incentives to preserve these settlements and to acquiesce in the settling Defendants' insistence that the releases include all forms of FX trading, including exchange-traded futures, despite not being part of the OTC, privity-restricted FX spot complaint. In these circumstances, FX spot counsel cannot be expected to zealously represent the separate interests of the exchange-traded class covering futures and options on futures. Indeed, this is precisely the type of conflict that the Second Circuit disapproved of in *Super Spuds*, and that Judge Kaplan condemned in *In re Auction Houses Antitrust Litigation*, 138 F. Supp. 2d 548, 551 (S.D.N.Y. 2001).

This conflict has already manifested itself in FX spot counsel's vigorous defense of the settlement agreements despite their failure to anticipate exchange-traded claims, and in their offer to retroactively "cure" the problem through "apportionment"—in essence committing to rob Peter (claims on OTC transactions) to partially pay Paul (claims on exchange-traded transactions). It has also manifested itself in counsel's failure to account for what will happen with respect to those who—like the named plaintiff in *Bakizada*—did not engage in *any* OTC FX transactions, and thus were *never* in privity with a Defendant, and thus have *no* right to submit *any* claim under privity-restricted settlement agreements, regardless of how any "apportionment" process could be theoretically applied to others who may have engaged in both OTC and exchange-traded transactions.

**Finally**, the entire narrative that exchange-traded claims were always viewed as part and parcel of the FX spot class, and thus have always been under the good stewardship of FX spot counsel, simply does not pass muster. Even now, FX spot counsel pooh poohs the claims as purportedly relating to "only" 2% of the FX market. Even if true, this ignores that the FX market is huge. Two percent of trillions is still a lot of money. The suggestion that a futures market that itself sees $160 *billion* in *daily* turnover[2] can be properly swept under the rug merely because the OTC market is bigger-still by comparison, is a disservice to participants in the exchange-traded market. And if experienced class-action attorneys intended to actually compensate exchange-traded victims, surely the complaint and settlement materials would have made such clear. As discussed above and in our prior correspondence, the exact opposite is true—all materials filed to date have expressly *excluded* exchange-traded (*i.e.*, non-privity-based) claims.

---

[2] Due to a scrivener's error, our prior letter referred to this being an "annual" figure.

Respectfully submitted,

/s/ *Daniel L. Brockett*
Daniel L. Brockett
QUINN EMANUEL URQUHART & SULLIVAN, LLP

cc: All Counsel of Record (by ECF or email)