## quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 | FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7345**

WRITER'S INTERNET ADDRESS
**danbrockett@quinnemanuel.com**

June 23, 2015

**VIA ECF**

Honorable Lorna G. Schofield
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, NY 10007

Re:   *Bakizada v. Bank of America Corp., et al.*, Case No. 15-cv-4230-LGS

Dear Judge Schofield:

We respectfully, and regretfully, seek leave of the Court to file this additional letter in relation to the question of the appointment of lead counsel for exchange-traded claims, because counsel for the privity-based FX spot action today revealed the full nature and extent of their activities with respect to settling futures and other exchange-traded claims not part of their complaint.  For the first time this afternoon, counsel asserted that disputes surrounding the scope of their settlement agreements are much ado about nothing because they have now reached "separate" agreements to cover an "exchange-only" class.  But such revelations only confirm the brazenness of counsel's improprieties, rather than justifying sweeping them under the rug.

As set forth in our prior correspondence, FX spot counsel was appointed as co-lead counsel **_only_** to pursue claims arising out of transactions "directly with a Defendant," like spot transactions.  The Second Circuit in *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9 (2d Cir. 1981), made clear that it does not matter if some class members *also* hold other claims, like those tied to exchange-traded futures here.  Until a new class definition is approved, and a new lead-counsel process undertaken, counsel's appointment in the FX spot case naturally carried with it **_only the power to resolve claims tied to the class definition on file in the FX spot complaint approved by the Court, period_**.  Thus, as we explained previously, the JPMorgan settlement—which sought the release of "all" FX-related claims—was facially infirm under *Super Spuds*.  FX spot counsel now has revealed that the problem is even worse.  Not only did counsel (perhaps originally, inadvertently) agree to an "all" FX release for OTC class members with JPMorgan despite being powerless to do so, but they

now admit that after discovering the problem they *intentionally* violated *Super Spuds* by seeking to negotiate "separate amounts" for "exchange-only" investors.

      Notably, counsel does not appear to dispute that the settlements they reached—either the "all FX" release, or the "separate amount" terms—are outside the powers granted by this Court's appointment in the FX spot case, and thus in plain violation of *Super Spuds*. Rather, they contend the fundamental problem of having gone rogue should be swept under the rug because the (secret) settlement terms justify doing so, and the problems identified by *Super Spuds* and its progeny can be creatively avoided merely with the *post-hac* filing of an amended complaint.

      Substantively, the proper division here should be among OTC and exchange-traded *claims*. Instead, FX spot counsel seeks to divide the universe into those *investors* who have at least one OTC transaction, and those that have none. This is likely an outgrowth of counsel's early willingness to agree to an "all FX" release on behalf of the current FX spot class, despite not realizing until other complaints were filed what they was agreeing to give up. Stapling on a "separate amount" for those investors who have "only" exchange-traded transactions does nothing to ensure that investors with *both* OTC and exchange-traded transactions were adequately represented when the "original" amount was agreed to.

      It is just such problems that following proper procedures would have prevented. *Super Spuds* and its progeny make clear that **<u>until counsel is appointed as lead in a case that actually asserts the claims, counsel is powerless to settle and compromise the claims</u>**. This ensures that counsel appointed by a court to represent a class stays focused on representing that class. And it ensures defendants cannot convince counsel to stray from that course, securing all-encompassing releases in exchange for amounts truly designed to compensate for a narrower set of wrongs. And it ensures courts (like this one is now) are not forced to try to determine whether a truly unconflicted counsel, with clear Court-appointed powers, would have done even better in the same negotiations. These important protections, afforded by making clear that class-counsel only has power to release claims **<u>actually in the asserted class</u>**, would be rendered meaningless if *Super Spuds* could be avoided by counsel that are clever enough to keep in-pocket improperly broad but fully "negotiated" settlement agreements until such time as a placeholder "amended complaint" is put on file.

      Once FX spot counsel realized Defendants caused harms on exchange-traded transactions—something that did not require "cooperation" with defendants, just a rudimentary understanding of the markets—the proper path should not have been to double down on the original "all FX" error by "separately" negotiating with respect to an "exchange only" class. Rather, counsel should have sought to file an amendment request *before* settlements were reached, and/or limited the agreements to the claims already on file (*i.e.*, OTC transactions). Either path would have ensured everything was conducted above-board, and that the Court, exchange-traded investors, and other counsel could weigh in on the wisdom of expanding the scope of negotiations *before* being prejudiced by the purported locking-in of an agreement outside the scope of counsel's actual assignment. Such additional steps would have been particularly appropriate here, given FX spot counsel well-knew there were other counsel, with actual claims on file, on behalf of investors with actual exchange-traded transactions, that were actively and formally seeking to represent an exchange-traded class. But FX spot counsel did not once seek to consult with us, or as far as we know, other counsel that were legitimately

pursuing claims on behalf of the exchange-traded class. Rushing to lock in settlements specifically to bolster counsel's prospects for being retroactively granted an expanded lead-counsel role, when counsel and Defendants well know counsel's expanded appointment request will be challenged, is not a process that seems likely to engender the most favorable settlement terms for class members.

Contrary to counsel's argument, *In re Auction Houses Antitrust Litigation*, 138 F. Supp. 2d 548 (S.D.N.Y. 2001) in no way countenances the deal-first-amend-the-class-complaint-later approach used here. FX spot counsel directs the Court to language about how an alternative settlement structure—purportedly similar to the one used here—may have been acceptable to that court. But this elides over the fact the *Auction House* court's hypothetical presumed not just a different settlement structure, but *also* presumed that the certified class had included the additional claims at the "outset." *Id.* at 550-51. Thus, the case in no way suggests that agreements that are void under *Super Spuds* should be encouraged by giving counsel that ignore its restrictions retroactively expanded powers, merely because such counsel thought enough to request a post-hac complaint amendment before putting formally on file the fully negotiated settlement agreements.

Respectfully submitted,

/s/ *Daniel L. Brockett*
Daniel L. Brockett
QUINN EMANUEL URQUHART & SULLIVAN, LLP

cc: All Counsel of Record (by ECF)