# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

IN RE FOREIGN EXCHANGE
BENCHMARK RATES ANTITRUST
LITIGATION

**ECF CASE**

No. 1:13-cv-07789-LGS

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO
## CONSOLIDATE AND TO APPOINT INTERIM CO-LEAD COUNSEL

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS ......................................................................................3

III.  ARGUMENT ..........................................................................................................8

    A.  Consolidating the Actions Is Necessary to Avoid Inconsistent Rulings and Promote Efficiencies ...............................................................................8

    B.  Appointment of Separate Counsel to Represent the Exchange Class Is Unnecessary .............................................................................................10

        1.  There Is No Fundamental Conflict in Lead Counsel Representing Both Classes in the Litigation ......................................................10

        2.  Counsel in the Futures Actions Do Not Identify Any Fundamental Conflict and Their Arguments Regarding Settlements Are Premature .................................................................12

        3.  The Court May Appoint Separate Counsel for Settlement Allocation as Necessary .........................................................17

    C.  Scott+Scott and Hausfeld Should Be Appointed as Interim Co-Lead Counsel for the Exchange Class .............................................................18

IV.  CONCLUSION .....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)....................................................................................................17

*Charron v. Wiener,*
731 F.3d 241 (2d Cir. 2013)........................................................................................10

*Darezzo v. 200 Ninth Restaurant LLC,*
No. 14 Civ. 9081, 2015 WL 195852 (S.D.N.Y. Jan. 14, 2015)....................................9

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195 (5th Cir. 1981) .......................................................................................16

*In re Facebook, Inc., IPO Sec. and Deriv. Litig.,*
288 F.R.D. 26 (S.D.N.Y. 2012) .....................................................................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
574 F.3d 29 (2nd Cir. 2009).........................................................................................11

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
No. 11 MD 2262 (NRB), 2011 WL 5007957 (S.D.N.Y. Oct. 18, 2011)......................10

*In re Literary Works in Electronic Databases Copyright Litigation,*
654 F.3d 242 (2d Cir. 2011).........................................................................................16

*In re London Silver Fixing, Ltd., Antitrust Litig.,*
14-MD-2573, ECF No. 17 (S.D.N.Y. Nov. 25, 2014)..................................................10

*In re Sumitomo Copper Litigation,*
74 F. Supp. 2d 393 (S.D.N.Y. 1999)............................................................................20

*In re Warfarin Sodium Antitrust Litig.,*
391 F.3d 516 (3d Cir. 2004).........................................................................................17

*In re: Gold Fixing Antitrust and Commodity Exchange Act Litig.,*
1:14-cv-3111-VEC, ECF No. 7 (S.D.N.Y. June 16, 2014)...........................................10

*Johnson v. Celotex Corp.,*
899 F.2d 1281 (2d Cir. 1990)..........................................................................................8

*Kohen v. Pac. Inv. Mgmt. Co. LLC,*
571 F.3d 672 (7th Cir. 2009) .......................................................................................11

*National Super Spuds, Inc. v. New York Mercantile Exchange,*
660 F.2d 9 (2d Cir. 1981) ...............................................................................13, 14, 15

*Nichols v. SmithKline Beecham Corp.*,
   Civ.A.00, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ...........................................................18

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)...............................................................................................................17

*Plummer v. Chemical Bank*,
   668 F.2d 654 (2d Cir. 1982)...................................................................................................14

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) .............................................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)......................................................................................................14

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)...............................................................................................13, 14

### STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
   Rule 23 .....................................................................................................................................15
   Rule 42(a)...................................................................................................................................8

### SECONDARY AUTHORITIES

NEWBERG ON CLASS ACTIONS §3:75 (5th ed.) ...........................................................................16

Samuel Issacharoff & Richard A. Nagareda, *Class Settlements Under Attack*, 156
   U.PA.L.REV. 1649 (June 2008)................................................................................................10

Plaintiffs[1] respectfully submit this memorandum in support of their motion to consolidate the Futures Actions[2] into the Consolidated Action[3] and to appoint Scott+Scott, Attorneys at Law, LLP ("Scott+Scott") and Hausfeld LLP ("Hausfeld") interim co-lead counsel for the Exchange Class (defined below).

## I.    INTRODUCTION

Since being appointed interim co-lead counsel in the Consolidated Action, Scott+Scott and Hausfeld (together, "Lead Counsel") have implemented a litigation strategy that has unlocked tremendous value for those who traded FX instruments directly with Defendants and on exchanges.   Lead Counsel's accomplishments include, among other things, defeating Defendants' motion to dismiss and negotiating settlements with substantial monetary value and extensive cooperation provisions.   Throughout, Lead Counsel have maintained regular communications with the U.S. Department of Justice ("DOJ") to ensure that the action would move forward during the DOJ's investigation and the discovery stay.

---

[1]    "Plaintiffs" are Aureus Currency Fund, L.P., The City of Philadelphia, Board of Pensions and Retirement, Employees' Retirement System of the Government of the Virgin Islands, Employees' Retirement System of Puerto Rico Electric Power Authority, Fresno County Employees' Retirement Association, Haverhill Retirement System, Oklahoma Firefighters Pension and Retirement System, State-Boston Retirement System, Syena Global Emerging Markets Fund, LP, Tiberius OC Fund, Ltd., Value Recovery Fund L.L.C., and United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund, J. Paul Antonello, Marc G. Federighi, Thomas Gramatis, Doug Harvey, Izee Trading Company, John Kerstein, Michael Melissinos, Mark Miller, Robert Miller, Richard Preschern d/b/a Preschern Trading, Peter Rives, Michael J. Smith, Jeffrey Sterk, Kimberly Sterk, and Systrax Corporation.

[2]    The "Futures Actions" are *Taylor v. Bank of America Corp.*, 1:15-cv-01350, *Sterk v. Bank of America Corp.*, 1:15-cv-02705, *Bakizada v. Bank of America Corp.*, 1:15-cv-04230, *Teel v. Bank of America Corp.*, 1:15-cv-04436, and *Robert Charles Class A, L.P. v. Bank of America Corp.*, 1:15-cv-04926.

[3]    "Consolidated Action" is *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 1:13-cv-07789.

1

The settlement cooperation provisions negotiated by Lead Counsel required settling defendants to provide information, including early attorney proffers, relating both to claims alleged in the Consolidated Amended Class Action Complaint ("CAC") and other undisclosed conduct in the FX market.   With this information, Lead Counsel negotiated additional settlements of increasing value.   Lead Counsel also used this information, along with their continuing investigation, to draft the Second Amended Consolidated Class Action Complaint ("SAC").   The SAC expands the case to include additional conspiratorial conduct, parties, and claims for the purpose of obtaining even greater relief for Class members.

Only after Lead Counsel disclosed the JPMorgan settlement the Court denied Defendants' motion to dismiss, and the announcement of government findings and fines, were any of the Futures Actions filed.   Though they allege Commodity Exchange Act ("CEA") claims, the Futures Actions are undeniably based on the same conduct and conspiracy, thus sharing common questions of law and fact with the Consolidated Action.   Now that the SAC alleges CEA claims, consolidation of the Futures Actions into the Consolidated Action is necessary to avoid inconsistent adjudications and unnecessary costs and delay.

Consolidation, however, does not require separate counsel for the Exchange Class.   To the contrary, the appointment of separate counsel is unnecessary and would lead to an inefficient prosecution of this litigation.   It is unnecessary because there are no fundamental conflicts between the OTC Class (defined below) and the Exchange Class.   The Classes, which have a substantial overlap of members, seek monetary relief arising out of the same conduct.   Their interests in this litigation are fully aligned.   Appointment of separate counsel would be inefficient because the classes do not need separate counsel proving the same facts and arguing the same

points of law, especially where Lead Counsel has been successfully prosecuting this action since its inception.

Given the overlap of class members and claims, counsel in the Futures Actions point to the valuable settlements negotiated by Lead Counsel in an attempt to manufacture a conflict or otherwise disparage Lead Counsel. They contend Lead Counsel was without authority to negotiate settlements, but they misstate the law.  They contend, based on uninformed speculation, that the settlements release claims without compensation, but they misstate the facts. Ultimately, they cannot show a conflict because there is none.

Given the identical nature of the actions, the lack of any conflicts, and Lead Counsel's successful prosecution of the action to date, the Court should consolidate the Futures Actions into the Consolidated Action and appoint Lead Counsel to represent both classes.

## II.    STATEMENT OF FACTS

On November 1, 2013, Scott+Scott filed the first complaint, alleging Defendants colluded on FX benchmark prices in the over-the-counter ("OTC") market in violation of the Sherman Act. (ECF No. 1).  Subsequently, 12 other such complaints were filed, including by Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") and Cohen Milstein Seller & Toll PLLC ("Cohen Milstein").[4]  None of the complaints pleaded wrongdoing in the FX futures market, and none alleged CEA claims.

Various firms, including, among others, Quinn and Cohen Milstein, moved for consolidation and sought appointment as interim lead counsel.  (*See, e.g*., ECF No. 87).  The

---

[4]      Quinn originally appeared as counsel for plaintiff in *State-Boston Retirement System v. Barclays Bank*, 1:14-cv-0475, and then appeared as counsel for plaintiff in *The City of Philadelphia, Board of Pensions and Retirement v. Barclays Bank PLC*, 1:14-cv-0876.  Cohen Milstein appeared as counsel for plaintiff in *Aureus Currency Fund, L.P. v. Barclays Bank*, 1:14-cv-0825.

3

Court consolidated the pending actions and appointed Scott+Scott and Hausfeld as interim co-lead counsel for the putative U.S. class for the Consolidated Action.  (*See* ECF Nos. 96 & 145).

On March 31, 2014, before the disclosures of any government findings or fines, Lead Counsel filed the CAC on behalf of persons who "entered into an FX instrument directly with a Defendant at or around the time of the fixing of WM/Reuters Closing Spot Rates, or who entered into an FX instrument directly with a Defendant settled in whole or part on the basis of WM/Reuters Closing Spot Rates."[5]  (ECF No. 172, ¶43).   Defendants moved to dismiss.  (ECF No. 208).  On January 28, 2015, the Court denied their motion.  (ECF No. 242).

Prior to the Court's decision on the motion to dismiss, on January 5, 2015, Lead Counsel informed the Court that they had entered into a settlement with Defendant JPMorgan for $99.5 million, plus extensive cooperation.  (ECF No. 233).  The cooperation includes attorney proffers, production of transactional data, production of documents produced pursuant to government investigations, interviews, depositions, declarations and affidavits, and trial testimony.  (*See* ECF No. 247-1 at 34-41).   The cooperation will continue until final judgment in the Consolidated Action or seven years after preliminary approval, whichever is later.  (*Id.* at 41).  On January 30, 2015, the mediator, Mr. Kenneth Feinberg, submitted a declaration in support of the settlement, stating that JPMorgan's "cooperation is not limited to WM/Reuters benchmark manipulation, permitting Class Lead Counsel *to **develop not only the claims alleged in the Amended Complaint, but also potential new claims that may arise related to the FX market**.*" (ECF No. 248, ¶¶15-16 (emphasis added)).

_____

[5]     Cohen Milstein appeared as counsel in the CAC on behalf of Plaintiff Aureus Currency Fund, L.P.  (ECF No. 172).

On February 13, 2015, the Department of Justice ("DOJ") requested a six-month stay of all discovery in the Consolidated Action. (ECF No. 257).  In response, Lead Counsel negotiated with DOJ the right to receive certain agreed-on cooperation from JPMorgan, UBS, and any other settling Defendant.  (ECF No. 272).  On March 23, 2015, the Court granted DOJ's request for a six-month stay, but allowed cooperation to continue.  (ECF No. 274).

Since February 2015, Lead Counsel has updated the Court each month, *ex parte*, about settlement negotiations with Defendants.  (ECF Nos. 252, 265, 274, 284, 295).  To date, settlements with four Defendants, totaling more than $800 million, have been publicly disclosed. Other settlements and settlement amounts remain undisclosed.

Following the JPMorgan settlement, the Court's denial of Defendants' motion to dismiss, and the announcement of government findings and fines, plaintiffs, in some cases represented by the same counsel that filed OTC actions, began filing the Futures Actions.  All of the Futures Actions rely, some using the exact language, on the facts setting forth the conspiracy alleged in the CAC.  All of the Futures Actions concede that the prices of exchange-traded FX instruments, including futures, are based on spot prices determined in the OTC market.

On February 23, 2015, Kirby McInerney LLP ("Kirby") filed the first of the Futures Actions, *Taylor v. Bank of America Corp.*, 1:15-cv-91350.  While asserting new claims under the CEA, *Taylor* arises from the same conspiracy alleged in the Consolidated Action.  For example, *Taylor* alleges "Plaintiffs and the members of the proposed [Exchange] Class were injured in ***the same manner***, and ***as result of the same misconduct***, as were traders [OTC Class members] in the FX spot market." (*Taylor*, ECF No. 1, ¶8) (emphasis added).  Moreover, *Taylor* lifted dozens of paragraphs in whole or part directly from the CAC.

On April 8, Quinn filed *Sterk v. Bank of America Corp.*, 1:15-cv-02705.  Like *Taylor*, *Sterk* alleges wrongdoing in the FX futures market based upon the same conduct underlying the Consolidated Action.  (*See, e.g.*, *Sterk*, ECF No. 1, ¶¶72-90 (discussing FX market and WM/Reuters rates); ¶¶97-104 (discussing Defendants' use of chat rooms); ¶183 ("By manipulating prices and key benchmark for spot transactions, Defendants also manipulated the prices for FX futures and options.")).

On April 15 and April 17, Kirby and Quinn submitted letters requesting consolidation of the Futures Actions (then only *Taylor* and *Sterk*) and appointment of lead counsel.  (*Taylor*, ECF No. 67; *Sterk*, ECF No. 12).  On April 20, the Court ordered, among other things, that Lead Counsel and Defendants provide their position on the relationship between the Futures Actions and the Consolidated Action by June 12.  (ECF No. 284 at 2).

Thereafter, three additional Futures Actions were filed.  On June 2, Cohen Milstein filed *Bakizada v. Bank of America Corp.*, 1:l5-cv-04230.  The *Bakizada* complaint tracks the *Sterk* complaint.  On June 9, *Teel v. Bank of America Corp.*, No. 1:15-cv-04436 was filed.  *Teel* closely tracks *Taylor*, including the same allegation that the case involves the same manner of injury as a result of the same misconduct alleged in the Consolidated Action.  (*Teel*, ECF No. 1, ¶9).  And on June 24, *Robert Charles Class A, L.P. v. Bank of America Corp.*, 1:15-cv-04926 was filed.  *Robert Charles Class A* is nearly identical to *Teel*.

On June 12, Lead Counsel submitted a letter setting forth their position that the Futures Actions should be consolidated into the Consolidated Action.  (ECF No. 296).  Lead Counsel also submitted a pre-motion conference letter requesting leave to file the SAC.  (ECF No. 300).  Between June 18 and June 23, numerous letters concerning consolidation and leadership were filed.  In one such letter, the plaintiffs in *Sterk* informed the Court that they believed Lead

Counsel would adequately represent their interest. (ECF No. 305). Quinn then appeared in *Bakizada*. (ECF No. 315).

On June 25, the Court conducted conferences concerning Lead Counsel's request for leave to file the SAC and the relationship between the Futures Actions and the Consolidated Action. The Court granted Lead Counsel leave to file the SAC and their motion to consolidate. (ECF No. 332). The Court ordered the motion to consolidate to address three issues: (1) consolidation of the Futures Actions into the Consolidated Action; (2) whether separate counsel should be appointed for the Exchange Class, if the Court consolidates all actions; and (3) why counsel should be appointed lead of the Exchange Class. (*See* ECF No. 331).

Contemporaneous with the filing of this motion, on July 16, 2015, Lead Counsel submitted the SAC. The SAC is based upon information obtained from certain settling defendants, industry and economic analysis provided by Lead Counsel's consultants, investigation and interviews by Lead Counsel, and other available information. The SAC: (1) alleges a conspiracy based upon spread-fixing, benchmark manipulation, and other collusive conduct throughout the FX trading day; (2) adds new named plaintiffs and names new Defendants; and (3) is brought on behalf of an "OTC Class," which traded directly with defendants, and an "Exchange Class," which traded FX instruments on exchanges. While the SAC alleges substantial overlap between the classes (SAC, ¶256), the SAC includes named plaintiffs who traded: (1) only OTC, (2) only on exchanges, (3) and both OTC and on exchanges. (SAC, ¶¶18-46). The SAC seeks monetary relief for both classes under the Sherman Act and the Exchange Class under the CEA.

7

## III.    ARGUMENT

### A.    Consolidating the Actions Is Necessary to Avoid Inconsistent Rulings and Promote Efficiencies

Rule 42(a) empowers the court with broad discretion to consolidate actions sharing a common question of law or fact "to avoid unnecessary costs or delay."  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  When considering consolidation, the court must determine:

> "[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives."

*Johnson*, 899 F.2d at 1285.[6]  "[S]o long as any confusion or prejudice does not outweigh efficiency concerns, consolidation will generally be appropriate." *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997).

The Consolidated Action and the Futures Actions involve many common questions of law and fact.  The Consolidated Action and the Futures Actions allege a conspiracy by Defendants to fix prices and that the conspiracy first manifested itself in the pricing of spot transactions in the OTC FX market.  (*See* SAC, ¶¶6, 9-12, 124, 139, 172, 184-186, 220, 240, 243, 414; *Taylor*, ECF No. 1, ¶¶4, 6, 81, 99, 108, 122, 139-147, 166-261,305-306; and *Bakizada*, ECF No. 18, ¶¶2,7-8, 13, 96-106, 185-186, 188, 214, 263, 269).  All actions allege that price fixing in the OTC market directly impacts the prices of FX instruments traded on exchanges. (*See* SAC, ¶¶5-6, 253, 266, 272-275, 278-286, 415; *Taylor*, ECF No. 1, ¶¶3-4, 96-100, 103-104,

---

[6]    Unless otherwise noted, citations are omitted and emphasis is added.

122, 147, 305, 307; and *Bakizada*, ECF No. 18, ¶¶5-6, 9, 13, 18, 203-212, 264, 278).  All actions bring claims under the Sherman Act and the CEA on behalf of persons who traded FX instruments on exchanges.  (*See* SAC, ¶¶419-450; *Taylor*, ECF No. 1, ¶¶329-361; *Bakizada*, ECF No. 18, ¶¶305-334).

Moreover, the Futures Actions expressly allege that the conduct at issue is identical. *Taylor* alleges, "Plaintiffs and the members of the proposed [Exchange] Class were injured in ***the same manner***, and ***as result of the same misconduct***, as were traders [OTC Class members] in the FX spot market."  (*Taylor*, ECF No. 1, ¶8).  *Teel* and *Class* allege the same.  (*Teel*, ECF No. 1, ¶9; *Class*, ECF No. 1, ¶9).  *Bakizada* alleges, "[a]s major participants in the FX market, Defendants knew that ***their manipulation of FX spot prices*** would also cause and, in fact, did cause manipulation of prices of FX futures and options on futures…."  (*Bakizada*, ECF No. 1, ¶187).

The nearly identical nature of the actions demonstrates that consolidation is appropriate and beneficial.  The Court, the parties, and third parties will all benefit from consolidated discovery, pre-trial motion practice, and trial.  In addition to promoting efficiencies, consolidation will avoid the potential for inconsistent adjudications of common law and fact issues.  Given there are no specific risks of prejudice or possible confusion that preclude consolidation, the Court should consolidate the Futures Actions into the Consolidated Action. *See, e.g.*, *In re Facebook, Inc., IPO Sec. and Deriv. Litig.*, 288 F.R.D. 26, 35 (S.D.N.Y. 2012) (consolidating cases "on behalf of similar classes, asserted against some of the same defendants, arising out of the same series of events"); *Darezzo v. 200 Ninth Restaurant LLC*, No. 14 Civ. 9081, 2015 WL 195852, at *3 (S.D.N.Y. Jan. 14, 2015) (consolidating actions where both actions' claims "turn on entirely the same – or at a minimum, virtually all the same – evidence").

**B.      Appointment of Separate Counsel to Represent the Exchange Class Is Unnecessary**

**1.      There Is No Fundamental Conflict in Lead Counsel Representing Both Classes in the Litigation**

A fundamental conflict is one that goes to the very heart of the litigation. *Charron v. Wiener*, 731 F.3d 241, 250 (2d Cir. 2013). *See also* Samuel Issacharoff & Richard A. Nagareda, *Class Settlements Under Attack*, 156 U.PA.L.REV. 1649, 1684 (June 2008) ("[I]ntraclass conflicts are most apparent when a settlement contemplates a direct wealth transfer from one portion of the class to another.").

Absent a fundamental conflict, there is no need to appoint separate class counsel. *Charron*, 731 F.3d at 250. As the Second Circuit recently recognized, if every potential conflict "automatically created subclasses that required separate representation, the class action procedure would become even more cumbersome than it already is, and would create even more transaction costs in the form of legal fees." *Id.* Importantly, the decisions of this court recognize that there is no inherent fundamental conflict in representing both OTC and Exchange Plaintiffs in the same action. *Compare In re: Gold Fixing Antitrust and Commodity Exchange Act Litig.*, 1:14-cv-3111-VEC, ECF No. 7 at 3 (S.D.N.Y. June 16, 2014) (attached as Exhibit A to ECF No. 296) (declining to appoint separate counsel for physical and exchange purchasers); *In re London Silver Fixing, Ltd., Antitrust Litig.*, 14-MD-2573, ECF No. 17 at 4 (S.D.N.Y. Nov. 25, 2014) (attached as Exhibit B to ECF No. 296) (appointing lead counsel to represent both purchasers of physical silver and silver financial instruments); *with In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262 (NRB), 2011 WL 5007957, at *2 (S.D.N.Y. Oct. 18, 2011)

(appointing separate counsel to address a "potential conflict"[7] between OTC and exchange plaintiffs).  Each case must be evaluated on its own merits.

Here, both classes have closely aligned interests.  Both allege a Sherman Act claim.  The Exchange Class also alleges CEA claims premised upon the same conduct at issue in the Sherman Act claim.  Notably, the two Classes are comprised of many of the same class members due to the substantial overlap between persons that trade OTC and on exchanges.  *Taylor* succinctly expresses the close alignment of the interests of the OTC Class and Exchange Class: "Plaintiffs and the members of the proposed [Exchange] Class were injured in ***the same manner***, and ***as a result of the same misconduct***, as were traders [OTC Class members] in the FX spot market."  (*Taylor*, ECF No. 1, ¶8).

The gravamen of each Class's claims further demonstrate the close alignment of their interests.  All claims are premised on Defendants' conspiracy to fix prices in the FX market, specifically, spot prices in the OTC market.  Spot prices determine the prices of all FX instruments.  Thus, whether they purchased FX instruments directly from Defendants or on an exchange, absent proof of Defendants' collusive conduct in the OTC market, neither Class will recover under either the Sherman Act or the CEA.

Even if one Class has a different interest in proving an element of a claim, a fundamental conflict does not arise.  In *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2nd Cir. 2009), the Second Circuit held that there was no fundamental conflict that would prohibit certifying a class asserting claims under the Securities Act of 1933 and the Securities Exchange Act of 1934, even though the statutes have different causation standards.  The Second Circuit

---

[7]     *But see Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009) (even at the class certification stage, a potential conflict will not defeat certification).

noted its confidence in the ability of the district court to "utilize the available case management tools to see that all members of the class are protected." *Id*. at 37.

There is no conflict – let alone a fundamental one – among the two Classes in the SAC. This is not a typical antitrust action involving direct purchasers and indirect purchasers who are fighting for the same dollar. The OTC Class and the Exchange Class have separate injuries based on distinct transactions; there is thus no concern that the OTC Class "passed on" damages to the Exchange Class. Neither Class is antagonistic to the other. Moreover, there is little concern of insufficient funds to pay damages to both Classes, given that Defendants are well-capitalized global financial institutions. Additionally, neither Class needs to sacrifice the other to achieve recovery. There are simply no fundamental conflicts between the Classes that prevent Lead Counsel from representing them both.

> **2.    Counsel in the Futures Actions Do Not Identify Any Fundamental Conflict and Their Arguments Regarding Settlements Are Premature**

Counsel in the Futures Actions argued in their letters and at the June 25 hearing that a fundamental conflict prevents Lead Counsel from representing the interests of both the OTC and Exchange Classes. These arguments are primarily directed at settlements negotiated by Lead Counsel. Given that the settlements have been not finalized, Court-approved notice has not yet been issued, and a period to object or opt-out has not happened, these arguments are premature. Counsel in the Futures Actions and their clients will have ample opportunity to object, opt out, and otherwise comment and act on any settlement impacting their rights at the appropriate time. None of the cases cited by Futures Action arise in the context of case consolidation or appointment of class action lead counsel. Their cases on conflicts all relate to objections to settlements. Nevertheless, Lead Counsel will address their arguments, which are based on an erroneous understanding of the applicable facts and law.

Counsel in the Futures Actions do not – and cannot, in light of their own allegations – dispute the factual identity of the cases.  Instead, they contend that Lead Counsel: (1) lacked authority to negotiate substantial settlements on behalf of members of both the OTC Class and the Exchange Class and (2) the settlements negotiated on behalf of the OTC Class create an irreparable structural conflict barring representation of the Exchange Class.  (*See*, *e.g.*, ECF No. 335 at 17:8-17:11, ECF No. 323 at 1, ECF No. 327 at 1-3).  Counsel is mistaken on both counts. Lead Counsel had the authority to negotiate the settlements and has exercised the utmost care to ensure that there is no conflict, let alone a fundamental one.

a.     **Lead Counsel Had Authority to Negotiate on Behalf of Exchange Traders**

Certain counsel in the Futures Actions have argued that Lead Counsel had no authority to negotiate the settlements reached in this matter relating to instruments traded on exchanges. Relying on *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 (2d Cir. 1981), they contend that Lead Counsel could only negotiate a settlement that resolved the OTC claims of the OTC Class.  (*See*, *e.g.*, ECF No. 335 at 17:8-17:11, ECF No. 323 at 1, ECF No. 327 at 1-3.)

This argument ignores long-standing Second Circuit case law that permits claims not originally asserted to be settled.  *See Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982). *Weinberger* involved the settlement of a securities class action.  *Id*. at 64.  The original complaints were brought on behalf of the securities purchasers and alleged violations of the federal securities law and common law fraud.  *Id*.  These complaints were superseded by a consolidated amended complaint, which was filed along with a proposed settlement.  *Id*.  The amended complaint included additional state law breach-of-fiduciary-duty claims and added a class – not previously included – of persons who merely held, rather than purchased, the

13

securities.  *Id*. at 64, 67-68.  The notice of the settlement provided to the class "clearly stated this and afforded an opportunity to opt out."  *Id*. at 77.  Furthermore, the settlement provided for the payment of all claims.  *Id*.

On appeal, objectors argued that the settlement was condemned by *Super Spuds*.  Writing for the Second Circuit, Judge Friendly, who authored *Super Spuds,* disagreed.  The court noted the situation was "quite different," explaining:

> We have no intention to depart in any way from *National Super Spuds*; we simply find it inapplicable to the facts here and hold, in agreement with other courts, that there is no rigid rule against the addition of new claims shortly before submission of a proposed settlement provided that proper notice and opportunity for opting out are afforded, and that the settlement fairly and adequately provides for the new claims.

*Id*.

Other Second Circuit cases recognize the authority of class counsel to settle claims not asserted in the operative complaint.  *See Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982) ("Although negotiations . . . were conducted by undesignated class representatives without formal pretrial discovery, this, standing alone, [does] not preclude judicial approval."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.").  Even *Super Spuds* acknowledged that "a settlement could properly be framed so as to prevent class members from subsequently asserting claims relying on a legal theory different from that relied upon in the class action complaint but depending upon the very same set of facts." 660 F.2d at 18 n.7.

Here, during the earliest negotiations, Lead Counsel negotiated on behalf of the OTC Class that included thousands of Exchange Class members.  Consistent with *Weinberger*, any

settlement will afford class members sufficient notice and the opportunity to opt out in accordance with Rule 23.  The contention that Lead Counsel were powerless to discuss potential exchange claims in preliminary settlement negotiations prior to filing the SAC, when the nature of those claims only became clearer as a result of those negotiations, finds no support in *Super Spuds* or in any other case.

### b.   Plaintiffs' Settlements Demonstrate Common Interests Between the Classes, Not a Fundamental Conflict

Fundamental conflicts in settlements "are those that give rise to a significant potential for negotiation on behalf of an undifferentiated class to skew in some predictable way the design of class-settlement terms in favor of one or another subgroup for reasons unrelated to evaluation of the relevant claims." Issacharoff & Nagareda, 156 U.PA.L.REV. at 1684.  None of these concerns are present here.  There are separate settlement funds, neither of which is in any way dependent on the other.  There is no concern that Plaintiffs are "releasing claims for no compensation," or "rob[bing] Peter . . . to partially pay Paul," as counsel in the Futures Actions argue.  (*See* ECF No. 323 at 2).  Rather, Lead Counsel worked to structure an independent and separate settlement fund on behalf of persons who traded FX Instruments on exchanges.  As a result, the Exchange Class will receive substantial relief and the opportunity for cooperation from settling Defendants as they pursue their claims against non-settling Defendants.  Thus, the settlements here do not force persons with divergent interests to compete for the same settlement fund and, in doing so, extinguish their potential for relief.

Further, "class counsel may represent multiple sets of litigants – whether in the same action or in a related proceeding – so long as the litigants' interests are not inherently opposed. Indeed, courts have recognized that concurrent representation may enable counsel to leverage a

better settlement for both sets of plaintiffs due to a defendant's desire to obtain a global resolution." NEWBERG ON CLASS ACTIONS §3:75 (5th ed.). [8]

The settlements possess none of the infirmities giving rise to the fundamental conflicts present in the cases on which counsel for the Futures Actions rely. For example, in *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), the court found a conflict between class members who held only Category C claims and class members who held a combination of Category A, B, and C claims. The court noted that 99% of all claims were Category C. *Id.* at 246. The court further noted that Category C-only plaintiffs "are interested exclusively in maximizing the compensation for that one category of claim." *Id.* at 252. Nevertheless, Category C-only plaintiffs "were obligated to advance the collective interests of the class, rather than those of the subset of class members whose claims mirrored their own." *Id.* Unlike the separate settlement funds that Lead Counsel have negotiated in this matter, the settlement fund in *Literary Works* contained a liability cap that was first enforced by reducing only Category C claims. Thus, Category C-only plaintiffs could see their monetary claims extinguished, leaving the entire fund to Category A and B claimants. The court could not discern, and the proponents of the settlement could not offer, any reason why this burden should be shouldered solely by Category C-only plaintiffs. *Id.* at 253-54. Therefore, the court expressed concern about "[t]he selling out of one category of claim for another…." *Id.* at 252. This concern is not present here.

---

[8]     *See also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (noting that "one set of negotiators, with the authority to release defendants from all claims, would be in a better bargaining position than negotiators with authority to compromise only part of the action").

Likewise, both *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) are clearly distinguishable.  In *Amchem*, the Supreme Court found a fundamental conflict in "a single giant class" containing "parties with diverse medical conditions" relating to long term exposure to asbestos.  *Id.* at 595.  The Court found that the interests of those currently injured, who wanted immediate payments, did not align with the interests of exposure-only plaintiffs, who wanted "an ample, inflation-protected fund for the future."  *Id.*  In *Ortiz*, the Supreme Court reiterated that a class divided between holders of present and future claims requires subclasses.  527 U.S. at 356.  The Court also found structural conflict based on available insurance coverage for certain claims.  *Id.*

Finally, discussions of the adequacy or value of any settlement are premature.  Plaintiffs are not currently seeking preliminary approval of any settlement.  But, in any event, the settlements reached by Lead Counsel do not give rise to a conflict, let alone a fundamental one. All claims rise and fall on the same proof and in the same direction.  Neither class seeks to limit the recovery of the other.  Members of the OTC Class are not competing with the Exchange Class over the same limited fund.  More importantly, there is nothing to indicate that Lead Counsel did not maximize the recovery available to each class.

### 3. The Court May Appoint Separate Counsel for Settlement Allocation as Necessary

Should the need arise, the Court can appoint counsel in limited roles to ensure independent representation on discrete issues.  For example, courts sometimes appoint allocation counsel relating to settlements.  *See*, *e.g.*, *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 (3d Cir. 2004) (recognizing limited role for independent counsel, "any potential for conflicts of interest between and among consumers and TPPs [third party payors, such as insurance companies] that may have arisen prior to and during the settlement negotiations were adequately

represented by the presence of separate counsel for consumers and TPPs"); *Nichols v. SmithKline Beecham Corp.*, Civ.A.00, 2005 WL 950616, at *17 (E.D. Pa. Apr. 22, 2005) (finding that designating independent allocation counsel to represent different class constituents resolved any purported conflict of interest with respect to allocation of settlement fund).   There are well-qualified law firms currently working with Lead Counsel who could ably fill the role of allocation counsel should the need arise.

### C.   Scott+Scott and Hausfeld Should Be Appointed as Interim Co-Lead Counsel for the Exchange Class

The Court should allow Lead Counsel to retain control over the litigation.  Lead Counsel has demonstrated innovation, commitment, efficiency, and ability in pursuing claims to date, which has resulted in numerous litigation successes and lucrative settlements.  Lead Counsel successfully opposed Defendants' motion to dismiss.  In so doing, Lead Counsel navigated through difficult legal issues raised in briefing and argument.

Lead Counsel crafted a highly successful settlement negotiation strategy designed to achieve numerous settlements of increasing value to maximize recovery.  The JPMorgan settlement, reached before the motion to dismiss, was an "ice-breaker" settlement.  As intended, this strategy resulted in a number of Defendants contacting Plaintiffs regarding the possibility of settlement, including amnesty applicant, UBS.  Lead Counsel has also, as part of those settlement negotiations, ensured that the Classes receive extensive cooperation.  Early and extensive cooperation is a considerable asset when pursuing claims against non-settling Defendants.  Cooperation from settling Defendants allowed Plaintiffs to negotiate more remunerative settlements with later-settling Defendants.

Lead Counsel have assembled and relied on a team of highly qualified experts in the fields of foreign exchange, industrial organization economics, finance, and litigation damages,

including Professor Martin Evans of Georgetown University who helped develop the field of FX microstructure.[9]  This team, combined with Lead Counsel's extensive work to date gives Lead Counsel an understanding of the FX market not possessed by counsel in the Futures Actions.

Lead Counsel have also productively liaised with the DOJ throughout the case, including reaching a noteworthy compromise that allowed Plaintiffs to obtain cooperation from settling Defendants while the DOJ's investigation is ongoing.  As a result of securing the DOJ's permission to receive this cooperation from settling Defendants, Plaintiffs obtained the facts necessary to expand the allegations in SAC to cover additional conduct, instruments, and defendants.  These are allegations that no other counsel can substantiate.

Further, Lead Counsel is well-equipped to represent the Exchange Class with respect to their CEA claims.  The team of attorneys Lead Counsel have used to litigate the case to date includes a former professor of commodities law and regulation at American University, Washington College of Law (Hausfeld's William Butterfield).  Mr. Butterfield's past experience in CEA cases includes years of service as outside counsel to the Federal Deposit Insurance Corporation and the Resolution Trust Corporation, where he helped to recover commodities

---

[9]     Professor Evans has submitted a declaration demonstrating that the declaration of H. Nejat Seyhun, Ph.D. submitted by counsel in *Taylor* is based on a flawed methodology and on a misunderstanding of the FX market and the surveys coordinated by BIS.  (*See* Declaration of Martin Evans ("Evans Decl."), at 2.)  Among Dr. Seyhun's more serious errors are the following: (1) using a flawed mathematical formula to calculate the ratio of exchange versus OTC volume (*Id*. at 3-4); (2) excluding all OTC interbank trades when, in fact, many of those trades were made by class members under prime brokerage agreement (*Id*. at 7); (3) excluding OTC trades reported by the Federal Reserve Bank of New York on the grounds the trades occurred in foreign branches of U.S. banks in spite of the fact that all trades reported by the Federal Reserve Bank occurred at sales desks located in the United States (*Id*. at 8-9); (4) excluding OTC trades that are properly part of the OTC Class on the basis they occurred outside the United States (*Id*. at 9); and (5) failing to exclude exchange trades by defendant banks. (*Id.* at 9). These material errors result in unreliable and flawed estimates.

losses on behalf of failed savings and loans, and *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999), where he helped to secure settlements of more than $149,350,000, the largest settlement in CEA history.

Lead Counsel's experience will be supplemented by the ability to, as this Court noted in appointing Lead Counsel, "draw on other firms as needed" to best serve the class. *See* ECF No. 103 at 44. Lead Counsel have the ability to draw upon the substantial wealth of experience offered by firms who have appeared in the Consolidated Action, such as Lowey Dannenberg Cohen & Hart LLP and Labaton Sucharow LLP, whose experience in commodities actions includes leadership roles in each of the four largest recoveries under the CEA to date. This depth of legal talent will ensure the CEA claims are well-litigated.

Finally, since being appointed, Lead Counsel have continued to achieve major successes in other cases, underscoring their ability to best represent the Exchange Class here. For instance, on March 27, 2015, Scott+Scott, serving as co-lead counsel, secured final approval for settlements of $590.5 million in *Dahl v. Bain Capital Partners, LLC*, No. 07-cv-12388 (D. Mass.). Hausfeld's 2014 trial victory in *O'Bannon v. National Collegiate Athletic Association*, No. C09-1967 CW (N.D. Cal.), was recently named a "Litigation of the Year" by the Global Competition Review. The Exchange Class will also benefit from access to Hausfeld's affiliated firm, Hausfeld & Co. LLP, in London, because a large number of witnesses, evidence, and class members who traded on U.S. exchanges will be located in London and Europe.

## IV.    CONCLUSION

For the foregoing reasons, the Court should consolidate the Futures Actions into the Consolidated Action and appoint Scott+Scott and Hausfeld as Interim Co-Lead Counsel for the Exchange Class.

DATED:  July 16, 2015                    Respectfully submitted,

                                         SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

                                         /s/Christopher M. Burke
                                         CHRISTOPHER M. BURKE (*pro hac vice*)
                                         WALTER W. NOSS (*pro hac vice*)
                                         KRISTEN M. ANDERSON (*pro hac vice*)
                                         STEPHANIE A. HACKETT (*pro hac vice*)
                                         JENNIFER J. SCOTT (*pro hac vice*)
                                         707 Broadway, Suite 1000
                                         San Diego, CA 92101
                                         Telephone: 619-233-4565
                                         Facsimile:  619-233-0508
                                         cburke@scott-scott.com
                                         wnoss@scott-scott.com
                                         kanderson@scott-scott.com
                                         shackett@scott-scott.com
                                         jscott@scott-scott.com

                                                 -and-

                                         SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
                                         DAVID R. SCOTT (DS-8053)
                                         JOSEPH P. GUGLIELMO (JG-2447)
                                         SYLVIA M. SOKOL (SS-0317)
                                         THOMAS K. BOARDMAN (TB-0530)
                                         The Chrysler Building
                                         405 Lexington Avenue, 40th Floor
                                         New York, NY 10174
                                         Telephone: 212-223-6444
                                         Facsimile:  212-223-6334
                                         jguglielmo@scott-scott.com
                                         ssokol@scott-scott.com
                                         tboardman@scott-scott.com

                                         HAUSFELD LLP
                                         MICHAEL D. HAUSFELD
                                         WILLIAM P. BUTTERFIELD
                                         REENA ARMILLAY GAMBHIR
                                         TIMOTHY S. KEARNS
                                         NATHANIEL C. GIDDINGS
                                         1700 K Street, NW, Suite 650
                                         Washington, DC 20006
                                         Telephone: 202-540-7143
                                         Facsimile:  202-5407201
                                         mhausfeld@hausfeld.com
                                         wbutterfield@hausfeld.com
                                         rgambhir@hausfeld.com
                                         tkearns@hausfled.com
                                         ngiddings@hausfeld.com

                                                 -and-

21

HAUSFELD LLP
MICHAEL P. LEHMANN
CHRISTOPHER L. LEBSOCK
BONNY E. SWEENEY
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1949
Facsimile:  415-693-0770
mlehman@hausfeld.com
clebsock@hausfeld.com
bsweeney@hausfeld.com

*Interim Co-Lead Counsel*

KOREIN TILLERY, LLC
STEPHEN M. TILLERY (*pro hac vice*)
ROBERT L. KING (*pro hac vice*)
AARON M. ZIGLER (*pro hac vice*)
STEVEN M. BEREZNEY (*pro hac vice*)
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
Saint Louis, MO  63101-1612
Telephone: 314-241-4844
Facsimile: 314-241-3525
stillery@koreintillery.com
rking@koreintillery.com
azigler@koreintillery.com
sberezney@koreintillery.com

-and-

KOREIN TILLERY, LLC
GEORGE A. ZELCS (*pro hac vice*)
205 N. Michigan Ave, Suite 1950
Chicago, IL 60601-5927
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com

*Counsel for Plaintiffs Haverhill Retirement System
and Oklahoma Firefighters Pension and Retirement
System, Robert Miller, Mark Miller, and Peter Rives*

OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
WILLIAM J. LEONARD *(pro hac vice)*
RIGEL FARR (*pro hac vice*)
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
Telephone: 215-665-3000
Facsimile: 215-665-3165
william.leonard@obermayer.com
rigel.farr@obermayer.com

22

BONI & ZACK LLC
MICHAEL J. BONI (*pro hac vice*)
JOSHUA D. SNYDER (*pro hac vice*)
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
Facsimile:  610-822-0206
mboni@bonizack.com
jsnyder@bonizack.com

*Counsel for Plaintiff the City of Philadelphia,*
*Board of Pensions and Retirement*

ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

*Counsel for Plaintiff Employees' Retirement System*
*of the Government of the Virgin Islands*

WOLF POPPER LLP
MARIAN R. ROSNER
PATRICIA I. AVERY
FEI-LU QIAN
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone:  212-759-4600
Facsimile:  212-486-2093
mrosner@wolfpopper.com
pavery@wolfpopper.com
fqian@wolfpopper.com

*Counsel for Plaintiff Employees' Retirement*
*System of Puerto Rico Electric Power Authority*

BERMAN DeVALERIO
JOSEPH J. TABACCO, JR. (JJT-1994)
TODD A. SEAVER (*pro hac vice*)
SARAH KHORASANEE MCGRATH (*pro hac vice*)
JESSICA MOY (*pro hac vice*)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: 415-433-3200
Facsimile: 415-433-6382
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com
smcgrath@bermandevalerio.com
jmoy@bermandevalerio.com

*Counsel for Plaintiff Fresno County Employees'
Retirement Association*

LABATON SUCHAROW LLP
GREGORY S. ASCIOLLA
JAY L. HIMES
ROBIN A. VAN DER MEULEN
MATTHEW J. PEREZ
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477
gasciolla@labaton.com
jhimes@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com

*Counsel for Plaintiff State-Boston Retirement
System, Marc G. Federighi, and Michael J. Smith*

CRIDEN & LOVE, P.A.
MICHAEL E. CRIDEN
LINDSEY C. GROSSMAN
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: 305-357-9000
Facsimile: 305-357-9050
mcriden@cridenlove.com
lgrossman@cridenlove.com

*Counsel for Plaintiffs J. Paul Antonello, Marc G.
Federighi and Michael J. Smith*

GRANT & EISENHOFER, P.A.
PETER A. BARILE III (PB-3354)
485 Lexington Avenue
New York, NY 10017
Telephone: 646-722-8500
Facsimile: 646-722-8501
pbarile@gelaw.com

*Counsel for Plaintiff Syena Global Emerging
Markets Fund, LP*

ENTWISTLE & CAPPUCCI LLP
ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
280 Park Avenue, 26th Floor West
New York, NY 10017
Telephone:  212-894-7200
Facsimile:  212-894-7272
aentwistle@entwistle-law.com
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

*Counsel for Plaintiffs Tiberius OC Fund, Ltd. and
Value Recovery Fund L.L.C.*

LOWEY DANNENBERG COHEN & HART, P.C.
VINCENT BRIGANTI
GEOFFREY M. HORN
PETER D. ST. PHILLIP
RAYMOND P. GIRNYS
One North Broadway
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com
rgirnys@lowey.com

LOWEY DANNENBERG COHEN & HART, P.C.
GERALD LAWRENCE, ESQ.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA  19428
Telephone: 610-941-2760
Facsimile: 610-862-9777
glawrence@lowey.com

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
ERIC L. YOUNG
NATALIE FINKELMAN BENNETT
35 East State Street
Media, PA  19063
Telephone: 610-891-9880
Facsimile: 866-300-7367
eyoung@sfmslaw.com
nfinkelman@sfmslaw.com

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
JAMES E. MILLER
65 Main Street
Chester, CT  06412
Telephone: 860-526-1100
Facsimile: 860-526-1120
jmiller@sfmslaw.com

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ  08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

MANDEL BHANDARI LLP
RISHI BHANDARI
EVAN MANDEL
80 Pine Street, 33rd Floor
New York, NY  10005
Telephone: 212-269-5600
Facsimile: 646-964-6667
rb@mandelbhandari.com
em@mandelbhandari.com

*Counsel for Plaintiff United Food and Commercial
Workers Union and Participating Food Industry
Employers Tri-State Pension Fund*

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ  08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

26

*Counsel for Plaintiffs Doug Harvey, Izee Trading Company, and Richard Preschern d/b/a Preschern Trading*

CERA LLP
SOLOMON B. CERA
C. ANDREW DIRKSEN
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone:  415-777-2230
Facsimile:  415-777-5189
scera@cerallp.com
cdirksen@cerallp.com

*Counsel for Plaintiff Aureus Currency Fund L.P.*

FREED KANNER LONDON & MILLEN LLC
MICHAEL J. FREED
STEVEN A. KANNER
2201 Waukegan Road, Suite 130
Bannockburn, Illinois 60015
Telephone:  224-632-4500
Facsimile:   224-632-4521
mfreed@fklmlaw.com
skanner@fklmlaw.com

*Counsel for Plaintiffs Thomas Gramatis and John Kerstein*

NUSSBAUM LAW GROUP, P.C.
LINDA P NUSSBAUM
570 Lexington Ave., 19 floor
New York, NY, 10022
Telephone: 212 702 7054
lnussbaum@nussbaumpc.com

*Counsel for Plaintiffs Jeffrey Sterk, Kimberly Sterk, and Michael Melissinos*

THE MOGIN LAW FIRM, P.C.
DANIEL J. MOGIN
JODIE M. WILLIAMS
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone:  619-687-6611
Facsimile:  619-687-6610
dmogin@moginlaw.com
jwilliams@moginlaw.com

STEYER, LOWENTHAL, BOODROOKAS
ALVAREZ & SMITH LLP
ALLAN STEYER
JAYNE PEETERS
One California Street, Third Floor
San Francisco, CA 94111
Telephone: 415-421-3400
Facsimile:  415-421-2234
asteyer@steyerlaw.com
jpeeters@steyerlaw.com

*Counsel for Plaintiffs Haverhill Retirement System
and Oklahoma Firefighters Pension and Retirement
System*

FINE, KAPLAN AND BLACK, R.P.C.
ROBERTA D. LIEBENBERG
ADAM PESSIN
One South Broad St., Suite 2300
Philadelphia, PA 19107
Telephone:  215-567-6565
Facsimile:  215-568-5872
rliebenberg@finekaplan.com
apessin@finekaplan.com

MOTLEY RICE LLC
WILLIAM H. NARWOLD
DONALD A. MIGLIORI
MICHAEL M. BUCHMAN
JOHN A. IOANNOU
600 Third Avenue, Suite 2101
New York, NY 10016
Telephone:  212-577-0040
Facsimile:  212-577-0054
bnarwold@motleyrice.com
dmigliori@motleyrice.com
mbuchman@motleyrice.com
jioannou@motleyrice.com

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW VAN TINE
115 S. LaSalle St., Suite 2101
Chicago, IL 60603
Telephone: 312-322-3400
Facsimile:  312-676-2676
mmiller@millerlawllc.com
mvantine@millerlawllc.com

*Of Counsel for Plaintiffs*

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under the laws of the United States of America that the foregoing is true and correct.  Executed on July 16, 2015.

<div style="margin-left:40%">

*/s/* Christopher M. Burke
Christopher M. Burke
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com

</div>