**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____x | | |
| IN RE FOREIGN EXCHANGE BENCHMARK | : | **ECF CASE** |
| RATES ANTITRUST LITIGATION | : | |
| | : | No. 13-CV-07789-LGS |
| | : | |
| _____x | | |
| | : | |
| This Document Relates To | : | |
| | : | |
| 1:15-cv-02705-LGS | : | |
| _____x | | |

*STERK* **PLAINTIFFS' MEMORANDUM IN RESPONSE TO PLAINTIFFS'**
**MOTION TO CONSOLIDATE AND TO APPOINT INTERIM CO-LEAD COUNSEL**

## TABLE OF CONTENTS

Page #

PRELIMINARY STATEMENT…....………………………………………….…………………1

    I.      RELEVANT BACKGROUND…………… ……………………….....………...2

    II.     RESPONSES TO COURT-ORDERED QUESTIONS (ECF 331)………………………………………………………………………….…6

           A.     Should the motion of Lead Plaintiffs in 13 Civ. 7789 to consolidate for all purposes all of the above-captioned actions be granted?..................................................................................................6

           B.     Should separate counsel be appointed for a "Futures" (or some other) subclass if all actions are consolidated?......................................................10

           C.     If separate counsel should be appointed, who should serve as Lead Counsel for the new class or subclass and why?.......................................11

CONCLUSION………………...…..…………………………………………………………..11

**TABLE OF AUTHORITIES**

**Cases**   **Page #**

*Bakizada v. Bank of America Corp.*,
    No. 15-cv-4230 (S.D.N.Y.)……………………………………………………………..4, 5

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
    No. 11-md-2221 (E.D.N.Y. Feb. 28. 2014)………………………………………………….9

*In re Gold Fixing Antitrust and Commodity Exchange Act Litig.*,
    No. 14-cv-3111 (S.D.N.Y. June 16, 2014)……………………………………………….…..8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11-md-2262-NRB, 2014 U.S. Dist. LEXIS 153634 (S.D.N.Y. Oct. 10, 2014)……7, 8

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    No. 05-md-1720 (E.D.N.Y. Apr. 8, 2013)……………………………………………….....9

*Sterk v. Bank of America Corp.*,
    No. 15-cv-02705 (S.D.N.Y.)…………………………...………………………*passim*

*Taylor v. Bank of America*,
    No. 1:15-cv-1350 (S.D.N.Y.)…………………………………………………………...4, 5

*Wallace v. Intralinks Holdings, Inc.*,
    302 F.R.D. 310 (S.D.N.Y. 2014)……………………………………………………….8

**Rules**

Fed. R. Civ. P. 23(g)(1)(E)………………………………………………………………………10

Fed. R. Civ. P. 42(a)……………………………………………………………………………7

**Other Authorities**

Fed. R. 23(g) Advisory Committee Notes……………………………………………………….10

Manual for Complex Litigation (4th Ed.)

    § 10.23……………………………………………………………………………………10

    § 14.212-13……………………………………………………………………………...3

    § 21.222……………………………………………………………………………….....9

    § 40.22…………………………………………………………………………………….1

Plaintiffs in *Sterk v. Bank of America Corp.*, 1:15-cv-02705 (the "*Sterk* Plaintiffs"), respectfully submit this memorandum of fact and law in response to the Memorandum in Support of Plaintiffs' Motion to Consolidate and to Appoint Interim Co-Lead Counsel (ECF 348), and the questions the Court posed in its order of June 29, 2015 (ECF 331). The *Sterk* Plaintiffs concur in every respect with Lead Plaintiffs' submission, including their responses to the Court's questions: (1) Plaintiffs' motion to consolidate for all purposes all of the pending related actions should be granted; (2) Co-Lead Counsel "can 'draw on other firms as needed'"[1] in the Consolidated Action to perform limited roles to ensure "independent representation on discrete issues" (ECF 348 at 17); and (3) the firms of Scott + Scott, LLP and Hausfeld LLP (collectively "Co-Lead Counsel") should retain their leadership over the Consolidated Action.[2] The *Sterk* Plaintiffs are confident that Co-Lead Counsel will call upon other Plaintiffs' counsel, where warranted, to ensure such representation as to discrete issues. The orders appointing lead counsel allow them broad latitude in prosecuting the Consolidated Action on behalf of all Plaintiffs, and their leadership has been exemplary.[3] Lead counsel in class actions routinely call upon other counsel for specific tasks, whether it be discovery, working with experts, briefing, or addressing allocation issues. *See, e.g.,* Manual for Complex Litigation, (4th Ed.) § 40.22.

## PRELIMINARY STATEMENT

No party contests that plaintiffs who traded in the over-the-counter ("OTC") foreign exchange market allege the same conspiracy and price manipulation as that alleged by plaintiffs

---

[1] ECF 348 at 20 (quoting Hr'g Tr., Feb. 13, 2014, at 43); *see also* ECF 103 at 43.

[2] The "Consolidated Action" is *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 1:13-cv-07789 (S.D.N.Y.).

[3] *See* ECF 96, 145 (appointing Lead Counsel). See also ECF 114 (application for Hausfeld LLP to serve as Co-Lead Counsel, detailing proposed duties of Lead Counsel) (granted at ECF 145).

1

who traded in the foreign exchange futures market. That core common set of allegations alone should dictate that both classes can be most efficiently represented by common lead counsel, as contemplated by Rule 42 of the Federal Rules of Civil Procedure.

The wide-ranging overlap between the OTC and Futures lawsuits, evident on the face of the complaints in the respective cases, decisively favor consolidation even if separate issues as to settlement may require further attention. As Co-Lead Plaintiffs' submission makes clear, issues such as settlement can be readily addressed by appointing other plaintiffs' counsel with a limited assignment. This flexibility would eradicate conflict without sacrificing the efficiency resulting from consolidation for all other purposes, under the continued overall leadership of Co-Lead Counsel.

In light of their estimable efforts to this point, the interests of the class as a whole, the substantial factual and legal overlap of the classes' claims, and the efficient prosecution of this action, *Sterk* plaintiffs agree that Co-Lead Counsel should "select who will work with [them] and in what capacity." ECF 152 at 31.

I.  **RELEVANT BACKGROUND**

Scott + Scott, LLP ("Scott + Scott") filed the first foreign exchange antitrust complaint almost two years ago. Twelve similar complaints followed, all alleging the same wrongdoing on behalf of the same type of plaintiffs (those who transacted in the OTC market); none of those twelve complaints alleged any injury to plaintiffs by virtue of transactions in the foreign exchange ("FX") futures market. Plaintiffs in those suits included Syena Global Emerging Markets Fund, LP ("Syena"), represented by Nussbaum Law Group, P.C. ("NLG") whose principal, Linda P. Nussbaum, was then head of the antitrust department at Grant & Eisenhofer, P.A. ("G&E").

Several firms (but not G&E) moved to be appointed as lead counsel. At the lead counsel hearing, this Court raised the possibility of establishing subclasses. Counsel, speaking for all plaintiffs, assured the Court that "we don't contemplate [that] subclasses [are] necessary at this time." ECF 103 at 13-14. The Court appointed Scott + Scott as the sole lead counsel, maintaining that "having a smaller firm that can draw on other firms as needed will serve the class best in this case." *Id.* at 43-44. The Court also asked Scott + Scott to submit "a letter with a proposal for how you would structure the leadership of the representation of the class, of course including Mr. Hausfeld[.]" *Id.* at 42-43.

Scott + Scott's subsequent letter detailed its vision for management of the team it would lead, along with Hausfeld LLP:

> Where appropriate, we would involve counsel who represent class representatives named in the consolidated complaint, including, for example, in the preparation of discovery and defense of any deposition of their clients. Certain other plaintiffs' counsel may have engaged in investigative work, which we would integrate where beneficial and not duplicative. In addition, there may be situations where a firm offers particularized expertise with regard to an issue facing the class, such as a legal or expert issue, where assignment of tasks to such a firm would be sensible. When we do utilize the expertise of other members of the plaintiff team, we would closely and collegially manage their work to ensure maximum efficiency and effectiveness.
>
> At all times the interests of the class will be paramount. Consistent with the recommendation of the [Manual for Complex Litigation, Fourth], Scott + Scott and Hausfeld would monitor the activities of all plaintiff counsel to ensure that schedules are met and unnecessary expenditures of time and funds are avoided.

ECF 114 at 1-2 (citing Manual for Complex Litigation, (4th Ed.) §§ 14.212-13, 40.22).

The Court granted Scott + Scott's application to appoint Hausfeld as co-lead counsel, having been "persuaded by the idea that a smaller firm that can call on other firms, such as the Hausfeld firm. . . . I believe that lead counsel should have the ability to select who will work with

3

it and in what capacity, and that is the primary basis for my honoring the request of Hausfeld." ECF 152 at 31; *see also* ECF 145 (order).

Co-Lead Counsel soon thereafter filed a Consolidated Amended Complaint ("CAC") (ECF 172), which Defendants jointly moved to dismiss. ECF 208. While that motion was pending, Co-Lead Counsel and counsel for Defendants JPMorgan Chase & Co. and JPMorgan Chase Bank N.A. (collectively, "JPMorgan") advised the Court that they had reached an agreement in principle to settle all claims against JPMorgan, based in part on the efforts of mediator Kenneth R. Feinberg. ECF 233. Later that month, the Court denied Defendants' motion to dismiss. ECF 242. Co-Lead Counsel moved for preliminary approval of the JPMorgan settlement. ECF 245. Mr. Feinberg concurrently endorsed the settlement, citing its provision for JPMorgan's "comprehensive and immediate" cooperation, sufficient to allow Plaintiffs to "develop not only the claims alleged in the Amended Complaint, but also potential new claims that may arise related to the FX market." ECF 248 ¶¶ 15-16.

Shortly thereafter, this Court ordered Co-Lead Counsel to update it, *ex parte*, on a monthly basis as to ongoing settlement negotiations with other Defendants. ECF 252, 265, 274, 284, 295. Pursuant to this Court's order, non-lead counsel never had access to those submissions. On April 7, 2015, Ms. Nussbaum filed the *Sterk* case, on behalf of plaintiffs in the Futures market. The *Sterk* complaint includes allegations above and beyond those in the then-pending CAC. It was the second case to be filed on behalf of a Futures class.[4] Additional Futures plaintiffs subsequently filed complaints. *See, e.g., Bakizada v. Bank of America Corp.*, 15-cv-4230. All pending Futures class complaints allege the same conspiracy that Co-Lead Counsel alleged in the CAC. *See, e.g., Taylor*,

---

[4] Kirby McInerney LLP ("Kirby") previously filed *Taylor v. Bank of America, Corp.*, No. 1:15-cv-1350, which substantially tracked the CAC. *See* ECF 348 at 5.

4

ECF 1 at ¶ 8 (alleging Futures class injured in same manner and same conduct as OTC class); *Sterk*, ECF 1 at ¶ 183 (alleging that OTC market manipulation facilitated prices in the Futures market); *Bakizada*, ECF 18 at ¶¶ 2, 7-8, 187.

Shortly after *Sterk* was filed, this Court ordered a status conference "to discuss the relationship, if any, among [these two newly filed actions and the CAC]." ECF 281 at 1. Kirby, speaking for the *Taylor* plaintiffs, asked the Court to consolidate the Futures class actions only and appoint it as interim lead counsel. *Taylor*, ECF 67.[5] The Court ordered Co-Lead Counsel to file a letter by June 12, 2015 detailing their position as to: (1) the relationship between it and the Futures actions, and/or (2) consolidation of the cases for all or limited purposes. ECF 284. In its June 12 letter, Co-Lead Counsel asked the Court to consolidate the Exchange Actions with the OTC action, and deny the requests to designate separate lead counsel for Futures class members only, in part because Co-Lead Counsel already acted on behalf of most of the Futures class members in negotiating settlements in this action. ECF 296.

In a separate letter that same day, Co-Lead Counsel requested leave to file a Second Amended Complaint to: "(1) conform allegations to evidence that has been provided in cooperative obligations with settling Defendants, in guilty pleas obtained by the U.S. Department of Justice, and in findings by other government regulators; (2) to update other allegations; (3) to name additional parties (including both plaintiffs and defendants); and (4) to add claims under the Commodity Exchange Act ('CEA')." ECF 297 at 1. That letter detailed the factual bases for the

---

[5] Another firm, Quinn Emanuel, Urquhart, & Sullivan, LLP ("Quinn"), also put in letters contending that this Court should establish a separate futures class. Because Quinn has withdrawn from these proceedings, this brief omits discussion of the role and positions Quinn has previously taken in this case.

5

amendment, all of which were previously non-public, and, under this Court's request, had not been previously shared with non-lead plaintiffs' counsel.

Based in large part on Co-Lead Counsel's June 12 letters, NLG, counsel to the *Sterk* plaintiffs, advised the Court on June 18 that it had concluded that *Sterk* could be appropriately consolidated with the consolidated OTC action under Co-Lead Counsel. ECF 305.[6] Counsel for other futures plaintiffs opposed mass consolidation of all pending matters. This Court ultimately ordered briefing responding to specific questions related to consolidation and lead counsel designation. ECF 331.

On July 16, Co-Lead Counsel submitted the opening brief responsive to that order. It detailed the following: (1) the broad overlap of the allegations in the CAC and all of the Futures complaints; (2) the efficiencies that would result from their consolidation; (3) the overwhelmingly common interests of the classes (distinguishing this case from direct-indirect purchasers cases in which subclasses compete for the same dollars); (4) the pending settlements raise neither actual conflicts nor issues as to Co-Lead Counsel's authority; (5) Co-Lead Counsel are empowered to appoint other plaintiffs' counsel, as necessary, to perform "in limited roles to ensure independent representation of discrete issues" (ECF 348 at 17); and (vi) Co-Lead Counsel's accomplishments—particularly in the Consolidated Actions—warrant them leading both proposed classes. ECF 348.

## II. RESPONSES TO COURT-ORDERED QUESTIONS (ECF 331)

### A. Should the motion of Lead Plaintiffs in 13 Civ. 7789 to consolidate for all purposes all of the above-captioned actions be granted?

Yes.

---

[6] NLG subsequently noticed its withdrawal as counsel for Syena, its OTC plaintiff. *See* ECF 330.

Rule 42(a) provides that a court may consolidate "actions before the court [if they] involve a common question of law or fact"—*i.e.*, a *single* question of law or fact. The broad overlap of the allegations in the CAC and all of the Futures complaints alone dictates consolidation here.

Rule 42(a) further provides that where "actions before the court involve a common question of law or fact, the court may . . . issue any other orders to avoid unnecessary cost or delay." The Court's reaffirmation of Co-Lead Counsel's existing role would fall squarely within that dictate. Co-Lead Counsel's record in efficiently and effectively serving the proposed classes to this point speaks for itself. That record includes at least the following: (1) the negotiation of disclosed settlements with four defendants totaling more than $800 million, and undisclosed settlements that increase that considerable figure; (2) securing the disclosure of information more than sufficient to bolster the claims of all plaintiffs and class members—effectively raising the value of those settlements by some portion of whatever the classes eventually recover for their losses; and (3) cooperation with the DOJ that has facilitated Co-Lead Counsel's efforts to gather yet more information, without disrupting their efforts to promptly maximize their use of the cooperation and information provided for by the settlement agreements, and without impeding government prosecutions.

That record is exemplary and it is substantially inconceivable that it might be improved by an appointment that would effectively mandate Co-Lead Counsel's deference to another counsel, or group of counsel. *Cf.* Fed. R. Civ. P. 42(a). Co-Lead Counsel have achieved exceptional results for the class and, consistent with Scott + Scott's application (ECF 114), efficiently delegated responsibility to non-lead firms in such a way as to best serve the interest of the class(es).

Other courts in this district have repeatedly consolidated classes similar to those in this case under a single set of lead counsel. *See*, *e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust*

*Litig.*, No. 11-md-2262, 2014 U.S. Dist. LEXIS 153634, at *72 (S.D.N.Y. Oct. 10, 2014) (appointing same interim counsel for subclasses where there did "not appear to be any material conflicts between subclasses"); *In re Gold Fixing Antitrust and Commodity Exchange Act Litig.*, 14-cv-3111 (S.D.N.Y. June 16, 2014) (denying the need for sub-classes finding that "at the various complaints' most basic level, all of the class members allege financial harm stemming from Defendants manipulating the market for gold via the London Gold Fixing"); *Wallace v. Intralinks Holdings, Inc.*, 302 F.R.D. 310, 319 (S.D.N.Y. 2014) (appointing single lead counsel to represent both class and subclass).

Conversely, the authorities cited by counsel seeking to bring a separate Futures action do not support such a broad mandate. *Literary Works* focused exclusively on settlement agreements which—unlike the agreements at issue here—resolved all claims against all defendants; provided for no meaningful benefits to class members other than a finite amount of money; and had been finally approved by the district court, absent involvement of independent counsel. The Second Circuit found a fundamental conflict among subgroups within the class and noted that "where such a conflict does exist, it can be cured by dividing the class into separate homogenous subclasses with separate representation to eliminate conflicting interests of counsel." 654 F.3d at 249-50 (ellipses and citations omitted). The Second Circuit reasoned that the overall fairness of the settlement for all plaintiffs could not be ascertained when the settlement was negotiated without any counsel "advanc[ing] the strongest arguments in favor of [a given subgroup's] recovery." *Id*. at 253. The claim that *Literary Works* requires the Court to endorse a separate litigation for the Futures action, separate and apart from the OTC action, would result in adding untold hours onto the thousands of hours Co-Lead Counsel will ultimately expend.

While it has been claimed that there are facial distinctions between the Futures and OTC allegations, such as "transactions of different FX products, based on manipulation in a different FX market, giving rise to different claims" (ECF 319 at 2), it has never been explained why those distinctions cannot be efficiently litigated in a consolidated manner, as is the normal course. *See, e.g.,* Manual for Complex Litigation, (4th Ed.) § 21.222 ("If the class definition includes people with similar claims but divergent interests or positions, subclasses with separate class representatives and counsel might suffice."). This omission is particularly glaring given that both classes target the same conspiracy.

Even if the Court believes that some form of actual conflict exists, it can be readily addressed without instigating separate litigation. Because the Court has not approved any settlements in this case, and maintains an inherent power to reject or revise any settlement, it may still ask the parties to renegotiate certain provisions, order an independent analysis of the settlement, or appoint an independent adviser for that purpose. *See*, *e.g.*, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-1720 (E.D.N.Y. Apr. 8, 2013) (Gleeson, J.) (appointing academic to advise the court as to plaintiffs' motion for final approval of the proposed settlement); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, No. 11-MD-2221 (E.D.N.Y. Feb. 28. 2014) (Garaufis, J.) (appointing a "technical advisor" to provide the court with an impartial, independent assessment of the settlement agreement).

All that has been preliminarily decided is the quantum of a proposed settlement for certain Defendants; the plan of allocation has still not been proposed nor finalized. Therefore, all class members are still able, through, for example, separate settlement/allocation representation via independent plaintiffs' counsel delegated by Co-Lead Counsel, to advance the best arguments for their respective positions to receive settlement funds.

Finally, to the limited extent they have expressed any preference, non-settling Defendants have emphasized that Plaintiffs should at all times speak with one voice, and that the interests of the Futures subclass in particular should be expressed with the overall plaintiffs' voice to the greatest possible extent. *See, e.g.,* Consolidated Action, Hr'g Tr. (June 25, 2015) at 13 (counsel for non-settling Defendants emphasizes that "there shouldn't be dueling allegations as to what this conspiracy is") (Schofield, J.) (not yet docketed). Co-Lead Counsel have established that they alone should continue to speak for the class(es).

### B. Should separate counsel be appointed for a "Futures" (or some other) subclass if all actions are consolidated?

No.

Co-Lead Counsel explicitly suggest the possibility that one or more other firms might be assigned to address allocation issues. *Sterk* plaintiffs agree with that suggestion. It is consistent with Rule 23(g), which Congress enacted to "respond[] to the reality that the selection and activity of class counsel are often critically important to the successful handling of a class action" (Fed. R. 23 Adv. Comm. Notes), and authorizes courts to "[m]ake further orders in connection with the appointment [of class counsel]." Fed. R. Civ. P. 23(g)(1)(E); *see also* Fed R. 23 Adv. Comm. Notes ("No rule of thumb exists to determine when [modified lead counsel] arrangements are appropriate."). The Advisory Committee Notes further caution courts to "be alert to the risk of overstaffing or an ungainly counsel structure." *Id.*; *see also* Manual for Complex Litigation*,* (4th Ed.) § 10.23 ("The functions of lead counsel may be divided among several attorneys, but the number should not be so large as to defeat the purpose of making such appointments.").

C.  **If separate counsel should be appointed, who should serve as Lead Counsel for the new class or subclass and why?**

As previously stated, the selection of other plaintiffs' counsel, upon whom Co-Lead Counsel may rely as to discrete issues or limited functions, should remain within the discretion of the Co-Lead Counsel.

## CONCLUSION

For the foregoing reasons, the Court should consolidate the Futures Actions into the Consolidated Action and appoint Scott+Scott and Hausfeld as Interim Co-Lead Counsel for the Futures Class.

Dated: August 5, 2015

Respectfully submitted,

NUSSBAUM LAW GROUP, P.C.

 *s/ Linda P. Nussbaum*
Linda P. Nussbaum
Bart D. Cohen
Hugh D. Sandler
570 Lexington Avenue, 19th Floor
New York, NY 10022
(212) 702-7053
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com
hsandler@nussbaumpc.com

*Counsel for Plaintiffs Jeffrey Sterk, Kimberly Sterk, Michael Melissinos, and the Proposed Class*

11