**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NASSER BAKIZADA, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　　-against-<br>BANK OF AMERICA CORPORATION, et al.,<br><br>　　　　　　Defendants. | Case No. 1:15-cv-04230-LGS<br><br>**MEMORANDUM OF LAW SUPPORTING APPOINTMENT OF COHEN MILSTEIN AS SEPARATE COUNSEL FOR THE FOREX FUTURES CLASS** |

2030328.1

## TABLE OF CONTENTS

Introduction ........................................................................................................... 1

I.  Statement of Facts ......................................................................................... 2
    A.  Interim Spot Class Counsel Appointed to Lead Spot Class .................... 2
    B.  Interim Spot Class Counsel Files Amended Complaint Excluding Futures
        Purchasers ............................................................................................. 3
    C.  Interim Spot Class Counsel Settles Spot Case With JP Morgan Chase,
        Throws in Forex Futures Claims For Free ............................................. 4
    D.  Separate Cases Are Filed on Behalf of Forex Futures Classes Asserting
        Commodity Exchange Act Claims ......................................................... 9
    E.  The Parties to the Spot Action and the Forex Futures Filers All Set Out
        Their Positions and Interim Spot Class Counsel Reveals New,
        Unauthorized Forex Futures Only Settlement ...................................... 10

II.  Argument ..................................................................................................... 14
    A.  The JP Morgan Chase Settlement Created a Structural Conflict that Bars
        Complete Consolidation of the Forex Futures Case with the Interim Spot
        Class Counsel Spot Case as Separate Counsel is Required ................... 14
    B.  Separate Counsel Should Be Appointed for a Forex Futures Class ....... 18
    C.  Cohen Milstein Should Serve as Lead Counsel for a Forex Futures Class ......... 20
        1.  Cohen Milstein's Work on Behalf of the Forex Futures Class ......... 22
        2.  Cohen Milstein's Experience with These Type of Claims and
            Knowledge of Applicable Law ................................................... 23
        3.  Cohen Milstein Possesses Unparalleled Resources To Deploy on
            Behalf of a Forex Futures Class ................................................. 24

III.  Conclusion ................................................................................................. 25

2030328.1

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  240 F.R.D. 56 (E.D.N.Y. 2006) ................................................................................20

*In re Auction Houses Antitrust Litig.*,
  138 F. Supp. 2d 548 (S.D.N.Y. 2001) .......................................................................17

*In re Auction Houses Antitrust Litig.*,
  No. 00 Civ. 0648, 2001 U.S. Dist. LEXIS 1713 (S.D.N.Y. Feb. 22, 2001) ...............11, 16, 18

*In re Bear Stearns Cos., Inc. Sec., Derivative, and E.R.I.S.A. Litig.*,
  MDL No. 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009)........................................20

*In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 210 (5th Cir.
  1981) .........................................................................................................................17

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d. Cir. 2011).....................................................................................17

*Loeb Indus., Inc. v. Sumitomo Corp.*,
  306 F.3d 469 (7th Cir. 2002). ....................................................................................4

*Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*,
  660 F. 2d 9 (2d Cir. 1981)................................................................................ *passim*

*Nichols v. Smithkline Beecham Corp.*,
  No. Civ. A. 00-6222, 2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005) ........17

*In re Parmalat Securities Litigation*,
  No.04-CV-00030 (S.D.N.Y.)......................................................................................24

*Plummer v. Chemical Bank*,
  668 F.2d 654 (2d Cir. 1982)......................................................................................16

*Pollock v. Citrus Assocs. of the New York Cotton Exch., Inc.*,
  512 F. Supp. 711 (S.D.N.Y. 1981).............................................................................4

*Strax v. Commodity Exch., Inc.*,
  524 F. Supp. 936 (S.D.N.Y. 1981).............................................................................4

*Wal-Mart Stores, Inc. v. Visa U.SA, Inc*.
  396 F. 3d 96 (2d Cir. 2005).......................................................................................16

ii

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. Del. 2004)...........................................................................17

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir.1982)...................................................................................16

*Zomber v. Christies, Inc. (In re Auction Houses Antitrust Litig.)*,
    42 Fed. Appx. 511 (2d Cir. 2002)....................................................15, 16, 17, 18

**INTRODUCTION**

Interim Lead Counsel for the Spot Class[1] ("Interim Spot Class Counsel"), gave away the foreign exchange ("Forex") Futures claims of Spot Class members who also purchased Forex Futures, for free.  In the broad release they negotiated there is no indication that Interim Spot Class Counsel recognized that these valuable Forex Futures claims existed, much less received consideration for them.  Forex Futures claims were also not mentioned in Interim Spot Class Counsel's Complaint, in their preliminary approval papers, or in the mediator's account of their settlement discussions.  After separate class actions were filed on behalf of Forex Futures Class actions, Interim Spot Class Counsel – instead of letting these lawsuits proceed unhindered and separately – doubled down on their previous error by entering into a separate settlement on behalf of those entities that only purchased Forex Futures.  This was done even though Interim Spot Class Counsel had never been appointed Lead Counsel of a Forex Futures class and none of the putative class representatives in the Spot Case have standing to represent a class made up of Forex Futures purchasers who never purchased Forex on the spot market.  Interim Spot Class Counsel then cited this illegitimate settlement, whose terms they have refused to reveal, as support for their being appointed Lead Counsel for a separate Forex Futures class.

This type of behavior by Interim Spot Class Counsel should not be permitted, much less rewarded.  Interim Spot Class Counsel, by not including Forex Futures claims in their Complaint and then settling those claims without consideration, provided a vivid illustration of why the Forex Futures class needs separate representation.  As explained below, due to the settlement agreement they reached with JP Morgan Chase, Interim Spot Class Counsel now have a conflict under established Second Circuit authority that prevents them from representing a Forex Futures

---

[1] Scott + Scott, LLP and Hausfeld LLP.

class.  Even separate and apart from this conflict, however, Interim Spot Class Counsel's efforts on behalf of the Forex Futures class, which reveal that they see and treat the Forex Futures subclass as a minor, "less than 2% of the market" afterthought, should disqualify them from a role as Lead Counsel for a Forex Futures class.

Out of the two remaining applicants, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") is the only law firm with the resources to handle this case itself (the Kirby Group, described below, is a collection of at least four smaller firms supported by two additional small firms).  This fact, coupled with the head start provided by the expert analysis already contained in the Bakizada Complaint, makes Cohen Milstein the most suitable choice to lead the Forex Futures Class.

## I.    STATEMENT OF FACTS

### A.    Interim Spot Class Counsel Appointed to Lead Spot Class

On October 29, 2013, the Department of Justice publicly confirmed a criminal investigation of a number of large banks with respect to Forex trading.[2]  Subsequently, thirteen putative class actions were filed against these banks, all alleging violation of the antitrust laws in connection with the Forex spot market.  As conceded by Interim Spot Class Counsel, "[n]one of the complaints pleaded wrongdoing in the FX futures market, and none involved CEA claims." Memorandum in Support of Plaintiff's Motion to Consolidate and to Appoint Interim Co-Lead Counsel ("Interim Spot Class Counsel Br.") at 3. Dkt. No. 348.  After contested briefing, this Court consolidated the thirteen actions and appointed Interim Spot Class Counsel as interim co-

---

[2] http://www.reuters.com/article/20 13/1 0/29/forex-probe-idUSL 1 NOIJ 19820131029.

lead counsel for claims relating to the Forex spot market.  *See* Dkt. Nos. 96 & 114.[3]  Interim Spot

Class Counsel never applied for and were never granted any authority with respect to any claims

concerning the Forex Futures market.

       **B.**    **Interim Spot Class Counsel Files Amended Complaint Excluding Futures
Purchasers**

On March 31, 2014, Interim Spot Class Counsel filed a Consolidated Amended

Complaint ("Interim Spot Class Counsel CAC") asserting antitrust claims on behalf of the Spot

Foreign Exchange Class this Court appointed it to lead, specifically those who "entered into an

FX Instrument ***directly with a Defendant*** at or around the time of the fixing of WM/Reuters

Closing Spot Rates, or who entered into an FX instrument directly with a Defendant settled in

whole or in part on the basis of WM/Reuters Closing Spot Rates."  (Interim Spot Class Counsel

CAC , ¶ 43, Dkt. No. 172.) (emphasis added).

This definition excluded purchasers of exchange-traded forex futures contracts ("Forex

Futures") in three ways.  First, neither the class definition nor the Interim Spot Class Counsel

CAC itself contains any mention of Forex Futures.  Second, by restricting the Class Definition to

those who "entered into an FX instrument directly with a Defendant," *id*., Interim Spot Class

Counsel excluded every single Forex Futures purchase.   This is because on an exchange, the

central clearinghouse inserts itself as an intermediary on every transaction – acting as the buyer

for every seller and the seller for every buyer.   This means that every single Forex Futures

transaction is, by definition, outside of the Interim Spot Class Counsel CAC class definition as

no Forex Futures transactions were "directly with a Defendant."  *Id*.  Third, the Interim Spot

---

      [3] Cohen Milstein applied to be one of four interim co-lead counsel, but after the Court's
February 13, 2014 decision (Dkt. No. 96), it has had no involvement *in In re Foreign Exchange
Benchark Rates Antitrust Litigation*, No.13-cv-07789.

3

Class Counsel CAC did not assert Commodity Exchange Act claims – causes of action which apply only to exchange traded futures contract like Forex Futures.[4]

C.   Interim Spot Class Counsel Settles Spot Case With JP Morgan Chase, Throws in Forex Futures Claims For Free

On January 30, 2015, Interim Spot Class Counsel filed a motion to approve a preliminary settlement with JP Morgan Chase & Co. for $99 million and cooperation. Dkt. No. 247-1.[5] According to the Stipulation and Agreement of Settlement With JP Morgan Chase & Co and JPMorgan Chase Bank N.A. ("JP Morgan Chase Settlement"), the Settlement Class definition consists of:

> All Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into an FX Instrument **directly with a Defendant, or a Released Party**, at or around the time of the fixing of any of the FX Benchmark Rates, or who entered into an FX Instrument directly with a Defendant, or a Released Party, settled in whole or in part on the basis of any such FX Benchmark Rates….

JP Morgan Chase Settlement, ¶ 3(a), Dkt.  No.  247-1 (emphasis added)

_____

[4] It seems probable that Interim Spot Class Counsel may have omitted Forex Futures purchases from their class definition because of a mistaken belief that *Illinois Brick* bars antitrust claims for exchange traded commodity products where there is no privity between defendants and plaintiffs.  The case law is entirely to the contrary and has long permitted antitrust claims to be brought by exchange trading plaintiffs against defendants without a privity requirement.  *See, e.g., Strax v. Commodity Exch., Inc.,* 524 F. Supp. 936, 940 (S.D.N.Y. 1981) (recognizing antitrust standing of silver futures traders on the COMEX, and explaining that *Illinois Brick* does not apply in this setting); *Pollock v. Citrus Assocs. of the New York Cotton Exch., Inc.,* 512 F. Supp. 711 (S.D.N.Y. 1981) (holding *Illinois Brick* inapplicable to orange juice futures trading); *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 481 (7th Cir. 2002).  ("*Illinois Brick* does not stand for the proposition, as the defendants would seem to have it, that a defendant cannot be sued under the antitrust laws by any plaintiff to whom it does not sell.").  *Accord In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2015 U.S. Dist. LEXIS 38743, at *56-68 (S.D.N.Y. Mar. 26, 2015) (sustaining antitrust claims by purchasers of aluminum where most plaintiffs did not buy directly from defendants).

[5] As discussed above, Cohen Milstein has had no involvement in *In re Foreign Exchange Benchark Rates Antitrust Litigation*, No. 13-cv-07789, since this Court appointed Interim Spot Class Counsel as interim co-lead counsel on February 13, 2014 (Dkt. No. 96), took no part in negotiating this settlement, and was only apprised of its existence when this motion was filed on the public docket.

Because Forex Futures transactions are, by definition, never "directly with a Defendant" as they are done via a central clearinghouse, the JP Morgan Chase Settlement class definition *excludes* Forex Futures trades from the Settlement Class.  The claims *released* by the Settling Class, however, *include* Forex Futures trades.  Specifically, ¶ 2(gg) of the JP Morgan Chase Settlement defines "Released Claims" as:

> any and all manner of claims, including "Unknown Claims" as defined below… arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action, or any amended pleading therein, from the beginning of time until the Effective Date,  specifically including but not  limited to: (i) communications related  to FX Trading between a Released Party and any other FX dealer or dealers through chat rooms, instant messages, email, or other means; (ii) agreements related to FX Trading between a Released Party and any other FX dealer or dealers through chat rooms, instant messages, email, or other means; (iii) the exchange of customer information, including but not limited to customer identity, trading patterns, net positions or orders, with respect to FX Trading between a Released Party and any other FX dealer or dealers; (iv) the establishment, calculation, or use of the WM/Reuters fixing rates, including the 4:00p.m.  London closing spot rates; (v) the establishment, calculation, or use of the European Central Bank FX reference rates, including the ECB rate set at 1:15 p.m. London time; (vi) the establishment, calculation, or use of any other FX benchmark, fixing, or reference rates; and (vii) the exchange of customer information between a Released Party and any other FX dealer or dealers relating to the establishment, calculation, or use of any FX rate. Released Claims do not include claims based on transactions executed solely outside the United States arising under foreign laws belonging to any Releasing Party or Person that is domiciled outside the United States.

Claims, whether antitrust or under the Commodity Exchange Act, stemming from the purchase or sale of Forex Futures, fall well within the contours of "any and all manner of claims . . ., arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action, or any amended pleading therein, from the beginning of time until the Effective Date . . . ."  *Id*.

There is no evidence that Interim Spot Class Counsel considered the value of the Forex Futures claims they released when they negotiated the $99 million Settlement Amount.  On the contrary, available information strongly indicates that they did not.  Specifically, in the

Declaration of Kenneth R. Feinberg in Support of Plaintiffs' Motion for Preliminary Approval of the Settlement with Defendants JP Morgan Chase & Co. and JP Morgan Chase Bank, N.A. (Dkt. No. 248) ("Feinberg Decl."), Mr. Feinberg declares:

> The Settlement Fund of $99,000,000 is also adequate based on my review of the economic analysis conducted by financial experts retained by Class Lead Counsel. Although such analysis is preliminary, it does appear to be consistent with Class Lead Counsel's *evaluation of JPM's role in the FX market and JPM's market share over the Class Period (6%)*.

Feinberg Decl. ¶ 14 (emphasis added). This paragraph indicates that the settlement amount was based – at least in part – on Interim Spot Class Counsel's "Evaluation of JPM's role in the FX Market and JPM's market share over the Class Period," *id*., evaluations which on their face do not consider JP Morgan Chase's role or market share in the Forex Futures market.

The disjunction between a Settlement Class which does not include Forex Futures claims and the Released Claims of the Settlement Class, which does include Forex Futures claims, creates three groups – each affected differently by the JP Morgan Settlement: (1) persons who only traded on the spot market and did not trade Forex Futures ("Exclusively Spot Purchasers"), (2) persons who traded on the spot market and traded Forex Futures ("Mixed Spot/Futures Purchasers"), and (3) persons who traded Forex Futures exclusively and did not trade on the spot market ("Exclusively Futures Purchasers").

Exclusively Spot Purchasers, who never traded in Forex Futures, are unaffected by the JP Morgan Settlement's treatment of Forex Futures claims. For them, the JP Morgan Settlement is straightforward – if they do not elect to opt out, they can settle their claims (derived exclusively from their Spot Purchases) which were the subject of the allegations and litigation concerning the Interim Spot Class Counsel CAC and receive value in exchange. There is a direct relationship

6

between the claims they possess against JP Morgan that were brought in the Interim Spot Class

Counsel CAC and the Settlement Amount of $99 million.

For Mixed Spot/Futures Purchasers – those who traded Forex on both the spot and futures

markets – the JP Morgan Settlement is more complex and problematic.  By virtue of their

purchases on the spot market, Mixed Spot/Futures Purchasers are members of the class.  *See* JP

Morgan Chase Settlement, ¶ 3(a), Dkt. No. 247-1.  Again, for their spot purchases, there is a

direct relationship between the claims they possess against JP Morgan that were brought in the

Interim Spot Class Counsel CAC and the Settlement Amount of $99 million.  To take part in the

settlement, however, Mixed Spot/Futures Purchasers must release claims derived from ***both*** their

Spot claims and their Forex Futures – despite the fact that the Forex Futures claims were never

mentioned in the Interim Spot Class Counsel CAC or any other pleading in the case at the time

the JP Morgan Settlement was reached and submitted to the Court for preliminary approval and,

as discussed above, there is evidence that the value of these Forex Futures claims was not

recognized by Interim Spot Class Counsel when the settlement was reached.  This means that to

take part in the Spot Settlement, Mixed Spot/Futures Purchasers must give up their Forex Futures

claims for no consideration.

Exclusively Futures Purchasers – those who traded Forex Futures, but did not trade on

the spot market, are left out entirely.  Exclusively Futures Purchasers are ***not*** members of the

Settlement Class as they did not enter "into an FX Instrument ***directly with a Defendant, or a***

***Released Party***."  *See* JP Morgan Chase Settlement, ¶ 3(a), Dkt. No. 247-1 (emphasis added).

As they are not members of the Settlement Class, Exclusively Futures Purchasers are barred

from receiving a distribution from the Settlement Fund.[6]  Moreover, as they are not members of the Settlement Class, Exclusively Futures Purchasers are **barred** – by the terms of the JP Morgan Chase Settlement -- from objecting or even being heard at the Fairness Hearing concerning the JP Morgan Chase Settlement:

> 5(e) Any Person who has not requested exclusion from the Class and who objects to the settlement set forth in this Agreement may appear in person or through counsel, at that Person's own expense, at the Fairness Hearing to present any evidence or argument that the Court deems proper and relevant.  However, **no such Person shall be heard, and no papers, briefs, pleadings, or other documents submitted by any such Person shall be received and considered by the Court, unless such Person properly submits** a written objection that includes:  (i) a notice of intention to appear; (ii) **proof of membership in the Class**; and (iii) the specific grounds for the objection and any reasons why such Person desires to appear and be heard, as well as all documents or writings that such Person desires the Court to consider

JP Morgan Chase Settlement ¶ 5(e), Dkt. No. 247-1 (emphasis added).  Practically, however, while Exclusively Futures Purchasers are not part of the JP Morgan Chase Settlement, the JP Morgan Chase Settlement harms them as it reduces their ability to be part of a larger Forex Futures class since, as Interim Spot Class Counsel recognized in a letter to this court, "a good percentage of class members who trade OTC with Defendants also transact in FX futures or options on FX futures through an exchange . . . ."  Dkt. No.309at 2.  JP Morgan echoed this sentiment, saying that "like the lead plaintiffs, JP Morgan anticipates that these two classes are substantially overlapping."  Dkt. No. 308 at 2.

For purposes of this memorandum, the last important provision of the JP Morgan Chase Settlement is section 9(a) of the agreement, which provides that:

---

[6] *See* JP Morgan Chase Settlement, ¶ 2(d), Dkt 247-1 ("'Authorized Claimant'" means any Class Member who will be entitled to a distribution from the Net Settlement pursuant to the Plan of Distribution approved by the Court in accordance with the terms of this Agreement"); ¶ 2(dd) ("'Plan of Distribution'" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants").

> Class Lead Counsel will submit an application or applications (the "Fee and Expense Application") to the Court  for an award from the Settlement Fund of:  (i) attorneys' fees not to exceed 33-1/3% of the Settlement Fund; (ii) reimbursement of litigation expenses, plus interest, incurred in connection with the prosecution of the Action; and/or (iii) service awards for Class Plaintiffs in conjunction with their representation of the Class.

JP Morgan Chase Settlement, ¶ 9(a), Dkt. No. 247-1.

D.     Separate Cases Are Filed on Behalf of Forex Futures Classes Asserting
        Commodity Exchange Act Claims

After the filing of the JP Morgan Settlement, complaints asserting antitrust and Commodity Exchange Act claims on behalf of Forex Futures purchasers were filed by Kirby McInerney LLP, Cafferty Clobes Meriwether and Sprengel LLP, Morris and Morris LLC, and a Mr. George Sang (the "Kirby Group")[7]; Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn") and the Nussbaum Law Group ("Nussbaum")[8]; Cohen Milstein[9]; Louise F. Burke P.C. and Richardson, Patrick Westbrook, & Brickman LLC.[10]

Notably, the *Sterk* Complaint filed by Quinn and Nussbaum contained nearly one one-hundred paragraphs and well over one hundred pages of appendices detailing original, proprietary statistical analyses performed by two world class experts at Quinn's expense that added significant, new detail and proof that supported and strengthened the allegations of the Forex Futures class.

---

[7] *Taylor  et al v. Bank of Am. Corp.*, *et al*, 15-cv-1350, Dkt. No. 1.

[8] *Sterk, et. al. v. Bank of Am. Corp., et. al.*, Case No. 15-cv-2705-LGS, Dkt. No. 1 ("*Sterk* Complaint").

[9] *See Bakizada v. Bank of Am.. et al.*, 15-cv-04230, Dkt. No.1.  Mr. Bakizada is a member of the third group described above – an Exclusively Futures Purchaser – who never made a Spot Purchaser and is not a member of the Spot Foreign Exchange Class led by Interim Spot Class Counsel.

[10] *See Teel v. Bank of Am.*, 1:15-cv-04436, Dkt. No. 1, and *Robert Charles Class, A, L.P., v. Bank of Am., et al*, 1:15-cv-04926-LGS, Dkt. No. 1.

9

On June 11, 2015, this Court held that no later than June 18, 2015, any party may file on ECF a letter not to exceed three pages regarding the relationship and possible consolidation of any of the Forex Futures Actions with each other and/or the Spot Action.  Dkt . No. 295.

E.      The Parties to the Spot Action and the Forex Futures Filers All Set Out Their Positions and Interim Spot Class Counsel Reveals New, Unauthorized Forex Futures Only Settlement

On June 18, 2015, the day the three page statements were due, Quinn was "informed that Scott + Scott and Hausfeld LLP had been in contact with [Quinn's clients in *Sterk*], or representatives of those clients, and that they had convinced them to sever their relationship with Quinn Emanuel and to support consolidation."  Quinn was "not a party to any of these discussions" and "given the timing of that revelation, [Quinn] was faced with the possibility of not having standing . . . ."  Dkt. No. 353 at 2.  In light of Quinn's unique and significant contribution to the Forex Futures case, specifically the hundred plus pages of original, proprietary expert analysis for the benefit of the Forex Futures class that Quinn commissioned at their own expense, Cohen Milstein both invited Quinn to join it in representing Plaintiff Nasser Bakizada and decided to support Quinn in its application to lead a Forex Futures Class as sole Lead Counsel.

On June 18, 2015, all parties filed letters – with no parties opposing the consolidation of the Forex Futures cases with each other.  There was, however, considerable disagreement with regard to the consolidation of the Forex Futures Actions with the Spot Action and with respect to leadership of any consolidated Forex Futures class case.

Defendants Credit Suisse, Deutsche Bank, and Morgan Stanley ("Non-settling Defendants") filed a letter in which they "oppose[d] consolidation of the claims in the FX Futures Actions with the claims in the existing complaint in the FX Benchmark Action" on the grounds that, *inter alia*, the "FX Futures Actions' claims concern a market — exchange-based

10

futures and options trading — very different from the spot market at issue in the FX Benchmark Action." Dkt. No. 304 at 2.

The Nussbaum Law Group, reversing a position they took earlier, stated in "light of the new developments and information set forth by Messrs. Hausfeld and Burke, we believe that the *Sterk* case can be appropriately consolidated with the [Spot Case]" and "proceed under the leadership of [Interim Spot Class Counsel]."   Dkt. No. 305.

Cohen Milstein filed a letter on behalf of Plaintiff Bakizada in which it opposed consolidation of the Forex Futures cases with the Spot action and raised, for the first time, the point that Interim Spot Class Counsel, as a result of the settlement they negotiated with JP Morgan Chase, created, under longstanding Second Circuit precedent, a "structural conflict" that prevented them from representing a Forex Futures class. *See In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648, 2001 U.S. Dist. LEXIS 1713 (S.D.N.Y. Feb. 22, 2001); *Nat'l Super Spuds, Inc. v. New York Mercantile Exch.*, 660 F. 2d 9 (2d Cir. 1981).  Cohen Milstein also indicated its support for Quinn as Interim Lead Counsel for a separate Forex Futures Class. Dkt. No. 306.  Later that evening, Quinn filed a letter taking a similar position.  Dkt. No. 315.

Grais/Mctigue, filing on behalf of the *Allen* ERISA case, opposed consolidation with the Spot Case as the spot case did not bring ERISA claims, ERISA claims are different and distinct, and the *Allen* plaintiffs need to have their interests protected in any settlement and prevent their distinct claims from being released for "inadequate consideration." Dkt. No. 307 at 3.

Settling Defendant JP Morgan, joined by potentially settling Defendants Bank of America, Barclays, Citigroup, Goldman Sachs, HSBC, RBS, and UBS, wrote in support of consolidation with the Spot Action and also emphasize the sweeping releases in the settlement it negotiated with Interim Spot Class Counsel,  confirming that "[t]o the extent any member of the

11

putative *Taylor* class is a member of the class with which JP Morgan reached a settlement agreement, its claims – including the types of claims asserted in *Taylor* and *Sterk*—would be released by the settlement . . . ."  Dkt. No. 308 at 2.  Directly afterwards, Interim Spot Class Counsel filed a letter in support of consolidation of the Forex Futures cases with the Spot Action under their leadership, also noting, in passing, their belief that Spot trades account for "98% of the total FX market" with only 2% being traded through an exchange.  Dkt. No. 309 at 2.

The Kirby Group, writing on behalf of *Taylor*, opposed consolidation with the Spot Case and proposed Kirby as Interim Lead Counsel for a consolidated Forex Futures Class.  Dkt Nos. 311, 312.  Burke/Richardson, on behalf of *Teele*, filed a letter opposing consolidation and, in a separate letter, touted their own qualifications and indicated that they supported Kirby for Lead Counsel of a separate Forex Futures Class.  Dkt. Nos. 313, 314.

All parties filed responsive letters per the Court's June 19, 2015 Order on June 23, 2015. In their responsive letter, for the first time, Interim Spot Class Counsel revealed new, startling information.  Specifically, Interim Spot Class Counsel informed the Court and the parties that, without consulting anyone, it had entered into a settlement agreement for Exclusively Futures Purchasers -- those persons "who traded only on exchanges with respect to exchange-only claims" -- despite the fact that the Interim Spot Class Counsel Complaint excluded those persons and no Exclusively Futures Purchaser had filed a complaint in the Spot Action.[11]  Specifically, Interim Spot Class Counsel stated:

> After the conclusion of these settlements and under the supervision of mediator Kenneth Feinberg, Co-Lead Counsel undertook to negotiate on behalf of existing clients who traded only on exchanges with respect to exchange-only claims. These negotiations resulted in a separate amount for the exchange-only FX traders and separate funds for each class. Neither fund was compromised or can be diminished in favor of the other.

---

[11] By definition, an Exclusively Futures Purchaser could not have filed in the Spot Action, because they would lack standing – having purchased nothing in the spot market.

Dkt. No. 324 at 2.  They also proposed, in their Second Amended Complaint, to have "exchange plaintiffs . . . represent a separate class."  *Id*. at 3.

That same day, Plaintiff Bakizada filed an Amended Complaint that incorporated all of the proprietary, statistical analysis developed by Quinn that previously had been included in the Sterk Complaint.  *Bakizada v. Bank of Am.*, No. 15-cv-04230, Dkt. No. 18 ("*Bakizada* Amended Complaint").

After a hearing on June 25, this Court ordered Interim Spot Class Counsel to share, on an attorneys' eyes only basis, their draft Second Amended Complaint incorporating Forex Futures claims so that other parties could respond, and directed both Interim Spot Class Counsel and Futures Counsel to brief the following issues:

> (1) Should the motion of Lead Plaintiffs in 13 Civ. 7789 to consolidate for all purposes all of the above-captioned actions be granted? (2) Should separate counsel be appointed for a "Futures" (or some other) subclass if all actions are consolidated? (3) If separate counsel should be appointed, who should serve as Lead Counsel for the new class or subclass and why?

Dkt. No. 331.

On July 16, 2015, Interim Spot Class Counsel circulated its brief and its proposed Second Amended Complaint – which did not include the detailed statistical analysis performed by the experts hired by Quinn.

On July 23, 2015, reacting to a filing by its client the City of Philadelphia in response to Quinn withdrawing from representing Philadelphia in the Spot Case, Quinn withdrew both from representing Philadelphia in the Spot Case and from representing Plaintiff Bakizada in the Futures Case and announced that it "will no longer be seeking to represent any FX-related class before this Court."  Dkt. No. 353 at 1.  Quinn informed the Court that Cohen Milstein would "continue its representation of Mr. Bakizada and anticipates filing, pursuant to Your Honor's

13

June 29, 2015 Order, papers on August 5, 2015, in support of a separate Futures Class with

Cohen Milstein serving as Lead Counsel." *Id.* at 4.  Quinn bequeathed the work performed by its

experts to Plaintiff Bakizada and Cohen Milstein.

## II.   ARGUMENT

A.   The JP Morgan Chase Settlement Created a Structural Conflict that Bars
Complete Consolidation of the Forex Futures Case with the Interim Spot Class
Counsel Spot Case as Separate Counsel is Required

As discussed above, *see supra* at IIB, the broad releases negotiated by Spot Counsel as

part of the JP Morgan settlement extinguished the claims of FX Futures purchasers who also

purchased in the spot market despite the fact that their claims were not mentioned in the

operative complaint.  Moreover, as also discussed above, all the extant evidence indicates that

the claims of FX Futures Purchasers were released without Interim Spot Class Counsel even

considering that they existed, much less receiving consideration for them in the JP Morgan

Settlement.  *See supra* at IIC.  Contrary to Interim Spot Class Counsel's view, the Spot case and

the Forex Futures case do *not* share an identical factual predicate.[12]  On the contrary, as alleged

in the Bakizada Amended Complaint (along with the data to back it up), Defendants manipulated

the futures market ***directly*** as opposed to that manipulation being a function of their manipulation

of the spot market– in fact, manipulation in the Forex Futures market occurred at ***times only***

***relevant to the futures market.***  Bakizada Amended Complaint at. ¶¶ 213-16.  This definitively

---

[12]In its filing yesterday, the Nussbaum Law Group also erroneously asserted that "[n]o
party contests that plaintiffs who traded in the over-the-counter ("OTC") foreign exchange
market allege the same conspiracy and price manipulation as that alleged by plaintiffs who
traded in the foreign exchange futures market."  Dkt. No. 380 at 2.  This is completely wrong, as
Plaintiff Bakizada and Cohen Milstein vigorously contest this key point -- in large part based on
the expert work commissioned by Quinn and originally included in the *Sterk* Complaint filed by
the Nussbaum Group -- which definitively reveals that the Forex Futures conspiracy has separate
and distinct facts related solely to the Forex Futures market that set it apart from the OTC
conspiracy case.

14

rebuts Interim Spot Class Counsel's argument that the two cases share identical factual

predicates.  *See* Interim Spot Class Counsel Br. at 8-9.

Under longstanding Second Circuit precedent, this scenario – settlement of claims of

certain class members without compensation where the claims do not arise from an identical fact

pattern -- creates an unsolvable conflict for the counsel who negotiated the JP Morgan Settlement

– Interim Spot Class Counsel, preventing them from representing Forex Futures Purchasers –

much less a Forex Futures Purchasers Class.  *See Super Spuds,* 660 F.2d 9; *Zomber v. Christies,*

*Inc. (In re Auction Houses Antitrust Litig.)*, 42 Fed. Appx. 511, 519 (2d Cir. 2002) ("In the

twenty-one years since *Super Spuds*, we have never affirmed the approval of a class action

settlement which included the uncompensated impairment of non-class claims unless the non-

class claims were based on the *identical* factual predicate as the class claims.").[13]

In *Super Spuds*, "the complaint was brought on behalf of all persons who liquidated long

positions in May 1976 Maine potato future contracts" and "at no point did plaintiffs seek

authority to represent members of the class with respect to claims based on unliquidated

contracts."  660 F.2d  at *16-17.  The Second Circuit further held that the "inadequacy of the

representation provided by the named plaintiffs [to those holding claims based on unliquidated

contracts] is apparent from examination of the settlement itself" which requires class members

"to release claims based on both liquidated and unliquidated contracts in return for a portion of

the settlement proceeds that is determined solely on the basis of the [liquidated] contracts" as

"[t]here is no justification for requiring …. persons [] to release claims based on unliquidated

contracts as part of a settlement in which payments to class members are to be determined solely

---

[13] It is this settlement agreement that created the structural conflict.  Under the right
circumstances, a Spot Class and a Futures Class can be represented by the same Counsel.  *See*
Interim Spot Class Counsel Br. at 10-12.

on the basis of the contracts they liquidated." *Id.* at 18.  This is because "there is no reason why some class members should be forced to give up something of value to enable other class members to benefit from a settlement made richer at their expense." *Auction Houses*, 2001 U.S. Dist. LEXIS 1713, at *56 .  This is the exact situation here where purchasers of FX futures contracts – who were not included in the complaint – could be forced to give up their claims based on a settlement which does not take FX futures contract purchases into account much less provide compensation for them.[14]

Spot Counsel cannot fix this problem *post hoc* after entering into the JP Morgan Settlement.  In a parallel situation, Judge Kaplan held that an antitrust settlement was problematic under *Super Spuds* because it settled the claims of foreign purchasers as well as domestic without providing consideration to the foreign purchasers for their foreign purchase claims.  *Auction Houses*, 2001 U.S. Dist. LEXIS 1713, at *49-60.  In attempting to fix this problem, lead counsel in that case proposed reallocating the settlement, but Judge Kaplan found that impermissible because their stake in the settlement created a "structural conflict on this

_____

[14] Cases cited by Interim Spot Class Counsel are not to the contrary.  The Second Circuit itself distinguished *Weinberger v. Kendrick*, 698 F.2d 61, 77 (2d Cir.1982) from this scenario in *Zomber*, 42 Fed. Appx. 511 – pointing out that *Weinberger*, unlike *Auction Houses* and unlike the instant scenario, involved "almost identical" factual allegations.  *Wal-Mart Stores, Inc. v. Visa U.SA, Inc*. 396 F. 3d 96, 107 (2d Cir. 2005), is distinguishable for the same reason as it involves identical facts.  As discussed above, that does not apply here as Forex Futures facts are quite different from the Spot Case, with much of the manipulation in the Forex Futures market occurring at times only relevant to the futures market.  *Bakizada* Complaint ¶¶ 213-61.  In *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982), the Second Circuit *upheld* a District Court's decision to *reject* a settlement reached shortly after the filing of a complaint (with much of the negotiations going on before the filing of the complaint), noting that "the interest of lawyer and class may diverge, as may the interests of different members of the class, and certain interests may be wrongfully compromised, betrayed, or 'sold out' without drawing the attention of the court" and "this is more likely to occur in a situation such as we have here, where the plaintiffs have negotiated  to the verge of settlement before suit is brought . . . ."  While the Court in *Plummer* recognized that it is *possible* to approve settlements reached prior to discovery, it certainly did not sanction, in any way, settling claims without compensation, which is the issue here.

16

issue" – as it would for Spot Counsel here as the JP Morgan Settlement agreement includes a provision that allows Interim Spot Class Counsel to seek attorneys' of up to one third of the $99 million settlement amount – creating a $33 million structural conflict.  *See In re Auction Houses Antitrust Litig.*, 138 F. Supp. 2d 548, 551 (S.D.N.Y. 2001) ("structural conflict caused" when settlement negotiated that calls for fee of $26.75 million if approved because counsel "have an incentive to acquiesce in defendants' insistence that the deal proceed without modifying the 'release.'").  Moreover, this "structural conflict" cannot be evaded with plans of allocation, separate settlements, settlement allocation counsel, or the assistance of Mr. Feinberg.  *See Id.* (rejecting modification of plan of allocation as potential "cure" for this "structural conflict");  *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d. Cir. 2011) ("***Only*** the creation of subclasses, and the ***advocacy of an attorney representing each subclass***, can ensure that the interests of that particular subgroup are in fact adequately represented.") (emphasis added); *id.* at 253 ("[T]he participation of impartial mediators … does not compensate for the absence of independent representation").[15]

Judge Kaplan's decision not to approve the settlement in Auction Houses because of a *Super-Spuds* problem was appealed and the Second Circuit affirmed his decision, holding that "the District Court correctly interpreted *Super Spuds* as requiring rejection of the settlement including the Original Release."  *Zomber*, 42 Fed. Appx. at 519.  In doing so, the Second Circuit reaffirmed both the principles and vitality of *Super Spuds*, stating that "[i]n the twenty-one years

---

[15]   Interim Spot Class Counsel cites no support from the Second Circuit for their Allocation Counsel scheme, nor can they.  Moreover, even their Third Circuit "support" is inapposite.  Neither *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 (3d Cir. Del. 2004), *Nichols v. Smithkline Beecham Corp.*, No. Civ. A. 00-6222, 2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005), or *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 210 (5th Cir. 1981) involve a *Super-Spuds* conflict where claims of a subset of a class originally omitted from a complaint were settled without consideration – much less support the argument that allocation counsel could rectify such a conflict.

since Super Spuds, we have never affirmed the approval of a class action settlement which included the uncompensated impairment of non-class claims unless the non-class claims were based on the *identical* factual predicate as the class claims." *Id.* (emphasis in original).

Interim Spot Class Counsel's argument that this issue is "premature," because the settlements have not been finalized, Court-approved notice has not yet been issued, and a period to object or opt-out has not happened is wrong for three reasons. First, as shown in *Auction Houses,* the conflict for Interim Spot Class Counsel – the stake they have in the negotiated settlement is present *now* – prior to final approval of the settlement. As the conflict is present now, there is no reason not to resolve it now. Second, Plaintiff Bakizada, who is an Exclusively Forex Purchaser, has no standing to object to the JP Morgan Chase settlement with the Mixed Forex/Spot Purchasers as he is not a member of that class, even though that settlement, for no consideration, would significantly prejudice him. Since there is no space in the settlement process for a non-class member to object, there is no reason to wait. Third, and finally, the Forex Futures class has waited too long for adequate representation – they should not have to stay in limbo any longer than necessary.[16]

   B.    <u>Separate Counsel Should Be Appointed for a Forex Futures Class</u>

Interim Spot Class Counsel claims that the work it performed on behalf of Forex Futures Purchasers supports its petition to be named Lead Counsel for this new class. Interim Spot Class Counsel Br. at 18-20. In fact, however, the opposite is true -- that Interim Spot Class Counsel's work thus far eloquently demonstrates the need for separate representation of a Forex Futures

---

[16] If, however, this Court feels the conflict situation is not ripe given the stage of the JP Morgan Chase settlement and the still undisclosed Forex Futures Only settlement, Cohen Milstein would then respectfully request that this Court hold open the appointment of Lead Counsel process for Forex Futures until the JP Morgan Chase settlement reaches the objection phase and/or the terms of the Forex Futures Only settlement is revealed to the other Forex Futures plaintiffs, the public, and the Court.

2030328.1

Class.  Separate and apart from the conflict issue identified above, the following history concerning Interim Spot Class Counsel's treatment of Forex Futures Purchasers should disqualify them from representing them as Lead Counsel.  To review, first, Interim Spot Class Counsel filed an Amended Complaint that not only completely excluded Forex Futures Purchasers, but did not even acknowledge that they existed – leaving their rights unprotected and the statute of limitations ticking.  Second, Interim Spot Class Counsel entered into the JP Morgan Chase Settlement, which – as described above – included a broad release which encompassed Forex Futures Purchasers as it included "any and all manner of claims, including "'Unknown Claims'"  "arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action, or any amended pleading therein, from the beginning of time. . ."  -- even though the evidence shows that Interim Spot Class Counsel never considered the claims of Forex Futures Purchasers during its negotiations, much less bargained for any consideration from JP Morgan Chase in exchange for giving up the Forex Futures Claims.  Third, in correspondence concerning the claims of Forex Futures Purchasers, Interim Spot Class Counsel disparaged the size and importance of the Forex Futures Purchaser class.  *See*, Dkt. No. 309 at 2 (expressing Interim Spot Class Counsel's belief that Spot trades account for "98% of the FX market" with only 2% being traded through an exchange.).  Fourth, and finally, despite the fact that none of the named plaintiffs in the Spot Action had standing to represent them, Interim Spot Class Counsel took it upon themselves – without informing any other Counsel or the Court, to enter into a putative settlement agreement on behalf of Exclusively Futures Purchasers on terms that it will not share with other Counsel or the Court.

A Forex Futures class deserves better – specifically a Lead Counsel focused on safeguarding and advancing their claims who doesn't deem them merely a minor, inconvenient

19

encumbrance attached to the larger Spot Futures Case.  As discussed below, Cohen Milstein should be appointed to that role.

      C.    <u>Cohen Milstein Should Serve as Lead Counsel for a Forex Futures Class</u>

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  Although neither Rule 23(g) nor the Advisory Committee Notes explicitly defines the standards for appointing *interim* class counsel, courts have held that the factors set forth in Rule 23(g) should also be considered in this context.[17]  The considerations identified in Rule 23(g) include: work counsel has performed identifying or investigating potential claims in the action; counsel's experience with claims of the type asserted in the action; counsel's knowledge of applicable law; resources counsel will commit to representing the class; and any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv) & (B).[18]

As stated above, both because of the *Super Spuds* conflict created by the JP Morgan Settlement and the actions taken thus far by Interim Spot Class Counsel with respect to the Forex Futures Class, Interim Spot Class Counsel should not be selected to lead a Forex Futures Class. Out of the remaining two applicants, Cohen Milstein should be selected as Lead Counsel to lead the Forex Futures Class.

---

[17] *See, e.g., In re Bear Stearns Cos., Inc. Sec., Derivative, and E.R.I.S.A. Litig.*, MDL No. 1963, 2009 WL 50132, at *11 (S.D.N.Y. Jan. 5, 2009) (explaining that it is "generally accepted that the considerations set out in Rule 23(g) (1)(C), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification") (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.,* 240 F.R.D. 56 , 57 (E.D.N.Y. 2006)).

[18] The first four factors must be considered by the Court; it is within the Court's discretion to consider other matters as set forth in Federal Rule 23(g)(1)(B).

While, as described in more detail below, Cohen Milstein fulfills all the requirements of Rule 23(g), the Kirby Group is also filled with able attorneys who have done good work for the Forex Futures Class. Cohen Milstein stands out, however, and distinguishes itself from the Kirby Group in three ways. First, Cohen Milstein, unlike the Kirby Group, is a single firm and not a group of firms cobbled together to work on this case. This strongly favors Cohen Milstein's appointment as Lead Counsel. While Cohen Milstein has worked well with many of the firms in the Kirby Group on other matters, there are so many firms involved (at least four firms on the Kirby Group's Complaint and two more firms that are supporting the Kirby Group) that the structure may become unwieldy and inefficient. Having a single firm in charge will minimize duplication and inefficiencies and maximize accountability. Only Cohen Milstein has the resources to be that single firm.

These resources are the second strong point in favor of Cohen Milstein. The Kirby Group –and those supporting them, are a collection of small plaintiffs firms[19] and Cohen Milstein, at more than eighty lawyers, is bigger than all of them - and has commensurate resources it can bring to bear that none of the firms within the Kirby Group can match.

Third, while Cohen Milstein admittedly inherited the expert work currently contained in the Bakizada Complaint from Quinn, this expert work does give Cohen Milstein a substantial head start in terms of expert work that is unmatched by either the Kovel Group or Interim Spot Class Counsel – and, if the case calls for it, Cohen Milstein can continue to work with the world class experts who performed the cited statistical work to do additional studies for the benefit of

---

[19] Within the Kirby Group, Kirby McInerney has only twenty-seven attorneys; the Burke Firm has four attorneys, Morris and Morris has three attorneys, and Cafferty Clobes has ten attorneys. Richardson, Patrick, Westbrook & Brickman – who filed in support of the Kirby Group, has thirty one total attorneys.

the Class.  For these reasons and those discussed below, Cohen Milstein is the best choice for appointment as Interim Lead Counsel for a Forex Futures Class.

       1.     <u>Cohen Milstein's Work on Behalf of the Forex Futures Class</u>

Cohen Milstein has played an important role in protecting the interests of the Forex Futures Class.  As discussed above, Quinn was "informed that Scott + Scott and Hausfeld LLP had been in contact with [Quinn's clients in *Sterk*], or representatives of those clients, and that they had convinced them to sever their relationship with Quinn Emanuel and to support consolidation" and "given the timing of that revelation, [Quinn] was faced with the possibility of not having standing. . . ."  Dkt. No. 353 at 2.  Faced with the prospect of the Forex Futures Class losing the benefit of the hundreds of thousands of dollars of valuable expert work commissioned by Quinn – work that significantly strengthens the claim of the Forex Futures Class – Cohen Milstein, for the good of the class, agreed to add Quinn to its complaint and to step aside and support Quinn's motion for leadership of the class – thereby preserving the expert analysis for the benefit of the class.

Cohen Milstein also forcefully pressed for the interests of the Forex Futures Class both before and after the withdrawal of Quinn.  Cohen Milstein was the first firm to identify the "structural conflict" under *Super Spuds* and *Auction Houses*[20] created by the JP Morgan Settlement.  *See* Dkt. No. 306.  Cohen Milstein was also the only firm to move this Court for the production of the undisclosed settlement agreements reached by Interim Spot Class Counsel. *See* Dkt. No. 356. While the Court denied the motion, it nonetheless illustrates Cohen Milstein's forceful efforts on behalf of the Class.

---

       [20] J. Douglas Richards of Cohen Milstein was the principal author of the briefs raising analogous issues in *Auction Houses* and argued the appeal of related issues in the Second Circuit.

2.    Cohen Milstein's Experience with These Type of Claims and Knowledge of Applicable Law

Cohen Milstein possesses the highest level of experience and knowledge with respect to these types of claims and these areas of law.  For over forty years, Cohen Milstein, a firm with over eighty lawyers, has been one of the nation's leading plaintiffs' class action firms. The firm has litigated some of the nation's most complex class cases and has recovered billions of dollars in damages for injured plaintiffs. In 2014, the National Law Journal named Cohen Milstein among "America's Elite Trial Lawyers." Similarly, Legal 500 has ranked the firm as a "Leading Plaintiff Class Action Antitrust Firm" and The Trial Lawyer described Cohen Milstein as one of "America's 25 Most Influential Law Firms." In 2014, Law360.com named Cohen Milstein a "Competition Group of the Year"—the first time it has included a plaintiff-side firm in its list. The Forex Futures case takes place at the intersection of the Antitrust and Commodity Exchange Act laws and Cohen Milstein has put together a team possessing deep experience navigating that intersection.

The Cohen Milstein team is led by J. Douglas Richards whose extensive experience litigating under both Commodity Exchange Act and Sherman Act claims will greatly benefit the Class.  Mr. Richards, the Managing Partner of Cohen Milstein's New York office, served as Deputy General Counsel of the Commodity Futures Trading Commission ("CFTC") from 1997 to 2000.  During that time, Mr. Richards had supervisory responsibility for all litigation by and against the CFTC, and for two of those years also managed the CFTC's adjudicatory functions. . In 1999, the Commission awarded Mr. Richards a Special Service Award for performing those two roles simultaneously and successfully eliminating a longstanding backlog of Commission adjudicatory matters.   Mr. Richards's expertise in the antitrust class action field is also widely recognized as he was named one of twenty-two antitrust "Litigation Stars" nationally, was named

23

one of the world's leading competition lawyers by The International Who's Who of Competition Lawyers and Economists (2014), and has received the highest available peer ranking for many years from Martindale-Hubbell.

> 3.    Cohen Milstein Possesses Unparalleled Resources To Deploy on Behalf of a Forex Futures Class

Cohen Milstein, with eighty-five attorneys and almost eighty other employees in six offices, is one of the largest plaintiffs' class action firms in the United States.   In 2013, in one of the few class actions to go to trial, Cohen Milstein attorneys persuaded a jury to award a $400 million verdict in an extremely complex price-fixing case.   The judgment, which was affirmed in its entirety after an appeal to the Tenth Circuit, stands at more than $1 billion after trebling. Cohen Milstein also represented the State of Mississippi, a Lead State in an action brought against S&P regarding the credit ratings it issued that contributed to the 2008 financial crisis. The action resulted in an unprecedented $1.4 billion settlement in 2015 between S&P, 19 states (and the District of Columbia) and the Department of Justice.   Cohen Milstein also has deep experience in cases involving complex financial instruments, having successfully litigated a number of mortgage-backed securities cases as Lead Counsel, bringing in more than $1.6 billion for its clients over the last few years.

Cohen Milstein is also one of the few American law firms to have extensive experience litigating abroad – a key set of skills in this case giving its globe-spanning facts.   In *In re Parmalat Securities Litigation,* No.04-CV-00030 (S.D.N.Y.) concerning a scandal the SEC dubbed "one of the largest and most brazen corporate financial frauds in history," Cohen Milstein alleged on behalf of investors that various third parties permitted the European defendants to implement a Ponzi scheme.   Cohen Milstein's skill in prosecuting this global fraud and knowledge of and employment of the discovery procedures under the Hague Convention to take depositions in more

24

than half a dozen countries around the world, enabled Cohen Milstein to obtain settlements totaling approximately $90 million for investors.  Further demonstrating Cohen Milstein's comfort working abroad, Cohen Milstein is one of the few American firms to create a settlement fund through the Dutch court system under the Dutch Act on the Collective Settlement of Mass Claims (the "Dutch Collective Settlement Act").  In landmark rulings obtained in November 2011 and January 2012, Cohen Milstein persuaded the Amsterdam Court of Appeal to exercise jurisdiction and to declare the international settlements of the *Converium* action binding on investors worldwide.

Finally, thanks to its earlier alliance with Quinn, Cohen Milstein has retained two world class experts in this type of financial market manipulation who have already done extraordinary work on behalf of the Forex Futures class.  All these resources, which are unparalleled amongst the movants, would contribute significantly to effective representation of the Forex Futures Class.

## III.    CONCLUSION

For all the above reasons, Cohen Milstein should be appointed Interim Lead Counsel for a Forex Futures Class.

2030328.1

Respectfully Submitted,

DATED:      New York, New York
            August 6, 2015

                                    COHEN MILSTEIN SELLERS & TOLL PLLC


                                    By:/s/ J. Douglas Richards
                                    J. Douglas Richards (JDR-6038)
                                    Michael Eisenkraft (ME-6974)
                                    George Farah (GF-3472)
                                    88 Pine Street, 14th Floor
                                    New York, New York  10005
                                    Telephone:  (212) 838-7797
                                    Fax:  (212) 838-7745
                                    drichards@cohenmilstein.com
                                    meisenkraft@cohenmilstein.com
                                    gfarah@cohenmilstein.com

                                    Manuel John Dominguez
                                    2925 PGA Boulevard, Suite 200
                                    Palm Beach Gardens, FL  33410
                                    Telephone: (561) 833-6575
                                    jdominguez@cohenmilstein.com

                                    Daniel H. Silverman
                                    1100 New York Ave., NW, Suite 500
                                    Washington, DC  20005
                                    Telephone:  (202) 408-4600
                                    Fax: (202) 408-4699
                                    dsilverman@cohenmilstein.com


                                    *Counsel for Plaintiff and the Proposed Class*

2030328.1