**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE FOREIGN EXCHANGE
BENCHMARK RATES ANTITRUST
LITIGATION

**ECF CASE**

No. 1:13-cv-07789-LGS

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO
CONSOLIDATE AND TO APPOINT INTERIM CO-LEAD COUNSEL**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................................1

II.    ARGUMENT ..................................................................................................................2

     A.    Consolidation Requires Only a Common Question of Law or Fact, Not
           Complete Overlap ................................................................................................2

     B.    Lead Counsel Had the Authority to Settle Claims Relating to Exchange-
           Traded FX Instruments .......................................................................................4

     C.    No Class Member Will Release Claims Without Compensation ...........................5

     D.    Lead Counsel's Eventual Request for Attorneys' Fees Does Not Create a
           Structural Conflict ..............................................................................................6

     E.    Bakizada Has Not Been Harmed by Any OTC Class Settlement...........................8

     F.    Cohen Milstein Has Not Demonstrated that It Would Best Represent the
           Exchange Class ...................................................................................................9

     G.    The Court Should Appoint Lead Counsel to Prosecute All Claims........................9

III.    CONCLUSION...............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Auction Houses Antitrust Litig.*,
    138 F. Supp. 2d 548 (S.D.N.Y. 2001)......................................................................7

*In re Auction Houses Antitrust Litig.*,
    No. 00 Civ. 0648 (LAK), 2001 WL 170792 (S.D.N.Y. Feb. 22, 2001), *aff'd*, 42 F.
    Appx. 511 (2d Cir. 2002).......................................................................................7, 8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)...................................................................................................8

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982).........................................................................................5

STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 42(a)..........................................................................................................2, 3, 4

## I.      INTRODUCTION

Plaintiff Bakizada asserts as fact that Lead Counsel released claims for exchange-traded FX instruments possessed by OTC Class members for no compensation.  From this premise, Bakizada argues that Lead Counsel created "an unsolvable structural conflict for counsel who negotiated the JPMorgan Settlement . . . ."  (ECF No. 383 at 19.)  Bakizada concludes that the Futures Actions cannot be consolidated into the Consolidated Action, separate counsel is needed, and all the settlements are illegitimate.

Contrary to Bakizada's contentions, Lead Counsel negotiated valuable monetary and non-monetary compensation for the OTC Class members' release of claims related to exchange-traded FX instruments.  They were not an afterthought.  In negotiations, Lead Counsel relied on, among other things, the Bank of International Settlements Triennial Central Bank Surveys ("BIS Surveys") to help determine the total volume of trading in the FX market affected by Defendants' conspiracy.  The BIS Surveys include volume for both OTC and exchange-traded FX instruments.  As to JPMorgan, Lead Counsel applied an estimate of its market share to the total volume of FX instruments in the entire FX market – not just OTC – to negotiate monetary relief.  Additionally, OTC Class members will receive valuable cooperation relating to exchange-traded FX instruments for releasing their claims relating to exchange-traded FX instruments.

Without the assumption of no compensation, Bakizada's argument collapses.  Even Bakizada concedes "[u]nder the right circumstances, a Spot Class and a Futures Class can be represented by the same Counsel."  (ECF No. 383 at 15 n.13.)  Those circumstances – class members receiving compensation for releasing claims – are clearly present here.

Bakizada also contends that his complaint does not share an identical factual predicate with the Second Consolidated Amended Class Action Complaint ("SAC") because part of his complaint alleges direct manipulation of futures prices.  (ECF No. 383 at 14.)  But Bakizada

alleges that "Defendants used the same methods and means of communication and conspiracy" to manipulate futures prices (*Bakizada*, ECF No. 18, ¶214) and that prices for futures "move in tandem with FX spot prices." (*Bakizada*, ECF No. 18, ¶5.) Even in the paragraphs that Bakizada contends sets his complaint apart, he alleges "***prices were changing in the spot market, quickly***, right around the time Defendants would be looking to 'roll over' their positions in the futures market" (*Bakizada*, ECF No. 18, ¶255; *see also id.*, ¶259 ("a large spike" in spot prices before calculation relating to futures)).[1] And Bakizada's allegations that the conspiracy affects more than just WM/Reuters benchmarks are covered by dozens of allegations in the SAC, including Defendants' own admissions. Thus, a review of Bakizada's complaint demonstrates that the cases arise from the same conspiracy, namely, the manipulation of futures prices flows directly from the manipulation of the spot market.

Because there is no fundamental conflict, *i.e.*, relief for one class is not at the expense of another class, and the Futures Actions and the Consolidated Actions involve many common questions of law and fact, the Court should consolidate them. Moreover, Lead Counsel have achieved substantial successes, including obtaining monetary and non-monetary compensation for claims related to exchange-traded FX instruments. Lead Counsel are supported by all but one Plaintiff. The Court should allow Lead Counsel to continue to prosecute all claims.

## II.   ARGUMENT

### A.   Consolidation Requires Only a Common Question of Law or Fact, Not Complete Overlap

Under Rule 42(a), consolidation requires only that actions involve a common question of law or fact. Bakizada argues that the facts underlying his complaint are significantly different

---

[1]   Unless otherwise noted, all emphasis is added.

from those alleged in the SAC.  Despite his labored attempt to manufacture a separate conspiracy, Bakizada's claims arise from the same conduct alleged in the SAC and unquestionably share common questions of law and fact.

Bakizada's complaint is built on a foundation of allegations specific to Defendants' conduct in the OTC market.  For example, paragraphs 109 through 146 describe government investigations and their findings – the same investigations cited in the SAC.  These guilty pleas, orders, examples of chats, and investigations are primarily based on Defendants' manipulation of the WM/Reuters 4:00 Closing Spot Rates, benchmark rates specific to the OTC market.  Further, Bakizada's complaint expressly ties manipulation of futures prices to manipulation of spot prices:

> [P]rices for FX futures and options move in tandem with prices for FX spot transactions.  ***By manipulating prices and key benchmarks for spot transactions, Defendants also manipulated the prices for FX futures and options***.  As major participants in the FX market, Defendants knew that their ***manipulation of FX spot prices would also cause – and in fact did cause – manipulation of prices of FX futures and options on futures***, to the detriment of market participants, such as Plaintiff.

*Id.*, ¶187.  Bakizada then alleges that economic analysis confirmed manipulation of the WM/Reuters Closing Spot Rates and that "[m]anipulation of spot prices also cause manipulation of futures prices because they move in tandem…."  *See id.*, ¶¶188-212.  Given the acknowledged overlap in specific allegations and the fact that both complaints allege that FX spot and FX futures prices move in tandem, Bakizada's claim that the two complaints do not arise under the same factual predicate is meritless.

Bakizada further claims his complaint alleges that Defendants' manipulation of futures prices occurred at "times only relevant to the futures market" and thus, definitively rebuts Lead Counsel's position that the two complaints share identical factual predicates.  (ECF No. 383 at

14-15.)  However, the paragraphs of Bakizada's complaint cited, ¶¶213-16, allege facts also covered by the SAC and do not significantly differentiate his claims.  Far from it, Bakizada alleges that "as a matter of common sense and logic, Defendants used the same methods and means of communication and conspiracy that they have admitted using to influence the FX spot rate to also manipulate other, key FX futures and options benchmark rates, including the end-of-day settlement fix and other benchmark rates alleged herein."  (*Bakizada*, ECF No. 18, ¶214.)  The remaining paragraphs cited simply describe behavior regarding the importance of the Chicago Mercantile Exchange ("CME") 2:00 p.m. daily settlement, which is also contained in the SAC.  (*See Bakizada*, ECF No. 18, ¶¶213-16; SAC, ¶¶273-86.)  Finally, the SAC alleges that Defendants are fixing bid/ask spreads (spot price) and benchmarks throughout the day and thus, prices of all FX instruments throughout the day.  *See* SAC, ¶¶5, 282.

## B. Lead Counsel Had the Authority to Settle Claims Relating to Exchange-Traded FX Instruments

Bakizada argues that Lead Counsel had no authority to settle claims related to exchange-traded FX instruments.  (ECF No 383 at 2-3, 19.)  The Court, however, appointed Lead Counsel to represent "the putative U.S. class."  (ECF No. 96.)  The Court did not limit Lead Counsel's authority to any particular subset of FX instruments.  (*See id*.)

Lead Counsel also represented clients who only traded FX instruments on exchanges.  These include Plaintiffs who are now named plaintiffs in the SAC.  Bakizada cites no authority that suggests Lead Counsel was powerless to negotiate on behalf of their clients either individually or as representatives of a putative class.  On the contrary, Second Circuit case law establishes that parties may settle claims in a class action prior to its being filed, so long as putative class members are made aware of the expansion of claims and provided an opportunity

to object and opt out.  *See Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982).  The classes will have such an opportunity here.

### C.     No Class Member Will Release Claims Without Compensation

The core of Bakizada's argument is the assertion that Lead Counsel settled OTC Class members' exchange-traded FX claims for no compensation.  Lead Counsel did no such thing.

In negotiating the JPMorgan settlement for the OTC Class, Lead Counsel sought and received valuable monetary relief and cooperation in exchange for releasing claims arising out of Defendants' conduct relating to all FX instruments traded by OTC Class members.  This is why Mr. Feinberg's declaration refers to "the FX market" and not simply OTC instruments.  This is also why Lead Counsel used the BIS Surveys, which includes FX instruments traded OTC and on exchanges.  Far from ignoring exchange-traded FX instruments, Lead Counsel considered them as part of the overall FX market and obtained monetary relief and cooperation for their release.

Mr. Feinberg's declaration demonstrates that no claims were released in the JPMorgan settlement without monetary relief or cooperation.  Mr. Feinberg was retained as a mediator "to secure a ***comprehensive*** settlement . . . involving Class Plaintiffs."  (ECF No. 248, ¶6.) Mr. Feinberg's declaration notes the parties' extensive discussions regarding the "scope of the release" and "specific proposed terms of the settlement agreement."  (ECF No. 248, ¶¶9, 11.) Mr. Feinberg averred that his "review of the economic analysis conducted by financial experts" was "consistent with Class Lead Counsel's evaluation of JPM's role in the FX market and JPM's market share over the Class Period (6%)."  (ECF No. 248, ¶14.)

Bakizada contends that Mr. Feinberg's failure to specifically reference the FX futures market is evidence that Lead Counsel never considered it.  (ECF No. 383 at 5-6.)  But Bakizada fails to mention that Mr. Feinberg's declaration also never references the FX OTC market.

Mr. Feinberg's declaration references neither the FX futures market nor the FX OTC market, because the JPM settlement involved all FX instruments traded in the entire FX market by OTC Class members.

Mr. Feinberg's statements concerning cooperation obtained from JPMorgan further demonstrate that Lead Counsel's negotiations considered and included exchange-traded FX instruments.   Mr. Feinberg stated that the "comprehensive" cooperation "***is not limited to WM/Reuters benchmark manipulation***, permitting Class Lead Counsel ***to develop not only the claims alleged in the Amended Complaint, but also potential new claims that may arise related to the FX market***."  (ECF No. 248, ¶15.)  The scope of the cooperation mirrors the scope of the release.   This is clear evidence the parties' settlement was not limited to OTC FX instruments nor to the single antitrust claim alleged in the Consolidated Amended Class Action Complaint.

Bakizada also contends that Lead Counsel disparaged the importance of claims relating to exchange-traded FX instruments by referencing the BIS Surveys showing the relative volume of trades conducted OTC versus on exchanges.   Far from diminishing any class members' claims, it reflects the empirical landscape of the FX market.   Lead Counsel referenced the BIS Surveys to demonstrate substantial fact and class membership overlap.  (*See* ECF No. 296 at 2; No. 324 at 4; No. 348 at 19 n.9.)  That relative volumes in the FX market are heavily weighted towards OTC trades helps to demonstrate why the conspiracy would first manifest in OTC spot transactions and further supports consolidation.

### D.  Lead Counsel's Eventual Request for Attorneys' Fees Does Not Create a Structural Conflict

Relying on *Auction Houses*, Bakizada argues that Lead Counsel's yet-to-be-made request for attorneys' fees prevents the Court from correcting the alleged structural conflict created by the JPMorgan settlement.   This contention rests on the fallacy that there is a structural conflict

because exchange-traded FX instrument claims were released for no compensation.  Beyond that, Bakizada ignores the specific facts of the fee agreement in *Auction Houses*, which distinguish that case from this one.

At the beginning of *Auction Houses*, the Court ordered potential lead counsel to submit bids concerning how much they would seek as attorneys' fees.  *In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648 (LAK), 2001 WL 170792, at *1 (S.D.N.Y. Feb. 22, 2001), *aff'd*, 42 F. Appx. 511 (2d Cir. 2002).  The winning bid provided that lead counsel would not receive attorneys' fees for a settlement of less $405 million, but would receive 25% of any settlement amount in excess of $405 million.  *Id*.  The Court pre-approved this attorney fee arrangement, meaning lead counsel had a guarantee of fees after signing any deal above $405 million.  *Id*.

This pre-arranged fee agreement created a problem after the parties reached a settlement of $512 million.  The Court stated:

> By doing so, they earned themselves a fee of more than $26.75 million, contingent upon the settlement becoming effective. At that moment, they gained a powerful incentive to protect the settlement and thus their large fee.  They thus have an incentive to acquiesce in defendants' insistence that the deal proceed without modifying the "release."  And that incentive has manifested itself in their willingness to allocate part of the outstanding recovery they gained with respect to claims based on U.S. auctions to those among them who, in addition, have claims based on foreign auctions.  In principle, that is no different than what the Court of Appeals condemned in *Super Spuds.*

*In re Auction Houses Antitrust Litig.*, 138 F. Supp. 2d 548, 551 (S.D.N.Y. 2001).

Here by contrast, Lead Counsel simply have the ability to request that fees be awarded at some point and have agreed that in no event shall the request exceed one third of the settlement fund.  Any fee request will be part of the preliminary and final approval process and must be

approved by the Court.[2]   Unlike *Auction Houses*, Lead Counsel have no guarantees as to the amount of any fee award.   Equally important, Lead Counsel do not face a situation like *Auction Houses* where, if the settlement falls below a threshold value, they agree to receive no fees whatsoever.   Accordingly, *Auction Houses*' rationale is inapposite.

### E.     Bakizada Has Not Been Harmed by Any OTC Class Settlement

Although conceding that he lacks standing to challenge any OTC Class settlement, Bakizada states the approval of these settlements will harm him.   The harm Bakizada claims is the ability to be part of a larger class of futures traders.   (ECF No. 383 at 8.)   Bakizada cites no authority for the proposition that an individual suffers harm by being deprived of being in a larger class.[3]

Far from being prejudiced by the OTC Class settlements, Bakizada has benefitted from them.   Without having to release any of his claims, Bakizada, through Lead Counsel, obtained the benefit of cooperation provided to the OTC Class.   Once the settling defendants agreed to provide cooperation that uncovered the scope of the collusion, Defendants came under increased pressure to resolve claims with all those who traded FX instruments on exchanges, such as Bakizada.

---

[2]     That class counsel recover fees from a common fund is the very reason why class members are permitted the opportunity and object and the Court must grant final approval. Following Bakizada's logic to the end means that every time class counsel signs a settlement in which they will be paid fees out of the common fund, they are always conflicted if there arises a need to adjust or modify the settlement.

[3]     Though Bakizada repeatedly cites *Auction Houses*, he does not argue or assert the facts support a limited fund situation in which there will not be sufficient assets from which to recover his damages.  *See Auction Houses*, 42 Fed. Appx. at 521 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999)).

F.    **Cohen Milstein Has Not Demonstrated that It Would Best Represent the Exchange Class**

Cohen Milstein would not best represent the Exchange Class.  If a fundamental conflict between the Classes exists (it does not), Cohen Milstein would be conflicted from representing the Exchange Class.  While Cohen Milstein claims lack of involvement in the Consolidated Action after February 13, 2014 (ECF No. 383 at 3 n.3 and 4 n.5), Cohen Milstein has never withdrawn from its representation of two Plaintiffs in the Consolidated Action.  One of them, Plaintiff Aureus Currency Fund, L.P., remains a named Plaintiff in the SAC.[4]  Moreover, as recently as April 2015, Cohen Milstein submitted time and expense reports to Lead Counsel for work performed and expenses incurred in the Consolidated Action.  This ongoing – even if small – involvement in the Consolidated Action would preclude Cohen Milstein from providing representation to the Exchange Class that was any more "independent" than Lead Counsel.

Cohen Milstein has not undertaken any significant efforts to identify claims or demonstrate leadership for the Exchange Class.  *Bakizada* followed on the heels of the *Taylor* and *Sterk* actions.  Cohen Milstein did not originally seek appointment as lead counsel of the Exchange Actions, but instead supported the appointment of Quinn Emmanuel Urquhart & Sullivan LLP.  Cohen Milstein sought appointment as lead only after Quinn withdrew, relying heavily on work product and experts bequeathed by Quinn.

G.    **The Court Should Appoint Lead Counsel to Prosecute All Claims**

Lead Counsel have defeated the motion to dismiss and obtained cooperation to plead a broader conspiracy involving price fixing throughout the day, supported by direct evidence from chat rooms.  Lead Counsel have leveraged that cooperation to obtain substantial settlements with

---

[4]    Cohen Milstein entered a notice of appearance on behalf of Aureus Currency Fund, L.P. on April 1, 2014.  (ECF No. 174.)

a majority of the Defendants.  Apart from the substantial benefits achieved for the Classes – both in terms of compensation and cooperation – Lead Counsel have the support of members of both Classes.  *See* ECF Nos. 349, 380, 384, 385.

## III.    CONCLUSION

The Court should consolidate the Futures Actions into the Consolidated Action and appoint Scott+Scott and Hausfeld as Interim Co-Lead Counsel for the Exchange Class.

DATED:  August 12, 2015                    Respectfully submitted,

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*/s/*Christopher M. Burke
CHRISTOPHER M. BURKE (CB-4062)
WALTER W. NOSS (WN-0529)
KRISTEN M. ANDERSON (*pro hac vice*)
STEPHANIE A. HACKETT (*pro hac vice*)
JENNIFER J. SCOTT (*pro hac vice*)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com
shackett@scott-scott.com
jscott@scott-scott.com

-and-

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
DAVID R. SCOTT (DS-8053)
JOSEPH P. GUGLIELMO (JG-2447)
SYLVIA M. SOKOL (SS-0317)
THOMAS K. BOARDMAN (TB-0530)
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
ssokol@scott-scott.com
tboardman@scott-scott.com

HAUSFELD LLP
MICHAEL D. HAUSFELD
WILLIAM P. BUTTERFIELD (*pro hac vice*)
REENA ARMILLAY GAMBHIR (*pro hac vice*)
TIMOTHY S. KEARNS (*pro hac vice*)
NATHANIEL C. GIDDINGS (*pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7143
Facsimile:  202-5407201
mhausfeld@hausfeld.com
wbutterfield@hausfeld.com
rgambhir@hausfeld.com
tkearns@hausfled.com
ngiddings@hausfeld.com

     -and-

HAUSFELD LLP
MICHAEL P. LEHMANN
CHRISTOPHER L. LEBSOCK
BONNY E. SWEENEY
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1949
Facsimile:  415-693-0770
mlehman@hausfeld.com
clebsock@hausfeld.com
bsweeney@hausfeld.com

*Interim Co-Lead Counsel*

KOREIN TILLERY, LLC
STEPHEN M. TILLERY (*pro hac vice*)
ROBERT L. KING (*pro hac vice*)
AARON M. ZIGLER (*pro hac vice*)
STEVEN M. BEREZNEY (*pro hac vice*)
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
Saint Louis, MO  63101-1612
Telephone: 314-241-4844
Facsimile: 314-241-3525
stillery@koreintillery.com
rking@koreintillery.com
azigler@koreintillery.com
sberezney@koreintillery.com

     -and-

KOREIN TILLERY, LLC
GEORGE A. ZELCS (*pro hac vice*)
205 N. Michigan Ave, Suite 1950
Chicago, IL 60601-5927
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com

*Counsel for Plaintiffs Haverhill Retirement System
and Oklahoma Firefighters Pension and Retirement
System, Robert Miller, Mark Miller, and Peter Rives*

OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
WILLIAM J. LEONARD (*pro hac vice*)
RIGEL FARR (*pro hac vice*)
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
Telephone: 215-665-3000
Facsimile: 215-665-3165
william.leonard@obermayer.com
rigel.farr@obermayer.com

BONI & ZACK LLC
MICHAEL J. BONI (*pro hac vice*)
JOSHUA D. SNYDER (*pro hac vice*)
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
Facsimile:  610-822-0206
mboni@bonizack.com
jsnyder@bonizack.com

*Counsel for Plaintiff the City of Philadelphia,
Board of Pensions and Retirement*

ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

*Counsel for Plaintiff Employees' Retirement System
of the Government of the Virgin Islands*

WOLF POPPER LLP
MARIAN R. ROSNER
PATRICIA I. AVERY
FEI-LU QIAN
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone:  212-759-4600
Facsimile:  212-486-2093
mrosner@wolfpopper.com
pavery@wolfpopper.com
fqian@wolfpopper.com

*Counsel for Plaintiff Employees' Retirement
System of Puerto Rico Electric Power Authority*

BERMAN DeVALERIO
JOSEPH J. TABACCO, JR. (JJT-1994)
TODD A. SEAVER (*pro hac vice*)
SARAH KHORASANEE MCGRATH (*pro hac
vice*)
JESSICA MOY (*pro hac vice*)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: 415-433-3200
Facsimile: 415-433-6382
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com
smcgrath@bermandevalerio.com
jmoy@bermandevalerio.com

*Counsel for Plaintiff Fresno County Employees'
Retirement Association*

LABATON SUCHAROW LLP
GREGORY S. ASCIOLLA
JAY L. HIMES
ROBIN A. VAN DER MEULEN
MATTHEW J. PEREZ
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477
gasciolla@labaton.com
jhimes@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com

*Counsel for Plaintiff State-Boston Retirement
System, Marc G. Federighi, and Michael J. Smith*

CRIDEN & LOVE, P.A.
MICHAEL E. CRIDEN
LINDSEY C. GROSSMAN
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: 305-357-9000
Facsimile: 305-357-9050
mcriden@cridenlove.com
lgrossman@cridenlove.com

*Counsel for Plaintiffs J. Paul Antonello, Marc G.
Federighi and Michael J. Smith*

GRANT & EISENHOFER, P.A.
PETER A. BARILE III (PB-3354)
485 Lexington Avenue
New York, NY 10017
Telephone: 646-722-8500
Facsimile: 646-722-8501
pbarile@gelaw.com

*Counsel for Plaintiff Syena Global Emerging
Markets Fund, LP*

ENTWISTLE & CAPPUCCI LLP
ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
280 Park Avenue, 26th Floor West
New York, NY 10017
Telephone:  212-894-7200
Facsimile:  212-894-7272
aentwistle@entwistle-law.com
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

*Counsel for Plaintiffs Tiberius OC Fund, Ltd. and
Value Recovery Fund L.L.C.*

LOWEY DANNENBERG COHEN & HART, P.C.
VINCENT BRIGANTI
GEOFFREY M. HORN
PETER D. ST. PHILLIP
RAYMOND P. GIRNYS
One North Broadway
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com
rgirnys@lowey.com

14

LOWEY DANNENBERG COHEN & HART, P.C.
GERALD LAWRENCE, ESQ.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA  19428
Telephone: 610-941-2760
Facsimile: 610-862-9777
glawrence@lowey.com

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
ERIC L. YOUNG
NATALIE FINKELMAN BENNETT
35 East State Street
Media, PA  19063
Telephone: 610-891-9880
Facsimile: 866-300-7367
eyoung@sfmslaw.com
nfinkelman@sfmslaw.com

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
JAMES E. MILLER
65 Main Street
Chester, CT  06412
Telephone: 860-526-1100
Facsimile: 860-526-1120
jmiller@sfmslaw.com

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ  08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

MANDEL BHANDARI LLP
RISHI BHANDARI
EVAN MANDEL
80 Pine Street, 33rd Floor
New York, NY  10005
Telephone: 212-269-5600
Facsimile: 646-964-6667
rb@mandelbhandari.com
em@mandelbhandari.com

*Counsel for Plaintiff United Food and Commercial
Workers Union and Participating Food Industry
Employers Tri-State Pension Fund*

15

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ  08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

*Counsel for Plaintiffs Doug Harvey, Izee Trading Company, and Richard Preschern d/b/a Preschern Trading*

CERA LLP
SOLOMON B. CERA
C. ANDREW DIRKSEN
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone:  415-777-2230
Facsimile:  415-777-5189
scera@cerallp.com
cdirksen@cerallp.com

*Counsel for Plaintiff Aureus Currency Fund L.P.*

FREED KANNER LONDON & MILLEN LLC
MICHAEL J. FREED
STEVEN A. KANNER
2201 Waukegan Road, Suite 130
Bannockburn, Illinois 60015
Telephone:  224-632-4500
Facsimile:   224-632-4521
mfreed@fklmlaw.com
skanner@fklmlaw.com

*Counsel for Plaintiffs Thomas Gramatis and John Kerstein*

NUSSBAUM LAW GROUP, P.C.
LINDA P NUSSBAUM
570 Lexington Ave., 19 floor
New York, NY, 10022
Telephone: 212 702 7054
lnussbaum@nussbaumpc.com

*Counsel for Plaintiffs Jeffrey Sterk, Kimberly Sterk, and Michael Melissinos*

THE MOGIN LAW FIRM, P.C.
DANIEL J. MOGIN
JODIE M. WILLIAMS
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone:  619-687-6611
Facsimile:  619-687-6610
dmogin@moginlaw.com
jwilliams@moginlaw.com

STEYER, LOWENTHAL, BOODROOKAS
ALVAREZ & SMITH LLP
ALLAN STEYER
JAYNE PEETERS
One California Street, Third Floor
San Francisco, CA 94111
Telephone: 415-421-3400
Facsimile:  415-421-2234
asteyer@steyerlaw.com
jpeeters@steyerlaw.com

*Counsel for Plaintiffs Haverhill Retirement System
and Oklahoma Firefighters Pension and Retirement
System*

FINE, KAPLAN AND BLACK, R.P.C.
ROBERTA D. LIEBENBERG
ADAM PESSIN
One South Broad St., Suite 2300
Philadelphia, PA 19107
Telephone:  215-567-6565
Facsimile:  215-568-5872
rliebenberg@finekaplan.com
apessin@finekaplan.com

MOTLEY RICE LLC
WILLIAM H. NARWOLD
DONALD A. MIGLIORI
MICHAEL M. BUCHMAN
JOHN A. IOANNOU
600 Third Avenue, Suite 2101
New York, NY 10016
Telephone:  212-577-0040
Facsimile:  212-577-0054
bnarwold@motleyrice.com
dmigliori@motleyrice.com
mbuchman@motleyrice.com
jioannou@motleyrice.com

17

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW VAN TINE
115 S. LaSalle St., Suite 2101
Chicago, IL 60603
Telephone: 312-322-3400
Facsimile:  312-676-2676
mmiller@millerlawllc.com
mvantine@millerlawllc.com

*Of Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

Executed on August 12, 2015.

/s/ Christopher M. Burke
Christopher M. Burke
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com