**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**ALLEN PLAINTIFFS' RESPONSE TO MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AGREEMENTS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
STATEMENT OF FACTS ........................................................................................................... 2
ARGUMENT ................................................................................................................................. 3

    I. .... The Court should clarify the scope of the releases in the settlement agreements in the Consolidated Action; the claims in the Allen Action largely arise from a different "factual predicate" than the claims in the Consolidated Action. ....................................................... 3

    II. ..........The Consolidated Plaintiffs cannot adequately represent class members as to their ERISA claims and therefore should not be allowed to release those claims. ...................... 6

CONCLUSION............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................................7

*Authors Guild v. Google Inc.*,
  770 F. Supp. 2d 666 (S.D.N.Y. 2011) ......................................................................6, 7

*Charron v. Wiener*,
  731 F.3d 241 (2d Cir. 2013) .......................................................................................4

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .....................................................................................10

*In re Auction Houses Antitrust Litig.*,
  42 Fed. App'x 511 (2d Cir. 2002) ...........................................................................3, 5

*In re Currency Conversion Fee Antitrust Litig.*,
  No. 01 MDL 1409, M-21-95, 2006 WL 3247396 (S.D.N.Y Nov. 8, 2006) ...............3

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011) ........................................................................3

*In re Initial Pub. Offering Secs. Litig.*,
  260 F.R.D. 81 (S.D.N.Y 2009) ...................................................................................6

*In re Lehman Bros. Secs. and ERISA Litig.*,
  No. 09 MD 2017(LAK), 2012 WL 2478483 (S.D.N.Y. June 29, 2012) ....................4

*In re Lehman Bros. Equity/Debt Secs. Litig.*,
  No. 08 Civ. 5523, Dkt. No. 987 (S.D.N.Y. July 27, 2012) .........................................4

*In re Literary Works in Elec. Databases Copyright Litig.*,
  654 F.3d 242 (2d Cir. 2011) ..............................................................................3, 9, 10

*King v. Hausfeld*,
  No. 13cv0237-EMC, Dkt. No. 1 (N.D. Cal Jan. 17, 2013) .......................................10

*Leigh v. Engle*,
  669 F. Supp. 1390 (N.D. Ill 1987) ..............................................................................7

*Martens v. Smith Barney, Inc.*,
  181 F.R.D. 243 (S.D.N.Y. 1998) ..............................................................................11

*Mirfasihi v. Fleet Mortg. Corp.*,
  356 F.3d 781 (7th Cir. 2004) ......................................................................................9

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
  660 F.2d 9 (2d Cir. 1981) ..............................................................................4, 7, 8, 9

*Ortiz v. Fibreboard Corp.*,
 527 U.S. 815 (1999) ..................................................................................................9

*Saylor v. Lindsley*,
 456 F.2d 896 (2d Cir. 1972) ....................................................................................11

*TBK Partners, Ltd. v. Western Union Corp.*,
 675 F.2d 456 (2d Cir. 1982) ......................................................................................3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005) ....................................................................................6, 7

**Statutes and Rules**

29 U.S.C. §1109(a) ............................................................................................................7

29 U.S.C. §1132(a). ...........................................................................................................8

Fed. R. Civ. P. 23(a)(4) .....................................................................................................6

# PRELIMINARY STATEMENT

Plaintiffs in the Consolidated Action ask the Court for preliminary approval of settlement agreements with nine defendants. The named plaintiffs in the Allen ERISA class action – who also are participants, beneficiaries, and trustees of ERISA employee benefit plans that are members of the relevant class in the Consolidated Action – believe that the settlements are unfair to class members with ERISA claims.[1] To decide this question, the Court need focus only on the following three issues:

- **Scope of the releases**: The Allen Plaintiffs' ERISA claims are based in substantial part on non-collusive conduct. The antitrust allegations in the Consolidated Action arise solely from collusive conduct. Thus, the claims in the two actions arise from different "factual predicates." The settling defendants nevertheless have opined that the settlements will extinguish all ERISA claims. Should the Court preliminarily approve the settlements notwithstanding an apparent dispute about the scope of the releases?

- **Adequacy of representation**: Class members with ERISA claims (and antitrust claims) have far more valuable claims than do class members with only antitrust claims. And the named plaintiffs in the Consolidated Action do not have standing to bring ERISA claims. There is no evidence that the named plaintiffs in the Consolidated Action took ERISA claims into account when negotiating these settlements. Can the Court nevertheless assume that the named plaintiffs in the Consolidated Action adequately represented class members with ERISA claims?

- **Fairness of the settlements**: Plaintiffs in the Consolidated Action move for preliminary approval of approximately $2 billion in settlements.  At the time they entered the settlements, they had not received discovery adequate to support a finding that the settlements were fair, adequate, and equitable. Can the Court and class members reasonably evaluate the fairness of the settlements (or trust that the settlements are fair) given the extremely early stage of the case and the insufficient information available to the named plaintiffs and their counsel at the time they entered into the settlements?

---

[1] This objection is on behalf of Doris Sue Allen, Donna S. Lucas, Dana Kellen, Hedy Anselman, Timothy Garrett, Jonathan G. Axelrod, John A. Boardman, and Warren Pepicelli, all of whom are participants, beneficiaries, or trustees of ERISA employee benefit plans. They also are the named plaintiffs in the Allen ERISA class action.

## STATEMENT OF FACTS

The plaintiffs in the Allen Action assert class action claims under ERISA on behalf of employee benefit plans that entered into FX transactions (including spot transactions, forwards, swaps, and options) directly with a defendant. The Allen plaintiffs have not asserted antitrust claims or claims on behalf of ERISA plans that entered into FX transactions on an exchange.

The SACC asserts claims on behalf of two classes – an OTC Class and an Exchange Class.[2] Only the OTC Class's claims are relevant to this response. Like the class in the Allen Action, the OTC Class in the Consolidated Action is limited to persons who entered into FX transactions directly with a defendant. The only claim by the OTC Class is for violation of the antitrust laws, specifically Section 1 of the Sherman Act. Section 1 prohibits "agreements" in restraint of trade. Other antitrust laws (including Section 2 of the Sherman Act) deal with unilateral conduct. Thus, to prevail on behalf of the OTC Class, plaintiffs in the Consolidated Action must show that defendants acted collusively to restrain trade.

On October 22, 2015, plaintiffs in the Consolidated Action moved for preliminary approval of settlements with Bank of America, Barclays, BNP Paribas, Citigroup, Goldman Sachs, HSBC, JPMorgan, RBS, and UBS. There is no suggestion in the Consolidated Plaintiffs' Motion that they gave any thought to class members' ERISA claims. And there is no indication that class members with both ERISA and antitrust claims will receive any more compensation than class members with only antitrust claims.

Plaintiffs in the Consolidated Action executed their settlement agreement with JPMorgan on January 5, 2015, before they received discovery from any defendant.[3] According to the

---

[2] The "SACC" refers to the Second Amended Consolidated Complaint filed in the Consolidated Action.
[3] Declaration of Christopher Burke and Michael Hausfeld in Support of Plaintiffs' Motion for Preliminary Approval ¶ 51.

Consolidated Plaintiffs' Motion, a "number" (likely all) of the remaining settling defendants initiated settlement talks following the JPMorgan agreement – again, before any discovery, formal or informal, had occurred.[4] Indeed, the only discovery that the Consolidated Plaintiffs have received, or expect to receive from the settling defendants, is informal discovery pursuant to cooperation provisions in signed settlement agreements. And the Consolidated Plaintiffs have refused to provide even this limited amount of information to class members with ERISA claims, despite the Allen plaintiffs' attempt to obtain it.[5]

## ARGUMENT

I. **The Court should clarify the scope of the releases in the settlement agreements in the Consolidated Action; the claims in the Allen Action largely arise from a different "factual predicate" than the claims in the Consolidated Action.**

The scope of the proposed releases is disputed. Each settlement agreement purports to release all claims related to FX transactions arising out of the same "factual predicate" as the antitrust claims in the Second Amended Consolidated Complaint.[6] The way the global releases are framed is no accident. In the Second Circuit, a class action settlement may not extinguish claims unpled that arise from a different "factual predicate" as those in the class action complaint.[7] A class action settlement may release future claims based on a different legal *theory*, but only if the claims "depend[] on the very same set of facts."[8] Parties to a class action may not release claims that require "proof of further facts."[9]

---

[4] Burke and Hausfeld Declaration ¶ 52.

[5] Letter from Plaintiffs, ECF No. 459 (September 11, 2015).

[6] JPMorgan Agreement at 9; UBS Agreement at 10; Citigroup Agreement at 10; Barclays Agreement at 9; Bank of America Agreement at 9; Goldman Sachs Agreement at 10; RBS Agreement at 9; BNP Paribas Agreement at 10; HSBC Agreement at 9.

[7] *In re Auction Houses Antitrust Litig.,* 42 Fed. App'x 511, 519 (2d Cir. 2002) (requiring an "identical" factual predicate); *see also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011) (same) (quoting *TBK Partners*, *Ltd v. Western Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982)).

[8] *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396 at *4 (S.D.N.Y. Nov. 8, 2006); *see also In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 399-400 (S.D.N.Y. 2011) ("[Defendants]

3

The principle behind this rule is as elemental as it is simple: "if a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either."[10] That class members' other claims "involve losses from the same securities against the same defendants" in the case to be settled is not "enough to meet the 'identical factual predicate test.'"[11]

Despite the apparent limitation of the releases to claims arising out of the same factual predicate, the settling defendants have argued repeatedly that their settlement agreements in the Consolidated Action will extinguish claims against them in the Allen Action.[12] That cannot be so. The claims in the Consolidated Action each allege and depend entirely on proof of collusion by the defendants. But much of the alleged conduct in the Allen Action is not collusive. For example, the Allen Plaintiffs allege that various defendants:

- Deceptively added "mark-ups" to price quotes for ERISA clients, often using hand signals or other surreptitious measures designed to ensure that the clients were unaware of the mark-ups;[13]

- Decided not to fill the limit orders of ERISA clients, or decided to fill them only partially, in order to profit from a greater spread or mark-up in connection with their incomplete execution of the orders;[14]

---

fail to appreciate that a release applies *only* 'as long as the released conduct arises out of the identical factual predicate as the settled conduct'") (emphasis added and internal citation omitted).

[9] *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 n.7 (2d Cir. 1981). *Super Spuds* was certified before settlement. The present case proposes certification at settlement. Settlement classes are subject to heightened scrutiny. *Charron v. Wiener*, 731 F.3d 241, 250-51 (2d Cir. 2013).

[10] *Id.* at 18.

[11] *In re Lehman Bros. Secs. and ERISA Litig.*, No. 09 MD 2017(LAK), 2012 WL 2478483 at *6 (S.D.N.Y. June 29, 2012) at *1-4, 7 (settlement releasing "any and all claims . . . related to" securities action against defendant for failure to investigate misleading offering materials did not release class member's separate FINRA claim against same defendant for breach of fiduciary duty in recommending and selling same security) (adopted in *In re Lehman Brothers Equity/Debt Sec. Litig.*, No. 08 Civ. 5523 (S.D.N.Y. July 27, 2012) (available at http://lehmansecuritieslitigation.com/pdf/MDL%20[Dkt.%200987]%20Pretrial%20Order%20No.%2036.pdf)).

[12] Joint Letter from Consolidated Plaintiffs, Allen Plaintiffs, and Defendants, ECF No. 475 (October 13, 2015).

[13] Amended Complaint in *Allen v. Bank of Am. Corp.* ¶¶ 123-127, 150.

[14] *Id.* ¶¶ 123-125, 150.

- Decided to trigger clients' stop-loss orders for their benefit, and to the detriment of their clients;[15] and

- Deliberately failed to provide appropriate information to individual ERISA clients regarding price quotes and how orders were filled.[16]

Defendants engaged in this conduct individually, not as part of any conspiracy with other defendants or by coordinating through chat rooms.[17] Defendants' non-collusive conduct is irrelevant for the purposes of Section 1 of the Sherman Act. It nonetheless constitutes a breach of a fiduciary duty and a prohibited transaction under ERISA.

Common sense suggests that claims based on non-collusive conduct cannot arise from the same factual predicate as claims based solely on collusive conduct. The decision in *Auction Houses* is instructive on what it means for a factual predicate to be identical.[18] In that case, plaintiffs alleged that certain auction houses violated the Sherman Act by conspiring to fix the prices of auction services. The Second Circuit upheld the Southern District's refusal to approve a settlement that released unpled claims held by a subset of class members about foreign auctions that arose under foreign law. The Appeals Court held that, even though the claims under foreign law could have been brought in foreign jurisdictions and were "based on the same conspiracy to fix prices," the difference in geography supported a finding that the foreign auction claims were based on a non-identical factual predicate.[19] Similarly, the non-collusive conduct highlighted

---

[15] Amended Complaint in *Allen v. Bank of Am. Corp.* ¶¶ 123-125, 142.

[16] *Id.* ¶¶ 154-155.

[17] The Consolidated Plaintiffs mention some of this non-collusive conduct in their SACC, but plead no facts to support any claim that the conduct was collusive. Three settling defendants have already admitted that they worked limit orders "because of other anticipated client demand, liquidity, a decision by the Firm to keep inventory at a more advantageous price to the Firm, or other reasons." 2015 Citigroup Plea Agreement, Attachment B, Disclosure Notice (available at http://www.justice.gov/file/440486/download); 2015 Barclays Plea Agreement, Attachment C. Disclosure Notice (available at http://www.justice.gov/file/440481/download); 2015 JPMorgan Plea Agreement, Attachment B, Disclosure Notice (available at http://www.justice.gov/file/440491/download). These rationales are plainly non-collusive and do not support Consolidated Plaintiffs' antitrust claims.

[18] *Auction Houses*, 42 F. App'x at 519.

[19] *Id.*

above is a substantial part of the ERISA plans' claims in the Allen case. It does not involve a common "conspiracy."

Lastly, if the Court is inclined to preliminarily approve the settlements, the Allen Plaintiffs urge the Court to decide the scope of the releases now. While the Allen Plaintiffs believe that the plain terms of the settlement agreements rule out the release of claims in the Allen Action, the settling defendants apparently disagree.[20] If the Court approves the settlements as written, without any clarification of the scope of the releases, the settling defendants surely will move to dismiss the amended complaint in the Allen Action on the ground that the settlements extinguished the Allen Plaintiffs' ERISA claims. The Court then will have to decide the scope of the releases almost immediately after it has approved the settlements – a prospect that should be no more attractive to the settling defendants than it is to the Allen Plaintiffs and the Court.

## II. The Consolidated Plaintiffs cannot adequately represent class members as to their ERISA claims and therefore should not be allowed to release those claims.

Representative parties must "fairly and adequately protect the interests of the class."[21] Even where claims share an identical factual predicate, the non-pleaded claims to be extinguished "will not be precluded" where representation is inadequate.[22] The adequacy of the named plaintiffs' representation "is determined by the alignment of interests of class members."[23] Courts especially scrutinize settlements that release claims the named plaintiffs do

---

[20] Joint Letter from Consolidated Plaintiffs, Allen Plaintiffs, and Defendants, ECF No. 475 (October 13, 2015); Transcript of Proceedings re: conference held on October 22, 2015 before Judge Schofield, at 16:15-20.

[21] Fed. R. Civ. P. 23(a)(4).

[22] *Authors Guild v. Google, Inc.*, 770 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 109 (2d Cir. 2005)).

[23] *In re Initial Pub. Offering Secs. Litig.*, 260 F.R.D. 81, 116 (S.D.N.Y. 2009).

not have.[24] A divergence of "values" ascribed to class members is sufficient to find that class members' interests were not aligned.[25]

Here, the Consolidated Plaintiffs have acknowledged candidly that their plan was to agree to what they called an "icebreaker" settlement with JPMorgan in order to further litigation efforts against other defendants.[26] While that approach creates its own issues when it comes to allocating proceeds among class members, the far more serious problem is the lack of alignment between the Consolidated Plaintiffs and class members with ERISA claims.

Regardless of whether the alleged conduct in the Allen Action is collusive or non-collusive, the Consolidated Plaintiffs should not be allowed to release ERISA claims without additional compensation to ERISA plans. The Consolidated Plaintiffs' interests simply are not aligned with the interests of class members with ERISA claims. The legal claims in the Allen Action are distinct from the antitrust claims in the Consolidated Action. While not always dispositive, in this case the ERISA claims are easier to prove than the antitrust claims because the Allen Plaintiffs need not prove antitrust collusion, and the Allen Plaintiffs have different, greater, and more easily proven remedies available to them – most notably, disgorgement of profits – than do the plaintiffs in the Consolidated Action.[27] Much, and probably most, of defendants' improper profits were the product of trading based on knowledge of pending orders

---

[24] *Compare Wal-Mart*, 396 F.3d at 113 (finding "compelling" the parties' argument that an unpled claim was adequately represented because all class representatives possessed it) *with Super Spuds* 660 F.2d at 17 (ruling named plaintiffs holding claims only on liquidated potato futures contracts "cannot represent" subset of class members holding claims on both liquidated and unliquidated contracts, "of whom they are not a part").

[25] *See Authors Guild*, 770 F. Supp. 2d at 679-680 (named plaintiffs in copyright dispute "committed to maximizing profits" did not adequately represent interests of academic class members "committed to maximizing access to knowledge"); *cf. Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (where class action plaintiffs included two subgroups with "competing" interests and claims, class certification was properly vacated because named plaintiffs "each served generally as representative for the whole," with no representation for each "separate constituency").

[26] Class Plaintiffs' Memorandum in Support of Motion for Preliminary Approval, 5-6 (October 22, 2015).

[27] *Leigh v. Engle*, 669 F. Supp. 1390 (N.D. Ill. 1987) (citing 29 U.S.C. §1109(a)).

in breach of their fiduciary duties. The antitrust claims do not reach that conduct; the ERISA claims do.

The inadequacy of representation is particularly acute in this case because the Consolidated Plaintiffs lack standing to bring ERISA claims. Only one of the named plaintiffs in the Consolidated Action, the United Food and Commercial Workers plan, appears to be an ERISA plan. But only a participant, beneficiary, or fiduciary of a plan, or the Department of Labor, has standing to bring claims under ERISA.[28] ERISA plans such as the United Food and Commercial Workers plan cannot bring these claims. Relying on the United Food and Commercial Workers plan to protect the interests of ERISA plans is particularly troubling with respect to settlements with defendants like JPMorgan that are not alleged to have done any FX transactions with assets of the United Food and Commercial Workers plan.

As in *Super Spuds*, "the inadequacy of the representation . . . is apparent from . . . the settlement itself."[29] In *Super Spuds*, the Second Circuit rejected a proposed settlement over liquidated contracts that would also have released unpled claims on unliquidated contracts without compensation to class members who held the unpled claims, reasoning:

> That agreement requires [class members with pleaded and unpled claims] to release claims based on both liquidated and unliquidated contracts in return for a portion of the settlement proceeds that is determined solely on the basis of the [liquidated contracts]. The formula for allocating the settlement fund does not provide for any additional payment . . . in return for the release of claims based on unliquidated contracts. There is no justification for requiring [class members to] release claims based on unliquidated contracts as part of a settlement in which payments to class members are to be determined solely on the basis of the contracts they liquidated.[30]

---

[28] 29 U.S.C. §1132(a)(2),(3).

[29] *Super Spuds*, 660 F.2d at 18.

[30] *Id.*

Here, as in *Super Spuds*, a subset of class members has claims not asserted in the Consolidated Action. There is no indication that the subset of class members with ERISA claims will receive any sort of premium for releasing ERISA claims. And it is no answer to speculate – baselessly – that the release of ERISA claims led to higher payments for the class as a whole.[31] Even if ERISA claims had been considered, and there is no evidence they were, the Consolidated Plaintiffs are not allowed to sell out class members with different and stronger claims in order to get a deal done. Indeed, in *Ortiz v. Fibreboard*, the Supreme Court rejected a proposed settlement, not because the total amount of the settlement was inadequate, but rather because the settlement failed to distinguish between holders of more valuable claims and holders of less valuable claims.[32]

In sum, because the interests of the Consolidated Plaintiffs are not aligned with class members with ERISA claims, the Court cannot rely on the Consolidated Plaintiffs to ensure that the settlements are fair and equitable to all class members. And as the Second Circuit has noted, the participation of "impartial mediators and institutional plaintiffs" is cold comfort if interests

---

[31] *See Super Spuds*, 660 F.2d at 18 n.8 ("To be sure, defendants might have offered less if the settlement had not included provisions releasing all claims . . . But it does not follow that [class members holding pleaded and unpled claims] can be required to share with persons [holding only pleaded claims] . . . whatever sum defendants were willing to pay [for the unpled claims].")

[32] *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *see also Literary Works*, 654 F.3d at 250-51 (following *Ortiz*); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 782-83 (7th Cir. 2004) (settlement providing no compensation for extinguished claims would be unfair unless "claims were worthless").

are not aligned.[33] One way to deal with potential structural conflicts, of course, would be to appoint separate representation for a subclass of claimants with ERISA claims.[34]

### III. The Court and the parties lack sufficient information to assess the adequacy of the settlements.

Finally, in addition to the absence of any apparent consideration of class members with ERISA claims, the process that led to the settlements calls the fairness of the total settlement amounts into question.

Courts use the *Grinnell* factors to determine whether a proposed settlement is substantively fair.[35] The Consolidated Plaintiffs argue that "each of the *Grinnell* factors" supports approval, but it is impossible for the Court, and certainly for the class members with ERISA claims, to assess whether that is true.

To the extent the factors can be evaluated by class members with ERISA claims, they weigh against approval. No one questions that the settling defendants could withstand greater judgments (Factor 7).[36] Even the Consolidated Plaintiffs admit as much.[37] The early stage of the proceedings (Factor 3) also weighs against approval. While settlements may be approved before formal discovery is complete, "there must be sufficient discovery of facts for the court

---

[33] *Literary Works*, 654 F.3d at 253 ("The rationale is simple: how can the value of any subgroup of claims be properly assessed without independent counsel pressing its most compelling case? It is for this reason that the participation of impartial mediators and institutional plaintiffs does not compensate for the absence of independent representation. Although the mediators safeguarded the negotiation process, and the institutional plaintiffs watched out for the interests of the class as a whole, no one advanced the strongest arguments in favor of Category C's recovery. Even in the absence of any evidence that the Settlement disfavors Category C-only plaintiffs, this structural flaw would raise serious questions as to the adequacy of representation here.").

[34] The Allen Plaintiffs note that an ex-partner of the Hausfeld firm recently alleged in a lawsuit that the firm is financially beholden to Citibank. The Allen plaintiffs of course are not privy to the internal finances of the Hausfeld LLP, but respectfully suggest that, before approving any settlement, the Court also should satisfy itself that Hausfeld LLP was in a position to negotiate hard with the Citigroup defendants. *See King v. Hausfeld LLC*, Case No. 13cv0237-EMC (N.D. Cal.), ECF No. 1 ¶ 26.

[35] *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

[36] Class Plaintiffs' Memorandum in Support of Motion for Preliminary Approval, 15-16 (October 22, 2015).

[37] *Id*.

intelligently to make . . . an appraisal," and "the pretrial . . . discovery must be sufficiently adversarial such that [it is] *not 'designed to justify a settlement*, but an aggressive effort to ferret out facts helpful to prosecution of the suit."[38] Here, no discovery was taken before the individual settlements, and what little may have occurred after was pursuant to cooperation provisions in the settlement agreements. And because the Consolidated Plaintiffs have no interest in protecting the rights of class members with ERISA claims, and because the minimal informal discovery that is occurring is trailing the settlement agreements, the Court should not assume that the discovery will adequately illuminate the overall volume of FX transactions during the class period, much less the percentage of that volume that relates to assets of ERISA plans.

Far from "aggressive," this is precisely the kind of discovery "designed to justify a settlement" that the Second Circuit has found insufficient.[39] The lack of discovery is particularly a problem in this case because government investigations are ongoing into defendants' use of electronic trading platforms, and specifically whether they used algorithms to manipulate pricing and execution in their favor against their customers.[40] Those investigations likely will uncover

---

[38] *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998) (quoting *Saylor v. Lindsley*, 456 F.2d 896, 899 (2d Cir. 1972)) (emphasis added).

[39] *Martens*, 181 F.R.D. at 263; *see also Saylor*, 456 F.2d at 904 (vacating district court's approval of a settlement because of "doubt whether there had been truly adversary discovery prior to the stipulation of settlement").

[40] The New York State Department of Financial Services and the U.S. Department of Justice are reportedly continuing probes into manipulation of the FX market by a number of Defendant banks through electronic trading platforms. Karen Freifeld, *Traders Questioned as NY Probe of Automated FX Heats Up*, REUTERS (Oct. 5, 2015) (available at: http://www.reuters.com/article/2015/10/05/automated-fx-probe-idUSL1N1252Q420151005). Such FX transactions were specifically excluded in the Department's May 20, 2015 consent order with Barclays Bank. *In the Matter of Barclays Bank PLC, Barclays Bank PLC, New York Branch*, Consent Order Under New York Banking Law §§ 44 and 44-a, New York State Department of Financial Services at 20 (May 20, 2015 ) ("This Order does not release the Bank from any claims concerning electronic systems used in FX trading and electronic trading of FX and FX-related products, and any potential related activities or misconduct arising out of or related to these areas. The Department will continue its review and investigation of these areas of activity.") (available at: http://www.dfs.ny.gov/about/ea/ea150520.pdf). Similarly, the consent orders announced on May 20, 2015 by the Board of Governors of the Federal Reserve System against banking groups Bank of America, Barclays, Citigroup, JPMorgan, UBS and RBS specifically did not preclude possible future enforcement action as to FX transactions where a customer directly inputs an order through an electronic platform. *See, e.g.*, Order to Cease

evidence of additional misconduct that Consolidated Plaintiffs and their counsel did not consider at the time they negotiated these settlements.

Because Lead Counsel obtained so little discovery (and shared none with the Allen ERISA Plaintiffs), and presumably has no information about conduct related to electronic trading platforms, the other *Grinnell* factors – like the reasonableness of the settlements in light of the best possible recovery and the risks of litigation (Factors 8 and 9) – are difficult even for the Consolidated Plaintiffs to assess, much less the Court or the Allen Plaintiffs. The risks of establishing liability and damages and the risks of maintaining a class action through trial (Factors 4, 5, and 6) are a black box for the same reason. The Consolidated Plaintiffs describe the agreements as "historic" and note that the settlements would be larger than in other antitrust actions. But this recovery likely is "historic" only because it involves the largest market in the world and because many of the settling defendants have admitted much of the alleged wrongdoing.

## CONCLUSION

In sum, the Court simply does not have enough information to approve these settlements, especially in light of the likely conflict between the Consolidated Plaintiffs and the class members with ERISA claims, and thus the motion should be denied.

---

and Desist and Order of Assessment of a Civil Money Penalty Issued Upon Consent Pursuant to the Federal Deposit Insurance Act, as Amended, *In the Matter of Bank of America Corporation, Charlotte, North Carolina*, Docket No.15-010-B-HC15-010-CMP-HC, Board of Governors of the Federal Reserve System, Washington, D.C., at p. 13 ("For purposes of clarity and not limitation, this release does not include Electronic Trading.") (available at http://www.federalreserve.gov/newsevents/press/enforcement/enf20150520a1.pdf).

**Dated:** November 13, 2015       **GRAIS & ELLSWORTH LLP**

_____
J. Ross Wallin
**GRAIS & ELLSWORTH LLP**
1211 Avenue of the Americas
New York, NY 10036
Tel: (212) 755-7876
Fax: (212) 755-0052
rwallin@graisellsworth.com

J. Brian McTigue (*Pro hac vice to be filed*)
Regina M. Markey (*Pro hac vice to be filed*)
**MCTIGUE LAW LLP**
4530 Wisconsin Avenue, NW
Suite 300
Washington, DC 20016
Tel: (202) 364-6900
Fax: (202) 364-9960
bmctigue@mctiguelaw.com
rmarkey@mctiguelaw.com

*Counsel for Plaintiffs*

13