1211 Avenue of the Americas
New York, New York 10036

212 755 0100
graisellsworth.com

**GRAIS & ELLSWORTH LLP**

Ross Wallin
212 755 7876
RWallin@graisellsworth.com

November 30, 2015

*Via ECF*

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

> *In re Foreign Exchange Benchmark Rates Antitrust Litigation, 13 Civ. 7789 (LGS) ("Consolidated Action"); Allen, et al. v. Bank of America Corporation, et al., 15 Civ. 04285 (LGS) ("Allen")*

Dear Judge Schofield:

    The Allen plaintiffs write to inform the Court of additional developments related to the New York State Department of Financial Services' ("NYS-DFS") investigation of Barclays. These developments were reported publicly only after the Allen plaintiffs filed their Response to Consolidated Plaintiffs' Motion for Preliminary Approval of Settlement Agreements with nine defendants.

    The settling defendants mistakenly assert that the settlement agreements will extinguish all claims against them in the Allen action. *See* ECF No. 475 at 6. But as the Allen plaintiffs explained in their Response, the Sherman Act claims in the Consolidated Action arise solely from conspiratorial conduct. And much of the conduct in the Allen action is non-collusive. In particular, the Allen plaintiffs described in their amended complaint NYS-DFS's ongoing investigations into non-collusive conduct by five defendants related to trading over electronic trading platforms.

    Shortly after the Allen plaintiffs submitted their Response, NYS-DFS announced that Barclays had agreed to a $150 million penalty to resolve NYS-DFS's investigation into Barclays's so-called "Last Look" system.[1] The Consent Order describes how Barclays designed a system called "Last Look," which imposed a hold period on orders placed over Barclays's electronic trading platform, known as BARX. Under the guise of preventing so-called "toxic order flow," mostly related to latency arbitrage, Barclays compared the BARX price at the time of the order to the BARX price at the end of the

---

[1] The related Consent Order is available at http://www.dfs.ny.gov/about/ea/ea151117.pdf.

**GRAIS & ELLSWORTH LLP**

The Hon. Lorna G. Schofield
November 30, 2015
Page 2

hold period. In cases where the market moved against Barclays during the hold period, Barclays rejected the trade. Before September 2014 at the earliest, clients did not receive a corresponding windfall when the market moved in their favor during the hold period. When Barclays rejected trades, the clients "received a NACK [not acknowledged] message." When clients asked about the NACK, Barclays dissembled, "citing technical issues or providing vague responses." A Barclays employee confirmed that Barclays generally did not "share this info with the client," and in a marketing presentation, Barclays specifically stated that its electronic FX platforms contained "No last look – what you see is what you get." According to news reports, NYS-DFS continues to investigate similar conduct by Deutsche Bank, Credit Suisse, Goldman Sachs, and BNP Paribas, all Allen defendants.

The conduct described in the NYS-DFS Consent Order is plainly addressed in Counts VI-X of the amended complaint in the Allen action. Just as clearly, the conduct is non-collusive and cannot support a violation of Section 1 of the Sherman Act. (Indeed, the settlement agreements specifically carve claims arising from "last look" systems out of the releases. *See*, *e.g.*, ECF No. 481-4 at 10.) Thus, contrary to what the settling defendants have told the Court, the settlement agreements cannot possibly extinguish claims in the Allen action related to this conduct.

The Allen plaintiffs will address Settling Defendants' Reply filed this evening at a later time and look forward to discussing this and related issues with the Court on Thursday.

Sincerely,

*Ross Wallin*

Ross Wallin