**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**PLAINTIFFS' OPPOSITION TO NEW DEFENDANTS'
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND .............................................................................................................. 2

    A.  The New Defendants' New York Locus........................................................................ 2

        1.  Licensure by NYDFS........................................................................................ 2

        2.  Branch Locations, Employees, and FX Business in New York ........................... 3

        3.  Membership on the New York Federal Reserve's FX Committee ......................... 4

        4.  New York Choice of Law Provisions ................................................................ 5

        5.  Seeking Redress in New York Courts ................................................................ 5

    B.  The New Defendants' United States' FX Business ...................................................... 6

LEGAL STANDARD........................................................................................................ 6

ARGUMENT ................................................................................................................... 7

  I.    DEFENDANTS HAVE CONSENTED TO PERSONAL JURISDICTION. ................... 7

  II.   THE NEW DEFENDANTS ARE SUBJECT TO GENERAL JURISDICTION. ............... 9

    A.  The Clayton Act and CEA Provide for Nationwide Service and Jurisdiction over the New Defendants, Requiring the Court to Assess the New Defendants' Contacts with the United States as a Whole. ................................................................................................ 10

    B.  The Exercise of General Jurisdiction is Consistent with the Due Process Clause of the Fifth Amendment. ................................................................................................................ 12

  III.  THE NEW DEFENDANTS ARE SUBJECT TO SPECIFIC JURISDICTION. .............. 14

    A.  The New Defendants Maintain Minimum Contacts with the United States Sufficient to Support Specific Jurisdiction. ........................................................................................... 15

        1.  The New Defendants' Significant FX Business Operations and Use of the Forum's Courts Constitute Purposeful Availment. ...................................................................... 15

        2.  The New Defendants' Conduct Within the United States, Including Use of Electronic Communications Therein, Establishes Minimum Contacts. .......................... 17

        3.  The Effects of the New Defendants' Conduct Were Purposefully Directed at the United States. ............................................................................................................... 19

        4.  New Defendants' Conspiracy with their Co-Defendant Banks Confers Jurisdiction. ………………………………………………………………………………………………22

    B.  Exercising Personal Jurisdiction over the New Defendants is Consistent with Notions of Fair Play and Substantial Justice and, Therefore, Due Process. ...................................... 24

  IV.  AT A MINIMUM, PLAINTIFFS SHOULD BE PERMITTED JURISDICTIONAL DISCOVERY OF THE NEW DEFENDANTS. ...................................................................... 25

CONCLUSION................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  No. 13-cv-981, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015)................................................21

*ADP Inv'r Commc'n Servs., Inc. v. In House Attorney Servs., Inc.*,
  390 F. Supp. 2d 212 (E.D.N.Y. 2005) ...................................................................................6

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
  782 F. Supp. 215 (S.D.N.Y. 1992) ......................................................................................23

*In re Amaranth Natural Gas Commodities Litig.*,
  587 F. Supp. 2d 513 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013) ............................22

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2010).................................................................................................25

*In re Auto. Refinishing Paint Antitrust Litig.*,
  358 F.3d 288 (3d Cir. 2004)..................................................................................................10

*B&M Kingstone, LLC v Mega Int'l Commercial Bank Co.*,
  131 A.D.3d 259, 15 N.Y.S.3d 318 (1st Dep't 2015) ...........................................................8, 9

*Beach v. Citigroup Alternative Invs. LLC*,
  No. 12-cv-717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014)....................................................23

*Burger King v. Rudzewicz*,
  471 U.S. 462 (1985).................................................................................................15, 17, 24

*Calder v. Jones*,
  465 U.S. 783 (1984)........................................................................................... *passim*

*Cardell Fin. Corp. v. Suchodolski Assocs.*,
  No. 09-cv-6148, 2012 U.S. Dist. LEXIS 188295 (S.D.N.Y. July 17, 2012) ............................7

*Cleft of the Rock Found. v. Wilson*,
  992 F. Supp. 574 (E.D.N.Y. 1998) ......................................................................................23

*CutCo Indus. Inc. v. Naughton*,
  806 F.2d 361 (2d Cir. 1986)..................................................................................................6

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ..........................................................................................1, 12, 13, 14

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005)....................................................................................11

*Datacell ehf v. Visa, Inc.*,
  No. 14-cv-1658, 2015 WL 4624714 (E.D. Va. July 30, 2015)...............................13

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
  7 N.Y.3d 65 (2006) ..............................................................................................18

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013)......................................................................................2

*Emerald Asset Advisors v. Schaffer*,
  895 F. Supp. 2d 418 (E.D.N.Y. 2012) ...................................................................23

*First Capital Inv. Holdings LLC v. Wilson Capital Grp., Inc.*,
  No. 10-cv-2948, 2010 U.S. Dist. LEXIS 128512 (S.D.N.Y. Nov. 30, 2010).........23

*Ford v. United States*,
  273 U.S. 593 (1927)...............................................................................................22

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  74 F. Supp. 3d 581 (S.D.N.Y. 2015)................................................................18, 23

*Go-Video, Inc. v. Akai Elec. Co.*,
  885 F.2d 1406 (9th Cir. 1989) ...............................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011)......................................................................................7, 13

*Greenberg, Inc. v. Sirtech Canada, Ltd.*,
  79 A.D.3d 1419, 913 N.Y.S.2d 808 (3d Dep't 2010) ...........................................16

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014)..........................................................................7, 8, 13

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  104 F. Supp. 2d 279 (S.D.N.Y. 2000)...........................................................12, 13, 24

*In re Hellas Telecomms. (Luxembourg) II SCA*,
  524 B.R. 488 (Bankr. S.D.N.Y. 2015)...................................................................14

*Indosuez Int'l Fin. B.V. v. Reserve Bank*,
  98 N.Y.2d 238 (2002)............................................................................................15

*Indus. Models, Inc. v. SNF, Inc.*,
  No. 14C8340, 2015 WL 2399089 (N.D. Ill. May 18, 2015) ................................13

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
    456 U.S. 694 (1982)........................................................................................................8

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945)......................................................................................................24

*J. McIntyre Machinery, Ltd. v. Nicastro*,
    131 S.Ct. 2780 (2011)...................................................................................................16

*JGB Enters., Inc. v. Beta Fluid Sys., Inc.*,
    No. 5:14-cv-1439, 2015 WL 5709088 (N.D.N.Y. Sept. 29, 2005).........................................25

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) ...............................13, 18, 21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)....................................................................................15, 20

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003).................................................................................6, 17, 20

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
    470 U.S. 373 (1985)......................................................................................................10

*In re Parmalat Sec. Litig.*,
    376 F. Supp. 2d 449 (S.D.N.Y. 2005).............................................................................22

*PDK Labs, Inc. v. Friedlander*,
    103 F.3d 1105 (2d Cir. 1997).....................................................................................6, 10

*Rates Tech. Inc. v. Broadvox Holding Co.*, LLC,
    No. 13 Civ. 0152, 2014 U.S. Dist. LEXIS 1052 (S.D.N.Y. Jan. 6, 2014)................................9

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014)............................................................................7, 10

*Rockefeller Univ. v. Ligand Pharms. Inc.*,
    581 F. Supp. 2d 461 (S.D.N.Y. 2008)...............................................................................8

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
    915 F. Supp. 2d 450 (S.D.N.Y. 2013).............................................................................22

*SEC v. Morton*,
    No. 10-cv-1720, 2011 WL1344259 (S.D.N.Y. Mar. 31, 2011)............................................24

*SEC v. Softpoint, Inc.*,
    No. 95-cv-2951, 2001 U.S. Dist. LEXIS 286 (S.D.N.Y. Jan. 18, 2001) ................................24

*SEC. v. Straub*,
  921 F. Supp. 2d 244 (S.D.N.Y. 2013) ........................................................10, 20, 22

*SEC v. Unifund*,
  910 F.2d 1028 (2d Cir. 1990) ........................................................10, 13, 14, 20

*Shpak v. Curtis*,
  No. 10-cv-1818, 2011 U.S. Dist. LEXIS 109011 (E.D.N.Y. Sept. 26, 2011) ........................23

*Sonera Holdings B.V. v. Cukurova Holdings A.S.*,
  750 F.3d 221 (2d Cir. 2014) ........................................................13

*STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*,
  560 F.3d 127 (2d Cir. 2009) ........................................................8

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004) ........................................................10

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013) ........................................................22

*Two's Co. v. Hudson*,
  No. 13-cv-3338, 2014 WL 903035 (S.D.N.Y. Mar. 6, 2014) ........................19

*United States v. Hayes*,
  99 F. Supp. 3d 409 (S.D.N.Y. 2015) ........................................................21

*United States v. Manuel*,
  371 F. Supp. 2d 404 (S.D.N.Y. 2005) ........................................................22

*United States v. Nat'l City Lines*,
  334 U.S. 573 (1948) ........................................................11

*United States v. Scophony Corp. of Am.*,
  333 U.S. 795 (1948) ........................................................11

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990) ........................................................22

*Vera v. Republic of Cuba*,
  91 F. Supp. 3d 561 (S.D.N.Y. 2015), *appeal dismissed*, 802 F.3d 242 (2d Cir.
  2015) ........................................................8, 9

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014) ........................................................1, 22

*Weaver v. Derichebourg ICS Multiservices*,
  No. 09-cv-1611, 2010 WL 517595 (S.D.N.Y. Feb. 3, 2010) ........................9

*Winston & Strawn v. Dong Won Secs. Co. Ltd.*,
    No. 02-cv-0183, 2015 WL 31444625 (S.D.N.Y. Nov. 1, 2002)............................................25

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)..........................................................................................21, 22

**Statutes**

7 U.S.C. § 25 ........................................................................................................10

15 U.S.C. § 15 ......................................................................................................10

15 U.S.C. § 22 ......................................................................................................10

28 U.S.C. § 1404 ..................................................................................................11

N.Y. Banking Law § 200 ......................................................................................2

N.Y. Banking Law § 200-b...................................................................................3

**Other Authorities**

4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    1068.1 (3d ed. 2002) ........................................................................................12

## INTRODUCTION

The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BOTM"), Société Générale ("SG"), and Standard Chartered PLC ("SC") (collectively, the "New Defendants") admit that each (1) maintains a New York City office, either on its own or through its subsidiary, (2) derives roughly $1 billion in annual revenue from its U.S. location, and (3) employs hundreds or thousands of individuals in the United States.[1] Nonetheless, the New Defendants have moved to dismiss the Second Consolidated Amended Class Action Complaint ("SAC"), ECF No. 368, on the basis that the Court lacks personal jurisdiction over them. ECF No. 501. The New Defendants argue this Court lacks general jurisdiction under *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) because they are not "at home" in this forum and lacks specific jurisdiction over them under *Walden v. Fiore*, 134 S. Ct. 1115 (2014), because there are "no suit-related contacts" in this forum. ECF No. 502 (hereinafter "Defendants' Brief"). Essentially, the New Defendants argue that they are "too big for general jurisdiction," *Daimler*, 134 S. Ct. at 764 (Sotomayor, J., concurring), and that Plaintiffs, despite being subject to substantial limitations on discovery of identities and locations of traders and their communications, must plead this precise information with respect to the New Defendants or face dismissal with prejudice. Neither is correct.

The New Defendants are subject to the jurisdiction of this Court, and the exercise of that jurisdiction would not violate the Due Process Clause of the Fifth Amendment. First, the New Defendants have consented to this Court's exercise of jurisdiction. Second, consistent with the Due Process Clause of the Fifth Amendment, the Court has personal jurisdiction over the New

---

[1] *See* Decl. of Dominick R. Sabella ¶¶ 5-7, ECF No. 504 ("Sabella Declaration") (BOTM); Decl. of Dominique Bourrinet ¶¶ 5-7, ECF No. 503 ("Bourrinet Declaration") (SG); Decl. of Andrew Willans ¶¶ 12-15, ECF No. 505 ("Willans Declaration") (SC). While the Sabella and Willans Declaration only provide percentages of revenue attributable to their U.S. offices, their revenues are readily available in the annual reports filed with the U.S. Securities and Exchange Commission. BOTM, Form 20-F, F-134, http://www.mufg.jp/english/ir/form20-f/pdf/mar/mufg20f2014.pdf; Standard Chartered, Annual Report 2014, https://www.sc.com/annual-report/2014/documents/SCB_ARA_2014_full_report.pdf.

Defendants as provided by the nationwide service provisions of the Clayton Act, 15 U.S.C. § 22 and the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25. Third, the Court has specific jurisdiction over the New Defendants. The Court need only find that personal jurisdiction exists for any one of these three reasons to deny the New Defendants' motion to dismiss.

## BACKGROUND

The SAC (ECF No. 368) and Declaration of Michael D. Hausfeld ("Hausfeld Declaration") allege the below facts, which must be assumed to be true for purposes of this motion. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

**A.     The New Defendants' New York Locus**

**_1.     Licensure by NYDFS_**

In order to transact business in New York, foreign banks must be licensed by New York's Department of Financial Services ("NYDFS"). N.Y. Banking Law § 200. Each of the New Defendants is a foreign bank licensed by NYDFS to conduct business in New York. SAC ¶¶ 48 (BOTM); 60 (SG); 61 (SC). To gain this licensure, each New Defendant has done the following:

(1)     irrevocably appointed a representative to accept service of process within the State. In particular, each New Defendant has provided NYDFS with the following:

> (a) [A] duly executed instrument in writing, by its terms of indefinite duration and irrevocable, appointing the superintendent . . . its true and lawful attorney, upon whom all process in any action or proceeding against it on a cause of action arising out of a transaction with its New York agency or agencies or branch or branches, may be served with the same force and effect as if it were a domestic corporation and had been lawfully served with process within the state and (b) written certificate of designation . . . specifying the name and address of the officer . . . to whom such process shall be forwarded by the superintendent.

N.Y. Banking Law § 200(3).

(2)      agreed to maintain up to $100 million in assets on deposit in New York for "the

protection of depositors and the public interest, and to maintain public confidence in the business

of such branch . . . ." N.Y. Banking Law § 202-b(1); NYCCR § 322.1.

(3)      agreed to submit to jurisdiction within the state: "[A]n action or special

proceeding against a foreign banking corporation may be maintained by another foreign

corporation or foreign banking corporation or by a non-resident . . . where the defendant is a

foreign banking corporation doing business in this state." N.Y. Banking Law § 200-b(2).[2]

### 2.      *Branch Locations, Employees, and FX Business in New York*

The New Defendants transact significant business through their New York City branches.

SAC ¶ 48; Sabella Decl. ¶ 4 (BOTM); SAC ¶ 60; Bourrinet Decl. ¶ 5 (SG); SAC ¶ 61; Willans

Decl. ¶ 12 (SC). As shown below, the branches' publicly-filed financial statements show that

each had, within the United States, ***tens of billions of dollars' worth of FX Instruments***

***outstanding each day, including, undoubtedly, transactions with members of the proposed***

***Classes during the Class Period***.[3] *See, e.g.,* Hausfeld Decl. Exs. 6-8.[4] These statements also

show that each branch employed hundreds or thousands of full-time employees in New York. *Id.*

---

[2] A foreign bank operating within New York must also consent to jurisdiction for ***all actions*** brought against it by New York residents. N.Y. Banking Law § 200-b ("An action or special proceeding against a foreign banking corporation may be maintained by a resident of this state for any cause of action.").

[3] Defendants obscure this FX volume conducted through their New York offices by only attesting to their revenue or income. Sabella Decl. ¶ 6 (reporting "gross revenue"); Bourrinet Decl. ¶ 6 (reporting "net banking income"); Willans Decl. ¶ 14 (reporting "operating income").

[4] *See* Hausfeld Decl. Ex. 6-8 (12/31/13 filings by each New Defendant). Prior filings (with relevant information on Schedule L, Line 11, column B) are available at the following: BOTM: http://1.usa.gov/1SMqkK5 (12/31/10); http://1.usa.gov/1Zis51b (12/31/11); http://1.usa.gov/1Kbq8gm (12/31/12); http://1.usa.gov/1PUyU6M (12/31/13); SC: http://1.usa.gov/1OoYsWR (12/31/10); http://1.usa.gov/1W3Zcpv (12/31/11); http://1.usa.gov/1SgjQDU (12/31/12); http://1.usa.gov/1P7J0xQ (12/31/13); SG: http://1.usa.gov/1mSXuuN (12/31/10); http://1.usa.gov/1Q2Llzm (12/31/11); http://1.usa.gov/1Rk70UV (12/31/12); http://1.usa.gov/1P7J0xQ (12/31/13). *This conduct continued through the filing of the SAC*. BOTM reported that they had more than $1 billion in FX spot transactions and $76 billion in FX derivatives contracts held for trading on June 30, 2015 and 1,181 employees; SC had more than $10 billion in FX spot transactions and $84 billion in FX derivative contracts held for trading on June 30, 2015, while SG reported more than $41 million in FX spot transactions and $47 million worth of FX derivative contracts held for trading on that day, as well as 1,092 full-time employees. *See* http://1.usa.gov/1mT06ce (BOTM 6/30/15); http://1.usa.gov/1PpAVoQ (SC 6/30/15); http://1.usa.gov/1ZivJbF (SG 6/30/15).

| New Defendants' New York Branches: Gross Notional Outstanding of FX Instruments and Number of Full-Time Employees on Last Day of 2010-2013 | | | | | |
|---|---|---|---|---|---|
| | | 12/31/2010 | 12/31/2011 | 12/31/2012 | 12/31/2013 |
| BOTM | Spot FX | $2,204,453,000 | $1,323,667,000 | $1,891,895,000 | $2,424,102,000 |
| | FX Derivatives | $71,656,551,000 | $57,722,792,000 | $70,703,357,000 | $69,787,678,000 |
| | Total FX | $73,861,004,000 | $59,046,459,000 | $72,595,252,000 | $72,211,780,000 |
| | Employees | 1,275 | 1,637 | 1,819 | 2,079 |
| SG | Spot FX | $5,049,369,000 | $40,085,000 | $65,981,000 | $12,802,000 |
| | FX Derivatives | $35,152,572,000 | $17,743,801,000 | $32,608,401,000 | $21,578,800,000 |
| | Total FX | $40,201,941,000 | $17,783,886,000 | $32,674,382,000 | $21,591,602,000 |
| | Employees | 1,289 | 1,121 | 908 | 893 |
| SC | Spot FX | $2,008,911,000 | $1,628,541,000 | $1,420,365,000 | $1,876,027,000 |
| | FX Derivatives | $93,132,418,000 | $109,368,268,000 | $135,412,717,000 | $141,445,519,000 |
| | Total FX | $95,141,329,000 | $110,996,809,000 | $136,833,082,000 | $143,321,546,000 |
| | Employees | 846 | 798 | 841 | 925 |

### 3. *Membership on the New York Federal Reserve's FX Committee*

The huge volume of FX Instruments transacted by and through each of the New Defendants' New York branches is confirmed by the important role that each plays with the Federal Reserve Bank of New York ("FRBNY"). First, each New Defendant is a "Reporting Dealer" with FRBNY.[5] BOTM and SC have or had employees that sit on FRBNY's FX Committee;[6] this Committee "includes representatives of major financial institutions engaged in foreign currency trading in the United States . . . ."[7]

Further, as Reporting Dealers, the New Defendants report the volume of FX they transact

---

[5] *See* Hausfeld Decl., Ex. 1.
[6] These individuals include including Shigeru Asai, Hajime Fujii, Kaoru Hayama, Naoto Hirota, Kikou Inoue, Inoue Kikou, Harou Kimura, Masayuki Kishida, Yoshihiko Nagaya, Uchida Nobuyuki, Akira Okuhata, Tomomasa Sumida, Eishi Wakabayashi, and Masamichi Yasuda from BOTM; and David Castle, Mohammed Grimeh, Ravi Kumar, and Robert White from SC. Hausfeld Decl., Ex. 3.
[7] NEW YORK FEDERAL RESERVE – FX COMMITTEE, https://www.newyorkfed.org/FXC/index.html.

in North America.[8] FRBNY then consolidates and publishes this information in a survey that "covers all transactions that are priced or facilitated by traders in North America . . . ."[9]

### 4.    *New York Choice of Law Provisions*

The importance of New York to the New Defendants' FX business is also demonstrated by BOTM and SG's use of ISDA Master Agreements that contain New York choice of law provisions. In particular, they irrevocably consent that ***Courts in this forum*** have jurisdiction over disputes arising under their ISDA agreements; these agreements govern OTC derivatives like those at issue in this action. Hausfeld Decl., Exs. 4-5.

### 5.    *Seeking Redress in New York Courts*

The New Defendants have also repeatedly sought relief as plaintiffs (or the equivalent) in New York state and federal courts. Hausfeld Decl., Exs. 9-13. The following summarizes instances in which the New Defendants have sought redress in New York courts, as reflected by PACER and the New York state court system's electronic filing system:

| Instances of New Defendants Acting as a Plaintiff, Counterclaimant, Interpleader, or Third-Party Plaintiff in New York State and Federal Courts | | | | |
|---|---|---|---|---|
| **New Defendant** | **Time Period** | **Federal Court** | **State Court** | **Total** |
| BOTM | All Time | 0 | 4 | 4 |
| | *Since 1/1/2003* | *0* | *2* | *2* |
| SG | All Time | 19 | 55 | 74 |
| | *Since 1/1/2003* | *11* | *11* | *22* |
| SC | All Time | 14 | 56 | 70 |
| | *Since 1/1/2003* | *8* | *4* | *12* |

---

[8] *See* NEW YORK FEDERAL RESERVE – FX COMMITTEE, FX VOLUME SURVEY, https://www.newyorkfed.org/FXC/volumesurvey/index.html.

[9] Hausfeld Decl., Ex. 2. Transactions concluded by dealers outside of North America are excluded even if they are booked to an office within North America. The survey also excludes transactions between branches, subsidiaries, affiliates, and trading desks of the same firm. *Id.*

### B.     The New Defendants' United States' FX Business

The New Defendants also have significant operations across the United States. In particular, outside of New York, BOTM operated between eight and twelve other banking locations in the United States; SG operated two other banking locations in the United States; and SC, through its subsidiary Standard Chartered Bank, operated five other banking locations in the United States. *See* Sabella Decl. ¶ 5; Bourrinet Decl. ¶ 5; Willans Decl. ¶ 13.

### LEGAL STANDARD

To survive a jurisdictional motion to dismiss where no evidentiary hearing is held, the plaintiff need only make a *prima facie* case that a defendant is subject to the Court's personal jurisdiction. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) ("Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). All allegations of jurisdictional fact must be construed in the light most favorable to the plaintiff. *See CutCo Indus. Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986); *ADP Inv'r Commc'n Servs., Inc. v. In House Attorney Servs., Inc.*, 390 F. Supp. 2d 212, 217 (E.D.N.Y. 2005).[10] A *prima facie* case for personal jurisdiction consists of three elements: (1) proper service of process, (2) a statutory basis for personal jurisdiction, and (3) compliance with

---

[10] The New Defendants concede that the *prima facie* pre-discovery standard is applicable but suggest that Plaintiffs are "more closely align[ed]" to a post-discovery standard "by virtue of the substantial settlement materials to which they have been granted access. *See* Defs.' Br. at 8, n.6. This suggestion is irrelevant; there is no dispute that the *prima facie* standard applies since there has been no discovery in this case with respect to the New Defendants. Further, because Plaintiffs were, at the time of filing the SAC, prevented from learning details − including names of participants and, thus, geographical locations of implicated FX traders − through formal discovery or cooperation, as a result of a discovery stay requested by the U.S. Department of Justice and entered by the Court. *See* ECF No. 274, *as modified*, ECF No. 463. Despite the discovery limitations, Plaintiffs obtained limited information through certain of the settlements that showed each of the New Defendants was a member of the FX cartel.

constitutional due process principles. *See Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014). Each of these requirements is satisfied as to the New Defendants.

## ARGUMENT

This Court should deny the New Defendants' motion to dismiss because they consented to this Court's exercise of personal jurisdiction over them. Moreover, even if they had not consented, under Supreme Court and Second Circuit precedent, this Court may exercise both general and specific jurisdiction over them. The New Defendants have not challenged service[11] or the statutory bases for jurisdiction[12] here, but instead rely upon the theory that exercising jurisdiction over them deprives them of due process. *See* Defs.' Br. at 9. As explained below, the New Defendants are incorrect and their motion should be denied.

## I.   DEFENDANTS HAVE CONSENTED TO PERSONAL JURISDICTION.

Only where an entity "has ***not*** consented to suit in the forum" are the doctrines of specific and general jurisdiction relevant. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014) (quoting *Daimler*, 134 S. Ct. at 755-56; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2856 (2011) (emphasis added). When jurisdiction is based on consent, there are no due process concerns. *See Cardell Fin. Corp. v. Suchodolski Assocs.*, No. 09-cv-6148, 2012 U.S. Dist. LEXIS 188295, at *112-113 (S.D.N.Y. July 17, 2012) ("[C]onsent to jurisdiction in a given forum obviates the necessity of a minimum contacts analysis.") (quoting *Packer v. TDI Sys., Inc.*, 959 F. Supp. 192, 203 (S.D.N.Y. 1997)). Here, by registering New York branches and, in some cases, contracting to select New York as the forum in agreements governing transactions such as the ones at issue, the New Defendants have consented to this Court's exercise of personal jurisdiction.

---

[11] The New Defendants waived service. *See* ECF Nos. 408 (SG); 437 (BOTM); and 451 (SC).
[12] Jurisdiction is proper under, *inter alia*, 15 U.S.C. § 22 and 7 U.S.C. § 25. *See* SAC ¶¶ 14-17.

First, courts have concluded that "authorization to do business in New York and designation of a registered agent for service of process amount to consent to personal jurisdiction in New York." *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd*., 560 F.3d 127, 131 (2d Cir. 2009); *Rockefeller Univ. v. Ligand Pharms. Inc.*, 581 F. Supp. 2d 461, 467 (S.D.N.Y. 2008); *see also Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982) (holding that a court may find "constructive consent to . . . personal jurisdiction" where a party makes "voluntary use of certain state procedures").

To maintain a New York branch under Section 200 of the New York Banking Law, as each New Defendant does, a foreign bank must apply to, be approved by, register with, and agree to be regulated by NYDFS; a bank must also appoint a registered agent for service of process. *See* § A.1., *supra*. The Second Circuit recently acknowledged that this registration, like securing an authorization to do business, may, by itself, constitute consent to personal jurisdiction.[13] *Gucci*, 768 F.3d at 137; *see also Vera v. Republic of Cuba*, 91 F. Supp. 3d 561, 571 (S.D.N.Y. 2015), *appeal dismissed*, 802 F.3d 242 (2d Cir. 2015). This consent arises because the "privileges and benefits associated with a foreign bank operating a branch in New York give rise to commensurate, reciprocal obligations." *B&M Kingstone, LLC v Mega Int'l Commercial Bank Co*., Ltd., 131 A.D.3d 259, 265, 15 N.Y.S.3d 318, 323 (1st Dep't 2015). Thus, a bank, including

---

[13] In the New Defendants' lone reference to consent, they argue that any consent by virtue of being licensed by the NYDFS is necessarily limited to "a cause of action arising out of a transaction with its New York agency or agencies or branch or branches." *See* Defs.' Br. at 8, n.5. This is false. First, "An action or special proceeding against a foreign banking corporation may be maintained by a resident of [New York] for any cause of action." N.Y. Banking Law 200-b(1). Moreover, this contention is effectively contradicted by the Second Circuit's directive that a "District Court may also consider, whether [a defendant] has consented to personal jurisdiction in New York by applying for authorization to conduct business in New York and designating the New York Secretary of State as its agent for service of process." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 137 (2d Cir. 2014). Here, in any event, Plaintiffs argue that New Defendants transacted billions of dollars in FX Instruments – the products at issue – through their New York branches, such that consent exists even under the New Defendants' reading.

each New Defendant here,[14] consents to personal jurisdiction in this District by registering with

NYDFS to transact business – including FX business – in New York. *See Vera*, 91 F. Supp. 3d at

571 ("Foreign banks should not be permitted to promote the legitimacy of their business by

registering to do business in New York, and then hide illicit activity."); *see also B&M Kingstone*,

131 A.D.3d at 267, 15 N.Y.S.3d at 324.

Second, SG and BOTM consent to jurisdiction in this Court as a federal forum governing

at least some of their ISDA agreements – agreements that govern OTC derivatives like those

implicated by this action. *See* § A.4., *supra*.

In sum, through their registration with NYDFS, use of that registration to conduct FX

business in this District (and across the United States), and, for BOTM and SG, specific consent

to jurisdiction through their ISDA Master Agreements, each New Defendant has consented to

personal jurisdiction in this forum.

## II. THE NEW DEFENDANTS ARE SUBJECT TO GENERAL JURISDICTION.

Plaintiffs have pleaded a *prima facie* case of general jurisdiction against each of the New

Defendants. Because the New Defendants have all waived service in the action, Plaintiffs need

---

[14] While SC operates through its subsidiary, Standard Chartered Bank, it is settled that where parent corporations are
not mere investors, but, rather create subsidiaries to "carry on business on its behalf, there is no basis for
distinguishing between the business of the parent and the business of the subsidiaries." *Rates Tech. Inc. v. Broadvox
Holding Co.*, *LLC*, 2014 U.S. Dist. LEXIS 1052, at *4-5 (S.D.N.Y. Jan. 6, 2014) (collecting cases). SC exercises
this control over Standard Chartered Bank, apparently acting to suspend Standard Chartered Bank employees, *see*
Gavin Finch, Julia Verlain, and Liam Vaughan, *Standard Chartered Said to Put Currency Dealer on Leave,*
BLOOMBERG, Oct. 29, 2013, http://bloom.bg/1IYS63U ("Standard Chartered Plc put Matt Gardiner, one of its most
senior foreign-exchange dealers, on leave . . .") ; interfacing with U.S. regulators on its behalf, *see*
http://bit.ly/1mQkY3V (noting deferral of NYDFS hearing, stating that "The Group [referring to SC] continues to
engage constructively with the other relevant US authorities.") (Aug. 4, 2012); and employing an "integrated
approach to governance . . . applicable to both our subsidiaries and our branches . . . ensur[ing] that the Group is
effectively managed and controlled," *see* Standard Chartered PLC 2014 Annual Report at 16, http://bit.ly/1Ri8f76.
   In any event, if the Court were to conclude that the Court lacked jurisdiction over SC because Standard
Chartered Bank's contacts are not attributable to SC, Plaintiffs would request leave to amend pursuant to Federal
Rule of Civil Procedure 15(a)(2) to name Standard Chartered Bank as a Defendant. *See Weaver v. Derichebourg ICS
Multiservices*, No. 09-cv-1611, 2010 WL 517595 (S.D.N.Y. Feb. 3, 2010) (granting leave to substitute party subject
to personal jurisdiction).

only establish a statutory basis for personal jurisdiction and that jurisdiction is consistent with

due process principles. *See Reich*, 38 F. Supp. 3d at 454.

> A.      **The Clayton Act and CEA Provide for Nationwide Service and Jurisdiction over the New Defendants, Requiring the Court to Assess the New Defendants' Contacts with the United States as a Whole.**

Where a defendant in a federal question case resides outside the forum state, the Court

must first determine whether the applicable federal statute provides for national service of

process. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004); *PDK Labs, Inc.*

*v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir.1997). Where, as here, the case is brought pursuant

to a federal statute providing for nationwide service of process,[15] the Court must assess the

**nationwide contacts** of the Defendant. *See, e.g., S.E.C. v. Straub*, 921 F. Supp. 2d 244, 253

(S.D.N.Y. 2013) ("When the jurisdictional issue flows from a federal statutory grant that

authorizes suit under federal-question jurisdiction and nationwide service of process, however,

the Fifth Amendment applies, and the Second Circuit has consistently held that the minimum-

contacts test in such circumstances looks to contacts with the entire United States rather than

with the forum state.") (citing, *inter alia*, *Frontera Res. Azerbaijan Corp. v. State Oil Co. of*

*Azerbaijan Republic*, 582 F.3d 393, 398–401 (2d Cir.2009); *SEC v. Unifund*, 910 F.2d 1028,

1033 (2d Cir. 1990); *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir.1998)); *In re Auto.*

*Refinishing Paint Antitrust Litig.,* 358 F.3d 288, 298 (3d Cir. 2004) ("[P]ersonal jurisdiction in

federal antitrust litigation is assessed on the basis of a defendant's aggregate contacts with the

---

[15] *See* 15 U.S.C. § 22 ("Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."); 15 U.S.C. § 15 ("[A]ny person who shall be injured . . . by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent . . ."); 7 U.S.C. § 25 ("The United States district courts shall have exclusive jurisdiction of actions brought under this section."); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("[F]ederal antitrust claims are within the exclusive jurisdiction of the federal courts.").

United States as a whole."); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1415 (9th Cir. 1989) ("[T]he worldwide service provision of § 12 [of the Clayton Act] justifies [the court's] conclusion that personal jurisdiction may be established in any district, given the existence of sufficient national contacts.").

The action is brought against the New Defendants pursuant to the Clayton Act and the CEA, each of which provide for nationwide service of process and exclusive federal jurisdiction. The Supreme Court has explicitly stated that the purpose behind the Clayton Act's nationwide service provision was to "relieve[] persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs" and prevent foreign corporations from "retreating . . . to its headquarters [to] defeat or delay the retribution due." *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 808 (1948). Section 12 of the Clayton Act has the "intent and effect to give the plaintiff the right to bring antitrust proceedings . . . 'in any district wherein [the corporate defendant] * * * transacts business." *United States v. Nat'l City Lines*, 334 U.S. 573, 579 (1948), *superseded in part by statute*, 28 U.S.C. § 1404(a) (superseding venue transfer holding). The Second Circuit has thus concluded that, where Section 12's venue provision (which requires that the suit be brought where the corporation "is an inhabitant" or "any district wherein it may be found or transacts business") is satisfied, Section 12 will establish personal jurisdiction. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 427 (2d Cir. 2005).

Here, the SAC has alleged an antitrust violation (and violations of the CEA) against each of the New Defendants. Every New Defendant has acknowledged in government filings that it transacts business or is otherwise found within the Southern District of New York. *See* §A.2., *supra*. Thus, Section 12 establishes personal jurisdiction over New Defendants.

11

**B.      The Exercise of General Jurisdiction is Consistent with the Due Process Clause of the Fifth Amendment.**

The New Defendants rely upon *Daimler* to argue that they cannot be subject to general jurisdiction. *Daimler*, however, assesses the scope of the Fourteenth Amendment, which is not at issue in this case. In *Daimler*, the Supreme Court determined whether "***the Due Process Clause of the Fourteenth Amendment*** precludes the District Court from exercising jurisdiction over Daimler [AG] in this case, given the absence of any California connection to the atrocities, perpetrators, or victims described in the complaint." *Daimler*, 134 S.Ct. at 751 (emphasis added).

While *Daimler* is factually distinguishable,[16] more critically, the legal principle it examined − the Due Process Clause of the ***Fourteenth Amendment*** − is not at issue here. This matter is exclusively the subject of federal jurisdiction, thus, the Court must assess the ***Fifth Amendment***'s Due Process Clause. As Professors Wright and Miller have explained:

> When a federal court adjudicates a federal question claim, it exercises the sovereign power of the United States and no federalism problem is presented. The Fourteenth Amendment function of protecting the several states' status as coequal sovereigns ***seemingly ought to be of no relevance to the parallel analysis under the Due Process Clause of the Fifth Amendment***.

4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1068.1 (3d ed. 2002) (emphasis added).

Courts have acknowledged this substantial distinction, noting that under the Fifth Amendment, the Court's due process inquiry must "give appropriate consideration to the strong federal concerns involved;" including concerns such as the "major federal regulatory efforts in areas at the core of Congress' power under the Commerce Clause." *See Hallwood Realty*

---

[16] Among other reasons, the SAC alleges claims arising out of conduct in or directed at the United States (and New York) that directly impacted United States domiciliaries. Here, the Plaintiffs were injured within the United States or persons domiciled outside the United States who engaged in transactions within the United States. In *Daimler*, by contrast, the plaintiffs sought damages for conduct in Argentina arising from conduct by Daimler's Argentinian indirect subsidiary and sought jurisdiction over Daimler pursuant to California's long-arm statute on the grounds that Daimler's indirect subsidiary transacted business in California. *See Daimler*, 134 S.Ct. at 751-52.

*Partners, L.P. v. Gotham Partners, L.P.*, 104 F. Supp. 2d 279, 286 (S.D.N.Y. 2000).

Similarly, with respect to the Due Process Clause of the Fifth Amendment, the Second Circuit has deemed it sufficient that a foreign entity "created the near certainty that United States shareholders . . . would be adversely affected." *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d Cir. 1990); *see also Hallwood*, 104 F. Supp. 2d at 286-87 ("[T]he question is whether the burden on PMG of litigating this case in New York is so severe that the exercise of personal jurisdiction over it is arbitrary, shocks the conscience, or offends fundamental principles of ordered liberty, notwithstanding the strong federal interest in efficient and effective enforcement of the securities laws"). The New Defendants cite to no controlling authority with respect to the Fifth Amendment's Due Process Clause that would override the standard set forth in *Unifund*.[17]

The Clayton Act and CEA are, like the Exchange Act in *Unifund* and *Hallwood*, major federal regulatory efforts that Congress has determined warrant nationwide service *and jurisdiction*. For this reason, unsurprisingly, courts have concluded that *Daimler* had no effect on the Clayton Act's service of process provision. *See Datacell ehf v. Visa, Inc.*, No. 14-cv-1658, 2015 WL 4624714, at *5 (E.D. Va. July 30, 2015) ("While *Daimler* curtailed the applicability of general jurisdiction, it resolved nothing regarding a statutory grant of jurisdiction such as Section 12."); *Indus. Models, Inc. v. SNF, Inc.*, No. 14C8340, 2015 WL 2399089, at *3 (N.D. Ill. May 18, 2015) ("Because [plaintiff] has alleged an antitrust violation, Section 12 applies and personal jurisdiction of [defendant] (a Texas corporation with substantial ties to the United States) exists

---

[17] The New Defendants rely upon a number of cases, but each involves state law claims or otherwise requires the Court to assess jurisdiction under New York's long-arm statute, implicating the Fourteenth Amendment. *See Goodyear*, 131 S. Ct. at 2850 (conducting "review for compatibility with the Fourteenth Amendment's Due Process Clause"); *Gucci*, 768 F.3d at 126 (assessing jurisdiction in case presenting claims of Lanham Act and state law claims); *Sonera Holdings B.V. v. Cukurova Holdings A.S.*, 750 F.3d 221, 226 (2d Cir. 2014) (assessing jurisdiction under New York long-arm statute); *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2015 WL 4634541, at *17 (S.D.N.Y. Aug. 4, 2015) ("*LIBOR IV*") (analyzing state law long-arm statutes and quoting Federal Rule of Civil Procedure 4(k)(1)(a)). Here, Plaintiffs' claims are exclusively federal claims subject to exclusively federal jurisdiction. The Fifth Amendment's Due Process Clause is applicable; the Fourteenth Amendment's is not.

here, as it would in any district in the United States.").

Congress has, through the adoption of nationwide service in cases like this one, acknowledged the strong federal interests in efficient enforcement of its antitrust and commodities laws against defendants that choose to inflict injury within the United States. The New Defendants have, by trading FX in the United States with United States-domiciled counterparties,[18] "created the near certainty that United States [investors] . . . would be adversely affected." *See Unifund*, 910 F.2d at 1033. This is enough to confer jurisdiction. The Second Circuit has not applied the "at home" standard in assessing the Due Process Clause of the Fifth Amendment, and the New Defendants provide no basis to conclude that such an extension would be consistent with *Daimler*, let alone obligatory.[19] The New Defendants are subject to personal jurisdiction in this Court for antitrust and commodities claims arising from their conduct.

## III.     THE NEW DEFENDANTS ARE SUBJECT TO SPECIFIC JURISDICTION.

While New Defendants have consented to personal jurisdiction and are subject to general jurisdiction under the Fifth Amendment, Plaintiffs have also pleaded facts sufficient to make a *prima facie* showing that this Court may exercise specific personal jurisdiction over the New Defendants. A court may exercise specific personal jurisdiction over a defendant if the cause of action relates to a defendant's "minimum contacts" with the forum[20] and the exercise of

---

[18] *See* §A.2., *supra*.

[19] Even if the Court were to apply the "at home" standard, however, given that each of the New Defendants maintains branches with hundreds or thousands of employees and uses New York as a base for U.S. or North American operations, each New Defendant should be deemed to be "at home." *See In re Hellas Telecomms. (Luxembourg) II SCA*, 524 B.R. 488, 508 (Bankr. S.D.N.Y. 2015) (finding that Deutsche Bank maintaining a principal location with 1,600 employees in New York established its "presence in the U.S. [is] more than merely transitory, but rather "so 'continuous and systematic' as to render [it] essentially at home [here]") (citations omitted, alterations in original).

[20] Here, as discussed *supra*, because this case arises under statutes providing for nationwide service of process, the Court must evaluate the New Defendants' contacts with the United States as a whole rather than just New York (though the New Defendants' New York contacts alone would suffice). *See* § II.A., *supra*.

jurisdiction is not contrary to due process. *See Calder v. Jones*, 465 U.S. 783 (1984). These requirements are more than satisfied here.

      **A.**      **The New Defendants Maintain Minimum Contacts with the United States Sufficient to Support Specific Jurisdiction.**

            ***1.***      ***The New Defendants' Significant FX Business Operations and Use of the Forum's Courts Constitute Purposeful Availment.***

Where, like here, a "defendant 'deliberately' has engaged in significant activities within a [forum]," it can be said to have purposefully availed itself of the jurisdiction, such that it "is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). Contrary to the contention that New Defendants have "limited contacts" with the forum, Defs.' Br. at 20, the New Defendants indisputably transacted massive volumes of FX Instruments during the Class Period – trades at issue in this litigation – in the United States. *See* §A.2., *supra*. New Defendants maintain FX trading desks, department heads, and businesses in New York and use these to transact FX Instruments in the United States. SAC ¶¶ 48, 60, 61; Hausfeld Decl., Exs. 6-8.

This use of New York banking facilities to execute FX Instruments, including the very transactions alleged to have been affected by the conspiracy, more than satisfies purposeful availment standards. The Second Circuit has held that more tenuous contacts than are present here were sufficient to subject a foreign bank to jurisdiction. A foreign bank's use of a correspondent bank account to conduct wire transfers, for example, constituted "purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013); *see also Indosuez Int'l Fin. B.V. v. Reserve Bank*, 98 N.Y.2d 238, 247 (2002) (affirming a finding of jurisdiction over a Russian bank that used a New York bank account six times in

connection with FX options). Here, the New Defendants have acknowledged – in public filings – their purposeful availment of New York's banking system and United States law, to, among other things, transact FX Instruments through their New York branches.[21] This alone is sufficient to confer specific personal jurisdiction over each New Defendant.

In addition, the New Defendants' frequent use of New York's state and federal courts ***as plaintiffs*** (or the equivalent), *see* § A.4., *supra*, evidences the fact that they have purposefully availed themselves of the jurisdiction. *See Greenberg, Inc. v. Sirtech Canada, Ltd.*, 79 A.D.3d 1419, 1423, 913 N.Y.S.2d 808 (3d Dep't 2010) ("'Use of the New York courts is a traditional justification for the exercise of personal jurisdiction over a nonresident . . . .'") (quoting *Matter of Sayeh R.,* 91 N.Y.2d 306, 319, 670 N.Y.S.2d 377, 693 (1997)) (citing cases). Indeed, in one case brought by SC, *Standard Chartered v. Al Gosaibi*, Index No. 653506/2011 (N.Y. Sup. Ct. Apr. 23, 2013), SC argued (and the court agreed) that the defendants, foreign nationals, were subject to jurisdiction in New York because, in part, they transacted business in New York by "[r]epeatedly and [p]urposefully" litigating five matters, through New York attorneys, in New York's state and federal courts. Hausfeld Decl., Ex. 14 at 3. SC explained: "The [defendants'] pattern of litigating in [New York's courts] – in each case employing New York lawyers – constitutes the purposeful availment of the privilege of transacting business here." *Id.* at 10.

This Court should reject the New Defendants' attempt to use New York courts when it suits them but avoid their jurisdiction when it does not. As SC argued in *Al Gosaibi*:

> The [defendants] have taken full advantage of New York state and federal judicial processes, particularly the liberal discovery afforded by our laws. Through their Motion . . . , however, they inequitably seek to deny [plaintiffs] the discovery [they

---

[21] Even *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011), on which New Defendants rely, is not to the contrary. In that case, the Supreme Court emphasized that the defendant "had no office in [the forum], it neither paid taxes nor owned property there; . . . nor sent any employees" to the forum. *Id.* at 2790. Here, the New Defendants maintain branches in New York, pay taxes and on property in the forum, employ hundreds or thousands of employees in the forum, and conduct the very business at issue in this litigation within the forum.

are] entitled to obtain . . . and prevent [plaintiffs] . . . from effectively enforcing [their rights].

*Id*.

The New Defendants' substantial FX business within the United States, purposeful availment of the Courts system to litigate matters arising out of their business within New York, and use of those businesses to transact at collusively-set and manipulated prices creates minimum contacts sufficient to sustain specific personal jurisdiction in this case.

### 2. The New Defendants' Conduct Within the United States, Including Use of Electronic Communications Therein, Establishes Minimum Contacts.

The New Defendants' conduct at issue in the SAC – including transactions in FX Instruments with collusively-determined spreads and manipulated prices – occurred, at least in part, in the United States. *See e.g.*, SAC ¶¶ 12, 16, 298, 300; Hausfeld Decl. Ex. 6-8. As the Supreme Court explained, "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985); *see also In re Magnetic Audiotape*, 334 F.3d at 208. The New Defendants' own disclosures, made under U.S. law reflect that one purpose of the New York branches they have established is to trade FX Instruments. Although Plaintiffs have yet to receive discovery into the names and locations of traders participating in chat rooms or the New Defendants' trading records, it is nonetheless apparent that the volume of FX Instruments transacted by each New Defendant within the United States represent more than a single act in this forum as part of the collusive and manipulative conduct alleged in the SAC. *See, e.g.*, SAC ¶¶ 124-28, 133; § A.2., *supra*.

The New Defendants' use of electronic communication purposefully disseminated from or directed into this forum are additional minimum contacts sufficient to support specific jurisdiction. The New Defendants carried out their extensive conspiracy through electronic instant messages among traders in Bloomberg and Reuters chat rooms, both within their own

bank and at other co-conspirator banks, including banks and traders within the United States.[22]

*See, e.g.,* SAC ¶¶ 132-33, 146, 150, 152, 163, 168, 170, 215, 234, 250, 344, 362-63, 366. The

New Defendants also used United States wires to transmit their manipulated trades with United

States counterparties and exchanges, and knew Thomson Reuters, Bloomberg and other service

providers would publish manipulated benchmark rates over United States wires. *See* SAC ¶¶

102, 106, 109, 418. This is sufficient to confer specific personal jurisdiction over each of the

New Defendants. *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.,* 7 N.Y.3d 65, 71 (2006)

(finding jurisdiction on the basis of defendants' use of electronic and telephonic means to

conduct business transactions through New York).

　　The New Defendants incorrectly attempt to impose an impossible pleading standard upon

Plaintiffs, requiring a "proximate causation" link between individual communications, Defs.' Br.

at 20, or "New Foreign Defendants' alleged exchange-trading activity," Defs.' Br. at 21, and the

injury ultimately suffered by Plaintiffs.[23] The New Defendants' argument is tantamount to

requiring Plaintiffs to establish a link between chat room communications and specific trades.

That is not, and cannot be, the standard to establish jurisdiction, because, as this Court noted, it is

not even the standard required to state a claim. *See In re Foreign Exch. Benchmark Rates*

*Antitrust Litig.*, 74 F. Supp. 3d 581, 595 (S.D.N.Y. 2015) ("Defendants' argument . . . ultimately

amounts to a demand for specifics that are not required, and that Plaintiffs could not be

---

[22] For instance, as alleged in Paragraph 168 of the SAC, one SC FX trader inquired from a Barclays trader "what bid you want me to show if somwne [*sic*] calls.'" This allegation was taken from the NYDFS consent order with Barclays. Although the NYDFS Consent Order does not prove that the Barclays trader with whom SC was communicating was in the United States, its identification of this conversation within a section on Emerging Markets trading and later identification of "a director on the Emerging Markets desk in New York" as the only Emerging Markets-related individual identified as a culpable party strongly suggests that SC was, in fact, in direct communication with a Barclays trader in New York as part of its conspiratorial conduct.

[23] The New Defendants rely upon *LIBOR IV* for this proposition, Defs.' Br. at 20, but in *LIBOR IV*, the Court actually noted that proximate causation has *not* been a standard adopted by the Second Circuit and that the language to that effect has been characterized as dicta. *See LIBOR IV*, 2015 WL 4634541, at \*23 n.45 (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci I)*, 673 F.3d 50, 71 (2d Cir.2012)).

reasonably expected to know, at the pleading stage."). Plaintiffs have adequately alleged that these chat room communications were used for the purpose of agreeing on spreads and coordinating trading around key benchmark-setting times and that these communications resulted in injury to Plaintiffs within the United States. That is all Plaintiffs must plead.

Further, nearly all of the New Defendants' conduct in this matter involved the intentional use of electronic means ***aimed*** at this forum to solicit information, share information, and enter contracts that caused harmful effects in the United States directly relevant to this cause of action. *See* SAC ¶¶ 132-33, 146, 150, 152, 163, 168, 170, 215, 234, 250, 344, 362-63, 366. By using these chats and wires to solicit and conduct business in the United States, the New Defendants acted within the United States forum. *Cf. Two's Co. v. Hudson*, No. 13-cv-3338, 2014 WL 903035, at *4-5 (S.D.N.Y. Mar. 6, 2014) (concluding that personal jurisdiction *exists* where "[d]efendant's website allows customers to fill out a purchase order form online, indicating the product or products the consumer wishes to purchase" and defendant sold products into New York).

This case exceeds the showing needed for specific personal jurisdiction. The SAC establishes a *prima facie* case for jurisdiction based on the New Defendants' purposeful use of chats and wires directly related to the intended and foreseeable harms caused in the United States.

### 3.     *The Effects of the New Defendants' Conduct Were Purposefully Directed at the United States.*

The United States "is the focal point both of the story and of the harm suffered" in this case. *Calder*, 465 U.S. at 789. Under this "effects test," the Court may exercise specific jurisdiction when the defendant is a primary participant in intentional wrongdoing – albeit extra-

territorially – expressly directed at the forum.[24] *See Unifund*, 910 F.2d at 1033 (finding

jurisdiction based upon foreign "transactions [that] are alleged to have had a rather direct and an

unmistakably foreseeable effect within the United States."); *In re Magnetic Audiotape*, 334 F.3d

at 208 (citing *Calder*, 465 U.S. at 789-90). To satisfy the effects test, the relevant conduct must

be directed at the forum, but need not be solely, or even principally, directed there. *See Straub*,

921 F. Supp. 2d at 255-256 (collecting securities cases where misleading filings caused in-forum

effects by defendants outside the forum). In *Calder*, for instance, jurisdiction was found proper

in the plaintiff's home state of California for the nationwide publication of an article by Florida

residents. 465 U.S. at 785-789. The harmful effect on the plaintiff in California was the **only**

relevant contact to that state. The Supreme Court held that jurisdiction for the intentional tort was

proper because elements of the cause of action occurred there (publication to third persons for

libel) and the reputational injury would not have occurred but for the article being read by a large

number of California citizens. *Id.* at 791. Here, the New Defendants similarly engaged in a

global conspiracy, but are being brought to task in this forum for effects caused here.

Nonetheless, the New Defendants contend that because the FX market in the United

States is merely part of a global market, there is no basis to conclude that the New "Defendants'

alleged communications or trades were purposefully directed at the forum rather than the global

markets for foreign currency exchange." Defs.' Br. at 20; *see also* Defs.' Br. at 13. This

argument relies upon the mistaken premise that if a defendant's conduct potentially affects

people *everywhere*, it is purposefully aimed **nowhere**. In essence, Defendants express a view that

---

[24] As a threshold matter, because the New Defendants are alleged to have engaged in transactions and conspiratorial conduct within the United States, the Court need not reach the effects test. *Licci II,* 732 F.3d at 173 ("The effects test is a theory of personal jurisdiction typically invoked where . . . the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the **only** relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff.") (emphasis added).

an intention to target a global benchmark like the WM/Reuters Rates would strip this Court of jurisdiction because the conspiracy was ***too broad***.[25]

As discussed *supra*, the New Defendants transacted billions of dollars' worth of FX Instruments within the United States ***each day***. Whether their conduct was aimed solely at the United States is irrelevant; the New Defendants took action that they knew would cause intended and foreseeable harm within the United States, where approximately 20-25% of the world's FX trading occurs.[26] SAC ¶ 77. This was not "mere untargeted negligence." *Calder*, 465 U.S. at 789. Nor were the New Defendants simply placing FX Instruments into a stream of commerce, never knowing where they would end up.[27] Rather, the cartel targeted the United States. SAC ¶¶ 298, 300, 418. New Defendants actively shared sensitive client information and intended trading positions, conspiring to widen bid-ask spreads, and manipulating the fixes and the timing and execution of trades. *See, e.g.,* SAC ¶¶ 132-33, 146, 150, 152, 163, 168, 170, 215, 234, 250, 344,

---

[25] Even in the criminal context, where there are greater due process protections under the Fifth Amendment, the court rejected this argument with respect to a defendant accused of manipulating LIBOR. *United States v. Hayes*, 99 F. Supp. 3d 409,423 n.4 (S.D.N.Y. 2015) (dismissing criminal defendant's argument that "sufficiently targeted" basis for personal jurisdiction cannot exist based on global conduct because it would excuse those "accused of wide-ranging frauds merely because of their expansive scope").

[26] The New Defendants rely upon Judge Buchwald's conclusion in *LIBOR IV* as support for this proposition (Defs.' Br. at 18); however, *LIBOR IV* noted that "a panel bank that cooperated with a request made by a trader in New York would be subject to personal jurisdiction in New York in connection with a claim arising out of that request." *LIBOR IV*, 2015 WL 4634541, at *27. Here, the guilty pleas secured by the Department of Justice reflect that the United States was directly targeted by the conspiracy alleged by the SAC. *See* SAC ¶¶ 298, 300; *United States v. Barclays PLC*, 3:15-cr-77, ECF No. 6 at 3. (noting that banks "agree[d] to eliminate competition in the sale of EUR/USD currency pair in the United States and elsewhere."); *United States v. Citicorp*, No. 15-cr-78, ECF No. 8 at 3 (same).

[27] This provides a pointed contrast to *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13-cv-981, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) upon which Defendants rely. In *7 W. 57th Street*, unlike here, the defendants did not cause the alleged harm by engaging with the plaintiff through New York contacts. Rather, the plaintiff alleged that LIBOR manipulation damaged the value of bonds he purchased from government issuers. *Id.* at *10. Here, New Defendants directly aimed transactions at the United States and maintained U.S. branches for such purpose and the Class members are direct or exchange-based purchasers of the FX Instruments at the heart of the conspiracy. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980) ("The forum . . . does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum . . . .").

362-63, 366. Much of this conduct was aimed at the U.S. Dollar. *See, e.g.,* SAC ¶¶ 132, 145, 150, 153. The New Defendants knew or had good reason to know what effects their collusive and manipulative trading would have on Plaintiffs and members of the Classes in the United States. *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 527 (S.D.N.Y. 2008), *aff'd*, 730 F.3d 170 (2d Cir. 2013); *Straub*, 921 F. Supp. 2d at 254; *accord In re Parmalat Sec. Litig.,* 376 F. Supp. 2d 449, 455 (S.D.N.Y. 2005). In short, the SAC plausibly alleges that the New Defendants committed intentional, tortious actions expressly aimed at the United States forum. *See Calder*, 465 U.S. at 789; *World-Wide Volkswagen Corp.*, 444 U.S. at 295; *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013). These facts satisfy the effects test and confer personal jurisdiction.

### 4.    *New Defendants' Conspiracy with their Co-Defendant Banks Confers Jurisdiction.*

The Court may also exercise personal jurisdiction over all the participants in the conspiracy alleged in the SAC. *Ford v. United States*, 273 U.S. 593, 622 (1927); *see also In re Satyam Computer Servs. Ltd. Sec. Litig.,* 915 F. Supp. 2d 450, 484 (S.D.N.Y. 2013) (holding that the acts of a co-conspirator can be imputed to another defendant for personal jurisdiction purposes). "The Supreme Court has specifically upheld the exercise of jurisdiction over conspirators who have never entered the United States, where the conspiracy was 'directed to violation of the United States law within the United States.'" *United States v. Manuel*, 371 F. Supp. 2d 404, 409 (S.D.N.Y. 2005) (quoting *Ford*, 273 U.S. at 620).[28]

---

[28] The New Defendants rely upon *Walden* to contend that Plaintiffs have failed to connect the New Defendants to acts "committed *in the forum*." Defs.' Br. at 17. But *Walden* did nothing to alter *Ford*'s standards for jurisdiction based upon the contacts of co-conspirators. *Walden* merely clarified *Calder* by finding that jurisdiction must be based on the defendant's meaningful connection to the harmful effects in the forum in a case where there were no co-conspirators (and therefore no conspirator contacts to impute). *Walden*, 134 S. Ct. at 1123-1125, 1127 (2014). *Ford* remains binding law. *See e.g, United States v. Verdugo-Urquidez*, 494 U.S. 259, 280 n.4 (1990) ("[B]road construction of federal conspiracy statutes may permit prosecution of foreign nationals who have had no direct contact with anyone or anything in the United States.") (citing *Ford*, 273 U.S. at 619-20).

To demonstrate conspiracy jurisdiction, a plaintiff must "(1) make a *prima facie* factual showing of a conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, and (3) set forth evidentiary facts to connect the defendants with transactions occurring in [the forum]." *Beach v. Citigroup Alternative Invs. LLC*, No. 12-cv-717, 2014 WL 904650, at *12 (S.D.N.Y. Mar. 7, 2014).[29]

Each of these requirements is met here. First, the Court has already found that Plaintiffs have plausibly alleged the existence of some conspiracy to manipulate the WM/Reuters Rates. *In re Foreign Exch. Benchmark Rates*, 74 F. Supp. 3d at 591. Second, the SAC contains myriad particularized facts, including chat transcripts demonstrating the New Defendants' integral involvement in that conspiracy. SAC ¶¶ 132-33, 146, 150, 152, 163, 168, 170, 215, 234, 250, 344, 362-63, 366. This collusion included communication and coordination with respect to trading strategy with respect to key FX benchmark rates, bid-ask spreads, and manipulation of the price of FX Exchange-Traded Instruments that had a direct impact on traders within the United States. *See* SAC ¶¶ 77, 163, 215, 234. Third, as outlined above, the New Defendants transacted billions of dollars' worth of FX Instruments with U.S. customers and likely Class members each day. *See* § A.2., *supra*.

Plaintiffs have alleged such facts even though discovery has not begun with respect to the New Defendants, and discovery is still in the nascent stages with respect to the Defendants named in the original complaint. The New Defendants' documented participation in the conspiracy alleged in the SAC provides an independent basis for personal jurisdiction.

---

[29] *Accord Emerald Asset Advisors v. Schaffer*, 895 F. Supp. 2d 418 (E.D.N.Y. 2012) (finding personal jurisdiction over out-of-forum co-conspirator under New York law). *See also First Capital Inv. Holdings LLC v. Wilson Capital Grp., Inc.*, No. 10-cv-2948, 2010 U.S. Dist. LEXIS 128512 (S.D.N.Y. Nov. 30, 2010); *Shpak v. Curtis*, No. 10-cv-1818, 2011 U.S. Dist. LEXIS 109011 (E.D.N.Y. Sept. 26, 2011); *Cleft of the Rock Found. v. Wilson*, 992 F. Supp. 574, 581–582 (E.D.N.Y. 1998) (conspiracy theory of jurisdiction comports with due process because co-conspirator inserted himself into the forum); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 782 F. Supp. 215, 220-222, 221 n.6 (S.D.N.Y. 1992) (asserting personal jurisdiction based upon conspiracy theory).

**B.      Exercising Personal Jurisdiction over the New Defendants is Consistent with Notions of Fair Play and Substantial Justice and, Therefore, Due Process.**

Although it is their burden to do so, the New Defendants do not identify any burden, let alone a meaningful one, that they bear by being asked to answer in the same court in which they have repeatedly sought relief of their own. *See, e.g., Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). They are thus unable to demonstrate that exercising jurisdiction over them would offend traditional notions of fair play and substantial justice. *See id.* In any event, this inquiry "is largely academic in non-diversity cases brought under a federal law which provides for nationwide service of process." *SEC v. Softpoint, Inc.*, No. 95-cv-2951, 2001 U.S. Dist. LEXIS 286, at *19-20 (S.D.N.Y. Jan. 18, 2001) (citing Wright, Miller & Kane § 1067.1 at 169-70 (2000 Pocket Part)) ("[N]oting that federal interests almost unanimously trump the burdens placed on the defendant"); *accord SEC v. Morton*, No. 10-cv-1720, 2011 WL1344259, at *12 (S.D.N.Y. Mar. 31, 2011); *Hallwood*, 104 F. Supp. 2d at 285-286.

As described previously, the New Defendants have transacted billions of dollars' worth of FX Instruments through their New York offices under the protection of U.S. and New York law each day. They maintain hundreds of millions, if not billions, in assets in New York for the protection of New York consumers, hold banking licenses from NYDFS, and own or operate offices and employ hundreds or thousands of full-time employees in this District. Any argument that the New Defendants' due process rights would be violated by having to answer for their wrongs in this Court disingenuously ignores their substantial presence and FX-related operations within this District. In sum, the New Defendants had clear notice that they could be subject to suit in this Court, *Burger King Corp.*, 471 U.S. at 475 n.17, and may not avoid responding in this Court for the harm they caused to Plaintiffs and the putative Classes.

## IV.    AT A MINIMUM, PLAINTIFFS SHOULD BE PERMITTED JURISDICTIONAL DISCOVERY OF THE NEW DEFENDANTS.

The New Defendants' billions of dollars of FX Instruments transacted through New York branches, frequent use of this forum's courts, and substantial contacts with the U.S. and this forum have established a prima facie case of jurisdiction. These facts demonstrate, at a minimum, a "sufficient start towards establishing personal jurisdiction" that warrants permitting jurisdictional discovery before granting the New Defendants' motion to dismiss. *See JGB Enters., Inc. v. Beta Fluid Sys., Inc.*, No. 5:14-cv-1439, 2015 WL 5709088 at *5-7 (N.D.N.Y. Sept. 29, 2005) (collecting cases). Plaintiffs should be permitted "ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2010). This is especially so in light of the fact that Plaintiffs have engaged in no discovery of the New Defendants. *See Winston & Strawn v. Dong Won Secs. Co. Ltd.*, No. 02-cv-0183, 2015 WL 31444625, at *5 (S.D.N.Y. Nov. 1, 2002) (denying motion to dismiss "where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge").

Finally, if the Court were to both grant New Defendants' motion to dismiss, in whole or in part, and deny Plaintiffs limited jurisdictional discovery, Plaintiffs would request leave to amend to add additional jurisdictional allegations and/or substitute parties as necessary.[30]

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the New Defendants' motion to dismiss.

---

[30] *See* n.14.

DATED: January 12, 2016

HAUSFELD LLP                                SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*/s/ Michael D. Hausfeld*                   */s/ Christopher M. Burke*

MICHAEL D. HAUSFELD                         CHRISTOPHER M. BURKE (CB-3648)
WILLIAM P. BUTTERFIELD                      WALTER W. NOSS (WN-0529)
REENA A. GAMBHIR                            KRISTEN M. ANDERSON (*pro hac vice*)
TIMOTHY S. KEARNS                           707 Broadway, Suite 1000
NATHANIEL C. GIDDINGS                       San Diego, CA 92101
1700 K Street, NW, Suite 650                Telephone: 619-233-4565
Washington, DC 20006                        Facsimile: 619-233-0508
Telephone: 202-540-7200                     cburke@scott-scott.com
Facsimile: 202-540-7201                     wnoss@scott-scott.com
mhausfeld@hausfeld.com                      kanderson@scott-scott.com
wbutterfield@hausfeld.com
rgambhir@hausfeld.com                       -and-
tkearns@hausfeld.com
ngiddings@hausfeld.com                      SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
                                            DAVID R. SCOTT (DS-8053)
-and-                                       JOSEPH P. GUGLIELMO (JG-2447)
                                            SYLVIA SOKOL (SS-0317)
HAUSFELD LLP                                THOMAS K. BOARDMAN (TB-0530)
MICHAEL LEHMANN                             The Chrysler Building
BONNY E. SWEENEY                            405 Lexington Avenue, 40th Floor
CHRISTOPHER LEBSOCK                         New York, NY 10174
44 Montgomery Street, Suite 3400            Telephone: 212-223-6444
San Francisco, CA 94104                     Facsimile: 212-223-6334
Telephone: 415-633-1949                     david.scott@scott-scott.com
Facsimile: 415-693-0770                     jguglielmo@scott-scott.com
mlehmann@hausfeld.com                       ssokol@scott-scott.com
bsweeney@hausfeld.com                       tboardman@scott-scott.com
clebsock@hausfeld.com

***Interim Co-Lead Counsel***

26

OBERMAYER REBMANN
MAXWELL & HIPPEL LLP
WILLIAM J. LEONARD (*pro hac vice*)
RIGEL FARR (*pro hac vice*)
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
Telephone: 215-665-3000
Facsimile: 215-665-3165
william.leonard@obermayer.com
rigel.farr@obermayer.com

-and-

BONI & ZACK LLC
MICHAEL J. BONI (*pro hac vice*)
JOSHUA D. SNYDER (*pro hac vice*)
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
Facsimile: 610-822-0206
mboni@bonizack.com
jsnyder@bonizack.com

*Counsel for Plaintiff the City of Philadelphia, Board of Pensions and Retirement*

WOLF POPPER LLP
MARIAN R. ROSNER
PATRICIA I. AVERY
FEI-LU QIAN
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: 212-759-4600
Facsimile: 212-486-2093
mrosner@wolfpopper.com
pavery@wolfpopper.com
fqian@wolfpopper.com

*Counsel for Plaintiff Employees' Retirement System of Puerto Rico Electric Power Authority*

KOREIN TILLERY, LLC
STEPHEN M. TILLERY (*pro hac vice*)
ROBERT L. KING (*pro hac vice*)
AARON M. ZIGLER (*pro hac vice*)
STEVEN M. BEREZNEY (*pro hac vice*)
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
Saint Louis, MO 63101-1612
Telephone: 314-241-4844
Facsimile: 314-241-3525
stillery@koreintillery.com
rking@koreintillery.com
azigler@koreintillery.com
sberezney@koreintillery.com

-and-

KOREIN TILLERY, LLC
GEORGE A. ZELCS (*pro hac vice*)
205 N Michigan Ave, Suite 1950
Chicago, IL 60601-5927
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com

*Counsel for Plaintiffs Haverhill Retirement System and Oklahoma Firefighters Pension and Retirement System, Robert Miller, Mark Miller, and Peter Rives*

ROBBINS GELLER RUDMAN & DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

*Counsel for Plaintiff Employees' Retirement System of the Government of the Virgin Islands*

LABATON SUCHAROW LLP
GREGORY S. ASCIOLLA
JAY L. HIMES
ROBIN A. VAN DER MEULEN
MATTHEW J. PEREZ
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477
gasciolla@labaton.com
jhimes@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com

*Counsel for Plaintiff State-Boston
Retirement System, Marc G.
Federighi, and Michael J. Smith*

GRANT & EISENHOFER, P.A.
PETER A. BARILE III (PB-3354)
485 Lexington Avenue
New York, NY 10017
Telephone: 646-722-8500
Facsimile: 646-722-8501
pbarile@gelaw.com

*Counsel for Plaintiff Syena Global
Emerging Markets Fund, LP*

ENTWISTLE & CAPPUCCI LLP
ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
280 Park Avenue, 26th Floor West
New York, NY 10017
Telephone: 212-894-7200
Facsimile: 212-894-7272
aentwistle@entwistle-law.com
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

*Counsel for Plaintiffs Tiberius OC
Fund, Ltd. and Value Recovery Fund
L.L.C.*

BERMAN DeVALERIO
JOSEPH J. TABACCO, JR. (JJT-1994)
TODD A. SEAVER (*pro hac vice*)
SARAH KHORASANEE MCGRATH (*pro hac
vice*)
JESSICA MOY (*pro hac vice*)
One California Street, Suite 900
San Francisco, CA 94111
Telephone: 415-433-3200
Facsimile: 415-433-6382
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com
smcgrath@bermandevalerio.com
jmoy@bermandevalerio.com

*Counsel for Plaintiff Fresno County Employees'
Retirement Association*

CRIDEN & LOVE, P.A.
MICHAEL E. CRIDEN
LINDSEY C. GROSSMAN
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: 305-357-9000
Facsimile: 305-357-9050
mcriden@cridenlove.com
lgrossman@cridenlove.com

*Counsel for Plaintiffs J. Paul Antonello, Marc G.
Federighi and Michael J. Smith*

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ 08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

*Counsel for Plaintiffs Doug Harvey, Izee Trading Company, and Richard Preschern d/b/a Preschern Trading*

CERA LLP
SOLOMON B. CERA
C. ANDREW DIRKSEN
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: 415-777-2230
Facsimile: 415-777-5189
scera@cerallp.com
cdirksen@cerallp.com

*Counsel for Plaintiff Aureus Currency Fund L.P.*

FREED KANNER LONDON &
MILLEN LLC
MICHAEL J. FREED
STEVEN A. KANNER
2201 Waukegan Road, Suite 130
Bannockburn, Illinois 60015
Telephone: 224-632-4500
Facsimile: 224-632-4521
mfreed@fklmlaw.com
skanner@fklmlaw.com

*Counsel for Plaintiffs Thomas Gramatis and John Kerstein*

LOWEY DANNENBERG COHEN & HART, P.C.
VINCENT BRIGANTI
GEOFFREY M. HORN
PETER D. ST. PHILLIP
RAYMOND P. GIRNYS
One North Broadway
White Plains, NY 10601
Telephone: 914-997-0500
Facsimile: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com
rgirnys@lowey.com

-and-

LOWEY DANNENBERG COHEN & HART, P.C.
GERALD LAWRENCE, ESQ.
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
Telephone: 610-941-2760
Facsimile: 610-862-9777
glawrence@lowey.com

-and-

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
ERIC. L. YOUNG
NATALIE FINKELMAN BENNETT
35 East State Street
Media, PA 19063
Telephone: 610-891-9880
Facsimile: 866-300-7367
eyoung@sfmslaw.com
nfinkelman@sfmslaw.com

-and-

NUSSBAUM LAW GROUP, P.C.
LINDA P NUSSBAUM
570 Lexington Ave., 19 floor
New York, NY, 10022
Telephone: 212 702 7054
lnussbaum@nussbaumpc.com

*Counsel for Plaintiffs Jeffrey Sterk,
Kimberly Sterk, and Michael
Melissinos*

THE MOGIN LAW FIRM, P.C.
DANIEL J. MOGIN
JODIE M. WILLIAMS
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-687-6611
Facsimile: 619-687-6610
dmogin@moginlaw.com
jwilliams@moginlaw.com

-and-

STEYER, LOWENTHAL,
BOODROOKAS
ALVAREZ & SMITH LLP
ALLAN STEYER
JAYNE PEETERS
One California Street, Third Floor
San Francisco, CA 94111
Telephone: 415-421-3400
Facsimile: 415-421-2234
asteyer@steyerlaw.com
jpeeters@steyerlaw.com

*Counsel for Plaintiffs Haverhill
Retirement System and Oklahoma
Firefighters Pension and Retirement
System*

SHEPHERD FINKELMAN
MILLER & SHAH, LLP
JAMES E. MILLER
65 Main Street
Chester, CT 06412
Telephone: 860-526-1100
Facsimile: 860-526-1120
jmiller@sfmslaw.com

-and-

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ 08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

-and-

MANDEL BHANDARI LLP
RISHI BHANDARI
EVAN MANDEL
80 Pine Street, 33rd Floor
New York, NY 10005
Telephone: 212-269-5600
Facsimile: 646-964-6667
rb@mandelbhandari.com
em@mandelbhandari.com

*Counsel for Plaintiff United Food and Commercial
Workers Union and Participating Food Industry
Employers Tri-State Pension Fund*

FINE, KAPLAN AND BLACK, R.P.C.
ROBERTA D. LIEBENBERG
ADAM PESSIN
One South Broad St., Suite 2300
Philadelphia, PA 19107
Telephone: 215-567-6565
Facsimile: 215-568-5872
rliebenberg@finekaplan.com
apessin@finekaplan.com

-and-

MOTLEY RICE LLC
WILLIAM H. NARWOLD
DONALD A. MIGLIORI
MICHAEL M. BUCHMAN
JOHN A. IOANNOU
600 Third Avenue, Suite 2101
New York, NY 10016
Telephone: 212-577-0040
Facsimile: 212-577-0054
bnarwold@motleyrice.com
dmigliori@motleyrice.com
mbuchman@motleyrice.com
jioannou@motleyrice.com

-and-

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW VAN TINE
115 S. LaSalle St., Suite 2101
Chicago, IL 60603
Telephone: 312-322-3400
Facsimile: 312-676-2676
mmiller@millerlawllc.com
mvantine@millerlawllc.com

*Of Counsel for Plaintiffs*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 12, 2016.

*/s/ Michael D. Hausfeld*
MICHAEL D. HAUSFELD
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeld.com

32