**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- X
                                                                    :       No. 1:13-cv-07789-LGS
                                                                    :
IN RE FOREIGN EXCHANGE BENCHMARK RATES                              :
ANTITRUST LITIGATION                                                :
                                                                    :
                                                                    :
                                                                    :
-------------------------------------------------------------------- X


**REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF THE NEW FOREIGN DEFENDANTS'**
**MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 2

I.  The New Foreign Defendants Are Not Subject to General Jurisdiction. .............................. 2

    A.  Daimler Governs the General Personal Jurisdiction Analysis. .............................. 2

    B.  The New Foreign Defendants Have Not Consented to General
        Personal Jurisdiction. ................................................................................. 4

II.  The New Foreign Defendants Are Not Subject to Specific Personal
    Jurisdiction. ........................................................................................................ 7

    A.  Plaintiffs Have Not Established a Prima Facie Case for Specific
        Personal Jurisdiction. ................................................................................. 8

        1.  Plaintiffs Have Not Alleged That the Claims Arise out of
            the New Foreign Defendants' Contacts with the Forum. .......................... 8

        2.  Plaintiffs Have Not Alleged That the New Foreign
            Defendants' Engaged in Misconduct Directed at the Forum. .................... 9

    B.  The Alleged Use of Electronic Communications Does Not
        Substantially Connect the New Foreign Defendants to the Forum. .................... 10

    C.  Plaintiffs' Conspiracy Allegations Do Not Establish Specific
        Jurisdiction over the New Foreign Defendants. .................................................. 11

    D.  The Allegations Specific to Each New Foreign Defendant Fall
        Well Short of a Prima Facie Case of Specific Personal Jurisdiction. .................. 12

        1.  The Bank of Tokyo-Mitsubishi UFJ Ltd. .................................................. 12

        2.  Société Générale ....................................................................................... 13

        3.  Standard Chartered PLC ........................................................................... 13

    E.  Even If Plaintiffs Had Alleged That an Improper Communication
        or Trade Occurred in the Forum, Jurisdiction Would Attach Only
        to Claims Arising from That Trade or Communication. ..................................... 13

III.  Jurisdictional Discovery, and Further Amendments, Are Inappropriate. ........................... 14

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ............................................................4, 9, 10

*Advance Coating Tech., Inc. v. LEP Chem., Ltd.*,
  142 F.R.D. 91 (S.D.N.Y. 1992) ...........................................................................................15

*In re Aluminum Warehousing Antitrust Litig.*,
  90 F. Supp. 3d 219 (S.D.N.Y. 2015)..............................................................................12, 15

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987)............................................................................................................14

*AstraZeneca AB v. Mylan Pharms., Inc.*,
  72 F. Supp. 3d 549 (D. Del. 2014) ........................................................................................6

*B&M Kingstone v. Mega Int'l Commercial Bank Co., Ltd.*,
  15 N.Y.S.3d 318 (N.Y. App. Div. 2015) ...............................................................................5

*Barrett v. Toroyan*,
  28 A.D.3d 331 (N.Y. App. Div. 2006) ..................................................................................7

*Beach v. Citigroup Alternative Invs. LLC*,
  2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) .........................................................................11

*Bensmiller v. E.I. DuPont de Nemours & Co.*,
  47 F.3d 79 (2d Cir. 1995) ......................................................................................................6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..............................................................................................................8

*Calder v. Jones*,
  465 U.S. 783 (1984)..........................................................................................................9, 11

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)...................................................................................................7

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*,
  2015 WL 4164763 (S.D.N.Y. July 10, 2015) ........................................................................6

*CutCo Indus. Inc. v. Naughton*,
  806 F.2d 361 (2d Cir. 1986)...................................................................................................7

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014) ..................................................................................... *passim*

*Dale v. Banque All. S.A.*,
   2004 WL 2389894 (S.D.N.Y. Oct. 22, 2004) ........................................................7

*Daniel v. Am. Bd. of Emergency Med.*,
   428 F.3d 408 (2d Cir. 2005) ..................................................................................2

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
   818 N.Y.S.2d 164 (N.Y. 2006) ...........................................................................11

*First Am. Corp. v. Price Waterhouse LLP*,
   154 F.3d 16 (2d Cir. 1998) ....................................................................................5

*Ford v. United States*,
   273 U.S. 593 (1927) .............................................................................................11

*Franceschi v. Mautner-Glick Corp.*,
   22 F. Supp. 2d 250 (S.D.N.Y. 1998) ..................................................................15

*Gliklad v. Bank Hapoalim B.M.*,
   2014 N.Y. Misc. LEXIS 3600 (N.Y. Sup. Ct. Aug. 4, 2014) .............................4, 5

*Greenberg, Inc. v. Sirtech Canada, Ltd.*,
   79 A.D.3d 1419 (N.Y. App. Div. 2010) ...............................................................9

*Gucci Am., Inc. v. Bank of China*,
   768 F.3d 122 (2d Cir. 2014) .......................................................................2, 3, 4, 6

*In re Hellas Telcoms. (Lux.) II SCA*,
   524 B.R. 488 (Bankr. S.D.N.Y. 2015) ..................................................................3

*Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank*,
   98 N.Y.2d 238 (2002) ...........................................................................................5

*Indus. Models, Inc. v. SNF, Inc.*,
   2015 WL 2399089 (N.D. Ill. May 18, 2015) ........................................................3

*Int'l Shoe Co. v. Wash.*,
   326 U.S. 310 (1945) ...............................................................................................2

*J. McIntyre Mach., Ltd. v. Nicastro*,
   131 S. Ct. 2780 (2011) ...........................................................................................8

*Jazini v. Nissan Motor Co.*,
   148 F.3d 181 (2d Cir. 1998) ................................................................................14

*Estate of Klieman v. Palestinian Auth.*,
  82 F. Supp. 3d 237 (D.D.C. 2015) ....................................................................2

*Koehler v. Bank of Berm. Ltd.*,
  101 F.3d 863 (2d Cir. 1996) ...........................................................................14

*Koontz v. St. Johns River Water Mgmt. Dist.*,
  133 S. Ct. 2586 (2013) .....................................................................................6

*Kuraki Am. Corp. v. Dynamic Int'l of Wis. Inc.*,
  2014 WL 6834226 (E.D. Wis. Dec. 3, 2014) .................................................11

*Laydon v. Mizuho Bank, Ltd.*,
  2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ...........................................10, 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ..........................................3, 4, 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  27 F. Supp. 3d 447 (S.D.N.Y. 2014) ..............................................................13

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013) ...........................................................................14

*Magdalena v. Lins*,
  123 A.D.3d 600 (N.Y. App. Div. 2014) ...........................................................7

*Meyer v. Carnival Corp.*,
  938 F. Supp. 2d 1251 (S.D. Fla. 2013) .............................................................7

*Motorola Credit Corp. v. Uzan*,
  2015 WL 5613077 (S.D.N.Y. Sept. 9, 2015) ....................................................4

*NovelAire Techs., L.L.C. v. Munters AB*,
  2013 WL 6182938 (S.D.N.Y. Nov. 21, 2013) .................................................15

*Robinson v. Overseas Military Sales Corp.*,
  21 F.3d 502 (2d Cir. 1994) ...............................................................................7

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
  915 F. Supp. 2d 450 (S.D.N.Y. 2013) ............................................................11

*Schulman v. Inst. for Shipboard Educ.*,
  2015 WL 4896597 (11th Cir. Aug. 18, 2015) ...................................................2

*SEC v. Straub*,
  921 F. Supp. 2d 244 (S.D.N.Y. 2013) ..............................................................2

*SEC v. Unifund SAL*,
  910 F.2d 1028 (2d Cir. 1990).................................................................................3

*St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*,
  745 F. Supp. 2d 303 (S.D.N.Y. 2010).................................................................15

*Standard Chartered Bank v. Gosaibi*,
  No. 653506/11, Dkt. 163 at 3-4, 2013 N.Y. Misc. LEXIS 4379 (N.Y. Sup. Ct.
  Sept. 26, 2013) .......................................................................................................9

*Stevens v. Reliance Fin. Corp.*,
  2014 WL 631612 (M.D. Ala. Feb. 18, 2014) ..........................................................7

*Sunward Elecs., Inc. v. McDonald*,
  362 F.3d 17 (2d Cir. 2004).................................................................................7, 13

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)....................................................................................9

*Two's Co. v. Hudson*,
  2014 WL 903035 (S.D.N.Y. Mar. 6, 2014) ...........................................................11

*United States v. Manuel*,
  371 F. Supp. 2d 404 (S.D.N.Y. 2005)....................................................................11

*Vera v. Republic of Cuba*,
  91 F. Supp. 3d 561 (S.D.N.Y. 2015), *appeal dismissed on other grounds*, 802
  F.3d 242 (2d Cir. 2015)............................................................................................5

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)......................................................................................11, 13

*Wilder v. News Corp*,
  2014 WL 1315960 (S.D.N.Y. Mar. 31, 2014) .......................................................12

*Wilder v. News Corp.*,
  2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015)............................................................2

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)............................................................................................3, 9

*Zadvydas v. Davis*,
  533 U.S. 678 (2001)................................................................................................6

**Statutes**

New York Banking Law Section 200 ...........................................................................1, 4, 5

New York Banking Law Section 221-c ..............................................................................4

**The Constitution**

Fifth Amendment ..................................................................................................2, 3

Fourteenth Amendment ..........................................................................................2, 3

## SUMMARY OF ARGUMENT

Plaintiffs' opposition confirms that the Court should dismiss all claims against the New Foreign Defendants ("NFDs") for lack of personal jurisdiction.

Rather than directly address the authority establishing the lack of general jurisdiction, Plaintiffs attempt to skirt around Supreme Court precedent and offer arguments that simply do not pass constitutional muster. Under *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the NFDs are not subject to general personal jurisdiction because they are not "at home" in New York or anywhere in the United States. *Id*. at 761-62. Contrary to Plaintiffs' argument, the *Daimler* analysis applies here because federal statutes are constrained by the same due process requirements as state statutes. Furthermore, the NFDs have not consented to general personal jurisdiction by registering with state banking authorities: as numerous decisions have made clear, New York Banking Law Section 200 provides a basis for jurisdiction only with respect to actions that arise out of activities or transactions in the forum. Similarly, BTMU's and SG's contracts with entities that are not parties to this action cannot support general jurisdiction over them.

Plaintiffs' arguments in favor of specific personal jurisdiction fare no better. Plaintiffs fail to identify the requisite allegations of actionable conduct ***by these defendants*** in, or expressly aimed at, the forum. They rely upon argumentative inferences and legal conclusions based upon various activities of the NFDs in the forum, but they do not tie these activities to the claims here. Equally unavailing is Plaintiffs' reliance on a few ambiguous chats involving the NFDs, Plaintiffs' weak allegations of conspiracy involving the NFDs, and Plaintiffs' allegations regarding the NFDs' use of New York courts in matters wholly unrelated to the instant action. Plaintiffs' grab-bag of "contacts"—whether taken separately or in the aggregate—cannot support personal jurisdiction over the NFDs.

## ARGUMENT

### I.      The New Foreign Defendants Are Not Subject to General Jurisdiction.

#### A.      *Daimler* Governs the General Personal Jurisdiction Analysis.

Under *Daimler* and *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014), the NFDs are not at home in this forum because they are neither incorporated here nor maintain a principal place of business here. As such, they are not subject to general jurisdiction here simply by virtue of conducting business in the forum. Unable to demonstrate to the contrary, Plaintiffs instead fall back to an argument—without support in the case law—that *Daimler* does not apply because the due process analysis for personal jurisdiction under the 5th Amendment is different from that of the 14th Amendment.[1] The one relevant case that Plaintiffs cite, albeit for a different proposition, Judge Sullivan's opinion in *SEC v. Straub*, 921 F. Supp. 2d 244 (S.D.N.Y. 2013), is directly on point and rebuts Plaintiffs' argument: "because the language of the Fifth Amendment's due process clause is identical to that of the Fourteenth Amendment's due process clause, the same general principles guide the minimum contacts analysis." *Id.* at 253.[2] Every reported decision in the United States to consider Plaintiffs' argument has rejected it. *See, e.g., Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237, 246 n.4 (D.D.C. 2015) ("The plaintiffs argue that *Goodyear* and *Daimler* are not controlling because both cases were decided under the Fourteenth Amendment. The minimum contacts analysis, however, is the same under the Fifth Amendment and the Fourteenth Amendment."); *see also Schulman v. Inst. for Shipboard Educ.*, 2015 WL 4896597, at *3 (11th Cir. Aug. 18, 2015) (applying *Daimler* under both a 5th and 14th Amendment analysis, which it notes are "virtually identical"); *Wilder v. News Corp.*, 2015 WL 5853763, at *5 (S.D.N.Y. Oct. 7, 2015) ("The Exchange Act permits the

---

[1] Plaintiffs' reliance on *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 427 (2d Cir. 2005), is misplaced. *Daniel* provides that Section 12's venue requirements are a necessary step before considering whether general personal jurisdiction exists. In *Daniel*, because venue requirements were not met, the court did not address due process requirements that need to be satisfied in order to establish personal jurisdiction. *Id.* at 426-430.

[2] Notwithstanding that the *Straub* Court states it is conducting due process analysis pursuant to the 5th Amendment, it relies on the due process standard supplied in *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945), in which the Supreme Court applied the due process clause of the 14th Amendment. *Straub*, 921 F. Supp. 2d at 251-58.

exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment. . . . The Supreme Court has made clear, however, that general jurisdiction may only constitutionally be exercised over a defendant who is 'essentially at home' in the relevant forum.") (citing *Daimler*, 134 S. Ct. at 751, other citations omitted); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *25-27 (S.D.N.Y. Oct. 20, 2015) ("*LIBOR IV*") (applying *Daimler* in a federal question case).

*Daimler* represented a fundamental shift in the law regarding general personal jurisdiction as it relates to foreign entities.[3] Accordingly, Plaintiffs' citations to pre-*Daimler* cases, *e.g.*, *SEC v. Unifund SAL*, 910 F.2d 1028 (2d Cir. 1990), are not persuasive authority for the proposition that a foreign corporation, not at home in this forum, could be subject to general personal jurisdiction here.[4] The two post-*Daimler* cases cited by Plaintiffs are also inapposite. Notably, both *DataCell ehf v. Visa, Inc.*, 2015 WL 4624714 (E.D. Va. July 30, 2015), and *Indus. Models, Inc. v. SNF, Inc.*, 2015 WL 2399089 (N.D. Ill. May 18, 2015), involved defendants that were "at home" in the forum because they were incorporated and maintained their principal places of business in the United States.[5] These decisions are in accord with *Daimler* and have no bearing on this case, where none of the NFDs is "at home" in the United States.[6]

---

[3] *See Gucci*, 768 F.3d at 134-35 ("In *Daimler*, the Supreme Court . . . *expressly cast doubt on previous Supreme Court and New York Court of Appeals cases* that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum.") (emphasis added).

[4] Moreover, *Unifund* is inapplicable as that case concerned specific personal jurisdiction, not general jurisdiction. *Unifund SAL*, 910 F.2d at 1033. Nevertheless, here again, the *Unifund* Court referenced and applied a 14th Amendment Due Process case—*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)—to determine the scope of personal jurisdiction under the 5th Amendment. *Id.*

[5] *See DataCell*, 2015 WL 4624714, at *6 ("*As Visa is an American company* [] it more than meets the minimum contacts necessary to be served within the United States.") (emphasis added); *Indus. Models, Inc.*, 2015 WL 2399089, at *3 ("Because Industrial Models has alleged an antitrust violation, Section 12 applies and personal jurisdiction of Brand FX (*a Texas corporation* with substantial ties to the United States) exists here, as it would in any district in the United States.") (emphasis added).

[6] Plaintiffs also footnote the Bankruptcy Court decision in *In re Hellas Telcoms. (Lux.) II SCA*, 524 B.R. 488 (Bankr. S.D.N.Y. 2015), for the proposition that the NFDs should be found "at home" even under the standard articulated by *Daimler*. *In re Hellas* recently was expressly rejected by Judge Buchwald, who concluded that "[i]n light of the recent leading Supreme Court and Second Circuit cases, we cannot agree with the bankruptcy court's conclusion that even very substantial corporate operations (regardless of whether measured in money, personnel, space, or time) in a given forum suffice to make a defendant at home in the forum." *LIBOR IV*, 2015 WL 6243526, at *27 n.43 (S.D.N.Y. Oct. 20, 2015).

**B.    The New Foreign Defendants Have Not Consented to General Personal Jurisdiction.**

Plaintiffs' assertion that the NFDs "consented" to general jurisdiction in New York by registering with the NYDFS is inconsistent with both the language of the statute and relevant case law. New York Banking Law § 200 requires a bank operating in New York to appoint the superintendent to receive process for an "action or proceeding against it on a cause of action *arising out of a transaction with its New York agency or agencies or branch or branches*." N.Y. Banking Law § 200 (emphasis added). Likewise, N.Y. Banking Law § 221-c provides that, to operate a representative office, an applicant must appoint the superintendent as agent for service of process "in connection with any action or proceeding against the foreign banking corporation relating to any cause of action which may arise out of a transaction with its representative office." By their express terms, these provisions are limited to lawsuits "arising out of a transaction" with a bank's New York office.

Consistent with this, federal and state courts have held that any "consent" to jurisdiction provided by § 200 is expressly limited to suits "arising out of a transaction" involving the foreign defendant's New York branch and is not a basis for the exercise of general jurisdiction. *See 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) (holding that certain foreign banks had not consented to general personal jurisdiction by registering with the NYDFS, explaining that "[t]he plain language of [§ 200] limits any consent to personal jurisdiction by registered banks to *specific* personal jurisdiction." (emphasis in original)); *LIBOR IV*, 2015 WL 6243526, at *26-27 (no general jurisdiction over foreign banks licensed by NYDFS); *Motorola Credit Corp. v. Uzan*, 2015 WL 5613077, at *2 (S.D.N.Y. Sept. 9, 2015) (rejecting argument that § 200 forced consent to general personal jurisdiction and holding that such finding would "directly contradict *Gucci*."); *Gliklad v. Bank Hapoalim B.M.*, 2014 N.Y. Misc. LEXIS 3600, at *7 (N.Y. Sup. Ct. Aug. 4, 2014) (§ 200 provides specific

jurisdiction).[7] Plaintiffs have alleged no transactions with the NFDs' offices in New York that would bring their claims within the scope of the specific jurisdiction under § 200.

Moreover, the cases Plaintiffs cite do not support a finding that the NFDs consented to jurisdiction in *this* case.[8] As *B&M Kingstone* notes, New York courts have found that "Banking Law § 200(a) only provides specific jurisdiction for a cause of action arising out of a transaction with its New York agency or agencies or branch or branches." 15 N.Y.S.3d at 323 (citing *Gliklad*, 2014 N.Y. Misc. LEXIS 3600, at *7). The courts in both *Vera* and *B & M Kingstone* found that the "arising out of" language of § 200 was met because the information in question was located in New York. *See id.* at 324; *Vera*, 91 F. Supp. 3d at 571. By contrast, Plaintiffs in this action have failed to link in any way the NFDs to alleged misconduct here.

Furthermore, in both cases*,* the courts found that foreign banks registered under § 200 were subject to jurisdiction for post-judgment "information subpoenas" seeking discovery of information held at the banks' New York branches. The court in *Vera* pointed to "the norm favoring" "broad post-judgment discovery in aid of execution"—a consideration not at play here—as the basis for finding personal jurisdiction. *Id.* at 572. In contrast, Plaintiffs here seek to impose liability, not to obtain information post-judgment in aid of execution. As the Second Circuit has observed, ordering compliance with a third-party subpoena does not necessarily imply that the same party could be haled into court in the forum as a defendant in a civil action. *See First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998) (distinguishing between the due process considerations for jurisdiction to pursue liability and jurisdiction to pursue discovery).

---

[7] Moreover, Plaintiffs' assertion that the NFDs consented to jurisdiction under N.Y. Banking Law § 200-b, Opp. at 3, 3 n.2, 8 n.13, is without merit. The language of the statute is clear that it addresses the court's power to adjudicate rather than a bank's consent to jurisdiction, and the New York Court of Appeals has squarely held that § 200-b is indeed only a grant of *subject matter jurisdiction*. *See Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank*, 98 N.Y.2d 238, 248 (2002).

[8] *Vera v. Republic of Cuba*, 91 F. Supp. 3d 561 (S.D.N.Y. 2015), *appeal dismissed on other grounds*, 802 F.3d 242 (2d Cir. 2015); *B&M Kingstone v. Mega Int'l Commercial Bank Co., Ltd.*, 15 N.Y.S.3d 318 (N.Y. App. Div. 2015).

Applying Plaintiffs' interpretation of New York's bank licensing statute to general jurisdiction would unwind the Supreme Court's holding in *Daimler* and effectively make any foreign company complying with state licensing laws subject to all-purpose personal jurisdiction everywhere it is licensed. *AstraZeneca AB v. Mylan Pharms., Inc.*, 72 F. Supp. 3d 549, 556-57 (D. Del. 2014) ("Finding mere compliance with [state registration] statutes [requiring the appointment of an agent for service] sufficient to satisfy jurisdiction would expose companies with a national presence . . . to suit all over the country, a result specifically at odds with *Daimler*."). Such an interpretation would also violate the unconstitutional conditions doctrine by requiring defendants to surrender their due process rights (guaranteed under *Daimler* and *Gucci*) in order to receive a government benefit (*i.e.,* the privilege of registering a branch in New York). *See, e.g.*, *Koontz v. St. Johns River Water Mgmt. Dist.,* 133 S. Ct. 2586, 2594 (2013). This Court should interpret the statute in a way that avoids the constitutional doubts raised by Plaintiffs' theory.[9] *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (When a statute raises "a serious doubt" as to its constitutionality, a court should "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").

Finally, Plaintiffs' argument that BTMU and SG "consent[ed] to jurisdiction in this Court," because each of them executed an ISDA Agreement with an entity that is not a plaintiff in this case, Opp. at 9, is meritless. As an initial matter, the relevant provisions of the ISDA Agreements state explicitly that the parties thereto consent to jurisdiction only "[w]ith respect to any suit, action or proceedings relating to this Agreement."[10] Because Plaintiffs are not parties to either of the specified ISDA Agreements, Plaintiffs cannot (and do not) purport to assert any claim "relating to" either agreement. *See Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, 2015 WL 4164763 at *5 (S.D.N.Y. July 10, 2015). Instead, Plaintiffs assert (without citing any precedent) that they can invoke these contractual "consent-to-jurisdiction" provisions because the ISDA

---

[9] *See Bensmiller v. E.I. DuPont de Nemours & Co.*, 47 F.3d 79, 84 (2d Cir. 1995) (eschewing statutory construction that would offend the due process clause and upholding dismissal based on lack of personal jurisdiction).

[10] *See* Hausfeld Decl. Ex. 4 (ISDA Agreement between Société Générale and Sabine Pass LNG, L.P.) and Ex. 5 (ISDA Agreement between BTMU and Wright Express Corporation).

Agreements "govern OTC derivatives *like those implicated by this action.*" Opp. at 9 (emphasis added). Courts have consistently rejected attempts by non-parties to a contract—like Plaintiffs here—to use these types of contractual provisions to establish personal jurisdiction. *See Dale v. Banque All. S.A.*, 2004 WL 2389894, at *5 (S.D.N.Y. Oct. 22, 2004) (concluding that a provision in the contract between defendant and a non-party does not constitute "blanket consent . . . to be subject to personal jurisdiction in New York in any action brought against it by a person who is not a party.").[11] This Court should reach the same result.[12]

## II.    The New Foreign Defendants Are Not Subject to Specific Personal Jurisdiction.

As Plaintiffs concede, specific personal jurisdiction requires a showing that a cause of action relates to the defendants' contacts with the forum. Opp. at 14. Rather than meeting their *prima facie* burden, Plaintiffs simply list various purported contacts that the NFDs have with the forum and rely upon blanket allegations regarding the intentions and effects of *all* Defendants' conduct. Their burden requires much more and must be met separately as to each defendant. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (*prima facie* showing requires "an averment of facts"); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Although a plaintiff's pleadings "are construed in the light most favorable to the plaintiff," *CutCo Indus. Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986), the Court need not "draw argumentative inferences in the plaintiff's favor," *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

---

[11] *See also Meyer* v. *Carnival Corp.*, 938 F. Supp. 2d 1251, 1256 (S.D. Fla. 2013) (Plaintiff "cannot enforce . . . the conferral of jurisdiction clause [in the contract] *because Plaintiff was not a party to said contract*") (emphasis added); *Stevens* v. *Reliance Fin. Corp.*, 2014 WL 631612, *6 (M.D. Ala. Feb. 18, 2014) (third party "cannot enforce a conferral of personal jurisdiction clause that is contained in a contract to which he is not a party").
[12] *See also Magdalena* v. *Lins*, 123 A.D.3d 600, 601-02 (N.Y. App. Div. 2014); *Barrett* v. *Toroyan*, 28 A.D.3d 331, 333 (N.Y. App. Div. 2006).

A.     **Plaintiffs Have Not Established a *Prima Facie* Case for Specific Personal Jurisdiction.**

1.     *Plaintiffs Have Not Alleged That the Claims Arise out of the New Foreign Defendants' Contacts with the Forum.*

Plaintiffs fail to plead facts sufficient to meet the key prong of the Supreme Court's specific jurisdiction test—that their claims "aris[e] out of or relate[] to the [NFDs'] contacts with the forum." *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011). Plaintiffs instead rely upon the "purposeful availment" language from *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985), as though that were the complete standard, and lean on the conclusion that the NFDs have "transacted massive volumes of FX instruments during the Class Period—trades at issue in this litigation." Opp. at 15. Plaintiffs fail to acknowledge that purposeful availment is only one element of the personal jurisdiction equation. *See Burger King Corp.*, 471 U.S. at 472 ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, *and the litigation results from alleged injuries that 'arise out of or relate to' those activities*.") (emphasis added). Notwithstanding their conclusory assertions to the contrary, Opp. at 15, Plaintiffs have not identified a *single* "trade at issue in this litigation" that links any of the NFDs to this forum.

The NFDs do not dispute that they (or their affiliates) have traded currency in New York or do business in New York. Crucially, however, Plaintiffs do not allege a basis for liability ***based on such conduct in the forum***.[13] While Plaintiffs claim broadly that *all* Defendants agreed to "fix" spot prices, "manipulate" benchmark rates, and to wrongfully exchange "confidential customer information," SAC ¶¶ 1-3, the SAC contains virtually no allegations of direct dealings between Plaintiffs and the NFDs, and *no* factual allegations that connect any of the NFDs to any

---

[13] Plaintiffs' chart purporting to reflect the New Defendants' New York full-time employees and Gross Notional Outstanding of FX Instruments is similarly defective. In addition to failing to demonstrate wrongful conduct by the NFDs in this forum, the chart is misleading. First, Plaintiffs fail to identify how many of the NFDs' New York employees are *foreign exchange traders*. Second, the citation to the "gross notional outstanding of FX instruments" implies the NFDs exchange these dollar amounts annually. This is incorrect, as the notional value is merely a basis for calculating interest rates on the forward foreign exchange transaction.

alleged misconduct by them in New York or the United States. *See* Defs.' Br. at 22-25 (ECF 502), and supplemental memoranda (ECF 520, 513, and 515).

Similarly, Plaintiffs' contention that the NFDs have "purposefully availed themselves of the jurisdiction" (Opp. at 16) by using New York's courts provides no basis for specific jurisdiction because the Plaintiffs do not allege that those lawsuits are in any way connected to the conduct at issue here. Plaintiffs cite *Greenberg, Inc. v. Sirtech Canada, Ltd.*,79 A.D.3d 1419 (N.Y. App. Div. 2010), but that case itself makes clear that "there must be a substantial relationship between the defendant's purposeful activities and the cause of action asserted." *Id.* at 1421.[14] Use of the forum's courts may indicate purposeful availment, but use of the courts in connection with one case does not confer *specific* personal jurisdiction for all cases.[15]

2.    *Plaintiffs Have Not Alleged That the New Foreign Defendants' Engaged in Misconduct Directed at the Forum.*

Plaintiffs argue—without citing the SAC—that the United States "is the focal point of the story and the harm suffered," and that the effects test allows for specific jurisdiction where the conduct complained of, despite occurring outside the forum, is "expressly directed at the forum." *See* Opp. at 19-20.[16] Sweeping conclusions, however, do not hide the fact that Plaintiffs have not identified a single trade or transaction involving any of the NFDs that was expressly directed at the forum and caused them injury. None of Plaintiffs' cited cases suggests that Plaintiffs' allegations about the NFDs meet these requirements. In *Calder v. Jones*, 465 U.S. 783 (1984),

---

[14] In *Greenberg*, the court had already found that the defendant had sufficient suit-related contacts with New York before considering the use of New York courts. *Id.* at 1422-23. Then the court noted that the defendant "both voluntarily participated in the federal bankruptcy proceeding to resolve a state law claim *raised by plaintiff in this action* and attempted to rely upon that settlement . . . to obtain dismissal of *plaintiff's remaining claims against him in this action*." *Id.* (emphasis added).

[15] Plaintiffs' citation to an unrelated suit involving SCB contradicts their own argument. The court in *Gosaibi* rejected the very argument cited by Plaintiffs and declined to impose personal jurisdiction because there, as here, "no element of [plaintiff's] complaint in the underlying action could have arisen from [defendant's] litigation activities in New York." *See Standard Chartered Bank v. Gosaibi*, No. 653506/11, Dkt. 163 at 3-4, 2013 N.Y. Misc. LEXIS 4379, at *2-5 (N.Y. Sup. Ct. Sept. 26, 2013).

[16] *See also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (rejecting argument that foreseeable harm alone establishes personal jurisdiction); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674-78 (2d Cir. 2013) (requiring intentional, tortious actions expressly aimed at the forum); *7 W. 57th St. Realty Co.*, 2015 WL 1514539, at *9 ("[T]he fact that harm in the forum is foreseeable . . . is insufficient[.]").

the defendants' "allegedly tortious, actions" were "expressly aimed at California" because defendants wrote an article about a specific person they knew resided in California, whom they intentionally harmed by writing the article. *Id.* at 789-90. Here, by contrast, Plaintiffs offer no facts showing any NFD engaged in any misconduct targeting any Plaintiff in the forum.

The SAC's allegations parallel the allegations in the LIBOR cases with respect to personal jurisdiction. In *7 W. 57th St.*, the plaintiff alleged that defendants agreed to fix LIBOR interest rates at particular levels, affecting the value of securities pegged to LIBOR as a benchmark. 2015 WL 1514539, at *10. Judge Gardephe held that "[b]ecause the Amended Complaint does not plead facts demonstrating that the [benchmark] manipulation was done with the express aim of causing an effect in New York, the 'effects test' is not satisfied." *Id.* at *11. Similarly, here, Plaintiffs allege that all defendants agreed to manipulate currency benchmarks, affecting the value of global currencies traded around the world priced by those benchmarks. *See, e.g.*, SAC ¶¶ 6, 10, 101-14. To the extent Plaintiffs allege "fixing of spot prices" or "exchanging key confidential information," the SAC offers no allegations of such conduct by the NFDs expressly aimed at a Plaintiff in the forum. Indeed, the *only* interaction between *any* Plaintiff and *any* NFD is a vague allegation that two plaintiffs engaged in unspecified transactions with SG, SAC ¶¶ 19-20, but Plaintiffs do not allege where or when these transactions occurred, what was traded, or that any such transaction was improper.

**B.     The Alleged Use of Electronic Communications Does Not Substantially Connect the New Foreign Defendants to the Forum.**

Plaintiffs also fail to substantially connect the NFDs to the forum and the litigation based on the use of electronic communications. Plaintiffs allege only that *other* Defendants—or *all* Defendants—targeted the United States in discussions in the so-called chatrooms. *See* Opp. at 21 (citing SAC ¶¶ 298, 300, 418). These rote allegations are insufficient because Plaintiffs do not allege specific communications or trades by the NFDs within the forum, or that the NFDs' alleged communications or trades were expressly aimed at the forum. *See Laydon v. Mizuho Bank, Ltd.*, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015) ("There is no basis to conclude

that any of the [defendants] took actions 'expressly aimed' at the United States by passively connecting to the United States via internet protocol ('IP') addresses.") (citing *Calder*, 465 U.S. at 789). The authority cited by Plaintiffs is inapposite because the SAC lacks the type of allegations cited by the courts in those cases. *See Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 818 N.Y.S.2d 164, 165-68 (N.Y. 2006) (defendant in breach of contract action (an investor) negotiated directly with a counterparty he knew was in New York, resulting in the sale of the bonds that were the subject of the action); *Two's Co. v. Hudson*, 2014 WL 903035, at *5 (S.D.N.Y. Mar. 6, 2014) (New York's long-arm statute satisfied based on defendant maintaining semi-interactive website allowing customers to purchase products to be delivered in New York).

### C.    Plaintiffs' Conspiracy Allegations Do Not Establish Specific Jurisdiction over the New Foreign Defendants.

Plaintiffs' arguments regarding the "conspiracy" theory of specific jurisdiction carry no weight after the Supreme Court's decision in *Walden*. The relevant contacts are those the "'defendant himself' creates with the forum State," and those contacts "must be with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore,* 134 S. Ct. 1115, 1121-22 (2014). The SAC's conspiracy allegations fail to satisfy either of these requirements and, tellingly, Plaintiffs provide only a cursory response to this point. *See* Defs.' Br. at 15-17.[17] Moreover, even prior to *Walden*, courts rejected the conspiracy-based theory of jurisdiction.[18] *Walden* solidified this position and courts in the post-*Walden* world have

---

[17] Plaintiffs primarily rely on a 1927 Supreme Court case regarding a criminal prosecution of individuals who were ultimately "found in the United States," which predates not only *Walden*, but also *International Shoe. See Ford v. United States*, 273 U.S. 593, 601 (1927). Moreover, the alleged conspiracy was smuggling banned liquor into the United States, so all of defendants' actions were clearly directed at the United States. *See id.* With the exception of *Beach*, all of Plaintiffs' other authorities also predate *Walden*, and some, such as *Manuel*, are cited for issues wholly unrelated to personal jurisdiction. *See U.S. v. Manuel*, 371 F. Supp.2d 404, 409 (S.D.N.Y. 2005) (criminal drug importation case quoted in relation to the power of Congress to enact penal laws with extraterritorial application). With respect to *Beach*—decided just days after *Walden*, and not addressing its new guidance—the court there, just like in *Satyam*, held that personal jurisdiction *did not exist*, for the same reason it does not exist here—in each case, the court did not find sufficient connection between the foreign defendants and specific transactions in the United States. *Beach v. Citigroup Alternative Invs. LLC*, 2014 WL 904650, at *12-13 (S.D.N.Y. Mar. 7, 2014); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 483-83 (S.D.N.Y. 2013).

[18] *See e.g., Kuraki Am. Corp. v. Dynamic Int'l of Wis. Inc.*, 2014 WL 6834226, at *2 (E.D. Wis. Dec. 3, 2014) (conspiracy based theory of jurisdiction cannot be used to 'bypass due process analysis.'" (quoting *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 80 (D.D.C. 2004)). *See also* Defs.' Br. at 15-16 & n. 12.

reinforced it. *See In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 226-27 (S.D.N.Y. 2015) (rejecting "conspiracy jurisdiction" and holding that jurisdiction requires that each entity must have engaged in affirmative acts directed at the forum). Accordingly, this Court should hold that Plaintiffs cannot establish personal jurisdiction over the NFDs on the basis of alleged acts performed by *other* defendants.

Moreover, as discussed in the pending 12(b)(6) motion, ECF 508, even if Plaintiffs' conspiracy theory of jurisdiction were valid (which it is not), the SAC fails to allege facts sufficient to establish the NFDs' participation in a conspiracy, much less a connection to the forum, a showing that even Plaintiffs acknowledge is required. *See* Opp. at 23; *Wilder v. News Corp*, 2014 WL 1315960, at *6 (S.D.N.Y. Mar. 31, 2014) (plaintiffs must allege (i) facts sufficient to establish a conspiracy, (ii) *specific facts warranting an inference that defendant was a member of that conspiracy*, and (iii) facts showing the co-conspirator committed a tortious act pursuant to the conspiracy in the forum).[19]

### D.   The Allegations Specific to Each New Foreign Defendant Fall Well Short of a Prima Facie Case of Specific Personal Jurisdiction.

#### 1.   *The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

Plaintiffs' allegations fall woefully short of establishing a substantial connection between BTMU, the forum, and the alleged misconduct in the SAC. Plaintiffs do not allege that BTMU joined any of the chatrooms with evocative names, including the "Cartel" chatroom featured in DOJ settlements, nor do they allege that BTMU engaged in chats regarding the WM/Reuters benchmark. The four alleged communications involving BTMU do not provide a basis to infer that BTMU participated in an alleged global conspiracy expressly aimed at the forum, and they do not establish that BTMU directly transacted with Plaintiffs in *any* forum. *See* SAC ¶¶ 234,

---

[19] *See also In re Aluminum Warehousing*, 90 F. Supp. 3d at 234 (Plaintiffs' allegation that defendant was "deeply involved in the conspiracy . . . is not enough to establish a prima facie case of jurisdiction over all members of that committee. Plaintiffs would need to allege more. They would need to allege and have facts supporting Hawkins taking specific actions or being a participant in a particular meeting . . . in which the unlawful conspiracy was furthered in some manner.").

146, 150, 152; Defs.' Br. at 22-23.

2. *Société Générale*

Plaintiffs do not allege that any purported trading with SG in the United States was improper, and simply trading with a Plaintiff residing in the United States would not confer specific personal jurisdiction over SG. *See Walden*, 134 S. Ct. at 1126 (plaintiff's contacts not relevant). The SAC does not allege that SG participated in any of the suggestively named chat rooms, and the two alleged communications—in addition to failing to evidence improper behavior—do not demonstrate that SG expressly aimed any alleged conduct at the forum, or that any Plaintiff in the forum was harmed. *See* SAC ¶¶ 170, 215; Defs.' Br. at 23-24.

3. *Standard Chartered PLC*

Plaintiffs' generalized allegations regarding the sale of FX instruments in New York do not make out a *prima facie* case that SCPLC's subsidiary SCB participated in allegedly improper conduct in the forum or that any Plaintiff in the forum was harmed by SCB's sale of FX instruments. In fact, no Plaintiff alleges that it transacted with SCB at all. Plaintiffs make no attempt to connect the two SCB individuals mentioned in the SAC to any harm to Plaintiffs. *See SAC* ¶¶ 362-63. The chats do not reflect an intention on SCB's part to engage in manipulative or collusive trading, let alone to target the forum. *See SAC* ¶¶ 163, 168; Defs.' Br. at 24-25.

**E.    Even If Plaintiffs Had Alleged That an Improper Communication or Trade Occurred in the Forum, Jurisdiction Would Attach Only to Claims Arising from That Trade or Communication.**

Plaintiffs fail to establish specific personal jurisdiction over any NFD with respect to any claim. But even if the Court were inclined to find specific personal jurisdiction on the basis of a particular allegedly improper communication or trade by an NFD, the Court should limit the exercise of jurisdiction—and the scope of any claim—to the alleged injury resulting from that specific communication or trade. "A plaintiff must establish the court's jurisdiction with respect to *each* claim asserted." *Sunward Elecs., Inc.*, 362 F.3d at 24 (emphasis in original). A claim encompasses the alleged improper conduct *and* the resulting harm done. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 463 (S.D.N.Y. 2014) ("*LIBOR III*") ("a

CEA claim brought by private plaintiffs pursuant to section 22 is focused *both* on defendants' conduct *and* on whether that conduct caused plaintiffs' injury") (emphasis in original).

Consequently, specific jurisdiction attaches only to the specific contacts with the forum and the resulting injury from those contacts, not other injuries lacking the requisite substantial connection between the NFDs and the forum. *See LIBOR IV*, 2015 WL 6243526 at *27 ("Thus, for example, a panel bank that cooperated with a *request made by a trader in New York* would be subject to personal jurisdiction in New York in connection with a claim *arising out of that request.*") (emphasis added); *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 171-72 (2d Cir. 2013) ("It should hardly be unforeseeable to a bank that selects and makes use of a particular forum's banking system that it might be subject to the burden of a lawsuit in that forum for *wrongs related to, and arising from, that use.*") (discussing specific jurisdiction over claims resulting from particular wire transfers through New York) (emphasis added).

Because Plaintiffs have failed to establish a nexus between the NFDs' contacts with the forum and any causes of action, specific personal jurisdiction does not exist and the claims against the NFDs must be dismissed.[20]

## III.  Jurisdictional Discovery, and Further Amendments, Are Inappropriate.

Recognizing that they have not plausibly alleged facts supporting personal jurisdiction over the NFDs, Plaintiffs belatedly suggest the need for jurisdictional discovery. Jurisdictional discovery, however, should be granted only where plaintiffs have made a threshold showing of personal jurisdiction. *See Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996); *Laydon*, 2015 WL 1515358, at *7 (denying jurisdictional discovery); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) ("Since [plaintiffs] did not establish a prima facie case that [the

---

[20] In addition, exercising personal jurisdiction over the NFDs would be *inconsistent* with notions of fair play and substantial justice and principles of international comity. The Supreme Court has held that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 115 (1987). "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Id.* at 114. Pursuant to the principles of *Daimler* and *Asahi*, it would be unreasonable for Plaintiffs to obtain personal jurisdiction over federal claims against the NFDs.

court] had jurisdiction over [defendant], [the court] did not err in denying discovery."). Plaintiffs

have provided no plausible allegations supporting specific jurisdiction, so discovery at this stage

would be an inappropriate "fishing expedition." *NovelAire Techs., L.L.C. v. Munters AB*, 2013

WL 6182938, at *13 (S.D.N.Y. Nov. 21, 2013).

      Plaintiffs possess extensive information from a variety of public sources and government

investigations. *See In re Aluminum Warehousing*, 90 F. Supp. 3d at 239-40 (denying

jurisdictional discovery where "plaintiffs have had the benefit of the massive discovery

conducted by various governmental agencies and the U.S. Congress, and they have pointed the

Court to thousands of pages of such materials"). When jurisdictional discovery was raised during

the October 22, 2015 conference in this case, Plaintiffs stated that they were prepared to stand on

their allegations and that discovery would not be necessary.[21] *See* Hr'g Tr. at 7:2-12 (Oct. 22,

2015), ECF 488 (the Court: "I would think that you would have information so that you could

proceed with motions at this point." Mr. Burke: "We would be prepared to go forward on motion

practice, your Honor."). Accordingly, the Court ruled: "I am not going to allow any personal

jurisdiction discovery . . . ." *Id.* Plaintiffs should not be permitted to backpedal at this stage.[22]

## CONCLUSION

      For the foregoing reasons and those set forth in the NFDs' moving memorandum and

supplemental memoranda accompanied by declarations and exhibits, ECF 502, 513, 515, and

520, the SAC should be dismissed with prejudice for lack of personal jurisdiction over the NFDs.

---

[21] *See Advance Coating Tech., Inc. v. LEP Chem., Ltd.*, 142 F.R.D. 91, 96 (S.D.N.Y. 1992) (noting that at a previous conference before the court, "plaintiffs were given the option of proceeding to discovery and a hearing or proceeding on papers," and holding that because plaintiffs chose to "proceed on the papers," their subsequent request for jurisdictional discovery was denied).

[22] Plaintiffs alternatively seek to amend the SAC yet again; a futile request that should be denied. The Court noted that "it would be a waste of time for us to have motions to dismiss" if the Plaintiffs simply intended to again move to amend. Hr'g Tr. at 10:24-25 (Oct. 22, 2015). Plaintiffs stated that they had "no intention to seek leave to amend the complaint," and on that basis the Court set a briefing schedule. *Id.* at 11:5-10. Plaintiffs have amended their Complaint twice, and this is the second full round of briefing to dismiss. "'Rule 15(a) is not a shield against dismissal to be invoked as either a makeweight or a fallback position in response to a dispositive motion.'" *St. Clair Shores Gen. Emps. Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 316 (S.D.N.Y. 2010). Even now, Plaintiffs do not explain how further amendments would correct the deficiencies of the SAC. *Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250, 256 (S.D.N.Y. 1998) (denying motion to amend a once amended complaint where plaintiff did not indicate which allegations he would amend nor how amendment would correct deficiencies).

Dated: New York, New York
       February 2, 2016

                                 Respectfully submitted,


/s/ Andrew C. Finch                          /s/ Andrew W. Stern
Andrew C. Finch                              Andrew W. Stern
Kenneth A. Gallo                             Alan M. Unger
Michael E. Gertzman                          Nicholas P. Crowell
PAUL, WEISS, RIFKIND, WHARTON &              SIDLEY AUSTIN LLP
GARRISON LLP                                 787 Seventh Avenue
1285 Avenue of the Americas                  New York, New York 10019
New York, New York 10019                     astern@sidley.com
afinch@paulweiss.com                         aunger@sidley.com
kgallo@paulweiss.com                         ncrowell@sidley.com
mgertzman@paulweiss.com                      Telephone: (212) 839-5300
Telephone: (212) 373-3000                    Fax: (212) 839-5599
Fax: (212) 757-3990

                                             *Attorneys for Defendant Standard Chartered*
*Attorneys for Defendant The Bank of Tokyo-* *PLC*
*Mitsubishi UFJ, Ltd.*



/s/ James R. Warnot, Jr.
James R. Warnot, Jr.
Patrick C. Ashby
LINKLATERS LLP
1345 Avenue of the Americas, 19th Floor
New York, New York 10105
james.warnot@linklaters.com
patrick.ashby@linklaters.com
Telephone: (212) 903-9000
Fax: (212) 839-5599

*Attorneys for Defendant Société Générale*