# EXHIBIT 4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

## **[PROPOSED] PLAN OF DISTRIBUTION**

**TABLE OF CONTENTS**

I.      DEFINED TERMS ................................................................................................. 1

II.     SUMMARY OF ALLEGATIONS ....................................................................... 7

III.    THE NET SETTLEMENT FUND FOR DISTRIBUTION ................................. 8

IV.     ADMINISTRATIVE AND DISTRIBUTION PROCEDURES ........................... 9

        A.      Administrative Procedures ...................................................................... 9

        B.      Distribution Procedures ......................................................................... 12

V.      CLAIMANTS' OPTIONS FOR SUBMITTING CLAIMS .............................. 13

        A.      Option 1: Estimated Claim Option ........................................................ 13

        B.      Option 2:  Documented Claim Option ................................................... 16

        C.      Notifications to Claimants ..................................................................... 18

VI.     CALCULATING SETTLEMENT TRANSACTION VOLUME ....................... 19

VII.    CALCULATING ELIGIBLE PARTICIPATION AMOUNTS .......................... 21

        A.      Currency Pair Traded ............................................................................. 22

        B.      Trade Size .............................................................................................. 22

VIII.   ALLOCATION  BETWEEN  DIRECT  SETTLEMENT  CLASS  AND
        EXCHANGE-ONLY SETTLEMENT CLASS ................................................... 23

IX.     CALCULATING *PRO RATA* ADJUSTMENTS ............................................. 24

Class Plaintiffs are advised in the formulation of the procedures and methodology set forth in this [Proposed] Plan of Distribution by Kenneth Feinberg, the Court-appointed Settlement Administrator.  Mr. Feinberg is a leading specialist in mediation and alternative dispute resolution and has served as the fund administrator for many of the nation's most widely known disputes and tragic disasters.  Mr. Feinberg's team includes experts in formulating distribution plans in a variety of contexts, including antitrust class actions.  The Plan of Distribution also includes input from Class Counsel and Allocation Counsel and their respective consulting experts, whose work continues in order to ensure fairness for all members of the Settlement Classes.

## I.    DEFINED TERMS

**"Allocation Counsel"** means the counsel Class Counsel designated to separately advocate for the interests of the Direct Settlement Class and the Exchange-Only Settlement Class to achieve an equitable allocation of the Net Settlement Fund.

**"Authorized Claimant"** means any Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Settlement Agreements and Plan of Distribution approved by the Court.

**"Claimant"** means a Person who submits a Claim Form.

**"Claims Bar Date"** means the deadline established by the Court in the Order Approving the Form and Manner of Notice of Settlements and Preliminarily Approving the Plan of Distribution by which Class Members must submit Claim Forms to the Claims Administrator.

**"Claim Deficiency Notice"** means the notice sent by the Claims Administrator to a Claimant whose Claim Form is deficient in one or more ways such as, for example, failure to provide required information or documentation.

**"Claims Administrator"** means Garden City Group.

**"Claim Form"** means the proof of claim and release form provided to or requested by members of the Settlement Classes.

**"Class Counsel"** means Christopher M. Burke of Scott+Scott, Attorneys at Law, LLP and Michael D. Hausfeld of Hausfeld LLP.

**"Class Member"** means a Person who is a member of one of the Settlement Classes and has not timely and validly excluded himself, herself, or itself in accordance with the procedures approved by the Court.

**"Class Plaintiffs"** are Aureus Currency Fund, L.P., The City of Philadelphia, Board of Pensions and Retirement, Employees' Retirement System of the Government of the Virgin Islands, Employees' Retirement System of Puerto Rico Electric Power Authority, Fresno County Employees' Retirement Association, Haverhill Retirement System, Oklahoma Firefighters Pension and Retirement System, State-Boston Retirement System, Syena Global Emerging Markets Fund, LP, Tiberius OC Fund, Ltd., Value Recovery Fund L.L.C., and United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund, J. Paul Antonello, Marc G. Federighi, Thomas Gramatis, Doug Harvey, Izee Trading Company, John Kerstein, Michael Melissinos, Mark Miller, Robert Miller, Richard Preschern d/b/a Preschern Trading, Peter Rives, Michael J. Smith, Jeffrey Sterk, Kimberly Sterk, and Systrax Corporation.

**"Court"** means the United States District Court for the Southern District of New York.

**"Direct Settlement Class"** means all Persons who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such

Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories. Specifically excluded from the Direct Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class. Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.

"**Eligible Participation Amount**" means the amount of an Authorized Claimant's claim before any *pro rata* adjustments are applied and is equal to the Claimant's Settlement Transaction Volume, as described in §VI, *infra*, and as adjusted by the Relative Damages Factors described in §VII, *infra*.

"**Exchange-Only Settlement Class**" means all Persons who, between January 1, 2003 and December 15, 2015, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange. Specifically excluded from the Exchange-Only Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released

Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Exchange-Only Settlement Class.  Also excluded from the Exchange-Only Settlement Class are: (i) any judicial officer presiding over this Action and any member of his/her immediate family and judicial staff, and any juror assigned to this Action; and (ii) any Person who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator, where such Person was either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.

"**FX Exchange-Traded Instruments**" means any and all FX Instruments that were listed for trading through an exchange, including, but not limited to, FX futures and options on FX futures.

"**FX Instruments**" means FX spot transactions, forwards, swaps, futures, options, and any other FX instrument or FX transaction the trading or settlement value of which is related in any way to FX rates.

"**Investment Vehicles**" means any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which a Defendant has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but of which a Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

"**Net Settlement Fund**" means the Settlement Fund less payment of the Fee and Expense Award, costs and expenses reasonably and actually incurred in connection with providing Class

Notice and the administration of the settlement, Taxes and tax expenses, and any other Court-approved fees and expenses.

"**Non-Settling Defendants**" means The Bank of Tokyo Mitsubishi UFJ Ltd.; Credit Suisse AG, Credit Suisse Group AG and Credit Suisse Securities (USA) LLC; Deutsche Bank Securities Inc. and Deutsche Bank AG; Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley & Co. International PLC; RBC Capital Markets LLC; Société Générale S.A.; and Standard Chartered Bank.

"**Person**" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

"**Settlement Administrator**" means Kenneth Feinberg.

"**Settlement Agreements**" and "**Settlements**" means the Stipulation and Agreement of Settlement with Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated; Stipulation and Agreement of Settlement with Barclays Bank PLC and Barclays Capital Inc.; Stipulation and Agreement of Settlement with BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.; Stipulation and Agreement of Settlement with Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.; Stipulation and Agreement of Settlement with The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.; Stipulation and Agreement of Settlement with HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc.; Stipulation and Amended Agreement of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; Stipulation and Agreement of Settlement with The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc.; and Stipulation and Amended Agreement of Settlement

with UBS AG, UBS Group AG, and UBS Securities LLC – which were preliminarily approved by the Court on December 15, 2015.

"**Settlement Class**" and "**Settlement Classes**" mean, collectively, the Direct Settlement Class and the Exchange-Only Settlement Class, unless otherwise indicated.

"**Settlement Class Period**" means the period of time commencing on January 1, 2003 and continuing through December 15, 2015, inclusive.

"**Settlement Fund**" means the $2,009,075,000 in payments made pursuant to the Settlement Agreements by Settling Defendants and held in the escrow accounts established pursuant to the Settlement Agreements, including all monies held therein and interest earned thereon.

"**Settlement Transaction Volume**" means a Class Member's eligible transaction volume in FX Instruments and/or FX Exchange-Traded Instruments, as adjusted by the Conversion Ratios described in §VI, *infra*.

"**Settling Defendants**" means Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated; Barclays Bank PLC and Barclays Capital Inc.; BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.; Citigroup Inc., Citicorp, Citigroup Global Markets Inc., and Citibank, N.A.; The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.; HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA), Inc.; JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc.; and UBS AG, UBS Group AG, and UBS Securities LLC.

Unless otherwise defined herein, all other capitalized terms have the same meaning as set forth in the Settlement Agreements.

## II.     SUMMARY OF ALLEGATIONS

Class Plaintiffs allege that Defendants conspired to fix prices in the FX market in violation of Sections 1 and 3 of the Sherman Antitrust Act, 15 U.S.C. §§1, 3, and that Defendants manipulated the FX market in violation of the Commodity Exchange Act, 7 U.S.C. §§1, *et seq.* Class Plaintiffs allege that Defendants carried out collusive and manipulative conduct in the FX market as part of a single or overarching, continuous conspiracy effected through multiple devices.

Class Plaintiffs allege that Defendants conspired to fix the bid-ask spreads that Defendants quoted to members of the Settlement Classes. The bid-ask spread is the difference between the rate at which a Defendant indicated it would buy a currency and the rate at which a Defendant would sell a currency. Class Plaintiffs allege that Defendants discussed and agreed to fix bid-ask spreads, primarily through communications in chat rooms but also by other means. The conspiracy to fix bid-ask spreads is alleged to have reduced competition in the FX market and artificially increased bid-ask spreads, with the result that Class Members paid more for currencies they purchased and received less for currencies they sold than they would have in a competitive market.

Another conspiratorial device alleged in the Complaint involved rigging FX Benchmark Rates paid by members of the Settlement Class. FX Benchmark Rates are rates that are published at certain times during the day. Like the bid-ask spreads, FX Benchmark Rates are prices at which Defendants offered to and did transact with members of the Settlement Classes. The most widely used FX Benchmark Rates are the WM/Reuters Closing Spot Rates, which for

the most widely traded currency pairs, were set at 4:00:00 p.m. London time using median prices of actual trades done in the market on certain venues between 3:59:30 p.m. and 4:00:30 p.m. London time.  As with bid-ask spreads, Class Plaintiffs allege Defendants shared confidential order and trade information to collude with respect to their trading positions and trading strategy to fix the FX Benchmark Rates.  Such collusive trading strategies included front-running client orders, "banging the close" (*i.e.*, breaking up large orders into small trades immediately before and during the setting of FX Benchmark Rates), and other tactics.

Other alleged conspiratorial devices used to fix prices in the FX market include triggering clients' stop loss and limit orders, working client limit orders at levels better than the limit order price, and front-running customer orders throughout the trading day.

As a result of this multi-faceted conduct carried out as part of a single conspiracy, Class Plaintiffs allege that members of the Settlement Classes paid supra-competitive prices for FX Instruments and FX Exchange-Traded Instruments.  Defendants deny that the allegations made against them in the lawsuit have merit.

## III.    THE NET SETTLEMENT FUND FOR DISTRIBUTION

Settling Defendants have agreed to settle the above-described claims and have paid $2,009,0750,000 into the Settlement Fund, pursuant to Settlement Agreements reached in the Action.  If the Settlement Agreements are approved, the Net Settlement Fund will be distributed to all Authorized Claimants in accordance with the Plan of Distribution approved by the Court. No monies will revert to Settling Defendants if there is final approval of the Settlement Agreements by the Court.

The Net Settlement Fund consists of the $2,009,075,000 Settlement Fund less payment of the Fee and Expense Award, costs and expenses reasonably and actually incurred in connection

with providing Class Notice and the administration of the settlement of the settlement, Taxes and tax expenses, and any other Court-approved fees and expenses.

## IV.  ADMINISTRATIVE AND DISTRIBUTION PROCEDURES

The proceeds of the Net Settlement Fund will be paid to Authorized Claimants who submit valid Claim Forms by the Claims Bar Date.  This section describes the administrative procedures that will apply to determine eligibility and the effect of Class Members submitting (or not submitting) Claim Forms.  This section then discusses the procedures for distributing funds to Authorized Claimants.

### A.  Administrative Procedures

To be eligible to submit a Claim Form, a Claimant must be a member of one of the Settlement Classes.  To determine if a Claimant is a member of one of the Settlement Classes, the following conditions apply:

(1)  To be a member of the Direct Settlement Class, a Person must have, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator, and such Persons must also either (a) be domiciled in the United States or its territories, or (b) if domiciled outside the United States or its territories, have transacted FX Instruments in the United States or its territories.

(2)  To be a member of the Exchange-Only Settlement Class, a Person must have, between January 1, 2003 and December 15, 2015, entered into an FX Exchange-Traded Instrument, and such Person must also either (a) be domiciled in the United States or its territories, or (b) if domiciled outside

9

the United States or its territories, entered into a FX Exchange-Traded Instrument on a U.S. exchange.

(3)     In considering whether a trade by a non-U.S. domiciled Person was transacted in the United States, the Claims Administrator will consider all information provided by the Person, including, to the extent this information is known, where a trade was priced, placed, booked, financed, cleared, and/or settled.

(4)     The Settlement Classes also exclude certain Persons, such as Defendants and certain of their representatives and affiliates, as well as their co-conspirators.   Investment Vehicles in which a Defendant holds a non-majority interest or with which a Defendant has an advisory relationship, however, are not excluded.

(5)     Any member of the Direct Settlement Class who traded both over-the-counter ("OTC") FX Instruments and FX Exchange-Traded Instruments is a member of the Direct Settlement Class.   All members of the Direct Settlement Class are excluded from the Exchange-Only Settlement Class.

For purposes of determining whether a Claimant is entitled to be treated as an Authorized Claimant, the following conditions apply:

(1)     Each Class Member wishing to receive proceeds from the Net Settlement Fund must submit a Claim Form, which, *inter alia*, releases all Released Claims against all Released Parties, is signed under penalty of perjury by an authorized Person, and is supported by such documents or proof as set out in the Claim Form.

(2)     Any Class Member who does not submit a Claim Form by the Claims Bar Date will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will otherwise be bound by the terms of the Settlement Agreements, including the terms of the Final Judgments and Orders of Dismissal to be entered in the Action and the releases provided for therein, and will be enjoined from, and, upon final approval of the Settlement Agreements, barred from bringing any action against any of the Released Parties concerning the Released Claims.

(3)     Each Claim Form must be submitted to and reviewed by the Claims Administrator, which will determine whether the Claim Form is in accordance with the Settlement Agreements and any applicable orders of the Court, and the extent, if any, to which each claim will be allowed, subject to review by the Court.

(4)     Claim Forms that do not meet the submission requirements may be rejected. Prior to rejection of a Claim Form, the Claims Administrator will provide the Claimant with a Claims Deficiency Notice.  The Claims Deficiency Notice will, in a timely fashion and in writing, notify all Claimants whose Claim Forms the Claims Administrator proposes to reject, in whole or in part, and set out the reasons therefor.

(5)     If any Claimant whose Claim Form has been rejected, in whole or in part, desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the Claims Deficiency Notice, serve on the Claims Administrator a notice and statement of reasons, indicating the

11

> Claimant's grounds for contesting the rejection, along with any supporting documentation.

(6)   If a dispute concerning a claim cannot be resolved[1], Class Counsel will thereafter present such disputes to the Court in Class Plaintiffs' motion for a distribution order (discussed at §IV.B., *infra*).

## B.   Distribution Procedures

It is anticipated that there will be a holdback of the Net Settlement Fund and at least two (and possibly more) distributions.  The holdback and multiple distributions will ensure that Authorized Claimants in this first round of notice and any future claimants who submit valid claim in subsequent rounds of notice are treated equitably in the distribution.  The amount of this holdback[2] will be disclosed when Class Plaintiffs move for a distribution order.

In the event additional settlement(s) are reached (or a judgment is entered), following a subsequent round of notice, submission of claims by Class Members, and approvals by the Court, a distribution – taking into account additional funds, any remaining holdback amount, and any additional transaction data – would occur.  The holdback and multiple distributions are to ensure that a clawback of previously-distributed funds to Authorized Claimants would not be required.

In the event of no additional settlements (or no judgment is entered), the holdback amount will be reallocated in a Court-approved, equitable fashion.  Redistributions will be repeated until any remaining balance in the Settlement Fund is *de minimis*.

---

[1]      Class Counsel will have the right, but not the obligation, to advise the Claims Administrator to waive what Class Counsel reasonably deems to be technical defects in any Claim Forms submitted, including, without limitation, failure to submit a document by the Claims Bar Date, in the interests of achieving substantial justice.

[2]      The holdback amount will be determined using standard Monte Carlo estimation techniques.

No distribution resulting from this first round of notice will occur until after the Effective Date and after: (1) all timely Claim Forms have been processed and evaluated by the Claims Administrator; (2) all Claimants whose Claim Forms have been rejected or disallowed, in whole or in part, have been served with a Claims Deficiency Notice, and all such Claimants have had an opportunity to respond and/or to cure any deficiencies; (3) all objections with respect to all Claims Deficiency Notices have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (4) all matters with respect to the Fee and Expense Application have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (5) all fees and costs of claims administration have been paid; and (6) the Court has entered an order authorizing a distribution.

Class Plaintiffs request that the timing of subsequent distributions be left to the discretion of the Settlement Administrator, subject to the approval of the Court.  Because the amount of information available to the Settlement Administrator will increase over time, this flexibility would enable the Settlement Administrator to implement an efficient and equitable distribution accounting for changing circumstances.

## V.     CLAIMANTS' OPTIONS FOR SUBMITTING CLAIMS

This section describes the two options Claimants will have when submitting their Claim Forms.  Under both options, an Authorized Claimant's payment amount is his, her, or its "Eligible Participation Amount," as adjusted by any *pro rata* reductions based on claims rates. The calculation of Eligible Participation Amount is described in §§VI and VII, *infra*.

### A.     Option 1: Estimated Claim Option

This option will allow the Claimant to accept a payment amount calculated by the Claims Administrator based on estimates of the Claimant's "Settlement Transaction Volume" using

transaction data produced by Settling Defendants.  The Estimated Claim Option is not available to Claimants who traded with Non-Settling Defendants only.[3]  *Note:  **Claimants with transactions in FX Exchange-Traded Instruments (including FX futures and options on FX futures) must submit documentation of such transactions, whether they are in the Direct Settlement Class or the Exchange-Only Settlement Class***.

The methodology for Calculating Eligible Participation Amount under the Estimated Claim Options is described below.

Settling Defendants have produced transaction data generally covering the time period January 1, 2009 to December 15, 2015; some of the Settling Defendants have produced data for additional years, and others have produced data for fewer years.  For a Claimant submitting a claim under the Estimated Claim Option, the Claims Administrator will:

(1)   Extract the Claimant's transaction data available from the data submitted by Settling Defendants.

(2)   Estimate the Claimant's transaction volume with Settling Defendants for those years not covered by the data submitted by Settling Defendants, relying on an analysis of the data produced by Settling Defendants, including analysis of the propensity of Class Members to trade with multiple banks and in multiple years.

(3)   Estimate the Claimant's transaction volume with Non-Settling Defendants for the entire Settlement Class Period relying on an analysis of the data produced by Settling Defendants, including analysis of the propensity of Class Members to trade with multiple banks and in multiple years.

---

[3]      Claimants who traded with Non-Settling Defendants only will be required to submit their claim under Option 2 (Documented Claim Option), as discussed in §V.B., *infra*.

(4)   If applicable, using claimant-submitted records of FX Exchange-Traded Instruments, calculate the Claimant's transaction volume in such instruments based on the documentation submitted by the Claimant.  If any volumes submitted by Claimants are rejected, the Claims Administrator will send the Claimant a Claim Deficiency Notice, and the Claimant will have an opportunity to respond and/or cure.  Additionally, such Claimants will be required to provide the names of their Futures Commission Merchants ("FCMs") and associated accounts via the Claim Form, which Class Counsel and/or Claims Administrator may use, if necessary, to aid in acquiring supplemental transaction data from the Chicago Mercantile Exchange ("CME") or ICE Futures U.S. ("ICE Futures") to help resolve deficient claims and/or verify claims.

(5)   If necessary, convert values into USD.

(6)   Adjust the Claimant's transaction volume as described in §VI, *infra*, to yield the Claimant's Settlement Transaction Volume.

(7)   Adjust the Claimant's Settlement Transaction Volume as described in §VII, *infra*, to yield the Claimant's Eligible Participation Amount.

(8)   Determine the Claimant's payment amount by multiplying the Net Settlement Fund amount times the Claimant's share of total Eligible Participation Amounts, making any required *pro rata* adjustments, as described in §§VIII and IX, *infra*.

(9)   Determine those Claimants with estimated compensation of $10 or less who will be offered a *De Minimis* Payment of $10 (the *De Minimis* Payment

amount may be adjusted to take into account additional data to be submitted by Settling Defendants and additional analysis by Class Counsel).

(10)   Determine those Claimants with estimated compensation of $250 or less (but more than $10) who will be offered an Automatic Payment of $250 (the Automatic Payment amount may be adjusted to take into account additional data to be submitted by Settling Defendants and additional analysis by Class Counsel).

(11)   Claimants who have not been determined to fall within the *De Minimis* Payment or Automatic Payment will be offered a *Pro Rata* Share Payment (determined by the calculation in ¶(8) of this section, *supra*) of more than $250 (as noted in ¶(10), *supra*, the Automatic Payment Amount of $250 may be adjusted).

## B.   Option 2:  Documented Claim Option

This option will require the Claimants to fully document their eligible transaction volume using their own records (or records obtained by them from other sources) and to submit such records to the Claims Administrator.  The Documented Claim Option is designed for Claimants with high transaction volumes and accessible trading records.  ***Note:  Claimants with transactions in FX Exchange-Traded Instruments (including FX futures and options on FX futures) must submit documentation of such transactions, whether they are in the Direct Settlement Class or the Exchange-Only Settlement Class.***

The methodology for calculating Eligible Participation Amounts under the Documented Claim Options is described below.

Claimants selecting the Documented Claim Option will be required to electronically submit to the Claims Administrator records of their eligible transactions volumes in FX Instruments and FX Exchange-Traded Instruments using the template available on the Settlement Website (WWW.FXANTITRUSTSETTLEMENT.COM).   Using the Claimant-submitted records, the Claims Administrator will:

(1) Calculate the Claimant's transaction volume based on the documentation submitted by the Claimant.  If any volumes submitted by Claimants are rejected, the Claims Administrator will send the Claimant a Claim Deficiency Notice, and the Claimant will have an opportunity to respond and/or cure.  Additionally, such Claimants will be required to provide the names of their FCMs and associated accounts via the Claim Form, which Class Counsel and/or Claims Administrator may use, if necessary, to aid in acquiring supplemental transaction data from CME or ICE Futures to help resolve deficient claims and/or verify claims.

(2) If necessary, convert values into USD.

(3) Adjust the Claimant's transaction volume as described in §VI, *infra*, to yield the Claimant's Settlement Transaction Volume.

(4) Adjust the Claimant's Settlement Transaction Volume as described in §VII, *infra*, to yield the Claimant's Eligible Participation Amount.

(5) Determine the Claimant's payment amount by multiplying the Net Settlement Fund amount times the Claimant's share of total Eligible Participation Amounts, making any required *pro rata* adjustments, as described in §§VIII and IV, *infra*.

(6)   Determine those Claimants with estimated compensation of $10 or less who will be offered a *De Minimis* Payment of $10 (the *De Minimis* Payment amount may be adjusted to take into account additional data to be submitted by Settling Defendants and additional analysis by Class Counsel).

(7)   Determine those Claimants with estimated compensation of $250 or less (but more than $10) who will be offered an Automatic Payment of $250 (the Automatic Payment amount may be adjusted to take into account additional data to be submitted by Settling Defendants and additional analysis by Class Counsel).

(8)   Claimants who have not been determined to fall within the *De Minimis* Payment or Automatic Payment will be offered a *Pro Rata* Share Payment (determined by the calculation in ¶(5) of this section, *supra*) of more than $250 (as noted in ¶(7), *supra*, the Automatic Payment Amount of $250 may be adjusted).

**C.   Notifications to Claimants**

After a Claimant submits a Claim Form (whether under Option 1 (Estimated Claim Option) or Option 2 (Documented Claim Option)), the Claims Administrator will review the Claim Form, and make all the calculations required to determine what resolution category a Claimant falls within (*De Minimis* Payment, Automatic Payment, or *Pro Rata* Share Payment). The Claims Administrator will then provide the Claimant with a written notice that includes the following information about the Claimant's potential claim:

(1)   The Claimant's resolution category (*De Minimis* Payment, Automatic Payment, or *Pro Rata* Share Payment);

(2)   The scope of the data produced by Settling Defendants and/or the Claimant (or, where applicable, the data obtained from CME or ICE Futures) on which the Claims Administrator's estimated determination was based (*e.g.*, years, types of trades included, and/or any other limitations on the data);

(3)   The modifications made to the Claimant's transaction volumes to produce a Settlement Transaction Value and Eligible Participation Amount, as described in §§VI and VII, *infra*);

(4)   That the Claims Administrator's calculations are subject to *pro rata* adjustments based on the claims rate; and

(5)   If the Claimant has not already submitted a Claim under Option 2 (Documented Claim Option), the Claimant may do so after being advised of the foregoing information.

## VI.   CALCULATING SETTLEMENT TRANSACTION VOLUME

This section defines the types of FX Instruments and FX Exchange-Traded Instruments that Claimants may have traded during the Settlement Class Period.  Following each definition, the section discusses how Claimants' transaction volumes, involving these different types of instruments, will be adjusted by a "Conversion Ratio" to produce a "Settlement Transaction Value."  The Settlement Transaction Value facilitates the application of "Relative Damage Factors" to produce an "Eligible Participation Amount," as described in §VII, *infra*.

(1)   ***FX spot transactions***: An agreement to exchange sums of currency at an agreed-on exchange rate on a value date that generally is within two bank business days' time, traded OTC.  For FX spot transactions, the notional

value of the transaction needs no conversion before the application of the Relative Damage Factors.  The Conversion Ratio will be 1.0.

For all other instruments, including FX forwards, FX swaps, OTC FX options, FX futures, and options on FX futures, the transaction values need to be converted by a Conversion Ratio to facilitate calculation of an Eligible Participation Amount.

(2)   ***FX forwards***: An agreement to exchange sums of currency at an agreed-on exchange rate on a value date that will usually be in more than two bank business days' time, traded OTC.  The exchange rate for an FX forward transaction is called the outright forward.  This category also includes the outright forward component of FX swaps and non-deliverable forwards ("NDFs"), which are cash-settled between two counterparties with no exchange of principal.  The Conversion Ratio for FX forwards will be close to 1.0.

(3)   ***FX swaps***: An agreement to buy and sell one currency against another currency with defined rates of exchange and on two defined dates, traded OTC.  This category includes FX swaps and non-deliverable forward swaps ("NDF swaps").   FX swaps give rise to claim value when the structure of an FX swap creates an FX forward risk; the FX forward risk component of the FX swap will be treated as an FX forward under ¶(2), *supra*.

(4)   ***OTC FX options***:  Options contracts give the buyer of the option the right, but not the obligation, to buy or sell a defined amount of one currency in exchange for another currency at a specified rate, during a specified time, traded OTC.  An option's delta is its sensitivity to a change in price in the

underlying exchange rate.  The relevant amount is therefore the face value of a live traded OTC FX option, multiplied by its delta.  The Conversion Ratio will be significantly less than 1.0.

(5) **_FX futures_**:  Standardized contracts trading on an exchange and calling for delivery of a specified quantity of a specified currency at a defined rate on a specified date.  Because FX futures are mechanically similar to FX forwards (but are traded in standard contracts on exchanges), the Conversion Ratio for FX futures will be close to 1.0.

(6) **_Options on FX futures_**:  Standardized contracts trading on an exchange, and upon exercise, calling for the establishment of an FX futures position.  Options on FX futures will be treated similarly to live traded OTC FX options.  The Conversion Ratio will be significantly less than 1.0.

(7) **_Other FX products_**:  These are other FX products derived from the above-listed products.  A small volume of non-standard FX structures is also possible.  Other FX products will be decomposed into the above-listed individual instruments where possible, and the Conversion Ratio applicable to the underlying instruments will be applied.  The methodology of breaking more complex products into component parts will cover a large portion of eligible structured products; however, there may be small volumes of non-standard FX structures that may not break down this way.

## VII.   CALCULATING ELIGIBLE PARTICIPATION AMOUNTS

In §VI, *supra*, the Claimant's Settlement Transaction Volume was defined.  Because not every unit of the Claimant's Settlement Transaction Volume was equally damaged, it is

necessary to account for certain transaction characteristics that affect damages. These adjustments for transaction characteristics are called "Relative Damage Factors" and include currency pair traded and trade size. The Claimant's Settlement Transaction Volume, as adjusted by the Relative Damage Factors results in the Claimant's Eligible Participation Amount.

### A.      Currency Pair Traded

This Relative Damage Factor recognizes the effect of the liquidity of a currency pair on damage. In general, a liquid market is a market with many bids and asks (offers to trade), low spreads, and low volatility, and therefore, changes in supply and demand have a relatively small impact on price. In the FX market, EURUSD and USDJPY are examples of currency pairs that are generally considered liquid. For currency pairs that are less liquid, the relative price impact of collusion will be greater on a damage per unit basis than for more liquid currency pairs. This is because Defendants can maintain a wider bid-ask spread on a less liquid pair, owing to its lower liquidity. Similarly, Defendants' use of collusive front running is more effective at moving prices against their counterparties in less liquid pairs, owing to less liquidity. All else being equal, trades in currency pairs with higher liquidity are likely damaged less per unit of Settlement Transaction Volume than trades in currency pairs with lower liquidity.

The liquidity of currency pairs will be measured and grouped[4] based on similar liquidity profiles. Claimants' Settlement Transaction Volume will be adjusted to account for this Relative Damage Factor.

### B.  Trade Size

This Relative Damage Factor recognizes the effect of trade size on damage. Because

---

[4]      Non-standard currency pairs – sometimes called "crosses" and typically are pairs that do not involve USD or EUR – will be broken down into the two or three separate trades that would have been required to execute the trade, and the trade will be treated as the least liquid currency pair in the cross.

larger trades are more likely to move the market, the incentives for Defendants to act collusively were enhanced the larger the trade size and were susceptible to greater damage.[5] All else being equal, larger trades are likely damaged more per unit of Settlement Transaction Value than smaller trades. Claimants' Settlement Transaction Volume will be adjusted to account for this Relative Damage Factor.

## VIII. ALLOCATION BETWEEN DIRECT SETTLEMENT CLASS AND EXCHANGE-ONLY SETTLEMENT CLASS

The following allocation is recommended by Allocation Counsel as a fair method of allocating the settlement proceeds and is adopted in the [Proposed] Plan of Distribution.

(1) All claims should be treated equally in the allocation. Accordingly, the [Proposed] Plan of Distribution applies the same Relative Damage Factors to Settlement Transaction Volume for any FX Instruments or FX Exchange-Traded Instruments to determine Eligible Participation Amounts for all Class Members.

(2) Once all Authorized Claimants' Eligible Participation Amounts have been calculated, the Claims Administrator will calculate (a) the volume of Exchange-Only Class Members' Eligible Participation Amounts and (b) the volume of Direct Settlement Class Members' Eligible Participation Amounts for FX Exchange-Traded Instruments. The sum of (a) and (b) is

---

[5] For instance, as alleged in the Complaint, large trades, such as trades done at the WM/Reuters Closing Spot Rate, were subject to collusive front running by Defendants. The Complaint alleges that, before the calculation of the WM/Reuters Closing Spot Rates at 4 p.m. London time, Defendants' traders exchanged detailed, nonpublic information about their customers' orders and Defendants' net trading positions. These communications are alleged to have allowed Defendants to know the likely direction of price movements at 4 p.m. London time. Based on this knowledge, Defendants are alleged to have collusively front run their customers' orders, taking proprietary positions (*i.e.*, trades made on Defendants' own accounts) in the same direction, thus, aligning their interests.

the total volume of Authorized Claimants' Eligible Participation Amounts for FX Exchange-Traded Instruments.

(3)   To fund distributions to (a) Exchange-Only Settlement Class Members and (b) Direct Settlement Class Members which traded in FX Exchange-Traded Instruments (collectively, "Exchange Traders"), the $59,575,000 in Exchange Only funds are contributed.

(4)   If $59,575,000 is not sufficient to cover *pro rata* distributions to Exchange Traders, funds would pour over from the Direct Settlement funds to cover the shortfall.

(5)   If $59,575,000 exceeds the *pro rata* distributions to Exchange Traders, any remainder in the Exchange Only funds will pour back to the Direct Settlement funds.

## IX.   CALCULATING *PRO RATA* ADJUSTMENTS

After each Authorized Claimant's Eligible Participation Amount is calculated, the Claims Administrator can calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund.  To make this calculation, the Claims Administrator will:

(1)   Make the calculations to implement the method of allocation for Exchange Traders, described in §VIII, *supra*;

(2)   Divide the Authorized Claimant's Eligible Participation Amount by the estimated total Eligible Participation Amount of all Class Members trading with any Defendant (a Settling Defendant or Non-Settling Defendant); and

(3)   Multiply that fraction times the Net Settlement Fund (reduced by the holdback amount).