**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------ x
                                            :
                                            :
IN RE FOREIGN EXCHANGE                      :
BENCHMARK RATES ANTITRUST                   :   No. 1:13-cv-07789-LGS
LITIGATION                                  :
                                            :
                                            :
                                            :
                                            :
                                            :
                                            :
------------------------------------------------------x
```

**DECLARATION OF CHRISTOPHER M. BURKE AND MICHAEL D. HAUSFELD**
**IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**
**OF SETTLEMENT AGREEMENTS WITH BTMU, MORGAN STANLEY, RBC,**
**SOC GEN, AND STANDARD CHARTERED**

## TABLE OF CONTENTS

I.   UPDATES TO SUMMARY OF THE ACTION SINCE LAST MOTION FOR
     PRELIMINARY APPROVAL ................................................................................ 3

     II.   SUMMARY OF THE SETTLEMENT TERMS ........................................ 6

     A.   Monetary Component ............................................................................... 6

     B.   Cooperation .............................................................................................. 8

     C.   Release of Claims .................................................................................... 11

III.  SUMMARY OF THE MEDIATIONS ........................................................ 13

     A.   Overview .................................................................................................. 13

     B.   Bilateral Negotiations ............................................................................. 13

     1.   BTMU ...................................................................................................... 13

     2.   Morgan Stanley ....................................................................................... 14

     3.   RBC ......................................................................................................... 15

     4.   Soc Gen ................................................................................................... 16

     5.   Standard Chartered ................................................................................ 17

     C.   Multilateral Negotiations ....................................................................... 18

IV.   MONETARY COMPONENT COMPARISONS ........................................ 18

V.    SELECTION OF ESCROW AGENT, CLAIMS ADMINISTRATOR, AND
      SETTLEMENT ADMINISTRATOR ......................................................... 21

VI.   EXHIBITS .................................................................................................. 22

VII.  CONCLUSION ........................................................................................... 23

Pursuant to 28 U.S.C. §1746, I, Christopher M. Burke, declare:

1.      I am a partner in the law firm of Scott+Scott, Attorneys at Law, LLP ("Scott+Scott").  By Orders dated February 13, 2014, March 4, 2014, and August 13, 2015, the Court appointed Scott+Scott and Hausfeld LLP as interim co-lead counsel for the putative U.S. class and exchange-trading class in the above-captioned action (the "Consolidated Action" or "Action").  ECF Nos. 96, 145, 412.

2.      I have been actively involved in prosecuting and resolving this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein.  If called upon and sworn as a witness, I could competently testify thereto.

Pursuant to 28 U.S.C. §1746, I, Michael D. Hausfeld, declare:

3.      I am a partner in the law firm of Hausfeld LLP ("Hausfeld").  By Orders dated February 13, 2014, March 4, 2014, and August 13, 2015, the Court appointed Scott+Scott and Hausfeld as interim co-lead counsel for the putative U.S. class and exchange-trading class in the Action.  ECF Nos. 96, 145, 412.

4.      I have been actively involved in prosecuting and resolving this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein.  If called upon and sworn as a witness, I could competently testify thereto.

Pursuant to 28 U.S.C. §1746, we, Christopher M. Burke and Michael D. Hausfeld, declare:

5.      Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement with The Bank of Tokyo-Mitsubishi UFJ, Ltd.  ("BTMU Stipulation"); the Stipulation and Agreement of Settlement with Morgan Stanley, Morgan Stanley & Co., LLC, and Morgan Stanley & Co. International plc ("Morgan Stanley Stipulation"); the stipulation and Agreement of Settlement with RBC Capital Markets, LLC ("RBC

Stipulation"); the Stipulation and Agreement of Settlement with Société Générale ("Soc Gen Stipulation"); and the Stipulation and Agreement of Settlement with Standard Chartered Bank ("Standard Chartered Stipulation") (collectively, the "Settlement Agreements").[1]

6.      We submit this declaration in support of Class Plaintiffs'[2] motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the five proposed settlements between Class Plaintiffs and Defendant Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"); Defendants Morgan Stanley, Morgan Stanley & Co., LLC, and Morgan Stanley & Co. International plc (collectively, "Morgan Stanley"); Defendant RBC Capital Markets LLC ("RBC"); Defendant Société Générale ("Soc Gen"); Defendant Standard Chartered Bank ("Standard Chartered")  (collectively, "Settling Defendants," and together with Class Plaintiffs, the "Parties").

7.      If approved, the settlements, which provide for a total of $111,200,000 in cash and each Settling Defendant's agreement to provide extensive cooperation that will assist Class

---

[1]      In this Declaration, citations to specific paragraphs of the Settlement Agreements will be made with the citation from "Stips.," where the paragraph numbers are the same across the agreements.   To the extent paragraph numbers differ between Settlement Agreements, the Declaration will cite to the individual agreements.

[2]      Class Plaintiffs are Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System; Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Systrax Corporation; Tiberius OC Fund, Ltd.; United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund; Value Recovery Fund L.L.C.; J. Paul Antonello, Marc G. Federighi, Thomas Gramatis, Doug Harvey, Izee Trading Company, John Kerstein, Michael Melissinos, Mark Miller, Robert Miller, Richard Preschern d/b/a Preschern Trading, Peter Rives, Michael S. Smith, Jeffrey Sterk, and Kimberly Sterk (collectively, "Class Plaintiffs").

Plaintiffs in pursuing their claims against any remaining Defendants,[3] will resolve the Action against Settling Defendants.

8.      Because this declaration is submitted in support of settlement, it is inadmissible in any subsequent proceedings.  In the event the settlements are not approved by the Court, this declaration and the statements contained herein are without prejudice to Class Plaintiffs' position on the merits of this Action.

# I.   UPDATES TO SUMMARY OF THE ACTION SINCE LAST MOTION FOR PRELIMINARY APPROVAL

9.      On October 22, 2015, Lead Counsel filed a motion for preliminary approval of settlements with nine of the original Defendants[4] named in the Action.  ECF No. 479. The initial settlements provided for a total of $2,009,075,000 in monetary relief and extensive cooperation from the Previous Settling Defendants.  The settlements were divided into two settlement amounts, one for the Direct Settlement Class, and one for the Exchange-Only Settlement Class. The settlements were reached as a product of hard-fought, arm's-length negotiations with the guidance and assistance of mediator Kenneth Feinberg.

---

[3]      The Non-Settling Defendants are Credit Suisse AG; Credit Suisse Group AG and Credit Suisse Securities (USA) LLC; Deutsche Bank Securities Inc.; and Deutsche Bank AG. Together, the Settling Defendants and Non-Settling Defendants are referred to as "Defendants."

[4] Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively, "Bank of America"); Barclays Bank PLC and Barclays Capital Inc. (collectively, "Barclays"); BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc. (collectively, "BNP Paribas"); Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (collectively, "Citigroup"); The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. (collectively, "Goldman Sachs"); HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings, Inc., HSBC Bank USA, N.A., and HSBC Securities (USA), Inc. (collectively, "HSBC"); JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan"); The Royal Bank of Scotland Group plc and RBS Securities Inc. (collectively, "RBS"); and UBS AG, UBS Group AG, and UBS Securities LLC (collectively, "UBS") (together, the "Previous Settling Defendants").

10.     The first agreement reached was with JPMorgan and was an "ice-breaker" settlement. After it became public, a number of Defendants began to enter into serious negotiations with Class Plaintiffs regarding the possibility of settlement.  Two months later, the DOJ Amnesty Applicant, UBS, entered into a settlement agreement with Class Plaintiffs.

11.     Execution of the JPMorgan Stipulation and the UBS Stipulation triggered certain of JPMorgan's and UBS's respective cooperation duties under those agreements, including immediate attorney proffers and the production of transaction data. This cooperation led Lead Counsel to investigate not only the claims alleged in the Consolidated Amended Complaint, ECF No. 172, but also different conduct, which was subsequently alleged in the Second Amended Complaint ("SAC"), ECF No. 368, relating to a broader scope of collusion and impact in the FX market.

12.     The Court granted preliminary approval of the settlements with the Previous Settling Defendants on December 15, 2015, certified the two settlement classes for the purpose of effectuating the settlements, and appointed Co-Lead Counsel as Settlement Class Counsel.  ECF No. 536.  The Court also appointed Kenneth Feinberg as the Settlement Administrator and the Garden City Group as the Claims Administrator. ECF No. 536. Class Counsel filed a proposed Plan of Distribution and Proposed Class Notice on August 31, 2016, ECF No. 653, and filed amended versions of the proposed notice and plan of distribution on September 28, 2016. ECF No. 668.  A hearing was held on the motion to approve these proposals on October 5, 2016.  *See* ECF No. 672. The Court approved the plan of distribution and proposed form of notice, with some revisions, on December 20, 2016.  ECF No. 700.

13.     On November 23, 2015, defendants BTMU, Standard Chartered PLC, and Soc Gen moved to dismiss the Second Amended Complaint as to themselves pursuant to Federal Rule of

Civil Procedure 12(b)(2).  ECF No. 501.  The Court denied the motion as to BTMU and Soc Gen, but granted the motion as to Standard Chartered PLC, while allowing plaintiffs to seek leave to amend with respect to Standard Chartered PLC.  ECF No. 582.  The Court then granted Plaintiffs' request to file a third amended complaint ("TAC") which was in all parts identical to the SAC except it replaced Standard Chartered PLC with Standard Chartered.  ECF No. 619.

14.     On November 30, 2015, all the remaining defendants in the Action moved to dismiss the SAC pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 507.  On September 20, 2016, the Court denied the motion to dismiss in part, ruling that the TAC adequately pleaded a violation of Section 1 of the Sherman Act, 15 U.S.C. §1, and a claim for manipulation under CEA §§9(a) and 22(a) for the time period December 1, 2007 through December 31, 2013.  ECF No. 661 at 42. However, the Court granted Defendants' motion to dismiss in part with respect to claims arising from transactions executed on foreign exchanges, claims based on transactions between U.S.-domiciled OTC Plaintiffs (operating outside the United States) and a foreign desk of a defendant, claims based on transactions executed before December 1, 2007, CEA false reporting claims, and CEA claims arising out of transactions conducted on foreign exchanges.  ECF No. 661 at 56.

15.     Class Counsel continued to negotiate with non-settling defendants regarding discovery in the case, and negotiated a Case Management Order, which the Court entered on December 23, 2016.  ECF No. 704.  On January 17, 2017, the Court entered the Order Establishing the Protocol for the Production of Documents and Electronically Stored Information ("ESI").  ECF No. 712.  On January 30, 2017, the Court entered the Stipulation and Order Regarding Deposition Protocol.  ECF No. 721.

16.     Class Counsel have now conducted substantial document discovery. To date, Class Counsel have reviewed millions of pages of documents, worked extensively with industry experts, worked with economists to analyze transactional data, and received numerous attorney proffers from Previous Settling Defendants.

## II.     SUMMARY OF THE SETTLEMENT TERMS

17.     Class Plaintiffs move for preliminary approval of five settlements providing for a total of $111,200,000 in monetary relief and extensive cooperation from the Settling Defendants, which will assist Class Plaintiffs in the prosecution of the Action against Non-Settling Defendants. In consideration for the monetary relief and the provision of cooperation, upon the Effective Date of the Settlement, Class Plaintiffs and Releasing Parties who do not exclude themselves from the settlement classes will give up their rights to sue the Settling Defendants or any of the Released Parties for any Released Claims.

### A.     Monetary Component

18.     All funds in each of the five settlements are non-reversionary if there is final approval of the settlements by the Court.

19.     The "Direct Settlement Class" consists of "[a]ll Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories."[5]  Stips., ¶3(a)(i).

---

[5]     Specifically excluded from the Direct Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-

20.     The "Exchange-Only Settlement Class" consists of "[a]ll Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange."[6]  Stips., ¶3(a)(ii).

21.     The monetary components of the nine settlements are set forth below:

| Table 4:  Settlement Amounts (Totals by Defendant and Per % Point of Market Share) | | |
|---|---|---|
| BTMU Total | $10,500,000 | Market share:[7] 0.42% |
| | | Total per market share percentage point: $25,000,000 |
| Morgan Stanley Total | $50,000,000 | Market share: 2.88% |
| Settlement | $49,750,000 | Total per market share percentage point: |
| Notice and Administration | $250,000 | $17,361,111 |
| RBC Total | $15,500,000 | Market share: 0.80% |
| | | Total per market share percentage point: $19,375,000 |

conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class.  Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.  Stips., ¶3(a)(i).

[6]     Specifically excluded from the Exchange-Only Settlement Class are Defendants; Released Parties; co-conspirators, the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Exchange-Only Settlement Class.  Also excluded from the Exchange-Only Settlement Class are: (i) any judicial officer presiding over this action and any member of his/her immediate family and judicial staff, and any juror assigned to this Action; and (ii) any Person who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator, where such Person was either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.  Stips., ¶3(a)(ii).

[7]     The market share figures reported in the table are weighted average global market shares between the years 2003-2013.  The figures are based on market share data from Euromoney Surveys and global FX market volume data from Bank of International Settlements (BIS) Triennial Foreign Exchange Reports covering the period 2003-2013.

| Table 4:  Settlement Amounts (Totals by Defendant and Per % Point of Market Share) | | |
|---|---|---|
| Soc Gen Total | $18,000,000 | Market share: 1.51%<br>Total per market share percentage point: $11,920,530 |
| Standard Chartered Total | $17,200,000 | Market share: 0.91%<br>Total per market share percentage point: $18,901,099 |

### B.    Cooperation

22.    Settling Defendants agreed to provide comprehensive cooperation relating to all forms and types of Released Claims.  The scope of Settling Defendants' cooperation obligations mirrors the scope of the release.

23.    Settling Defendants' cooperation obligations include, as reasonably necessary and as subject to Court Orders and applicable law, attorney proffers, production of transaction data, production of documents produced to government bodies, production of additional data and documents as requested by Class Plaintiffs, witness interviews, depositions and affidavits, and trial testimony, all of which is subject to the Court's orders staying certain forms of cooperation until the discovery stay in the Action is lifted in its entirety (ECF Nos. 274, 463, 583, 704).  Stips., ¶14. These obligations are continuing until the later of: (1) the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against all Defendants; or (2) seven (7) years after the Court enters the Preliminary Approval Order.  Stips., ¶14(b)(xi).

24.    *Attorney Proffers:*  Beginning within ten (10) business days of the Execution Date, Settling Defendants agreed to provide attorney proffers covering the following topics:  (1) a general description of FX Trading; and (2) a description of facts relevant to conduct relating to all forms and types of Released Claims, including but not limited to (a) the conduct and (b) the products and instruments affected by such conduct.  Settling Defendants agreed to, subject to Court orders and applicable law, identify and provide the last-known contact information for all current

and former officers, directors, and employees who have been interviewed by any United States or European country governmental body, including but not limited to the DOJ, CFTC, Federal Reserve, OCC, NYDFS, U.S. Securities and Exchange Commission ("SEC"), U.K. FCA, United Kingdom Serious Fraud Office ("SFO"), European Commission ("EC"), the Swiss Competition Commission ("Swiss WEKO"), Swiss FINMA, and the German Federal Financial Supervisory Authority ("BaFin").  Stips., ¶14(b)(ii).

25.     *Production of Transaction Data:*  As soon as possible after the Execution Date, Settling Defendants agreed to meet and confer (or, in the case of Morgan Stanley, conclude that meet and confer process) about production of transaction data related to the subject matter of the Action.  BTMU, RBC, Soc Gen, Standard Chartered Stips., ¶14(b)(iii); *accord* Morgan Stanley Stip. ¶14(b)(iii).

26.     *Production of Documents Produced to Governmental Bodies:*  Within ten (10) business days after entry of the Preliminary Approval Order, Settling Defendants agreed to produce documents related to the allegations in the TAC that they have already produced or made available to any grand jury or United States or European country governmental body, including but not limited to DOJ, CFTC, Federal Reserve, OCC, NYDFS, SEC, U.K. FCA, U.K. SFO, EC, Swiss WEKO, Swiss FINMA, and BaFin.  Morgan Stanley and Standard Chartered Stips., ¶14(b)(iv). Or, where no production is known to have been made to government entities, the Settling Defendants agreed to produce those documents they have already identified as relating to the allegations set forth in the TAC and meet and confer about additional documents to be included within an initial production. BTMU, RBC, and Soc Gen Stips., ¶14(b)(iv).

27.     *Production of Additional Documents and Data:*  After entry of the Preliminary Approval Order, while the Action or any action related to any Released Claims remains pending,

Settling Defendants agreed to produce additional documents and transactional data, as reasonably requested by Class Plaintiffs.  Stips., ¶14(b)(v).

28. *Additional Attorney Proffers:*  After the production of the initial transaction data and documents, the Settling Defendants agreed to provide additional attorney proffers on those documents, including, to the extent known, the specific locations, dates, and participants in all meetings or communications relating to the transactions and conduct that are the subject matter of all forms and types of Released Claims, as well as a description of the documents prepared at or related to each such meeting or communication.  Stips., ¶14(b)(vi).

29. *Witness Interviews:*  After the entry of the Preliminary Approval Order, and upon reasonable notice, Settling Defendants agreed to make available for interviews three (3) current employees and must meet and confer regarding possible interviews of up to five (5) additional employees.  Stips., ¶14(b)(vii).

30. *Declarations and Affidavits:*  After the entry of the Preliminary Approval Order and upon reasonable notice, Settling Defendants agreed to make available for the preparation of declarations and/or affidavits three (3) employees and must meet and confer regarding possible declarations and/or affidavits from up to five (5) additional employees designated by Class Lead Counsel for the preparation of declarations and/or affidavits.  Stips., ¶14(b)(viii).

31. *Depositions:*  After the entry of the Preliminary Approval Order and upon reasonable notice, Settling Defendants agreed to make available for deposition three (3) current employees and must meet and confer regarding possible depositions of up to five (5) additional employees for deposition.  Stips., ¶14(b)(ix).

32.    *Testimony at Trial:*  Upon reasonable notice, Settling Defendants agreed to make available for testimony at trial each of the then-current employees who provided interviews, declarations/affidavits, or depositions.  Stips., ¶14(b)(x).

**C.    Release of Claims**

33.    In consideration for Settling Defendants' payment of $111,200,000 to the Settlement Classes and their provision of cooperation and confirmatory discovery, and upon the Effective Date of the Settlement, Class Plaintiffs and Releasing Parties who do not exclude themselves from the Settlement Classes will give up any rights to sue the Settling Defendants or any of the Released Parties for the Released Claims.  BTMU, Morgan Stanley, and RBC Stips., ¶¶1, 2(ll); Standard Chartered and Soc Gen Stips., ¶¶1, 2(jj)

34.    The releases are explicitly limited to only those claims that are or could have been alleged *and* arise under the factual predicate of the Action.  BTMU, Morgan Stanley, and RBC Stips., ¶¶1, 2(ll); Standard Chartered and Soc Gen Stips., ¶¶1, 2(jj).

35.    The release explicitly carves out claims based on transactions executed solely outside the United States arising under foreign laws that belong to any Person that is domiciled outside the United States as well as claims related to "last look" practices that may have been used with respect to electronic trading.  BTMU, Morgan Stanley, and RBC Stips., ¶¶1, 2(ll); Standard Chartered and Soc Gen Stips., ¶¶1, 2(jj).

36.    The Settlement Agreements define Released Claims as:

[A]ny and all manner of claims, including "Unknown Claims" as defined below, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or

unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action, or any amended complaint or pleading therein, from the beginning of time until the Effective Date, which shall be deemed to include but not be limited to: (i) communications related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (ii) agreements, arrangements, or understandings related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (iii) the sharing or exchange of customer information between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action – including but not limited to customer identity, trading patterns, transactions, net positions or orders, stop losses or barrier options, pricing, or spreads related to FX Instruments, FX Trading, or FX Benchmark Rates; (iv) the establishment, calculation, manipulation, or use of the WM/Reuters fixing rates, including the 4:00 p.m. London closing spot rates, and trading that may impact such rates; (v) the establishment, calculation, manipulation, or use of the European Central Bank FX reference rates, including the ECB rate set at 1:15 p.m. London time; (vi) the establishment, calculation, manipulation, or use of the CME daily settlement rates; (vii) the establishment, calculation, or use of any other FX benchmarks, including benchmark fixing rates, benchmark settlement rates, or benchmark reference rates; (viii) the establishment, calculation, communication, manipulation, or use of the price, spread, or rate of any FX Instrument or FX Exchange-Traded Instrument; and (ix) the exchange of customer information or confidential information in the possession of [Defendant] between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action related to the establishment, calculation, manipulation, or use of any FX price, spread, or rate. Provided, however, Released Claims do not include: (i) "last look" claims related to possible delays built into [Defendant's] algorithmic or electronic trading platforms that resulted in [Defendant's] declining spot orders or requests to trade, including trading on electronic communications networks, that were submitted based upon prices [Defendant] quoted or displayed in over-the-counter FX markets, notwithstanding anything to the contrary herein; and (ii) claims based upon transactions executed solely outside the United States and arising under foreign laws belonging to any Releasing Party or Person that is domiciled outside the United States.

BTMU, Morgan Stanley, and RBC Stips., ¶¶1, 2(ll); Standard Chartered and Soc Gen Stips., ¶¶1, 2(jj).

III.    SUMMARY OF THE MEDIATIONS

     A.    Overview

37.    Each settlement was the product of hard-fought, arm's-length negotiations by counsel highly experienced in complex litigation and antitrust law and was reached under the guidance and with the assistance of a well-respected mediator, Kenneth Feinberg.

38.    Lead Counsel's settlement strategy was designed to achieve a maximum aggregate recovery for the Settlement Classes, while ensuring broad cooperation to assist Class Plaintiffs in pursuing their claims against the remaining Non-Settling Defendants.

     B.    Bilateral Negotiations

          1.    BTMU

39.    Through the Mediator, Kenneth Feinberg, Class Plaintiffs and BTMU discussed their respective interest in possible resolution of the Action.   A mediation with Mr. Feinberg occurred on April 4, 2016 in Washington, DC.   Possible terms of settlement were discussed, but no final agreement was reached as to any of the outstanding issues.

40.    After this first mediation session, Class Plaintiffs and BTMU continued to discuss terms and open issues through the Mediator.   As a result of these continued discussions conversations, the parties reaching an agreement in principle on the financial terms of the Settlement with respect to both Settlement Classes by telephone on August 29, 2016.

41.    On September 9, 2016, Class Plaintiffs sent BTMU a draft settlement agreement. After hard-fought, arm's-length negotiations between highly experienced counsel, on February 14, 2017, Class Plaintiffs and BTMU signed the Stipulation and Agreement of Settlement attached hereto as Exhibit 1 ("BTMU Stipulation").

42. The total cash portion of the BTMU Stipulation consists of $10,500,000. BTMU Stip., ¶10(h). The funds are non-reversionary if there is final approval of the settlement by the Court. *Id*. at ¶11(j).

43. BTMU's cooperation will materially assist Class Plaintiffs in prosecuting the Action against the Non-Settling Defendants.

44. All other terms of the BTMU Stipulation are generally consistent with the stipulations with the other Settling Defendants, including the definition of the settlement classes, release of claims, and cooperation obligations.

### 2. Morgan Stanley

45. Through the Mediator, Kenneth Feinberg, Class Plaintiffs and Morgan Stanley discussed their respective interest in possible resolution of the Action. A mediation with Mr. Feinberg occurred on December 16, 2016 in New York, NY. During that mediation, Class Plaintiffs and Morgan Stanley reached an agreement in principle to settle claims on behalf of both Settlement Classes.

46. On December 23, 2016, Class Counsel sent a draft settlement agreement to Morgan Stanley. In April 2017, after Class Plaintiffs reached agreements in principle and sent draft stipulations to Morgan Stanley, RBC, Soc Gen, and Standard Chartered, the parties began multilateral negotiations on certain common issues. Those negotiations are described in §III.C., *infra*.

47. After hard-fought, arm's-length negotiations between highly experienced counsel, on July 28, 2017, Class Plaintiffs and Morgan Stanley signed the Stipulation and Agreement of Settlement attached hereto as Exhibit 2 ("Morgan Stanley Stipulation").

48.     The total cash portion of the Morgan Stanley Stipulation consists of $49,750,000 for the Settlement Fund, and $250,000 for notice and administration. Morgan Stanley Stip., ¶10(b). The funds are non-reversionary if there is final approval of the settlement by the Court.  *Id*. at ¶11(j).

49.     Morgan Stanley's cooperation will materially assist Class Plaintiffs in prosecuting the Action against the Non-Settling Defendants.

50.     All other terms of the Morgan Stanley Stipulation are generally consistent with the stipulations with the other Settling Defendants, including the definition of the settlement classes, release of claims, and cooperation obligations.

### 3.     RBC

51.     Through the Mediator, Kenneth Feinberg, Class Plaintiffs and RBC discussed their respective interest in possible resolution of the Action.  A mediation with Mr. Feinberg occurred on December 15, 2016 in New York, NY.  During that mediation, Class Plaintiffs and RBC reached an agreement in principle to settle claims on behalf of both Settlement Classes.

52.     On December 23, 2016, Class Counsel sent a draft settlement agreement to RBC. In April 2017, after Class Plaintiffs reached agreements in principle and sent draft stipulations to Morgan Stanley, RBC, Soc Gen, and Standard Chartered, the parties began multilateral negotiations on certain common issues.  Those negotiations are described in §III.C., *infra.*

53.     After hard-fought, arm's-length negotiations between highly experienced counsel, on July 27, 2017, Class Plaintiffs and RBC signed the Stipulation and Agreement of Settlement attached hereto as Exhibit 3 ("RBC Stipulation").

54.     The total cash portion of the RBC Stipulation consists of $15,500,000. RBC Stip., ¶10(g).  The funds are non-reversionary if there is final approval of the settlement by the Court. *Id*. at ¶11(j).

55.     RBC's cooperation will materially assist Class Plaintiffs in prosecuting the Action against the Non-Settling Defendants.

56.     All other terms of the RBC Stipulation are generally consistent with the stipulations with the other Settling Defendants, including the definition of the settlement classes, release of claims, and cooperation obligations.

### 4.     Soc Gen

57.     Through the Mediator, Kenneth Feinberg, Class Plaintiffs and Soc Gen discussed their respective interest in possible resolution of the Action.  A mediation with Mr. Feinberg occurred on February 7, 2017 in New York, NY.  During that mediation, Class Plaintiffs and Soc Gen reached an agreement in principle to settle claims on behalf of both Settlement Classes.

58.     On February 8, 2017 Class Counsel sent a draft settlement agreement to Soc Gen. In April 2017, after Class Plaintiffs reached agreements in principle and sent draft stipulations to Morgan Stanley, RBC, Soc Gen, and Standard Chartered, the parties began multilateral negotiations on certain common issues.  Those negotiations are described in §III.C., *infra*.

59.     After hard-fought, arm's-length negotiations between highly experienced counsel, on July 27, 2017, Class Plaintiffs and Soc Gen signed the Stipulation and Agreement of Settlement attached hereto as Exhibit 4 ("Soc Gen Stipulation").

60.     The total cash portion of the Soc Gen Stipulation consists of $18,000,000. Soc Gen Stip., ¶10(g).  The funds are non-reversionary if there is final approval of the settlement by the Court.  *Id*. at ¶11(j).

61.     Soc Gen's cooperation will materially assist Class Plaintiffs in prosecuting the Action against the Non-Settling Defendants.

62.     All other terms of the Soc Gen Stipulation are generally consistent with the stipulations with the other Settling Defendants, including the definition of the settlement classes, release of claims, and cooperation obligations.

### 5.     Standard Chartered

63.     Through the Mediator, Kenneth Feinberg, Class Plaintiffs and Standard Chartered discussed their respective interest in possible resolution of the Action.   A mediation with Mr. Feinberg occurred on February 8, 2017 in New York, NY.   Possible terms of settlement were discussed, but no final agreement was reached as to any of the outstanding issues.

64.     After this first mediation session, Class Plaintiffs and Standard Chartered continued to discuss terms and open issues through the Mediator.   As a result of these continued discussions, the parties reaching an agreement in principle on the financial terms of the Settlement with respect to both Settlement Classes by telephone on February 22, 2017.

65.     On February 23, 2017, Class Counsel sent a draft settlement agreement to Standard Chartered.   In April 2017, after Class Plaintiffs reached agreements in principle and sent draft stipulations to RBC, Morgan Stanley, Soc Gen, and Standard Chartered, the parties began multilateral negotiations on certain common issues.   Those negotiations are described in §III.C., *infra.*

66.     After hard-fought, arm's-length negotiations between highly experienced counsel, on July 27, 2017, Class Plaintiffs and Standard Chartered signed the Stipulation and Agreement of Settlement attached hereto as Exhibit 5 ("Standard Chartered Stipulation").

67.     The total cash portion of the Standard Chartered Stipulation consists of $17,200,000. Standard Chartered Stip., ¶10(g).  The funds are non-reversionary if there is final approval of the settlement by the Court.  *Id.* at ¶11(j).

68.     Standard Chartered's cooperation will materially assist Class Plaintiffs in prosecuting the Action against the Non-Settling Defendants.

69.     All other terms of the Standard Chartered Stipulation are generally consistent with the stipulations with the other Settling Defendants, including the definition of the settlement classes, release of claims, and cooperation obligations.

### C.     Multilateral Negotiations

70.     In April 2017, after Class Plaintiffs had executed a Settlement Agreement with BTMU and sent draft stipulations to each of the Settling Defendants, Class Counsel and Counsel for Morgan Stanley, RBC, Soc Gen, and Standard Chartered began multilateral negotiations on certain common issues.

71.     The Parties exchanged numerous draft stipulations between December 2016 (for Morgan Stanley and RBC) or February 2017 (for Soc Gen and Standard Chartered) and July 2017. The Parties negotiated terms both individually and during the course of numerous group teleconferences.

72.     On July 27, 2017, Class Counsel and Counsel for Morgan Stanley, RBC, Soc Gen, and Standard Chartered reached resolution on the remaining terms.  On July 27 and July 28, 2017, the Morgan Stanley Stipulation, RBC Stipulation, Soc Gen Stipulation, and Standard Chartered Stipulation were executed, subject to technical edits.

## IV.    MONETARY COMPONENT COMPARISONS

73.     If approved, the five settlements will provide the Settlement Classes a total recovery of $111,200,000.  When combined with the previous nine settlements, this partial settlement of the

Action would total $2,120,275,000 and would be the third largest U.S. antitrust class action settlement on record:

| | Table 5: Largest U.S. Antitrust Class Action Recoveries | |
|---|---|---|
| 1 | *In re Vitamins Antitrust Litigation* | $4,197,100,000 - $5,576,100,000 (direct and indirect state settlements)[8] |
| 2 | *In re Visa Check/Mastermoney Antitrust Litigation* | $3,050,000,000[9] |
| 3 | *In re Foreign Exchange Benchmark Rates Antitrust Litigation* | $2,120,275,000 (partial settlement) |
| 4 | *In re Credit Default Swaps* | $1,864,650,000[10] |
| 5 | *In re Air Cargo Shipping Services Antitrust Litigation* | $1,235,907,442[11] |

---

[8]    Connor, John M., *The Great Global Vitamins Conspiracy: Sanctions and Deterrence* (February 22, 2006). American Antitrust Institute Working Paper No. 06-02. Available at SSRN: http://ssrn.com/abstract=1103604; *see also In re Vitamins Antitrust Litig.*, 398 F. Supp. 2d 209, 230 (D.D.C. 2005) (noting the recovery was "one of the largest-if not the largest-settlement amounts ever secured in a class action litigation").

[9]    *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 508 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 103 (2d Cir. 2005) (final approval order, wherein the court noted that the resulting settlement was "the largest antitrust settlement in history").

[10]    *In re Credit Default Swaps Antitrust Litig.*, 13-md-2476-DLC, 2016 WL 2731524, at *1 (S.D.N.Y. Apr. 26, 2016) (final approval order noting "common fund of $1,864,650,000 available to Class members").

[11]    *In re Air Cargo Shipping Services Antitrust Litig.*, 06-MD-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) (approving settlement with Lufthansa defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 1413, Memorandum and Order (E.D.N.Y. Mar. 14, 2011) (approving settlement with American Airlines defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 1414, Memorandum and Order (E.D.N.Y. Mar. 14, 2011) (approving settlement with Air France-KLM defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 1416, Memorandum and Order (E.D.N.Y. Mar. 14, 2011) (approving settlement with Scandinavian Airlines defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 1417, Memorandum and Order (E.D.N.Y. Mar. 14, 2011) (approving settlement with Japan Airlines defendants); *In re Air Cargo*, 06-MD-1775, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) (approving settlements with Air Nippon defendants, Cargolux defendants, Thai Airlines, and Qantas (the settlement with Qantas was held in abeyance, but ultimately approved and entered at ECF No. 1534)); *In re Air Cargo*, 06-CV-00706, ECF No. 37, Memorandum and Order (Aug. 2, 2012) (approving settlements with Lan Airlines defendants, British Airways plc, South African Airways Ltd., Malaysia Airlines, Saudi Arabian Airlines, Emirates Airline d/b/a Emirates, El Al Israel Airlines Ltd., Air Canada defendants and Air New Zealand); *In re Air Cargo*, 06-MD-1775, 2015 WL 5918273, Memorandum and Order (E.D.N.Y. Oct. 9, 2015) (approving settlements with Korean Air Lines defendants, Singapore Airlines defendants, Cathay Pacific defendants, and China Airlines defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 2447, Final Judgment (E.D.N.Y March 25, 2016) (approving settlement with

| Table 5: Largest U.S. Antitrust Class Action Recoveries | | |
|---|---|---|
| 6 | *In re TFT-LCD (Flat Panel) Antitrust Litigation* | $1,082,055,647 (indirect plaintiffs)[12] $473,022,242 (direct plaintiffs)[13] |

---

Asiana Airlines); *In re Air Cargo*, 06-MD-1775, ECF No. 2446, Final Judgment (E.D.N.Y March 25, 2016) (approving settlement with Nippon Cargo Airlines); *In re Air Cargo*, 06-MD-1775, ECF No. 2445, Final Judgment (E.D.N.Y March 25, 2016) (approving settlement with EVA Airways).

[12]     *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827, Order Granting Final Approval of Combined Class, *Parens Patriae*, and Governmental Entity Settlement; Final Judgment of Dismissal with Prejudice (N.D. Cal. Apr. 3, 2013) (ECF No. 7697) (approving settlement with Chimei defendants, Chunghwa defendants, Epson defendants, HannStar defendants, Hitachi defendants, Samsung defendants and Sharp defendants); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827, Second Amended Order Granting Final Approval of Combined Class, *Parens Patriae*, and Governmental Entity Settlements with AUO, LG Display, and Toshiba Defendants; Ordering Final Judgment of Dismissal with Prejudice; Award of Attorneys' Fees, Expenses, and Incentive Awards (N.D. Cal. Apr. 3, 2013) (ECF No. 7697) (approving settlement with LG defendants, AUO defendants, and Toshiba defendants).

[13]     *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendant Chunghwa Picture (N.D. Cal. Feb. 18, 2011) (ECF No. 2475); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendant Epson Imaging Devices Corp. and Epson Electronics America, Inc. (N.D. Cal. Feb. 18, 2011) (ECF No. 2476); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Chi Mei, *et al*. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Hannstar Display Corporation (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-1); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Hitachi Displays, Ltd. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-2); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants LG Display Co., Ltd. and LG Display America, Ltd. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-3); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendant Mitsui & Co. (Taiwan), Ltd. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-4); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Samsung Electronics, *et al*. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-5); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendant Sanyo Consumer Electronics Co., Ltd. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-6); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Sharp Corporation (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-7); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with

| Table 5: Largest U.S. Antitrust Class Action Recoveries | |
| --- | --- |
| 7   *In re NASDAQ Antitrust Litigation* | $1,027,000,000[14] |

74.     While, to date, fines have been issued against banks (not including New Settling Defendants) for FX-related misconduct by DOJ, OCC, the Federal Reserve, NYDFS, FCA, FINMA, and CADE, the Settlements in this Action are the only agreements that will return compensation to individuals harmed by the conduct.[15]

## V.     SELECTION OF ESCROW AGENT, CLAIMS ADMINISTRATOR, AND SETTLEMENT ADMINISTRATOR

75.     Class Plaintiffs propose Huntington National Bank ("HNB") to serve as Escrow Agent, having the duties and responsibilities as described in the Settlement Agreements.  Stips., ¶10(a).  As indicated in HNB's résumé, previously submitted as ECF No. 481-10, HNB was established in 1866, holds over $60 billion in assets, and has more than 700 branches nationwide. HNB's National Settlement Team has handled more than 1,000 settlements for law firms, claims administrators, and regulatory agencies.  Lead Counsel believe HNB is qualified to serve as Escrow Agent and request that the Court again approve Class Plaintiffs' selection.

76.     Class Plaintiffs propose Garden City Group ("GCG") to serve as Claims Administrator, having the duties and responsibilities as described in the Settlement Agreements.

---

Prejudice as to Defendants Toshiba *et al*. (N.D. Cal. Dec. 18, 2012) (ECF No. 7372); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants AU Optronics Corporation and AU Optronics America (N.D. Cal. Dec. 18, 2012) (ECF No. 7373).

[14]     *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 472-73, 487 (S.D.N.Y. 1998). ("The instant settlement is nearly 130 times larger than the average class action settlement between 1991 and 1994 [], and the largest ever in an antitrust class action.").

[15]     Unlike 8 of 9 Previous Settling Defendants, none of the New Settling Defendants have faced fines as a result of FX investigations.  In fact, three of the New Settling Defendants (BTMU, RBC, and Soc Gen) are not known to have received a regulatory request for documents in the United States or Europe as a result of FX investigations.

Stips., ¶5(a)(v).  Lead Counsel had previously selected GCG after reviewing the available options and undertaking a rigorous bidding process consisting of two rounds of bidding and in-person interviews.  As indicated in GCG's firm résumé, previously submitted as ECF No. 481-11, GCG has been in the business of administering class action settlements for twenty years and has administered hundreds of class action settlements, including several well-known antitrust settlements.  GCG has substantial experience in carrying out class action notice and payment projects, and has handled the administration of numerous complex, data-driven settlements, as well as cases with international components.  Lead Counsel believe GCG is qualified to serve as Claims Administrator and request that the Court again approve Class Plaintiffs' selection.

77.    Rust Consulting is being used as the agent of the Settling Defendants to cause notice to be distributed to foreign-based class members. Settling Defendants selected Rust Consulting because foreign privacy laws may limit the disclosure of foreign class member names to GCG.

78.    The Settling Parties agreed to seek appointment of Mr. Feinberg as Settlement Administrator, having the duties and responsibilities set forth in the Settlement Agreements. Stips., ¶7(a).  Lead Counsel believe that Mr. Feinberg is qualified to serve as the Settlement Administrator and request that the Court approve the Settling Parties' selection.

## VI.  EXHIBITS

79.    Attached hereto are true and correct copies of:

| Exhibit 1 | Stipulation and Agreement of Settlement with The Bank of Tokyo-Mitsubishi UFJ, Ltd. |
|---|---|
| Exhibit 2 | Stipulation and Agreement of Settlement with Morgan Stanley, Morgan Stanley & Co., LLC, and Morgan Stanley & Co. International plc |
| Exhibit 3 | Stipulation and Agreement of Settlement with RBC Capital Markets LLC |
| Exhibit 4 | Stipulation and Agreement of Settlement with Société Générale |
| Exhibit 5 | Stipulation and Agreement of Settlement with Standard Chartered Bank |

## VII.   CONCLUSION

80.     For the reasons set forth herein, in Class Plaintiffs' motion for preliminary approval of the settlements, and in the documents filed in support thereof, we believe the settlements are fair, reasonable, and adequate.  As such, we believe that the Court should grant Class Plaintiffs' application for preliminary approval of the settlements and certify, for purposes of effectuating the settlements, the Settlement Classes.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 28, 2017, in San Diego, CA.

CHRISTOPHER M. BURKE
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
cburke@scott-scott.com

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 28, 2017, in Washington, DC.

MICHAEL D. HAUSFELD
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile:  202-540-7201
mhausfeld@hausfeld.com

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 28, 2017

 s/ Michael D. Hausfeld  
MICHAEL D. HAUSFELD  
HAUSFELD LLP  
1700 K Street, Suite 650  
Washington, DC 20006  
Telephone: 202-540-7200  
Facsimile:  202-540-7201  
mhausfeld@hausfeld.com