# Exhibit  1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
IN RE FOREIGN EXCHANGE BENCHMARK                             :
RATES ANTITRUST LITIGATION                                   :
                                                             :
                                                             :          13 Civ. 7789 (LGS)
                                                             :
                                                             :
                                                             :
                                                             :
------------------------------------------------------------ X


**STIPULATION AND AGREEMENT OF SETTLEMENT WITH
THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.**

**TABLE OF CONTENTS**

1.      RECITALS ....................................................................................................1

2.      DEFINITIONS............................................................................................3

3.      SETTLEMENT CLASS CERTIFICATION ..................................................14

4.      GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT
        AGREEMENT.............................................................................................16

5.      PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING .........16

6.      EFFECTIVE DATE OF SETTLEMENT .......................................................21

7.      CLAIMS ADMINISTRATOR AND SETTLEMENT ADMINISTRATOR...................22

8.      SCOPE AND EFFECT OF SETTLEMENT ....................................................23

9.      FEE AND EXPENSE APPLICATION ..........................................................24

10.     THE SETTLEMENT FUND ........................................................................25

11.     ADMINISTRATION OF THE SETTLEMENT ...............................................28

12.     TAXES.......................................................................................................34

13.     TERMINATION OF SETTLEMENT ............................................................36

14.     CONFIRMATORY DISCOVERY AND COOPERATION OBLIGATIONS................37

15.     RESERVATION OF CLASS MEMBERS' RIGHTS AGAINST OTHER
        DEFENDANTS ...........................................................................................48

16.     MISCELLANEOUS ....................................................................................48

1.    **RECITALS**

This Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on February *14*, 2017 ("Execution Date"), between Class Plaintiffs (as defined herein), for themselves individually and on behalf of each Class Member in the Action (as defined herein), and defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"), by and through Class Lead Counsel and BTMU's Counsel.  This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

WHEREAS, on March 31, 2014, certain of the Direct Class Plaintiffs filed the Consolidated Amended Class Action Complaint and Class Plaintiffs filed a Second Consolidated Amended Class Action Complaint on July 16, 2015 and Class Plaintiffs filed a Third Consolidated Amended Class Action Complaint ("TAC") on June 3, 2016;

WHEREAS, Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Class against Defendants, including BTMU;

WHEREAS, Class Plaintiffs have alleged, among other things, that BTMU participated in an unlawful conspiracy to restrain trade, pursuant to which BTMU and its alleged co-conspirators, including the other Defendants, as well as unnamed co-conspirators, agreed, among other things, to fix prices in the foreign exchange ("FX") market in violation of the Sherman Act, 15 U.S.C. § 1, *et seq.* and the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*;

WHEREAS, Class Plaintiffs have contended that they and the Classes are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the TAC, arising from BTMU's (and the other Defendants') alleged conduct;

1

## 1.    RECITALS

This Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on February ___, 2017 ("Execution Date"), between Class Plaintiffs (as defined herein), for themselves individually and on behalf of each Class Member in the Action (as defined herein), and defendant The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"), by and through Class Lead Counsel and BTMU's Counsel.  This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereof.

WHEREAS, on March 31, 2014, certain of the Direct Class Plaintiffs filed the Consolidated Amended Class Action Complaint and Class Plaintiffs filed a Second Consolidated Amended Class Action Complaint on July 16, 2015 and Class Plaintiffs filed a Third Consolidated Amended Class Action Complaint ("TAC") on June 3, 2016;

WHEREAS, Class Plaintiffs are prosecuting the Action on their own behalf and on behalf of the Class against Defendants, including BTMU;

WHEREAS, Class Plaintiffs have alleged, among other things, that BTMU participated in an unlawful conspiracy to restrain trade, pursuant to which BTMU and its alleged co-conspirators, including the other Defendants, as well as unnamed co-conspirators, agreed, among other things, to fix prices in the foreign exchange ("FX") market in violation of the Sherman Act, 15 U.S.C. § 1, *et seq*. and the Commodity Exchange Act, 7 U.S.C. § 1, *et seq*.;

WHEREAS, Class Plaintiffs have contended that they and the Classes are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the TAC, arising from BTMU's (and the other Defendants') alleged conduct;

WHEREAS, BTMU has denied and continues to deny each and all of the claims and allegations of wrongdoing made by Class Plaintiffs in the Action and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action;

WHEREAS, Class Plaintiffs, for themselves individually and on behalf of each Class Member, and BTMU agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by BTMU or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, Class Lead Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Classes to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Total Settlement Amount to be paid by BTMU under this Settlement Agreement and the cooperation to be provided to Class Plaintiffs by BTMU under this Settlement Agreement, are obtained for the Classes; and (2) the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Classes;

WHEREAS, BTMU, while continuing to deny that it is liable for the claims asserted against it in the Action, has nevertheless agreed to enter into this Settlement Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to put fully to rest this controversy, to avoid the risks inherent in complex litigation,

and to obtain complete dismissal of the TAC as to BTMU and a release of claims as set forth herein;

WHEREAS, this Settlement Agreement is the product of arm's-length negotiations between Class Lead Counsel and BTMU's Counsel under the guidance and oversight of Mediator Kenneth Feinberg, and this Settlement Agreement embodies all of the terms and conditions of the settlement agreed upon between BTMU and Class Plaintiffs, both for themselves individually and on behalf of the Classes;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Settlement Agreement, it is agreed, by and among Class Plaintiffs (for themselves individually and on behalf of the Classes and each member thereof) and BTMU, by and through Class Lead Counsel and BTMU's Counsel, that, subject to the approval of the Court, the Action be settled, compromised, and dismissed with prejudice as to BTMU and the other Released Parties only, without costs, except as stated herein, and releases be extended, as set forth in this Settlement Agreement.

## 2. DEFINITIONS

As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

(a)     "Action" means *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13 Civ. 7789, which is currently pending in the United States District Court for the Southern District of New York, and includes all actions filed in or transferred to the United States District Court for the Southern District of New York and consolidated thereunder and all actions that may be so transferred and consolidated in the future, including: *Taylor v. Bank of America Corp. et al.* (15 Civ. 1350), *Sterk v. Bank of America Corp. et al.* (15 Civ. 2705), *Bakizada v. Bank of America*

3

*Corp. et al.* (15 Civ. 4230), *Teel v. Bank of America Corp. et al.* (15 Civ. 4436), and *Robert Charles Class A, L.P. v. Bank of America Corp. et al.* (15 Civ. 4926).

(b)     "Alternative Judgment" means a Final Judgment and Order of Dismissal entered by the Court but in a form other than proposed by Class Lead Counsel and BTMU.

(c)     "Authorized Claimant" means any Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Plan of Distribution approved by the Court in accordance with the terms of this Settlement Agreement.

(d)     "BTMU" means The Bank of Tokyo-Mitsubishi UFJ, Ltd.

(e)     "BTMU's Counsel" means Paul, Weiss, Rifkind, Wharton & Garrison LLP.

(f)     "Claims Administrator" means the third party to be retained by Class Lead Counsel and approved by the Court to manage and administer the process by which each member of a Class is notified of and paid pursuant to this Settlement Agreement.

(g)     "Classes" and "Class" mean, collectively, the "Direct Settlement Class" and the "Exchange-Only Settlement Class" as defined in paragraph 3(a).

(h)     "Class Distribution Order" has the meaning given to it in paragraph 11(h).

(i)     "Class Lead Counsel" means Scott+Scott, Attorneys at Law, LLP and Hausfeld LLP.

(j)     "Class Member" means a Person who is a member of one of the Classes and has not timely and validly excluded himself, herself, or itself in accordance with the procedures established by the Court.

(k)     "Class Notice" means, collectively, the Mail Notice and Publication Notice, which shall be subject to consultation and agreement with the Settling Defendants before being submitted to the Court for approval.

4

(l)     "Class Plaintiffs" means Direct Class Plaintiffs and Exchange-Only Class Plaintiffs.

(m)     "Consolidated Amended Class Action Complaint" means the Consolidated Amended Class Action Complaint filed in the Action on March 31, 2014.

(n)     "Court" means the United States District Court for the Southern District of New York.

(o)     "Defendants" means BTMU; Bank of America Corporation, Bank of America, N.A., Merrill Lynch, Pierce, Fenner & Smith Inc.; Barclays Bank PLC and Barclays Capital Inc.; BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.; Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.; Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse Securities (USA) LLC; Deutsche Bank AG and Deutsche Bank Securities Inc.; The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.; HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc.; JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; Morgan Stanley, Morgan Stanley & Co., LLC, and Morgan Stanley & Co. International plc; RBC Capital Markets, LLC; The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc.; Société Générale S.A.; Standard Chartered Bank; and UBS AG, UBS Group AG, and UBS Securities LLC; and any other Person or Persons who are named as defendants in the Action at any time up to and including the date a Preliminary Approval Order is entered.

(p)     "Direct Class Plaintiffs" means Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power

Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System; Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Systrax Corporation; Tiberius OC Fund, Ltd.; United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund; and Value Recovery Fund L.L.C.

(q)     "Effective Date" or "Effective Date of Settlement" has the meaning given to it in paragraph 6(a).

(r)     "Escrow Agent" means Huntington National Bank.

(s)     "Exchange-Only Class Plaintiffs" means J. Paul Antonello, Marc G. Federighi, Thomas Gramatis, Doug Harvey, Izee Trading Company, John Kerstein, Michael Melissinos, Mark Miller, Robert Miller, Richard Preschern d/b/a Preschern Trading, Peter Rives, Michael J. Smith, Jeffrey Sterk, and Kimberly Sterk.

(t)     "Execution Date" means the date of the execution of this Settlement Agreement by counsel for all Parties thereto.

(u)     "Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Settlement Agreement shall receive final approval pursuant to Fed. R. Civ. P. 23.

(v)     "Fee and Expense Application" has the meaning given to it in paragraph 9(a).

(w)     "Final Judgment and Order of Dismissal" means the order of the Court, substantially in the form of Exhibit C attached hereto, finally approving the settlement set forth in this Settlement Agreement and dismissing the claims of Class Plaintiffs and Class Members against BTMU.  The Final Judgment and Order of Dismissal shall become final when:  (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an

6

appeal has been filed and either (1) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (2) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this paragraph, an appeal includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind.

(x)     "FX Benchmark Rates" means (i) the WM/Reuters fixing rates, including the 4:00 p.m. London closing spot rate; (ii) the European Central Bank FX reference rates, including the ECB rate set at 1:15 p.m. London time; (iii) the Chicago Mercantile Exchange ("CME") daily settlement rates, including the rate set at 2:00 p.m. Central Time; and (iv) any other FX benchmark, fixing or reference rate.

(y)     "FX Exchange-Traded Instruments" means any and all FX Instruments that were listed for trading through an exchange, including, but not limited to, FX futures contracts and options on FX futures contracts.

(z)     "FX Instruments" means FX spot transactions, forwards, swaps, futures, options, and any other FX instrument or FX transaction the trading or settlement value of which is related in any way to FX rates.

(aa)    "FX Trading" means the trading of FX Instruments and FX Exchange-Traded Instruments, regardless of the manner in which such trading occurs or is undertaken, or a decision to withhold bids and offers with respect to FX Instruments or FX Exchange-Traded Instruments.

(bb)    "Investment Vehicles" means any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which a Defendant has or may have a direct or indirect interest, or as to which its

7

affiliates may act as an investment advisor, but of which a Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

(cc)   "Mail Notice" means the Notice of Proposed Settlements of Class Action to be provided to the Classes as provided in this Settlement Agreement, the Preliminary Approval Order, and the Notice Order.

(dd)   "Mediator" means Kenneth Feinberg or, if he is unable or unwilling to serve in that capacity, an alternate jointly selected in good faith by Class Lead Counsel and BTMU's Counsel.

(ee)   "Net Settlement Fund" has the meaning given to it in paragraph 10(f).

(ff)   "Notice Order" or "Order Approving the Plan of Distribution and Form and Manner of Notice of Settlement Agreements" means an order of the Court, substantially in the form of Exhibit B attached hereto, that approves the form of Class Notice and preliminarily approves the proposed Plan of Distribution.

(gg)   "Parties" means BTMU and Class Plaintiffs.

(hh)   "Person" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

(ii)   "Plan of Distribution" means a plan or formula of allocation of the Net Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the settlement, Taxes and tax expenses, and such attorneys' fees, costs, expenses, interest, and other expenses as may be awarded by the Court.  At a time and in a manner determined by the Court, Class Lead Counsel shall submit for Court approval a Plan of Distribution for each of the Classes that will provide for the distribution of the applicable Net Settlement Fund.  Each Plan of Distribution shall be devised and implemented with the assistance of the Settlement Administrator.

(jj)    "Preliminary Approval Order" means an order of the Court, substantially in the

form of Exhibit A attached hereto, that preliminarily approves the settlement set forth in this

Settlement Agreement.

(kk)    "Publication Notice" means the summary notice of proposed settlements and

hearing for publication.

(ll)    "Released Claims" means any and all manner of claims, including "Unknown

Claims" as defined below, causes of action, cross-claims, counter-claims, charges, liabilities,

demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any

obligations of any kind whatsoever (however denominated), whether class or individual, in law or

equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature,

for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred,

and liabilities of any nature whatsoever (including joint and several), known or unknown,

suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any

conduct alleged or that could have been alleged in and arising from the factual predicate of the

Action, or any amended complaint or pleading therein, from the beginning of time until the

Effective Date, which shall be deemed to include but not be limited to: (i) communications related

to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other

FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms,

instant messages, email, or other means; (ii) agreements, arrangements, or understandings related

to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other

FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms,

instant messages, email, or other means; (iii) the sharing or exchange of customer information

between a Released Party and any other FX dealer or any other participant in the conspiracy

9

alleged in the Action—including but not limited to customer identity, trading patterns, transactions, net positions or orders, stop losses or barrier options, pricing, or spreads related to FX Instruments, FX Trading, or FX Benchmark Rates; (iv) the establishment, calculation, manipulation, or use of the WM/Reuters fixing rates, including the 4:00 p.m. London closing spot rates, and trading that may impact such rates; (v) the establishment, calculation, manipulation, or use of the European Central Bank FX reference rates, including the ECB rate set at 1:15 p.m. London time; (vi) the establishment, calculation, manipulation, or use of the CME daily settlement rates; (vii) the establishment, calculation, or use of any other FX benchmarks, including benchmark fixing rates, benchmark settlement rates, or benchmark reference rates; (viii) the establishment, calculation, communication, manipulation, or use of the price, spread, or rate of any FX Instrument or FX Exchange-Traded Instrument; and (ix) the exchange of customer information or confidential information in the possession of BTMU between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action related to the establishment, calculation, manipulation, or use of any FX price, spread, or rate. Provided, however, Released Claims do not include: (i) "last look" claims related to possible delays built into BTMU's algorithmic or electronic trading platforms that resulted in BTMU declining spot orders or requests to trade, including trading on electronic communications networks, that were submitted based upon prices BTMU quoted or displayed in over-the-counter FX markets, notwithstanding anything to the contrary herein; and (ii) claims based upon transactions executed solely outside the United States and arising under foreign laws belonging to any Releasing Party or Person that is domiciled outside the United States.

(mm)  "Released Party" or "Released Parties" means BTMU and each of their past, present, and future, direct and indirect parents (including holding companies), subsidiaries,

affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), divisions, predecessors, successors, and each of their respective officers, directors, employees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, and assigns.  Released Parties do not include: (i) any of the other Defendants; or (ii) any other Person formerly named in the Action.

(nn)    "Releasing Parties" means individually and collectively Class Plaintiffs and each Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Settlement Agreement, and whether or not they make a claim for payment from the Net Settlement Fund.

(oo)    "Settlement Administrator" means Kenneth Feinberg.

(pp)    "Settlement Agreement" means this Stipulation and Agreement of Settlement, together with any exhibits attached thereto, which are incorporated herein by reference.

(qq)    "Settlement Fund" means the escrow account established pursuant to paragraph 10(a) of this Settlement Agreement, including all monies held therein in accordance with the terms of this Settlement Agreement.

(rr)    "Settling Defendants" (and each a "Settling Defendant") means BTMU; Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Inc.; Barclays Bank PLC and Barclays Capital Inc.; BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.; Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.; The Goldman Sachs Group, Inc. and Goldman, Sachs

11

& Co.; HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc.; JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities, Inc.; and UBS AG, UBS Group AG, and UBS Securities LLC.

(ss)    "Settling Defendants' Claims" means claims, including "Unknown Claims" as defined below, that any Released Party may have against a Releasing Party or Class Lead Counsel relating to the institution, prosecution, or settlement of the Action, except for claims to enforce any of the terms of this Settlement Agreement.

(tt)    "TAC" means the Third Consolidated Amended Class Action Complaint.

(uu)    "Taxes" has the meaning given to it in paragraph 12.

(vv)    "Total Settlement Amount" means $10,500,000 (Ten Million and Five Hundred Thousand U.S. Dollars).

(ww)    "Unknown Claims" means any and all Released Claims against the Released Parties which Releasing Parties do not know or suspect to exist in his, her, or its favor as of the Effective Date, and any Settling Defendants' Claims against Releasing Parties which Released Parties do not know or suspect to exist in his, her, or its favor as of the Effective Date, which if known by the Releasing Parties or Released Parties might have affected his, her, or its decision(s) with respect to the settlement.   With respect to any and all Released Claims and Settling Defendants' Claims, the Parties stipulate and agree that by operation of the Final Judgment and Order of Dismissal, upon the Effective Date, Releasing Parties and Released Parties shall have expressly waived, and each Class Member shall be deemed to have waived, and by operation of the Final Judgment and Order of Dismissal shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

and any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542.

The Releasing Parties and Released Parties may hereafter discover facts other than or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Released Claims and Settling Defendants' Claims. Nevertheless, Class Plaintiffs and the Released Parties shall expressly, fully, finally, and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims and Settling Defendants' Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Class Plaintiffs and the Released Parties acknowledge, and Class Members shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims and Settling Defendants' Claims was separately bargained for and was a key element of the Settlement Agreement.

## 3.    SETTLEMENT CLASS CERTIFICATION

(a)    The Parties hereby stipulate solely for settlement purposes that the requirements of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) are satisfied, and, subject to Court approval, the following settlement classes shall be certified as to BTMU:

(i)         The Direct Settlement Class: All Persons who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.  Specifically excluded from the Direct Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class. Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.

(ii)        The Exchange-Only Settlement Class: All Persons who, between January 1, 2003 and December 15, 2015, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange.   Specifically excluded from the Exchange-Only Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on

their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Exchange-Only Settlement Class. Also excluded from the Exchange-Only Settlement Class are: (i) any judicial officer presiding over this action and any member of his/her immediate family and judicial staff, and any juror assigned to this Action; and (ii) any Person who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator, where such Person was either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.

(b)     The Parties' agreement as to certification of the Classes is solely for purposes of effectuating a settlement and for no other purpose. BTMU retains all of its objections, arguments, and defenses with respect to class certification, and reserves all rights to contest class certification, if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close. The Parties acknowledge that there has been no stipulation to any classes or certification of any classes for any purpose other than effectuating the settlement, and that if the settlement set forth in this Settlement Agreement does not receive the Court's final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the settlement set forth in this Settlement Agreement otherwise fails to close, this agreement as to certification of the settlement classes becomes null and void *ab initio*, and this Settlement Agreement or any other settlement-related statement may not be cited regarding

certification of the settlement class, or in support of an argument for certifying a class for any purpose related to this proceeding.

## 4.    GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT

The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms of this Settlement Agreement.  This includes BTMU serving notice on those entities required to receive notice pursuant to 28 U.S.C. § 1715.

## 5.    PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING

(a)    Within the later of (X) sixty (60) days following the Execution Date or (Y) thirty (30) days after the receipt of the data required by paragraph 14(b)(iii), or such later date agreed to by the Parties, Class Lead Counsel shall submit to the Court, and BTMU shall support, a motion requesting entry of the Preliminary Approval Order.  That motion shall:

(i)    seek certification of the Classes solely for settlement purposes, pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

(ii)    request preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23;

(iii)    seek the appointment of Direct Class Plaintiffs as Class representatives of the Direct Settlement Class and Exchange-Only Class Plaintiffs as Class representatives of the Exchange-Only Settlement Class, and Class Lead Counsel as interim Class counsel under Fed. R. Civ. P. 23(g);

(iv)    explain that Class Plaintiffs will submit a separate application, seeking approval of the form, and method of dissemination, of: (1) the Mail Notice,

16

which shall be mailed along with a proof of claim and release form via first-class mail; and (2) the Publication Notice, which the parties intend to be the best notice practicable under the circumstances, and which shall, at a minimum, be published once in *The Wall Street Journal*, once in *Investor's Business Daily*, once in *FX Week*, once in the national edition of the *Financial Times*, once in the *International New York Times*, once in *The Guardian* (U.K. edition), and once over *PR Newswire*. With the object of reducing the costs of Class Notice, Class Lead Counsel shall use their reasonable best efforts to coordinate the provision of Class Notice pertaining to this Settlement Agreement with the provision of notice for any other settlements that may be reached in the Action as of the time of Preliminary Approval. The Claims Administrator will also establish and maintain a dedicated settlement website, from which each member of the Classes can view and download relevant documents, including the Mail Notice, the Publication Notice, and the proof of claim and release form;

(v)     seek appointment of Garden City Group as the Claims Administrator and Kenneth Feinberg as the Settlement Administrator;

(vi)    seek appointment of Huntington National Bank as Escrow Agent;

(vii)   stay all proceedings in the Action against BTMU until the Court renders a final decision on approval of the settlement set forth in this Settlement Agreement; and

(viii)  attach a proposed form of order, which includes such provisions as are typical in such orders, including: (1) setting a date for the Fairness Hearing,

and (2) a provision that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* without prejudice to their rights, claims, or defenses.

(b)     Class Notice shall apprise each member of a Class of his, her or its right to exclude themselves from, or object to, the settlement.

(c)     To the extent not prohibited by any law, regulation, policy, or other rule of any governmental body prohibiting disclosure of client identifying data, BTMU shall, at its own expense and as reasonably available to BTMU and permissible by law, supply to Class Lead Counsel in electronic format, or other such form as may be reasonably requested by Class Lead Counsel, the Settlement Administrator, and/or the Claims Administrator the names and addresses of all clients, who, between January 1, 2003 and December 15, 2015, entered into FX Instruments and FX Exchange-Traded Instruments, who would otherwise qualify as members of the Direct Settlement Class or Exchange-Only Settlement Class, who can be reasonably identified based on client records that BTMU has in its possession, custody, or control, and who are domiciled in the United States or its territories, or who are domiciled outside the United States or its territories and are not subject to foreign bank secrecy and/or data privacy laws.  BTMU shall, as reasonably available to BTMU and permissible by law, supply to Rust Consulting (or another appropriate and qualified vendor), an agent of the Settling Defendants, the names and addresses of all clients who would otherwise qualify as members of the Direct Settlement Class or Exchange-Only Settlement Class, who can be reasonably identified based on client records that BTMU has in its possession, custody, or control, and who are domiciled outside the United States or its territories, and who are subject to foreign bank secrecy and/or data privacy laws.  Notwithstanding the foregoing, as necessary in light of applicable foreign bank secrecy and/or data privacy laws, BTMU may

18

directly (in lieu of Rust Consulting or another appropriate and qualified vendor) provide copies of any Mail Notice and Claim Form to other potential members of the Direct Settlement Class or Exchange-Only Settlement Class, who have been identified by BTMU in light of applicable foreign bank secrecy and/or data privacy laws. Any information provided pursuant to this provision shall be covered by the protective order in effect in the Action, or, if no protective order is in effect, shall nevertheless be maintained as confidential. Moreover, any information provided pursuant to this provision shall be used solely for purposes of providing notice and administering and verifying claims, as set forth in paragraphs 5, 11, and 13(b), and any distribution of such information shall be limited to what is necessary for those purposes. If the Parties are unable to agree on the scope of the client-identifying data to be produced, the issue shall be submitted to the Mediator for resolution. Mail Notice shall be mailed to those Persons that are identified by BTMU. Publication Notice to other members of a Class shall be by publication as set forth above, if approved by the Court.

(d)     Any Person falling within the definition of the Classes may request to be excluded from the Classes ("Request for Exclusion"). A Request for Exclusion must be: (i) in writing, (ii) signed by the Person or his, her, or its authorized representative, (iii) state the name, address, and phone number of that Person, and (iv) include: (1) proof of membership in either the Direct Settlement Class or the Exchange-Only Settlement Class, including documentation evidencing FX Trading during the Class Period; and (2) a signed statement that "I/we hereby request that I/we be excluded from the Settlements in the *In re Foreign Exchange Benchmark Rates Antitrust Litigation*" or the substantive equivalent. The request must be mailed to the Claims Administrator at the address provided in the Mail Notice and be postmarked no later than fifty (50) days prior to the date set for the Fairness Hearing or any other date set by the Court. Unless the Court orders

otherwise, a Request for Exclusion that does not include all of the foregoing information, that does not contain the proper signature, that is sent to an address other than the one designated in the Class Notice, or that is not sent within the time specified, shall be invalid, and the Person(s) filing such an invalid request shall be a Class Member and shall be bound by the settlement set forth in the Settlement Agreement, if approved.   All Persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph shall be excluded from the Classes, shall have no rights under the Settlement Agreement, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Settlement Agreement.  Class Lead Counsel shall cause to be provided to BTMU's Counsel copies of all Requests for Exclusion, together with all documents and information provided with such Requests, and any written revocation of Requests for Exclusion, within three (3) business days of receipt by Class Lead Counsel of that exclusion request.

(e)     Any Person who has not requested exclusion from one of the Classes and who objects to the settlement set forth in this Settlement Agreement may appear in person or through counsel, at that Person's own expense, at the Fairness Hearing to present any evidence or argument that the Court deems proper and relevant.  However, no such Person shall be heard, and no papers, briefs, pleadings, or other documents submitted by any such Person shall be received and considered by the Court, unless such Person properly submits a written objection that includes:  (i) a notice of intention to appear; (ii) proof of membership in either the Direct Settlement Class or the Exchange-Only Settlement Class, including documentation evidencing FX Trading during the Class Period; and (iii) the specific grounds for the objection and any reasons why such Person desires to appear and be heard, as well as all documents or writings that such Person desires the Court to consider.  Such a written objection must be both filed with the Court no later than fifty (50)

days prior to the date set for the Fairness Hearing and mailed to Class Lead Counsel and BTMU's Counsel at the addresses provided in the Class Notice and postmarked no later than fifty (50) days prior to the date set for the Fairness Hearing.  Any Person that fails to object in the manner prescribed herein shall be deemed to have waived his, her, or its objections and will forever be barred from making any such objections in the Action, unless otherwise excused for good cause shown, as determined by the Court.

(f)      If the Preliminary Approval Order and the Notice Order are entered by the Court, Class Plaintiffs shall seek, and BTMU shall support, entry of a Final Judgment and Order of Dismissal, substantially in the form of Exhibit C attached hereto, that:

(i)      certifies the Classes pursuant to Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3) solely for the purpose of the settlement;

(ii)      approves finally the settlement set forth in this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to Class Members within the meaning of Fed. R. Civ. P. 23 and directing its consummation according to its terms;

(iii)      finds that the Class Notice constituted due, adequate, and sufficient notice of the settlement set forth in this Settlement Agreement and the Fairness Hearing and meets the requirements of due process and the Federal Rules of Civil Procedure;

(iv)      directs that, as to the Released Parties, the Action shall be dismissed with prejudice and, except as provided for in this Settlement Agreement, without costs.  Such dismissal shall not affect, in any way, the right of Class Plaintiffs or Class Members to pursue claims, if any, outside the scope of the Released Claims;

(v)        orders that the Releasing Parties are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims against any Released Party;

(vi)        retains with the Court exclusive jurisdiction over the settlement and this Settlement Agreement, including the administration and consummation of the settlement; and

(vii)        determines under Fed. R. Civ. P. 54(b) that there is no just reason for delay and directs that the judgment of dismissal as to BTMU shall be final and entered forthwith.

## 6.    EFFECTIVE DATE OF SETTLEMENT

(a)      The Effective Date of Settlement shall be the date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

(i)        the contribution to the Settlement Fund has been made pursuant to this Settlement Agreement;

(ii)        entry of the Preliminary Approval Order;

(iii)        entry of the Notice Order;

(iv)        final approval by the Court of the settlement set forth in this Settlement Agreement, following Class Notice and the Fairness Hearing;

(v)        no Party has exercised his, her, or its rights to terminate this Settlement Agreement pursuant to paragraphs 10(c), 13(a), or 13(b); and

(vi)        entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final, or, in the event that the Court enters an Alternative Judgment and neither Class Plaintiffs nor BTMU elects to terminate this Settlement Agreement, such Alternative Judgment becomes final.

(b)      Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to any Plan of Distribution and/or Fee and Expense Application, shall not in any way delay or preclude the Effective Date.

7.      **CLAIMS ADMINISTRATOR AND SETTLEMENT ADMINISTRATOR**

(a)      Pursuant to the Preliminary Approval Order, and subject to Court approval, Class Lead Counsel shall engage a qualified claims administrator as the Claims Administrator and Kenneth Feinberg as the Settlement Administrator.   Both the Claims Administrator and the Settlement Administrator will assist with the settlement claims process as set forth herein.

(b)      The Claims Administrator shall cause copies of the Mail Notice and Claim Form to be mailed to each of the following potential members of the Direct Settlement Class and Exchange-Only Settlement Class: (1) potential members of the Direct Settlement Class and Exchange-Only Settlement Class, whose names and addresses were provided by BTMU to the Claims Administrator; (2) "large traders" of FX Exchange-Traded Instruments whose names were obtained by Class Plaintiffs pursuant to subpoenas to Chicago Mercantile Exchange ("CME") and Intercontinental Exchange, Inc. ("ICE"); (3) Futures Commission Merchants ("FCMs"), who were clearing members and cleared FX Exchange-Traded Instruments on CME and ICE Futures U.S., whose names and addresses were obtained by Class Plaintiffs pursuant to subpoenas to the CME and ICE (such clearing firms shall be requested either to forward copies of the Mail Notice and Claim Form to their customers, who transacted in FX Exchange-Traded Instruments during the Settlement Class Period, or to provide the names and addresses of such customers to the Claims Administrator).

(c)      An agent of BTMU (Rust Consulting) or, as determined in light of applicable foreign bank secrecy and/or data privacy laws, BTMU directly shall cause copies of the Mail Notice and Claim Form to be mailed to other potential members of the Direct Settlement Class and Exchange-Only Settlement Class in light of applicable foreign bank secrecy and/or data privacy laws.

(d)      All fees, costs, and expenses of Settling Defendants' agent (Rust Consulting) will be paid from the Settlement Fund, except that Settling Defendants shall pay any non-postage related costs of their agent (Rust Consulting) to the extent such costs exceed what the Claims Administrator would reasonably charge for such services and any costs of administration incurred by the Claims Administrator and Rust Consulting together exceed $2,000,000 (two million dollars). To the extent BTMU accomplishes any mailings directly pursuant to paragraph 7(c) above, BTMU will bear its own costs other than out of pocket disbursements for postage.

(e)      The Settlement Administrator shall assist in the development of the Plan of Distribution and the resolution of any disputes between Class Members and the Claims Administrator pursuant to the Plan of Distribution.

## 8.      SCOPE AND EFFECT OF SETTLEMENT

(a)      The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of: (i) the Action against BTMU; (ii) any and all Released Claims as against all Released Parties; and (iii) any and all Settling Defendants' Claims as against all Releasing Parties.

(b)      Upon the Effective Date of Settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have fully, finally, and forever waived, released, relinquished, and discharged (1) all Released Claims against the Released Parties, regardless of whether such Releasing Party executes and delivers a proof of claim and release form, and (2) any rights to the protections afforded under California Civil Code

24

§ 1542 and/or any other similar, comparable, or equivalent laws; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

(c)     Upon the Effective Date of Settlement, each of the Released Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal shall have fully, finally, and forever released and discharged (1) Class Plaintiffs, Class Lead Counsel, and each and all Class Members from each and every one of the Settling Defendants' Claims, and (2) any rights to the protections afforded under California Civil Code § 1542 and/or any other similar, comparable, or equivalent laws; (ii) shall forever be enjoined from prosecuting the Settling Defendants' Claims; and (iii) agrees and covenants not to sue on the basis of any Settling Defendants' Claims, or to assist any third party in commencing or maintaining any such suit related to any Settling Defendants' Claims.

(d)     The releases provided in this Settlement Agreement shall become effective immediately upon occurrence of the Effective Date of Settlement without the need for any further action, notice, condition, or event.

(e)     As an express and material condition of this Settlement Agreement, the Court shall enter an order, in the Final Judgment and Order of Dismissal or otherwise, to the extent not prohibited by law, barring claims by any Person against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.

(f)     In the event that this Settlement Agreement is terminated pursuant to paragraphs 10(c), 13(a), or 13(b), or any condition for the final approval of this Settlement Agreement is not satisfied, the release and covenant not to sue provisions of the foregoing paragraphs shall be null and void and unenforceable.

## 9.     FEE AND EXPENSE APPLICATION

(a)     Class Lead Counsel will submit an application or applications (the "Fee and Expense Application") to the Court for an award from the Settlement Fund of: (i) attorneys' fees not to exceed 33-1/3% of the Settlement Fund; (ii) reimbursement of litigation expenses, plus interest, incurred in connection with the prosecution of the Action; and/or (iii) service awards for Class Plaintiffs in conjunction with their representation of the Class.  BTMU will take no position regarding the Fee and Expense Application.  Attorneys' fees, expenses, and interest as are awarded by the Court ("Fee and Expense Award") to Class Lead Counsel shall be paid from the Settlement Fund to Class Lead Counsel immediately upon entry by the Court of an order awarding such amounts, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Class Lead Counsel's joint and several obligation to repay those amounts to the Settlement Fund, plus accrued interest at the same net rate as is earned by the Settlement Fund, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Settlement Fund is required consistent with the provisions of paragraph 13 hereof.  In such event, Class Lead Counsel shall, within ten (10) business days from the event which requires repayment of the Fee and Expense Award, refund to the Settlement Fund the Fee and Expense Award paid to them, along with interest.

(b)     Notwithstanding any other provision of this Settlement Agreement to the contrary, the Fee and Expense Application shall be considered by the Court separate and apart from its

consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, or any appeal of any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Settlement Agreement or the settlement of the Action, or affect the finality or binding nature of any of the releases granted hereunder. The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees or expenses to Class Lead Counsel.

## 10.    THE SETTLEMENT FUND

(a)      The Settlement Fund shall be established as an escrow account at Huntington National Bank and administered by the Escrow Agent, subject to approval by the Court. The Settlement Fund shall be administered pursuant to this Settlement Agreement and subject to the Court's continuing supervision and control. No monies shall be paid from the Settlement Fund without the specific authorization of Class Lead Counsel. Counsel for the Parties agree to cooperate, in good faith, to form an appropriate escrow agreement in conformance with this Settlement Agreement.

(b)      BTMU shall cause the payment of $10,500,000.00 to be transferred to the Escrow Agent within fourteen (14) business days following entry of the Preliminary Approval Order, provided that within five (5) days following entry of the Preliminary Approval Order, Class Lead Counsel shall provide BTMU with such information as BTMU may require to complete the wire transfer. These funds, together with any interest earned thereon, shall constitute the Settlement Fund. Class Lead Counsel may pay from the Settlement Fund, without further approval from BTMU or the Court, the costs and expenses reasonably and actually incurred up to the sum of $500,000 in connection with providing Class Notice and the administration of the settlement, including, without limitation, locating members of the Class, soliciting Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to

Authorized Claimants, and processing proof of claim and release forms. All costs and expenses incurred in connection with providing Class Notice and the administration of the settlement in excess of $500,000 shall be paid from the Settlement Fund, subject to approval from the Court.

(c)     Without prejudice to the Class Plaintiffs' right to seek enforcement of this Settlement Agreement, if the Total Settlement Amount is not timely transferred to the escrow account, Class Lead Counsel may terminate this Settlement Agreement if: (i) Class Lead Counsel has notified BTMU's Counsel in writing of Class Lead Counsel's intention to terminate this Settlement Agreement; and (ii) the entire Total Settlement Amount is not transferred to the Settlement Fund within ten (10) business days after Class Lead Counsel has provided such written notice.

(d)     The Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either: (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC"); or (b) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund.

(e)     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and the Plan of Distribution approved by the Court.

(f)     The Settlement Fund shall be applied as follows:

28

(i)    to pay the Fee and Expense Award, if and to the extent allowed by the Court;

(ii)    to pay costs and expenses reasonably and actually incurred in connection with providing Class Notice  and the administration of the settlement, including, without limitation, locating members of the Class, soliciting Class Members' claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, and processing proof of claim and release forms;

(iii)    to pay the Taxes and tax expenses described in paragraph 12 hereof;

(iv)    to pay any other Court approved fees and expenses; and

(v)    to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants for each Class as allowed by the Court pursuant to the Class Distribution Order. In calculating the portion of the Net Settlement Fund allocable to each Class, the Fee and Expense Award, costs of notice and administration, payment of Taxes and tax expenses described in paragraph 12 hereof, and any other Court approved costs and expenses, shall be allocated between the Direct Settlement Class and the Exchange-Only Settlement Class pro rata.

(g)    With the object of reducing the costs of Class Notice, Class Lead Counsel shall use their reasonable best efforts to coordinate the provision of Class Notice pertaining to this Settlement Agreement with the provision of notice for any other settlements that may be reached contemporaneously with this Settlement.  In all events, BTMU shall have no liability for the costs of provision of notice beyond those set forth in paragraphs 7(d) and 10(b).

29

(h)     As set forth above, BTMU shall be responsible for paying the Total Settlement Amount of $10,500,000.00 (Ten Million and Five Hundred Thousand U.S. Dollars).  BTMU shall have no responsibility for any other costs, including, as further detailed in this Settlement Agreement, any attorneys' fees and expenses or any Taxes or tax-related costs relating to the Settlement Fund, but all such fees, expenses, and costs shall be paid from the Settlement Fund, as approved by the Court.

## 11.     ADMINISTRATION OF THE SETTLEMENT

(a)     Any Class Member who does not submit a valid proof of claim and release form will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Settlement Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims.

(b)     The Claims Administrator shall process this settlement based upon proofs of claim submitted in connection with the settlement, and, after entry of the Class Distribution Order, distribute the Net Settlement Fund in accordance with the Class Distribution Order.  Except for their obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, BTMU shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.  Class Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Class Lead Counsel reasonably deems to be formal or technical defects in any proofs of claim submitted, including, without limitation, failure to submit a document by the submission deadline, in the interests of achieving substantial justice.

(c)     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(i)     Each Class Member, at a time determined by the Court, shall be required to submit a proof of claim and release form (as shall be approved by the Court) which, *inter alia*, releases all Released Claims against all Released Parties, is signed under penalty of perjury by an authorized Person, and is supported by such documents or proof as Class Lead Counsel and the Claims Administrator, in their discretion, may deem acceptable;

(ii)     All proofs of claim must be submitted by the date specified in the Preliminary Approval Order and the Notice Order, unless such period is extended by order of the Court.  Any Class Member who fails to submit a proof of claim and release form by such date shall be forever barred from receiving any payment pursuant to this Settlement Agreement (unless, by order of the Court, a later submitted proof of claim and release form by such Class Member is approved), but shall in all other respects be bound by all of the terms of this Settlement Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims.  Provided that it is received before the motion for the Class Distribution Order is filed, a proof of claim and release form shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the proof of claim and release form shall be deemed to have been submitted when actually received by the Claims Administrator.  Notwithstanding the foregoing, Class Lead Counsel shall have the discretion, but not the obligation, to accept

31

late-submitted claims for processing by the Claims Administrator so long as distribution of the proceeds of Settlement Funds is not materially delayed. Class Lead Counsel shall have no liability for failing to accept any late-submitted claims;

(iii) Each proof of claim and release form shall be submitted to and reviewed by the Claims Administrator who shall determine whether the proof of claim and release form is in accordance with this Settlement Agreement and any applicable orders of the Court, and the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to subparagraph 11(c)(v) below. The Claims Administrator will review each approved proof of claim and release form and determine, in accordance with the Plan of Distribution, the amount to be distributed to that claimant. The Released Parties shall not have any role in, or responsibility or liability to any Person for, the solicitation, review, or evaluation of proofs of claim;

(iv) Proofs of claim that do not meet the submission requirements may be rejected. Prior to rejection of a proof of claim and release form, the Claims Administrator shall communicate with the claimant in order to remedy the curable deficiencies in the proofs of claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all claimants whose proofs of claim it proposes to reject, in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Settlement Administrator. If the claimant so desires and complies with the requirements of subparagraph 11(c)(v) below, the claimant may seek review by the Court;

(v) If any claimant whose claim has been rejected, in whole or in part, desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing

of the notice required in subparagraph 11(c)(iv) above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation. If a dispute concerning a claim cannot be otherwise resolved, Class Lead Counsel shall thereafter present the request for review to the Court; and

(vi)    The administrative determinations of the Claims Administrator accepting and rejecting claims, as modified by the Settlement Administrator, as the case may be, shall be presented to the Court, on notice to BTMU's Counsel, for approval by the Court in the Class Distribution Order (as defined in paragraph 11(h)).

(d)    Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, and the claim will be subject to investigation and discovery pursuant to the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as a Class Member and the validity and amount of the claimant's claim. No discovery shall be allowed to be directed to BTMU or any of the Released Parties, and no discovery shall be allowed on the merits of the Action or settlement in connection with processing of the proofs of claim.

(e)    Payment pursuant to this Settlement Agreement and the Plan of Distribution shall be deemed final and conclusive against all Class Members. All Class Members whose claims are not approved shall be barred from any participation in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Settlement Agreement and the settlement, including the terms of the Final Judgment and Order of Dismissal to be entered in the Action and the releases provided for herein, and will be barred from bringing any action or proceeding against the Released Parties concerning the Released Claims.

(f)      All proceedings with respect to the administration, processing, and determination of claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

(g)      The Net Settlement Fund shall be distributed by the Claims Administrator to, or for the account of, Authorized Claimants, as the case may be, only after the Effective Date and after: (i) all claims have been processed and evaluated by the Claims Administrator, and, where requested, by the Settlement Administrator, and all claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) all objections with respect to all rejected or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (iii) all matters with respect to the Fee and Expense Application have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; and (iv) all fees and costs of administration have been paid.

(h)      Class Lead Counsel will apply to the Court for an order (the "Class Distribution Order") approving the Claims Administrator's and, where applicable, the Settlement Administrator's determinations concerning the acceptance and rejection of the claims submitted herein and approving any fees and expenses not previously applied for, including the fees and expenses of the Settlement Administrator and the Claims Administrator, and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to or for the account of Authorized Claimants, as the case may be.

(i)      Class Plaintiffs and Class Members shall look solely to the Settlement Fund as full, final, and complete satisfaction of all Released Claims.  Except as set forth in paragraph 10(b),

BTMU shall have no obligation under this Settlement Agreement or the settlement to pay or cause to be paid any amount of money, and BTMU shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Class Plaintiffs, by any Class Member, or by any Releasing Parties, including but not limited to by their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims. Class Plaintiffs and Class Members acknowledge that as of the Effective Date, the releases given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

(j)     BTMU shall not have a reversionary interest in the Net Settlement Fund. If there is a balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), or reasonably soon thereafter, the Claims Administrator shall, if logistically feasible and economically justifiable, reallocate such balances among Authorized Claimants in an equitable fashion. These redistributions shall be repeated until the remaining balance in the Net Settlement Fund is *de minimis* and such remaining balance shall be donated to an appropriate 501(c)(3) non-profit organization selected by Class Lead Counsel.

## 12. TAXES

(a)     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1, and agree not to take any position for Tax purposes inconsistent therewith. The Settlement Fund, less any amounts incurred for notice, administration, and/or Taxes (as defined below), plus any accrued interest thereon, shall be returned to BTMU, as provided in paragraph 13(c), if the settlement does not become effective for any reason, including by reason of a termination of this Settlement Agreement pursuant to paragraphs 10(c), 13(a), or 13(b).

35

(b)     For the purpose of § 468B of the Code and the Treasury regulations thereunder, Class Lead Counsel shall be designated as the "administrator" of the Settlement Fund.  Class Lead Counsel shall timely and properly file all income, informational, and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns shall be consistent with this paragraph 12 and in all events shall reflect that all Taxes (as defined below) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

(c)     All:  (i) taxes or other similar imposts or charges (including any estimated taxes, interest, penalties, or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1 (or any relevant equivalent for state tax purposes); and (ii) other taxes or tax expenses imposed on or in connection with the Settlement Fund (collectively "Taxes"), shall promptly be paid out of the Settlement Fund by the Escrow Agent without prior order from the Court. The Escrow Agent shall also be obligated to, and shall be responsible for, withholding from distribution to Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes. The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

(d)     Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent, Claims Administrator, or Settlement Administrator, or any of their respective designees or agents, in

connection with the administration of the Settlement Fund or otherwise; (ii) the Plan of Distribution; (iii) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns. The Escrow Agent shall indemnify and hold harmless the Parties out of the Settlement Fund from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence.

## 13.    TERMINATION OF SETTLEMENT

(a)    Class Plaintiffs, through Class Lead Counsel, and BTMU, through BTMU's Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Settlement Agreement by providing written notice of their election to do so ("Termination Notice") to all other Parties hereto within thirty (30) days of the date on which: (i) the Court enters an order declining to enter the Preliminary Approval Order in any material respect; (ii) the Court enters an order refusing to approve this Settlement Agreement or any material part of it; (iii) the Court enters an order declining to enter the Final Judgment and Order of Dismissal in any material respect; (iv) the Court enters an Alternative Judgment; (v) the Final Judgment and Order of Dismissal is modified or reversed by a court of appeal or any higher court in any material respect; or (vi) an Alternative Judgment is modified or reversed by a court of appeal or any higher court in any material respect. Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application and/or any Plan of Distribution, or any determination on appeal from any such order, shall not provide grounds for termination of this Settlement Agreement or settlement.

(b)    Upon application to the Mediator, this Settlement Agreement may be terminated if the Mediator determines that all Persons that excluded themselves from the Classes pursuant to

paragraph 5(d) would likely have been eligible to receive collectively (but for their exclusion) a material part of the potential distributions from the Settlement Fund.  Any application to terminate under this paragraph must be made in writing within thirty (30) days following the deadline for Persons to exclude themselves from the Classes.

(c)     Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, is not approved, or the Effective Date fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered, and any portion of the Settlement Fund previously paid by or on behalf of BTMU, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to in paragraph 9(a) hereof), less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable from the Settlement Fund (not to exceed $500,000 without the prior approval of the Court) shall be returned to BTMU within ten (10) business days from the date of the event causing such termination.  At the request of BTMU's Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to BTMU.

(d)     Neither BTMU nor BTMU's Counsel shall directly, or indirectly, solicit or encourage any Person to request exclusion from the Class.

## 14.     CONFIRMATORY DISCOVERY AND COOPERATION OBLIGATIONS

(a)     In consideration for the dismissal of Class Plaintiffs' and the Class Members' claims against BTMU in the Action and the release of the Released Claims, subject to any operative order from the Court, BTMU agrees to provide reasonable cooperation, including confirmatory discovery,  as requested unanimously by Class Lead Counsel, to the benefit of Class

Plaintiffs and the Class Members, relating to all forms and types of Released Claims, provided, however, that BTMU's obligations with respect to cooperation, including the timing and substance of cooperation, shall be subject to such limitations as are ordered by the Court. All cooperation and confirmatory discovery shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided. BTMU's cooperation obligations shall apply only to Releasing Parties who act with, by or through Class Lead Counsel pursuant to this Settlement Agreement. Notwithstanding any other provision in this Settlement Agreement, BTMU may assert, where applicable, the work-product doctrine, the attorney-client privilege, the common interest privilege, the joint defense privilege, the bank regulatory or examination privilege, obligations under applicable data privacy laws or regulations, and/or any other applicable privilege or protection with respect to any documents, interviews, declarations and/or affidavits, depositions, testimony, material, and/or information requested under this Settlement Agreement.  For any documents withheld from the production of documents to Class Plaintiffs pursuant to this Settlement Agreement, BTMU shall, if directed by the Mediator, create a privilege log describing withheld documents in sufficient detail so as to explain the nature of the privilege asserted or the basis of any law, instruction, directive, regulation, policy, or other rule of any governmental body protecting disclosure of such documents.  This privilege log shall be produced to Class Plaintiffs only upon direction of the Mediator if a dispute arises, and after production of the privilege log, the Parties will make a good faith effort to resolve the dispute.  In the event of a disagreement between BTMU and Class Lead Counsel regarding a claim of privilege or work product, the Parties will seek resolution of such disputes from the Mediator, with BTMU retaining the right to seek a ruling from the Court with respect to the applicability of privilege or work product.  If any document protected by the attorney-client privilege, attorney work-product doctrine, the common interest

doctrine, the joint defense privilege, the bank regulatory or examination privilege, and/or any other applicable privilege or protection, or by any law, instruction, directive, regulation, policy, or other rule of any governmental body protecting disclosure of such documents is accidentally or inadvertently produced, the document shall promptly be returned to BTMU, and its production shall in no way be construed to have waived any privilege or protection attached to such document. The confidentiality of any documents, declarations, affidavits, deposition testimony, and information provided to Class Plaintiffs pursuant to this provision shall be covered by the protective order in effect in the Action, in the same manner as discovery material. If no protective order is in effect, any such documents, declarations, affidavits, deposition testimony, and information shall be maintained as confidential and available only to Class Lead Counsel and BTMU's Counsel. None of the cooperation provisions are intended to, nor do they, waive any applicable privilege or protection. BTMU's Counsel will meet with Class Lead Counsel as is reasonably necessary to discuss any applicable domestic or foreign privilege or protection. The information provided by BTMU's Counsel in connection with oral presentations may be utilized by Class Plaintiffs or Class Lead Counsel to assist in the prosecution of the Action or any action related to any Released Claim, but not for the prosecution of any action or proceeding against any Released Party nor for any other purpose whatsoever. The Parties expressly agree that any use of the information provided in connection with the confirmatory discovery and cooperation obligations set forth in this paragraph 14, including without limitation oral presentations, may be used directly or indirectly by Class Plaintiffs or Class Lead Counsel solely in connection with the prosecution of the Action or any action related to any Released Claim, but not for the prosecution of any action or proceeding against BTMU, any Released Party, or for any other purpose

whatsoever.  Such information may not be used in connection with the prosecution of any claims that are not Released Claims.

(b)      Subject to the foregoing paragraph, BTMU will provide Class Plaintiffs and Class Members the following cooperation and confirmatory discovery but in all events limited to the subject matter of the Released Claims:

(i)      **Preliminary Approval:**  BTMU shall cooperate to the extent reasonably necessary in connection with Class Lead Counsel's preparation of the motion for preliminary approval and any related documents necessary to effectuate and implement the terms and conditions of this Settlement Agreement.

(ii)      **Proffers:**  Beginning within ten (10) business days of the Execution Date, and following a request by Class Lead Counsel, BTMU's Counsel will meet with Class Lead Counsel at a mutually agreeable time and place to provide: (1) a general description of FX Trading; and (2) a description of facts relevant to conduct relating to all forms and types of Released Claims, including but not limited to (a) the conduct and (b) the products and instruments affected by such conduct. To the extent not prohibited by any operative order of the Court, or any law, regulation, policy, instructive, direction, or other rule of any governmental body protecting disclosure of such information, the proffer shall also identify all current and former officers, directors, and employees of BTMU who have been interviewed by any United States or European country governmental body, including but not limited to the U.S. Department of Justice ("DOJ"), U.S. Commodities Futures Trading Commission ("CFTC"), Federal Reserve Bank, Office of Comptroller of the Currency, ("OCC"), New York Department of Financial Services ("NYDFS"), U.S. Securities and Exchange Commission ("SEC"), United Kingdom Financial Conduct Authority ("FCA"),

United Kingdom Serious Fraud Office ("SFO"), European Commission ("EC"), the Swiss Competition Commission ("Swiss WEKO"), the Swiss Financial Market Supervisory Authority ("Swiss FINMA"), and the German Federal Financial Supervisory Authority ("BaFin"), investigating alleged manipulative or anticompetitive conduct in, or affecting, FX Trading, and include the last known contact information for any former officers, directors and employees of BTMU identified pursuant to this paragraph, and, if known by BTMU to be represented by counsel, then contact information for counsel.

(iii) **Production of Transaction Data:** As soon as possible after the Execution Date, the Parties shall agree on a schedule to meet and confer about production by BTMU of transaction data related to the subject matter of the Action. If the Parties are unable to agree on the scope of the transaction data to be produced, the issue shall be submitted to the Mediator for resolution. BTMU shall produce the transaction data agreed upon (or, in the event no agreement can be reached, that the Mediator directs) as expeditiously as practicable.

(iv) **Production of Documents**: BTMU, within ten (10) business days after the Execution Date, shall commence preparation for production to Class Plaintiffs, in a mutually agreeable electronic format, and to the extent not prohibited by any operative Order of the Court, or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such documents, those documents that it has already identified as relating to the allegations set forth in the TAC. Upon request from Class Lead Counsel, BTMU shall produce these documents to Class Plaintiffs to the extent not prohibited by any operative Order of the Court or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such

documents within ten (10) business days after entry of the Preliminary Approval Order. Within ten (10) business days after the Execution Date, the parties shall meet and confer on the scope of any additional initial document production related to any Released Claims.

(v)     **Production of Additional Documents and Data:**  After the entry of the Preliminary Approval Order, while the Action or any action related to any Released Claims remains pending, at Class Lead Counsel's written request and explanation, BTMU will use its reasonable best efforts to produce reasonably requested documents and transactional data in a mutually agreeable electronic format, to the extent such production is not prohibited by the any operative Order of the Court, or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such documents.  The Parties shall meet and confer over any such requests, and in the event of a disagreement between BTMU and Class Lead Counsel regarding the scope, burden, relevance, or permissibility of any such requests, the Parties will seek resolution of such disputes from the Mediator.  To the extent that it is reasonably able to do so, BTMU shall also identify any documents formerly in its possession, custody, or control that it is currently unable to produce.

(vi)     **Further Oral Presentation(s):**  After the production of transaction data and documents described in paragraphs 14(b)(iv) and (v) or as otherwise agreed to by the Parties, and to the extent not prohibited by any operative Order of the Court, or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such information, BTMU's Counsel shall provide another oral presentation(s) at a mutually agreeable time and place to provide Class Lead Counsel: (1) BTMU's Counsel's understanding of the information contained in such documents; and (2) to the

extent known, the specific locations and dates of all meetings or communications relating to the transactions and conduct that are the subject matter of all forms and types of Released Claims including, the identification, last known contact information of all current and former officers, directors, and employees of BTMU, and, if known by BTMU to be represented by counsel other than BTMU's Counsel, contact information for their counsel, and any other bank in each such meeting or communication, and a description of the documents prepared at or related to each such meeting or communication.  In connection with the production of transactional data, BTMU shall use reasonable best efforts to make available its current personnel, at reasonable times, to assist Class Lead Counsel in understanding such data.   For all documents produced by BTMU pursuant to this Settlement Agreement that are not in English, BTMU shall provide any certified or uncertified English translations of such documents it has available.  BTMU is not obligated to create any new translations of documents for use by Class Plaintiffs or Class Lead Counsel.

(vii)      **Interviews**:   After the entry of the Preliminary Approval Order, upon reasonable notice, and to the extent not prohibited by any operative Order of the Court or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such information, at BTMU's expense, BTMU shall use its reasonable best efforts to make available for interviews with Class Lead Counsel and/or their experts no more than three (3) current BTMU employees designated by Class Lead Counsel. Each interview shall take place on a single day and shall not exceed eight hours. The interviews will not be videotaped, recorded, or professionally transcribed. BTMU will also respond to reasonable follow-up inquiries of Class Lead Counsel throughout the

duration of this Action or any action related to any Released Claims. At Class Lead Counsel's request, and for good cause, BTMU will meet and confer regarding no more than five (5) additional interviews of current BTMU employees sought by Class Lead Counsel, but failing agreement between the Parties, the Parties will seek resolution of such disputes from the Mediator. If BTMU is unable to make a requested current BTMU employee available in the United States, BTMU shall use its reasonable best efforts to make the individual available at such alternative location as Class Lead Counsel may reasonably request. Notwithstanding any other provision of this Settlement Agreement, in the event that BTMU believes that Class Lead Counsel has unreasonably designated any current employee for interview, the Parties agree to meet and confer regarding such designation and seek resolution from the Mediator if necessary. BTMU shall use good faith efforts to assist Class Lead Counsel in arranging interviews with former BTMU employees. To the extent not prohibited by any operative Order of the Court, or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such information, BTMU will provide Class Lead Counsel with the last known contact information for any former employees of BTMU identified pursuant to this paragraph and, if known by BTMU to be represented by counsel, the counsel's contact information. Class Lead Counsel and BTMU will confer regarding the use of telephone interviews where appropriate. Other than its own legal fees, BTMU shall not be responsible for any expenses associated with interviews of former BTMU employees, so long as such former employees are separately represented or unrepresented.

(viii)     **Declarations and Affidavits:** After the entry of the Preliminary Approval Order, upon reasonable notice, and to the extent not prohibited by any operative Order of

the Court, or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such information, at BTMU's expense, BTMU shall use its reasonable best efforts to make available to Class Lead Counsel no more than three (3) current BTMU employees designated by Class Lead Counsel for the preparation of declarations and/or affidavits throughout the duration of this Action or any action related to any Released Claims. At Class Lead Counsel's request and for good cause, BTMU will meet and confer regarding no more than five (5) additional individuals, but failing agreement the Parties shall seek resolution by the Mediator. BTMU will also use its reasonable best efforts to make current BTMU employees available to provide declarations, certifications, or affidavits regarding the authentication of documents, including their certification as records of a regularly conducted activity pursuant to Fed. R. Evid. 803(6) (such declarations, certifications, and/or affidavits shall not count towards the three (3) permitted pursuant to this paragraph). Notwithstanding any other provision of this Settlement Agreement, in the event that BTMU believes that Class Lead Counsel has unreasonably designated any current employee for the preparation of declarations and/or affidavits, the Parties agree to meet and confer regarding such designation and seek resolution from the Mediator if necessary. BTMU shall make good faith efforts to assist Class Lead Counsel in arranging for such declarations and/or affidavits from former BTMU employees for such purposes. To the extent not prohibited by any operative Order of the Court, or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such information, BTMU will provide Class Lead Counsel with the last known contact information for any former employees of BTMU identified pursuant to this paragraph and, if known by BTMU to be represented by

counsel, the counsel's contact information. Other than its own legal fees, BTMU shall not be responsible for any expenses associated with the preparation of declarations and/or affidavits.

(ix)     **Depositions:**  After the entry of the Preliminary Approval Order and upon reasonable notice, at BTMU's expense, BTMU shall use its reasonable best efforts to make available for depositions in the Action or any action related to any Released Claims no more than three (3) current BTMU employees designated by Class Lead Counsel. At Class Lead Counsel's request and for good cause, BTMU will meet and confer regarding no more than five (5) additional individuals, but failing agreement, the Parties will seek resolution by the Mediator. Written notice by Class Lead Counsel upon BTMU's Counsel shall constitute sufficient service for such depositions. If BTMU is unable to make a requested individual available in the United States, BTMU shall use its reasonable best efforts to make the individual available at such alternative location as Class Lead Counsel may reasonably request. BTMU shall use good faith efforts to assist Class Lead Counsel in arranging the deposition of former BTMU employees. To the extent not prohibited by any operative Order of the Court, or any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such information, BTMU will provide Class Lead Counsel with the last known contact information for any former employees of BTMU identified pursuant to this paragraph and, if known by BTMU to be represented by counsel, the counsel's contact information. For witnesses represented by BTMU's Counsel, or for whom BTMU is providing counsel, depositions shall be administered according to the rules and limitations of the Federal Rules of Civil Procedure, regardless of the location at which they take place or the citizenship of the deponent.

47

Notwithstanding any other provision of this Settlement Agreement, in the event that BTMU believes that Class Lead Counsel has unreasonably designated any current employee for deposition, the Parties agree to meet and confer regarding such designation and seek resolution from the Mediator if necessary.  Other than its own legal fees, BTMU shall not be responsible for any expenses associated with the depositions of former employees, so long as such former employees are separately represented or unrepresented.

(x)  **Testimony at Trial:**  Upon reasonable notice and at BTMU's expense, BTMU shall use its reasonable best efforts to make available for testimony at trial in the Action or any action related to any Released Claims, but not for the prosecution of any action or proceeding against any Released Party (nor for any other purpose whatsoever), each of the then-current BTMU employees designated by Class Lead Counsel pursuant to the paragraphs above, who possess information, based on Class Lead Counsel's good faith belief, that would assist Class Plaintiffs in trial of the Class Plaintiffs' claims as alleged in the Action or any action related to any Released Claim, but not for the prosecution of any action or proceeding against any Released Party, nor for any other purpose whatsoever. BTMU shall use good faith efforts to assist Class Lead Counsel in arranging for the appearance of former employees at trial.  Other than its own legal fees, BTMU shall not be obligated to bear the expenses, including but not limited to legal fees, of testimony of such former employees, so long as such former employees are separately represented or unrepresented.  To the extent not prohibited by any law, regulation, policy, instruction, directive, or other rule of any governmental body protecting disclosure of such information, BTMU will provide Class Lead Counsel with the last known contact information for any former employees of BTMU identified pursuant to this paragraph and, if known by

BTMU to be represented by counsel, the counsel's contact information. Notwithstanding any other provision of this Settlement Agreement, in the event that BTMU believes that Class Lead Counsel has unreasonably designated any then current employee for testimony at trial, the Parties agree to meet and confer regarding such designation and seek resolution from the Mediator if necessary.

(xi) **Continuation, Scope, and Termination of BTMU's Obligation:** BTMU's obligations to cooperate under the Settlement Agreement are continuing until and shall terminate upon the later of: (X) the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against all Defendants; or (Y) seven (7) years after the Court enters the Preliminary Approval Order.

(c)    In the event of a disagreement between BTMU and Class Lead Counsel with respect to this paragraph 14, the Parties will seek resolution from the Mediator, if necessary.

## 15. RESERVATION OF CLASS MEMBERS' RIGHTS AGAINST OTHER DEFENDANTS

All rights of any Class Member against other former, current, or future defendants or co-conspirators, or any other Person other than the Released Parties, with respect to any of the Released Claims are specifically reserved by Class Plaintiffs and the Class Members.  The purchase, sale, and trading of FX Instruments and FX Exchange-Traded Instruments by BTMU shall, to the extent permitted and/or authorized by law, remain in the case against the other current or future defendants in the Action as a potential basis for damage claims and shall be part of any joint and several liability claims against the other former, current, or future defendants in the Action or any other Persons other than the Released Parties.

16.   **MISCELLANEOUS**

(a)    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein and are material and integral parts hereof.

(b)    The Parties to this Settlement Agreement intend the settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Class Plaintiffs and/or any Class Member against the Released Parties with respect to the Action and the Released Claims. Accordingly, Class Plaintiffs and BTMU agree not to assert in any judicial proceeding that the Action was brought by Class Plaintiffs or defended by BTMU in bad faith or without a reasonable basis. The Parties further agree not to assert in any judicial proceeding that any Party violated Fed. R. Civ. P. 11. The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel and the Mediator.

(c)    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

(d)    The administration and consummation of the settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders relating to the Fee and Expense Application, the Plan of Distribution, and enforcing the terms of this Settlement Agreement.

(e)    For the purpose of construing or interpreting this Settlement Agreement, Class Plaintiffs and BTMU agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

(f)    This Settlement Agreement shall constitute the entire agreement between Class Plaintiffs and BTMU pertaining to the settlement of the Action against BTMU and supersedes any and all prior and contemporaneous undertakings of Class Plaintiffs and BTMU in connection

therewith.  All terms of this Settlement Agreement are contractual and not mere recitals.  The terms of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Class Members.

(g)     This Settlement Agreement may be modified or amended only by a writing executed by Class Plaintiffs, through Class Lead Counsel, and BTMU, through BTMU's Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court.  Amendments and modifications may be made without notice to the Classes unless notice is required by law or by the Court.

(h)     Nothing in this Settlement Agreement constitutes an admission by BTMU as to the merits of the allegations made in the Action, the validity of any defenses that could be asserted by BTMU, or the appropriateness of certification of any class other than the Classes under Fed. R. Civ. P. 23 solely for settlement purposes.  This Settlement Agreement is without prejudice to the rights of BTMU to:  (i) challenge the Court's certification of any class, including the Class, in the Action should the Settlement Agreement not be approved or implemented for any reason; and/or (ii) oppose any certification or request for certification in any other proposed or certified class action.

(i)     All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

(j)     Except as provided in paragraph 14, BTMU, Class Plaintiffs, their respective counsel, and the Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this

Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

(k)     The Parties acknowledge that the Classes include both customers and non-customers of BTMU, and that this Settlement Agreement makes no determination as to which Class Members are entitled to distribution of the Settlement Fund, or as to the formula for determining the amounts to be distributed.

(l)     The proposed Plan of Distribution is not a necessary term of this Settlement Agreement and it is not a condition of this Settlement Agreement that any particular Plan of Distribution be approved.  The Released Parties will take no position with respect to the proposed Plan of Distribution or such Plan of Distribution as may be approved by the Court.  The Plan of Distribution is a matter separate and apart from the settlement between the Parties and any decision by the Court concerning a particular Plan of Distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

(m)     This Settlement Agreement may be executed in counterparts by Class Plaintiffs and BTMU, and a facsimile or .pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

(n)     Class Plaintiffs and BTMU acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so.  Therefore, Class Plaintiffs and BTMU and their respective counsel agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake.  Moreover, Class Plaintiffs and BTMU and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed

by them to be true, and further agree that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

(o)     Each of the undersigned attorneys represents that he is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Class Lead Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Class Plaintiffs.  Each of the undersigned attorneys shall use their best efforts to effectuate this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement as of the date first herein written above.

*On behalf of Class Plaintiffs and the Class:*

CHRISTOPHER M. BURKE
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
cburke@scott-scott.com

MICHAEL D. HAUSFELD
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7143
Facsimile: 202-5407201
mhausfeld@hausfeld.com

*On behalf of The Bank of Tokyo-Mitsubishi UFJ, Ltd.*

Andrew C. Finch
Kenneth A. Gallo
Michael E. Gertzman
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: 212-373-3000
Facsimile: 212-757-3990
afinch@paulweiss.com
kgallo@paulweiss.com
mgertzman@paulweiss.com

54

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ x
                               :

IN RE FOREIGN EXCHANGE      :
BENCHMARK RATES ANTITRUST   :   No. 1:13-cv-07789-LGS
LITIGATION                     :
                               :
                               :
                               :
                               :
                               :
------------------------------------------------------ x


**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENTS,**
**CONDITIONALLY CERTIFYING THE SETTLEMENT CLASSES, AND**
**APPOINTING CLASS COUNSEL AND CLASS REPRESENTATIVES FOR**
**THE SETTLEMENT CLASSES**

WHEREAS, the Action[1] is pending before this Court;

WHEREAS, Class Plaintiffs[2] have entered into and executed Stipulations and Agreements of Settlement that have been attached as Exhibits 1 to 5 of the Declaration of Christopher M. Burke and Michael D. Hausfeld in Support of Class Plaintiffs' Motion for Preliminary Approval of Settlement Agreements (ECF No. __) and listed on Exhibit 1 hereto (each a "Settlement Agreement" and collectively, the "Settlement Agreements") with The Bank of Tokyo-Mitsubishi UFJ, Ltd.; Morgan Stanley; Morgan Stanley & Co. LLC; and Morgan Stanley & Co. International PLC; RBC Capital Markets LLC; Société Générale; and Standard Chartered Bank (collectively, the "Settling Defendants," and together with Class Plaintiffs, the "Settling Parties"), which, if finally approved by the Court, will result in the settlement of all claims against Settling Defendants;

---

[1]    As defined in the Settlement Agreements, the "Action" means *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13 Civ. 7789, which is currently pending in the United States District Court for the Southern District of New York, and includes all actions filed in or transferred to the United States District Court for the Southern District of New York and consolidated thereunder and all actions that may be so transferred and consolidated in the future, including:  *Taylor v. Bank of America Corp. et al.* (15 Civ. 1350), *Sterk v. Bank of America Corp. et al.* (15 Civ. 2705), *Bakizada v. Bank of America Corp. et al.* (15 Civ. 4230), *Teel v. Bank of America Corp. et al.* (15 Civ. 4436), and *Robert Charles Class A, L.P. v. Bank of America Corp. et al.* (15 Civ. 4926).

[2]    As defined in the Settlement Agreements, "Class Plaintiffs" are:  Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System; Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Systrax Corporation; Tiberius OC Fund, Ltd.; United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund; and Value Recovery Fund L.L.C. (collectively, "Direct Class Plaintiffs"); J. Paul Antonello; Marc G. Federighi; Thomas Gramatis; Doug Harvey; Izee Trading Company; John Kerstein; Michael Melissinos; Mark Miller; Robert Miller; Richard Preschern d/b/a Preschern Trading; Peter Rives; Michael J. Smith; Jeffrey Sterk; and Kimberly Sterk (collectively, "Exchange-Only Class Plaintiffs").

1

WHEREAS, in full and final settlement of the claims asserted against them in this Action, the Settling Defendants have individually agreed to pay amounts which in the aggregate total $111,200,000 (the "Aggregate Settlement Funds"), and to provide reasonable cooperation in the continued prosecution of the Action as set forth in the Settlement Agreements (the "Cooperation Provisions");

WHEREAS, Class Plaintiffs, having made application pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement Agreements, each of which sets forth the terms and conditions of the settlement of the Action against each Settling Defendant and for dismissal of the Action against each Settling Defendant with prejudice upon the terms and conditions set forth in the Settlement Agreements;

WHEREAS, Class Plaintiffs have sought, and the Settling Defendants have agreed not to object to, the certification of the Settlement Classes (as defined below) solely for settlement purposes;

WHEREAS, Class Lead Counsel have requested that they be appointed as settlement class counsel for the Settlement Classes pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

WHEREAS, Class Plaintiffs have requested that they be appointed class representatives of the Settlement Classes;

WHEREAS, the Settling Parties have agreed to the entry of this Preliminary Approval Order (the "Order");

WHEREAS, the Court has considered the Settlement Agreements and other documents submitted in connection with Class Plaintiffs' Motion for Preliminary Approval of Settlement Agreements, certification of the Settlement Classes, and appointment of settlement class counsel and class representatives for the Settlement Classes, and good cause appearing therefor;

2

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.      All terms in initial capitalization used in this Order shall have the same meanings as set forth in the Settlement Agreements, unless otherwise defined herein.

## I.      PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENTS

2.      Upon review of the record, the Court finds that the Settlement Agreements resulted from arm's-length negotiations between highly experienced counsel and fall within the range of possible approval.   Therefore, the Settlement Agreements are hereby preliminarily approved, subject to further consideration at the Fairness Hearing described below.  The Court preliminarily finds that the settlements encompassed by the Settlement Agreements raise no obvious reasons to doubt their fairness and provide a reasonable basis for presuming that the Settlement Agreements satisfy the requirements of Rules 23(c)(2) and 23(e) of the Federal Rules of Civil Procedure and due process so that an appropriate notice of the Settlement Agreements should be given, subject to the Court's approval of a notice plan as provided in this Order.

## II.      CERTIFICATION OF THE SETTLEMENT CLASSES

3.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court preliminarily certifies, solely for purposes of effectuating the settlements set forth in the Settlement Agreements, the following "Settlement Classes":

**The Direct Settlement Class**:  All Persons who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.  Specifically excluded from the Direct Settlement Class are Defendants;

3

Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class.  Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.

**The Exchange-Only Settlement Class**: All Persons who, between January 1, 2003 and December 15, 2015, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange.  Specifically excluded from the Exchange-Only Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Exchange-Only Settlement Class.  Also excluded from the Exchange-Only Settlement Class are: (i) any judicial officer presiding over this action and any member of his/her immediate family and judicial staff, and any juror assigned to this Action; and (ii) any Person who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of

4

a Defendant, a Released Party, or co-conspirator, where such Person was either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.

4.      Solely for purposes of the settlements set forth in the Settlement Agreements, the Court preliminarily finds that the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) have been satisfied, as follows: (a) the members of the Settlement Classes are so numerous that joinder of all Class Members in the Action is impracticable; (b) there are questions of law and fact common to the Settlement Classes and these common questions predominate over any individual questions; (c) the claims of Class Plaintiffs are typical of the claims of the Settlement Classes; (d) Class Plaintiffs and Class Lead Counsel have fairly and adequately represented and protected the interests of the Settlement Classes; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering (i) the interests of the members of the Settlement Classes in individually controlling the prosecution of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by members of the Settlement Classes; (iii) the desirability or undesirability of concentrating the litigation of these claims in this particular forum; and (iv) the likely difficulties in managing this Action as a class action.

5.      If the Effective Date does not occur with respect to one or more of the Settlement Agreements because of the failure of a condition that affects such Settlement Agreement(s), this conditional certification of the Settlement Classes shall be deemed null and void as to the Parties subject to such Settlement Agreement(s) without the need for further action by the Court or any of the Settling Parties.  In such circumstances, each of the Settling Parties shall retain their rights to seek or to object to certification of this litigation as a class action under Rule 23 of the Federal

Rules of Civil Procedure, or under any other state or federal rule, statute, law, or provision thereof, and to contest and appeal any grant or denial of certification in this litigation or in any other litigation on any other grounds.

## III.   CLASS COUNSEL AND CLASS REPRESENTATIVES

6.      Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and solely for settlement purposes, the following counsel are designated as settlement class counsel for the Settlement Classes:

Christopher M. Burke                          Michael D. Hausfeld
Scott+Scott, Attorneys at Law, LLP            Hausfeld LLP
707 Broadway, Suite 1000                      1700 K Street, NW, Suite 650
San Diego, CA 92101                           Washington, DC 20006

7.      Direct Class Plaintiffs will serve as class representatives on behalf of the Direct Settlement Class, and Exchange-Only Class Plaintiffs will serve as class representatives on behalf of the Exchange-Only Settlement Class.

## IV.   PLAN OF DISTRIBUTION, CLASS NOTICE, AND FAIRNESS HEARING

8.      Class Lead Counsel shall submit separately for the Court's approval a proposed Plan of Distribution of the Settlement Funds.

9.      Class Lead Counsel shall submit separately for the Court's approval a notice plan and proposed form of notice for purposes of advising members of the Settlement Classes, among other things, of their right to object to the Settlement Agreements, their right to exclude themselves from the Settlement Classes, the procedure for submitting a request for exclusion, the time, date, and location of the Fairness Hearing, and their right to appear at the Fairness Hearing.

## V.    OTHER PROVISIONS

10.    The Court approves the Settling Parties' designation of Kenneth Feinberg as the Settlement Administrator.  Absent further order of the Court, the Settlement Administrator shall have such duties and responsibilities as are set forth in the Settlement Agreements.

11.    The Court approves Class Lead Counsel's designation of The Garden City Group as Claims Administrator and Rust Consulting as the agent of the Settling Defendants.  Absent further order of the Court, the Claims Administrator and Agent of the Settling Defendants shall have such duties and responsibilities as are set forth in the Settlement Agreements.

12.    The Court approves the Class Lead Counsel's designation of Huntington National Bank as Escrow Agent.  Absent further order of the Court, the Escrow Agent shall have such duties and responsibilities in such capacity as are set forth in the Settlement Agreements.

13.    The Court approves the establishment of escrow accounts under the Settlement Agreements as Qualified Settlement Funds ("QSFs") pursuant to Internal Revenue Code §468B and the Treasury Regulations promulgated thereunder, and retains continuing jurisdiction as to any issue that may arise in connection with the formulation or administration of the QSFs.

14.    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis*, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreements **and** further order(s) of the Court.

15.    All reasonable expenses incurred in identifying and notifying potential Class Members as well as administering the Aggregate Settlement Funds shall be paid as set forth in the Settlement Agreements up to the sum of $500,000.  Any such expenses in excess of $500,000 may be paid only with the approval of the Court. In the event the Court does not approve the settlements set forth in one or more of the Settlement Agreements, or if one or more of the Settlement

7

Agreements otherwise fails to become effective, neither Class Plaintiffs nor any of their counsel shall have any obligation to repay any amounts actually and *bona fide* incurred or disbursed pursuant to paragraph 10(b) of such Settlement Agreement(s).

16.     If one or more of the settlements set forth in the Settlement Agreements is terminated pursuant to such Settlement Agreement, then solely with respect to any Party to such Settlement Agreement, such Settlement Agreement (including any amendment(s) thereto) and this Order shall be null and void, of no further force or effect, and without prejudice to any such Party, and may not be introduced as evidence or referred to in any actions or proceedings by any Person, and each such Party shall be restored to his, her, or its respective position as it existed prior to the execution of such Settlement Agreement.

17.     Except as otherwise provided herein, in the event that one or more of the Settlement Agreements is terminated, vacated, not approved, or the Effective Date fails to occur for any reason, then the Parties to such Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, such Parties shall proceed in all respects as if such Settlement Agreement and any related orders had not been entered, and any portion of the Settlement Fund previously paid by or on behalf of the respective Settling Defendant, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to in paragraph 9(a) of such Settlement Agreement), less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable from the Settlement Fund (not to exceed the dollar limit set forth in each Settlement Agreement without the prior approval of the Court) shall be returned to such Settling Defendant within ten (10) business days from the date of the event causing such termination.  At the request of such Settling Defendant's Counsel, the

Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to such Settling Defendant.

18.     None of the Settling Defendants, nor any of their counsel, nor any of the Released Parties (as defined in each of the Settlement Agreements) shall have any responsibility for, or liability whatsoever with respect to the notice procedures; the investment, administration, or distribution of any Settlement Fund or the Aggregate Settlement Funds; the Plan of Distribution; the determination, administration, calculation, or payment of any claims asserted against any Settlement Fund or the Aggregate Settlement Funds; or any funds held by the Escrow Agent; the payment or withholding of Taxes; any losses incurred in connection therewith; any application for attorneys' fees, service awards or expenses submitted by Class Plaintiffs or counsel for Class Plaintiffs; or any allocation of the Fee and Expense Award by Class Lead Counsel.  Any such matters will be considered separately from the fairness, reasonableness, and adequacy of the settlements set forth in the Settlement Agreements.

19.     At or after the Fairness Hearing, the Court will determine separately whether each Settlement Agreement, the proposed Plan of Distribution, any application for service awards, and any application for attorneys' fees and/or expenses by counsel for Class Plaintiffs should be finally approved.

20.     Each of the Settling Defendants has denied any liability, fault, or wrongdoing of any kind in connection with the allegations in the Action, and as such, neither the Settlement Agreements, nor any of their respective terms or provisions, nor any of the negotiations or proceedings connected with the Settlement Agreements shall be construed as an admission or concession of the truth of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind by any of the Settling Defendants.

9

21.     All proceedings in the Action with respect to the Settling Defendants are stayed until further order of the Court, except as may be necessary to implement the settlements set forth in the Settlement Agreements or comply with the terms thereof.  Pending final determination of whether the settlements set forth in the Settlement Agreements should be approved, each Class Plaintiff and each Class Member, either directly, representatively, or in any other capacity, shall be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties, and shall not sue any of the Released Parties on the basis of any Released Claims or assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

22.     The stay of proceedings in the Action with respect to the Settling Defendants entered by this Order shall not in any way stay matters related to discovery of the Settling Defendants in this Action by the Non-Settling Defendants. The parties' rights with respect to such discovery are otherwise reserved and shall remain subject to the Court's orders on discovery.

23.     All Class Members shall be bound by all determinations and judgments in the Action concerning the settlements set forth in the Settlement Agreements, whether favorable or unfavorable to the Settlement Classes.

24.     Any Class Member may enter an appearance in the Action, at his, her, or its own expense, individually or through counsel of his, her, or its own choice.  Any Class Member who does not enter an appearance will be represented by Class Lead Counsel.

25.     The Court's preliminary certification of the Settlement Classes as provided herein is without prejudice to, or waiver of the rights of any defendant other than the Settling Defendants to contest certification of any other class proposed in the Action. The Court's findings in this Order shall have no effect on the Court's ruling on any motion to certify any class in the Action, and no

10

party may cite or refer to the Court's preliminary approval of the Settlement Classes as persuasive or binding authority with respect to any motion to certify any such class. Further, no party may cite or refer to the Court's preliminary approval of the Settlement Classes to support or oppose a motion to dismiss.

IT IS SO ORDERED.

DATED: _____, 2017

_____
HON. LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

Stipulation and Agreement of Settlement with The Bank of Tokyo-Mitsubishi UFJ, Ltd.

Stipulation and Agreement of Settlement with Morgan Stanley; Morgan Stanley & Co. LLC; and Morgan Stanley & Co. International PLC

Stipulation and Agreement of Settlement with RBC Capital Markets LLC

Stipulation and Agreement of Settlement with Société Générale

Stipulation and Agreement of Settlement with Standard Chartered Bank

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**[PROPOSED] SUPERSEDING ORDER APPROVING THE FORM AND MANNER OF NOTICE OF SETTLEMENTS AND PRELIMINARILY APPROVING THE PLAN OF DISTRIBUTION**

WHEREAS, the Action[1] is pending before this Court;

WHEREAS, Class Plaintiffs[2] have entered into and executed Stipulations and Agreements of Settlement that are attached as Exhibits 1 to 5 to the accompanying Declaration of Christopher M. Burke and Michael D. Hausfeld in Support of Class Plaintiffs' Motion for Preliminary Approval of Settlement Agreements, dated July 28, 2017, with The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"); Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley & Co. International PLC ("Morgan Stanley"); RBC Capital Markets LLC ("RBC"); Société Générale ("Soc Gen"); and Standard Chartered Bank ("Standard Chartered");

WHEREAS Class Plaintiffs have entered into and executed Stipulations and Agreements of Settlement that are attached as Exhibits 1 to 9 of the Declaration of Christopher M. Burke and Michael D. Hausfeld in Support of Class Plaintiffs' Motion for Preliminary Approval of Settlement Agreements, dated October 22, 2015, ECF No. 481, with Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Inc. ("Bank of America"); Barclays Bank PLC and Barclays Capital Inc. ("Barclays"); BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc. ("BNP Paribas");

---

[1]     As defined in the Settlement Agreements, the "Action" means *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789-LGS, which is currently pending in the United States District Court for the Southern District of New York, and includes all actions filed in or transferred to the U.S. District Court for the Southern District of New York, and consolidated thereunder, and all actions that may be so transferred and consolidated in the future, including: *Taylor v. Bank of Am. Corp.*, No. 15 Civ. 1350; *Sterk v. Bank of Am. Corp.*, No. 15 Civ. 2705; *Bakizada v. Bank of Am. Corp.*, No. 15 Civ. 4230; *Teel v. Bank of Am. Corp.*, No. 15 Civ. 4436; and *Robert Charles Class A, L.P. v. Bank of Am. Corp.*, No. 15 Civ. 4926.

[2]     As defined in the Settlement Agreements, "Class Plaintiffs" are:  Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System; Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Systrax Corporation; Tiberius OC Fund, Ltd.; United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund; Value Recovery Fund L.L.C.; J. Paul Antonello; Marc G. Federighi; Thomas Gramatis; Doug Harvey; Izee Trading Company; John Kerstein; Michael Melissinos; Mark Miller; Robert Miller; Richard Preschern d/b/a Preschern Trading; Peter Rives; Michael J. Smith; Jeffrey Sterk; and Kimberly Sterk.

Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. ("Citigroup"); The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. ("Goldman Sachs"); HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc. ("HSBC"); JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan"); The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc. ("RBS"); and UBS AG, UBS Group AG, and UBS Securities LLC ("UBS");

WHEREAS, the Court entered Orders (the "Preliminary Approval Orders") in which it preliminarily approved the fourteen Settlement Agreements and preliminarily certified the Direct Settlement Class and the Exchange-Only Settlement Class (together, the "Settlement Classes"), subject to further consideration thereof at the Fairness Hearing (defined below); and

WHEREAS, Class Plaintiffs have applied to the Court for this Superseding Order Approving the Form and Manner of Notice of Settlements and Preliminarily Approving the Plan of Distribution (the "Order");

NOW, THEREFORE, IT IS HEREBY ORDERED AND FOUND:

1.      All terms in initial capitalization used in this Order shall have the same meanings as set forth in the Settlement Agreements and the Preliminary Approval Orders, unless otherwise defined herein.

2.      This order supersedes the Court's Order Approving the Form and Manner of Notice of Settlements and Preliminarily Approving the Plan of Distribution, dated December 20, 2016. ECF No. 700.

3.      If the Settlements are finally approved, the Plan of Distribution (attached hereto as Exhibit 4), provides the terms by which the Claims Administrator would calculate the claims submitted by Settlement Class Members and distribute the Net Settlement Fund to Authorized

Claimants. The Plan of Distribution is the product of analysis by the Settlement Administrator (Kenneth Feinberg) and his consultants at Ankura Consulting, Allocation Counsel, and Class Counsel and their FX industry, economics, and damages consultants, including at the firm Velador Associates.  The Plan of Distribution provides a "fair and adequate" means by which to distribute the Net Settlement Fund and has "a reasonable, rational basis." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). Therefore, the Plan of Distribution is hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing described below.

4.      Class Plaintiffs shall file finalized Relative Damage Factors as referred to in the Plan of Distribution by October 1, 2017.

5.      The Court approves, as to form and content, the Notice of Class Action Settlements ("Mail Notice"), substantially in the form attached hereto as Exhibit 1, the Proof of Claim and Release ("Claim Form"), substantially in the form attached hereto as Exhibit 2, and the Summary Notice of Class Action Settlements ("Summary Notice"), substantially in the form attached hereto as Exhibit 3.

6.      The Claims Administrator shall translate the Mail Notice into French, German, Bahasa Indonesian, Japanese, Korean, Traditional Chinese, Simplified Chinese, Spanish, Russian, Portuguese, Romanian, Vietnamese, Polish, and such other languages that Class Plaintiffs and Settling Defendants agree are appropriate in light of the composition of the Settlement Classes. The Claims Administrator shall make such translated versions of the Mail Notice available on the Settlement Website.

7.      Settling Defendants shall make reasonable efforts, as soon as possible, to the extent not already completed, to identify and provide to the Claims Administrator or an agent of the

Settling Defendants (Rust Consulting) the names and addresses of potential members of the Settlement Classes, who can be reasonably identified based on client records that Settling Defendants have in their respective possession, custody, or control, for purposes of the mailing of the Mail Notice and Claim Form referenced in ¶¶8-9, to the extent permitted by applicable laws. Settling Defendants will also make reasonable efforts, as soon as possible, to compile names and addresses of potential members of the Settlement Classes, who can be reasonably identified based on client records that Settling Defendants have in their respective possession, custody, or control, to whom Settling Defendants will send the Mail Notice and Claim Form directly, as referenced in ¶9.

8.      The process of disseminating the Mail Notice and Claim Form shall begin by October 1, 2017 ("Notice Date").  Mail Notice shall be mailed by first class mail (or, for Mail Notice conducted within foreign countries, the corresponding class of postal delivery), postage prepaid, to each potential member of the Settlement Classes that can be identified through reasonable effort to the extent permitted by applicable laws.  The Claims Administrator shall cause copies of the Mail Notice and Claim Form to be mailed to each of the following potential members of the Settlement Classes: (1) potential members of the Settlement Classes whose names and addresses were provided by Settling Defendants to the Claims Administrator; (2) "large traders" of FX Exchange-Traded Instruments whose names were obtained by Class Plaintiffs pursuant to subpoenas to Chicago Mercantile Exchange ("CME") and Intercontinental Exchange, Inc. ("ICE"); (3) Futures Commission Merchants ("FCMs"), who were clearing members and cleared FX Exchange-Traded Instruments on CME and ICE Futures U.S., whose names and addresses were obtained by Class Plaintiffs pursuant to subpoenas to the CME and ICE (such clearing firms shall be requested either to forward copies of the Mail Notice and Claim Form to their customers

4

who transacted in FX Exchange-Traded Instruments during the Settlement Class Period, or to provide the names and addresses of such customers to the Claims Administrator).

9.      An agent of Settling Defendants (Rust Consulting) or, as determined in light of applicable foreign bank secrecy and/or data privacy laws, Settling Defendants directly, shall cause copies of the Mail Notice and Claim Form to be mailed to other potential members of the Settlement Class who have been identified by Settling Defendants in light of applicable foreign bank secrecy and/or data privacy laws.

10.      Subject to ¶¶8-9 above, absent further order of the Court, the Claims Administrator shall have such duties and responsibilities as are set forth in the Settlement Agreements.

11.      As soon as practicable after the Notice Date, Class Counsel shall cause to be published the Summary Notice, which the Settling Parties intend to be the best notice practicable under the circumstances, and which shall be: (a) published once in *FX Week*, *The Wall Street Journal* (Global Edition), *Investor's Business Daily*, *Financial Times* (Worldwide Edition), *The New York Times* (International Edition), *The Guardian* (United Kingdom), *Globe and Mail* (Canadian National Edition), and *La Presse* (Montreal, in French); (b) published for four weeks on *eFXnews.com* and on the websites of the *Financial Times* (Global Edition) and *Bloomberg* (United States Edition); and (c) issued as a press release through Premier Global.  After the issuance of this Order, the Settling Parties may agree to broaden this publication notice plan, in consultation with the Claims Administrator, without further order from the Court.

12.      On or before the Notice Date, Class Counsel shall cause the Mail Notice (including translated versions), Claim Form, Summary Notice, and Plan of Distribution (including Relative Damage Factors) to be published on the Settlement Website.

13.     Concurrent with Class Counsel's motion for final approval of the Settlements, and with any subsequent updates as necessary, Class Counsel shall file, or cause to be filed, a sworn statement attesting to the compliance with the provisions of ¶¶6, 8, 11, and 12, and Settling Defendants shall file, or cause to be filed, declaration(s) attesting to compliance with the provisions of ¶¶7, 9.

14.     Any Person who transacted in FX Instruments or FX Exchange-Traded Instruments for the benefit of another Person (a "Beneficial Owner") during the Settlement Class Period shall be requested either to send the Mail Notice and Claim Form to all such Beneficial Owners within 25 days after receipt thereof or to send a list of the names and last known addresses of such Beneficial Owners to the Claims Administrator within 25 days of receipt thereof, in which event, the Claims Administrator shall promptly mail the Mail Notice and Claim Form to such Beneficial Owners.

15.     The Court finds that the mailing of the Mail Notice and Claim Form and publication of the Summary Notice constitutes the best notice practicable under the circumstances, including individual notice to all members of the Settlement Classes who can be identified through reasonable effort, and constitutes valid, due, and sufficient process, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

16.     All fees, costs, and expenses incurred in identifying and notifying members of the Settlement Classes shall be paid as set forth in the Settlement Agreements.  For the avoidance of doubt, this includes all fees, costs, and expenses of Settling Defendants' agent (Rust Consulting) with the exception that Settling Defendants shall pay any non-postage related costs of their agent (Rust Consulting) to the extent such costs exceed what the Claims Administrator would reasonably charge for such services and to the extent any costs of administration incurred by the Claims

Administrator and Rust Consulting together exceed $2,000,000 (two million dollars).  To the extent a Settling Defendant makes any mailings directly pursuant to ¶9 above, the Settling Defendant will bear its own costs other than out of pocket disbursements for postage.  Except as otherwise provided in this Order or in the Settlement Agreements, in no event shall Settling Defendants bear any responsibility for fees, costs, or expenses incurred in identifying and notifying members of the Settlement Classes.

17.     Any Person falling within the definition of one of the Settlement Classes may request to be excluded from the Settlement Class in which he, she, or it would otherwise be a member ("Request for Exclusion").  A Request for Exclusion must be: (a) in writing; (b) signed by the Person (defined as the individual or entity holding the claim) or his, her, or its authorized representative; (c) state the name, address, and phone number of that Person; (d) include proof of membership in a Settlement Class; (e) include the claimant ID number(s) on the Person's Claim Form(s), if received; and (f) include a signed statement that "I/we hereby request that I/we be excluded from the Settlements in the *In re Foreign Exchange Benchmark Rates Antitrust Litigation*" or the substantive equivalent.  The request must be postmarked by MONTH XX, 2018, and mailed to the Claims Administrator at: In re Foreign Exchange Benchmark Rates Antitrust Litigation, c/o GCG, P.O. Box 10239, Dublin, OH 43017-5739.  Unless the Court orders otherwise, a Request for Exclusion that does not include all of the foregoing information, that does not contain the proper signature, that is sent to an address other than the one designated in the Mail Notice and Summary Notice, or that is not sent within the time specified, shall be invalid. The Person(s) submitting such an invalid request shall be a Settlement Class Member and shall be bound by the settlements set forth in the Settlement Agreements, if approved.  All Persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph shall be

excluded from the Settlement Classes, shall have no rights under the Settlement Agreements, shall not share in the distribution of the Settlement Fund, shall not be bound by the Settlement Agreements or, if approved, any Final Judgment and Order of Dismissal approving the same.

18.     Class Counsel shall provide counsel for the Settling Defendants copies of all Requests for Exclusion, together with all documents and information provided with such requests, and any written revocation of Requests for Exclusion within three business days of receipt by Class Counsel of that exclusion request or revocations thereof.

19.     Any member of the Settlement Class who has not submitted a Request for Exclusion may object and state why the Settlement should not be finally approved as fair, reasonable, and adequate; why the Final Judgment and Order of Dismissal should not be entered; why the Plan of Distribution should not be approved; and/or why the requested attorneys' fees and litigation costs should not be awarded to counsel for Class Plaintiffs.  In order to contest any of these matters, an  objecting class member must submit a written objection that (i) identifies the name of the case (*In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-7789 (LGS)) and the Settlement Class member's name, address, telephone number, signature and, if applicable, the name, address, and telephone number of the attorney representing the member of the Settlement Class; (ii) states whether the objecting class member intends to appear at the Final Fairness Hearing (though an appearance is not necessary for the Court to consider the objection); (iii) provides proof that the objecting class member is a member of either the Direct Settlement Class or the Exchange-Only Settlement Class, including documentation evidencing FX Trading during the Class Period; (iv) identifies the specific grounds for the objection, including whether the objecting class member wants to appear and be heard at the Final Fairness Hearing, as well as all documents for the Court to consider; and (v) is postmarked by MONTH XX, 2018, and mailed

to the Claims Administrator at: In re Foreign Exchange Benchmark Rates Antitrust Litigation, c/o GCG, P.O. Box 10239, Dublin, OH 43017-5739.   As soon as practicable, Class Counsel shall cause all written objections to be filed with the Court.   Any objecting class member that fails to object in substantially the manner set forth in this paragraph shall be deemed to have waived objections and will forever be barred from making any such objections in the Action, including, but not limited to, any objection to: (a) the fairness, reasonableness, or adequacy of the settlements set forth in such Settlement Agreement(s) or the Plan of Distribution; and (b) any award of attorneys' fees and/or costs and expenses to counsel for Class Plaintiffs.

20.     Unless the Court orders otherwise, all Claim Forms must be submitted to the Claims Administrator so that they are postmarked by Month XX, 2018 or submitted online by 11:59 p.m. Eastern time on Month XX, 2018.

21.     Any and all distributions to eligible Settlement Class Members shall be made pursuant to the Plan of Distribution, as approved by the Court, to those Settlement Class Members who submit a valid Claim Form.   Settlement Class Members who wish to participate in the Settlements set forth in the Settlement Agreements must complete and submit a valid Claim Form, in accordance with the instructions contained therein.

22.     Any Settlement Class Member who does not timely submit a Claim Form within the time provided shall be barred from sharing in the distribution of the proceeds of the Settlement Fund, unless otherwise ordered by the Court, but shall nevertheless be bound by any Final Judgment and Order of Dismissal entered by the Court regarding the settlements set forth in the Settlement Agreements.   Notwithstanding the foregoing, Class Counsel shall have the discretion, but not the obligation, to accept late-submitted claims for processing by the Claims Administrator,

so long as distribution of the proceeds of the Settlement Fund is not materially delayed.  Class Counsel shall have no liability for failing to accept any late-submitted claims.

23.     Any member of a Settlement Class may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice.  Any member of a Settlement Class who does not enter an appearance will be represented by Class Counsel.

24.     The Fairness Hearing shall be held before this Court on MONTH XX, 2018 at __:__ _.m., at the United States District Court for the Southern District of New York, Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, to determine: (i) whether the Settlements of the Action on the terms and conditions provided for in the Settlement Agreements are fair, reasonable, and adequate to the Settlement Classes and should be granted final approval by the Court; (ii) whether a Final Judgment and Order of Dismissal, as provided for in each of the Settlement Agreements, should be entered; (iii) whether the Plan of Distribution should be finally approved; (iv) the amount of any attorneys' fees and/or litigation costs and expenses to be awarded to counsel for Class Plaintiffs; (v) whether the Court should certify the Settlement Classes, but solely for settlement purposes pursuant to Fed. R. Civ. P. 23(a), (b)(3); and (vi) such other matters as the Court may deem appropriate.

25.     All papers in support of the motion for final approval and any application for attorneys' fees and/or costs and expenses shall be filed and served no later than MONTH XX, 2018, and any reply papers (which may include a response to objections, if any) shall be filed and served no later than MONTH XX, 2018.

26.     At or after the Fairness Hearing, the Court will determine separately whether each Settlement Agreement should be granted final approval, whether the Plan of Distribution should

be granted final approval, and whether to approve the application for attorneys' fees and/or expenses by counsel for Class Plaintiffs.

27.     The Court reserves the right to adjourn the date of the Fairness Hearing without further notice except as published on the Court docket sheet for this case, and the Court retains jurisdiction to consider all further applications arising out of, or connected with, the Settlements set forth in the Settlement Agreements.  To the extent practicable, Class Counsel shall cause the Claims Administrator to cause notice of any Court-ordered changes of schedule or any modifications of deadlines to be published promptly on the Settlement Website.  The Court may approve the Plan of Distribution or the Settlement Agreements with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Settlement Classes.

IT IS SO ORDERED.


DATED: _____, 2017        _____
                                     HON. LORNA G. SCHOFIELD
                                     UNITED STATES DISTRICT JUDGE

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- x
:
IN RE FOREIGN EXCHANGE                   :
BENCHMARK RATES ANTITRUST         :     No. 1:13-cv-07789-LGS
LITIGATION                                         :
:
:
:
:
:
---------------------------------------------------- x

**[PROPOSED] FINAL JUDGMENT AND
ORDER OF DISMISSAL WITH PREJUDICE AS TO
THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.**

This matter came before the Court for hearing pursuant to the Court's Order Preliminarily Approving Settlements, Conditionally Certifying the Settlement Classes, and Appointing Class Counsel and Class Representatives for the Settlement Classes dated <u>MONTH XX, 2017</u> (ECF No. __) ("Preliminary Approval Order"), Order Approving the Plan of Distribution and Form and Manner of Notice of Settlement Agreements dated <u>MONTH XX, 2017</u> (ECF No. __) ("Notice Order"), and on Class Plaintiffs' application for final approval of the settlement set forth in the Stipulation and Agreement of Settlement with The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU") dated February 14, 2017 (ECF No. __) (the "Settlement Agreement").  Due and adequate notice having been given to the Settlement Classes as required in the Court's Preliminary Approval Order and Notice Order, the 90-day period provided by the Class Action Fairness Act, 28 U.S.C. §1715(d), having expired on <u>MONTH XX, 2017</u>, and the Court having considered all papers filed and proceedings held herein and otherwise being fully informed in the premises and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.    This Final Judgment and Order of Dismissal as to BTMU incorporates by reference the definitions in the Settlement Agreement, and all capitalized terms used but not defined herein shall have the same meanings as in the Settlement Agreement.

2.    This Court has jurisdiction over the subject matter of the Action[1] and over all parties to the Settlement Agreement, including all Class Members.

---

[1]    As defined in the Settlement Agreement, the "Action" means *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13 Civ. 7789, which is currently pending in the United States District Court for the Southern District of New York, and includes all actions filed in or transferred to the United States District Court for the Southern District of New York and

3.      The notice provisions of the Class Action Fairness Act, 28 U.S.C. §1715, have been satisfied.

4.      Based on the record before the Court, including the Preliminary Approval Order and Notice Order, the submissions in support of the settlement between Class Plaintiffs,[2] for themselves individually and on behalf of each Class Member in the Action, and defendant BTMU, and any objections and responses thereto, the Court finds—solely for purposes of effectuating the settlement—that all requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) have been satisfied, and hereby certifies solely for settlement purposes the following Settlement Classes:

**The Direct Settlement Class**: All Persons who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled

---

consolidated thereunder and all actions that may be so transferred and consolidated in the future, including: *Taylor v. Bank of America Corp. et al.* (15 Civ. 1350), *Sterk v. Bank of America Corp. et al.* (15 Civ. 2705), *Bakizada v. Bank of America Corp. et al.* (15 Civ. 4230), *Teel v. Bank of America Corp. et al.* (15 Civ. 4436), and *Robert Charles Class A, L.P. v. Bank of America Corp. et al.* (15 Civ. 4926).

[2]      As defined in the Settlement Agreement, "Class Plaintiffs" are:  Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System; Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Systrax Corporation; Tiberius OC Fund, Ltd.; United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund; and Value Recovery Fund L.L.C. (collectively, "Direct Class Plaintiffs"); J. Paul Antonello; Marc G. Federighi; Thomas Gramatis; Doug Harvey; Izee Trading Company; John Kerstein; Michael Melissinos; Mark Miller; Robert Miller; Richard Preschern d/b/a Preschern Trading; Peter Rives; Michael J. Smith; Jeffrey Sterk; and Kimberly Sterk (collectively, "Exchange-Only Class Plaintiffs").

outside the United States or its territories, transacted FX Instruments in the United States or its territories.  Specifically excluded from the Direct Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class.  Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.

**The Exchange-Only Settlement Class**: All Persons who, between January 1, 2003 and December 15, 2015, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange.   Specifically excluded from the Exchange-Only Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Exchange-Only Settlement Class.  Also excluded from the Exchange-Only Settlement Class are: (i) any judicial officer presiding over this action and any member of his/her immediate family and judicial staff, and any juror assigned to this Action; and (ii)

3

any Person who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator, where such Person was either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.

5.    The Court finds that the requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied solely for settlement purposes, as follows:

a.    Pursuant to Rule 23(a)(l), the Court determines that the members of the Settlement Classes are so numerous that their joinder before the Court would be impracticable;

b.    Pursuant to Rule 23(a)(2), the Court determines that Class Plaintiffs have alleged one or more questions of fact or law common to the Settlement Classes;

c.    Pursuant to Rule 23(a)(3), the Court determines that Class Plaintiffs' claims are typical of the claims of the Settlement Classes;

d.    Pursuant to Rule 23(a)(4), the Court determines that Class Plaintiffs will fairly and adequately protect the interests of the Settlement Classes;

e.    Pursuant to Rule 23(b)(3), the Court determines that common questions of law and fact predominate over questions affecting only individual members; and

f.    Also pursuant to Rule 23(b)(3), the Court determines that, in connection with and in light of the proposed settlement, a class action is superior to other available methods for the fair and efficient adjudication of this Action.

6.    Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and solely for settlement purposes, the following counsel are certified as settlement class counsel for the Settlement Classes:

4

Christopher M. Burke                     Michael D. Hausfeld
Scott+Scott, Attorneys at Law, LLP       Hausfeld LLP
707 Broadway, Suite 1000                 1700 K Street, NW, Suite 650
San Diego, CA 92101                      Washington, DC 20006

7.      Direct Class Plaintiffs are certified as class representatives on behalf of the Direct

Settlement Class, and Exchange-Only Class Plaintiffs are certified as class representatives on

behalf of the Exchange-Only Settlement Class.

8.      Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby

grants final approval of the settlement as set forth in the Settlement Agreement on the basis that

the settlement is fair, reasonable, and adequate, and is in compliance with all applicable

requirements of the Federal Rules of Civil Procedure.  In reaching this conclusion, the Court

considered the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.

1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.

2000).  Moreover, the Court concludes that:

a.      the settlement as set forth in the Settlement Agreement was fairly and

honestly negotiated by counsel with significant experience litigating antitrust class actions and is

the result of vigorous arm's-length negotiations undertaken in good faith and with the assistance

of Kenneth Feinberg, an experienced and well-regarded mediator of complex cases;

b.      the Action is likely to involve contested and serious questions of law and

fact, such that the value of an immediate monetary recovery, in conjunction with the value of the

cooperation agreement, outweigh the mere possibility of future relief after protracted and

expensive litigation;

c.      this is a partial settlement of the Action in a multi-defendant antitrust case,

meaning that, if the Class Plaintiffs' claims are proven at trial, the other current and future

defendants will remain liable for all class damages under principles of joint and several liability, and, as such, the settlement as set forth in the Settlement Agreement provides a guaranteed cash recovery and other benefits to the Settlement Classes without substantially diminishing the net expected value of the case going forward;

        d.      success in antitrust cases such as this one is inherently uncertain, and there is no guarantee that continued litigation would yield a superior result; and

        e.      Class Lead Counsel's judgment that the settlement as set forth in the Settlement Agreement is fair and reasonable, and the Class Members' reaction to the settlement is entitled to great weight.

9.      The Court hereby grants final approval of the Plan of Distribution on the basis that it is fair, reasonable, and adequate.

10.      Except as to any individual claim of those Persons (identified in Exhibit 1 hereto) who have validly and timely requested exclusion from the Settlement Classes ("Opt-Outs"), the Action and all claims contained therein, as well as all of the Released Claims, against any of the Released Parties by the Class Plaintiffs, Class Members, and Releasing Parties are hereby dismissed with prejudice.  The Parties are to bear their own costs, except as otherwise provided in the Settlement Agreement.

11.      The Opt-Outs have timely and validly requested exclusion from the Settlement Classes and are hereby excluded from the Settlement Classes, not bound by this Final Judgment and Order of Dismissal, and may not make any claim or receive any benefit from the settlement, whether monetary or otherwise.

12.      Upon the Effective Date, each of the Releasing Parties:  (a) shall be deemed to have, and by operation of this Final Judgment and Order of Dismissal, shall have fully, finally, and

forever waived, released, relinquished, and discharged (i) all Released Claims  against the Released Parties, regardless of whether such Releasing Party executes and delivers a proof of claim and release form, and (ii) any rights to the protections afforded under California Civil Code §1542 and/or any other similar, comparable, or equivalent laws; (b) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (c) agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Party related in any way to any Released Claims.

13.     This Final Judgment and Order of Dismissal shall not affect, in any way, the right of Class Plaintiffs or Class Members to pursue claims, if any, outside the scope of the Released Claims.

14.     Upon the Effective Date, each of the Released Parties:  (a) shall be deemed to have, and by operation of this Final Judgment and Order of Dismissal shall have fully, finally, and forever waived, released, relinquished, and discharged (i) Class Plaintiffs, Class Lead Counsel, and each and all Class Members from each and every one of the Settling Defendants' Claims, and (ii) any rights to the protections afforded under California Civil Code §1542 and/or any other similar, comparable, or equivalent laws; (b) shall forever be enjoined from prosecuting the Settling Defendants' Claims; and (c) agrees and covenants not to sue on the basis of any Settling Defendants' Claims, or to assist any third party in commencing or maintaining any such suit related to any Settling Defendants' Claims.

15.     Upon the Effective Date, claims against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid in the Action by way of settlement, judgment, or otherwise, are barred.

7

16.     All rights of Class Plaintiffs and Class Members against former, current, or future defendants or co-conspirators other than the Released Parties, or any other Person other than the Released Parties, with respect to any of the Released Claims are specifically reserved by Class Plaintiffs and the Class Members.  The purchase, sale, and trading of FX Instruments and FX Exchange-Traded Instruments by BTMU shall remain in the case against the other current or future defendants in the Action as a potential basis for damage claims and may be part of any joint and several liability claims against the former, current, or future defendants in the Action other than the Released Parties, or any other Persons other than the Released Parties.

17.     The distribution of the Mail Notice and the publication of the Summary Notice as provided for in the Notice Order constitute the best notice practicable under the circumstances, including individual notice to all members of the Settlement Classes who could be identified through reasonable effort, and constitutes valid, due, and sufficient process, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

18.     The Court's determination as to any Fee and Expense Application and/or Plan of Distribution shall in no way disturb or affect this Final Judgment and Order of Dismissal and shall be considered separate from this Final Judgment and Order of Dismissal.

19.     Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission or evidence of the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  The Settlement Agreement may be filed in an action to

8

enforce or interpret the terms of the Settlement Agreement, the settlement contained therein, and any other documents executed in connection with the performance of the agreements embodied therein.  The Released Parties may file the Settlement Agreement and/or this Final Judgment and Order of Dismissal in any action that may be brought against them in order to support a defense or counterclaim based on the principles of *res judicata*, collateral estoppel, full faith and credit, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

20.     Without affecting the finality of this Final Judgment and Order of Dismissal in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement and any award or distribution of the Settlement Fund, including interest earned thereon; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorneys' fees, costs, expenses, and service awards to Class Plaintiffs in the Action; and (d) all Parties hereto for the purpose of construing, enforcing, and administering the terms of the Settlement Agreement.

21.     The Court finds that during the course of the Action, the Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

22.     In the event that the settlement does not become effective in accordance with the terms of the Settlement Agreement or the Effective Date does not occur, or in the event that the Settlement Fund, or any portion thereof, is returned to BTMU in accordance with the Settlement Agreement, then this Final Judgment and Order of Dismissal shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

9

23.     If the settlement set forth in the Settlement Agreement is terminated pursuant to the Settlement Agreement, then the Settlement Agreement (including any amendment(s) thereto) and this Final Judgment and Order of Dismissal shall be null and void, of no further force or effect, and without prejudice to any Party, and may not be introduced as evidence or referred to in any actions or proceedings by any Person, and each Party shall be restored to his, her, or its respective position as it existed prior to the execution of the Settlement Agreement.

24.     Except as otherwise provided herein, in the event the Settlement Agreement is terminated, is vacated, is not approved, or the Effective Date fails to occur for any reason, then the Parties to the Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if the Settlement Agreement and any related orders had not been entered, and any portion of the Settlement Fund previously paid by or on behalf of BTMU, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to in paragraph 9(a) of the Settlement Agreement), less any Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable from the Settlement Fund (not to exceed $500,000 without the prior approval of the Court) shall be returned to BTMU within ten (10) business days from the date of the event causing such termination.  At the request of BTMU's Counsel, the Escrow Agent shall apply for any tax refund owed on the Settlement Fund and pay the proceeds to BTMU.

25.     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

26.     There is no just reason for delay in the entry of this Final Judgment and Order of

Dismissal and immediate entry by the Clerk of the Court is expressly directed pursuant to Federal

Rule of Civil Procedure 54(b).

IT IS SO ORDERED.

DATED: _____    _____
                                          THE HONORABLE LORNA G. SCHOFIELD
                                          UNITED STATES DISTRICT JUDGE