**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------- x
                                          :
IN RE FOREIGN EXCHANGE                    :
BENCHMARK RATES ANTITRUST                 :   No. 1:13-cv-07789-LGS
LITIGATION                                :
                                          :
                                          :
                                          :
                                          :
                                          :
-------------------------------------------------x
```

**DECLARATION OF CHRISTOPHER M. BURKE AND MICHAEL D. HAUSFELD
IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
<u>OF SETTLEMENT AGREEMENT WITH DEUTSCHE BANK AG</u>**

## TABLE OF CONTENTS

I.   UPDATES TO SUMMARY OF THE ACTION SINCE LAST MOTION FOR
     PRELIMINARY APPROVAL ................................................................................. 3

     II.   SUMMARY OF THE SETTLEMENT TERMS ............................................. 3

     A.   Class Definitions ............................................................................................ 4

     B.   Monetary Term ............................................................................................... 5

     C.   Cooperation ..................................................................................................... 5

     D.   Release of Claims ........................................................................................... 8

III.  SUMMARY OF THE MEDIATION PROCESS ............................................... 10

     A.   Overview ....................................................................................................... 10

     B.   Negotiations with Deutsche Bank ................................................................ 10

IV.   MONETARY COMPONENT COMPARISONS ............................................. 11

V.    SELECTION OF ESCROW AGENT AND CLAIMS ADMINISTRATOR ............... 14

VI.   EXHIBITS ........................................................................................................ 15

VII.  CONCLUSION ................................................................................................. 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Cargo Shipping Services Antitrust Litig.*,
06-MD-1775, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) ...................................................12

*In re Air Cargo Shipping Services Antitrust Litig.*,
06-MD-1775, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ....................................................12

*In re Air Cargo Shipping Services Antitrust Litig.*,
06-MD-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) .................................................12

*In re Credit Default Swaps Antitrust Litig.*,
13-md-2476-DLC, 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ..........................................12

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................................13

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v.
Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .......................................................................11

*In re Vitamins Antitrust Litig.*,
398 F. Supp. 2d 209 (D.D.C. 2005) .......................................................................................11

**Other Authorities**

Connor, John M., *The Great Global Vitamins Conspiracy: Sanctions and
Deterrence* (February 22, 2006) ............................................................................................11

American Antitrust Institute Working Paper No. 06-02.  Available at SSRN:
http://ssrn.com/abstract=1103604 .........................................................................................11

Pursuant to 28 U.S.C. §1746, I, Christopher M. Burke, declare:

1.      I am a partner in the law firm of Scott+Scott, Attorneys at Law, LLP ("Scott+Scott").  By Orders dated February 13, 2014, March 4, 2014, and August 13, 2015, the Court appointed Scott+Scott and Hausfeld LLP as interim co-lead counsel for the putative U.S. class and exchange-trading class in the above-captioned action (the "Consolidated Action" or "Action").  ECF Nos. 96, 145, 412.

2.      I have been actively involved in prosecuting and resolving this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein.  If called upon and sworn as a witness, I could competently testify thereto.

Pursuant to 28 U.S.C. §1746, I, Michael D. Hausfeld, declare:

3.      I am a partner in the law firm of Hausfeld LLP ("Hausfeld").  By Orders dated February 13, 2014, March 4, 2014, and August 13, 2015, the Court appointed Scott+Scott and Hausfeld as interim co-lead counsel for the putative U.S. class and exchange-trading class in the Action.  ECF Nos. 96, 145, 412.

4.      I have been actively involved in prosecuting and resolving this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein.  If called upon and sworn as a witness, I could competently testify thereto.

Pursuant to 28 U.S.C. §1746, we, Christopher M. Burke and Michael D. Hausfeld, declare:

5.      Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement with Deutsche Bank AG ("Deutsche Bank Stip." or the "Settlement Agreement").

6.       We submit this declaration in support of Class Plaintiffs'[1] motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for preliminary approval of the proposed settlement between Class Plaintiffs and Defendant Deutsche Bank AG ("Deutsche Bank" together with Class Plaintiffs, the "Parties").

7.       If approved, the settlement, which provides for $190,000,000 in cash and Deutsche Bank's agreement to provide extensive cooperation that will assist Class Plaintiffs in pursuing their claims against any remaining Defendants,[2] and will resolve the Action against Deutsche Bank and Deutsche Bank Securities Inc.

8.       Because this declaration is submitted in support of settlement, it is inadmissible in any subsequent proceedings.  In the event the settlements are not approved by the Court, this declaration and the statements contained herein are without prejudice to Class Plaintiffs' position on the merits of this Action.

---

[1]       Class Plaintiffs are Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System; Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Systrax Corporation; Tiberius OC Fund, Ltd.; United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund; Value Recovery Fund L.L.C.; J. Paul Antonello, Marc G. Federighi, Thomas Gramatis, Doug Harvey, Izee Trading Company, John Kerstein, Michael Melissinos, Mark Miller, Robert Miller, Richard Preschern d/b/a Preschern Trading, Peter Rives, Michael S. Smith, Jeffrey Sterk, and Kimberly Sterk (collectively, "Class Plaintiffs").

[2]       The Non-Settling Defendants are Credit Suisse AG; Credit Suisse Group AG and Credit Suisse Securities (USA) LLC. Together, the Settling Defendants and Non-Settling Defendants are referred to as "Defendants."

## I.   UPDATES TO SUMMARY OF THE ACTION SINCE LAST MOTION FOR PRELIMINARY APPROVAL

9.     To date, the Court has granted preliminary approval to settlements with 14 of the 16 Defendants in the Action.[3,4]

10.     The Court granted preliminary approval to five of these settlements on September 8, 2017.

## II.   SUMMARY OF THE SETTLEMENT TERMS

11.     Class Plaintiffs move for preliminary approval of a settlement providing for $190,000,000 in monetary relief and cooperation terms that are essentially identical to those contained within the 14 preliminarily-approved Settlement Agreements.  In consideration for the monetary relief and the provision of cooperation, upon the Effective Date of the Settlement, Class Plaintiffs and Releasing Parties who do not exclude themselves from the settlement classes will give up their rights to sue Deutsche Bank or any of the Released Parties for any Released Claims.

---

[3] On December 15, 2015, the Court granted preliminary approval to settlements with Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively, "Bank of America"); Barclays Bank PLC and Barclays Capital Inc. (collectively, "Barclays"); BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc. (collectively, "BNP Paribas"); Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. (collectively, "Citigroup"); The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. (collectively, "Goldman Sachs"); HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings, Inc., HSBC Bank USA, N.A., and HSBC Securities (USA), Inc. (collectively, "HSBC"); JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. (collectively, "JPMorgan"); The Royal Bank of Scotland Group plc and RBS Securities Inc. (collectively, "RBS"); and UBS AG, UBS Group AG, and UBS Securities LLC (collectively, "UBS").

[4] On September 8, 2017, the Court granted preliminary approval to settlements with Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"); Morgan Stanley, Morgan Stanley & Co., LLC, and Morgan Stanley & Co. International plc (collectively, "Morgan Stanley"); RBC Capital Markets, LLC ("RBC"); Société Générale ("Soc Gen"); and Standard Chartered Bank ("Standard Chartered").

12.     All funds in the settlement are non-reversionary if there is final approval of the settlement by the Court.

**A.     Class Definitions**

13.     The "Direct Settlement Class" consists of "[a]ll Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories."[5]  Deutsche Bank Stip., ¶3(a)(i).

14.     The "Exchange-Only Settlement Class" consists of "[a]ll Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange."[6]  Deutsche Bank Stip., ¶3(a)(ii).

---

[5]     Specifically excluded from the Direct Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class. Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.  Deutsche Bank Stip., ¶3(a)(i).

[6]     Specifically excluded from the Exchange-Only Settlement Class are Defendants; Released Parties; co-conspirators, the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Exchange-Only Settlement Class.  Also excluded from the Exchange-Only Settlement Class are: (i) any judicial officer presiding over this action and any member of his/her immediate family and

## B.      Monetary Term

15.      Deutsche Bank is paying $190,000,000 under the terms of the Settlement Agreement.  That figure represents the fifth largest payment by any Settling Defendant.[7]  Three of those who have paid greater amounts have entered guilty pleas with respect to antitrust violations in the FX market (Barclays, Citigroup, and RBS); the other (HSBC) has been fined by the U.S. Commodity Futures Trading Commission ("CFTC"), United Kingdom Financial Conduct Authority ("FCA"), and Brazil Tribunal of the Administrative Council for Economic Defense ("CADE") for its conduct.

## C.      Cooperation

16.      Deutsche Bank also agreed to provide comprehensive cooperation relating to all forms and types of Released Claims.  The scope of Deutsche Bank's cooperation obligations mirrors the scope of the release.

17.      Deutsche Bank's cooperation obligations include, as reasonably necessary and as subject to Court Orders and applicable law, attorney proffers, production of transaction data, production of documents produced to government bodies, production of additional data and documents as requested by Class Plaintiffs, witness interviews, depositions and affidavits, and trial testimony, all of which is subject to the Court's orders staying certain forms of cooperation

---

judicial staff, and any juror assigned to this Action; and (ii) any Person who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator, where such Person was either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.  Deutsche Bank Stip., ¶3(a)(ii).

[7] *See* Declaration of Christopher M. Burke and Michael D. Hausfeld in Support of Preliminary Approval in Support of Class Plaintiffs' Motion for Preliminary Approval of Settlement Agreements with Bank of America, Barclays, BNP Paribas, Citigroup, Goldman Sachs, HSBC, JPMorgan, RBS, and UBS. ECF No. 481, ¶34.

until the discovery stay in the Action is lifted in its entirety (ECF Nos. 274, 463, 583, 704). Deutsche Bank Stip., ¶14.  These obligations are continuing until the later of: (1) the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against all Defendants; or (2) seven (7) years after the Court enters the Preliminary Approval Order. Deutsche Bank Stip., ¶14(b)(xi).

18.      *Attorney Proffers:*  Beginning within ten (10) business days of the Execution Date, Deutsche Bank agreed to provide attorney proffers covering the following topics:  (1) a general description of FX Trading; and (2) a description of facts relevant to conduct relating to all forms and types of Released Claims, including but not limited to (a) the conduct and (b) the products and instruments affected by such conduct.  Deutsche Bank agreed to, subject to Court orders and applicable law, identify and provide the last-known contact information for all current and former officers, directors, and employees who have been interviewed by any United States or European country governmental body, including but not limited to the U.S. Department of Justice ("DOJ"), Commodity Futures Trading Commission ("CFTC"), Board of Governors of the Federal Reserve System ("Federal Reserve"), Office of the Comptroller of the Currency ("OCC"), New York Department of Financial Services ("NYDFS"), U.S. Securities and Exchange Commission ("SEC"), FCA, United Kingdom Serious Fraud Office ("SFO"), European Commission ("EC"), the Swiss Competition Commission ("Swiss WEKO"), Swiss Financial Market Supervisory Authority ("FINMA"), and the German Federal Financial Supervisory Authority ("BaFin").  Deutsche Bank Stip., ¶14(b)(ii).

19.      *Production of Transaction Data:*  Deutsche Bank has agreed to meet and confer over the scope of transaction data to be produced.  Deutsche Bank Stip., ¶14(b)(iii).

20. *Production of Documents Produced to Governmental Bodies:*  Deutsche Bank has agreed to complete the production of any documents negotiated through the Settling Parties' meet and confers to date.  Deutsche Bank Stip., ¶14(b)(iv).

21. *Production of Additional Documents and Data:*  After entry of the Preliminary Approval Order, while the Action or any action related to any Released Claims remains pending, Deutsche Bank agreed to produce additional documents and transactional data, as reasonably requested by Class Plaintiffs.  Deutsche Bank Stip., ¶14(b)(v).

22. *Additional Attorney Proffers:*  After the production of the initial transaction data and documents, Deutsche Bank agreed to provide additional attorney proffers on those documents, including, to the extent known, the specific locations, dates, and participants in all meetings or communications relating to the transactions and conduct that are the subject matter of all forms and types of Released Claims, as well as a description of the documents prepared at or related to each such meeting or communication.  Deutsche Bank Stip., ¶14(b)(vi).

23. *Witness Interviews:*  After the entry of the Preliminary Approval Order, and upon reasonable notice, Deutsche Bank agreed to make available for interviews three (3) current employees and must meet and confer regarding possible interviews of up to five (5) additional employees.  Deutsche Bank Stip., ¶14(b)(vii).

24. *Declarations and Affidavits:*  After the entry of the Preliminary Approval Order and upon reasonable notice, Deutsche Bank agreed to make available for the preparation of declarations and/or affidavits three (3) employees and must meet and confer regarding possible declarations and/or affidavits from up to five (5) additional employees designated by Class Lead Counsel for the preparation of declarations and/or affidavits.  Deutsche Bank Stip., ¶14(b)(viii).

25. *Depositions:*   After the entry of the Preliminary Approval Order and upon reasonable notice, Deutsche Bank agreed to make available for deposition three (3) current employees and must meet and confer regarding possible depositions of up to five (5) additional employees for deposition.  Deutsche Bank Stip., ¶14(b)(ix).

26. *Testimony at Trial:*   Upon reasonable notice, Deutsche Bank agreed to make available for testimony at trial each of the then-current employees who provided interviews, declarations/affidavits, or depositions.  Deutsche Bank Stip., ¶14(b)(x).

**D.    Release of Claims**

27. In consideration for Deutsche Bank's payment of $190,000,000 to the Settlement Classes and its provision of cooperation and confirmatory discovery, and upon the Effective Date of the Settlement, Class Plaintiffs and Releasing Parties who do not exclude themselves from the Settlement Classes will give up any rights to sue the Deutsche Bank AG, Deutsche Bank Securities Inc., or any of the Released Parties for the Released Claims.  Deutsche Bank Stip., ¶¶1, 2(ll).

28. The releases are explicitly limited to only those claims that are or could have been alleged *and* arise under the factual predicate of the Action.  Deutsche Bank Stip., ¶¶1, 2(ll).

29. The release explicitly carves out claims based on transactions executed solely outside the United States arising under foreign laws that belong to any Person that is domiciled outside the United States as well as claims related to "last look" practices that may have been used with respect to electronic trading.  Deutsche Bank Stip., ¶¶1, 2(ll).

30. The Settlement Agreement defines Released Claims as:

[A]ny and all manner of claims, including "Unknown Claims" as defined below, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class or

individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, arising from or relating in any way to any conduct alleged or that could have been alleged in and arising from the factual predicate of the Action, or any amended complaint or pleading therein, from the beginning of time until the Effective Date, which shall be deemed to include but not be limited to: (i) communications related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (ii) agreements, arrangements, or understandings related to FX Instruments, FX Trading, or FX Benchmark Rates, between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action through chat rooms, instant messages, email, or other means; (iii) the sharing or exchange of customer information between a Released Party and any other FX dealer or any other participant in the conspiracy alleged in the Action—including but not limited to customer identity, trading patterns, transactions, net positions or orders, stop losses or barrier options, pricing, or spreads related to FX Instruments, FX Trading, or FX Benchmark Rates; (iv) the establishment, calculation, manipulation, or use of the WM/Reuters fixing rates, including the 4:00 p.m. London closing spot rates, and trading that may impact such rates; (v) the establishment, calculation, manipulation, or use of the European Central Bank FX reference rates, including the ECB rate set at 1:15 p.m. London time; (vi) the establishment, calculation, manipulation, or use of the CME daily settlement rates; (vii) the establishment, calculation, or use of any other FX benchmarks, including benchmark fixing rates, benchmark settlement rates, or benchmark reference rates; (viii) the establishment, calculation, communication, manipulation, or use of the price, spread, or rate of any FX Instrument or FX Exchange-Traded Instrument; and (ix) the exchange of customer information or confidential information in the possession of Deutsche Bank between a Released Party and any other FX dealer  or any other participant in the conspiracy alleged in the Action related to the establishment, calculation, manipulation, or use of any FX price, spread, or rate.  Provided, however, Released Claims do not include: (i) "last look" claims related to possible delays built into Deutsche Bank or Deutsche Bank Securities Inc.'s algorithmic or electronic trading platforms that resulted in Deutsche Bank or Deutsche Bank Securities Inc. declining spot orders or requests to trade, including trading on electronic communications networks, that were submitted based upon prices Deutsche Bank or Deutsche Bank Securities Inc. quoted or displayed in over-the-counter FX markets, notwithstanding anything to the contrary herein; and (ii) claims based upon transactions executed solely outside the United States and arising under foreign laws belonging to any Releasing Party or Person that is domiciled outside the United States.

Deutsche Bank Stip., ¶¶1, 2(ll).

### III.   SUMMARY OF THE MEDIATION PROCESS

#### A.   Overview

31.     The settlement was the product of hard-fought, arm's-length negotiations by counsel highly experienced in complex litigation and antitrust law and was reached under the guidance and with the assistance of a well-respected mediator, Kenneth Feinberg.

32.     Lead Counsel's settlement strategy was designed to achieve a maximum aggregate recovery for the Settlement Classes, while ensuring broad cooperation to assist Class Plaintiffs in pursuing their claims against the remaining Non-Settling Defendants.

#### B.   Negotiations with Deutsche Bank

33.     Through the Mediator, Kenneth Feinberg, Class Plaintiffs and Deutsche Bank discussed their respective interest in possible resolution of the Action.  Two mediation sessions with the parties and Mr. Feinberg occurred on April 6, 2015 and September 30, 2015.  During these mediations, the parties discussed possible terms of settlement, but no agreement was reached as to any of the outstanding issues.

34.     After these mediation sessions, Class Plaintiffs and Deutsche Bank continued to discuss terms and open issues through the Mediator.  No agreements as to any terms were reached through these discussions.

35.     A third mediation session was held on July 26, 2017 in Washington, DC. During this mediation, the parties discussed possible terms of settlement, but no agreement was reached as to any of the outstanding issues.

36.     After this third mediation sessions, Class Plaintiffs and Deutsche Bank continued to discuss terms and open issues through the Mediator.  As a result of these continued

discussions, the parties reached an agreement in principle on the terms of the Settlement with respect to both Settlement Classes by telephone on August 18, 2017.

37.     On August 28, 2017, Class Plaintiffs sent Deutsche Bank a draft settlement agreement.  After hard-fought, arm's-length negotiations between highly experienced counsel, on September 29, 2017, Class Plaintiffs and Deutsche Bank signed the Stipulation and Agreement of Settlement attached hereto as Exhibit 1 ("Deutsche Bank Stipulation").

38.     The total cash portion of the Deutsche Bank Stipulation consists of $190,000,000. Deutsche Bank Stip., ¶10(h).  The funds are non-reversionary if there is final approval of the settlement by the Court.  Deutsche Bank Stip., at ¶11(j).

39.     Deutsche Bank's cooperation will materially assist Class Plaintiffs in prosecuting the Action against the Non-Settling Defendants.

40.     All other terms of the Deutsche Bank Stipulation are generally consistent with the stipulations with the other Settling Defendants, including the definition of the settlement classes, release of claims, and cooperation obligations.

## IV.     MONETARY COMPONENT COMPARISONS

41.     If approved, the settlement will provide the Settlement Classes a total recovery of $190,000,000.  When combined with the previous fourteen settlements, this partial settlement of the Action would total $2,310,275,000 and would be the third largest U.S. antitrust class action settlement on record:

| Table 1: Largest U.S. Antitrust Class Action Recoveries | | |
|---|---|---|
| 1 | *In re Vitamins Antitrust Litigation* | $4,197,100,000 - $5,576,100,000 (direct and indirect state settlements)[8] |

---

[8]     Connor, John M., *The Great Global Vitamins Conspiracy: Sanctions and Deterrence* (February 22, 2006).  American Antitrust Institute Working Paper No. 06-02.  Available at SSRN: http://ssrn.com/abstract=1103604; *see also In re Vitamins Antitrust Litig.*, 398 F. Supp.

| Table 1: Largest U.S. Antitrust Class Action Recoveries | | |
|---|---|---|
| 2 | *In re Visa Check/Mastermoney Antitrust Litigation* | $3,050,000,000[9] |
| 3 | *In re Foreign Exchange Benchmark Rates Antitrust Litigation* | $2,310,275,000 (partial settlement) |
| 4 | *In re Credit Default Swaps* | $1,864,650,000[10] |
| 5 | *In re Air Cargo Shipping Services Antitrust Litigation* | $1,235,907,442[11] |
| 6 | *In re TFT-LCD (Flat Panel) Antitrust Litigation* | $1,082,055,647 (indirect plaintiffs)[12] $473,022,242 (direct plaintiffs)[13] |

---

2d 209, 230 (D.D.C. 2005) (noting the recovery was "one of the largest-if not the largest-settlement amounts ever secured in a class action litigation").

[9]     *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 508 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 103 (2d Cir. 2005) (final approval order, wherein the court noted that the resulting settlement was "the largest antitrust settlement in history").

[10]     *In re Credit Default Swaps Antitrust Litig.*, 13-md-2476-DLC, 2016 WL 2731524, at *1 (S.D.N.Y. Apr. 26, 2016) (final approval order noting "common fund of $1,864,650,000 available to Class members").

[11]     *In re Air Cargo Shipping Services Antitrust Litig.*, 06-MD-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) (approving settlement with Lufthansa defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 1413, Memorandum and Order (E.D.N.Y. Mar. 14, 2011) (approving settlement with American Airlines defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 1414, Memorandum and Order (E.D.N.Y. Mar. 14, 2011) (approving settlement with Air France-KLM defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 1416, Memorandum and Order (E.D.N.Y. Mar. 14, 2011) (approving settlement with Scandinavian Airlines defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 1417, Memorandum and Order (E.D.N.Y. Mar. 14, 2011) (approving settlement with Japan Airlines defendants); *In re Air Cargo*, 06-MD-1775, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) (approving settlements with Air Nippon defendants, Cargolux defendants, Thai Airlines, and Qantas (the settlement with Qantas was held in abeyance, but ultimately approved and entered at ECF No. 1534)); *In re Air Cargo*, 06-CV-00706, ECF No. 37, Memorandum and Order (Aug. 2, 2012) (approving settlements with Lan Airlines defendants, British Airways plc, South African Airways Ltd., Malaysia Airlines, Saudi Arabian Airlines, Emirates Airline d/b/a Emirates, El Al Israel Airlines Ltd., Air Canada defendants and Air New Zealand); *In re Air Cargo*, 06-MD-1775, 2015 WL 5918273, Memorandum and Order (E.D.N.Y. Oct. 9, 2015) (approving settlements with Korean Air Lines defendants, Singapore Airlines defendants, Cathay Pacific defendants, and China Airlines defendants); *In re Air Cargo*, 06-MD-1775, ECF No. 2447, Final Judgment (E.D.N.Y March 25, 2016) (approving settlement with Asiana Airlines); *In re Air Cargo*, 06-MD-1775, ECF No. 2446, Final Judgment (E.D.N.Y March 25, 2016) (approving settlement with Nippon Cargo Airlines); *In re Air Cargo*, 06-MD-1775, ECF No. 2445, Final Judgment (E.D.N.Y March 25, 2016) (approving settlement with EVA Airways).

---

[12]     *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827, Order Granting Final Approval of Combined Class, *Parens Patriae*, and Governmental Entity Settlement; Final Judgment of Dismissal with Prejudice (N.D. Cal. Apr. 3, 2013) (ECF No. 7697) (approving settlement with Chimei defendants, Chunghwa defendants, Epson defendants, HannStar defendants, Hitachi defendants, Samsung defendants and Sharp defendants); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827, Second Amended Order Granting Final Approval of Combined Class, *Parens Patriae*, and Governmental Entity Settlements with AUO, LG Display, and Toshiba Defendants; Ordering Final Judgment of Dismissal with Prejudice; Award of Attorneys' Fees, Expenses, and Incentive Awards (N.D. Cal. Apr. 3, 2013) (ECF No. 7697) (approving settlement with LG defendants, AUO defendants, and Toshiba defendants).

[13]     *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendant Chunghwa Picture (N.D. Cal. Feb. 18, 2011) (ECF No. 2475); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendant Epson Imaging Devices Corp. and Epson Electronics America, Inc. (N.D. Cal. Feb. 18, 2011) (ECF No. 2476); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Chi Mei, *et al*. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Hannstar Display Corporation (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-1); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Hitachi Displays, Ltd. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-2); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants LG Display Co., Ltd. and LG Display America, Ltd. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-3); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendant Mitsui & Co. (Taiwan), Ltd. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-4); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Samsung Electronics, *et al*. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-5); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendant Sanyo Consumer Electronics Co., Ltd. (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-6); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Sharp Corporation (N.D. Cal. Dec. 27, 2011) (ECF No. 4438-7); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants Toshiba *et al*. (N.D. Cal. Dec. 18, 2012) (ECF No. 7372); *In re TFT-LCD*, No. 07-MD-1827, Order Granting Final Approval of Settlement and Entering Final Judgment of Dismissal with Prejudice as to Defendants AU Optronics Corporation and AU Optronics America (N.D. Cal. Dec. 18, 2012) (ECF No. 7373).

| Table 1: Largest U.S. Antitrust Class Action Recoveries | |
|---|---|
| 7 | *In re NASDAQ Antitrust Litigation* | $1,027,000,000[14] |

42.     While, to date, fines have been issued against some banks for FX-related misconduct by DOJ, CFTC, OCC, Federal Reserve, NYDFS, FCA, FINMA, CADE, and the Competition Commission of South Africa, the Settlements in this Action are the only agreements that will return compensation to individuals harmed by the conduct.

## V.     SELECTION OF ESCROW AGENT AND CLAIMS ADMINISTRATOR

43.     Class Plaintiffs again propose Huntington National Bank ("HNB") to serve as Escrow Agent, having the duties and responsibilities as described in the Settlement Agreement. Deutsche Bank Stip., ¶10(a).  As indicated in HNB's résumé, previously submitted as ECF No. 481-10, HNB was established in 1866, holds over $60 billion in assets, and has more than 700 branches nationwide.   HNB's National Settlement Team has handled more than 1,000 settlements for law firms, claims administrators, and regulatory agencies.  Lead Counsel believe HNB is qualified to serve as Escrow Agent and request that the Court again approve Class Plaintiffs' selection.

44.     Class Plaintiffs again propose Garden City Group ("GCG") to serve as Claims Administrator, having the duties and responsibilities as described in the Settlement Agreement. Deutsche Bank Stip., ¶5(a)(v).  Lead Counsel had previously selected GCG after reviewing the available options and undertaking a rigorous bidding process consisting of two rounds of bidding and in-person interviews.  As indicated in GCG's firm résumé, previously submitted as ECF No. 481-11, GCG has been in the business of administering class action settlements for twenty years

---

[14]     *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 472-73, 487 (S.D.N.Y. 1998).  ("The instant settlement is nearly 130 times larger than the average class action settlement between 1991 and 1994 [], and the largest ever in an antitrust class action.").

and has administered hundreds of class action settlements, including several well-known antitrust settlements.  GCG has substantial experience in carrying out class action notice and payment projects, and has handled the administration of numerous complex, data-driven settlements, as well as cases with international components.  Lead Counsel believe GCG is qualified to serve as Claims Administrator and request that the Court again approve Class Plaintiffs' selection.

45.   Rust Consulting is being used as the agent of the Settling Defendants, including Deutsche Bank, to cause notice to be distributed to foreign-based class members.  Settling Defendants selected Rust Consulting because foreign privacy laws may limit the disclosure of foreign class member names to GCG.

## VI.  EXHIBITS

46.   Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation and Agreement of Settlement with Deutsche Bank AG.

47.   Attached to the accompanying Motion as Exhibit 1 is the Proposed Order Preliminarily Approving Settlement Agreement with Deutsche Bank AG, Certifying the Settlement Classes, and Appointing Class Counsel and Class Representatives for the Settlement Classes ("Proposed Preliminary Approval Order").  Attached hereto as Exhibit 5 is a redline comparing the Proposed Preliminary Approval Order to the Order Preliminarily Approving Settlements, Conditionally Certifying the Settlement Classes and Appointing Class Counsel and Class Representatives for the Settlement Classes, ECF No. 866.

48.   Attached to the accompanying Motion as Exhibit 2 is the Proposed Second Superseding Order Approving the Form and Manner of Notice of Settlements and Preliminarily Approving the Plan of Distribution ("Proposed Notice Order").  Attached hereto as Exhibit 6 is a redline comparing the Proposed Notice Order to the Superseding Order Approving the Form and

Manner of Notice of Settlements and Preliminarily Approving the Plan of Distribution, ECF No. 864.

49.     Attached to the accompanying Proposed Notice Order as Exhibit 1 is a proposed Mail Notice, which has been revised to include the Deutsche Bank Settlement.  Attached hereto as Exhibit 2 is a redline showing revisions to the Mail Notice that the Court approved on September 8, 2017.

50.     Attached to the accompanying Proposed Notice Order as Exhibit 2 is a proposed Claim Form, which has been revised to include the Deutsche Bank Settlement.  Attached hereto as Exhibit 3 is a redline showing revisions to the Claim Form that the Court approved on September 8, 2017.

51.     Attached to the accompanying Proposed Notice Order as Exhibit 3 is a proposed Summary Notice, which has been revised to include the Deutsche Bank Settlement.  Attached hereto as Exhibit 4 is a redline showing revisions to the Summary Notice that the Court approved on September 8, 2017.

52.     Attached to the accompanying Proposed Notice Order as Exhibit 4 is a proposed Plan of Distribution.  Attached hereto as Exhibit 7 is a redline showing revisions to the Plan of Distribution the Court approved on September 8, 2017.

## VII.    CONCLUSION

53.     For the reasons set forth herein, in Class Plaintiffs' motion for preliminary approval of the Deutsche Bank settlement, and in the documents filed in support thereof, we believe the settlement is fair, reasonable, and adequate.  As such, we believe that the Court should grant Class Plaintiffs' application for preliminary approval of the Deutsche Bank settlement and certify, for purposes of effectuating the Deutsche Bank settlement, the Settlement Classes.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 29, 2017, in San Diego, CA.

CHRISTOPHER M. BURKE
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
cburke@scott-scott.com

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 29, 2017, in Washington, DC.

MICHAEL D. HAUSFELD
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeld.com

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 29, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document to be emailed to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 29, 2017.

*s/ Michael D. Hausfeld*
MICHAEL D. HAUSFELD
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile:  202-540-7201
mhausfeld@hausfeld.com
