# Exhibit 7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE FOREIGN EXCHANGE
BENCHMARK RATES ANTITRUST
LITIGATION

No. 1:13-cv-07789-LGS

<u>**PLAN OF DISTRIBUTION**</u>

# TABLE OF CONTENTS

I.      DEFINED TERMS ............................................................................................1

II.     SUMMARY OF ALLEGATIONS ...................................................................7

III.    THE NET SETTLEMENT FUND FOR DISTRIBUTION.................................8

IV.     ADMINISTRATIVE AND DISTRIBUTION PROCEDURES..........................9

      A.      Administrative Procedures................................................................9

      B.      Distribution Procedures and Holdback ...........................................12

V.      DISCOUNTS ON TRADES OCCURING BETWEEN JANUARY 1,
        2003 AND NOVEMBER 30, 2007 AND BETWEEN JANUARY 1, 2014
        AND DECEMBER 15, 2015 ..........................................................................13

VI.     DISCOUNT ON U.S.-DOMICILED CLASS MEMBERS' FX
        EXCHANGE-TRADED INSTRUMENTS TRADED ON EXCHANGES
        OUTSIDE THE UNITED STATES .................................................................14

VII.    CLAIMANTS' OPTIONS FOR SUBMITTING CLAIMS .............................15

      A.      Option 1: Estimated Claim Option ..................................................15

      B.      Option 2:  Documented Claim Option ..............................................18

      C.      Claims Administration Processes and Timing ..................................20

VIII.   CALCULATING SETTLEMENT TRANSACTION VOLUME .....................22

      A.      Conversion Ratios for FX Instruments and FX Exchange-Traded Instruments ......22

      B.      Special Assumptions for Option 2 Claimants..................................26

IX.     CALCULATING ELIGIBLE PARTICIPATION AMOUNTS .........................27

      A.      Currency Pair Traded ......................................................................28

      B.      Trade Size .......................................................................................29

      C.      Relative Damage Factor Table.........................................................30

      D.      Eligible Participation Amount Formulas ..........................................30

X.      ALLOCATION BETWEEN DIRECT SETTLEMENT CLASS AND
        EXCHANGE-ONLY SETTLEMENT CLASS .................................................31

XI.     CALCULATING *PRO RATA* ADJUSTMENTS ..........................................32

Class Plaintiffs are advised in the formulation of the procedures and methodology set forth in this Plan of Distribution by Kenneth Feinberg, the Court-appointed Settlement Administrator. Mr. Feinberg is a leading specialist in mediation and alternative dispute resolution and has served as the fund administrator for many of the nation's most widely known disputes and tragic disasters. Mr. Feinberg's team includes experts in formulating distribution plans in a variety of contexts, including antitrust class actions. The Plan of Distribution also includes input from Class Counsel and Allocation Counsel and their respective consulting experts, whose work continues in order to ensure fairness for all members of the Settlement Classes.

## I.      DEFINED TERMS

**"Allocation Counsel"** means the counsel Class Counsel designated to separately advocate for the interests of the Direct Settlement Class and the Exchange-Only Settlement Class to achieve an equitable allocation of the Net Settlement Fund.

**"Authorized Claimant"** means any Class Member who will be entitled to a distribution from the Net Settlement Fund pursuant to the Settlement Agreements and Plan of Distribution approved by the Court.

**"Claimant"** means a Person who submits a Claim Form.

**"Claims Bar Date"** means the deadline established by the Court by which Class Members must submit Claim Forms to the Claims Administrator.

**"Claim Deficiency Notice"** means the notice sent by the Claims Administrator to a Claimant whose Claim Form is deficient in one or more ways such as, for example, failure to provide required information or documentation.

**"Claims Administrator"** means Garden City Group.

"**Claim Form**" means the proof of claim and release form provided to or requested by members of the Settlement Classes.

"**Class Counsel**" means Christopher M. Burke of Scott+Scott, Attorneys at Law, LLP and Michael D. Hausfeld of Hausfeld LLP.

"**Class Member**" means a Person who is a member of one of the Settlement Classes and who has not timely and validly excluded himself, herself, or itself in accordance with the procedures approved by the Court.

"**Class Plaintiffs**" are Aureus Currency Fund, L.P., The City of Philadelphia, Board of Pensions and Retirement, Employees' Retirement System of the Government of the Virgin Islands, Employees' Retirement System of Puerto Rico Electric Power Authority, Fresno County Employees' Retirement Association, Haverhill Retirement System, Oklahoma Firefighters Pension and Retirement System, State-Boston Retirement System, Syena Global Emerging Markets Fund, LP, Tiberius OC Fund, Ltd., Value Recovery Fund L.L.C., and United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund, J. Paul Antonello, Marc G. Federighi, Thomas Gramatis, Doug Harvey, Izee Trading Company, John Kerstein, Michael Melissinos, Mark Miller, Robert Miller, Richard Preschern d/b/a Preschern Trading, Peter Rives, Michael J. Smith, Jeffrey Sterk, Kimberly Sterk, and Systrax Corporation.

"**Court**" means the United States District Court for the Southern District of New York.

"**Direct Settlement Class**" means all Persons who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the

United States or its territories, transacted FX Instruments in the United States or its territories. Specifically excluded from the Direct Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class. Also excluded from the Direct Settlement Class are any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this Action.

**"Eligible Participation Amount"** means the amount of an Authorized Claimant's claim before any *pro rata* adjustments are applied and is equal to the Claimant's Settlement Transaction Volume, as described in §VI, *infra*, and as adjusted by the Relative Damage Factors described in §IX, *infra*.

**"Exchange-Only Settlement Class"** means all Persons who, between January 1, 2003 and December 15, 2015, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange. Specifically excluded from the Exchange-Only Settlement Class are Defendants; Released Parties; co-conspirators; the officers, directors, or employees of any Defendant, Released Party, or co-conspirator; any entity in which any Defendant, Released Party, or co-conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant, Released Party, or co-conspirator and any person acting on their behalf; provided, however, that

Investment Vehicles shall not be excluded from the definition of the Exchange-Only Settlement Class. Also excluded from the Exchange-Only Settlement Class are: (i) any judicial officer presiding over this Action and any member of his/her immediate family and judicial staff, and any juror assigned to this Action; and (ii) any Person who, between January 1, 2003 and December 15, 2015, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator, where such Person was either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.

**"FX Exchange-Traded Instruments"** means any and all FX Instruments that were listed for trading through an exchange, including, but not limited to, FX futures and options on FX futures.

**"FX Instruments"** means FX spot transactions, forwards, swaps, futures, options, and any other FX instrument or FX transaction the trading or settlement value of which is related in any way to FX rates.

**"Investment Vehicles"** means any investment company or pooled investment fund, including, but not limited to, mutual fund families, exchange-traded funds, fund of funds and hedge funds, in which a Defendant has or may have a direct or indirect interest, or as to which its affiliates may act as an investment advisor, but of which a Defendant or its respective affiliates is not a majority owner or does not hold a majority beneficial interest.

**"Net Settlement Fund"** means the Settlement Fund less payment of the Fee and Expense Award, costs and expenses reasonably and actually incurred in connection with providing Class Notice and the administration of the settlement, Taxes and tax expenses, and any other Court-approved fees and expenses.

"**Non-Settling Defendants**" means Credit Suisse AG, Credit Suisse Group AG and Credit Suisse Securities (USA) LLC~~; and Deutsche Bank Securities Inc. and Deutsche Bank AG~~.

"**Person**" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

"**Settlement Administrator**" means Kenneth Feinberg.

"**Settlement Agreements**" and "**Settlements**" means the Stipulation and Agreement of Settlement with Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated; Stipulation and Agreement of Settlement with The Bank of Tokyo-Mitsubishi UFJ, Ltd.; Stipulation and Agreement of Settlement with Barclays Bank PLC and Barclays Capital Inc.; Stipulation and Agreement of Settlement with BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.; Stipulation and Agreement of Settlement with Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.; Stipulation and Agreement of Settlement with The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.; Stipulation and Agreement of Settlement with HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc.; Stipulation and Amended Agreement of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; Stipulation and Agreement of Settlement with Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley & Co. International PLC; Stipulation and Agreement of Settlement with RBC Capital Markets LLC; Stipulation and Agreement of Settlement with The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc.; Stipulation and Agreement of Settlement with Société Générale; Stipulation and Agreement of Settlement with Standard

Chartered Bank; and Stipulation and Amended Agreement of Settlement with UBS AG, UBS Group AG, and UBS Securities LLC.

**"Settlement Class"** and **"Settlement Classes"** mean, collectively, the Direct Settlement Class and the Exchange-Only Settlement Class, unless otherwise indicated.

**"Settlement Class Period"** means the period of time commencing on January 1, 2003 and continuing through December 15, 2015.

**"Settlement Fund"** means the $2,3120,275,000 in payments made pursuant to the Settlement Agreements by Settling Defendants and held in the escrow accounts established pursuant to the Settlement Agreements, including all monies held therein and interest earned thereon.

**"Settlement Transaction Volume"** means a Class Member's eligible transaction volume in FX Instruments and/or FX Exchange-Traded Instruments, as adjusted by the Conversion Ratios described in §VIII, *infra*.

**"Settling Defendants"** means Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated; The Bank of Tokyo-Mitsubishi UFJ, Ltd.; Barclays Bank PLC and Barclays Capital Inc.; BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.; Citigroup Inc., Citicorp, Citigroup Global Markets Inc., and Citibank, N.A.; Deutsche Bank AG and Deutsche Bank Securities Inc.; The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.; HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA), Inc.; JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.; Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley & Co. International PLC; RBC Capital Markets LLC; The Royal Bank of Scotland Group PLC, The Royal Bank of

Scotland PLC, and RBS Securities Inc.; Société Générale; Standard Chartered Bank; and UBS AG, UBS Group AG, and UBS Securities LLC.

Unless otherwise defined, all other capitalized terms have the same meaning as set forth in the Settlement Agreements.

## II.    SUMMARY OF ALLEGATIONS

Class Plaintiffs allege that Defendants conspired to fix prices in the FX market in violation of Sections 1 and 3 of the Sherman Antitrust Act, 15 U.S.C. §§1, 3, and that Defendants manipulated the FX market in violation of the Commodity Exchange Act, 7 U.S.C. §§1, *et seq*.  Class Plaintiffs allege that Defendants carried out collusive and manipulative conduct in the FX market as part of a single or overarching, continuous conspiracy effected through multiple devices.

Class Plaintiffs allege that Defendants conspired to fix the bid-ask spreads that Defendants quoted to members of the Settlement Classes.  The bid-ask spread is the difference between the rate at which a Defendant indicated it would buy a currency and the rate at which a Defendant indicated it would sell a currency.  Class Plaintiffs allege that Defendants discussed and agreed to fix bid-ask spreads, primarily through communications in chat rooms but also by other means.  The conspiracy to fix bid-ask spreads is alleged to have reduced competition in the FX market and artificially increased bid-ask spreads, with the result that Class Members paid more for currencies they purchased and received less for currencies they sold than they would have in a competitive market.

Another conspiratorial device alleged in the Complaint involved manipulating and rigging FX Benchmark Rates paid by members of the Settlement Class.  FX Benchmark Rates are rates that are published at certain times during the day. Like the bid-ask spreads, FX

Benchmark Rates are prices at which Defendants offered to and did transact with members of the Settlement Classes. The most widely used FX Benchmark Rates are the WM/Reuters Closing Spot Rates, which for the most widely traded currency pairs, were set at 4:00:00 p.m. London time using median prices of actual trades done in the market on certain venues between 3:59:30 p.m. and 4:00:30 p.m. London time. As with bid-ask spreads, Class Plaintiffs allege Defendants shared confidential order and trade information to collude with respect to their trading positions and trading strategy to fix the FX Benchmark Rates. Such collusive trading strategies included front-running client orders, "banging the close" (*i.e.*, breaking up large orders into small trades immediately before and during the setting of FX Benchmark Rates), and other tactics.

Other alleged conspiratorial devices used to fix prices in the FX market include triggering clients' stop loss and limit orders, working client limit orders at levels better than the limit order price, and front-running customer orders throughout the trading day.

As a result of this multi-faceted conduct carried out as part of a single conspiracy, Class Plaintiffs allege that members of the Settlement Classes paid supra-competitive prices for FX Instruments and FX Exchange-Traded Instruments. Defendants deny that the allegations made against them in the lawsuit have merit.

## III.   THE NET SETTLEMENT FUND FOR DISTRIBUTION

Settling Defendants have agreed to settle the above-described claims and have paid $2,3120,275,000 into the Settlement Fund, pursuant to Settlement Agreements reached in the Action. If the Settlement Agreements are approved, the Net Settlement Fund will be distributed to all Authorized Claimants in accordance with the Plan of Distribution approved by the Court. No monies will revert to Settling Defendants if there is final approval of the Settlement Agreements by the Court.

The Net Settlement Fund consists of the $2,3120,275,000 Settlement Fund plus interest less payment of the Fee and Expense Award, costs and expenses reasonably and actually incurred in connection with providing Class Notice and the administration of the Settlements, Taxes and tax expenses, and any other Court-approved awards, fees, and expenses.

## IV.    ADMINISTRATIVE AND DISTRIBUTION PROCEDURES

The proceeds of the Net Settlement Fund will be paid to Authorized Claimants who submit valid Claim Forms by the Claims Bar Date.  This section describes the administrative procedures that will apply to determine eligibility and the effect of Class Members submitting (or not submitting) Claim Forms.  This section then discusses the procedures for distributing funds to Authorized Claimants.

### A.  Administrative Procedures

To be eligible to submit a Claim Form, a Claimant must be a member of one of the Settlement Classes.  To determine if a Claimant is a member of one of the Settlement Classes, the following conditions apply:

(1)    To be a member of the Direct Settlement Class, a Person must have, between January 1, 2003 and December 15, 2015, entered into one or more FX Instruments directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator, and such Persons must also either (a) be domiciled in the United States or its territories, or (b) if domiciled outside the United States or its territories, have transacted FX Instruments in the United States or its territories.

(2)    To be a member of the Exchange-Only Settlement Class, a Person must have, between January 1, 2003 and December 15, 2015, entered into one or more FX Exchange-Traded Instruments, and such Person must also either

(a) be domiciled in the United States or its territories, or (b) if domiciled outside the United States or its territories, entered into a FX Exchange-Traded Instrument on a U.S. exchange.

(3) The Settlement Classes also exclude certain Persons, such as Defendants and certain of their representatives and affiliates, as well as their co-conspirators. Investment Vehicles in which a Defendant holds a non-majority interest or with which a Defendant has an advisory relationship, however, are not excluded.

(4) Any member of the Direct Settlement Class who traded both over-the-counter ("OTC") FX Instruments and FX Exchange-Traded Instruments is a member of the Direct Settlement Class. All members of the Direct Settlement Class are excluded from the Exchange-Only Settlement Class. The amount of your payment under the Settlements does not depend on which Settlement Class you are a member of. Under the Plan of Distribution, members of both Settlement Classes will be treated equally.

For purposes of determining whether a Claimant is entitled to be treated as an Authorized Claimant, the following conditions apply:

(1) Each Class Member wishing to receive proceeds from the Net Settlement Fund must submit a Claim Form, which, *inter alia*, releases all Released Claims against all Released Parties, is signed under penalty of perjury by an authorized Person, consents to the disclosure, waiver, and instruction paragraph contained in §G-1 of the Claim Form, and is supported by such documents or proof as set out in the Claim Form.

(2)     Any Class Member who does not submit a Claim Form by the Claims Bar
        Date will not be entitled to receive any of the proceeds from the Net
        Settlement Fund, but will otherwise be bound by the terms of the Settlement
        Agreements, including the terms of the Final Judgments and Orders of
        Dismissal to be entered in the Action and the releases provided for therein,
        and will be enjoined from, and, upon final approval of the Settlement
        Agreements, barred from bringing any action against any of the Released
        Parties concerning the Released Claims.

(3)     Each Claim Form must be submitted to and reviewed by the Claims
        Administrator, which will determine (a) whether the Claimant is an eligible
        class member, (b) whether the Claim Form is in accordance with the
        Settlement Agreements and any applicable orders of the Court, and (c) the
        extent, if any, to which each claim will be allowed, subject to review by the
        Court.

(4)     Claim Forms that do not meet the submission requirements may be rejected.
        Prior to rejection of a Claim Form, the Claims Administrator will provide
        the Claimant with a Claims Deficiency Notice.  The Claims Deficiency
        Notice will, in a timely fashion and in writing, notify all Claimants whose
        Claim Forms the Claims Administrator proposes to reject, in whole or in
        part, and set out the reasons therefor.

(5)     If any transaction volumes submitted by Claimants are rejected, the Claims
        Administrator will send the Claimant a Claim Deficiency Notice, and the

Claimant will have an opportunity to respond and/or cure within thirty (30) days of the date when the Claims Deficiency Notice was issued.

(6)   If a dispute concerning a Claimant's claim cannot be resolved,[1] Class Counsel will thereafter present such disputes to the Court in Class Plaintiffs' motion for a distribution order (discussed at §IV.B., *infra*).

**B. Distribution Procedures and Holdback**

It is anticipated that there will be a holdback of the Net Settlement Fund and at least two (and possibly more) distributions. The holdback and multiple distributions will ensure that Authorized Claimants in this first round of notice and any future claimants who submit valid claims in subsequent rounds of notice (following, for example, the preliminary approval of additional settlements or the entry of a judgment) are treated equitably in the distribution. The amount of the proposed holdback[2] will be disclosed when Class Plaintiffs move for a distribution order.

In the event additional settlement(s) are reached (or a judgment is entered), following a subsequent round of notice, submission of claims by Settlement Class Members, and approvals by the Court, a distribution – taking into account additional funds, any remaining holdback amount, and any additional transaction data – would occur. The holdback and multiple distributions are to ensure that a clawback of previously distributed funds to Authorized Claimants would not be required.

---

[1]      Class Counsel will have the right, but not the obligation, to advise the Claims Administrator to waive what Class Counsel reasonably deem to be technical defects in any Claim Forms submitted, including, without limitation, failure to submit a document by the Claims Bar Date, in the interests of achieving substantial justice.

[2]      The holdback amount will be determined using standard Monte Carlo estimation techniques, which account in a systematic way for uncertainties regarding future events.

In the event of no additional settlements (or no judgment is entered), the holdback amount will be reallocated in a Court-approved, equitable fashion. Redistributions would be repeated until the remaining balance in the Net Settlement Fund is *de minimis* and such remaining balance would be donated to an appropriate 501(c)(3) non-profit organization selected by Class Lead Counsel and approved by the Court.

No distribution resulting from the first round of notice will occur until after the Effective Date and after: (1) all timely Claim Forms have been processed and evaluated by the Claims Administrator; (2) all Claimants whose Claim Forms have been rejected or disallowed, in whole or in part, have been served with a Claims Deficiency Notice, and all such Claimants have had an opportunity to respond and/or to cure any deficiencies within thirty (30) days of the date when the Claims Deficiency Notice was issued; (3) all objections with respect to all Claims Deficiency Notices have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (4) all matters with respect to the Fee and Expense Application have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (5) all fees and costs of claims administration have been paid; and (6) the Court has entered an order authorizing a distribution.

Class Plaintiffs request that the timing of subsequent distributions be left to the discretion of the Settlement Administrator, subject to the approval of the Court. Because the amount of information available to the Settlement Administrator will increase over time, this flexibility would enable the Settlement Administrator to implement an efficient and equitable distribution accounting for changing circumstances.

**V.     DISCOUNTS ON TRADES OCCURING BETWEEN JANUARY 1, 2003 AND NOVEMBER 30, 2007 AND BETWEEN JANUARY 1, 2014 AND DECEMBER 15, 2015**

The Plan of Distribution will apply discounts for trades in FX Instruments and FX Exchange-Traded Instruments occurring between January 1, 2003 and November 30, 2007 (inclusive) and between January 1, 2014 and December 15, 2015 (inclusive). The discounts will be:

| Time Period | Discount |
|---|---|
| January 1, 2003-November 30, 2007 | **40%** |
| January 1, 2014-December 15, 2015 | **90%** |

These discounts are made based on Allocation Counsel's assessment of the relative legal strength of the claims in the discounted periods compared to the non-discounted period of December 1, 2007 through December 31, 2013 (inclusive), including consideration of:

- The Court's September 20, 2016 Opinion and Order, which dismissed claims based on trades occurring between January 1, 2003 and November 30, 2007 (ECF No. 661);

- The strength of the evidentiary record currently available for the discounted periods versus non-discounted period;

- Investigation indicating that the alleged collusive behavior dissipated in the period following public disclosure of misconduct, government investigations, and inter-bank chat prohibitions; and

- Consideration of the likely practical ability of Settlement Class Members to make claims for transactions placed between January 1, 2003 and November 30, 2007.

## VI. DISCOUNT ON U.S.-DOMICILED CLASS MEMBERS' FX EXCHANGE-TRADED INSTRUMENTS TRADED ON EXCHANGES OUTSIDE THE UNITED STATES

The Plan of Distribution will apply a discount on U.S.-domiciled Class Members' FX Exchange-Traded Instruments traded on exchanges outside the United States. The discount is:

| | |
|---|---|
| Discount on U.S.-domiciled Class Members' FX Exchange-Traded Instruments traded on exchanges outside the United States | **75%** |

This discount is based on the recommendation of Allocation Counsel who assessed the relative legal strength of the claims on the discounted trades versus the non-discounted FX Exchange-Traded Instruments that are eligible under the Settlements, including consideration of:

- The Court's September 20, 2016 Opinion and Order, which dismissed claims based on ~~trades occurring between January 1, 2003 and November 30, 2007 (ECF No. 661);~~transactions by U.S.-domiciled class members placed on exchanges located outside the United States (ECF No. 661).

- The ~~strength~~number of exchanges located outside the ~~evidentiary record currently available for~~United States and information about the ~~discounted periods versus non-discounted period; and~~

- ~~Investigation indicating~~currency pairs that ~~the alleged collusive behavior dissipated in the period following public disclosure of misconduct, government investigations, and inter-bank chat prohibitions~~may trade on such exchanges; and

- ~~Consideration of the likely practical ability of Settlement Class Members to make claims for transactions placed between January 1, 2003 and November 30, 2007.~~

- The volume of FX Exchange-Traded Instruments that U.S.-domiciled class members may trade on exchanges located outside the United States.

## VII. CLAIMANTS' OPTIONS FOR SUBMITTING CLAIMS

This section describes the two options Claimants will have when submitting their Claim Forms. Under both options, an Authorized Claimant's payment amount is his, her, or its "Eligible Participation Amount," as adjusted by any *pro rata* reductions based on claims rates. The calculation of the Eligible Participation Amount is described in §IX, *infra*.

### A. Option 1: Estimated Claim Option

This option will allow the Claimant to accept a payment amount the Claims Administrator calculates using transaction data produced by Settling Defendants. Settling Defendants have produced transaction data generally covering the time period January 1, 2008 to December 15, 2015; some Settling Defendants have produced data for additional years, and others have produced data for fewer years. Estimates of the Claimant's transaction volume with Settling Defendants for those Settlement Class Period years not covered by the data and with Non-Settling Defendants will be made for Claimants that select this option.

Please take note:

- The Estimated Claim Option is not available to Claimants who traded only with Non-Settling Defendants. Claimants who traded only with Non-Settling Defendants will be required to submit their claim under Option 2 (Documented Claim Option).

- Claimants who select Option 1 and who have transactions in FX Exchange-Traded Instruments (including FX futures and options on FX futures) must submit data and documentation of such transactions (as described in Sections D and E of the Claim Form).

- If you traded using a prime broker(s) or you had investment/asset manager(s) trading on your behalf, it is recommended that you select Option 2 because naming conventions in Settling Defendants' data may not enable the Claims Administrator to identify all of your eligible transaction volume because the trades may appear in the name of the executing entity (*i.e.*, broker or manager) instead of in your name.

- If you traded on electronic communications networks ("ECNs") that did not always reveal your counterparty's identity, it is recommended that you select Option 2 because, to the extent you traded with Defendants, your identity is likely to have also been anonymous to them. Therefore, such trades are unlikely to be identifiable in Settling Defendants' data. Option 2 will allow a portion of your anonymous ECN trading to be represented within your Settlement Transaction Volume (*see* §XIII.B.1, *infra*).

For a Claimant submitting a claim under Option 1 (Estimated Claim Option), the Claims Administrator will:

(1) Analyze the Claimant's transaction data available from the data submitted by Settling Defendants, and if necessary, convert values into USD.

(2) Estimate the Claimant's transaction volume with Settling Defendants for those Settlement Class Period years not covered by the data submitted by Settling Defendants, relying on an analysis of the data, including analysis of the propensity of Class Members to trade with multiple banks and in multiple years.

(3) Estimate the Claimant's transaction volume with Non-Settling Defendants for the entire Settlement Class Period relying on an analysis of the data,

including analysis of the propensity of Class Members to trade with multiple banks and in multiple years.

(4)     If applicable, using claimant-submitted records of FX Exchange-Traded Instruments, calculate the Claimant's transaction volume in such instruments based on the data and documentation submitted by the Claimant. If any volumes submitted by Claimants are rejected, the Claims Administrator will send the Claimant a Claim Deficiency Notice, and the Claimant will have an opportunity to respond and/or cure within thirty (30) days of the date when the Claim Deficiency Notice was issued. Additionally, such Claimants will be required to provide the names of their Futures Commission Merchants ("FCMs") and associated accounts via the Claim Form, which Class Counsel and/or Claims Administrator may use, if necessary, to aid in acquiring supplemental transaction data from entities such as the Chicago Mercantile Exchange ("CME") and Intercontinental Exchange, Inc. ("ICE") to help resolve deficient claims and/or verify claims.

(5)     Adjust the Claimant's transaction volume to yield the Claimant's Settlement Transaction Volume, as described in §VIII, *infra*. Settlement Transaction Volume is the Claimant's gross transaction volume in eligible instruments adjusted by Conversion Ratios that account for an instrument's sensitivity to the spot rate.

(6)     Adjust the Claimant's Settlement Transaction Volume to yield the Claimant's Eligible Participation Amount, as described in §IX, *infra*. Eligible Participation Amount is the Claimant's Settlement Transaction

17

Volume adjusted by Relative Damage Factors that account for two transaction characteristics that affect damages: currency pair traded and trade size.

(7) Determine those Claimants with compensation of $15 or less; these Claimants will be offered a *De Minimis* Payment of $15.

(8) Determine those Claimants with compensation of $150 or less (but more than $15); these Claimants will be offered an Automatic Payment of $150.

(9) For Claimants who have not been determined to fall within the *De Minimis* Payment or Automatic Payment, a *Pro Rata* Share Payment will be calculated per steps (1) through (6) of this sub-section and §XI, *infra*.

**B. Option 2: Documented Claim Option**

This option will require the Claimants to fully document their eligible transaction volume using their own records (or records obtained by them from other sources) and to submit such records to the Claims Administrator. The Documented Claim Option is designed for Claimants with high transaction volumes and accessible trading records. Claimants selecting the Documented Claim Option will be required to electronically submit data relating to their eligible transactions volumes in FX Instruments and FX Exchange-Traded Instruments using the template available on the Settlement Website (WWW.FXANTITRUSTSETTLEMENT.COM), as well as documentation of such transactions (as described in Section D and, if applicable, Section E of the Claim Form).

Please take note:

- Claimants who select Option 2 and who have transactions in FX Exchange-Traded Instruments (including FX futures and options on FX futures) must submit data and documentation of such transactions (as described in Sections D and E of the Claim Form).

- If you traded using a prime broker(s) or you had investment/asset manager(s) trading on your behalf, it is recommended that you select Option 2 because naming conventions in Settling Defendants' data may not enable the Claims Administrator to identify all of your eligible transaction volume because the trades may appear in the name of the executing entity (*i.e.*, broker or manager) instead of in your name.

- If you traded on electronic communications networks (ECNs) that did not always reveal your counterparty's identity, it is recommended that you select Option 2 because, to the extent you traded with Defendants, your identity is likely to have also been anonymous to them. Therefore, such trades are unlikely to be identifiable in Settling Defendants' data. Option 2 will allow a portion of your anonymous ECN trading to be represented within your Settlement Transaction Volume (*see* §VIII.B.1, *infra*).

For a Claimant submitting a claim under Option 2 (Document Claim Option), the Claims Administrator will:

(1) Analyze the Claimant's transaction volume based on the records submitted by the Claimant, and if necessary, convert values into USD.

(2) If any volumes submitted by Claimants are rejected, the Claims Administrator will send the Claimant a Claim Deficiency Notice, and the Claimant will have an opportunity to respond and/or cure within thirty (30) days of the date when the Claim Deficiency Notice was issued. Additionally, as described in Section E of the Claim Form, Claimants who transacted in FX Exchange-Traded Instruments will be required to provide the names of their FCMs and associated accounts via the Claim Form, which Class Counsel and/or the Claims Administrator may use, if necessary, to aid in acquiring supplemental transaction data from CME or ICE to help resolve deficient claims and/or verify claims.

(3) Adjust the Claimant's transaction volume to yield the Claimant's Settlement Transaction Volume, as described in §VIII, *infra*. Settlement Transaction

Volume is the Claimant's gross transaction volume in eligible instruments adjusted by Conversion Ratios that account for an instrument's sensitivity to the spot rate.

(4) Adjust the Claimant's Settlement Transaction Volume to yield the Claimant's Eligible Participation Amount, as described in §IX, *infra*. Eligible Participation Amount is the Claimant's Settlement Transaction Volume adjusted by Relative Damage Factors that account for two transaction characteristics that affect damages: currency pair traded and trade size.

(5) Determine those Claimants with compensation of $15 or less; these Claimants will be offered a *De Minimis* Payment of $15.

(6) Determine those Claimants with compensation of $150 or less (but more than $15); these Claimants will be offered an Automatic Payment of $150.

(7) For Claimants who have not been determined to fall within the *De Minimis* Payment or Automatic Payment, a *Pro Rata* Share Payment will be calculated per steps (1) through (4) of this sub-section and §XI, *infra*.

**C.  Claims Administration Processes and Timing**

Following receipt of a Claim Form, the Claims Administrator will issue a "Confirmation of Claim Receipt" to the Claimant.  In addition to confirming receipt of the Claim Form, the Confirmation of Claim Receipt will advise Claimants that the Claims Administrator will begin disseminating "Claim Assessment Notifications" to Claimants on April 1, 2018.

The Claim Assessment Notification will include the following information about the Claimant's potential claim:

(1)     The Claimant's resolution category (*De Minimis* Payment, Automatic Payment, or *Pro Rata* Share Payment).

(2)     The Claimant's Settlement Transaction Volume and Eligible Participation Amount, which are described in §§VIII and IX, *infra*.

(3)     For Claimants selecting Option 1 (Estimated Claim Option):

(a)     a summary of the data produced by Settling Defendants on which the Claims Administrator's determination was based;

(b)     the estimates made to the Claimant's transaction volumes to cover years and Non-Settling Defendants not covered by the data; and

(c)     an acknowledgment that the Claimant may still elect to proceed under the alternative Option 2 (Documented Claim Option). The acknowledgement will indicate the following information: *if Claimants decide to proceed with a claim under Option 2, they will be required to submit the documentation required under Section D, and if applicable, Section E of the Claim Form within thirty (30) days of the date when the Claim Assessment Notification was issued. If the Claimant elects to re-submit the claim under Option 2, and Option 2 results in a lower Eligible Participation Amount, the Claimant will be automatically reverted back to the Option 1 Eligible Participation Amount.*

(4)     For Claimants selecting Option 2 (Documented Claim Option):

(a)     a summary of the data the Claimant submitted on which the Claims Administrator's determination was based; and

(b)     an acknowledgement that the Claimant may still elect to proceed under the alternative Option 1 (Estimated Claim Option). The acknowledgement will indicate the following information: *Such re-submitted claims under Option 1 are due within thirty (30) days of the date when the Claim Assessment Notification was issued. Claimants will not be able to supplement the Claims Administrator's estimates under Option 1 with their own records. If the Claimant elects to re-submit the claim under Option 1, and Option 1 results in a lower Eligible Participation Amount, the Claimant will be automatically reverted back to the Option 2 Eligible Participation Amount.*

## VIII.  CALCULATING SETTLEMENT TRANSACTION VOLUME

### A.  Conversion Ratios for FX Instruments and FX Exchange-Traded Instruments

This section defines the types of FX Instruments and FX Exchange-Traded Instruments that Claimants may have traded during the Settlement Class Period. Following each definition, the section discusses how Claimants' transaction volumes, involving these different types of instruments, will be adjusted by a "Conversion Ratio" to produce a "Settlement Transaction Volume." The Settlement Transaction Volume facilitates the application of "Relative Damage Factors" to produce an "Eligible Participation Amount," as described in §IX, *infra*.

(1)    ***FX spot transactions***:

(a)    An FX spot transaction is an agreement to exchange sums of currency at an agreed-on exchange rate on a value date that generally is within two bank business days' time, traded OTC.

(b)    For FX spot transactions, the notional value of the transaction needs no conversion before the application of the Relative Damage Factors.

(c)    The Conversion Ratio for FX spot transactions will be ***1.0***.

(2)    ***FX forwards***:

(a)    An FX forward is an agreement to exchange sums of currency at an agreed-on exchange rate on a value date that will usually be in more than two bank business days' time, traded OTC.  The exchange rate for an FX forward transaction is called the outright forward.  This category also includes the outright forward component of FX swaps and non-deliverable forwards ("NDFs"), which are cash-settled between two counterparties with no exchange of principal.

(b)    The Conversion Ratio for FX forwards will be ***1.0***.

(3)    ***FX swaps***:

(a)    An FX swap is an agreement to buy and sell one currency against another currency with defined rates of exchange and on two defined dates, traded OTC.  This category includes FX swaps and non-deliverable forward swaps ("NDF swaps").

(b)    FX swaps give rise to claim value when the structure of an FX swap creates an FX forward risk; the FX forward risk component of the FX swap will be treated as an FX forward under ¶(2) of this section, *supra*.  (For example, if one leg of a USD/JPY swap is for 100 million USD, and the second leg is for 105 million USD, then the Claimant would be compensated for 5 million USD of FX forward volume.)

(c)  In addition, the following rules may apply to FX swap volume, depending on the quality of the FX swap data:

- In the FX swap trade records of both Settling Defendants and Claimants, FX swaps may be represented by two standalone constituent trades (*e.g.*, one FX spot trade and one FX forward trade) rather than as a single combined FX swap trade. Therefore, the Claims Administrator will implement a process to flag FX spot and FX forward trades that appear as standalone trades but are actually part of a single combined FX swap trade. The process will review trade records within time slices to identify trades with different value dates that fit the criteria of two sides of an FX swap to identify FX swaps.

- In the FX swap trade records of both Settling Defendants and Claimants, it may not show what portion of the FX swap is mismatched but may only show double-counted gross FX swap volume. Double-counted in this context means that both legs of the swap are counted into a gross FX swap volume total. Where FX swap records do not record the mismatched FX swap volume, a "Swap Mismatch Ratio" will be applied to gross FX swap volumes. The Swap Mismatch Ratio is the average portion of gross FX swap volume that is mismatched and was calculated using FX swap data produced by Settling Defendants. The Swap Mismatch Ratio is ***0.001***. The Swap Mismatch Ratio will be multiplied by the gross FX swap volume.

(4)  ***OTC FX options***:

(a)  Options contracts give the buyer of the option the right, but not the obligation, to buy or sell a defined amount of one currency in exchange for another currency at a specified rate, during a specified time, traded OTC. An option's delta is its sensitivity to a change in price in the underlying exchange rate. The relevant amount is therefore the face value of a live-traded OTC FX option, multiplied by its delta.

(b)  When an option is purchased on a live basis, the purchaser does not hedge the delta component, and the option provides risk protection against a move in the underlying market rate. When an option is purchased on a hedged basis, the two counterparties exchange the delta

amount to neutralize the exposure to the underlying market risk. In the Settling Defendant option data analyzed, the average ratio of live to hedged options is 0.57. In the Settling Defendant option data analyzed, the average delta is 0.35.

(c) The Conversion Ratio for OTC FX options will be **0.20** (0.57*0.35).

(5) **FX futures**:

(a) FX futures are standardized contracts trading on an exchange and calling for delivery of a specified quantity of a specified currency at a defined rate on a specified date.

(b) Because FX futures are mechanically similar to FX forwards (but are traded in standard contracts on exchanges), the Conversion Ratio for FX futures will be **1.0**.

(6) **Options on FX futures**:

(a) Options on FX futures are standardized contracts trading on an exchange, and upon exercise, calling for the establishment of an FX futures position.

(b) Options on FX futures will be treated similarly to OTC FX options. The Conversion Ratio for options on FX futures will be **0.20**.

(7) **Other FX products**: These are other FX products derived from the above-listed products. A small volume of non-standard FX structures is also possible. Other FX products will be decomposed into the above-listed individual instruments where possible, and the Conversion Ratio applicable to the underlying instruments will be applied. The methodology of breaking

more complex products into component parts will cover a large portion of eligible structured products; however, there may be small volumes of non-standard FX structures that may not break down this way.

## B. Special Assumptions for Option 2 Claimants

This section describes two claims administration assumptions that will be applied to Option 2 submissions, where applicable, due to expected data limitations in Claimants' transaction records.

### (1) Anonymous Trades Executed on ECNs

This section describes how anonymous trades on ECNs will be treated.

Certain ECNs do not always reveal the identities of the counterparties on a trade to each other. Claimants who trade on such venues are unlikely to be identifiable in Settling Defendants' data. It is therefore recommended that Claimants who trade on such venues elect Option 2 (Documented Claim Option).

It is also unlikely that Claimants who elect Option 2 will be able to determine from their own records whether their counterparty was a Defendant (eligible) or not a Defendant (ineligible). Accordingly, Option 2 will allow a portion of Claimants' anonymous ECN trading to be represented within their Settlement Transaction Volume through the application of an "Anonymous ECN Ratio." The Anonymous ECN Ratio is *0.156*, which represents the probability of dealing with a Defendant on an anonymous ECN. Under Option 2, Claimants who executed FX Instruments on anonymous ECNs should therefore submit records of all their anonymous ECN trades to which the Anonymous ECN Ratio will be applied.

### (2) Non-U.S. Domiciled Claimants' Transactions in the United States

This section describes how under Option 2 the Claims Administrator will determine non-U.S. domiciled Claimants' transaction volumes in the United States. Non-U.S. domiciled

Claimants may not know whether their transactions occurred in the United States (eligible) or outside of the United States (ineligible).[3]  In the absence of the non-U.S. domiciled Claimant having location of trade information, non-U.S. domiciled Claimants claiming under Option 2 will need to submit data for all their FX trades during the Settlement Class Period.  For administrative efficiency with respect to claims administration, for eligible non-U.S. domiciled Claimants, the Claims Administrator will apply a "Location Factor" specific to each Defendant, representing the probability that a non-U.S. domiciled class member's trade with a particular Defendant was transacted in the United States.  Defendant data will be used to calculate the Location Factors.  Under the terms of the Settlements, eligible non-U.S. domiciled Claimants will reserve their right to recover for and do not release claims arising from transactions that are executed solely outside the United States and arising under foreign laws belonging to any Releasing Party or Person that is domiciled outside the United States.

With respect to non-U.S. domiciled Claimant's trades on anonymous ECNs, the weighted average of the Location Factors described above will be calculated.  The non-U.S. domiciled Claimant's trading volumes after application of the Anonymous ECN Ratio will then be multiplied by the weighted average Location Factor.

## IX.  CALCULATING ELIGIBLE PARTICIPATION AMOUNTS

In §VIII, *supra*, the Claimant's Settlement Transaction Volume was defined.  Because not every unit of the Claimant's Settlement Transaction Volume was equally damaged, it is necessary to account for certain transaction characteristics that affect damages.  These adjustments for transaction characteristics are called "Relative Damage Factors" and include

---

[3]     Under Option 1, trade location will be determined using Settling Defendant data, which includes data on where the transaction occurred.

currency pair traded and trade size.  The Claimant's Settlement Transaction Volume, as adjusted

by the Relative Damage Factors, results in the Claimant's Eligible Participation Amount.

~~The currency pair and trade size Relative Damage Factors are discussed below.~~
~~Calculations are being performed on data sets received (or to be received) in July 2017 (or~~
~~shortly after), and the final table of Relative Damage Factors will be filed by October 1, 2017,~~
~~the date when notice is scheduled to commence.~~

**A.      Currency Pair Traded**

This Relative Damage Factor recognizes the effect of the liquidity of a currency pair on

damage.  In general, a liquid market is a market with many bids and asks (offers to trade), low

spreads, and low volatility, and therefore, changes in supply and demand have a relatively small

impact on price.  In the FX market, EURUSD and USDJPY are examples of currency pairs that

are generally considered liquid.  For currency pairs that are less liquid, the relative price impact

of collusion will be greater on a damage per unit basis than for more liquid currency pairs.  This

is because Defendants can maintain a wider bid-ask spread on a less liquid pair, owing to its

lower liquidity.  Similarly, Defendants' use of collusive front running is more effective at

moving prices against their counterparties in less liquid pairs, owing to less liquidity.  All else

being equal, trades in currency pairs with higher liquidity are likely damaged less per unit of

Settlement Transaction Volume than trades in currency pairs with lower liquidity.

The liquidity of currency pairs ~~will be~~were measured and grouped[4] based on similar

liquidity profiles~~.  Claimants' Settlement Transaction Volume will be adjusted to account for this~~
~~Relative Damage Factor~~.

---

[4]      ~~Non-standard currency pairs—sometimes called "crosses," typically are pairs that do not involve USD or~~
~~EUR—will be broken down into the two or three separate trades that would have been required to execute the trade,~~
~~and the trade will be treated as the least liquid currency pair in the cross.~~

Most Liquid:  aedchf, audcnh, audhkd, audusd, cadaed, cadcnh, cadhkd, chfcnh, chfdkk, cnhjpy, dkkhkd, dkkjpy, euraed, eurchf, eurcnh, eurgbp, eurhkd, eurjpy, eurusd, gbpaed, gbpcnh, gbpdkk, gbphkd, gbpusd, hkdchf, hkdjpy, sgdcnh, sgdhkd, usdcad, usdchf, usddkk, usdjpy, usdsgd

Liquid:  audcad, audchf, auddkk, audjpy, audmxn, audnzd, audsgd, cadchf, caddkk, cadjpy, cadmxn, cadrub, cadsgd, chfjpy, chfmxn, chfsgd, dkkmxn, dkknok, dkksek, euraud, eurcad, eurhrk, eurinr, eurmxn, eurnok, eurpln, eurron, eurrub, eursek, eursgd, eurtry, gbpaud, gbpcad, gbpchf, gbpjpy, gbpmxn, gbpsgd, hkdmxn, hkdrub, hkdsek, inrjpy, jpytry, mxnjpy, nokhkd, nzdhkd, nzdusd, plndkk, sgddkk, sgdjpy, sgdmxn, trydkk, trygbp, tryhkd, tryrub, usdinr, usdkzt, usdmxn, usdnok, usdrub, usdsek, usdthb, usdtry

Illiquid:  audczk, audhuf, audils, audinr, audnok, audpln, audrub, audsek, audthb, audtry, audzar, cadczk, cadhuf, cadils, cadinr, cadnok, cadpln, cadron, cadsek, cadthb, cadtry, cadzar, chfhuf, chfils, chfinr, chfpln, chfron, chfrub, chfsek, czkchf, czkhuf, czkjpy, czkron, dkkczk, dkkhuf, dkkils, dkkthb, dkkzar, eurczk, eurhuf, eurils, eurnzd, eurthb, eurzar, gbpczk, gbphrk, gbphuf, gbpils, gbpinr, gbpnok, gbpnzd, gbppln, gbpron, gbprub, gbpsek, gbpthb, gbpzar, hkdczk, hkdhuf, hkdils, hrkchf, hrkczk, hrkron, hufron, ilshuf, ilsjpy, ilsmxn, ilssek, ilszar, inrsek, jpyhuf, mxnhuf, mxnpln, mxntry, nokchf, nokczk, nokhuf, nokils, nokjpy, nokmxn, nokron, noksek, nzdcad, nzdchf, nzdczk, nzddkk, nzdhuf, nzdils, nzdjpy, nzdmxn, nzdnok, nzdpln, nzdrub, nzdsek, nzdsgd, nzdthb, nzdtry, nzdzar, plnczk, plnhkd, plnhuf, plnils, plnjpy, plnnok, plnron, plnthb, ronjpy, ronsek, rubczk, rubjpy, rubsek, rubzar, sekczk, sekhuf, sekjpy, sekmxn, sekpln, sekthb, sgdczk, sgdhuf, sgdils, sgdinr, sgdnok, sgdpln, sgdsek, sgdthb, sgdzar, thbchf, thbjpy, trychf, tryczk, tryhuf, tryils, trynok, trypln, trysek, tryzar, usdczk, usdhrk, usdhuf, usdils, usdpln, usdron, usdzar, zarchf, zarczk, zarhkd, zarhuf, zarjpy, zarmxn, zarnok, zarpln, zarsek

Pegged:  aedhkd, aedusd, angusd, awgusd, bameur, bbdusd, bgleur, bhdusd, bmdusd, bndusd, bsdusd, btninr, bzdusd, cnhusd, cupusd, cveeur, djfusd, dkkeur, ernusd, eurbam, eurbgl, eurcve, eurdkk, eurkmf, eurstd, eurxaf, eurxof, eurxpf, fkpgbp, gbpfkp, gbpgip, gbpshp, gipgbp, hkdcnh, hkdmop, hkdusd, inrbtn, inrnpr, jodusd, kmfeur, kwdusd, lbpusd, mophkd, mvrusd, nadzar, nprinr, omrusd, pabusd, qarusd, sarusd, shpgbp, sspusd, stdeur, szlzar, tmtusd, usdaed, usdaed, usdang, usdawg, usdbbd, usdbhd, usdbmd, usdbnd, usdbsd, usdbzd, usdcnh, usdcup, usddjf, usdern, usdhkd, usdjod, usdkwd, usdlbp, usdmvr, usdomr, usdpab, usdqar, usdsar, usdssp, usdtmt, usdveb, usdvef, usdxcd, vebusd, vefusd, xafeur, xcdusd, xofeur, xpfeur, zarlsl, zarnad, zarszl

Any currency pairs not listed will be treated as Illiquid.

## B.  Trade Size

This Relative Damage Factor recognizes the effect of trade size on damage.  Because larger trades are more likely to move the market, the incentives for Defendants to act collusively

were enhanced the larger the trade size and were susceptible to greater damage.[5]  All else being equal, larger trades are likely damaged more per unit of Settlement Transaction Volume than smaller trades.

### C.    Relative Damage Factor Table

Claimants' Settlement Transaction Volume will be adjusted to account for this~~e~~ Relative Damage ~~Factor.~~Factors, as follows:

| Settlement Transaction Volume | Most Liquid | Liquid | Illiquid | Pegged |
|---|---|---|---|---|
| Less than and not including $1,000,000 | 0.53 | 1.47 | 3.13 | 0.09 |
| $1,000,000-$19,999,999 | 1.00 | 2.91 | 6.24 | 0.31 |
| $20,000,000-$99,999,999 | 3.51 | 7.87 | 13.5 | 0.74 |
| $100,000,000 and above | 4.82 | 13.2 | 22.7 | 1.52 |

### D.    Eligible Participation Amount Formulas

Eligible Participation Amounts will be calculated on a trade-by-trade basis using the following formulas by instrument.  In the below formulas EPA means Eligible Participation Amount and STV means Settlement Transaction Volume.

| | |
|---|---|
| Spot and Forward EPA = | STV (Relative Damage Factor multiplier)(Anonymous ECN Ratio, if applicable)(Location Factor, if applicable)(Time Period Legal Discount, if applicable)<br>    Where STV = notional x 1.0 Conversion Ratio |
| Futures EPA = | STV (Relative Damage Factor multiplier)(Location Factor, if applicable)(Time Period Legal Discount, if applicable)(Non-US Exchange Legal Discount, if applicable)<br>    Where STV = notional x 1.0 Conversion Ratio |

---

[5]     For instance, as alleged in the Complaint, large trades, such as trades done at the WM/Reuters Closing Spot Rate, were subject to collusive front running by Defendants.  The Complaint alleges that, before the calculation of the WM/Reuters Closing Spot Rates at 4 p.m. London time, Defendants' traders exchanged detailed, nonpublic information about their customers' orders and Defendants' net trading positions.  These communications are alleged to have allowed Defendants to know the likely direction of price movements at 4 p.m. London time.  Based on this knowledge, Defendants are alleged to have collusively front run their customers' orders, taking proprietary positions (*i.e.*, trades made on Defendants' own accounts) in the same direction, thus, aligning their interests.  The Complaint further alleges that Defendants engaged in collusive front running on other trades throughout the typical trading day.

| | |
|---|---|
| Swap EPA = | STV (Relative Damage Factor multiplier)(Anonymous ECN Ratio, if applicable)(Location Factor, if applicable)(Time Period Legal Discount, if applicable)<br><br>Where STV = EITHER mismatch swap proportion x 1.0 Conversion Ratio OR notional x 0.001 Conversion Ratio |
| OTC Option EPA = | STV (Relative Damage Factor multiplier)(Location Factor, if applicable)(Time Period Legal Discount, if applicable)<br><br>Where STV = notional x 0.2 Conversion Ratio |
| Option on Futures EPA = | STV (Relative Damage Factor multiplier)(Location Factor, if applicable)(Time Period Legal Discount, if applicable)(Non-US Exchange Legal Discount, if applicable)<br><br>Where STV = notional x 0.2 Conversion Ratio |

## X.  ALLOCATION BETWEEN DIRECT SETTLEMENT CLASS AND EXCHANGE-ONLY SETTLEMENT CLASS

The following allocation is recommended by Allocation Counsel as a fair method of allocating the settlement proceeds and is adopted in the Plan of Distribution.  This allocation ensures that Class Members are treated equally, receiving compensation based on their Settlement Transaction Volume, regardless of which Settlement Class they belong to.

(1)  All claims should be treated equally in the allocation.  Accordingly, the Plan of Distribution applies the same Relative Damage Factors to Settlement Transaction Volume for any FX Instruments or FX Exchange-Traded Instruments to determine Eligible Participation Amounts for all Class Members.

(2)  Once all Authorized Claimants' Eligible Participation Amounts have been calculated, the Claims Administrator will calculate (a) the volume of Exchange-Only Class Members' Eligible Participation Amounts and (b) the volume of Direct Settlement Class Members' Eligible Participation Amounts for FX Exchange-Traded Instruments.  The sum of (a) and (b) is

the total volume of Authorized Claimants' Eligible Participation Amounts for FX Exchange-Traded Instruments.

(3) To fund distributions to (a) Exchange-Only Settlement Class Members and (b) Direct Settlement Class Members which traded in FX Exchange-Traded Instruments (collectively, "Exchange Traders"), the $59,575,000 in Exchange-Only funds are contributed.

(4) If $59,575,000 is not sufficient to cover *pro rata* distributions to Exchange Traders, funds would pour over from the Direct Settlement funds to cover the shortfall.

(5) If $59,575,000 exceeds the *pro rata* distributions to Exchange Traders, any remainder in the Exchange-Only funds will pour back to the Direct Settlement funds.

## XI. CALCULATING *PRO RATA* ADJUSTMENTS

After each Authorized Claimant's Eligible Participation Amount is calculated pursuant to §IX, *supra*, the Claims Administrator can calculate each Authorized Claimant's share of the Net Settlement Fund.

To make this calculation, the Claims Administrator will:

(1) Make the calculations to implement the method of allocation for Exchange Traders, described in §X, *supra*;

(2) For a Claimant falling within the *De Minimis* Payment category, the Claimant's payment will be $15.

(3) For a Claimant falling within the Automatic Payment category, the Claimant's payment will be $150.

(4)     For a Claimant falling within the *Pro Rata* Share Payment category, the Claimant's payment will be calculated as follows:

$$\frac{Claimant's\ EPA}{Total\ EPA}\ (Net\ Settlement\ Fund - De\ Minimis\ Payments - Automatic\ Payments)$$

*Where "Total EPA" excludes the EPA of Claimants falling within the De Minimis and Automatic Payment categories.*

(5)     In the event that there are multiple rounds of distribution, *Pro Rata* Share Payments will be reduced by the hold back amount, as discussed in §IV.B, *supra*.   An adjustment to the above formula will be made so that the Net Settlement is reduced by the holdback amount.

*De Minimis* Payment and Automatic Payment amounts were established by the Settlement Administrator based on the distribution of estimated claim amounts and estimated *pro rata* shares.   Therefore, *De Minimis* Payments and Automatic Payments are not subject to proration.