**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | C.A. No. 1:13-cv-7789-LGS |

**CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF FIFTEEN SETTLEMENT AGREEMENTS
AND PLAN OF DISTRIBUTION**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................. 2

   A.    CLASS NOTICE ........................................................................................................ 5

   B.    PLAN OF DISTRIBUTION ....................................................................................... 7

III.  ARGUMENT .................................................................................................................. 7

   A.    THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE AND SHOULD
BE GRANTED FINAL APPROVAL ........................................................................................... 7

     1.    *The Settlements Are Presumptively Fair, Reasonable, and Adequate* ........................... 8

     2.    *The Grinnell Factors Support Final Approval of the Settlements* ................................. 9

       a.    Complexity, Expense, and Likely Duration of the Litigation .................................... 9

       b.    The Reaction of the Class to the Settlements ........................................................... 11

       c.    The Stage of the Proceedings .................................................................................... 11

       d.    The Risks of Establishing Liability and Damages .................................................... 13

       e.    The Risks of Maintaining the Class Action Through Trial ....................................... 15

       f.    The Ability of Defendants to Withstand a Greater Judgment ................................... 16

       g.    The Reasonableness of the Settlements in Light of the Best Possible Recovery and
the Attendant Risks of Litigation ............................................................................. 16

   B.    NOTICE TO THE CLASS COMPORTED WITH RULE 23 AND DUE PROCESS ...................... 18

     1.    *Notice Was the Best Practicable Under the Circumstances* ......................................... 19

     2.    *The Notice "Fairly Apprised" Potential Class Members of the Settlement and Their
Options* .......................................................................................................................... 22

   C.    THE PLAN OF DISTRIBUTION SHOULD BE GRANTED FINAL APPROVAL ........................ 23

   D.    THE COURT SHOULD GRANT FINAL CERTIFICATION TO THE SETTLEMENT CLASSES .... 24

IV.   CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*,
    271 F. App'x 41 (2d Cir. 2008) ...................................................................................19

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) .............................................................................16

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-md-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ...............................8

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......................................................................23

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................................................25

*American Express Co. v. Italian Colors Restaurant*,
    570 U.S. 228 (2013) ...................................................................................................16

*In re AOL Time Warner, Inc.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .....................11

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ..................................18

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    MDL No. 1917, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ...............................18

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012), *aff'd sub nom., Charron v. Wiener*, 731
    F.3d 241 (2d Cir. 2013) ..............................................................................................15

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) .........................................................................9

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) *abrogated on other grounds, Goldberger v.
    Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ....................................9, 16, 17, 18

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .....................................................................................................16

*In re Corrugated Container Antitrust Litig.*,
  659 F.2d 1322 (5th Cir. 1981) ...........................................................................17

*In re Credit Default Swaps Antitrust Litig.*,
  No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).....................21, 23, 24

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001).................................................................................8

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).........................................................................................18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...............................8

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
  No. 13-CV-7789, 2016 WL 5108131 (S.D.N.Y. Sept. 20, 2016)...........................14

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005).......................................................................15

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................13

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .........................................................................9

*In re Initial Pub. Offering Sec. Litig.*,
  No. 21-MC-92 (SAS), 2010 WL 2834894 (S.D.N.Y. July 7, 2010) .......................17

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08 CIV. 00214 CM, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ...................19

*Massiah v. MetroPlus Health Plan, Inc.*,
  No 11-CV-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ..........................16

*In re Med. X–Ray Film Antitrust Litig.*,
  No. CV–93–5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) .............................18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................11, 13, 14, 16

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
  No. 94 CIV. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000)......................24

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) .........................................................................8

*Park v. The Thomson Corp.*,
No. 05-CV-02931, 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008) .........................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
986 F. Supp. 2d 207 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*,
827 F.3d 223 (2d Cir. 2016) ...................................................................................10, 13

*Polar Int'l Brokerage Corp. v. Reeve*,
187 F.R.D. 108 (S.D.N.Y. 1999) ...............................................................................11

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
No. 08-CV-42 (JG) (VVP), 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013) ..........................18

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
584 F. Supp. 2d 697 (M.D. Pa. 2008) .......................................................................16

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) .......................................................................10

*Sykes v. Harris*,
09 Civ. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) .......................................23

*In re Veeco Instruments Inc. Sec. Litig.*,
No. 05 MDL 01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...............................24

*Virgin Atl. Airways Ltd. v. British Airways PLC*,
257 F.3d 256 (2d Cir. 2001) ......................................................................................9

*In re Vitamin C Antitrust Litig.*,
No. 06-MD-1738 BMC JO, 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .................9, 21, 22

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ................................................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ............................................................................... *passim*

*Weber v. Gov't Emps. Ins. Co.*,
262 F.R.D. 431 (D.N.J. 2009) ..................................................................................16

*Weseley v. Spear, Leeds & Kellogg*,
711 F. Supp. 713 (E.D.N.Y. 1989) ..............................................................................9

## Rules & Statutes

Fed. R. Civ. P. 23(c)(2)(B) ......................................................................................21

Fed. R. Civ. P. 23(e)(2) .............................................................................................7

**Other Authorities**

"Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency
Act of 2017", H.R. 985, 115th Cong. (2017)..........................................................................16

## EXPLANATION OF DEFINED TERMS AND CITATION FORMS

The following defined terms are used in this Memorandum:

**Parties**

- "Class Plaintiffs" are Aureus Currency Fund, L.P., The City of Philadelphia, Board of Pensions and Retirement, Employees' Retirement System of the Government of the Virgin Islands, Employees' Retirement System of Puerto Rico Electric Power Authority, Fresno County Employees' Retirement Association, Haverhill Retirement System, Oklahoma Firefighters Pension and Retirement System, State-Boston Retirement System, Syena Global Emerging Markets Fund, LP, Tiberius OC Fund, Ltd., United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund, Value Recovery Fund L.L.C., United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund, J. Paul Antonello, Marc G. Federighi, Thomas Gramatis, Doug Harvey, Izee Trading Company, John Kerstein, Michael Melissinos, Mark Miller, Robert Miller, Richard Preschern d/b/a Preschern Trading, Peter Rives, Michael J. Smith, Jeffrey Sterk, Kimberly Sterk, and Systrax Corporation.

- "Parties" or "Settling Parties" are Class Plaintiffs and Settling Defendants.

- "Defendants" are Settling Defendants and Non-Settling Defendant.

- "Settling Defendants" are Bank of America, BTMU, Barclays, BNP Paribas, Citigroup, Deutsche Bank, Goldman Sachs, HSBC, JPMorgan, Morgan Stanley, RBC, RBS, Soc Gen, Standard Chartered, and UBS.

- "Non-Settling Defendant" is Credit Suisse.

- "Bank of America" is Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated.

- "BTMU" is The Bank of Tokyo-Mitsubishi UFJ, Ltd.

- "Barclays" is Barclays Bank PLC and Barclays Capital Inc.

- "BNP Paribas" is BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.

- "Citigroup" is Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.

- "Credit Suisse" is Credit Suisse AG, Credit Suisse Group AG, and Credit Suisse Securities (USA) LLC.

- "Deutsche Bank" is Deutsche Bank AG.

- "Goldman Sachs" is The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.

- "HSBC" is HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc.

- "JPMorgan" is JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

- "Morgan Stanley" is Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley & Co. International PLC.

- "RBC" is RBC Capital Markets LLC.

- "RBS" is The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc.

- "Soc Gen" is Société Générale.

- "Standard Chartered" is Standard Chartered Bank.

- "UBS" is UBS AG, UBS Group AG, and UBS Securities LLC.

**Settlement Agreements**

- "Bank of America Stip." is the Stipulation and Agreement of Settlement with Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated.

- "BTMU Stip." is the Stipulation and Agreement of Settlement with The Bank of Tokyo-Mitsubishi UFJ, Ltd.

- "Barclays Stip." is the Stipulation and Agreement of Settlement with Barclays Bank PLC and Barclays Capital Inc.

- "BNP Paribas Stip." is the Stipulation and Agreement of Settlement with BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc.

- "Citigroup Stip." is the Stipulation and Agreement of Settlement with Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc.

- "Deutsche Bank Stip." is the Stipulation and Agreement of Settlement with Deutsche Bank AG.

- "Goldman Sachs Stip." is the Stipulation and Agreement of Settlement with The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.

- "HSBC Stip." is the Stipulation and Agreement of Settlement with HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc.

- "JPMorgan Stip." is the Stipulation and Agreement of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

- "JPMorgan Amended Stip." is the Stipulation and Amended Agreement of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.

- "Morgan Stanley Stip." is the Stipulation and Agreement of Settlement with Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley & Co. International PLC.

- "RBC Stip." is the Stipulation and Agreement of Settlement with RBC Capital Markets LLC.

- "RBS Stip." is the Stipulation and Agreement of Settlement with The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc.

- "Soc Gen Stip." is the Stipulation and Agreement of Settlement with Société Générale S.A.

- "Standard Chartered Stip." is the Stipulation and Agreement of Settlement with Standard Chartered Bank.

- "UBS Stip." is the Stipulation and Agreement of Settlement with UBS AG, UBS Group AG, and UBS Securities LLC.

- "UBS Amended Stip." is the Stipulation and Amended Agreement of Settlement with UBS AG, UBS Group AG, and UBS Securities LLC.

- "Settlement Agreements" or "Settlements" are the Bank of America Stip., BTMU Stip., Barclays Stip., BNP Paribas Stip., Citigroup Stip., Deutsche Bank Stip., Goldman Sachs Stip., HSBC Stip., JPMorgan Amended Stip., Morgan Stanley Stip., RBC Stip., RBS Stip., Soc Gen Stip., Standard Chartered Stip., and UBS Amended Stip.

**Declarations**

- "Lead Counsel Decl." is the accompanying Joint Declaration of Christopher M. Burke and Michael Hausfeld in Support of (A) Class Plaintiffs' Motion for Final Approval of Settlements and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

- "Feinberg Decl." is the accompanying Declaration of Kenneth R. Feinberg in Support of Class Plaintiffs' Motion for Final Approval of Fifteen Settlement Agreements.

- "Adams Decl." is the accompanying Declaration of Sandra Adams Regarding Class Notice Self-Mailing by Certain Foreign HSBC Affiliates.

- "Cirami Decl." is the accompanying Declaration of Stephen J. Cirami Regarding (a) Mailing of the Notice and Proof of Claim Form; (b) Publication of the Summary Notice; (c) Website, Telephone Helpline and E-Mail; (d) Coordination with Rust and Defendants; and (e) Report on Objections and Requests for Exclusion Received to Date.

- "Corley Decl." is the accompanying Declaration of Patricia Corley.

- "Deering Decl." is the accompanying Declaration of Abigail Deering Regarding Distribution of the Settlement Notice and Proof of Claim Form to Mexican-Domiciled Class Members.

- "Hong Decl." is the accompanying Declaration of Jessy Hong Regarding Mailing of the Settlement Notice and Proof of Claim Form to Potential Class Members in Taiwan.

- "Idzior Decl." is the accompanying Declaration of Tomasz Karol Idzior Regarding Mailing of the Settlement Notice and Proof of Claim Form to Potential Class Members in Poland.

- "Lee Decl." is the accompanying Declaration of Michael T. Lee Regarding Mailing of the Settlement Notice and Proof of Claim Forms.

- "Ng Decl." is the accompanying Declaration of Audrey Ng Regarding Mailing of the Settlement Notice and Proof of Claim Form to Potential Class Members in Singapore.

- "Rabe Decl." is the accompanying Declaration of Jason Rabe Regarding Mailing of the Mail Notice and Claim Form to Foreign-Based Class Members.

- "Shilling Decl." is the accompanying Declaration of Patrick Shilling Regarding Mailing of the Settlement Notice and Proof of Claim Form.

**Other Defined Terms**

- "Lead Counsel" means Scott+Scott, Attorneys at Law, LLP and Hausfeld LLP.

- "Plaintiffs' Counsel" means Korein Tillery LLC; Kirby McInerney LLP; Labaton Sucharow LLP; Lowey Dannenberg, P.C.; Robbins Geller Rudman & Dowd LLP; MoginRubin LLP; Boni & Zack LLC; Obermayer Rebmann Maxwell & Hippel LLP; Steyer Lowenthal Boodrookas Alvarez & Smith LLP; Cafferty Clobes Meriwether & Sprengel LLP; Nussbaum Law Group, P.C.; Wolf Popper LLP; Entwistle & Cappucci LLP; Grant & Eisenhofer P.A.; Motley Rice LLC; Glancy Prongay & Murray LLP; Berman Tabacco; Cohen Milstein Sellers & Toll PLLC; Louis F. Burke PC; Criden & Love, P.A.; Cera LLP; Morris and Morris LLC Counselors at Law; Cowper Law LLP; Cuneo Gilbert & LaDuca, LLP; Freed Kanner London & Millen LLC; Heins Mills & Olson, P.L.C.; Young Law Group, P.C.; Radice Law Firm, PC; Greenwich Legal Associates, LLC; Keller Rohrback L.L.P.; and, unless otherwise specified, Lead Counsel.

Unless otherwise defined herein, all other capitalized terms have the same meaning as set forth in the Settlement Agreements.

Pursuant to Federal Rules of Civil Procedure 23(c), (e), and (g), Class Plaintiffs, by and through their counsel, Scott+Scott, Attorneys at Law, LLP and Hausfeld LLP (together, "Lead Counsel"), respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Fifteen Settlements and Plan of Distribution.

## I.     INTRODUCTION

Class Plaintiffs, on behalf of the Settlement Classes, have agreed to settle all claims against the fifteen Settling Defendants in exchange for $2,310,275,000 in cash, while also obtaining extensive and crucial cooperation from each Settling Defendant. The Settlements (individually and collectively) warrant final approval.

The fifteen Settlements were negotiated separately, each under the auspices of an experienced mediator. The Settlements are each fair, reasonable, and adequate under the governing standards in this Circuit. Based on typical claims rates in class actions, Class Members who file a claim are likely to receive a majority of their estimated single damages. Each of the Settlement Funds is non-reversionary, ensuring that the Settlement Classes' recovery will not be diminished. The Settlement Classes also retain their ability to pursue claims against Credit Suisse for remaining damages, subject to set-off. This is, by any standard, a remarkable recovery, particularly when considering the risks and delay attendant to protracted litigation.

The Settlements also satisfy the additional criteria for final approval. The notice to potential members of the Settlement Classes complies with Rule 23 and due process. The proposed Settlement Classes meet all of the requirements of Rule 23 for certification for settlement purposes. The Plan of Distribution is a fair, reasonable, and rational method for distributing the Net Settlement Fund to the Settlement Classes.

Finally, members of the Settlement Classes − largely sophisticated investors − have responded positively to these historic Settlements. As of January 12, 2018, no class member has objected to the Settlements, and of the potential hundreds of thousands of Class Members only six entities with minimal trading volumes have requested exclusion.[1]

For these reasons, as more fully described below, the Court should finally approve the Settlements.

## II.    BACKGROUND

Between January 5, 2015 and September 29, 2017, Class Plaintiffs reached fifteen Settlements with Settling Defendants. Each of these Settlements was reached through arm's-length negotiations by experienced counsel and was reached with the assistance of a well-respected, nationally-recognized mediator, Kenneth R. Feinberg. Mr. Feinberg, who is knowledgeable about the strengths and weaknesses of this case based on his extensive involvement as the mediator and review of arguments and evidence presented to him, has opined that the financial result achieved for the class when combined with the cooperation received is a "remarkable success" for the Settlement Classes. Feinberg Decl., ¶24. Mr. Feinberg further opined that the Settlements "represent[] some of the finest lawyering toward a negotiated resolution that I have witnessed in my [more than 30 year] career." Feinberg Decl., ¶29.

Each Settlement includes a substantial monetary payment, ranging between $10.5 million and $402 million, as set forth below:

| | |
|---|---|
| BofA | $187,500,000 |
| BTMU | $10,500,000 |
| Barclays | $384,000,000 |
| BNP Paribas | $115,000,000 |
| Citigroup | $402,000,000 |

---

[1] The deadline to opt out or object to the Settlements is February 7, 2018. Plaintiffs will address any objections that are received or additional exclusions in their reply memorandum on April 23, 2018.

| | |
|---|---|
| Deutsche Bank | $190,000,000 |
| Goldman Sachs Total | $135,000,000 |
| Settlement Amount | $134,500,000 |
| Notice and Administration | $500,000 |
| HSBC | $285,000,000 |
| JPMorgan Total | $104,500,000 |
| Settlement Amount | $104,000,000 |
| Notice and Administration | $500,000 |
| Morgan Stanley Total | $50,000,000 |
| Settlement Amount | $49,750,000 |
| Notice and Administration | $250,000 |
| RBC | $15,500,000 |
| RBS | $255,000,000 |
| Soc Gen | $18,000,000 |
| Standard Chartered | $17,200,000 |
| UBS | $141,075,000 |

Each Settlement also contains valuable, non-monetary consideration in the form of extensive cooperation obligations, including attorney proffers, production of transaction data, production of documents, interviews, depositions, declarations, and trial testimony.

Following the filing of the Consolidated Amended Class Action Complaint and argument over Defendants' motion to dismiss, Class Plaintiffs and JPMorgan executed a Settlement on January 5, 2015. Lead Counsel Decl., ¶36. That Settlement occurred 14 months after the first Complaint, *City of Haverhill Retirement System v. Barclays Bank PLC et al.,* 13-cv-7789, was filed. Lead Counsel Decl., ¶25. That Complaint was brought after months of extensive, pre-lawsuit investigation, including review of publicly available information, analysis of Class Plaintiffs' and third parties' interviews with market participants and traders, and extensive consultation with FX market experts. Lead Counsel Decl., ¶25. The JPMorgan Settlement, which was later amended, provided for a payment of $99,500,000 (including notice and administration expenses) and also contained substantial cooperation obligations described below. Lead Counsel Decl., ¶¶125-126. The JPMorgan Settlement was an ice-breaker, motivating other Defendants to enter into negotiations. *E.g.*, Lead Counsel Decl., ¶¶128, 146.

3

Defendant UBS settled with Class Plaintiffs on March 6, 2015. Lead Counsel Decl., ¶132. Despite being the DOJ's amnesty applicant and thus not subject to treble damages, UBS paid $135,000,000. UBS also provided extensive cooperation. UBS' cooperation described additional collusive conduct and conspirators, permitting Class Plaintiffs to expand the settlement class definition and, ultimately, the scope of the Second Consolidated Amended Complaint ("SAC"). Lead Counsel Decl., ¶130.

With the benefit of certain cooperation obtained from JPMorgan and UBS, Class Plaintiffs separately negotiated, over a period of several months, seven additional term sheets and/or agreements in principle with Citigroup, Barclays, Bank of America, Goldman Sachs, RBS, BNP Paribas, and HSBC. Lead Counsel Decl., ¶¶144, 151, 157, 163, 168, 173, 178. These Settlements ranged from $115,000,000 (BNP Paribas) to $402,000,000 (Citigroup). Lead Counsel Decl., ¶¶173, 144. The Settlements, while negotiated separately, were largely identical in terms of scope and release and each contained similar cooperation provisions. Between September 30, 2015 and October 5, 2015, the original JPMorgan and UBS Settlements were amended to, among other things, incorporate separately-negotiated settlements on behalf of the Exchange-Only Class, and the Settlements with Citigroup, Barclays, Bank of America, Goldman Sachs, RBS, BNP Paribas, and HSBC were executed. Lead Counsel Decl., ¶¶123, 134, 182.

The Court preliminarily approved these nine Settlements on December 15, 2015. ECF No. 536. The Court also approved The Garden City Group ("GCG") as the Claims Administrator. *Id.* at ¶¶2, 7. On December 20, 2016, the Court found that the proposed notice plan "constitute[d] the best notice practicable under the circumstances" and preliminarily approved a plan of distribution. ECF No. 700 at ¶¶2, 13.

Class Plaintiffs then settled with five of the remaining Defendants. Class Plaintiffs and BTMU executed a Settlement on February 14, 2017, providing $10,500,000 and extensive cooperation. Lead Counsel Decl., ¶189. On July 27 and 28, 2017, as a result of additional mediations, Class Plaintiffs executed the Settlements with Morgan Stanley ($50,000,000, including notice and administration funds), RBC ($15,500,000), Soc Gen ($18,000,000), and Standard Chartered ($17,200,000); each Settlement also contained extensive cooperation obligations. Lead Counsel Decl., ¶¶194, 199, 204, 210. These Defendants had not faced any regulatory fines as a result of investigations into any misconduct in the FX market, and all but Morgan Stanley had been added to the SAC as a result of counsel's continuing investigation and early-stage settlement cooperation. Lead Counsel Decl., ¶¶15, 194, 199, 204, 210. On September 8, 2017, the Court granted preliminary approval to the settlements with BTMU, Morgan Stanley, RBC, Soc Gen, and Standard Chartered, ECF No. 866 at ¶2, and approved a notice plan and preliminarily approved a Plan of Distribution. ECF No. 864 at ¶¶3–4.

On September 29, 2017, following a series of mediations over the course of several years, Class Plaintiffs and Deutsche Bank settled. Lead Counsel Decl., ¶217. The Deutsche Bank Settlement provides $190,000,000 and extensive cooperation. The Court preliminarily approved the Deutsche Bank Settlement on September 29, 2017, and approved a revised notice plan and Plan of Distribution. ECF Nos. 882, 883.

A.    **Class Notice**

Pursuant to the Notice Order, beginning on October 6, 2017, Class Plaintiffs instructed GCG to give reasonable notice to potential members of the Settlement Classes via Direct Notice, Print Publication Notice, and Internet Notice. Class Plaintiffs also established a settlement website for Class Members.

**Direct Notice.** Class Plaintiffs provided direct notice to every potential Class Member that could be identified through reasonable efforts. First, GCG mailed a total of 394,729 Notice Packets to potential Class Members' addresses that were obtained from Defendants' business records or requested by Class Members. Cirami Decl., ¶8. Second, Rust Consulting ("Rust"), as agent of the Settling Defendants, mailed a total of 228,153 Notice Packets to potential Class Members. Rabe Decl., ¶11. Third, Barclays, Citi, HSBC, JPM, Soc Gen, and UBS ("Mailing Defendants") provided direct notice to approximately 5,337 potential Class Members.[2]

**Print Publication Notice.** Between October 6 and October 14, 2017, GCG transmitted Publication Notice in numerous publications. Cirami Decl., ¶12. These publications included *FX Week*; *The Wall Street Journal*; *Investor's Business Daily*; *Financial Times*; *The New York Times* (International Edition); *The Guardian* (U.K.); *Globe and Mail* (Canadian National Edition); and *La Presse* (Montreal). *Id*. GCG also issued a press release through Premier Global. *Id.*

**Internet Notice.** The Claims Administrator published Internet notice on *eFXnews.com*, *Financial Times* (Global Edition), and *Bloomberg* (United States edition). Cirami Decl., ¶13. Each Internet notice was posted beginning October 6; the notices on *efxnews.com* and *Bloomberg* ran through November 4 and the notice on *Financial Times* ran through October 30. *Id.*

**Settlement Website.** On October 1, 2017, Class Plaintiffs launched the Settlement Website − http://www.FXAntitrustSettlement.com − to enable potential Class Members to obtain information about the Settlements and to file a claim electronically. Cirami Decl., ¶14. As of January 7, 2018, the Settlement Website has had 22,365 unique visitors, who have downloaded the notice 12,361 times. Cirami Decl., ¶17.

---

[2] *See also* Adams Decl., ¶3–5; Corley Decl., ¶2; Deering Decl., ¶2–5; Hong Decl., ¶¶2–4; Idzior Decl., ¶¶3–4; Lee Decl., ¶2; Ng Decl., ¶¶2–4; Shilling Decl., ¶¶9–12.

B.    **Plan of Distribution**

Lead Counsel, working with sophisticated FX and claims processing experts, developed the Plan of Distribution, ECF No. 875-2 Ex. 4, to equitably and efficiently allocate the Net Settlement Fund. The Plan of Distribution provides for three payment categories based on the relative volume of a claimant's transactions, streamlining the resolution process for smaller claimants. *Id.* at 17–18, 20. Claimants with few eligible transactions and whose claims are valued at $15 or less will be offered a *de minimis* payment of $15. *Id.* at 17, 20. Claimants whose claims are valued at more than $15 but less than $150 will be offered an Automatic Payment of $150. *Id.* at 18, 20. Other claimants will receive a *pro rata* share payment based on their Eligible Participation Amount. *Id.* at 18, 20. The Plan of Distribution permits most claimants to rely upon data provided by Defendants or submit their own data to the Claims Administrator. *Id.* at 15–17.

The Plan of Distribution applies a three-step method for distributing *pro rata* share payments. *Id.* at 15-20. The Plan of Distribution (i) calculates each claimant's Settlement Transaction Volume by adjusting the gross volume of a claimant's transactions in eligible instruments to account for varying sensitivities to the spot rate; (ii) applies Relative Damage Factors to the Settlement Transaction Volume, to account for currency pair and trade size; and (iii) in some instances, applies discounts to account for the relative legal strength of claims based on transactions executed in certain time periods and on exchanges outside the United States. *Id.*

III.   **ARGUMENT**

A.    **The Proposed Settlements Are Fair, Reasonable, and Adequate and Should Be Granted Final Approval**

To grant final approval, the Court must determine that a class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).[3] Public policy favors the settlement of disputed

---

[3] Unless otherwise noted, all emphases are added and all citations are omitted.

claims among private litigants, particularly class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116–17 (2d Cir. 2005). In ruling on final approval of proposed class settlements, the Court considers both the procedural and substantive fairness of the settlements. *See id.* at 116.

### 1. The Settlements Are Presumptively Fair, Reasonable, and Adequate

Where settlements are the "product of arm's length negotiations between experienced and able counsel," courts will deem them to be procedurally fair. *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775, 2009 WL 3077396, at *7 (E.D.N.Y. Sept. 25, 2009); *see Wal-Mart*, 396 F.3d at 116. Where settlements are procedurally fair, courts grant "'great weight' [] to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997).

Each of the fifteen Settlements was reached through extensive arm's-length negotiations conducted by experienced counsel under the supervision of a respected mediator well-versed in complex litigation, Kenneth R. Feinberg. Lead Counsel Decl., ¶12; Feinberg Decl., ¶¶2–4. An experienced mediator's involvement only adds to the presumption of fairness with respect to each of the Settlements. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) (noting that the "presumption in favor of the negotiated settlement in this case is strengthened by the fact that settlement was reached in an extended mediation"); *see D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement . . . helps to ensure that the proceedings were free of collusion and undue pressure."). The representation of all parties by able counsel experienced in class action litigation leads to a presumption of procedural fairness. *Air Cargo*, 2009 WL 3077396, at *7.

## 2.  *The Grinnell Factors Support Final Approval of the Settlements*

The Second Circuit has identified nine factors the courts should examine when considering whether to finally approve a proposed class settlement (the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). This list of factors is not a checklist; that is, not every factor must weigh in favor of approval. Rather, a court considers "the totality of these factors in light of the particular circumstances" in making its ultimate determination of approval. *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012). For each of the Settlements, the *Grinnell* factors weigh in favor of final approval.

### a.  Complexity, Expense, and Likely Duration of the Litigation

Courts in this Circuit have recognized that "federal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012); *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (noting that antitrust class actions "are notoriously complex, protracted, and bitterly fought"). These factors favor settlement approval, because "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013).

This class action concerns transactions conducted primarily over-the-counter in a global, largely-unregulated market; as such, it poses a high level of complexity in terms of subject matter and legal issues. Class Plaintiffs have already devoted more than 330,000 hours to litigating the Action; efforts that have proven necessary to litigate this challenging matter. These hours have resulted in Class Plaintiffs largely prevailing over three motions to dismiss, reviewing more than 1.6 million documents (and more than 16.5 million printable pages of documents) and over 700 hours of audio files produced by Defendants, and working extensively with a team of experts to compile and analyze an exceptionally comprehensive database of transactional data.

Further pre-trial litigation, trial, and the inevitable appeals will be time-consuming. Regardless of the outcome of the forthcoming class certification motion, the losing party would likely have sought review pursuant to Rule 23(f). This process would have delayed resolving the litigation with respect to Settling Defendants. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 222 n.13 (E.D.N.Y. 2013), *rev'd and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016) ("*Interchange*") (noting a 20-month delay between class certification order and affirmance by the Second Circuit in *In re Visa Check/Mastermoney Antitrust Litigation*). The case would then likely proceed to contested motions for summary judgment and a lengthy trial on the merits. *See id.* at 212. It is likely that trial, too, would result in appeals, further prolonging the litigation and dissipating the relative value of the case. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[T]he passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery").

The Settlements represent a recovery of more than $2.3 billion in cash, preserve the Settlement Classes' rights to recover additional damages from Credit Suisse (subject to set-off),

and spare the Settlement Classes the considerable risk, expense, and delay of continued litigation, trial, and appeals. Class Plaintiffs submit that the efficiencies of settlement weigh in favor of the proposed Settlements. *See In re NASDAQ Mkt.-Makers Antitrust Litig.,* 187 F.R.D. 465, 477 (S.D.N.Y. 1998) ("*NASDAQ III*") (concluding that this factor weighed in favor of a mutually-agreed-upon resolution where it would be "enormously expensive to continue [against the defendants], extraordinarily complex to try, and ultimately uncertain of result.").

**b.      The Reaction of the Class to the Settlements**

The Settlement Classes' early, positive response to the Notice demonstrates support for the Settlements. *Wal-Mart*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."). While the deadline for Class Members to object or request exclusion has not yet passed, since the comprehensive notice program began on October 6, 2017, there have been no objections. Moreover, there have been only six requests for exclusion out of a class with hundreds of thousands of putative Class Members.[4] Conversely, GCG has fielded thousands of inquiries about how to participate and make claims from Class Members. *See* Cirami Decl., ¶15.

**c.      The Stage of the Proceedings**

This factor asks whether the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement." *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114 (S.D.N.Y. 1999). For each Settlement, Class Plaintiffs "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

---

[4] The six entities that have filed requests for exclusion collectively represent themselves and their subsidiaries.

By the time of the JPMorgan Settlement, Lead Counsel had conducted an extensive investigation during the initiation and early-stage prosecution of the Action. Lead Counsel Decl., ¶¶25, 29–30. Further, Class Plaintiffs had gained a substantial understanding of Defendants' arguments in opposing a motion to dismiss and gained yet more information from regulatory settlements reached in November 2014. Lead Counsel Decl., ¶¶31–34.

Following the JPMorgan Settlement, Lead Counsel negotiated extensively with the DOJ to narrow the scope of its discovery stay, permitting access to valuable settlement cooperation. Lead Counsel Decl., ¶36–37. This cooperation included transaction data and attorney proffers which enhanced Lead Counsel's understanding of the underlying facts.

The UBS Settlement in March 2015, provided cooperation that permitted Class Plaintiffs to expand the scope of alleged conduct and name four additional defendants to the SAC – BTMU, RBC, Soc Gen, and Standard Chartered. Lead Counsel Decl., ¶39. Class Plaintiffs extensively used UBS's cooperation, as well as cooperation provided by JPMorgan, when negotiating the Settlements with Bank of America, Barclays, BNP Paribas, Citigroup, Goldman Sachs, HSBC, and RBS. Lead Counsel Decl., ¶133.

Lead Counsel received substantial settlement cooperation from each of those Defendants in the fall of 2015 and early winter of 2016, including large document productions from all nine original Settling Defendants. Lead Counsel Decl., ¶65. This information further enhanced Lead Counsel's understanding of the Action and provided greater transparency with respect to the conduct alleged in the SAC.

Meanwhile, Lead Counsel litigated, and largely prevailed, over two more motions to dismiss. As discovery and settlement cooperation continued, Lead Counsel and their experts acquired a massive amount of FX trading data − believed to constitute one of the largest transaction

databases ever constructed for litigation. Lead Counsel Decl., ¶¶63, 65–72. Settlement cooperation, document review, and work with consulting experts in preparation for class certification informed settlement negotiations with BTMU, Deutsche Bank, RBC, Soc Gen, and Standard Chartered. Lead Counsel Decl., ¶¶116, 133, 237.

Class Plaintiffs entered into each Settlement only after Lead Counsel had engaged in a sufficient investigation to obtain a realistic understanding of the relative strengths and weaknesses of Class Plaintiffs' claims against each Settling Defendant. This factor supports final approval.

### d.    The Risks of Establishing Liability and Damages

The Court considers the risks of litigation when assessing settlements, "balanc[ing] the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Interchange*, 986 F. Supp. 2d at 224. In so doing, the Court need not "adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Although Class Plaintiffs have received substantial cooperation and conducted extensive discovery, a finding of both liability and damages is not certain. *NASDAQ III*, 187 F.R.D. at 475 ("It is known from past experience that no matter how confident one may be in the outcome of litigation, such confidence is often misplaced.") (quoting *West Virginia. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971)). This is a complex case. The subject matter of the worldwide FX market compounds the inherent risk. *Park v. The Thomson Corp.*, No. 05-CV-02931, 2008 WL 4684232, at *4 (S.D.N.Y. Oct. 22, 2008) (noting that in a case where claims are complex, "[a] trial on these issues would likely be confusing to a

jury"); *see also NASDAQ III*, 187 F.R.D. at 475 (noting difficulty and uncertainty of proving liability, "especially in a case of this complexity and magnitude").[5]

*Scope of Liability –* Settling Defendants would likely have argued that the evidence shows collusion with respect to individual trades, rather than, as Class Plaintiffs allege, an overarching price-fixing conspiracy in the FX market. It is also likely that each Settling Defendant would argue that even if an overarching agreement is established, it was not a participant in that agreement. While Class Plaintiffs unearthed evidence they believe proves a persistent and systematic pattern of conduct among all Defendants and believe the controlling law likewise supports that claim, there was a risk that the Court or a jury would credit Defendants' arguments, which could have resulted in the complete dismissal of the Action, considerably narrowed the conduct at issue, or eliminated some or all Settling Defendants.[6] Even the existence of regulatory fines or guilty pleas would not have sufficed to demonstrate liability with respect to Defendants, because the governmental findings and allegations were all narrower in scope than the Action.

*Proof of Class-Wide Damages –* Class Plaintiffs would have had to bear this burden with respect to Settling Defendants, requiring expert analysis to demonstrate that damages for the class as a whole and individual Class Members' damages could be computed on a common, formulaic basis. While Lead Counsel are confident they and their experts will present sufficient evidence to support a finding of class-wide impact and damages, Settling Defendants would have vehemently

---

[5] The complex nature of FX trading is substantiated by the recent criminal trial of Mark Johnson, formerly of HSBC. *United States v. Johnson*, No. 1:16-cr-00457-NGG (E.D.N.Y.). Government attorneys spent a substantial portion of their case explaining the FX market and characterizing conduct that must be gleaned from a mixture of trader slang and applied mathematics.

[6] Indeed, in *FX III*, the Court granted a motion to dismiss the SAC, in part, with respect to claims based on transactions executed before December 1, 2007, holding that the SAC failed to adequately allege a conspiracy prior to this date. *In re Foreign Exch. Benchmark Rates Antitrust Litig.,* No. 13-CV-7789, 2016 WL 5108131, at *16-17 (S.D.N.Y. Sept. 20, 2016).

opposed this argument. Settling Defendants likely would have argued that Class Plaintiffs' experts' opinions should be excluded, or that Class Plaintiffs failed to demonstrate class-wide impact. If these arguments proved successful, it could reduce potential damages or even result in the dismissal of the Action. Notably, no regulator or government agency attempted to calculate market-wide damages stemming from FX misconduct.

Moreover, Settling Defendants were poised to exploit these risks; each is well financed and represented by able lawyers from some of the most respected law firms in the world. Settling Defendants were prepared, and had the wherewithal, to vigorously contest liability, impact, and damages, at class certification, summary judgment, trial, and on appeal. Settling Defendants have denied, and continue to deny, any liability to Class Plaintiffs. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom., Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

Thus, when weighing the risks of establishing liability and damages against the certainty of the significant recoveries achieved by the Settlements, the balance weighs heavily in support of final approval of the Settlements.

### e.   The Risks of Maintaining the Class Action Through Trial

While Class Plaintiffs believe that they will be able to certify litigation classes, Settling Defendants would have advanced substantial arguments in opposition both in this Court and, following certification, on appeal. Class Plaintiffs faced a substantial risk that this Action, or certain claims asserted within it, would not be able to proceed on a class-wide basis. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is

not illusory"); *see also Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (reversing class certification in antitrust case). The risks associated with class certification weigh in favor of final approval.

### f.    The Ability of Defendants to Withstand a Greater Judgment

While large institutions ordinarily can "withstand a greater judgment," given the extent of cooperation provided by Settling Defendants and the significant size of the settlement amounts, this factor supports final approval. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation . . . tends to offset the fact that they would be able to withstand a larger judgment."); *Weber v. Gov't Emps. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the . . . settlement.").

### g.    The Reasonableness of the Settlements in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The last two *Grinnell* factors take into account "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)); *see also In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *NASDAQ III*, 187 F.R.D. at 478.[7] This assessment does not result in a "mathematical equation yielding a particularized sum." *Massiah v. MetroPlus Health Plan, Inc.*, No 11-CV-05669, 2012

---

[7] The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013), and *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) have illustrated the increasing legal risk that antitrust plaintiffs take in class actions. Furthermore, the "Fairness in Class Action Litigation and Furthering Asbestos Claim Transparency Act of 2017", H.R. 985, 115th Cong. (2017), passed by the U.S. House of Representatives in March of 2017 could torpedo this and other antitrust class actions if ever enacted into law.

WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012). As noted in one prominent antitrust case, "the essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981); *see also Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

The Settlements, whether taken individually or collectively, are a superb result for the Settlement Classes. The Settlements combine to represent the third largest antitrust settlement in history. Lead Counsel have estimated that damages from January 1, 2003 to December 15, 2015 are approximately $8 to $10 billion. For the operative Class Period (December 1, 2007 to December 31, 2013), Lead Counsel estimate damages are $5.4 to $7 billion. The Settlement Funds thus represent a recovery of 23–29% of damages before trebling and a recovery of 33–43% of damages before trebling for the operative Class Period. Even if all requested fees and expenses are awarded and the litigation experiences a higher-than-typical claims rate in terms of claim volume,[8] the payments to Class Members would likely approach full compensation for Class Members with respect to single damages during the operative Class Period. And, of course, Class Members would reserve their right to recover any damages from Credit Suisse (subject to set-off) on the basis of joint and several liability. The mediator, Kenneth Feinberg, has opined that "when considering the relative strengths and weaknesses of the litigation, what Class Lead Counsel has achieved – more than $2.31 billion in settlements along with extensive cooperation – represents some of the finest lawyering toward a negotiated resolution that I have witnessed in my career." Feinberg Decl., ¶29.

---

[8] *See In re Initial Pub. Offering Sec. Litig.*, No. 21-MC-92 (SAS), 2010 WL 2834894, at *1 (S.D.N.Y. July 7, 2010) (accepting testimony that "response rates vary greatly depending on a variety of factors" and can "range from less than five percent to more than twenty percent"; "the 5.5% response rate in this action is not outside the norm").

The Settlements have also provided voluminous cooperation that has maximized Class Plaintiffs' ability to prove liability and damages at trial. The value of such cooperation has been noted to be "a substantial benefit to the classes [that] strongly militates toward approval of the Settlement Agreement.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003)); *see also Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG) (VVP), 2013 WL 4525323, at *9 (E.D.N.Y. Aug. 27, 2013).

While each case must be judged on its own merits, the recoveries here clearly meet the standard for approval. *Grinnell*, 495 F.2d at 455 n.2; *see also In re Med. X–Ray Film Antitrust Litig.*, No. CV–93–5904, 1998 WL 661515, at *5–6 (E.D.N.Y. Aug. 7, 1998) (granting final approval to antitrust class action settlement representing approximately 17% of the estimated best possible recovery); *id.* at *6 (collecting cases, noting final approval of settlements for "less than 2%" and "6.4-11%" of potential recovery); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminarily approving partial settlements, noting that the settlement amounts "represent[ed] approximately two percent of [settling defendants'] sales" and 4.2% of sales in the four years during the class period when the respective defendants registered their highest sales).

### B.     Notice to the Class Comported with Rule 23 and Due Process

Notice to the Class satisfied Rule 23 and due process. Rule 23(c)(2)(B) requires the "best notice practicable under the circumstances[,] including individual notice to all members who can be identified through reasonable effort." *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–75 (1974). Rule 23(e)(1) requires that notice must be "reasonable," *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that

are open to them in connection with the proceedings." *Wal-Mart*, 396 F.3d at 114. Neither individual nor actual notice to every class member is required; instead, "class counsel [need only] act[] reasonably in selecting means likely to inform the persons affected." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at \*3 (S.D.N.Y. Dec. 6, 2010) (citing *Weigner v. The City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)); *see also In re Adelphia Commc'ns Corp. Sec. & Derivatives Litig.*, 271 F. App'x 41, 44 (2d Cir. 2008). As explained below, the approved notice program satisfies these requirements.

### 1. *Notice Was the Best Practicable Under the Circumstances*

Pursuant to the Court's Superseding Order authorizing notice (ECF No. 883), starting on October 6, 2017, GCG (the Court-appointed Claims Administrator), Rust, and the Mailing Defendants (collectively, "Mailing Entities") mailed copies of the Notice of Class Action Settlements (the "Mail Notice"), the Proof of Claim and Release Form (the "Claim Form"), a one page translation insert (the "Translation Insert"), and a quarter page multiple claim insert (the "Multiple Claim Insert" and, collectively with the Mail Notice, Claim Form, and Translation Insert, the "Claim Packet").[9] As of January 5, 2018, a total of 628,219 Claim Packets have been disseminated to potential members of the Settlement Classes.

GCG mailed 394,729 Claim Packets primarily to U.S.-domiciled potential Class Members, Rust mailed 228,153 Claim Packets primarily to those domiciled outside of the United States, and the Mailing Defendants mailed Claim Packets to approximately 5,337 potential Class Members located in jurisdictions where they determined they were potentially restricted by foreign data privacy laws and/or bank secrecy laws from identifying potential Class Members to either GCG

---

[9] Cirami Decl., ¶2; Rabe Decl., ¶¶7, 9; Adams Decl., ¶3; Corley Decl., ¶2; Deering Decl., ¶¶3–4; Hong Decl., ¶¶3–4; Idzior Decl., ¶¶3–4; Lee Decl., ¶2; Ng Decl., ¶¶3–4; Shilling Decl., ¶¶9–12.

or Rust.[10] Coordination processes are in place between GCG, Rust, and the Mailing Defendants to ensure that the notice and claims process is the same for all potential Class Members, regardless of domicile. Cirami Decl., ¶¶9–11. Through this comprehensive process, the entire population of potential Class Members who could be identified through reasonable effort have been sent individual notice.

Beginning in August 2017, GCG sent letters to 1,642 potential brokers and Futures Commission Merchants ("FCMs") who may have traded on behalf of potential Class Members. The broker letters explained the options the brokers and FCMs had to ensure prompt receipt of the notice by their clients. *See* Cirami Decl., ¶4. Follow-up letters were sent to these brokers and FCMs in September, and each broker and FCM was provided with the broker letter and Claim Packet beginning on October 6, 2017. Cirami Decl., ¶¶4–5. GCG has since provided claim packets to individuals identified by these brokers and FCMs or provided the brokers and FCMs with Claim Packets so that they can distribute the packets to their clients directly. Cirami Decl., ¶7.

Widely disseminated plain-language Publication Notice complemented the direct Mail Notice. Between October 6 and October 16, 2017, Class Plaintiffs, through GCG, transmitted Publication Notice in eight national and international newspapers. Cirami Decl., ¶12. These publications were *FX Week*; *The Wall Street Journal*;[11] *Investor's Business Daily*; *Financial Times*; *The New York Times* (International Edition); *The Guardian* (United Kingdom); *Globe and Mail* (Canadian National Edition); and *La Presse* (Montreal). *Id*. Class Plaintiffs also issued a press release through Premier Global, which distributes content to local, regional, and international

---

[10] Cirami Decl., ¶¶2, 5–8; Rabe Decl., ¶¶3, 9, 11; Adams Decl., ¶¶3, 5; Corley Decl., ¶2; Deering Decl., ¶¶2–5; Idzior Decl., ¶¶2–4; Hong Decl., ¶¶ 2–4; Lee Decl., ¶2; Ng Decl., ¶¶2–4; Shilling Decl., ¶¶9–12.

[11] *The Wall Street Journal* ceased publication of the global edition in October 2017, before notice could be published in the global edition. Cirami Decl., ¶12 n.2. As such, publication of the Summary Notice was made in the national edition.

media outlets in approximately 100 countries or regions in 18 languages. *Id.* Internet publication also occurred on *eFXnews.com* and the websites of *Financial Times* (Global Edition) and *Bloomberg* (U.S. edition). Cirami Decl., ¶12.

On October 1, 2017, GCG established a website dedicated to the Settlements, www.FXAntitrustSettlement.com. The website provides potential Class Members with information about the Settlements and applicable deadlines. It provides access to downloadable copies of the Mail Notice, Claim Form, Publication Notice, Plan of Distribution and related explanatory materials, and other case documents. Class Members may also obtain information about the Settlements via a dedicated telephone helpline and email address. Cirami Decl., ¶¶12–14. As of January 7, 2018, the Settlement Website has had 22,365 unique visitors, who have downloaded the notice 12,361 times, and the helpline has fielded 2,343 calls. Cirami Decl., ¶15.

This multi-faceted approach of direct mail notice, supplemented by widespread print and Internet publication notice, transmission over a newswire, and a dedicated settlement website, telephone helpline, and email address constitutes "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Such multi-faceted notice programs combining direct mail and publication are routinely approved. *See, e.g.*, *In re Vitamin C*, 2012 WL 5289514, at *8 ("The notice was also distributed widely, through the internet, print publications, and targeted mailings. . . . the distribution of the class notice was adequate."); *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *5 (S.D.N.Y. Apr. 26, 2016) ("*CDS*") ("Class [c]ounsel mailed notice packets to each of 13,923 identified [c]lass members. . . . The [s]ummary [n]otice was also published . . . in several important business publications. . . . The [claims administrator] launched a website for the [s]ettlement which posted the [s]ettlement agreements, notices, court documents, and other information relevant to the [s]ettlement.").

## 2. The Notice "Fairly Apprised" Potential Class Members of the Settlements and Their Options

The contents of a class notice must (1) "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings" and (2) be written as to "be understood by the average class member." *Wal-Mart,* 396 F.3d at 114 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e) requirements. . . ."; however, courts typically consider (a) "whether there has been a succinct description of the substance of the action and the parties' positions"; (b) "whether the parties, class counsel, and class representatives have been identified"; (c) "whether the relief sought has been indicated"; (d) "whether the risks of being a class member, including the risk of being bound by the judgment have been explained"; (e) "whether the procedures and deadlines for opting out have been clearly explained"; and (f) "whether class members have been informed of their right to appear in the action through counsel." *In re Vitamin C*, 2012 WL 5289514, at *8. The Mail Notice contains all the information required by Rule 23(c)(2)(B), including a plain language explanation of (i) the nature of the case, the claims and defenses, the class definition, the background of the Settlements, and how the Net Settlement Fund will be allocated upon final approval; (ii) the right to opt out of the Settlement Classes, to object to the Settlements, and to appear at the Final Fairness Hearing, as well as the processes and deadlines for doing so; and (iii) the binding effect of judgment on those who do not exclude themselves from the Settlement Classes, and the effect of final approval. The Mail Notice also contains other information, such as Lead Counsel's intent to request attorneys' fees and expense reimbursement. It prominently features contact information for the Claims Administrator and Lead Counsel, which Class Members can use, and have used, to obtain other information. The Mail Notice provides recipients with information on how to submit

a Claim Form to potentially receive a distribution from the Net Settlement Fund. On its own or supplemented through publication, "these notices provide[] sufficient information for [c]lass [m]embers to understand the [s]ettlement and their options." *Sykes v. Harris*, 09 Civ. 8486 (DC), 2016 WL 3030156, at *10 (S.D.N.Y. May 24, 2016).

### C.     The Plan of Distribution Should Be Granted Final Approval

To secure final approval, a plan of distribution "must meet the standards by which the settlement is scrutinized − namely, it must be fair and adequate. A plan need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. A principal goal of a plan of distribution must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *CDS*, 2016 WL 2731524, at *9. The Plan of Distribution satisfies these requirements.

Lead Counsel has worked extensively with FX and claims experts to craft the Plan of Distribution as a fair and reasonable method to equitably allocate the Net Settlement Fund on the basis of the conduct alleged in the Action; the opinion of experienced and informed counsel is entitled to "considerable weight." *In re Am. Bank Note Holographics, Inc*., 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight."); Lead Counsel Decl., ¶¶17, 106–107.

The Plan of Distribution, which the Court preliminarily approved on September 29, 2017, ECF No. 883, permits most claimants to either rely upon transaction data provided by Defendants (Option 1) or submit their own transactional history (Option 2). Once validated, all claims are placed in one of three payment categories: *de minimis*, automatic, or *pro rata* share. The *de minimis* and automatic payments are provided to Class Members with lower transaction volumes to conserve administrative costs and streamline the process for smaller claimants. These payments

23

expedite payments to claimants with relatively simple trade histories, furthering the goals of equitable and timely distribution described in *CDS*, 2016 WL 2731524, at *9, and ensuring that eligible claimants receive compensation for their claims. *Cf. In re Nasdaq Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 RWS, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (approving $25 minimum payment to claimants, noting that small claimants spend "substantially more time per dollar of recovery due to the necessity of reading through and filling out the claims forms").

The *pro rata* share payment is comparable to plans of distributions proposed in other cases involving financial instruments. *See, e.g.*, *CDS*, 2016 WL 2731524, at *4 ("The Plan determines the amount to be paid on each Class Member's claim through three main steps: (1) identifying qualifying Covered Transactions; (2) estimating the amount of bid/ask spread inflation resulting from the Dealer Defendants' alleged conduct with respect to each Covered Transaction; and (3) calculating each claimant's recovery based on its *pro rata* share of the available Settlement Funds in relation to the recoveries to which all claimants who have submitted a valid claim are entitled."); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115809, at *14 (S.D.N.Y. Nov. 7, 2007) ("Each valid claim will then be calculated so that each authorized claimant will receive, on a proportionate basis, the share of the net settlement fund that the claimant's recognized loss bears to the total recognized loss of all authorized claimants.").

The Plan of Distribution is fair and adequate. It emphasizes (i) administrative efficiency; (ii) the preservation of the Settlement Fund; and (iii) appropriate compensation to Class Members. It warrants the Court's final approval.

### D.    The Court Should Grant Final Certification to the Settlement Classes

In the Court's Preliminary Approval Orders dated December 15, 2015, September 8, 2017, and September 29, 2017, the Court preliminarily certified the Direct Settlement Class and the

Exchange-Only Settlement Class. ECF No. 536, ¶3; ECF No. 866, ¶3; ECF No. 882, ¶3. Certification of the Settlement Classes remains appropriate because, as discussed in the Preliminary Approval Briefs[12] and reflected in the Court's Preliminary Approval Orders,[13] these Classes meet all the requirements of Rule 23(a) as well as the requirements of 23(b)(3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Accordingly, Class Plaintiffs request that the Court grant final certification of the Settlement Classes under Rules 23(a) and 23(b)(3).

## IV.    CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request the Court grant final approval of the Settlements, certify the Settlement Classes, and grant final approval of the Plan of Distribution.

Dated: January 12, 2018

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

HAUSFELD LLP

 *s/ Christopher M. Burke*

 *s/ Michael D. Hausfeld*

CHRISTOPHER M. BURKE (CB-3648)
WALTER W. NOSS (WN-0529)
KRISTEN M. ANDERSON (*pro hac vice*)
STEPHANIE A. HACKETT (*pro hac vice*)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com
shackett@scott.scott.com

MICHAEL D. HAUSFELD
REENA A. GAMBHIR
TIMOTHY S. KEARNS
NATHANIEL C. GIDDINGS
SARAH R. LAFRENIERE
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeld.com
rgambhir@hausfeld.com
tkearns@hausfeld.com
ngiddings@hausfeld.com
slafreniere@hausfeld.com

---

[12] ECF No. 480 at 27-35; ECF 821 at 15-16; ECF 876 at 9-10.

[13] ECF No. 536, ¶3; ECF No. 866, ¶3; ECF No. 882, ¶3.

-and-

SCOTT+SCOTT, ATTORNEYS AT LAW,
LLP
DAVID R. SCOTT (DS-8053)
JOSEPH P. GUGLIELMO (JG-2447)
DONALD A. BROGGI (DB-9661)
PETER A. BARILE III (PB-3354)
SYLVIA SOKOL (SS-0317)
THOMAS K. BOARDMAN (TB-0530)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
david.scott@scott-scott.com
jguglielmo@scott-scott.com
dbroggi@scott-scott.com
pbarile@scott-scott.com
ssokol@scott-scott.com
tboardman@scott-scott.com

-and-

HAUSFELD LLP
MICHAEL P. LEHMANN
BONNY E. SWEENEY
CHRISTOPHER L. LEBSOCK
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

*Interim Co-Lead Counsel*

OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
WILLIAM J. LEONARD *(pro hac vice)*
RIGEL FARR *(pro hac vice)*
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19103-1895
Telephone: 215-665-3000
Facsimile: 215-665-3165
william.leonard@obermayer.com
rigel.farr@obermayer.com

-and-

BONI & ZACK LLC
MICHAEL J. BONI *(pro hac vice)*
JOSHUA D. SNYDER *(pro hac vice)*
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
Facsimile: 610-822-0206
mboni@bonizack.com

KOREIN TILLERY, LLC
STEPHEN M. TILLERY *(pro hac vice)*
ROBERT L. KING *(pro hac vice)*
AARON M. ZIGLER *(pro hac vice)*
STEVEN M. BEREZNEY *(pro hac vice)*
One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
Saint Louis, MO 63101-1612
Telephone: 314-241-4844
Facsimile: 314-241-3525
stillery@koreintillery.com
rking@koreintillery.com
azigler@koreintillery.com
sberezney@koreintillery.com

-and-

KOREIN TILLERY, LLC
GEORGE A. ZELCS *(pro hac vice)*
ROBERT E. LITAN
205 N. Michigan Ave, Suite 1950
Chicago, IL 60601-5927

jsnyder@bonizack.com

*Counsel for Plaintiff the City of
Philadelphia, Board of Pensions and
Retirement*

WOLF POPPER LLP
MARIAN R. ROSNER
PATRICIA I. AVERY
FEI-LU QIAN
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: 212-759-4600
Facsimile: 212-486-2093
mrosner@wolfpopper.com
pavery@wolfpopper.com
fqian@wolfpopper.com

*Counsel for Plaintiff Employees' Retirement
System of Puerto Rico Electric Power
Authority*

LABATON SUCHAROW LLP
GREGORY S. ASCIOLLA
JAY L. HIMES
ROBIN A. VAN DER MEULEN
MATTHEW J. PEREZ
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
Facsimile: 212-818-0477
gasciolla@labaton.com
jhimes@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com

*Counsel for Plaintiff State-Boston
Retirement System, Marc G. Federighi, and
Michael J. Smith*

Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com
rlitan@koreintillery.com

*Counsel for Plaintiffs Haverhill Retirement
System and Oklahoma Firefighters Pension
and Retirement System, Robert Miller, Mark
Miller, and Peter Rives*

ROBBINS GELLER RUDMAN & DOWD
LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

*Counsel for Plaintiff Employees' Retirement
System of the Government of the Virgin
Islands*

BERMAN TABACCO
JOSEPH J. TABACCO, JR. (JJT-1994)
TODD A. SEAVER (*pro hac vice*)
SARAH KHORASANEE MCGRATH (*pro
hac vice*)
JESSICA MOY (*pro hac vice*)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: 415-433-3200
Facsimile: 415-433-6382
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com
smcgrath@bermandevalerio.com
jmoy@bermandevalerio.com

*Counsel for Plaintiff Fresno County
Employees'Retirement Association*

GRANT & EISENHOFER, P.A.
ROBERT G. EISLER
123 Justison Street
Wilmington, DE 19801
Telephone: 302-622-7030
Facsimile: 302-622-7100
reisler@gelaw.com

*Counsel for Plaintiff Syena Global*
*Emerging Markets Fund, LP*

ENTWISTLE & CAPPUCCI LLP
ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: 212-894-7200
Facsimile: 212-894-7272
aentwistle@entwistle-law.com
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

*Counsel for Plaintiffs Tiberius OC Fund,*
*Ltd. and Value Recovery Fund L.L.C.*

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ 08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

*Counsel for Plaintiffs Doug Harvey, Izee*
*Trading Company, and Richard Preschern*
*d/b/a Preschern Trading*

CRIDEN & LOVE, P.A.
MICHAEL E. CRIDEN
LINDSEY C. GROSSMAN
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: 305-357-9000
Facsimile: 305-357-9050
mcriden@cridenlove.com
lgrossman@cridenlove.com

*Counsel for Plaintiffs J. Paul Antonello,*
*Marc G. Federighi and Michael J. Smith*

LOWEY DANNENBERG COHEN &
HART, P.C.
VINCENT BRIGANTI
GEOFFREY M. HORN
PETER D. ST. PHILLIP
RAYMOND P. GIRNYS
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-733-7221
Facsimile: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com
rgirnys@lowey.com

-and-

LOWEY DANNENBERG COHEN &
HART, P.C.
GERALD LAWRENCE, ESQ.
Four Tower Bridge
200 Bar Harbor Drive, Suite 400
West Conshohocken, PA 19428
Telephone: 610-941-2760
Facsimile: 610-862-9777
glawrence@lowey.com

-and-

CERA LLP
SOLOMON B. CERA
C. ANDREW DIRKSEN
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: 415-777-2230
Facsimile: 415-777-5189
scera@cerallp.com
cdirksen@cerallp.com

*Counsel for Plaintiff Aureus Currency Fund
L.P.*

FREED KANNER LONDON & MILLEN
LLC
MICHAEL J. FREED
STEVEN A. KANNER
2201 Waukegan Road, Suite 130
Bannockburn, Illinois 60015
Telephone: 224-632-4500
Facsimile: 224-632-4521
mfreed@fklmlaw.com
skanner@fklmlaw.com

*Counsel for Plaintiffs Thomas Gramatis and
John Kerstein*

NUSSBAUM LAW GROUP, P.C.
LINDA P. NUSSBAUM
1211 Avenue of the Americas
New York, NY, 10036
Telephone: 917-438-9102
lnussbaum@nussbaumpc.com

*Counsel for Plaintiffs Jeffrey Sterk,
Kimberly Sterk, and Michael Melissinos*

MOGINRUBIN LLP
DANIEL J. MOGIN
JODIE M. WILLIAMS
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-687-6611
Facsimile: 619-687-6610
dmogin@moginlaw.com
jwilliams@moginlaw.com

SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
ERIC. L. YOUNG
NATALIE FINKELMAN BENNETT
35 East State Street
Media, PA 19063
Telephone: 610-891-9880
Facsimile: 866-300-7367
eyoung@sfmslaw.com
nfinkelman@sfmslaw.com

-and-

SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
JAMES E. MILLER
65 Main Street
Chester, CT 06412
Telephone: 860-526-1100
Facsimile: 860-526-1120
jmiller@sfmslaw.com

-and-

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ 08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

-and-

-and-

STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
ALLAN STEYER
JAYNE PEETERS
One California Street, Third Floor
San Francisco, CA 94111
Telephone: 415-421-3400
Facsimile: 415-421-2234
asteyer@steyerlaw.com
jpeeters@steyerlaw.com

*Counsel for Plaintiffs Haverhill Retirement
System and Oklahoma Firefighters Pension
and Retirement System*

MANDEL BHANDARI LLP
RISHI BHANDARI
EVAN MANDEL
80 Pine Street, 33rd Floor
New York, NY 10005
Telephone: 212-269-5600
Facsimile: 646-964-6667
rb@mandelbhandari.com
em@mandelbhandari.com

*Counsel for Plaintiff United Food and
Commercial Workers Union and
Participating Food Industry
Employers Tri-State Pension Fund*

FINE, KAPLAN AND BLACK, R.P.C.
ROBERTA D. LIEBENBERG
ADAM PESSIN
One South Broad St., Suite 2300
Philadelphia, PA 19107
Telephone: 215-567-6565
Facsimile: 215-568-5872
rliebenberg@finekaplan.com
apessin@finekaplan.com

-and-

MOTLEY RICE LLC
WILLIAM H. NARWOLD
DONALD A. MIGLIORI
MICHAEL M. BUCHMAN
JOHN A. IOANNOU
600 Third Avenue, Suite 2101
New York, NY 10016
Telephone: 212-577-0040
Facsimile: 212-577-0054
bnarwold@motleyrice.com
dmigliori@motleyrice.com
mbuchman@motleyrice.com
jioannou@motleyrice.com

-and-

MILLER LAW LLC
MARVIN A. MILLER
MATTHEW VAN TINE
115 S. LaSalle St., Suite 2901
Chicago, IL 60603
Telephone: 312-332-3400
Facsimile: 312-676-2676
mmiller@millerlawllc.com
mvantine@millerlawllc.com

*Of Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be e-mailed to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 12, 2018.

*/s/ Michael D. Hausfeld*
MICHAEL D. HAUSFELD
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeld.com