UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

DECLARATION OF KENNETH R. FEINBERG
IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF FIFTEEN SETTLEMENT AGREEMENTS

I, KENNETH R. FEINBERG, pursuant to 28 U.S.C. §1746, declare as follows:

1. I am a person of the full age of majority and, if called to testify, am competent to testify as to the facts set forth herein.

2. I am the agreed-upon Mediator in the above-captioned matter involving Class Plaintiffs Aureus Currency Fund, L.P.; the City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System; Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement System; Syena Global Emerging Markets Fund, LP; Systrax Corporation; Tiberius OC Fund, Ltd.; United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund; Value Recovery Fund L.L.C. (collectively, "Direct Class Plaintiffs"); J. Paul Antonello; Marc G. Federighi; Thomas Gramatis; Doug Harvey; Izee Trading Company; John Kerstein; Michael Melissinos; Mark Miller; Robert Miller; Richard Preschern d/b/a Preschern Trading; Peter Rives; Michael J. Smith; Jeffrey Sterk; and Kimberly Sterk (collectively, "Exchange-Only Class Plaintiffs" and, together with Direct

1

Class Plaintiffs, "Class Plaintiffs") and Settling Defendants.[1]  I submit this Declaration in connection with the concurrently filed Motion for Final Approval of Fifteen Settlement Agreements.

3.  I have acted as an independent, neutral mediator for more than 30 years, retained by private parties and federal and state courts, to design and administer mediation procedures aimed at resolving thousands of complex disputes.  I have acted as a mediator in a wide range of disputes, including mass torts, insurance coverage, contracts, and securities and antitrust litigation.  In some of these disputes, as in the above-captioned matter, I have been retained by the litigants to act as the neutral mediator.  In other disputes, I have been appointed by the court to serve as the mediator.  *See, e.g.*, *In Re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396 (E.D.N.Y. 1985).  And, after the September 11 terrorist attacks, I was appointed by the Attorney General of the United States to act as the Special Master/Administrator of The Federal September 11 Victim Compensation Fund of 2001.  *See* 49 U.S.C. § 40101; 28 C.F.R. §§ 104.2, *et seq.* (2003).

4.  I have also been appointed by federal and state judges to act as the independent neutral Distribution Agent in administering class action settlements in complex commercial and

---

[1] "Settling Defendants" are: Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Bank of America"); Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"); Barclays Bank PLC and Barclays Capital Inc. ("Barclays"); the BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc. ("BNP Paribas"); Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. ("Citigroup"); Deutsche Bank AG ("Deutsche Bank"); The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. ("Goldman Sachs"); HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc. ("HSBC"); JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPM"); Morgan Stanley, Morgan Stanley & Co., LLC, and Morgan Stanley & Co. International plc ("Morgan Stanley"); RBC Capital Markets LLC ("RBC"); The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc. ("RBS"); Société Générale ("Soc Gen"); Standard Chartered Bank ("Standard Chartered"); and UBS AG, UBS Group AG, and UBS Securities LLC ("UBS").

tort cases, including the allocation and distribution of class settlement proceeds to eligible claimants. *See, e.g.*, *Sec. and Exch. Comm'n v. Maurice R. Greenberg and Howard I. Smith*, 09-Civ.-6939 (S.D.N.Y. 2011) (Preska, J.); *In Re Agent Orange*, 611 F. Supp. 1396 (1985); *United States v. Computer Assocs. Int'l, Inc.*, 04-cr-837 (E.D.N.Y. 2007); *cf. The Federal September 11 Victim Compensation Fund of 2001*, 49 U.S.C. § 40104; 28 C.F.R. §§ 104.2, *et seq.* (2003); The Gulf Coast Claims Facility;[2] GM Ignition Compensation Claims Resolution Facility, Final Protocol for Compensation of Certain Death and Physical Injury Claims Pertaining to the GM Ignition Switch Recall (June 30, 2014).

5. Incorporated by reference is my curriculum vitae, Exhibit A to my Declaration in support of Class Plaintiffs' original motion for preliminary approval (ECF No. 482).

6. Because this declaration is submitted in support of the Settlement Agreements, it is inadmissible in any subsequent proceedings. In the event the Settlement Agreements do not receive the Court's final approval, this declaration and the statements contained herein are without prejudice to the parties' respective positions on the merits of this action.

I. THE MEDIATIONS AND RESULTING SETTLEMENTS TO DATE

7. Prior to being retained by counsel for Class Plaintiffs ("Class Lead Counsel") and counsel for certain of the original defendants named in the action (collectively, "Original Settling Defendants")[3] with respect to earlier mediations and settlements in this action, I had no knowledge or understanding of the facts of the dispute.

---

[2] *See* https://www.whitehouse.gov/blog/2010/06/16/important-step-towards-making-people-gulf-coast-whole-again ("BP and the Administration agreed to appoint Ken Feinberg, who administered the claims process for victims of 9/11, to run the independent claims process").
[3] "Original Settling Defendants" are Bank of America; Barclays; BNP Paribas; Citigroup; Goldman Sachs; HSBC; JPMorgan; RBS; and UBS.

8.      Beginning in late 2014, I was asked by Class Lead Counsel and thereafter by Original Settling Defendants to serve as the sole Mediator in an agreed-upon bilateral, voluntary and confidential mediation process designed to secure a comprehensive settlement in the above-captioned matter between Class Plaintiffs and the Original Settling Defendants.  I agreed to serve as Mediator with the agreement of Class Lead Counsel and counsel for the Original Settling Defendants.  Those mediations between Class Lead Counsel and the Original Settling Defendants originally named in the complaint resulted in the execution of nine settlements in 2015.

9.      Beginning in early 2016, I was asked by Class Lead Counsel and thereafter by an additional group of five additional defendants (collectively "New Settling Defendants")[4] to serve as the sole Mediator in an agreed-upon bilateral, voluntary and confidential mediation process designed to secure a comprehensive settlement in the above-captioned matter between Class Plaintiffs and the New Settling Defendants.  I agreed to serve as Mediator with the agreement of Class Lead Counsel and counsel for the New Settling Defendants.  Those mediations between Class Lead Counsel and the New Settling Defendants resulted in the execution of five settlements in February and July of 2017.

10.     After further progress of the litigation into discovery, beginning in early 2017, I was asked by Class Lead Counsel and by counsel for Deutsche Bank to serve as a mediator for a new mediation. Class Plaintiffs and Deutsche Bank had engaged in two previous mediation sessions in April and September 2015, neither of these mediations had resulted in an agreement as to terms. These mediations resulted in the execution of the Deutsche Bank Settlement on September 29, 2017.

---

[4] "New Settling Defendants" are BTMU; Morgan Stanley; RBC; Soc Gen; and Standard Chartered.

4

11. During the course of all rounds of mediations, I acted as an independent, neutral mediator encouraging each side separately, and both sides together, to resolve their differences through arm's-length negotiation. I supervised the entire process of these mediations and negotiations between Class Plaintiffs and Settling Defendants, which resulted in Class Plaintiffs and Settling Defendants reaching the respective Settlement Agreements.

12. During the course of each of the mediations, I met with representatives of both sides, heard from each side concerning background information about the litigation and its status, as well as each party's views as to the litigation risks if a mediated settlement were not achieved. Each side also discussed with me in confidence what it saw as the outstanding issues and how those outstanding issues might be resolved.

13. During the course of these mediations, I continuously reiterated that each side confronted substantial risk if the litigation went forward.

14. Class Lead Counsel and counsel for the Original Settling Defendants, with the aid of myself as Mediator, eventually reached settlements on behalf of class members who engaged in foreign exchange ("FX") transactions directly with Defendants (the "Direct Settlement Class"). Class Lead Counsel and counsel for the Original Settling Defendants, with the aid of myself as Mediator, also reached settlements on behalf of class members who only entered into FX transactions on exchanges (the "Exchange-Only Settlement Class").

15. In this declaration, I refer to the Direct Settlement Class and Exchange-Only Settlement Class together as the "Settlement Classes."

16. Class Lead Counsel and counsel for the Original Settling Defendants, through and as result of mediations overseen by me, began entering into settlement agreements in January 2015. These settlements included two (and in some cases, three) monetary components: the Direct

Settlement Amount, the Exchange-Only Settlement Amount, and, with respect to Goldman Sachs and JPMorgan, a Notice and Administration Amount. These are referred to in the chart below as the "Total Settlement Amount."[5] All nine of these settlement agreements have been preliminarily approved by the Court:

| ORIGINAL SETTLING DEFENDANT | EXECUTION DATE OF SETTLEMENT | TOTAL SETTLEMENT AMOUNT |
|---|---|---|
| Bank of America | 10/1/15 | $187,500,000 |
| Barclays | 9/30/15 | $384,000,000 |
| BNP Paribas | 10/1/15 | $115,000,000 |
| Citigroup | 10/1/15 | $402,000,000 |
| Goldman Sachs | 10/1/15 | $135,000,000[6] |
| HSBC | 10/1/15 | $285,000,000 |
| JPMorgan | 1/5/15, amended 10/1/15 | $104,500,000[7] |
| RBS | 10/2/15 | $255,000,000 |
| UBS | 3/6/15, amended 10/5/15 | $141,075,000 |
| **FIRST ROUND TOTAL** | | **$2,009,075,000** |

17. Class Lead Counsel and counsel for the New Settling Defendants, through and as a result of mediations overseen by me, began negotiating settlements in April 2016. The first of these settlements was executed in February 2017. Unlike the preceding settlements, these

---

[5] Although the settlement amounts were negotiated separately for each respective Settlement Class, the Stipulations of Settlement include each of the Settlement Classes within one document.
[6] $500,000 of this amount in the Goldman Sachs Stipulation was paid into a Notice and Administration Fund.
[7] $500,000 of this amount in the J.P. Morgan Stipulation was paid into a Notice and Administration Fund.

6

stipulations provide for one Settlement Amount to be allocated to the Settlement Classes in a manner that is consistent with an approved Plan of Distribution, and, in the case of Morgan Stanley, a Notice and Administration Amount that is included in the Total Settlement Amount below. All five of these Settlements have been preliminarily approved by the Court.

| NEW SETTLING DEFENDANT | EXECUTION DATE OF SETTLEMENT | TOTAL SETTLEMENT AMOUNT |
|---|---|---|
| BTMU | 2/14/17 | $10,500,000 |
| Morgan Stanley | 7/28/17 | $49,750,000<br>+ 250,000 for notice and administration |
| RBC | 7/27/17 | $15,500,000 |
| Standard Chartered | 7/27/17 | $17,200,000 |
| Soc Gen | 7/27/17 | $18,000,000 |
| **SECOND ROUND TOTAL** | | **$111,200,000** |

18. Class Lead Counsel and counsel for Deutsche Bank, through and as a result of mediations overseen by me, began negotiating a settlement in August 2017 and executed a settlement agreement on September 29, 2017.

| DEFENDANT | EXECUTION DATE OF SETTLEMENT | TOTAL SETTLEMENT AMOUNT |
|---|---|---|
| Deutsche Bank | 9/29/17 | $190,000,000 |
| **DEUTSCHE BANK TOTAL** | | **$190,000,000** |

19. In addition to providing monetary compensation to members of the Settlement Classes, each of the Settlement Agreements provides for Settling Defendants to provide cooperation to the Class Plaintiffs in the above-captioned action. This cooperation is triggered upon execution with respect to attorney proffers, transaction data, and documents produced to

regulators or already identified as relevant to the allegations. Additional cooperation in the form of, among other things, witness interviews, production of additional documents, and depositions is triggered upon preliminary approval. This cooperation paid immediate dividends, helping Class Plaintiffs to develop a broader scope than the case they originally filed.

20. Moreover, this cooperation will continue to benefit Class Plaintiffs. Settling Defendants' cooperation obligations continue until the later of the date of final judgment in the Action with respect to all Defendants or seven years after preliminary approval. The terms of the cooperation were the subject of arm's-length negotiations between sophisticated counsel.

21. All Settlement Agreements exclude claims arising from transactions executed solely outside the United States and arising under foreign law belonging to any Releasing Party or Person that is domiciled outside of the United States, as well as claims arising from what the parties have termed "last look" conduct.

## II. THE SUCCESS OF NEGOTIATIONS

22. The mediations and negotiations in this Action presented unique legal and factual issues of an unusual degree of size and complexity.

23. In a mediation of this magnitude, I have focused over the years on certain variables that help determine success. It is clear that in this instant mediation, "success" has been achieved in a manner that may be without precedent. Certainly, in my mediation experience over the past 35 years, I cannot think of another comprehensive mediation that resulted in so much evidence of success. The indisputable success of the mediation process over the past few years also points to the effectiveness of Class Lead Counsel in designing and implementing the strategy that led to fifteen different mediated settlements totaling around $2.31 billion. Without sophisticated,

competent, and determined Class Lead Counsel, the mediation process would not have been as successful and, in fact, it is doubtful that success would have been achieved at all.

24. In this mediation—over a period of over two years—Class Lead Counsel designed and implemented a strategy which resulted in the individual settlement of claims against fifteen different Defendant financial entities. Class Lead Counsel strategically sequenced and prioritized which financial institution should be invited to the mediation table, in what order, based on what public and private information they possessed, what should be the appropriate financial and other demands that were subject to mediation, and whether and to what extent a settlement proposed by the Mediator and the Parties should be acceptable. This took sophisticated strategic thinking designed to build settlement momentum through the careful selection of individual Defendant entities as mediation participants. Once at the negotiating table, Class Lead Counsel proved to be extremely effective negotiators in making individual demands of each Settling Defendant, and carefully negotiating an end result in the billions of dollars and comprehensive settlement cooperation. The strategy was extremely successful, with fifteen of sixteen Defendant entities resolving their outstanding disputes with Class Lead Counsel through the mediation device. With the benefit of hindsight, this strategy confirms that Class Lead Counsel's strategic selection had the effect of building settlement momentum. Given the strengths and weaknesses of the case that I was presented, I regard the ultimate outcome as a remarkable success for the Class that required representation of the highest quality.

25. The scope of the mediations' success cannot be overestimated. Fifteen separate financial institutions resolved their disputes with Class Plaintiffs. At the time of the filing of this Declaration, only one financial institution has not yet settled with Class Plaintiffs by way of mediation. If success is measured at all by the number of financial institutions which settled by

way of mediation, the mediator points to this process as a stunning example of how mediation can be effective in resolving complex and highly charged commercial class litigation. This result also speaks directly to the tremendous effectiveness and determination of Class Lead Counsel.

26. Success can also be measured in the instant case by the value achieved. In just over two years, Class Lead Counsel—implementing their strategy—managed to secure fifteen different mediated settlements, totaling approximately $2.31 billion. This experienced mediator is hard-pressed to point to another private mediation process where such value was achieved through a voluntary, non-binding, and confidential series of mediations. Class Lead Counsel have achieved superlative value to the Settlement Classes through this process, and, frankly, the value of the settlements speak for themselves in demonstrating the success of the mediation initiative. In addition to this monetary value, Class Lead Counsel secured substantial benefits to the Class in the form of additional cooperation, securing access to swaths of documents and enormous amounts of transactional data.  These negotiations themselves became hotly contested, ultimately requiring the extensive involvement of experts on both sides to negotiate. I credit both Plaintiffs' and Defendants' counsel for having the intelligence, patience, and creativity to resolve these challenging issues.

27. The effect of the mediations has been obvious. The effect of the mediation process has been, basically, to end the complex litigation with only one remaining institution still litigating. However one defines "mediation success," it is clear that because of their skill in designing and implementing a mediation strategy, Class Lead Counsel has turned a highly complex litigation into a very different type of litigation with only one remaining Defendant outstanding.

28. However, the negotiation of the terms of the agreements was not the end of the process. Class Lead Counsel continue to work to enforce settlement terms and conditions,

including, but not limited to, the production of extensive transactional data. These efforts have involved contentious negotiations over the scope and types of data required by the agreements. I required Class Lead Counsel and Defendants to attend numerous meetings to ensure that the parties would work through these issues. I credit counsel for both Class Plaintiffs and Defendants, and their respective experts, who proved indispensable in these discussions, for resolving these often contentious and complex issues. Their joint efforts will ultimately ensure a materially reliable claims process that will be fair, equitable, and efficient.

### III.   CONCLUSION

29.   For all of the reasons stated in this Declaration, I believe that, when considering the relative strengths and weaknesses of the litigation, what Class Lead Counsel has achieved – more than $2.31 billion in settlements along with extensive cooperation – represents some of the finest lawyering toward a negotiated resolution that I have witnessed in my career. This entire mediation process demonstrates how mediation can be effective when orchestrated by superlative, sophisticated, and determined plaintiff's lawyers. However one defines "mediation success", it is clear that because of their skill in crafting and implementing a mediation strategy, Class Lead Counsel has turned a highly complex litigation into a very different type of litigation with only one remaining Defendant yet to settle.  This success can be attributed directly to the work and energy of Class Lead Counsel.

I declare under penalty of perjury that the foregoing is a true and correct statement of my opinions. Executed on January 12, 2018 at Washington, DC.

_____
Kenneth R. Feinberg