UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIG.

No. 1:13-cv-07789 [LGS]

-----------------------------------------------------------------X

**OBJECTION TO REQUEST FOR ATTORNEY'S FEES**
**AND NOTICE OF INTENTION TO APPEAR**

Class Members Keith Kornell and Keith Kornell d/b/a Crown & Korn, 9301 South Brown Rd., Chardon, OH 44024, 216-337-3409, email k.kornell@gmail.com and Gregory Galan, 2055 Reserve Circle South, Lorain, OH 44053, 216-509-3294, email gallerypro@adelphia.net, hereby object to the motion for attorneys' fees in this matter, and also give notice of their intention to appear at the final fairness hearing scheduled for May 23, 2018 through undersigned counsel. Each of these class members entered into FX Exchange-Traded Instruments between January 1, 2003 and December 15, 2015, while each class member was domiciled in the United States. Proof of each objector's class membership is attached hereto as *Exhibits A and B*.[1]

Objectors Kornell and Galan hereby request permission to speak at the fairness hearing scheduled for May 23, 2018 through their undersigned counsel.

The requested attorney's fee of 16.51% of the settlement, calculated without first subtracting Class Counsel's substantial expenses, in this multi-billion dollar megafund is almost three times as much as the fee awarded in a prior billion dollar megafund settlement in this Circuit, and two and a half times the average fee in settlements of this

[1] Objectors have attached a representative sample of their account documents to this objection for the purpose of proving their class membership. Complete sets of account statements will be submitted with their claim forms.

size. For the following reasons, the Court should award a fee of no more than 8% in this huge settlement in a case that lasted less than two years between filing in November 2013 and the first $2 billion worth of settlements reached from January through October 2015. This case was also significantly aided by the investigation and prosecutions by the Department of Justice, and the resulting guilty pleas from several of the settling banks. *See Exhibit C*.

## II. The Attorney's Fees Requested Are Grossly Excessive.

Class Counsel have requested 16.51% of $2.3 billion, or $381.3 million, which represents a 2.19 multiplier of their $174 million lodestar. Stated another way, Class Counsel are seeking ***a $207 million premium*** over and above their lodestar, in a case that has presented no risk of non-recovery for almost three years, during which most of the lodestar was generated. Lodestar generated after the risk of non-recovery has been eliminated is not entitled to any enhancement or multiplier, in this Circuit where risk of non-recovery is the primary factor in determining the fee.

The Second Circuit has announced a preference for "moderation" in the awarding of common fund attorneys' fees in a class action context. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 57 (2d Cir. 2000). Windfalls to class counsel are to be avoided. *Id*. at 49. Lodestar cross-checks are "encouraged." *Id*. at 50. Class Counsel's request for $381.3 million in attorneys' fees, in the context of the second largest megafund settlement ever reached in the Second Circuit, is excessive and unnecessary to eliminate unjust enrichment of the class.

In the only megafund settlement remotely approaching the size of this one, this Court awarded a fee of only 6.5% of a $3.3 billion settlement, and a multiplier of 3.5.

*See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503 (E.D.N.Y. 2003). In *Visa Check*, however, the premium over class counsel's lodestar awarded by the court was just **$150 million**, in contrast to the **$207 million** sought here.

"In *Goldberger*, the Second Circuit affirmed an attorney's fees award of 4% of the common fund and criticized courts who have used 25% … as a benchmark for attorney's fees, because that percentage presumes "a substantial contingency risk in every common fund case." … Post-*Golberger* courts … have generally refused multipliers as high as 2.03." *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85-87 (E.D.N.Y. 2002).

Attorneys' fees should be set at "the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Albany*, 493 F.3d 110 (2d Cir. 2007). In *Arbor Hill*, the Second Circuit emphasized that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *id.* at 118, and that "the district court (unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." *Id.* at 112. The proposition – that a reasonable paying client wishes to pay the least amount necessary – is true whether the fees are paid by the defendant pursuant to a fee-shifting statute, or by the plaintiff class pursuant to the common fund doctrine. Minimization of attorney's fees is the goal of every client who has not been promised a share of the fees.

Before *Arbor Hill*, some district courts in the Second Circuit and elsewhere focused on the theoretical *upper limit* on attorney's fees, beyond which the fees would shock the conscience, violate the Rules of Professional Conduct, or otherwise be

"absurd." *See In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d at 522* (describing requested fee of $609 million, which was almost ten times hourly rate, as "absurd").

In light of *Arbor Hill* and *Goldberger*, however, it is clear that the procedure that a district court should follow in setting a minimum reasonable fee has fundamentally changed. Rather than starting with class counsel's requested amount of fees and working down from there, a district court should instead start at the hours worked and move up incrementally until it arrives at a number that adequately compensates class counsel.

> [C]ases that employ the percentage approach arbitrarily tend to start their analysis with the attorney's request, rather than at an objective marker, such as the hours worked. Instead of reasoning based on other case law or abstract ideas about a reasonable fee, courts tend to anchor their analysis to the percentage first requested by counsel. This method of analysis allows plaintiffs' counsel to set the baseline based on its biased valuation of its work.
>
> Without vigilance, this anchoring effect easily biases courts' decisions. Indeed, courts have shown a propensity to adjust the requested amount by only a few percentage points, if at all… This anchoring effect allows plaintiffs' counsel to manipulate the fee award they are likely to receive by simply requesting a higher percentage. The Court wonders, for example, if the lead Plaintiffs in *Royal Ahold* had asked for 20%, if the court would have awarded them 15%. By arbitrarily tethering the reasonableness analysis to the fee requested, plaintiffs' counsel arbitrarily gains excessive control over the court's jurisprudence.

*In re Cardinal Health Inc. Securities Litig.*, 528 F. Supp. 2d 752, 762-63 (S.D. Ohio 2007).

A better point of departure than the arbitrary 16.51% requested is the point at which unjust enrichment of the class would occur. "The rationale for the [common fund] doctrine is an equitable one; it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its costs." *Goldberger v. Integrated Resources , Inc.* , 209

F.3d 43, 47 (2d Cir. 2000)(*citing Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392(1970)). Therefore, a common fund attorneys' fee award should be set at a level that avoids unjust enrichment of the class, while also avoiding a windfall to class counsel. To award even one million dollars more to the attorneys would result in *unjust enrichment of the attorneys* at their clients' expense, a far greater concern than unjust enrichment of the class, and something that was never contemplated by the common fund exception.

The $207 million bonus or windfall over lodestar requested here is clearly inconsistent with the principle of moderation announced in *Goldberger*, *supra*, and is unjustified by the minimal risk assumed during the 13 months this case was pending before the JPMorgan settlement was announced.[2]

Class Counsel correctly assert that risk is the most important factor in the Second Circuit when setting a percentage attorney's fee in a class action, but fail to appropriately apply that factor to this case. As stated above, all risk of non-recovery was eliminated once Class Counsel reached the first nine settlements totaling $2 billion in 2015, at a time when the aggregate lodestar was no more than $35 million. [3] The remaining $140 million

[2] The $104 million JPMorgan settlement alone was sufficient to completely reimburse Class Counsel's lodestar incurred by that date. Class Counsel could have requested a fee of up to 33% of that settlement, depending on their lodestar, which would have compensated fees up to $34 million. It is certain that Class Counsel's lodestar did not exceed $34 million in January 2015. Therefore, the first settlement in this case entirely eliminated the risk of non-recovery. The subsequent 8 settlements that quickly followed in 2015 provided additional levels of assurance that Class Counsel would be compensated for every hour of time they invested in this case from that time on. That equates to a no-risk case.

[3] While Class Counsel assert that they continued taking discovery from the first-settling defendants after October 2015, that discovery was related solely to reaching settlements with the remaining six defendants. Therefore, it is properly charged against the $300 million obtained from the later-settling defendants.

of lodestar was generated since October 2015, but has produce only an additional $300 million of settlements.[4]

The Declarations submitted by Class Counsel in support of their fee petition only provide the total number of hours billed by each firm, without breaking that lodestar down by year. Objectors urge this Court to require Class Counsel to file their contemporaneous time records, or, at a minimum, to file a supplement that breaks the lodestar down by year. According to the Burke and Hausfeld Joint Declaration, prior to the nine settlements reached in 2015, Class Counsel primarily had engaged in investigation of the claims, opposing the motion to dismiss, and filing its first and second amended consolidated complaints. While these tasks certainly consumed time, it is likely that the proportion of the total lodestar comprised by pre-2016 billing is only a small portion of the total -- certainly less than $35 million. Discovery was stayed and did not begin in earnest until after the nine settlements were reached in 2015, i.e., until $2 billion of this settlement was secured. Research into foreign legal issues began in earnest after the 2015 settlements. Essentially, everything described between pages 19 and 39 in the Burke and Hausfeld Joint Declaration postdated the first nine settlements, and is therefore properly assessed against the $300 million in post-2015 settlements that have been achieved. Objectors predict that more than 80% of the overall lodestar was generated after 2015, when an army of contract and document review attorneys reviewed millions of pages of documents, and deposition preparation commenced. All of this time was

[4] While Class Counsel is correct that defeating a motion to dismiss does not guarantee success at trial, it does all but guarantee settlement of the underlying action, since very few class actions are ever tried, especially ones that could result in billion-dollar recoveries against the defendants.

exclusively associated with the six most recent settlements that produced an aggregate $300 million in additional settlement funds.

The burden is on Class Counsel to show that a fee award of 8% of $2.3 billion, or $184 million, is somehow unfair to them and an unjust windfall to the Class.[5] In light of the fact that the court in *In re Visa Check/Mastermoney Antitrust Litig., supra,* awarded a 6.5% fee in a comparable multi-billion dollar megafund, the percentage fee here should likewise be *lower* than 10%.

Class Counsel claim that market rate fee arrangements support the requested fee, but available data undermines that claim. Attached hereto as *Exhibit D* is the standard retainer agreement entered into by the Mississippi Attorney General on behalf of the State of Mississippi when it is represented by outside counsel in class action litigation. As can be seen from the Attachment B to *Exhibit D*, which applies declining percentages to ascending bands of recovery, the overall fee that would result from application of the Mississippi schedule to this case would be $114.5 million, or 5%. This is the best evidence of a market rate fee entered into by a governmental entity that is charged with protecting its citizens' money and not spending more than necessary to litigate large megafund cases, which is essentially what *Goldberger* and *Arbor Hill* require in every case.

---

[5] An 8% fee would provide Class Counsel with a positive multiplier on their claimed lodestar, once Class Counsel excludes the lodestar they have spent pursuing Credit Suisse, which should be excluded from the lodestar calculation before a lodestar cross-check is performed. Class Counsel will be compensated for their Credit Suisse lodestar if and when they reach a settlement with Credit Suisse. All lodestar generated after Class Counsel reached a settlement agreement with Deutsche Bank on August 28, 2017 (with the exception of time spent seeking preliminary and final approval of the settlements) is properly counted towards the Credit Suisse settlement.

A 5% fee would have been more than adequate had the Court awarded a fee two and a half years ago when the first $2 billion of settlements was reached and Class Counsel's lodestar was just $35 million or less.[6] Because Class Counsel has generated an additional $140 million of lodestar since that time pursuing another $300 million in settlements, a 5% market rate fee would not cover Class Counsel's lodestar. However, if Class Counsel is awarded its requested 16.5%, the Class would have been harmed by Class Counsel's pursuit of the remaining six defendants who settled after 2015.

For example, if this case had settled in 2015 for $2 billion, and Class Counsel had received fees and expenses of $100 million, or 5% (which would have more than covered their lodestar with a very healthy multiplier), the Class would have received $1.9 billion. Now, after the Class's recovery has been delayed for two and a half years, if Class Counsel were to receive their full fee request of $381.4 million, plus expenses of $22.5 million, the Class will receive roughly the same amount -- $1.9 billion. All of the work that Class Counsel has done during the past two and half years would have been for the benefit of Class Counsel alone, and the additional $300 million in settlement recoveries would be fully consumed by fees and expenses. The Class would have been better off with the case ending in 2015.

Instead, if this Court awards an 8% overall fee, the Class and Class Counsel would share in the proceeds from the additional $300 million in settlements achieved since October 2015. Class Counsel would receive an additional $106 million in fees and expenses, over and above the $100 million earned on the first $2 billion in settlements,

[6] Based on the assumption that 80% of the aggregate lodestar was generated after 2015. This can be confirmed by the submission of contemporaneous time records or a breakdown of lodestar by year.

which is ***35%*** of the additional $300 million, at the very top of fee ranges for settlements of any size. The Class would receive an additional $194 million over and above the $1.9 billion they would have received in 2015 if fees were calculated then at the Mississippi rate.

Furthermore, the Mississippi rate is in line with historic fee awards in megafund cases, and comes in right below the average. In the twelve class actions that settled prior to 2013 for more than one billion dollars, the average fee awarded was ***7.0%***, as demonstrated in the following chart:

| **Case** | **Settlement Amount** | **Fee %** |
|---|---|---|
| Enron[7] | $7.27 billion | 9.52 |
| World Com[8] | $6.13 billion | 5.48 |
| Vioxx[9] | $4.85 billion | 6.49 |
| Cobell[10] | $3.4 billion | 3.40 |
| Tyco[11] | $3.2 billion | 14.50 |
| Cendant[12] | $3.16 billion | 1.73 |
| AOL Time Warner[13] | $2.5 billion | 5.90 |
| Visa[14] | $3.3 billion | 6.50 |
| Nortel I[15] | $1.14 billion | 3.00 |
| Royal Ahold[16] | $1.1 billion | 11.88 |

7 *Newby v. Enron*, 586 F. Supp. 2d 732, 741 (S.D. Tex. 2008).
8 *In re Worldcom, Inc. Sec. Litig.*, 388 F.Supp.2d 319 (S.D.N.Y.2005).
9 *In re Vioxx Prod. Liab. Litig.*, 760 F. Supp. 2d 640 (E.D. La. 2010).
10 *Cobell v. Salazar*, 2011 U.S. Dist. LEXIS 157393 (D.D.C., July 27, 2011).
11 *In re Tyco Int'l Ltd. MDL Litig.*, 535 F. Supp. 2d 249 (D. NH 2007).
12 *In re Cendant Corp.*, 243 F. Supp. 2d 166 (D. NJ 2003).
13 *In re AOL Time Warner, Inc. Sec. and 'ERISA' Litig.*, 2006 U.S. Dist. LEXIS 78035 (SDNY 2006).
14 *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503 (EDNY 2003).
15 *See In re Nortel Networks Corp. Sec. Litig.*, 2010 U.S. Dist. LEXIS 87447 (SDNY 2010).
16 *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383 (D. Md. 2006).

| | | |
|---|---|---|
| Nortel II[17] | $1.07 billion | 7.74 |
| McKesson[18] | $1.04 billion | 7.64 |
| **Average** | | **6.98** |

The Objectors' recommended fee here of 8% of the total is in line with this average, albeit slightly higher to reflect the extremely high lodestar generated here. This aggregate fee represents a 5% fee and expense award on the first nine settlements totaling $2 billion, and a 35% fee and expense award for the $300 million in settlements reached since October 2015, which were actually the most difficult $300 million to achieve in this case.[19]

## III. The Percentage Should Be Applied to the Settlement Fund Net of Expenses.

The common fund doctrine rests on the premise that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970). The common fund doctrine allows a court to remedy this inequity by assessing attorney's fees against the fund, "thus spreading fees proportionately among those benefited by the suit." *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980). Where fees are assessed against persons who are not benefited by a particular fund, the common fund doctrine is violated and provides no support for an award of fees. Class members receive no direct benefit

[17] *In re Nortel Networks Corp. Sec. Litig.*, No. 05-MD-1659 (LAP) (S.D.N.Y. Dec. 26, 2006).

[18] *In re McKesson HBOC Inc. Sec. Litig.*, No. 99-CV-20743 (N.D. CA, Feb. 24, 2006).

[19] Typically, courts assume that the first $100 million in settlements is the most difficult to achieve, and thus award the highest percentage fee for that first band of recovery, and reduce the percentage as the amount of the recovery goes up from there. Here, the first $2 billion in settlements was actually the easiest, and the last $300 million the most difficult as holdout defendants were slowly worn down through very expensive discovery and motion practice.

from the payment of Class Counsel's expenses. Therefore, attorneys' fees may not be assessed against class members for reimbursement of Class Counsel's expenses.

Every Circuit Court of Appeals that has considered the question of whether attorneys' fees should be calculated based upon the gross or net settlement fund has ruled in favor of the latter. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014)(administrative costs not properly included in the value of settlement to the class, and therefore not properly considered when calculating attorneys' fees); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014)(administrative costs, fees and expenses may not be included in calculation of benefit to class).

As the Seventh Circuit explained:

> [T]he roughly $3.2 million in administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class.... Of course without administration and therefore administrative costs, notably the costs of notice to the class, the class would get nothing... And without reliable administration the defendant will not have the benefit of a valid and binding settlement. Yet although the administrative costs benefit class counsel and the defendant as well as the class members, the district court's fee award incorrectly treated every penny of administrative expenses as if it were cash in the pockets of class members.

*Redman*, 768 F.3d at 630.

The absent class members would not be on the hook for Class Counsel's expenses if the case did not settle. The requested award of $20 million in expenses to Class Counsel does not satisfy a debt owed by the Class. The reimbursement of these expenses is a benefit solely to Class Counsel, which otherwise would have had to eat them. It is therefore a form of improper double-dipping to provide Class

Counsel an *additional* $5.6 million of the Class's claims fund for having their expenses reimbursed.

District courts from the Second Circuit, among others, have agreed with the Seventh Circuit.

> [T]here is simply no reason why plaintiffs' counsel should be awarded a percentage of their expenses in addition to being reimbursed for those reasonable expenses. I therefore find that the percentage fee should be based on the net settlement fund rather than the gross settlement fund.

*In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y 2009). *See also, In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002)("Attorneys' fees shall be calculated from the common funds only after ALL costs and expenses have been subtracted."); *Brady v. Airline Pilots Ass'n. Int'l.*, 2014 U.S. Dist. LEXIS 73814 at *6 (D.N.J. 2014)("Class Counsel are hereby awarded attorneys' fees in the sum of $15,543,128.64, such sum being equal to 30% of the Net Settlement Fund after deduction of Class Counsel's litigation expenses.").

To be sure, other district courts have applied a percentage to the gross settlement fund, treating the entire fund as if it were a benefit to the Class, rather than to Class Counsel. These courts have never evaluated expenses under the common fund doctrine set forth in *Trustees v. Greenough* and its progeny. Therefore, these district court decisions are hardly persuasive, let alone controlling, founded as they are on lazy reasoning or blind imitation of past courts' mistakes.

This Court should rule, consistent with the Seventh Circuit and *In re IPO Sec. Litig.*, *supra*, that attorneys' fees must be calculated based upon the net settlement fund after deduction of all expenses. Any other method violates the common fund rule

described in *Mills* and *Boeing, supra*, because the reimbursement of class counsel's expenses does not represent a benefit to the class members for which they must additionally pay attorneys' fees. Instead, the reimbursement of the expenses itself represents a transfer from the class members to Class Counsel. Calculating an additional percentage on top of that transfer rewards Class Counsel twice for securing the payment of these expenses. There can be no rational argument in support of the percentage fee based upon the gross settlement fund that Class Counsel requests here.

## CONCLUSION

WHEREFORE, Objectors pray that this Court require Class Counsel to submit a supplemental breakdown of lodestar by year and defendant, and award Class Counsel a fee of no more than 8%, net of expenses.

Respectfully submitted,
Keith Kornell, Keith Kornell d/b/a Crown & Korn, and Gregory Galan,

By their attorney,

*/s/ John J Pentz*
John J. Pentz, Esq.
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5715
jjpentz3@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed via the ECF filing system of the USDC for the EDNY on February 6, 2018, and that as a result electronic notice of the filing was served upon all attorneys of record.

*/s/ John J. Pentz*
John J. Pentz