**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE FOREIGN EXCHANGE BENCHMARK
RATES ANTITRUST LITIGATION

Case No. 1:13-cv-7789-LGS

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF FIFTEEN SETTLEMENT
AGREEMENTS AND PLAN OF DISTRIBUTION**

# <u>TABLE OF CONTENTS</u>

I.    THE EXTENSIVE NOTICE PROGRAM SATISFIED THE REQUIREMENTS OF
      RULE 23 AND DUE PROCESS. .......................................................................... 3

II.   THE REACTION OF THE SETTLEMENT CLASSES SUPPORTS APPROVAL. 5

III.  THE ERISA OBJECTIONS SHOULD BE OVERRULED. ..................................... 6

   A.  THE SETTLEMENTS CAN RELEASE ERISA CLAIMS ARISING FROM THE "IDENTICAL
       FACTUAL PREDICATE" OF THE CASE. ..................................................................... 7

   B.  CLASS PLAINTIFFS ADEQUATELY REPRESENTED ALL CLASS MEMBERS, INCLUDING
       HYPOTHETICAL CLASS MEMBERS WITH POTENTIAL ERISA CLAIMS. ......................... 9

       1.   The objectors have not established that there is a defined subset of class
            members with plausible ERISA claims. .................................................. 10

       2.   Class Plaintiffs' interests are aligned with putative ERISA plaintiffs. ..... 11

       3.   Any incidental release of ERISA claims through the settlements is both
            fair and reasonable. ................................................................................. 13

       4.   Class Plaintiffs have standing to release ERISA claims arising from the
            "identical factual predicate" of this case. ................................................ 16

IV.   CONCLUSION .................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Bank of Am. Corp.*,
    No. 15-cv-4285 (LGS), 2016 WL 4446373 (S.D.N.Y. Aug. 23, 2016) ........................ *passim*

*Arkansas Teacher Ret. Sys. et al. v. State Street Bank and Trust Co.,*  No. 1:11-cv-
    10230, ECF 101-1 (D. Mass. Sept. 15, 2016) ........................................................15

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011)......................................................................................8

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................................13

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)......................................5

*In re Auction Houses Antitrust Litigation*,
    No. 00 Civ. 0648 (LAK), 2001 WL 170792 (S.D.N.Y. Feb. 22, 2001) .................................14

*In re Bank of New York Mellon Corp. Forex Transaction Litig.*,
    No. 1:12-md-02335, ECF 617 (S.D.N.Y. Aug. 17, 2015) ....................................15

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ................................................................................12

*In re Credit Default Swaps Antitrust Litig.*,
    No. 13 MD 2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016).................................4

*In re Currency Conversion Fee Antitrust Litig.*,
    264 F.R.D. 100 (S.D.N.Y. 2010) ...........................................................................8

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)......................................................................................5

*Denney v. Deutsche Bank AG*,
    443 F.3d 253, 268 (2d Cir. 2006)...........................................................................5

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
    284 F. Supp. 2d 511 (S.D. Tex. 2003) .......................................................... 10-11

*In re Forcefield Energy Inc. Sec. Litig.*,
    No. 15 Civ. 3020 NRB, 2015 WL 4476345 (S.D.N.Y. July 22, 2015) ...........................12, 13

*Hettinger v. Kleinman*,
    733 F. Supp. 2d 421 (S.D.N.Y. 2010)...................................................................16

*Indu Craft, Inc. v. Bank of Baroda*,
    47 F.3d 490 (2d Cir. 1995)........................................................................................16

*In re Lehman Brothers Sec. & ERISA Litig.*,
    No. 08 CIV. 5523 (LAK) (GWG), 2012 WL 2478483, (S.D.N.Y. June 29,
    2012) ....................................................................................................................8, 16

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011).............................................................9, 10, 12, 13

*Martinez v. Capital One Bank, N.A.*,
    No. 10-cv-8028 (RJS), 2015 WL 4270172 (S.D.N.Y. July 13, 2015).....................17

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)..................................................................................................13

*Pegram v. Herdrich*,
    530 U.S. 211 (2000)..................................................................................................10

*Precision Assoc., Inc. v. Panalpina World Trans. (Holding) Ltd.*,
    No. 08-cv-42 (JG)(VVP), 2013 WL 4525323 (E.D.N.Y. Aug. 27, 2013)................5

*Stephenson v. Dow Chem. Co.*,
    273 F.3d 249, 254 (2d Cir. 2001)............................................................................ 16

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    No. MDL 14-2522 (PAM), 2017 WL 2178306 (D. Minn. May 17, 2017) .............15

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982)................................................................................7, 12

*In re Vitamin C Antitrust Litig.*,
    No. 06-MD-1738 (BMC)(JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .........4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................... *passim*

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
    No. 14-CV-8925 (KMW), 2017 WL 3579892 (Aug. 18, 2017)............................ 5-6

**Statutes & Rules**

Mass. Gen. Laws ch. 93A, § 9(3) ...............................................................................15

N.Y. Gen. Bus. Law § 349(h) .....................................................................................16

iii

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................3

Since Class Plaintiffs filed their opening papers in support of final approval on January 12, 2018,[1] members of the settlement classes have had more than three months to react to the proposed settlements exceeding $2.3 billion. Class members' reaction has been overwhelmingly positive. Among the more than 200,000 class members—many of which are sophisticated financial institutions with potential recoveries in the millions—there have been only 51 requests for exclusion and only one timely objection to the settlements themselves.[2] Such unequivocal backing from class members strongly supports final approval under what is "perhaps the most significant factor in [the] *Grinnell* inquiry." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 119 (2d Cir. 2005).

The lone timely objection, brought by objectors who purport to represent several ERISA plans in the Direct Settlement Class ("Objectors"), is meritless and should be rejected. *See Objection on Behalf of Bridgestone Americas Salaried Employees Retirement Plan et. al.*, ECF No. 972-1 ("ERISA Objections" or "Obj. Br."). Nearly two years after this case was first filed, the Objectors initiated a parallel lawsuit (the *Allen* action) alleging that Defendants' FX misconduct constituted a breach of fiduciary duties under ERISA. *See Allen v. Bank of Am. Corp.*, No. 15-cv-4285 (LGS), 2016 WL 4446373, at *1 (S.D.N.Y. Aug. 23, 2016) ("*Allen*"). The Court dismissed the Objectors' lawsuit with prejudice after finding that Defendants were not acting as ERISA fiduciaries when executing FX transactions. *Id.* at *6.

---

[1] Plaintiffs are concurrently filing Supplemental Declarations of Angela Ferrante, ("Ferrante Decl."); Jason Rabe, (Rabe Decl.); Sandra Adams ("Adams Decl."); Jessy Hong ("Hong Decl."); Tomasz Karol Idzior ("Idzior Decl."); Michael Lee ("Lee Decl."); Audrey Ng ("Ng Decl."); and Patrick Shilling ("Shilling Decl."), in support of Motion for Final Approval. Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Fifteen Settlement Agreements and Plan of Distribution. (ECF No. 925).

[2] The other timely objection was to the requested attorneys' fees. *See* ECF No. 963. Keith Kornell filed an additional untimely objection (captioned as a motion for appointment of a subclass representative and subclass counsel) to the approval of the Settlements on April 12, 2018. (ECF No. 1012). The Court ordered Class Plaintiffs to respond to the purported motion (ECF No. 1015); Class Plaintiffs filed that response April 19, 2018. *See* ECF No. 1023.

Despite that ruling, the Objectors argue that the Settlements cannot release their ERISA claims, and if the claims were to be released under the Settlements, ERISA plans should receive a *premium* for releasing these failed ERISA claims through the settlements. Thus, in consideration for claims this Court found legally insufficient, Objectors propose to add a premium onto the already substantial recoveries they will receive for releasing their other legal claims arising from Defendants' FX misconduct.

In essence, the Objectors challenge the adequacy of the Class Plaintiffs to represent ERISA plans due to an alleged conflict between class members that can assert ERISA claims and those that cannot. This attack ignores that one Class Plaintiff is an ERISA plan, and the relative strength and value of claims available to class members. Even assuming that certain class members could plausibly assert ERISA claims for breach of fiduciary duties, their strongest legal claims would still arise under the antitrust laws. Those laws treat the alleged FX misconduct as illegal *per se*, hold co-conspirators jointly and severally liable, and provide for automatic trebling of damages. Claims under ERISA, by contrast, allow for the recovery of only single damages and also require proof of additional elements to establish liability, most notably, the existence of a fiduciary relationship with *each* Defendant. Given the objective superiority of the antitrust claims common to all class members, the possibility that some class members could also bring ERISA claims neither creates a conflict nor warrants the unjustified ERISA premium that the objectors demand.

The proposed settlements totaling $2.3 billion represent an equally outstanding outcome for class members that are ERISA plans as for those that are not. Eligible claimants, regardless of the legal claims they could theoretically assert, stand to recover roughly 33-43% of maximum single damages (and potentially more) during the litigation class period (December 1, 2007-

2013), assuming total success on the merits at trial. Because Class Counsel negotiated the settlements and allocated their proceeds based on the stronger antitrust claims available to all class members, any incidental release of weaker ERISA claims arising from the same FX misconduct is fair, reasonable, and consistent with typical settlement practice.

## I.   THE EXTENSIVE NOTICE PROGRAM SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.

The notice program, which included mail notice of over 800,000 Notice Packets,[3] was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Pursuant to the Court's Second Superseding Order authorizing notice (ECF No. 883), notice was carried out by the Court-appointed Claims Administrator (Garden City Group ("GCG")), and for claims raising heightened privacy considerations under foreign law, by Settling Defendants' notice agent (Rust Consulting ("Rust")) or by Settling Defendants themselves. Class members have also been notified of the extension of the deadline to submit a proof of Claim Form to May 16, 2018 from an initial deadline of March 22, 2018 through updates to the Settlement Website and in their direct communications with GCG and Lead Counsel. Ferrante Decl., ¶ 9.

GCG mailed 434,115 Notice Packets to potential Class members, including 68 that were mailed to fulfill Settlement Class Member requests. Ferrante Decl., ¶ 4. Of these, 49,321 were returned as undeliverable; GCG has been able to reissue 11,209 Notice Packets through follow-up research. Ferrante Decl., ¶ 4. Rust and Settling Defendants Barclays, Citi, HSBC, JPM, Soc Gen, and UBS disseminated 262,855 Notice Packets directly.[4]

---

[3] The Notice Packet contained: the Notice of Class Action Settlements (the "Mail Notice"), the Proof of Claim and Release Form (the "Claim Form"), a one page translation insert (the "Translation Insert"), and a quarter page multiple claim insert (the "Multiple Claim Insert").

[4] Rabe Decl. ¶ 10 (257,435 Packets); Ng Decl. ¶ 2 (81 Packets); Hong Decl. ¶ 2 (289 Packets); Idzior Decl. ¶ 2 (27 Packets); Lee Decl. ¶ 3 (178 Packets); Adams Decl. ¶ 3, 5 (315 Packets); Shilling Decl. ¶ 5 (4,530 packets).

GCG also sent letters to 1,642 brokers and Futures Commission Merchants ("FCMs") for purposes of supplementing the notice sent to potential class members identified by Defendants. Ferrante Decl., ¶ 3. GCG received 425 bulk requests to send Claim Packets to brokers and FCMs so that they could distribute the packets to their clients directly. Ferrante Decl., ¶ 2. GCG and Lead Counsel have also assisted a number of money managers and other service providers in identifying Notice Packets belonging to their clients.

GCG caused notice to be published in eight national and international newspapers; distributed a press release through Premier Global; and established a dedicated website, phone line, and email address to provide further details on the Settlements. Ferrante Decl., ¶¶ 6-7. GCG has fielded 5,972 phone calls representing 44,506 minutes of call time to the IVR, and 47,320 unique visitors have visited the Settlement Website. Ferrante Decl., ¶¶ 6-8.

 Similarly robust notice programs combining direct mail and publication notice are routinely approved. *In re Vitamin C Antitrust Litig.* No. 06-MD-1738 (BMC)(JO)*,* 2012 WL 5289514, at *8 (E.D.N.Y. Oct. 23, 2012) (approving notice program "distributed widely, through the internet, print publications, and targeted mailings"); *In re Credit Default Swaps Antitrust Litig.,* No. 13 MD 2476 (DLC), 2016 WL 2731524, at *5 (S.D.N.Y. Apr. 26, 2016) (same).

To maximize Class Members' opportunity to submit claims, the Claims Administrator has continued to mail Notice Packets as it has received requests from potential claimants seeking to determine whether they are members of a Settlement Class. This effort has been extensive.

Notably, no class member has objected to the adequacy of the notice program. Lead Counsel will provide the Court with an update and statistics describing participation by class members in the claims process before the Fairness Hearing on May 23, 2018.

## II.     THE REACTION OF THE SETTLEMENT CLASSES SUPPORTS APPROVAL.

Following this extensive notice program, there has been a single timely objection to the approval of the Settlements and 51 requests for exclusion. Accordingly, Class Plaintiffs can now demonstrate that the second *Grinnell* factor, "the reaction of the class to the settlement," favors approval of the Settlements.

This factor deserves considerable weight, as "the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] *Grinnell* inquiry." *Wal-Mart Stores, Inc.*, 396 F.3d at 119. Where, as here, a very small proportion of the class has sought to exclude themselves or object, Courts in this circuit have found that this *Grinnell* factor weighs in favor of approving a settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001) ("The District Court properly concluded that this small number of objections [18 objections to settlement with 27,883 class notices sent] weighed in favor of the settlement); *Precision Assoc., Inc. v. Panalpina World Trans. (Holding) Ltd.,* No. 08-cv-42 (JG)(VVP), 2013 WL 4525323, at * 7 (E.D.N.Y. Aug. 27, 2013) (approving settlement where 183 members out of "hundreds of thousands" opted out, and two objected).

That there is a single timely objection to this well-publicized class action is a remarkable demonstration of the Settlements' overall quality when considering the many thousands of individuals and entities who received notice. In cases like this one where sophisticated institutions constitute a significant portion of the class, the absence of objections also demonstrates the adequacy of the settlements. *See, e.g., In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (the lack of objections from institutional investors supported approval of the settlement); *Woburn Ret. Sys. v. Salix Pharm., Ltd.,* No. 14-CV-8925 (KMW), 2017 WL 3579892 at *2-3 (Aug. 18, 2017) (noting

small number of objections and absence of institutional investor objections as factor in support of approval). Here, there have been *no* objections by institutional investors, and only one objection as to the Settlements themselves lodged by individuals whose claims the Court already dismissed in parallel litigation.

The fact that only a small number of requests for exclusion have been submitted ("Opt-Outs") also weighs in favor of approval. *See* Ferrante Decl. ¶ 10. Of the requests, eight indicated that they do not believe they are members of a Settlement Class because they do not believe they transacted in eligible FX Instruments or FX Exchange-Traded Instruments. Ferrante Decl. ¶ 10. One request was made by an employee of a Defendant who falls into the exclusion from the Class definitions. Discussions are ongoing with putative class members that submitted untimely requests for exclusion. Lead Counsel will provide a list of Opt-Outs in connection with the submission of proposed orders following the conclusion of discussions with those entities. The proposed orders will be submitted before the Fairness Hearing.

The minimal number of opt-outs and objectors reflects a remarkable level of support for these Settlements. In their opening papers, Class Plaintiffs demonstrated that the remainder of the *Grinnell* factors weighed in favor of settlement approval. Now the Classes' emphatic and positive reaction to the Settlements can be added to that analysis. As such, Class Plaintiffs believe that the *Grinnell* factors uniformly weigh in favor of final approval.

## III.    THE ERISA OBJECTIONS SHOULD BE OVERRULED.

The only objection to the sufficiency of the Settlements has been filed on behalf of participants, beneficiaries, and trustees of five ERISA plans whose ERISA claims were dismissed with prejudice by the Court. *Allen*, ECF Nos. 227, 235; Obj. Br. at 2. The Objectors principally argue (1) that the Settlements cannot release ERISA claims under the "identical

factual predicate" doctrine, and (2) that Class Plaintiffs are inadequate representatives due to an

alleged conflict between class members with putative ERISA claims and those without such

putative claims.[5] These arguments lack merit and the Court should reject them.

    **A.**    **The Settlements Can Release ERISA Claims Arising from the "Identical Factual Predicate" of the Case.**

Objectors claim that the proposed settlements cannot release ERISA claims because the

"Antitrust Claims are not based on the identical factual predicate as the *Allen* ERISA Claims."

Obj. Br. at 16. If the Court were to agree, then that would presumably moot the Objectors'

remaining contentions, which assert, in substance, that class members with ERISA claims should

receive a settlement premium for releasing them.

Even if it is presumed, consistent with the Court's prior ruling in this Action that claims

"based on collusive conduct related to FX Instruments" are released, s*ee* ECF No. 614, the

Objectors' assertions are false. Courts have held that claims can be released by class settlements

if they "share the same integral facts" or "a realistic identity of issues," even if those claims were

not and "could not have been" pleaded in the settled class action. *See Wal-Mart Stores, Inc.,* 396

F.3d at 106-07; *TBK Partners, Ltd. v. W. Union Corp.,* 675 F.2d 456, 461 (2d Cir. 1982). What

---

[5] The Objectors' first objection lists myriad purported deficiencies in the Declaration of Derek W. Loeser in Support of Class Plaintiffs' Motion for Final Approval, ECF No. 950 and the attached opinion from Gallagher Fiduciary Advisors LLC, ECF No. 950-1 ("Loeser Declaration") Obj. Br. at 10-16. It claims that the Loeser Declaration presents insufficient and flawed advice to ERISA fiduciaries. Objectors attack the Loeser Declaration for "failing to address . . . how ERISA plan fiduciaries should, or can, meet their ERISA duties" by releasing hypothetical claims and not discussing the means by which an ERISA plan can evaluate the Settlements. In so doing, Objectors not only attack the Loeser Declaration and Gallagher Opinion for not responding to arguments Objectors made in a subsequent objection, but fundamentally misconstrue the documents. Obj. Br. at 14. The Loeser Declaration does not purport to discharge any fiduciary duties under ERISA or provide specific guidance to ERISA fiduciaries, each of which must independently judge based on its own fund whether to participate in, object to, or opt out of the settlement. Indeed, the opinions were not filed by Class Counsel, and were not included in the notice. The opinions simply provided information that the Court and plan fiduciaries could consider if they wished. Accordingly, Objectors' arguments concerning these opinions are irrelevant to the Court's final approval decision.

matters is the nature and extent of the factual overlap, including whether the released claim

would require proof of the same "core" facts alleged in the claim being settled.

Objectors rely upon numerous cases to contend that a "proof of further facts" standard

precludes release of any ERISA claims. *See* Obj. Br. at 18. But the cases they rely upon do not

support such a standard, instead making clear that the relevant questions are whether the claims

arise from a "common course of conduct," *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d

113, 138 (2d Cir. 2011),[6] "the same core nucleus of fact," *In re Currency Conversion Fee*

*Antitrust Litig.*, 264 F.R.D. 100, 119 (S.D.N.Y. 2010),[7] and whether they would require proof of

"*entirely* different facts." *In re Lehman Brothers Sec. & ERISA Litig.*, No. 08 CIV. 5523 (LAK)

(GWG), 2012 WL 2478483, at *6. (S.D.N.Y. June 29, 2012) (emphasis added).[8]

Here, the proposed Settlements release claims that arise from the "identical factual

predicate" of the Action. At a minimum, that factual predicate includes Defendants' conspiracy

to collusively manipulate FX prices by sharing competitive information. While Class Plaintiffs

take no position on the precise extent to which the release encompasses any of the specific *Allen*

claims, at least some of those claims substantially overlap with that factual predicate. *Wal-Mart,*

---

[6] In *In re American Express*, the Second Circuit held that a settlement release did not bar class members' subsequent claims because, among other things, their claims (1) were expressly carved out of the release, (2) sought damages for conduct outside of the period covered by the release, and (3) focused on specific acts that were outside the "common course of conduct" alleged in the settled class action. *See* 672 F.3d 113, 137-38 (2d Cir. 2011).

[7] In *In re Currency Conversion*, the court found insufficient identity of issues because the subsequent claims alleged different facts (a multi-party conspiracy to fix foreign currency conversion fees, as opposed to the defendant's unilateral action in the settled case), and sought to recover entirely distinct damages (the fees charged by the defendant's co-conspirators, as opposed to fees charged by the defendant in the settled case). *See* 264 F.R.D. 100, 118-19 (S.D.N.Y. 2010).

[8] In *In re Lehman Brothers*, plaintiff banks brought a FINRA action against defendant SunTrust despite being members of a settlement class that released claims against SunTrust arising from its sale of certain Lehman securities. No. 08 CIV 5523 LAK GWG, 2012 WL 2478483 at *1-2. (S.D.N.Y. June 29, 2012). The settled case had a factual predicate that SunTrust, acting as an underwriter, sold Lehman securities based on false and misleading offering materials. *Id.* In contrast, the FINRA action alleged that SunTrust breached its fiduciary duties by recommending and selling the Lehman securities despite them being unsuitable investments. *Id.* at *3-4. The court denied SunTrust's motion to dismiss the FINRA claims finding that the FINRA Case "require[d] proof of entirely different facts." *Id.* at *6.

8

396 F.3d at 108 ("the overlap between elements of claims is not dispositive" when applying the "identical factual predicate" doctrine). Indeed, the *Allen* complaint took many of its core factual allegations from the Action, then sought unsuccessfully to allege a fiduciary overlay to seek a remedy for the same core misconduct. *See Allen*, 2016 WL 4446373, at \*2 ("Many of the allegations in the Complaint track those in a separate action captioned *In re Foreign Exchange Benchmark Rates Antitrust Litigation*."). The Court already found the *Allen* ERISA claims to be barred at least in part when, after preliminarily approving the settlements, it enjoined the *Allen* plaintiffs from prosecuting any claims based on Defendants' collusive conduct. *See Allen*, ECF 199.[9]

### B. Class Plaintiffs adequately represented all class members, including hypothetical class members with potential ERISA claims.

Objectors argue that Class Plaintiffs are not adequate representatives of class members with ERISA claims due to a fundamental conflict of interest; that Class Counsel should have created a separate subclass for class members with ERISA claims; and that the members of that subclass should have received additional compensation for releasing their ERISA claims. Obj. Br. at 25-26. None of these arguments has any basis in law or fact.

Courts have considerable leeway in approving settlements where proposed class representatives "have an interest in vigorously pursuing the claims of the class." *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). Only where a conflict is "fundamental" will a "conflict among subgroups of a class will prevent class certification." *Id.* In considering an

---

[9] The Court allowed the *Allen* plaintiffs to continue to prosecute claims based on Defendants' non-collusive conduct, though it later dismissed those claims with prejudice for failure to state plausible ERISA violations. *See Allen*, 2016 WL 4446373, at \*6.

alleged conflict among class members, the question is not whether any potential or theoretical

conflict exists, but rather, whether there is "an alignment of interests" among class members.

*Wal-Mart,* 396 F.3d at 106–07. Here, potentially subsumed ERISA claims of some class

members do not create a "fundamental" conflict.[10]

### 1. *The objectors have not established that there is a defined subset of class members with plausible ERISA claims.*

In raising their objections, Objectors presuppose the existence of an identifiable subset of

class members that can assert ERISA claims. This is, however, not something that can be

presumed. As the Court explained in dismissing the *Allen* action, a Defendant transacting FX

with an ERISA plan is not automatically rendered an ERISA fiduciary. *Allen*, 2016 WL

4446373, at *6-8. In fact, establishing a functional fiduciary relationship is an individualized,

fact-intensive, Defendant-specific, and conduct-specific exercise. *See, e.g., Pegram v. Herdrich*,

530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, . . . the

threshold question is not whether the actions of some person . . . adversely affected a plan

beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a

fiduciary function) when taking the action subject to complaint."); *In re Enron Corp. Sec.,*

*Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 569–70 (S.D. Tex. 2003) (courts must make

---

[10] Objectors also assert a plainly false theory that the proposed settlements "treat ERISA Entities differently, depending on whether the Defendants hold a majority interest in the ERISA Entity's investment advisors." Obj. Br. at 27. As a threshold matter, the assertion is false for the reason that claims of ERISA plans belong to those ERISA plans, not to their investment advisors. But their assertion is a straw man, ignoring the context in which the "Investment Vehicle" definition is used. The "Investment Vehicle" definition is used to prevent the exclusion of investment vehicles from the class just because a Defendant may play some non-controlling role with respect to those investment vehicles; in other words, this definition makes clear that minority ownership of investment vehicles by Defendants does *not* render those vehicles affiliates, subsidiaries, or other related parties that would thus be precluded from participating in the Settlements. *See, e.g.,* BofA Settlement at ¶ 3(a)(i) ("Specifically excluded from the Direct Settlement Class are . . . any affiliate, legal representative, heir, or assign of any Defendant . . . . provided, however, that Investment Vehicles shall not be excluded from the definition of the Direct Settlement Class."). To the extent, as Objectors hypothesize, an ERISA plan with an "*unwitting and nonculpable investment advisor*[]" not related to Defendants (emphasis in original) holds claims, it would not even be necessary to consider this definition, because there is no danger of such a plan falling within the exclusion from the Class definition.

10

"a functional, fact-specific inquiry to assess 'the extent of responsibility and control exercised'"
to determine whether someone "has exercised sufficient discretionary authority and control to be
deemed an ERISA fiduciary"). The objectors effectively concede as much when they explain that
ERISA requires proof of "facts that show that the Defendants exercised 'authority or control'
over plan assets to establish that they acted as ERISA fiduciaries and that Defendants *secretly*
compensated themselves out of ERISA plan assets." (emphasis in original). Obj. Br. at 20-21.

Objectors propose no mechanism to identify class members with plausible ERISA claims,
nor do they explain how an ERISA subclass could be certified given the myriad individualized
questions in determining whether a functional fiduciary relationship exists with each Defendant
(an assessment that is wholly unnecessary in the *absence* of an ERISA subclass). Given these
questions, it is far from clear that ERISA claims could be asserted on behalf of an ascertainable
subclass.

### 2. *Class Plaintiffs' interests are aligned with putative ERISA plaintiffs.*

Class Plaintiffs are adequate class representatives because their interests in vigorously
pursuing the strongest and most valuable claims—antitrust claims—align with all members of
the Settlement Classes. *See Wal-Mart*, 396 F.3d at 106–07 ("Adequate representation of a
particular claim is established mainly by showing an alignment of interests between class
members."). The legal regime and potential compensation with respect to antitrust claims are
more favorable to Class Members than alternative legal theories.

For instance, the antitrust laws treat the alleged conduct as illegal *per se*, provide for joint
and several liability among co-conspirators, and automatically treble damages. ERISA, by
contrast, only allows for recovery against a narrower spectrum of Defendants. It permits the
recovery of only single damages against *one* Defendant who, with respect to a given transaction,

11

is adequately pled to, among other things, exercise "authority or control" over plan assets and *secretly* compensate itself from those assets. *See* Obj. Br. at 20-21. Given the objective superiority of the antitrust claims common to all class members, the theoretical possibility that some class members might also be able to bring duplicative, weaker ERISA claims against individual Defendants does not create a conflict. *See Wal–Mart,* 396 F.3d at 113 ("[W]here different claims within a class involve the identical factual predicate, adequate representation of a particular claim is determined by the alignment of interests of class members, not proof of vigorous pursuit of that claim."); *cf. In re Forcefield Energy Inc. Sec. Litig.*, No. 15 Civ. 3020 NRB, 2015 WL 4476345, at *6 (S.D.N.Y. July 22, 2015) (explaining that objector's concerns about adequacy were misplaced where class representative's claims were "legally stronger").

Thus, while Objectors imply that a fundamental conflict exists whenever some members of a settlement class can plead legal theories that others cannot, *see* Obj. Br. at 23, that assertion is contrary to well-settled law. *See Wal–Mart,* 396 F.3d at 107 ("[C]lass action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.") (quoting *TBK Partners,* 675 F.2d at 460); *see also In re Corrugated Container Antitrust Litig.,* 643 F.2d 195, 221 (5th Cir. 1981) ("[A] court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint.").

Nor does this Action present the risks identified in *In re Literary Works in Electronic Databases Copyright Litigation*, where claimants were pitted against each other based on the category into which a claimant fell. 654 F.3d at 246. In *Literary Works*, a settlement was divided into three categories of claims: A, B, and C, if the total claims exceeded a settlement cap, the

compensation of claimants in category C would be reduced *pro rata*. *See id*. The Second Circuit determined that the interests of claimants exclusively in category C were fundamentally antagonistic to those of claimants in the other categories, such that they needed separate representation to ensure their claims were not unfairly compromised. *See id.* at 252.

Here, there is no comparable conflict, not only because the stronger antitrust claims are common to all class members, but also because the plan of distribution treats all class members the same by allocating settlement proceeds according to a common formula. *Cf. In re Forcefield*, 2015 WL 4476345, at *5–6 ("In *Literary Works,* the Circuit's concern was that a lead plaintiff with two types of claim would focus his energies on maximizing the returns for the more valuable type of claim, to the detriment of class members who held the less valuable type."). Unlike *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999), which Objectors rely upon, there is also no conflict arising from fundamentally diverging interests among class members who have already suffered harm and those who may only suffer harm in the future. *See Amchem*, 521 at 602; *Ortiz*, 527 U.S. at 856. Here, the settlement release does not cover future harm, and all class members will receive compensation for past harm under the same formula.[11]

### 3. Any incidental release of ERISA claims through the settlements is both fair and reasonable.

Rather than acknowledge that ERISA claims are effectively subsumed within more valuable antitrust claims, Objectors instead repeatedly and falsely assert that the Settlements are

---

[11] It also makes no sense for the objectors to argue that hypothetical affirmative defenses to ERISA claims that Class Plaintiffs did not bring somehow warrant subclassing. The argument merely highlights the superiority of antitrust claims, which do not give rise to affirmative defenses that are individualized to particular class members. Obj. Br. at 23-24, n.44.

unfair because ERISA claims are being released for no consideration.[12] The proposed Plan of Distribution would provide compensation to hypothetical Class Members with ERISA claims in exactly the same fashion as any other Class Member – based on the details of their FX transactions. That this process may involve the incidental release of potential ERISA claims, contract claims, or state law claims in exchange for compensation based on the stronger and more valuable antitrust claims is both fair and reasonable. Given the superior features of antitrust claims, ERISA claims would not create additional claim value to ERISA class members distinct from successful antitrust claims.

To contest the absence of an ERISA premium, Objectors rely upon cases involving exactly that scenario – where Class Members had to surrender claims with separate and distinct value for no compensation. For example, Objectors rely upon in *In re Auction Houses Antitrust Litigation*, where the proposed class settlement compensated class members for damages only from rigged *U.S.* auctions, while also effectively compromising claims for damages from rigged *foreign* auctions that some class members suffered. No. 00 Civ. 0648 (LAK), 2001 WL 170792 (S.D.N.Y. Feb. 22, 2001). Because the proposed settlement "sacrificed" these foreign claims with distinct damages for no additional consideration, the court rejected this aspect of the settlement release. *Id.*

Here, however, to the extent ERISA claims are released, they are claims that would be effectively subsumed within the antitrust claims and would not offer ERISA class members an opportunity to recover additional amounts. Class members who would have had the opportunity

---

[12] *See, e.g.,* Obj. Br. at 12 ("ERISA Entities … will have their ERISA claims against Defendants released for no consideration"); at 14 (describing settlements as "releasing ERISA claims *for nothing*") (emphasis in original); at *id.* (asserting that ERISA fiduciaries are being asked to "accept zero consideration for release of ERISA claims"); at 15 (describing settlements as recovering "nothing" for ERISA plan class members and as seeking "the uncompensated release of ERISA claims"); at 25 (asserting that "the *Allen* ERISA Class receives no compensation for releasing their claims").

to pursue their claims under an antitrust theory, ERISA theory, state law theory, or alternative theory encompassing the identical factual predicate are compensated according to the transactions in which they engaged. Thus, unlike *Auction Houses*, there is no basis for Objectors to assert that class members with no ERISA claims are enriched by an uncompensated sacrifice of ERISA claims. *Cf. In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (PAM), 2017 WL 2178306, at *6 (D. Minn. May 17, 2017) (rejecting argument that "ignores the fact that all class members in this case suffered the same injury," and thus have "an identity of interests" because all class members "seek essentially the same things").

While it is true that courts have, in certain circumstances, approved of distributions involving ERISA "premiums" permitting greater recovery for ERISA class members, Objectors fall far short of demonstrating that one is obligatory or even advisable here, where a treble damages remedy exists as a matter of statute. In the cases Objectors rely upon, there was no single, strongest legal claim common to all class members;[13] the applicable state statutes allowed only permissive, not automatic, doubling and trebling;[14] and the Department of Labor insisted on the ERISA premium as a condition of releasing the settling defendants from its separate investigation into the same misconduct.[15] These cases have no bearing on the appropriateness of

---

[13] *Arkansas Teacher Retirement System et al. v. State Street Bank and Trust Co.*, No. 1:11-cv-10230, ECF 101-1, at 6-9 (D. Mass. Sept. 15, 2016) (various state consumer protection statutes and ERISA) ("*SSBT*"); *In re Bank of New York Mellon Corp. Forex Transaction Litig.*, No. 1:12-md-02335, ECF 617 at 10-11 (S.D.N.Y. Aug. 17, 2015) (various state laws for breach of fiduciary duty) ("*BNYM*").

[14] *See, e.g.,* Mass. Gen. Laws ch. 93A, § 9(3) (requiring willful or knowing violation or bad faith as prerequisites for double or treble damages, and even then, multiple damages are discretionary); N.Y. Gen. Bus. Law § 349(h) (treble damages allowed but discretionary, requiring a showing of willfulness, and in any event capped at $1,000).

[15] *See BNYM*, ECF 617 at 19 (explaining that BNYM's settlement with DOL, which flowed through to class members, was conditioned on the final approval of this settlement), at 21 ("[A]t the DOL's request, the $14 million DOL Settlement Amount—which is allocated entirely to ERISA-plan Class Members—has been added to the Settlement Fund and will be distributed on a pro rata basis among those entities."); *SSBT*, ECF 101-1 at 7 ("[B]ecause amounts to be paid to Class Members under the settlements between State Street and the SEC and the DOL will flow through this Settlement, those accords are conditioned upon final approval of this Settlement."), at 17 (explaining that the premium allocation to ERISA class members was negotiated with the involvement of DOL representatives).

an ERISA premium here, where the single strongest claim common to all class members imposes treble damages as a matter of law.

It is unreasonable for Objectors to demand that they be allowed to collect their share of the settlement proceeds while also preserving their ability to pursue additional recoveries for the same injuries under different legal theories. *See In re Lehman Bros.,* 2012 WL 2478483, at *8 ("The Court recognizes that, to encourage settlements, defendants in a class action must have confidence that the settlement will end their exposure [to] the class claims."). Even if Objectors were able to bring claims arising under the identical factual predicate under a different legal theory, they could only recover damages under one legal claim. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) ("A plaintiff seeking compensation for the same injury under different legal theories is of course only entitled to one recovery."). Accordingly, it was reasonable for Class Plaintiffs to pursue the claims which had the greatest possible recovery. *See Hettinger v. Kleinman*, 733 F. Supp. 2d 421, 449 (S.D.N.Y. 2010) (awarding damages in claims based on breach of contract and fraud on the theory that provided the greatest recovery but not both). If, on the other hand, Class Plaintiffs had insisted on settlement agreements that preserved class members' ability to split and separately pursue claims arising from the same factual predicate, there would likely be no opportunity for a class settlement here. *Wal–Mart,* 396 F.3d at 106 ("Practically speaking, 'class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability.'") (quoting *Stephenson v. Dow Chem. Co*., 273 F.3d 249, 254 (2d Cir. 2001)).

### 4. *Class Plaintiffs have standing to release ERISA claims arising from the "identical factual predicate" of this case.*

Objectors' contention that Class Plaintiffs lack "class standing" with respect to ERISA claims conflates Class Plaintiffs' inability to pursue ERISA claims directly with their ability to

incidentally resolve those claims. Ignoring that one of Class Plaintiffs is itself an ERISA plan, Objectors contend, in short, that any plaintiff who could not directly bring a claim cannot resolve that claim. This contention directly contravenes Second Circuit law, which provides that "class action releases may include claims not presented [in the complaint] and ***even those which could not have been presented*** so long as the released conduct arises out of the 'identical factual predicate' as the settled conduct." *Wal-Mart*, 396 F.3d at 107.

Nor are Class Plaintiffs seeking to pursue claims for which they do not have standing, unlike *Martinez v. Capital One Bank, N.A.,* No. 10-cv-8028 (RJS), 2015 WL 4270172, *4 (S.D.N.Y. July 13, 2015). Rather, because Class Plaintiffs are, as discussed above, adequate class representatives, they possess the ability to release claims consistent with the "identical factual predicate" doctrine. *See Wal-Mart*, 396 F.3d at 106 ("Plaintiffs' authority to release claims is limited by the 'identical factual predicate' and 'adequacy of representation' doctrines."). It is thus irrelevant whether Class Plaintiffs would have standing to pursue ERISA claims that they did not bring.

## IV.   CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request the Court grant its final approval of the Settlements, certify the Settlement Classes, and grant its final approval of the Plan of Distribution.


DATED: April 23, 2018

SCOTT+SCOTT, ATTORNEYS AT LAW,
LLP

 _s/ Christopher M. Burke_

CHRISTOPHER M. BURKE (CB-3648)
WALTER W. NOSS (WN-0529)
KRISTEN M. ANDERSON (*pro hac vice*)
STEPHANIE A. HACKETT (*pro hac vice*)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com
shackett@scott.scott.com

-and-

SCOTT+SCOTT, ATTORNEYS AT LAW,
LLP
DAVID R. SCOTT (DS-8053)
JOSEPH P. GUGLIELMO (JG-2447)
DONALD A. BROGGI (DB-9661)
PETER A. BARILE III (PB-3354)
SYLVIA SOKOL (SS-0317)
THOMAS K. BOARDMAN (TB-0530)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
david.scott@scott-scott.com
jguglielmo@scott-scott.com
dbroggi@scott-scott.com
pbarile@scott-scott.com
ssokol@scott-scott.com
tboardman@scott-scott.com

HAUSFELD LLP

 _s/ Michael D. Hausfeld_

MICHAEL D. HAUSFELD
REENA A. GAMBHIR
TIMOTHY S. KEARNS
NATHANIEL C. GIDDINGS
SARAH R. LAFRENIERE
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
mhausfeld@hausfeld.com
rgambhir@hausfeld.com
tkearns@hausfeld.com
ngiddings@hausfeld.com
slafreniere@hausfeld.com

-and-

HAUSFELD LLP
MICHAEL P. LEHMANN
BONNY E. SWEENEY
CHRISTOPHER L. LEBSOCK
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-358-4980
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

*Interim Co-Lead Counsel*

OBERMAYER REBMANN MAXWELL &
HIPPEL LLP
WILLIAM J. LEONARD (*pro hac vice*)
RIGEL FARR (*pro hac vice*)
Centre Square West

KOREIN TILLERY, LLC
STEPHEN M. TILLERY (*pro hac vice*)
ROBERT L. KING (*pro hac vice*)
AARON M. ZIGLER (*pro hac vice*)
STEVEN M. BEREZNEY (*pro hac vice*)

1500 Market Street, Suite 3400
Philadelphia, PA 19103-1895
Telephone: 215-665-3000
Facsimile: 215-665-3165
william.leonard@obermayer.com
rigel.farr@obermayer.com

-and-

BONI, ZACK & SNYDER LLC
MICHAEL J. BONI (*pro hac vice*)
JOSHUA D. SNYDER (*pro hac vice*)
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
Facsimile: 610-822-0206
mboni@bonizack.com
jsnyder@bonizack.com

*Counsel for Plaintiff the City of
Philadelphia, Board of Pensions and
Retirement*

WOLF POPPER LLP
MARIAN R. ROSNER
PATRICIA I. AVERY
FEI-LU QIAN
845 Third Avenue, 12th Floor
New York, New York 10022
Telephone: 212-759-4600
Facsimile: 212-486-2093
mrosner@wolfpopper.com
pavery@wolfpopper.com
fqian@wolfpopper.com

*Counsel for Plaintiff Employees' Retirement
System of Puerto Rico Electric Power
Authority*

LABATON SUCHAROW LLP
GREGORY S. ASCIOLLA
JAY L. HIMES
ROBIN A. VAN DER MEULEN
MATTHEW J. PEREZ
140 Broadway
New York, NY 10005

One U.S. Bank Plaza
505 N. 7th Street, Suite 3600
Saint Louis, MO 63101-1612
Telephone: 314-241-4844
Facsimile: 314-241-3525
stillery@koreintillery.com
rking@koreintillery.com
azigler@koreintillery.com
sberezney@koreintillery.com

-and-

KOREIN TILLERY, LLC
GEORGE A. ZELCS (*pro hac vice*)
ROBERT E. LITAN
205 N. Michigan Ave, Suite 1950
Chicago, IL 60601-5927
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com
rlitan@koreintillery.com

*Counsel for Plaintiffs Haverhill Retirement
System and Oklahoma Firefighters Pension
and Retirement System, Robert Miller, Mark
Miller, and Peter Rives*

ROBBINS GELLER RUDMAN & DOWD
LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
BRIAN O. O'MARA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
patc@rgrdlaw.com
davidm@rgrdlaw.com
bomara@rgrdlaw.com

*Counsel for Plaintiff Employees' Retirement
System of the Government of the Virgin
Islands*

BERMAN TABACCO
JOSEPH J. TABACCO, JR. (JJT-1994)
TODD A. SEAVER (*pro hac vice*)

Telephone: 212-907-0700
Facsimile: 212-818-0477
gasciolla@labaton.com
jhimes@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com

*Counsel for Plaintiff State-Boston
Retirement System, Marc G. Federighi, and
Michael J. Smith*

GRANT & EISENHOFER, P.A.
ROBERT G. EISLER
123 Justison Street
Wilmington, DE 19801
Telephone: 302-622-7030
Facsimile: 302-622-7100
reisler@gelaw.com

*Counsel for Plaintiff Syena Global
Emerging Markets Fund, LP*

ENTWISTLE & CAPPUCCI LLP
ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: 212-894-7200
Facsimile: 212-894-7272
aentwistle@entwistle-law.com
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com

*Counsel for Plaintiffs Tiberius OC Fund,
Ltd. and Value Recovery Fund L.L.C.*

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ 08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

SARAH KHORASANEE MCGRATH (*pro hac vice*)
JESSICA MOY (*pro hac vice*)
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Telephone: 415-433-3200
Facsimile: 415-433-6382
jtabacco@bermandevalerio.com
tseaver@bermandevalerio.com
smcgrath@bermandevalerio.com
jmoy@bermandevalerio.com

*Counsel for Plaintiff Fresno County
Employees' Retirement Association*

CRIDEN & LOVE, P.A.
MICHAEL E. CRIDEN
LINDSEY C. GROSSMAN
7301 SW 57th Court, Suite 515
South Miami, FL 33143
Telephone: 305-357-9000
Facsimile: 305-357-9050
mcriden@cridenlove.com
lgrossman@cridenlove.com

*Counsel for Plaintiffs J. Paul Antonello,
Marc G. Federighi, and Michael J. Smith*

LOWEY DANNENBERG COHEN &
HART, P.C.
VINCENT BRIGANTI
GEOFFREY M. HORN
PETER D. ST. PHILLIP
RAYMOND P. GIRNYS
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-733-7221
Facsimile: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com
pstphillip@lowey.com
rgirnys@lowey.com

-and-

*Counsel for Plaintiffs Doug Harvey, Izee Trading Company, and Richard Preschern d/b/a Preschern Trading*

CERA LLP
SOLOMON B. CERA
C. ANDREW DIRKSEN
595 Market Street, Suite 2300
San Francisco, CA 94105
Telephone: 415-777-2230
Facsimile: 415-777-5189
scera@cerallp.com
cdirksen@cerallp.com

*Counsel for Plaintiff Aureus Currency Fund L.P.*

FREED KANNER LONDON & MILLEN LLC
MICHAEL J. FREED
STEVEN A. KANNER
2201 Waukegan Road, Suite 130
Bannockburn, Illinois 60015
Telephone: 224-632-4500
Facsimile: 224-632-4521
mfreed@fklmlaw.com
skanner@fklmlaw.com

*Counsel for Plaintiffs Thomas Gramatis and John Kerstein*

NUSSBAUM LAW GROUP, P.C.
LINDA P. NUSSBAUM
1211 Avenue of the Americas
New York, NY, 10036
Telephone: 917-438-9102
lnussbaum@nussbaumpc.com

*Counsel for Plaintiffs Jeffrey Sterk, Kimberly Sterk, and Michael Melissinos*
MOGINRUBIN LLP
DANIEL J. MOGIN
JODIE M. WILLIAMS
707 Broadway, Suite 1000
San Diego, CA 92101

LOWEY DANNENBERG COHEN & HART, P.C.
GERALD LAWRENCE, ESQ.
Four Tower Bridge
200 Bar Harbor Drive, Suite 400
West Conshohocken, PA 19428
Telephone: 610-941-2760
Facsimile: 610-862-9777
glawrence@lowey.com

-and-

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
ERIC. L. YOUNG
NATALIE FINKELMAN BENNETT
35 East State Street
Media, PA 19063
Telephone: 610-891-9880
Facsimile: 866-300-7367
eyoung@sfmslaw.com
nfinkelman@sfmslaw.com

-and-

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
JAMES E. MILLER
65 Main Street
Chester, CT 06412
Telephone: 860-526-1100
Facsimile: 860-526-1120
jmiller@sfmslaw.com

-and-

RADICE LAW FIRM, P.C.
JOHN RADICE
KENNETH PICKLE
34 Sunset Blvd.
Long Beach, NJ 08008
Telephone: 646-245-8502
Facsimile: 609-385-0745
jradice@radicelawfirm.com
kpickle@radicelawfirm.com

Telephone: 619-687-6611
Facsimile: 619-687-6610
dmogin@moginlaw.com
jwilliams@moginlaw.com

-and-

STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
ALLAN STEYER
JAYNE PEETERS
One California Street, Third Floor
San Francisco, CA 94111
Telephone: 415-421-3400
Facsimile: 415-421-2234
asteyer@steyerlaw.com
jpeeters@steyerlaw.com

*Counsel for Plaintiffs Haverhill Retirement
System and Oklahoma Firefighters Pension
and Retirement System*

-and-

MANDEL BHANDARI LLP
RISHI BHANDARI
EVAN MANDEL
80 Pine Street, 33rd Floor
New York, NY 10005
Telephone: 212-269-5600
Facsimile: 646-964-6667
rb@mandelbhandari.com
em@mandelbhandari.com

*Counsel for Plaintiff United Food and
Commercial Workers Union and
Participating Food Industry
Employers Tri-State Pension Fund*

FINE, KAPLAN AND BLACK, R.P.C.
ROBERTA D. LIEBENBERG
ADAM PESSIN
One South Broad St., Suite 2300
Philadelphia, PA 19107
Telephone: 215-567-6565
Facsimile: 215-568-5872
rliebenberg@finekaplan.com
apessin@finekaplan.com

-and-

MOTLEY RICE LLC
WILLIAM H. NARWOLD
DONALD A. MIGLIORI
MICHAEL M. BUCHMAN
JOHN A. IOANNOU
600 Third Avenue, Suite 2101
New York, NY 10016
Telephone: 212-577-0040
Facsimile: 212-577-0054
bnarwold@motleyrice.com
dmigliori@motleyrice.com
mbuchman@motleyrice.com
jioannou@motleyrice.com

-and-

MILLER LAW LLC

22

MARVIN A. MILLER
MATTHEW VAN TINE
115 S. LaSalle St., Suite 2901
Chicago, IL 60603
Telephone: 312-332-3400
Facsimile: 312-676-2676
mmiller@millerlawllc.com
mvantine@millerlawllc.com

*Of Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be e-mailed to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 23, 2018.

*/s/ Michael D. Hausfeld*
MICHAEL D. HAUSFELD
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
Telephone: 202-540-7200
Facsimile: 202-540-7201
Email: mhausfeld@hausfeld.com