```
UNITED STATES DISTRICT COURT          USDC SDNY
SOUTHERN DISTRICT OF NEW YORK         DOCUMENT
------------------------------------X ELECTRONICALLY FILED
                                    : DOC #:_____
IN RE FOREIGN EXCHANGE              : DATE FILED: 11/8/2018
BENCHMARK RATES ANTITRUST           :
LITIGATION                          :  13 Civ. 7789 (LGS)
                                    :
------------------------------------X  OPINION AND ORDER
```

LORNA G. SCHOFIELD, District Judge:

On January 12, 2018, Plaintiffs moved for final approval of 15 settlement agreements, which together create a settlement fund totaling $2,310,275,000. After a fairness hearing and supplemental briefing, the 15 settlements were approved on August 6, 2018.

Pursuant to Federal Rule of Civil Procedure 23(h), Class Counsel filed a motion seeking attorneys' fees and reimbursement of litigation expenses. On August 16, 2018, the Court awarded Class Counsel $22,490,654.29 for litigation expenses. The Court now awards Class Counsel attorneys' fees of $300,335,750, equivalent to 13% of the settlement fund.

## I.  BACKGROUND

This case involves an alleged conspiracy among banks to fix prices in the foreign exchange market. The docket sheet reflects the vast quantity of legal work produced to date. Several hundred attorneys worked on this matter over the course of five years, culminating in 15 settlements and a settlement fund of $2,310,275,000 -- the third largest antitrust class action settlement in history, according to Plaintiffs.

Class Counsel request an attorneys' fee award of $381,353,830.27, plus interest -- the equivalent of 16.51% of the settlement fund. In support of this figure, Class Counsel submitted a detailed breakdown of how they arrived at their proposed fee, citations to data pertaining to awards in other cases, declarations from law professors and an expert report. In response, two

class members objected to the proposed fee, characterizing it as "grossly excessive" and requesting a fee of "no more than 8% of net expenses."

## II. LEGAL STANDARD

In a Rule 23 class action, the "attorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court . . . and will not be overturned absent an abuse of discretion . . . " *Id.* (citations omitted). In evaluating a proposed fee, a court must heed the factors set forth in *Goldberger*: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50 (alterations omitted).

The Second Circuit has approved the use of two methods to calculate attorneys' fees: the "lodestar" method and the "percentage of the fund" method. *See id.* at 47. Under the lodestar method, the court multiplies the reasonable hours billed by a reasonable hourly rate, then adjusts the award based on factors such as the risk of the litigation and the performance of the attorneys. *See id.* Under the percentage of the fund method, the fee is a reasonable percentage of the total value of the settlement fund created for the class. *See id.* The percentage method is adopted in this case, as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also In re Colgate-Palmolive Co. ERISA Litigation*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014) (comparing the lodestar and percentage methods); *McDaniel v. Cty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the

percentage method is the trend in the Second Circuit).  Nevertheless, the lodestar remains useful as a "cross check on the reasonableness of the requested percentage."  *Goldberger*, 209 F.3d at 43 (internal quotation marks omitted).

## III.    DISCUSSION

In applying the *Goldberger* factors, this opinion adopts the three-step approach set forth in *Colgate-Palmolive*.  36 F. Supp. 3d at 348.  The first step is to determine a baseline reasonable fee by reference to other common fund settlements of a similar size, complexity and subject matter.  *Id*.  This step considers three of the *Goldberger* factors -- the requested fee in relation to the settlement, the magnitude and complexity of the case, and the policy consideration of avoiding a windfall to class counsel.  *Id*.  The second step is to make any necessary adjustments to the baseline fee based on the *Goldberger* factors of risk, quality of representation and other public policy concerns.  *Id*.  The third step is to apply the lodestar method as a cross-check, which addresses the final *Goldberger* factor of the time and labor expended by counsel.  *Id*.  Based on this analysis, a reasonable baseline fee in this case is 13%, which requires no further adjustment.

### A.  Comparison to Court-Approved Fees in Other Common Fund Settlements

In using the percentage of the fund approach, the critical *Goldberger* factor is necessarily the size of the requested fee in relation to the settlement.  *See Colgate-Palmolive*, 36 F. Supp. 3d at 348.  Accordingly, the first step is to determine a baseline reasonable fee by looking to other common fund settlements of a similar size, complexity and subject matter.  In conducting this assessment, a "sliding scale" approach -- awarding a smaller percentage for fees as the size of the settlement fund increases -- is appropriate.  *See Wal–Mart,* 396 F.3d at 122–23 ("Recognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally

3

awarded fees for common fund cases in the lower range of what is reasonable."); *Goldberger*, 209 F.3d at 52 (noting that it is not "ten times as difficult to prepare, and try or settle a 10 million dollar case as it is to try a 1 million dollar case").

In support of their proposed fee award, Class Counsel submitted a declaration from Geoffrey P. Miller, a professor at the New York University School of Law. Professor Miller co-authored a recent study which found that in the Southern District of New York, the mean fee in reported class action settlements was 27% and the median fee was 31%. The study also found that, nationwide, the mean fee for antitrust settlements was 27% and the median fee was 30%. Professor Miller notes in his declaration that "[t]he fee requested in this case – 16.51% – is well below each of these . . . figures."

But this comparison is not entirely germane. The 78 cases comprising the data set for the Southern District of New York had a median recovery of only $3.7 million. *See* Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 950 (2017). As for the antitrust cases, the median recovery was $37.3 million -- a fraction of the $2.3 billion settlement in this case. *See id.* at 952. Given that a smaller fee percentage is appropriate as the size of the settlement increases, these figures do not provide an adequate basis for comparison.

Professor Miller cites another finding in his study: "For cases in the highest decile of class recovery (>$67.5 million) . . . the average percentage fee was 22.3%." Professor Miller concludes that, "even taking into account the 'scaling' effect that tends to reduce the fee percentage for the highest-dollar settlements, this study indicates that the requested 16.51% fee is well below average."

But given that the 22.3% figure comprises *all* cases with recoveries above $67.5 million, it does not necessarily reflect a reasonable baseline fee for this case, which has a recovery of over $2.3 billion. Indeed, Professor Miller's own regression analysis suggests that the scaling effect is operative *within* the top decile of cases. And, importantly for this case, Professor Miller cites to a study of "mega settlements" exceeding $1 billion, which found a mean fee percentage of 13.7% and a median of 9.5% with a standard deviation of 11%.

Class Counsel also submitted the declaration of Brian T. Fitzpatrick, a professor of law at Vanderbilt University. Professor Fitzpatrick notes that in the five antitrust class actions with settlements of $1 billion or more, "the average fee percentage awarded . . . was 14.43%." Class Counsel subsequently filed an exhibit detailing the fee awards in those five settlements, and in a sixth settlement which, as here, was comprised of several smaller settlements (Dkt. No. 1058 at 5-6).

These six settlements provide a more relevant basis for comparison on account of their similarities with this case in terms of size, complexity and subject matter. Although there are notable limitations -- namely, the small sample size and high standard deviation (above 8%) -- these data points still provide useful guidance, especially when situated within the sliding scale framework. The three cases with the smallest settlement amounts ($1 billion to $1.18 billion) are the three cases with the highest fee percentages (14% or higher, with an average of 21.97%).[1] The

---

[1] *In re Air Cargo Shipping Servs. Antitrust Cases*, No. 06 Md. 1775 (E.D.N.Y.) ($1.18 billion recovery over 5 settlements; 23.3% fee award); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 1827 MDL, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013) ($1.08 billion recovery; 28.6% fee award); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) ($1 billion recovery; 14% fee award).

case with the settlement amount closest to this case ($1.86 billion) had a fee percentage of 13.61%.[2] And the two cases with settlements exceeding $3 billion had the smallest fee percentages -- under 10%.[3]

In view of the approved fee awards in similar common fund settlements, and mindful that the Court acts as a fiduciary that must "serve as a guardian of the rights of absent class members," *Goldberger*, 209 F.3d at 52, a reasonable baseline fee for an antitrust class action of this size is 13%.

**B. Consideration of Risk, Result and Policy Considerations**

The next step of the analysis is to consider three additional *Goldberger* factors -- the risk of the litigation, the quality of the representation and any remaining policy considerations. If this case were demonstrably exceptional in any of these areas compared to cases of a similar size, complexity and subject matter, then an increase or decrease of the baseline percentage would be warranted. *See Colgate-Palmolive*, 36 F. Supp. 3d at 351. Nothing in the record, however, indicates that this case is exceptional in these three respects as compared with similar cases.

1. Litigation Risk

Risk of litigation should be considered "as of when the case is filed." *Goldberger*, 209 F.3d at 55. Significant risks warrant a substantial fee because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would

---

[2] *In re Credit Default Swaps Antitrust Litig.*, No. 13 Md. 2476, 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016).
[3] *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445, 448 (E.D.N.Y. 2014) ($5.7 billion recovery; 9.56% fee award); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509, 524 (E.D.N.Y. 2003) ($3.38 billion recovery; 6.5% fee award).

6

charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

Without question, Class Counsel faced substantial litigation risks -- risks far beyond those in a typical federal lawsuit. But logic dictates that for litigation risks to warrant an upward deviation from the baseline, the risks must be compared not to a typical case, but to a case of similar size, complexity and subject matter. Otherwise, the substantial litigation risks inherent in "megafund" class actions would all but guarantee a self-reinforcing cycle of higher and higher fee awards.

Class Counsel point to several aspects of the case that they argue warrant a fee award enhancement. First, Class Counsel argue that they incurred significant risks given that Defendants would likely have denied the existence of "an overarching conspiracy to fix prices" -- and, if such a conspiracy had been established, would have argued they were "not a participant in that agreement." But it is hardly unique that an antitrust defendant would deny participation in an illicit price-fixing conspiracy. *See, e.g.*, *In re Credit Default Swaps Antitrust Litigation*, 13 Md. 2476, 2016 WL 2731524, at *8 (S.D.N.Y. Apr. 26, 2016) ("The defendants intended to argue that they had not conspired with each other to violate our antitrust laws . . . ."). This litigation risk does not warrant an upward deviation from the baseline reasonable fee.

Second, Class Counsel argue that they would have had to prove both class-wide impact and that damages could be computed on a common, formulaic basis. But these challenges are inherent in class action litigation. *See, e.g.*, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014) (noting that plaintiffs' counsel "would have had serious obstacles in proving damages"); *In re Visa Check/Mastermoney Antitrust Litigation*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) ("Even if liability had been

7

established, the Class would still have faced the problems and complexities inherent in proving damages to the jury."). And for purposes of determining a settlement allocation formula, Class Counsel have managed to compute damages based on a common formula. The risks of having to prove class-wide impact and damages do not warrant a deviation from the baseline fee.

Third, Class Counsel argue that they incurred a significant risk of non-payment due to their working on a contingency basis. But, again, this is a common risk in most class actions, including cases of this size, complexity and subject matter, *see Credit Default Swaps*, No. 13 Md. 2476, 2016 WL 2731524, at *17 (noting that class counsel worked on a contingency basis); *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 1827 MDL, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013) (same), and thus does not warrant an upward adjustment of the baseline fee.

Moreover, the numerous government investigations and criminal prosecutions relating to price fixing in the foreign exchange market also bear on the degree of litigation risk. Undoubtedly, there are important differences between the government actions and this one -- for example, Class Counsel note that they "have not relied on regulatory findings or law enforcement actions to prove class-wide impact or damages for purposes of class certification." But, as Class Counsel concedes, "the government actions [were] helpful in prosecuting the Action." Indeed, the Complaint noted that "government investigations of Defendants' conduct could yield information from Defendants' internal records or personnel." Furthermore, the investigations were strong indicia of wrongdoing at the outset, and litigation risks decreased as the government investigations progressed and defendants admitted guilt.

In summary, the risk level in this case was not substantially higher or lower than that in a typical case of the same size, complexity and subject matter. Consequently, no increase or decrease in the baseline percentage is warranted.

2. Quality of Representation

Class Counsel state that they are "among the most experienced and skilled antitrust and commodities litigation attorneys in the country." Whether or not this accurately characterizes each of the 369 attorneys listed as Class Counsel, it is clear from the results in this case that Plaintiffs were well-served by their representation. *See Goldberger*, 209 F.3d at 55 (stating that "the quality of representation is best measured by results").

Undoubtedly, the $2.31 billion settlement achieved in this case is an exceptional result in the aggregate. The settlement is also commendable from the point of view of the class members. The estimated participation rate by number of claimants is 30%, based on approximately 60,000 submitted claims. The estimated participation rate by claim volume is 32% to 35%. Assuming a 35% participation rate by volume, claimants are projected to recover 94% to 123% of estimated single damages. Yet, there is no indication that the result is exceptional compared to other cases of a similar size, complexity and subject matter. On the record before the Court, quality of representation does not warrant an adjustment to the baseline fee.

3. Public Policy Considerations

Attorneys' fees should reflect the important public policy goal of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51. If attorneys' fees are routinely set too low, it may create poor incentives to bringing large class action cases. *See Colgate-Palmolive*, 36 F. Supp. 3d at 352.

9

Antitrust class actions serve the public interest by protecting consumers from exploitation. As Class Counsel correctly note: "it is important to encourage top-tier litigators to pursue challenging antitrust cases." Indeed, in some of the related criminal cases, the government has expressly declined to seek restitution in light of the availability of relief in the civil litigation. *See*, *e.g.*, Plea Agreement, *United States v. BNP Paribas USA, Inc.*, 18 Cr. 61 (Dkt. No. 4) (S.D.N.Y. Feb. 2, 2018).

As no particular public policy concern differentiates this case from other cases of a similar size, complexity and subject matter, there is no reason to deviate from the baseline fee.

### C. The Lodestar Cross–Check

The last step of the analysis is to cross-check the fee award against the lodestar multiplier. This step ensures that an otherwise reasonable percentage fee would not lead to a windfall for class counsel. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check serves the purpose of alerting the trial judge that when the multiplier is too great, the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award."). The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate).

A fee award equivalent to 13% of the settlement fund results in a lodestar multiplier of 1.72. This is within the typical range for megafund cases. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (finding lodestar multiplier of 1.35 to 2.99 common in megafunds over $100 million). Although the lodestar multiplier in this case is lower than those

in similarly sized antitrust cases,[4] this is largely due to the exceptionally high number of hours billed (330,600). Moreover, some of these hours relate to work in the ongoing litigation against Credit Suisse, which has not settled. In view of the Court's application of the *Goldberger* factors, "increasing the fee award percentage . . . just so the multiplier can be larger is not merited." *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400 (D. Conn. 2004), *aff'd* 355 Fed. App'x 523, 526 (2d Cir. 2009).

## IV. CONCLUSION

For the foregoing reasons, Class Counsel is awarded attorneys' fees of $300,335,750, which equates to 13% of the settlement fund. Class Counsel's request for interest is denied.

Unless the Court orders otherwise upon application of Class Counsel, the payment of attorneys' fees shall take place as follows: half of $300,335,750 shall be payable upon the initial distribution to confirmed claimants who fall within the de minimis and automatic payment categories, as well as certain pro rata Option 1 claimants, as described in Class Counsel's letter to the Court dated August 14, 2018 (Dkt. 1114). The other half of the $300,335,750 shall be payable upon the substantial distribution of the settlement fund to the remaining claimants, as described in the same letter.

Dated: November 8, 2018
      New York, NY

                                         **LORNA G. SCHOFIELD**
                                        **UNITED STATES DISTRICT JUDGE**

---

[4] Class Counsel's exhibit detailing attorneys' fees in antitrust class actions with settlements of $1 billion or more reflects that the average lodestar in these cases is 3.6, with a low of 1.99 and a high of 6.2 (Dkt. No. 1058 at 5-6).