**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Eric J. Stock
Direct: +1 212.351.2301
Fax: +1 212.716.0801
EStock@gibsondunn.com

February 14, 2019

**VIA ECF**

The Honorable Lorna G. Schofield, U.S. District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, New York, New York 10007

   Re:   *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789

Dear Judge Schofield:

We write on behalf of UBS AG (with its affiliates, "UBS") in response to Plaintiffs' pre-motion letter of February 4 (ECF No. 1166). Plaintiffs seek to file a motion to enforce two subpoenas demanding that UBS produce two expert reports that UBS submitted in prior confidential arbitrations between UBS and two former traders. The subpoenas should be quashed, not enforced, because Plaintiffs have no "special need" for the reports, and any marginal relevance the reports have to this action is far outweighed by UBS's interest in preserving the confidentiality of its employment-related arbitrations. *See, e.g., In re Teligent, Inc.*, 640 F.3d 53, 58 (2d Cir. 2011) (applying a stringent test for compelling production of confidential arbitration materials, including demonstration of "special need" for disclosure).

A.   <u>The Employment-Related Arbitrations And Expert Reports By Mr. Underwood</u>. The pertinent arbitrations involve two former UBS traders, Roger Boehler and James Witt. These individuals traded FX instruments while at UBS, and their FX trading conduct raised legal issues. UBS agreed to arbitrate its employment-related dispute with each employee before arbitrators at JAMS, a private mediation and arbitration service. Confidentiality is an essential feature of employment arbitrations, and in each proceeding the arbitrator entered a Stipulation and Protective Order to maintain the confidentiality of that proceeding. In each arbitration, UBS submitted an expert report from Keith Underwood, an expert in FX transactions, to assist the arbitrator in resolving the employment-related dispute. The pertinent Stipulation and Protective Order applied to and secured the confidentiality of Mr. Underwood's report in each arbitration.

In this action, the Credit Suisse ("CS") Defendants rely on a report from Mr. Underwood to support their October 2018 Opposition to Plaintiffs' motion for class certification (the "CS Opposition"). The CS Defendants rely on Mr. Underwood's testimony to describe the industry and, for example, the potential impact (or lack of impact) on clients of the alleged misconduct. For example, the CS Opposition cites Mr. Underwood for the contention that FX prices are "[d]ynamic and [b]espoke" (CS Opposition at 9–10, 28–31), and for the contention that wider spreads would not necessarily have impacted clients (*id.* at 24).

B.   <u>Enforcement Of The Subpoenas Is Not Warranted</u>. Production of the Underwood arbitration reports is not warranted because (1) they are not necessary or justifiable fact discovery; and (2) their relevance to potential impeachment of Mr. Underwood's opinion in this action is too marginal to outweigh UBS's confidentiality interests. Confidential materials used in arbitration are firmly protected from discovery by other litigants. Where a

**GIBSON DUNN**

Hon. Lorna G. Schofield, February 14, 2019, Page 2

protective order in an arbitration or other ADR proceeding applies to materials sought in discovery, the party seeking disclosure must demonstrate "(1) a special need for the confidential material, (2) resulting unfairness from a lack of discovery, and (3) that the need for the evidence outweighs the interest in maintaining confidentiality." *Teligent*, 640 F.3d at 58. And a litigant's interest in impeachment is not a "compelling need." *See Dandong v. Pinnacle Performance Ltd.*, 2012 WL 4793870, at *4–6 (S.D.N.Y. Oct. 9, 2012). Adherence to a stringent standard is necessary because "[c]onfidentiality is an important feature of . . . mediation and other alternative dispute resolution processes," and "[p]romising participants confidentiality in these proceedings promotes the free flow of information that may result in the settlement of a dispute," while "protecting the integrity of alternative dispute resolution generally." *Teligent*, 640 F.3d at 57–58 (internal quotation marks omitted); *see Pasternak v. Dow Kim*, 2013 WL 1729564, at *3 (S.D.N.Y. Apr. 22, 2013) ("[C]onfidentiality is a paradigmatic aspect of arbitration," and "there is an important public interest in protecting the rights of parties who submit to confidential arbitration.") (citations and internal quotation marks omitted).

1. <u>There Is No "Special Need" or Justification for Compelling Production of the Reports as Belated "Fact Discovery."</u> Plaintiffs have demonstrated no "special need" for the materials demanded. Mr. Underwood has no direct, personal knowledge about any alleged wrongful conduct engaged in by Messrs. Boehler or Witt. Nor do Plaintiffs assert that they have inadequate information on what Messrs. Boehler and Witt did. And *if* Plaintiffs need further information about the chats or other conduct engaged in by those traders, then the proper path would be for Plaintiffs to use ordinary discovery tools to seek the production by UBS of those chats or other documents that are direct evidence of their conduct (such as emails involving Boehler and Witt). Mr. Underwood's arbitration reports are not direct evidence of what Boehler and Witt did. *See Pasternak*, 2013 WL 1729564, at *4 n.6 (denying plaintiff access to witness testimony and other materials from confidential arbitration where plaintiff had access to many of the same witnesses and could have deposed them); *United States v. Chimera*, 201 F.R.D. 72, 77 (W.D.N.Y. 2001) (denying discovery of reports as immaterial because defendants had received or would receive more direct evidence, "the best source of information" available). Moreover, if the purpose of the subpoenas was indeed to obtain fact discovery, the appropriate time for that has long since passed, since the deadline for completion of requests for the production of documents and data constituting fact discovery was March 15, 2018 (ECF No. 1014, Point II.D.5.b).

2. <u>Any Purported Impeachment Need Is Marginal and Far Outweighed by the Interest in Preserving Confidentiality</u>. Plaintiffs' pre-motion letter stresses their interest in using the arbitration reports to impeach Mr. Underwood's Rule 23 opinion, rather than to obtain further fact discovery. *See* ECF No. 1166, at 2 ("The UBS Reports are . . . relevant to testing Underwood's credibility," as "[a]ny inconsistent opinions could be used for impeachment purposes."). Any marginal benefit to Plaintiffs' Rule 23 motion of using the arbitration reports for impeachment would be far outweighed by the harm to UBS of having to disclose its confidential arbitration materials.

Hon. Lorna G. Schofield, February 14, 2019, Page 3

To begin with, the issues addressed by Mr. Underwood in the employment arbitrations are not the same as those in dispute between Plaintiffs and the CS Defendants. The CS Defendants have chiefly relied on Mr. Underwood's Rule 23 opinion to describe the industry and the potential impact (or lack of impact) of certain practices on clients. There is no reason to believe that Mr. Underwood's arbitration reports would be useful for undermining his credibility on those issues. Plaintiffs have not identified any factual assertion by Mr. Underwood relied upon by CS in its papers that they expect to be contradicted by Mr. Underwood's arbitration reports. They identify no opinion regarding the industry background that they consider crucial to their case and likely contradicted by the employment-related arbitration reports. Importantly, the question of whether any "chats" or trading practices by Boehler and Witt (or others) were harmful to clients was not a topic of Mr. Underwood's employment-related arbitration reports. Nor is there any evidence or suggestion (in the arbitration reports) that Boehler and Witt were involved in improper discussions with CS, the only defendant remaining in this action. And obviously Mr. Underwood's arbitration reports did not address whether a class should be certified here.

Plaintiffs appear interested in obtaining the arbitration reports to see if they can find some statement, somewhere in them, that would arguably be inconsistent with the opinions the CS Defendants propose to rely upon in this action. Such a search would be nothing more than a fishing expedition. When an expert in litigation has previously prepared a report in a confidential litigation or arbitration subject to a protective order, lawyers have learned to live without obtaining those confidential reports, even if they might want them for impeachment. The impeachment goal certainly supplies no "special need" for invasion of the confidentiality of ADR proceedings. *See Dandong*, 2012 WL 4793870, at *6 (declining to compel discovery of communications in a confidential mediation to satisfy asserted desire to impeach).

Moreover, UBS's interest in maintaining the confidentiality of its arbitrations of employment-related disputes is a strong justification that would outweigh any marginal benefit to Plaintiffs of obtaining the reports. *See Teligent*, 640 F.3d at 59–60. The out-of-circuit decisions cited by Plaintiffs are unavailing: None addresses *Teligent*. As the Second Circuit stated in *Teligent*, which involved mediation, an analogous form of ADR: "Were courts to cavalierly set aside confidentiality restrictions on disclosure of communications made in the context of mediation, parties might be less frank and forthcoming during the mediation process or might even limit their use of mediation altogether." *Id.* The same holds true for a confidential arbitration. *See Pasternak*, 2013 WL 1729564, at *3–4 & n.6.

Finally, we also note that Plaintiffs' assertion that the former traders "do not object to the production" of the confidential arbitration materials demanded "if the Court orders their production" (ECF No. 1166, at 3) does not provide a basis for compelling discovery. Plaintiffs have no authority under the Stipulations and Protective Orders to manifest consent on behalf of the former employees on that (or any other) point. And, moreover, even if the employees in question do consent, UBS does not.

GIBSON DUNN

Hon. Lorna G. Schofield, February 14, 2019, Page 4

Sincerely,

/s/ Eric J. Stock

Eric J. Stock

cc:     All counsel of record (via ECF)