GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Eric J. Stock
Direct: +1 212.351.2301
Fax: +1 212.716.0801
EStock@gibsondunn.com

February 22, 2019

**VIA ECF**

The Honorable Lorna G. Schofield, U.S. District Judge
U.S. District Court, Southern District of New York
500 Pearl Street, New York, New York 10007

Re:  *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13 Civ. 7789

Dear Judge Schofield:

This letter is submitted on behalf of UBS AG and UBS Securities LLC ("UBS") **(1)** to comply with the Court's order to explain UBS's basis for redacting two confidential arbitration reports submitted today to the Court only for *in camera* review, Dkt. 1185 (Feb. 15, 2019), and **(2)** to correct a statement UBS made in its pre-motion response letter, Dkt. 1184 (Feb. 14, 2019) ("UBS Feb. 14 Letter.").

**1.**  The two arbitration reports, which are confidential pursuant to two Protective Orders entered and controlling in private arbitrations between UBS and former employees Roger Boehler and James Witt, should be withheld from production in their entirety consistent with the decisions on which UBS has relied in opposing enforcement of Plaintiffs' subpoenas. *See In re Teligent, Inc.*, 640 F.3d 53, 58 (2d Cir. 2011); *see also Dandong v. Pinnacle Performance Ltd.*, 2012 WL 4793870, at *4–6 (S.D.N.Y. Oct. 9, 2012); *Pasternak v. Dow Kim*, 2013 WL 1729564, at *3 (S.D.N.Y. Apr. 22, 2013); UBS Feb. 14 Letter 2–3.  The Second Circuit has explained that "[c]onfidentiality is an important feature of . . . mediation and other alternative dispute resolution processes," and "[p]romising participants confidentiality in these proceedings promotes the free flow of information that may result in the settlement of a dispute," while "protecting the integrity of alternative dispute resolution generally." *Teligent*, 640 F.3d at 57–58 (internal quotation marks omitted).  In the Protective Orders applicable to each arbitration, UBS and the former employees agreed, and the arbitrator in each proceeding ordered, that the materials disclosed remain confidential, and UBS has a continued interest in the preservation of that confidentiality.

Production of the arbitration reports, or even release of a portion of their contents through quotations or summaries in court filings, would impermissibly disregard that interest. Indeed, in denying access to confidential arbitration materials in *Pasternak*, the court rejected the contention that the "strong presumption that judicial proceedings and documents are a matter of public record . . . involves the issue presented here, which is whether a party is entitled to disclosure of materials that were exchanged in a confidential arbitration proceeding in which [it] was not involved." 2013 WL 1729564, at *4.  In other words, the mere existence of subpoenas from Plaintiffs does not transform the confidential arbitration reports into "judicial . . . documents" to which the "presumption in favor of public access" attaches.  *See id.* (denying litigant's request to compel non-party to produce subpoenaed

**GIBSON DUNN**

The Honorable Lorna G. Schofield, February 22, 2019

transcripts and other documents from confidential arbitration).  Accordingly, if this Court in ruling on any motion, or the parties at any future point, need to refer to the contents of the arbitration reports, UBS retains an interest in the confidential treatment of any such ruling or filings.

In the alternative, if this Court concludes that some portion of the confidential arbitration reports must be produced to the parties in this action (namely, Plaintiffs and Credit Suisse), UBS respectfully requests that the Court allow it to redact from the produced versions all portions highlighted in the versions of the two reports submitted to the Court today for *in camera* review.  The proposed redactions by UBS (marked with yellow highlighting) concern portions of the reports that recite information already made public through other means, *e.g.*, the biography and credentials of the author of the reports, Keith Underwood, information about the FX market and FX trading, and passages from certain Securities and Exchange Commission statements on which Mr. Underwood relied.  UBS recognizes that these redactions are extensive, but is unable to identify a lesser standard for redaction that would continue to protect UBS's interest in maintaining the confidentiality of the content of the confidential employment arbitration proceedings at issue.

**2.**  UBS also seeks to correct one sentence in its February 14 letter.  That sentence stated: "Importantly, the question of whether any 'chats' or trading practices by Boehler and Witt (or others) were harmful to clients was not a topic of Mr. Underwood's employment-related arbitration reports."  UBS Feb. 14 Letter 3.  This statement reflected the fact that the focus of Mr. Underwood's report in each arbitration was on whether the professional conduct of Messrs. Boehler and Witt as employees and/or supervisors at UBS complied with UBS's policies and other applicable standards, not on identifying or assessing any harm to clients potentially resulting from their conduct.  In more thoroughly analyzing the reports to prepare the proposed redactions to comply with this Court's order, however, UBS realized that there are instances where Mr. Underwood's opinions in the reports did touch upon the potential impact on clients of certain business conduct.  UBS accordingly seeks to alert the Court here that its earlier statement needs to be corrected.  Recognizing that these are lengthy documents, for ease of this Court's review, UBS has gone through the reports and marked instances in green highlighting where the reports appear to touch upon the issue of potential harm to clients.  We regret our failure to notice these instances prior to the submission of our letter on February 14.  In the event the Court orders the production of these reports, UBS proposes that the language in green highlighting also be redacted for the same reasons stated above in point 1.[*]

---

[*] The reports both contain language that appears to touch upon the issue of potential harm to clients, but which is either public or drawn from publicly available information. This language is contained in paragraphs 25 and 43 of the employment-related arbitration report for Boehler and paragraphs 15.1, 41, 72, and 73 of the employment-related arbitration report for Witt. To facilitate the Court's review, UBS also has highlighted this language in green, but does not propose that this specific language be redacted in the event the Court orders the production of these reports.

GIBSON DUNN

The Honorable Lorna G. Schofield, February 22, 2019

UBS continues to maintain that the Court should not require the reports to be produced. As noted in our February 14 letter, even if these reports could be used to impeach Mr. Underwood, that would not constitute a "special need" justifying production of the material under the applicable law.  Moreover, most of the references to potential client impact in Mr. Underwood's reports relate to unilateral conduct, not collusive conduct (*e.g.*, unilateral conduct concerning a UBS V10 proprietary structured product, or allegedly improper unilateral sales practices).

Sincerely,

/s/ Eric J. Stock

Eric J. Stock


cc:     All counsel of record (via ECF)