UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE FOREIGN EXCHANGE
BENCHMARK RATES ANTITRUST
LITIGATION

No. 1:13-cv-07789-LGS

**DECLARATION OF SHANNON CASEY IN SUPPORT
OF PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER APPROVING AN INITIAL
DISTRIBUTION OF THE SETTLEMENT FUND**

I, SHANNON CASEY, declare and state as follows:

1. I am a Director of Client Services for Epiq Class Action and Claims Solutions, Inc. ("Epiq"). Garden City Group, LLC, the Court-appointed Claims Administrator in connection with 15 Settlement Agreements approved by the Court in the above-captioned Action, was acquired by Epiq on June 15, 2018, and is now continuing operations as part of Epiq. The following statements are based upon my personal knowledge and experience as well as information provided to me by other experienced Epiq employees working under my supervision, and if called on to do so, I could and would testify competently thereto.

2. Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement with Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Bank of America Stipulation"); Stipulation and Agreement of Settlement with Barclays Bank PLC and Barclays Capital Inc. ("Barclays Stipulation"); Stipulation and Agreement of Settlement with BNP Paribas Group, BNP Paribas North America Inc., BNP Paribas Securities Corp., and BNP Prime Brokerage, Inc. ("BNP Paribas Stipulation"); Stipulation and Agreement of Settlement with

Citigroup Inc., Citibank, N.A., Citicorp, and Citigroup Global Markets Inc. ("Citigroup Stipulation"); Stipulation and Agreement of Settlement with The Goldman Sachs Group, Inc. and Goldman, Sachs & Co. ("Goldman Sachs Stipulation"); Stipulation and Agreement of Settlement with HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc. ("HSBC Stipulation"); Stipulation and Amended Agreement of Settlement with JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. ("JPMorgan Amended Stipulation"); Stipulation and Agreement of Settlement with The Royal Bank of Scotland Group PLC, The Royal Bank of Scotland PLC, and RBS Securities Inc. ("RBS Stipulation"); Stipulation and Amended Agreement of Settlement with UBS AG, UBS Group AG, and UBS Securities LLC ("UBS Amended Stipulation"); Stipulation and Agreement of Settlement with The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU Stipulation"); Stipulation and Agreement of Settlement with Morgan Stanley, Morgan Stanley & Co., LLC, and Morgan Stanley & Co. International plc ("Morgan Stanley Stipulation"); Stipulation and Agreement of Settlement with RBC Capital Markets, LLC ("RBC Stipulation"); Stipulation and Agreement of Settlement with Société Générale ("Soc Gen Stipulation"); Stipulation and Agreement of Settlement with Standard Chartered Bank ("Standard Chartered Stipulation"); and Stipulation and Agreement of Settlement with Deutsche Bank AG ("Deutsche Bank Stipulation").  ECF Nos. 481 (Ex. 1-9), 822 (Ex. 1-5), 877 (Ex. 1).  The foregoing Stipulations are collectively referred to as the "Settlements" or the "Settlement Agreements," and the foregoing defendants are collectively referred to as the "Settling Defendants."

## I.     BACKGROUND

3.     As Claims Administrator, Epiq has implemented the terms of the Settlements by, among other things: (i) mailing the Mail Notice of Class Action Settlement ("Notice") and the proof of claim and release form ("Claim Form") (collectively with the Notice, the "Notice Packet")

to potential Settlement Class Members; (ii) creating and maintaining a toll-free hotline, email address, and P.O. Box to receive Settlement Class Members' questions and requests; (iii) creating and maintaining a case-specific Settlement Website and posting case-specific documents on said website, and updating each accordingly during the course of the administration; (iv) causing the Publication Notice of Class Action Settlement to be published in *The Wall Street Journal*, *Financial Times*, *FX Week*, *Investor's Business Daily*, *The International New York Times*, *The Guardian UK*, *The Globe and Mail*, and *La Presse*, as well as through a press release over *PR Newswire's Premier Global* service; (v) providing, upon request, additional copies of the Notice Packet to brokers, nominees, and Settlement Class Members, including translations of the Notice Packet; (vi) receiving objections and requests for exclusion; and (vii) receiving and processing Claim Forms.

      4.      For purposes of foreign data privacy compliance, certain Settling Defendants hired Rust Consulting, Inc. ("Rust") to distribute Notice Packets to certain potential Settlement Class Members, primarily those domiciled outside of the United States.  Further, certain Settling Defendants themselves distributed Notice Packets.

      5.      All Claimants submitted their Claim Forms to Epiq, either electronically via the claims portal page on the Settlement Website or by mail to our dedicated P.O. Box for this administration. Those Claimants for whom transaction data was available from Settling Defendants were able to submit their claims under either "Option 1" or "Option 2."  As described on the Notice, Claim Form, and Settlement Website, under Option 1 (the Estimated Claim Option), Claimant payments are calculated using transaction data provided by Settling Defendants.  Under Option 2 (the Documented Claim Option), Claimant payments are calculated using transaction data provided by the Claimant filing the claim.

6.  Once the calculations are complete, Epiq notifies the Claimant by email that a Claim Assessment Notification is available for review via the claims portal page of the Settlement Website.  A Claim Assessment Notification provides, among other things, the transaction volume and payment estimates associated with a particular claim.

7.  In addition, the Claim Assessment Notification informs Claimants who submitted their Claim Forms under Option 1 that:  (i) they are able to request the transaction data provided by Settling Defendants upon which their claim was calculated, and (ii) they have the ability to convert their claim to Option 2 by providing their own transaction records within 30 days.

8.  The Option 2 Claim Assessment Notification likewise informs Claimants that they are able to request the transaction data upon which their claim was calculated.  These files consist of the transaction data the Claimant submitted with additional columns showing, among other things, the "Settlement Transaction Values" and "Eligible Participation Amounts" calculated pursuant to the Plan of Distribution for each submitted trade.  In some cases, Option 1 calculations are greater than Option 2, in which case the Claimant would be provided with files consisting of the data provided by Settling Defendants.  Further, Option 2 Claimants are informed that if they received transaction volume and payment estimates under both Option 1 and Option 2, they will automatically receive the higher amount without any further action required.

9.  In accordance with the terms of the Settlement Agreements and the Court-approved Plan of Distribution (ECF No. 1095), Epiq has received and completed the processing of the Claim Forms listed in Exhibits 1, 2, and 3 attached hereto, and respectfully submits its administrative determinations accepting these Claim Forms.

## II. STATISTICS

### A. Initial Distribution Claims

10. Epiq has processed the 26,937 Claim Forms covered by this Declaration and administratively accepts these claims ("Initial Distribution Claims"). The Initial Distribution Claims represent 50.3 percent of the total number of Estimated Authorized Claims – a metric that is defined and further described in §II.B., *infra*. Claims falling within the Unauthorized Claim categories described in §II.B., *infra*, are not included in our 50.3 percentage calculation.

11. Of the Initial Distribution Claims, 23,019 were submitted under Option 1 and 3,918 were submitted under Option 2. These Claimants did not dispute any aspect of their Claim Assessment Notifications (and for Option 1, did not request to re-submit their claims under Option 2) within the 30-day response time period.

12. Of the Option 1 Initial Distribution Claims, 9,300 fall within the *de minimis* payment category and will receive $15 and 6,519 fall within the automatic payment category and will receive $150. There are 7,200 Option 1 Initial Distribution Claims falling within the pro rata category.

13. Of the Option 2 Initial Distribution Claims, 2,309 fall within the *de minimis* payment category and will receive $15 and 1,609 fall within the automatic payment category and will receive $150.

14. In total, the Initial Distribution Claims will be paid $54,006,248.60, if the distribution is approved.

### B. Estimated Authorized Claims

15. To date, a total of 88,261 Claim Forms[1] have been submitted. Of the total submitted Claim Forms, 65,584 were postmarked or received by the May 16, 2018 claims-filing deadline ("Timely Claims"). The remaining 22,677 Claim Forms were submitted after May 16, 2018 ("Late Claims"). Class Counsel had pre-authorized late filings for certain of the Late Claims and has exercised their authority pursuant to the Settlement Agreements to accept the remaining Late Claims because no delay resulted from their acceptance. This Declaration does not distinguish between Timely Claims and Late Claims because Class Counsel has directed Epiq to treat any Late Claims included in the Initial Distribution Claims as Timely Claims.

16. Of the total submitted Claim Forms, Epiq estimates that there will be approximately 53,576 Authorized Claims ("Estimated Authorized Claims") that may receive a payment in the initial distribution or a future distribution based on their current status. The following paragraphs 17 to 23 describe categories of claims that have been submitted but have not yet been accepted because of their current status ("Unauthorized Claims").

17. Certain Claimants have contacted Epiq to withdraw their Claim Forms ("Withdrawn Claims"). To date, there are 3,913 Withdrawn Claims that will not receive a distribution from the Settlement Fund.

18. In addition, 12,130 Claim Forms have been identified as deficient, and the filers of these claims have been provided deficiency notices but have so far failed to cure the deficiency

---

[1] Claimants that received multiple Claim Forms (as a result of, for example, being identified by multiple Settling Defendants as potential Settlement Class Members) could request consolidation of their multiple claims into one master claim for purposes of submission. The statistics presented in this Declaration count a master claim and the sub-claims consolidated under it as one Claim Form.

condition in the 30-day response time period ("Deficient Claims"). Claim Forms have been determined to be Deficient Claims for the following reasons:

    a. *Claims that were not eligible for Option 1 but were submitted under Option 1*. For these claims, Epiq does not have transaction data provided by Settling Defendants to calculate a payment under Option 1. To cure this deficiency, Claimants must provide their own transaction data under Option 2. Epiq has given 6,110 Deficient Claims notice of this deficiency but the filers have not cured in the time allotted.

    b. *Claims filed under Option 2 without accompanying transaction data*. For these claims, Epiq does not have transaction data provided by the Claimant (or Settling Defendants) to calculate a payment under Option 2 (or Option 1).[2] To cure this deficiency, Claimants must provide their own transaction data. Epiq has given 1,526 Deficient Claims notice of this deficiency but the filers have not cured in the time allotted.

    c. *Failure to provide a country of domicile on the Claim Form*. Epiq cannot process these claims until a country of domicile is provided, as the Plan of Distribution distinguishes between the eligibility of U.S. domiciled and non-U.S. domiciled Claimants due to the definitions of the Settlement Classes. To cure this deficiency, Claimants must provide their country of domicile. Epiq has given 595 Deficient Claims notice of this deficiency but the filers have not cured in the time allotted.

    d. *Missing authorization documents for person signing on behalf of the Claimant and also require Settling Defendants confirm name provided.* Epiq cannot process these Claim Forms until the Claimant provides authorization documents demonstrating that the person filing the claim is authorized to do so. Once authorization is shown, for the claim to be processed, it must then be verified for compliance with foreign data privacy law by Rust and/or Settling Defendants. Epiq has given 1,398 Deficient Claims notice of this deficiency but the filers have not cured in the time allotted.

    e. *Missing authorization documents for person signing on behalf of the Claimant.* Epiq cannot process these Claim Forms until the Claimant provides authorization documents demonstrating the person filing the claim is authorized to do so.[3] Epiq has given 2,501 Deficient Claims notice of this deficiency but the filers have not cured in the time allotted.

---

[2] Epiq is processing Option 2 claims that did not include Claimant-provided transaction data, but have Settling Defendant-provided data available, under Option 1.

[3] Claims in this category do not require further foreign data privacy verification by Rust and/or Settling Defendants.

19.  The above deficiency categories are listed as a hierarchy.  Where a Claim Form has been determined to have more than one of the listed deficiencies, that Claim Form is counted only once, within the deficiency category that falls highest within the hierarchy.

20.  In addition, Epiq has received Claim Forms where multiple Claimants have submitted claims with the same claim number ("Conflict Claims").  Epiq cannot proceed to accept these claims until the rightful owner of the Claim Form is determined.  Epiq sent notices of conflict to the filers of these claims, but 315 Conflict Claims remain unresolved.

21.  Exhibit 4 lists the categories and numbers of Deficient Claims and Conflict Claims and shows how long such claims have been pending as deficient.  Exhibit 4 also notes where Epiq has sent reminder notices alerting the filers that they have not resolved their deficiencies.  Most of these claims have been pending as deficient for 120 to 160 days, and all of them have been pending as deficient for longer than the allotted 30 days to cure.

22.  In addition, there are 10,090 Option 1 claims and 6,633 Option 2 claims that have been determined to have no eligible transactions and will therefore not receive a payment.

23.  Finally, there are 1,604 claims that Epiq cannot process because they have not yet passed foreign data privacy compliance being performed by Rust and certain Settling Defendants.  Most of these claims have been sent deficiency notices and a small number of these claims remain under review.

24.  To the extent that Unauthorized Claims remain unresolved, such claims would not receive a distribution from the Settlement Fund.  While Epiq will continue to work to try to resolve such claims, as appropriate, based on our experience, we expect that only a small percentage of such claims are likely be resolved under the circumstances.

### III.   PROCEDURES FOLLOWED IN PROCESSING PROOFS OF CLAIM

25.   In preparation for receiving and processing Claim Forms, Epiq: (i) conferred with Class Counsel to define the project guidelines for processing Claim Forms; (ii) identified the unique aspects of this claims administration; (iii) created a unique database to store Claim Form details, images of Claim Forms, and supporting documentation ("Claims Database"); (iv) trained staff in the specifics of the project so that Claim Forms would be properly processed; (v) formulated a process for ensuring that telephone and email inquiries would be handled properly; and (vi) developed various computer programs and screens for entry of Claimants' identifying information from the submission of Claim Forms.

#### A.   Processing Paper Claims

26.   Of the Initial Distribution Claims, a total of 1,761 were filed by mail ("Paper Claims").

27.   Once received, Paper Claims were opened and prepared for scanning.  This process included unfolding documents, removing staples, copying documents of non-conforming sizes, sorting documents, and, where Claimant identification information was not provided on the Claim Form, copying and sorting the envelope with the return address.  Once prepared, Paper Claims were scanned into the Claims Database together with all submitted documentation.  Subsequently, each Claim Form was assigned a unique claim number if it did not already have a pre-assigned claim number.  Once scanned, the information from each Claim Form, including the name, address, and last four digits of the Taxpayer ID or Social Security Number, and any other documentation or data submitted by the Claimant, was entered into a database developed by Epiq to process Claim Forms.

28.   In order to process the Claim Forms, Epiq utilized internal codes to identify and classify Claim Forms and any deficiencies or ineligible conditions that existed within those Claim

Forms. The appropriate codes were assigned to the Claim Forms as they were processed. For example, where a Claim Form was submitted twice, a code was applied to denote that it was a duplicate. These codes indicated to Epiq that the Claimant was not eligible to receive any payment with respect to that Claim Form unless the deficiency was cured.

### B.  Processing Online Claim

29.  Of the Initial Distribution Claims, 25,176 were filed electronically via the Settlement Website.

30.  An online claims-filing system was accessible through the Settlement Website home page. Claimants were provided with step-by-step directions for providing their contact information and other required information. Claimants were also able to upload their supporting documentation and data through this online system or via email to Epiq. If, however, the Claimant did not have the means to upload or email their supporting documentation and data (*e.g.*, the claimant did not store the documents on his or her computer or did not have a scanner to scan documents), the Claimant was instructed to mail them to Epiq's dedicated P.O. Box for this Action, along with the printed online filing confirmation document that was generated at the end of the filing process. The claims portal remains available for Claimants to receive notifications about their claims and to check their status.

31.  Once a Claimant's Online Claim was submitted, Epiq's processors reviewed it. After the documents to support the Online Claim were uploaded, received by email, or received in the mail, Epiq's processors reviewed the documents and compared them to the information filed by the Claimant, to ensure the information was entered correctly. As with Paper Claims, Online Claims were reviewed and the applicable codes were applied in order to identify and classify types of claims, as well as any deficiency or ineligibility conditions that existed within those Claim Forms.

## IV. EXCLUDED PERSONS

32. Epiq reviewed all Initial Distribution Claims to ensure that they were not submitted by, or on behalf of, "Excluded Persons," to the extent the identities of such persons or entities were known to Epiq through the Settlement Agreements, the Notice, and through Claimants' certifications on the Claim Forms. Epiq also reviewed all Claim Forms against the list of persons and/or entities who submitted valid requests for exclusion from the Settlement Classes as set forth in Exhibit 1 to each of the orders granting final approval to the Settlement Agreements (ECF Nos. 1096-1110). No Claim Forms submitted on behalf of Excluded Persons were identified.

## V. QUALITY ASSURANCE, FRAUD PREVENTION, AND REGULATORY COMPLIANCE

33. An integral part of all of Epiq's claims administration projects is our Quality Assurance review. Epiq's Quality Assurance personnel have worked throughout this administration and continue to do so, to ensure that Claim Forms are being processed properly, deficiency and ineligibility message codes are being properly applied to Claim Forms, deficiency letters are being sent to the appropriate Claimants, and Epiq's computer programs are operating properly.

34. Specifically, throughout this administration, Epiq's Quality Assurance personnel have: (i) confirmed that Claim Forms designated valid had no messages denoting ineligibility; (ii) confirmed that Claim Forms designated ineligible had messages denoting ineligibility; (iii) confirmed that all Claim Forms requiring "deficiency" letters were sent such letters; and (iv) performed a sample review of deficient Claim Forms.

35. In support of the work described above, Epiq personnel designed, and, after testing by our Quality Assurance personnel, implemented the following controls and programs for this administration: (i) data entry screens that store Claim Form information (including all transactional

11

data included with each Claim Form), and attach codes and, where necessary, text to denote conditions unique to the Claim Form; (ii) programs to load and analyze transactional data submitted electronically; and (iii) programs to generate various reports throughout and at the conclusion of the administration.

36. Epiq further reviewed and compared the entire Claims Database against a "watch list" of known potential fraudulent filers that Epiq developed throughout its 30 years of experience as a claims administrator. Epiq works closely with the FBI to update that watch list with the latest information available.

37. In accordance with the regulations and guidelines of the U.S. Treasury Department Office of Foreign Assets Control ("OFAC"), Epiq will perform searches on payments to payees whose names may appear on the federal government's restricted persons list or who reside in countries to which payments are prohibited. Epiq regularly monitors changes to OFAC regulations and guidelines.

**VI.   DISTRIBUTION PLAN FOR INITIAL DISTRIBUTION CLAIMS**

38. Should the Court concur with Epiq's administrative determinations concerning the Initial Distribution Claims, Epiq recommends the following distribution plan:

  a. The Authorized Claimants, identified in Exhibit 1 attached to this Declaration, whose Claim Forms fall within the *de minimis* payment category, will be paid $15.

  b. The Authorized Claimants, identified in Exhibit 2 attached to this Declaration, whose Claim Forms fall within the automatic payment category, will be paid $150.

  c. The Authorized Claimants, identified in Exhibit 3 attached to this Declaration, whose Claim Forms fall within the pro rata payment category, will be paid

their respective pro rata shares subject to a 35 percent holdback, which will be held in reserve (the "Reserve") to address any fluctuations in the participation rate by volume and amount of the Net Settlement Fund. Funds remaining in the Reserve after final determinations of these amounts will be distributed pro rata to Authorized Claimants in subsequent distributions.

d. The Authorized Claimants, identified in Exhibits 2 and 3 attached to this Declaration, will have the ability to receive their payment via wire transfer or check. Because there is usually some percentage of wire payments that are returned resulting in a fee for returned/rejected wires, Authorized Claimants identified in Exhibit 1 as entitled to a single $15 payment (*i.e.*, not part of a bulk submission or multiple payments going to a single filer) will be excluded from the wire payment population and default to a check. For those Authorized Claimants who meet the criteria to have the option to receive a wire transfer and have elected to have their payment sent via wire transfer and subsequently the wire is rejected or returned, the payment will be reissued in the form of a check.

e. In order to encourage Authorized Claimants to promptly deposit their distribution checks, and to avoid or reduce future expenses relating to unpaid distribution checks, all distribution checks will bear a notation "CASH PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]."

f. In an effort to have as many Authorized Claimants as possible cash their checks, Epiq will perform extensive follow-up with those Authorized Claimants whose

checks are initially uncashed, either because they are returned to Epiq as undeliverable or because they simply did not cash the check after a period of time elapses.  For Authorized Claimants whose checks are returned as undeliverable, Epiq will endeavor to locate new addresses by running the undeliverable addresses through the USPS National Change of Address database and, where appropriate, via Internet search techniques and by calling the Authorized Claimants.  Where a new address is located, Epiq will update the database accordingly and re-issue a distribution check to the Authorized Claimant at the new address.  For any Authorized Claimants whose distributions are not returned, but who simply do not cash their checks, Epiq will use a mix of automated and personalized telephone calls to urge such Authorized Claimants to cash their distribution checks.  Authorized Claimants will be informed that, if they do not cash their checks within 90 days from the issue date, their payment check will lapse, their entitlement to recovery is subject to being irrevocably forfeited and the funds re-allocated to other Authorized Claimants in a subsequent distribution.

g. In the event an Authorized Claimant loses or damages his, her, or its check, or otherwise requires a new check, Epiq will issue replacements.  Check re-issues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the first check, where appropriate.  If a check is deemed lost, Epiq will void the initial payment check prior to re-issuing a payment.

h.  In addition, and to maximize our efforts to have all checks cashed, Epiq has trained the staff at our Call Center to handle the various issues that likely will arise during the Initial Distribution.  Typically, the Call Center receives calls with respect to the calculation of payments and the timing of any future distributions.  We expect a high call volume during the weeks immediately following dissemination of the payments.

i.  Authorized Claimants who do not negotiate their funds within the time allotted will be presumed to forfeit any recovery for their respective Claim Forms from the Settlement Fund, unless otherwise determined by Class Counsel.  Any forfeited recoveries will become available for re-distribution as part of subsequent distributions.

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed in Lake Success, New York on March 1, 2019.

_____
Shannon Casey