# CAHILL GORDON & REINDEL LLP
### EIGHTY PINE STREET
### NEW YORK, NY 10005-1702

| | | | | |
|---|---|---|---|---|
| ROBERT A. ALESSI | CHARLES A. GILMAN | TELEPHONE: (212) 701-3000 | GEOFFREY E. LIEBMANN | MICHAEL A. SHERMAN |
| HELENE R. BANKS | ARIEL GOLDMAN | WWW.CAHILL.COM | BRIAN T. MARKLEY | DARREN SILVER |
| ANIRUDH BANSAL | JASON M. HALL | | MEGHAN N. McDERMOTT | JOSIAH M. SLOTNICK |
| DAVID L. BARASH | WILLIAM M. HARTNETT | | WILLIAM J. MILLER | RICHARD A. STIEGLITZ JR. |
| LANDIS C. BEST | NOLA B. HELLER | 1990 K STREET, N.W. | NOAH B. NEWITZ | ROSS E. STURMAN |
| BRADLEY J. BONDI | CRAIG M. HOROWITZ | WASHINGTON, DC 20006-1181 | MICHAEL J. OHLER | SUSANNA M. SUH |
| BROCKTON B. BOSSON | DOUGLAS S. HOROWITZ | (202) 862-8900 | DAVID R. OWEN | ANTHONY K. TAMA |
| JAMES J. CLARK | TIMOTHY B. HOWELL | | JOHN PAPACHRISTOS | JONATHAN D. THIER |
| CHRISTOPHER W. CLEMENT | DAVID G. JANUSZEWSKI | | LUIS R. PENALVER | SEAN P. TONOLLI* |
| AYANO K. CREED | ELAI KATZ | CAHILL GORDON & REINDEL (UK) LLP | KIMBERLY PETILLO-DÉCOSSARD | JOHN A. TRIPODORO |
| SEAN M. DAVIS | BRIAN S. KELLEHER | 24 MONUMENT STREET | SHEILA C. RAMESH | GLENN J. WALDRIP, JR. |
| STUART G. DOWNING | RICHARD KELLY | LONDON EC3R 8AJ | MICHAEL W. REDDY | HERBERT S. WASHER |
| ADAM M. DWORKIN | CHÉRIE R. KISER* | +44 (0)20 7920 9800 | OLEG REZZY | MICHAEL B. WEISS |
| ANASTASIA EFIMOVA | JOEL KURTZBERG | | JAMES ROBINSON | DAVID WISHENGRAD |
| JENNIFER B. EZRING | TED B. LACEY | | THORN ROSENTHAL | COREY WRIGHT |
| HELENA S. FRANCESCHI | MARC R. LASHBROOK | WRITER'S DIRECT NUMBER | TAMMY L. ROY | JOSHUA M. ZELIG |
| JOAN MURTAGH FRANKEL | ALIZA R. LEVINE | (212) 701-3435 | JONATHAN A. SCHAFFZIN | DANIEL J. ZUBKOFF |
| JONATHAN J. FRANKEL | JOEL H. LEVITIN | | | |

*ADMITTED IN DC ONLY

March 22, 2019

Re: *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 1:13-cv-07789 (LGS)

Dear Judge Schofield:

We write on behalf of Defendants Credit Suisse AG, Credit Suisse Group AG, and Credit Suisse Securities (USA) LLC (together, "CS") in opposition to Plaintiffs' pre-motion letter dated March 15, 2019 (the "March 15 Letter") (Dkt. 1245). Plaintiffs belatedly seek leave to file another 15 pages of briefing (effectively a sur-sur-reply) in support of their class certification motion and in opposition to CS's *Daubert* motion on the basis of two expert reports previously filed by one of CS's experts in an unrelated matter. Plaintiffs' request should be denied.

CS's trading expert, Underwood, was separately retained by UBS in connection with the preparation of expert reports in two employment arbitrations (the "UBS reports"), and this Court recently ordered the production of those reports. (Dkt. 1190). Having now reviewed them, Plaintiffs claim that they provide a basis for re-opening the briefing process on all issues related to the pending class certification and *Daubert* motions. This is a transparent gambit, however, as ████████████████████████████████████████████████████████████████, and they in no way impact, much less correct, any of the fatal defects in Plaintiffs' class certification motion.

As an initial matter, Plaintiffs' request for a sur-sur-reply brief comes too late. Plaintiffs contend that they "did not have access to" the UBS reports until recently (March 15 Letter at 1), but in fact Plaintiffs learned of one of reports on October 25, 2018, when CS served Underwood's report in this case, which explicitly listed it.[1] Yet Plaintiffs never sought that

---

[1] Underwood's December 10, 2018 Witt Report did not yet exist so was obviously not available at the time of his October 25, 2018 report in this action. Nevertheless, Underwood's opinions in that report ████████ ████████████████ If Plaintiffs had timely sought the Boehler Report they would have been able to make the arguments they now propose to include in a sur-sur-reply in the regular course of class certification briefing.

CAHILL GORDON & REINDEL LLP

- 2 -

report from UBS until months later, and did not move to compel production until February 4, 2019, *after* they had filed their class certification reply and *Daubert* opposition briefs.[2]

Even if Plaintiffs had moved promptly to obtain the UBS reports, they have no bearing on the motions before this Court and do not justify further briefing. Notably, ████ ███████████████████████████████ in the report Mr. Underwood prepared in this case *or* in the report prepared in this case by Plaintiffs' own trading expert, Mr. Poynder. In fact, ██████████████████ anywhere in any of the papers filed for or against the class certification or *Daubert* motions in this case. Given that both sides' experts agree that "context is important" in evaluating information sharing in chats (*see* Poynder Tr. 124:11-19), ████ ████████████████ simply have no bearing on conclusions that might be drawn about chats actually at issue in this case.

Moreover, neither the UBS reports nor Plaintiffs' proposed sur-sur-reply relate to the most critical defects in Plaintiffs' proposed OTC and Exchange classes. The UBS reports do nothing to obviate the need for the numerous individualized inquiries necessary to determine class membership (Opp., Dkt. 1203, at 21-25; Sur-reply, Dkt. 1234, at 2-5, 11-13); they do nothing to resolve the numerous irresolvable class conflicts (Opp. at 12-21; Sur-reply at 11-13); they do nothing to bridge the wide gap in Plaintiffs' theory between the alleged conduct and any classwide injury (Opp. at 26-27; Sur-reply at 5-8; Daubert Br., Dkt. 1220 at 32-37; Daubert Reply, Dkt. 1235 at 14-17); and they do nothing to remedy the innumerable deficiencies in Plaintiffs' injury and damages model, as discussed by Defendants' experts Dr. Kleidon and Prof. Ordover (neither of whom rely upon Underwood's conclusions) (Opp. at 25-37; Sur-reply at 8-11, 13; Daubert Br. at 37-46; Daubert Reply at 18-25).

Indeed, the UBS reports do not undermine even the more specific conclusions in Underwood's report in this case. The UBS reports ████████████████████████████ ████████████████████████ Here, Underwood's principal opinions do not rest on such issues.[3] Rather, his report focuses on the unreliability of Poynder's methodology, the absence of "pervasive" misconduct, and the lack of evidence of a single global conspiracy in the FX markets writ large. █████████████████████████████ ██████████████████ – simply do not bear upon these topics.

---

[2] Because Plaintiffs seek to raise new arguments in their sur-sur-reply, if Plaintiffs' request is granted then CS should be given an opportunity to respond. *See Kowalski v. YellowPages.com*, 2012 WL 1097350, at *10 (S.D.N.Y. Mar. 31, 2012) ("Where new evidence is presented . . . the district court should permit the nonmoving part to respond." (citation omitted)); *see also Kapti v. Kelly*, 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008) (citation omitted) ("Allowing parties to submit sur-replies . . . has the potential for placing a court 'in the position of refereeing an endless volley of briefs.'" (citation omitted)).

[3] CS has never disputed that some traders at some banks may have violated bank policies in connection with particular chat conversations. Indeed, as Plaintiffs repeatedly point out, UBS entered into a guilty plea with the U.S. Department of Justice. That fact says nothing about whether this case can proceed as a class action. As Plaintiffs' counsel concedes, "none of the government pleas or orders is as broad as the case [Plaintiffs are] prosecuting." (May 23, 2019 Hearing Tr. 29:2-4 (Dkt. 1066).)

CAHILL GORDON & REINDEL LLP

- 3 -

In any event, none of the alleged "inconsistencies" Plaintiffs point to between the UBS reports and Underwood's report in this case are inconsistencies at all:

- There is nothing inconsistent about the fact that Underwood ▓▓▓▓▓▓▓▓▓▓ (*see* March 15 Letter at 2), while concluding that much of what Poynder coded as sensitive competitive information (or "SCI") is legitimate "market color" (Daubert Br. at 20 n.18). The simple and undisputed fact is that ▓▓▓▓▓▓▓▓▓▓ (*Compare* ▓▓▓▓▓▓ *with* Underwood Report Appx. D ¶ 15 ("Providing market color . . . is appropriate . . . so long as the information is sufficiently aggregated and anonymized.").)

- Underwood concluded in this case that Poynder's proposed methodology was both irrelevant and unreliable because the methodology is riddled with errors and because Poynder flagged numerous chats that do not support Plaintiffs' alleged global conspiracy, including chats where traders were seeking to trade with one another or only sharing market color. (Underwood Report ¶¶ 66-82.) ▓▓▓▓▓▓ says nothing at all about whether Poynder can reliably identify so-called "SCI."

- ▓▓▓▓▓▓▓▓▓▓ (March 15 Letter at 2-3) says nothing about whether sharing of so-called SCI was "pervasive," as Plaintiffs' experts Poynder and Singer purport to conclude. Plaintiffs allege a conspiracy to manipulate prices in 52 different currency pairs, in the 24-hour-a-day global FX markets, averaging 270,830 spot and forward transactions per day, with $5.3 trillion dollars per day changing hands. (*See* Daubert Br. at 23-25; Daubert Reply at 10.) ▓▓▓▓▓▓

- Underwood's conclusions ▓▓▓▓▓▓▓▓▓▓ If anything, the fact that Underwood reached such conclusions ▓▓▓▓▓▓ only reinforces CS's central point that chat-by-chat, trade-by-trade analysis is necessary in this case, and the broad generalizations of misconduct and market-wide impact, upon which Plaintiffs seek to premise class certification, are unavailable.

For the foregoing reasons, Plaintiffs' proposed sur-sur-reply brief is untimely and futile, and their request should be denied.

CAHILL GORDON & REINDEL LLP

- 4 -

Respectfully submitted,

*Herbert S. Washer* /SB

Herbert S. Washer

The Honorable Lorna G. Schofield
United States District Court
40 Foley Square
New York, New York 10007

<u>BY ECF</u>

cc:   All Counsel (via ECF)