UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF A HAGUE CONVENTION REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE TO TAKE TESTIMONY OVERSEAS**

Pursuant to Federal Rule of Civil Procedure 28(b)(2) and 28 U.S.C. §1781(b)(2), Plaintiffs respectfully move the Court to issue a Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters ("Letter of Request") to take testimony overseas of Mr. Daniel Wise pursuant to the Federal Rules of Civil Procedure. Mr. Wise resides in the U.K. and is a former head of the spot foreign exchange ("FX") trading desks in London for Defendants Barclays[1] and Credit Suisse.[2]

During the class period, Mr. Wise participated in numerous multibank chat rooms with FX traders from competitor banks. Mr. Wise's knowledge of information discussed in those chat rooms, how the information was then used by FX traders, and whether those discussions impacted FX prices are all highly relevant to Plaintiffs' claims and his testimony is necessary for a fair determination of these proceedings. Because Mr. Wise resides in the U.K., and is outside of the

---

[1]  "Barclays" refers to Barclays Bank PLC and Barclays Capital Inc.

[2]  "Credit Suisse" refers to Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse Securities (USA) LLC.

Court's subpoena power, only by a Letter of Request will Plaintiffs be able to secure Mr. Wise's testimony for use at trial. For those reasons, as more fully explained below, the Court should issue the Letter of Request, which is attached as Exhibit A to the Declaration of Christopher M. Burke in Support of Plaintiffs' Motion for Issuance of a Hague Convention Request for International Assistance to Take Testimony Overseas ("Burke Decl.").

## ARGUMENT

**I.  COURTS ROUTINELY ISSUE REQUESTS TO PERMIT PARTIES TO TAKE EVIDENCE IN FOREIGN COUNTRIES**

Rule 28(b)(2) of the Federal Rules of Civil Procedure and 28 U.S.C. §1781(b)(2) grant the Court the authority to issue a letter of request seeking the assistance of a foreign court in securing the testimony of a non-party witness located overseas. *See Elliot Assocs., L.P. v. Republic of Peru*, No. 96 Civ. 7917 (RWS), 1997 WL 436493, at *2 (S.D.N.Y. Aug. 1, 1997) ("Application for a letter of request to take testimony pursuant to the Hague Convention is an appropriate mechanism for obtaining discovery of a non-party witness in a foreign country."). "Courts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *See Netherby Ltd. v. Jones Apparel Group, Inc.*, No. Civ. 04-7028 (GEL), 2005 WL 1214345, at *1-*2 (S.D.N.Y. May 18, 2005) (ordering issuance of letter rogatory to Canada to permit production of documents and the taking of depositions); *Elliot Assoc.*, 1997 WL 436493, at *2 (granting plaintiff's request for letters rogatory to take testimony in the United Kingdom).

**II.  THE EVIDENCE SOUGHT BY PLAINTIFFS IS RELEVANT TO THEIR CLAIMS**

In Section 10 of the Letter of Request, Plaintiffs identify 10 core topics for Mr. Wise's deposition. The testimony of Mr. Wise concerning each of these topics is relevant to Plaintiffs' claims that Defendants conspired to fix FX prices.

Mr. Wise was the European Head of Spot Trading for Barclays from the beginning of the class period until June 2011, and then Global Head of FX Spot Trading for Credit Suisse from August 2011 until the end of the class period.  (Burke Decl., ¶23.)  Mr. Wise's background and employment at Barclays and Credit Suisse, as well as his knowledge of the FX market, are relevant to establishing the foundation for Mr. Wise to testify about additional topics concerning the alleged conspiracy.  (*See* Burke Decl., Ex. A, Sec. 10, Topics A-B.)  Additionally, Mr. Wise's testimony is relevant to Plaintiffs' allegations that FX traders had strong social and professional ties with traders at co-conspirator banks, which created incentives and opportunities for collusion.  (*See id*., Ex. A-1, (ECF No. 619), ¶118.)  Therefore, Mr. Wise's background and actions as an FX trader and supervisor at Defendants Barclays and Credit Suisse during the Class Period are relevant to Plaintiffs' claims.

Mr. Wise's testimony regarding his communications with FX traders from other Defendants from 2007 through 2013, including the use of multibank chat rooms and phone calls, is relevant to prove the alleged conspiracy to fix FX prices.  (*See* Burke Decl., Ex. A, Sec. 10, Topics C-E.)  Plaintiffs allege that Defendants communicated directly with each other through the daily use of multiple chat rooms to share market-sensitive information, including spreads, with competitors.  The Court ruled that these chats are direct evidence akin to the "recorded phone call in which two competitors agreed to fix prices at a certain level."  (ECF No. 242 at 12.)  Incriminating chat room names support the inference they were used for anticompetitive purposes.  (*Id*. at 13.)

Beginning as early as 2007 when he was employed at Barclays and continuing through his employment with Credit Suisse, Mr. Wise participated in numerous multibank chat rooms with FX traders from other Defendant banks, including without limitation, ▮▮▮▮▮▮▮▮▮

3

███████████████████████████████████████████

██████████████████████████████████████████[3] (Burke Decl.,

¶24.) In these chat rooms, Mr. Wise shared confidential information, agreed upon spreads to charge customers, discussed FX prices, disclosed positions of contingent orders, shared open positions, and discussed coordinating their positions around benchmark fixes with FX traders from other Defendants. *Id*. Additionally, Mr. Wise had supervisory responsibilities over FX traders on the respective desks of Barclays and Credit Suisse, which makes his knowledge of other traders' use of chat rooms relevant to the instant case. *Id*.

Plaintiffs have attached representative chat transcripts in which Mr. Wise participated as Exhibits to the Burke Declaration. (*See* Burke Decl., Exs. B-U.) For example, in one chat transcript, ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ (Burke Decl., ¶5.)

In another instance, ████████████████████████████████

████████████████████████████████████████

██████████████████████████████████ (Burke Decl., ¶3.)

Toward the end of the class period, ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████ (Burke Decl., ¶7.)

Mr. Wise's testimony regarding his chat room communications is relevant to demonstrate his knowledge of the conspiracy, including the meanings of his communications, his understanding

---

[3] Plaintiffs have deposed or will depose the majority of these FX traders.

of what FX traders communicated to each other, and how he used that information to trade FX on behalf of Barclays and Credit Suisse. Mr. Wise's testimony also is necessary to explain at trial communications through other media for which written evidence may not exist, such as text messages and phone calls. Additionally, due to his position as a desk head at both Barclays and Credit Suisse, Mr. Wise's testimony is relevant to explain subordinate traders' conduct during the class period and/or demonstrate his knowledge or lack of knowledge of their conduct.

Mr. Wise's testimony regarding his knowledge of Barclays' and Credit Suisse's policies regarding electronic communications, sharing information, and antitrust compliance is relevant to Plaintiffs' claims. (*See* Burke Decl., Ex. A, Sec. 10, Topics F and G.) Plaintiffs intend to prove either that Defendants lacked compliance measures to prevent the conspiracy and/or knew of violations of compliance policies and failed to prevent them. Accordingly, Mr. Wise's testimony concerning his knowledge of FX traders complying (or not complying) with Barclays' or Credit Suisse's internal policies is relevant to establishing the existence of a conspiracy. This is particularly true with regard to someone like Mr. Wise who had supervisory responsibilities over other FX traders on his spot desk.

Mr. Wise's testimony regarding his own, Barclays', and/or Credit Suisse's profit and loss in FX is relevant to show a motive to conspire at both the corporate and the individual trader level. (*See* Burke Decl., Ex. A, Sec. 10, Topics H and I.) Testimony regarding Barclays' and/or Credit Suisse's profit and loss in FX also bears on injury to Plaintiffs and the Class. Mr. Wise's testimony regarding his knowledge of Barclays' and/or Credit Suisse's algorithms is relevant to the interrelationship of FX prices between trading platforms, *e.g.*, voice and electronic.

Finally, Mr. Wise's testimony regarding any investigation of his conduct or other FX traders' conduct in the FX market from 2007 through 2013 is relevant to establish liability at trial. (*See* Burke Decl., Ex. A, Sec. 10, Topic J.)

As shown above, Mr. Wise possesses information relevant to Plaintiffs' claims that Defendants conspired to fix FX prices.  Moreover, some of this information, such as Mr. Wise's testimony as to what he meant in chat rooms, how he interpreted the chats of his alleged fellow co-conspirators, information exchanged during phone calls with his alleged co-conspirators, what he did with that information while trading on behalf of Barclays or Credit Suisse, and how he supervised and managed subordinate FX traders, is solely within his possession.  Mr. Wise's testimony is thus necessary for the fair determination of this proceeding, and because he resides outside of the subpoena power of the Court, the Letter of Request should issue to preserve his testimony for use at trial.

## **CONCLUSION**

For the foregoing reasons, the Court should grant this motion and issue the Letter of Request attached as Exhibit A to the Burke Declaration.

Dated:  August 9, 2019　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　SCOTT+SCOTT ATTORNEYS AT LAW LLP

　　　　　　　　　　　　　　　　　　　　  *s*/ Christopher M. Burke
　　　　　　　　　　　　　　　　　　　　CHRISTOPHER M. BURKE (CB-3648)
　　　　　　　　　　　　　　　　　　　　WALTER W. NOSS (WN-0529)
　　　　　　　　　　　　　　　　　　　　KRISTEN M. ANDERSON (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　STEPHANIE A. HACKETT (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　KATE LV (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　600 West Broadway, Suite 3300
　　　　　　　　　　　　　　　　　　　　San Diego, CA 92101
　　　　　　　　　　　　　　　　　　　　Telephone: 619-233-4565
　　　　　　　　　　　　　　　　　　　　Facsimile:  619-233-0508
　　　　　　　　　　　　　　　　　　　　cburke@scott-scott.com
　　　　　　　　　　　　　　　　　　　　wnoss@scott-scott.com

kanderson@scott-scott.com
shackett@scott-scott.com
klv@scott-scott.com

SCOTT+SCOTT ATTORNEYS AT LAW LLP
DAVID R. SCOTT (DS-8053)
JOSEPH P. GUGLIELMO (JG-2447)
DONALD A. BROGGI (DB-9661)
PETER A. BARILE III (PB-3354)
SYLVIA M. SOKOL (SS-0317)
THOMAS K. BOARDMAN (TB-0530)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
drscott@scott-scott.com
jguglielmo@scott-scott.com
dbroggi@scott-scott.com
pbarile@scott-scott.com
ssokol@scott-scott.com
tboardman@scott-scott.com

HAUSFELD LLP
MICHAEL D. HAUSFELD
REENA ARMILLAY GAMBHIR
TIMOTHY S. KEARNS
NATHANIEL C. GIDDINGS
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7143
Facsimile:  202-540-7201
mhausfeld@hausfeld.com
rgambhir@hausfeld.com
tkearns@hausfeld.com
ngiddings@hausfeld.com

HAUSFELD LLP
MICHAEL P. LEHMANN
CHRISTOPHER L. LEBSOCK
BONNY E. SWEENEY
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1949
Facsimile:  415-693-0770
mlehmann@hausfeld.com

clebsock@hausfeld.com
bsweeney@hausfeld.com

*Interim Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Dated: August 9, 2019

          *s/* Christopher M. Burke
          Christopher M. Burke