UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR ISSUANCE OF LETTERS ROGATORY**

Pursuant to Federal Rule of Civil Procedure 28(b)(2) and 28 U.S.C. §1781(b)(2), and pursuant to the Court's Order granting Plaintiffs leave to renew their Motion (ECF 1442), Plaintiffs respectfully move the Court to issue Letters Rogatory requesting international judicial assistance to take the testimony overseas of Frank Cahill. Mr. Cahill resides in the Republic of Ireland and is a former FX trader for Defendant Barclays, HSBC, and Goldman Sachs.[1]

During the class period, Mr. Cahill participated in numerous multibank chat rooms with FX traders from competitor banks. Mr. Cahill's knowledge of information discussed in those chat rooms, how the information was then used by FX traders, and whether those discussions impacted FX prices are all highly relevant to Plaintiffs' claims and his testimony is necessary for a fair determination of these proceedings. Because Mr. Cahill resides in Ireland and is outside of the Court's subpoena power, only by Letters Rogatory will Plaintiffs be able to secure Mr. Cahill's testimony for use at trial. For those reasons, as more fully explained below, the Court should issue

---

[1] "Barclays" refers to Barclays Bank PLC and Barclays Capital Inc. "HSBC" refers to HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., HSBC Bank USA, N.A., and HSBC Securities (USA) Inc. "Goldman Sachs" refers to Goldman Sachs Group, Inc. and Goldman, Sachs & Co.

the Letters Rogatory, which are attached as Exhibit A to the Declaration of Christopher M. Burke in Support of Plaintiffs' Motion for Issuance of Letters Rogatory ("Burke Decl.").

## ARGUMENT

**I.  COURTS ROUTINELY ISSUE REQUESTS TO PERMIT PARTIES TO TAKE EVIDENCE ABROAD**

Rule 28(b)(2) of the Federal Rules of Civil Procedure and 28 U.S.C. §1781(b)(2) grant the Court the authority to issue letters rogatory seeking the assistance of a foreign court in securing the testimony of a non-party witness located overseas. *See, e.g.*, *U.S. v. Lee*, 723 F.3d 134, 142 n.6 (2d Cir. 2013); *U.S. v. Yousef*, 327 F.3d 56, 112 n.46 (2d Cir. 2003). The Court, "like all courts of the United States, has inherent power to issue Letters Rogatory." *U.S. v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958).

**II.  THE EVIDENCE SOUGHT BY PLAINTIFFS IS RELEVANT TO THEIR CLAIMS**

In Section 8 of the Letters Rogatory, Plaintiffs identify 10 core topics for Mr. Cahill's deposition. The testimony of Mr. Cahill concerning each of these topics is relevant to Plaintiffs' claims that Defendants conspired to fix FX spreads.

Mr. Cahill's background and employment, as well as his knowledge of the FX market, are relevant to establishing the foundation for Mr. Cahill to testify about additional topics concerning the alleged conspiracy. (*See* Burke Decl., Ex. A (Letters Rogatory), Sec. 8, Topics A–B.) Additionally, Mr. Cahill's testimony is relevant to Plaintiffs' allegations that FX traders had strong social and professional ties with traders at co-conspirator banks, which created incentives and opportunities for collusion. (*See* Burke Decl., Ex. A-2, ¶118.) Mr. Cahill is a former FX trader for Defendant Barclays, HSBC, and Goldman Sachs (collectively, "Former Employers"). (Burke Decl., ¶24.) His actions as an FX trader at his Former Employers during the Class Period are relevant to Plaintiffs' claims.

Mr. Cahill's testimony regarding his communications with FX traders from other Defendants from 2007 through 2013, including the use of multibank chat rooms is relevant to prove the alleged conspiracy to fix FX spreads. (*See* Burke Decl., Ex. A (Letters Rogatory), Sec. 8, Topics C–E.) Plaintiffs allege that Defendants communicated directly with each other through the daily use of multiple chat rooms to share market-sensitive information with competitors. The Court ruled that these chats are direct evidence akin to the "recorded phone call in which two competitors agreed to fix prices at a certain level." (Burke Decl., Ex. A-3 at 12.) Incriminating chat room names support the inference they were used for anticompetitive purposes. (*Id*. at 13.)

Beginning as early as 2007 and continuing through at least 2013, Mr. Cahill was an active participant in multibank chat rooms with FX traders from both the non-settling Defendant, Credit Suisse, and settling Defendants, including without limitation, Matthew Willis (Deutsche Bank), David Bowen (Goldman Sachs), James Harris (Bank of America), Edward Pinto (HSBC), Charlie Cass (Morgan Stanley), Mark Pelster (Société Genéralé), Serge Sarramegna (HSBC), Christopher Ashton (Barclays), John Erratt (Barclays, Credit Suisse), Michael Weston (Barclays), Adrian Cox (Barclays), Mark Clark (Barclays), Matt Gardiner (Barclays, UBS), Ian Drysdale (BNP Paribas, RBS), Stuart Oakley (RBS), Daniel Wise (Credit Suisse), and Jack Murray (Barclays). In these chat rooms, Mr. Cahill agreed upon spreads to charge customers, shared confidential information, discussed FX prices, disclosed positions of contingent orders, shared open positions, and discussed coordinated trading around fixes with FX traders from other Defendants. (Burke Decl., ¶24.)

Plaintiffs have attached representative chat transcripts in which Mr. Cahill participated as Exhibits to the Burke Declaration. (*See* Burke Decl., Exs. C–V.) In addition to numerous examples of Mr. Cahill and other traders sharing bid/ask spreads (*see*, *e.g.*, Exs. C-H, among others), these exhibits also include a February 28, 2013 chat in which Mr. ▮▮▮▮▮ (UBS) informs

Mr. ▇▇▇ (Goldman Sachs), Mr. ▇▇▇ (Credit Suisse), and Mr. ▇▇▇ (Credit Suisse) that he is no longer allowed to participate in multibank chat rooms.  Mr. ▇▇▇ explains that the reason that UBS banned group chats is "[c]ollusion."  (Burke Decl., Ex. V.)  Mr. Cahill also participated in chat rooms with Credit Suisse traders.  (Burke Decl., ¶24.)

In addition to the chat room transcripts attached as exhibits to the Burke Declaration, Mr. Cahill admitted, under oath during the criminal trial of a former coworker, that he had "coordinat[ed] with competitor banks to have an impact on the fix that would be to the advantage of these competitor banks."  (Burke Decl., Ex. B.)

Mr. Cahill's testimony regarding his chat room communications is relevant to demonstrate his knowledge of the conspiracy, including the meanings of his communications, his understanding of what FX traders communicated to each other, and how he used that information to trade FX on behalf of his Former Employers.  Mr. Cahill's testimony also is necessary to explain at trial communications through other media for which written evidence does not exist, such as text messages and phone calls.

Mr. Cahill's testimony regarding his knowledge of his Former Employers' policies regarding electronic communications, sharing information, and antitrust compliance is relevant to Plaintiffs' claims.  (*See* Burke Decl., Ex. A (Letters Rogatory), Sec. 8, Topics F–G.)  Plaintiffs intend to prove either that Defendants lacked compliance measures to prevent the conspiracy and/or knew of violations of compliance policies and failed to prevent them.  Accordingly, Mr. Cahill's testimony concerning his knowledge of FX traders complying (or not complying) with his Former Employers' internal policies is relevant to establishing the existence of a conspiracy.

Mr. Cahill's testimony regarding his own and his Former Employers' profit and loss in FX is relevant to show a motive to conspire both at the corporate and the individual trader level. (*See* Burke Decl., Ex. A (Letters Rogatory), Sec. 8, Topics H–I.) Mr. Cahill's testimony regarding his knowledge of his Former Employers' algorithms is relevant to the interrelationship of FX prices between trading platforms, *e.g.*, voice and electronic.

Finally, Mr. Cahill's testimony regarding any investigation of his or other FX traders' conduct in the FX market from 2007 through 2013 is relevant to establish liability at trial. (*See* Burke Decl., Ex. A (Letters Rogatory), Sec. 8, Topic J.)

As shown above, Mr. Cahill possesses information relevant to Plaintiffs' claims that Defendants conspired to fix FX spreads. Moreover, some of this information, such as Mr. Cahill's testimony as to what he meant in chat rooms, how he interpreted the chats of his alleged fellow co-conspirators, and what he did with that information while trading on behalf of his Former Employers, is solely within his possession. Mr. Cahill's testimony is thus necessary for the fair determination of this proceeding, and because he resides outside of the subpoena power of the Court, the Letters Rogatory should issue to preserve his testimony for use at trial.

Plaintiffs acknowledge that the Motion and the supporting papers are filed during the COVID-19 pandemic. Although the Court has extended fact discovery by eight weeks to October 27, 2020 (ECF 1454) as a result of the pandemic, in light of the significant delays introduced by the process of scheduling foreign depositions, Plaintiffs respectfully request that the Motion be granted notwithstanding the ongoing national emergency. Plaintiffs are prepared to accomplish delivery of the motion papers to the Court and, if granted, retrieval of the orders in a safe manner as guided by the Court.

Additionally, Plaintiffs remain committed to the safety of counsel, personnel, and the deponent, and will, in pursuing and conducting the depositions, abide by all court guidance, whether from the United States or the United Kingdom.

## **CONCLUSION**

For the foregoing reasons, the Court should grant this motion and issue the Letter of Request attached as Exhibit A to the Burke Declaration.

Dated:  June 4, 2020                                     Respectfully submitted,

SCOTT+SCOTT ATTORNEYS AT LAW LLP

 *s/* Christopher M. Burke
CHRISTOPHER M. BURKE (CB-3648)
WALTER W. NOSS (WN-0529)
KRISTEN M. ANDERSON (*pro hac vice*)
STEPHANIE A. HACKETT (*pro hac vice*)
KATE LV (*pro hac vice*)
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com
shackett@scott-scott.com

dbroggi@scott-scott.com
pbarile@scott-scott.com
ssokol@scott-scott.com
tboardman@scott-scott.com

HAUSFELD LLP
MICHAEL D. HAUSFELD
REENA ARMILLAY GAMBHIR
TIMOTHY S. KEARNS
NATHANIEL C. GIDDINGS
1700 K Street, NW, Suite 650
Washington, DC 20006
Telephone: 202-540-7143
Facsimile:  202-5407201
mhausfeld@hausfeld.com
rgambhir@hausfeld.com
tkearns@hausfeld.com
ngiddings@hausfeld.com

HAUSFELD LLP
MICHAEL P. LEHMANN
CHRISTOPHER L. LEBSOCK
BONNY E. SWEENEY
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1949
Facsimile:  415-693-0770
mlehmann@hausfeld.com
clebsock@hausfeld.com
bsweeney@hausfeld.com

*Interim Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Dated: June 4, 2020

                                               s/ Christopher M. Burke
                                              CHRISTOPHER M. BURKE (CB-3648)