

**ANDREW M. CUOMO**
Governor

**LINDA A. LACEWELL**
Superintendent

September 8, 2020

The Honorable Lorna G. Schofield
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

> Plaintiffs shall file a letter response, not to exceed three (3) pages, by **September 14, 2020**.
>
> So Ordered.
>
> Date: September 9, 2020
>     New York, New York
>
> *Lorna G. Schofield*
> **LORNA G. SCHOFIELD**
> **UNITED STATES DISTRICT JUDGE**

Re:  *In re Foreign Exchange Benchmark Rates Antitrust Litigation*
     No. 13 Civ. 07789 (LGS)

Dear Judge Schofield:

The New York State Department of Financial Services ("Department") requests a pre-motion conference in anticipation of moving to quash a subpoena that plaintiffs served on the Department in the above-referenced action. The subpoena improperly demands that a non-party produce over 15 million pages of documents that are protected by a state law privilege even though the subpoenaed information is either irrelevant, already in the plaintiffs' possession, or can easily be obtained through party discovery. Before requesting permission to file a motion, the Department offered to search for any relevant, primary documents in its possession that plaintiffs were unable to obtain in discovery. Plaintiffs declined to identify any such document, insisting instead that the Department produce every document and the plaintiffs would deal with any duplicate and irrelevant documents the subpoena yields. Plaintiffs' inability to articulate any relevant document that they are otherwise unable to obtain from a party to this case indicates that they are engaged in a fishing expedition.

The Department regulates financial institutions licensed by the State of New York. In this capacity, several years ago, the Department undertook an investigation of the foreign exchange practices of certain of its regulated entities. The investigation was broader than the scope of the matters at issue in the present case; encompassing both voice and algorithmic trading while, the Department understands, that only voice trading is at issue in this case. The subpoena seeks all documents produced by Barclays, Credit Suisse, Deutsche Bank, Goldman Sachs, and Standard Chartered banks in connection with that investigation, as well as the transcripts of testimony of the employees of those banks. The Department estimates that it holds over 15 million pages of documents and ten witness transcripts – six of Credit Suisse employees, and four of Goldman Sachs employees – that are responsive to the broad subpoena demands.

Courts have broad discretion to limit discovery that is unreasonable and "obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). A non-party subpoena may be modified or quashed if it "requires disclosure of

Honorable Lorna G. Schofield
September 8, 2020
Page 2 of 3

privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). "Restrictions on discovery may be broader where a non-party is the target of discovery to protect such third parties from unnecessary harassment, inconvenience, expense or disclosure of confidential information." *In re Candor Diamond Corp.*, 26 B.R. 847, 849 (Bankr. S.D.N.Y. 1983); *citing Dart Ind. Co. v. Westwood Chemical Co.*, 649 F.2d 646, 649 (9th Cir. 1980). Here, the subpoena seeks a substantial amount of information from a non-party, even though plaintiffs have been in litigation, or have cooperation agreements, with the same parties from whom the Department obtained the information. Plaintiffs can identify no document that the Department holds that they were unable to obtain during discovery, nor any witness interviewed by the Department that is unavailable for deposition. Indeed, plaintiffs have already scheduled a deposition of the only witness for which the Department holds a transcript that relates to the facts at issue in this case.

Complying with the subpoena would impose a substantial burden on the Department. The underlying investigations were concluded several years ago and most of the relevant staff are no longer employed by the Department. While some of the responsive information is still maintained on internal databases, not all of the relevant databases appear to still exist and there may be responsive documents that were never loaded into a database. As such, compliance would require staff who are unfamiliar with the case files to go to the office – currently over 90% of the Department's staff is working remotely due to COVID-19 – to manually review the production files to ensure that all responsive documents are identified.

All of this work would be required even though some substantial portion of the subpoenaed records are not relevant to the facts at issue in this case. In particular, the Department is informed, that algorithmic trading, which was an important focus of the Department's investigation, is not at issue in the present litigation. As such, a significant portion of the documents sought by the subpoena, including eight of the ten responsive transcripts, are irrelevant to the facts at issue in this case. And one of the two transcripts relating to voice trading, of an interview conducted by the Financial Conduct Authority of a Goldman Sachs employee, does not even reference Credit Suisse. Beyond the algorithmic trading issue, the subpoena seeks records produced by five banks that the plaintiffs have already settled with.

The subpoena implicates a New York State privilege – the bank examination privilege, codified in New York Banking Law §36(10) – that is critical to the Department's ability to function as a regulator. A bank examination privilege has long been recognized in federal and state law. *See*, *e.g.*, *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992); *Bank of America Nat'l Trust & Sav. Ass'n v. Douglas*, 105 F.2d 100, 103 (D.C. Cir. 1939). The purpose of the privilege is to foster candor between a bank and its regulator, *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992). Section 36(10) is crucial to the Department's ability to obtain timely and accurate information from its regulated entities. While the privilege applies to all information communicated to the Department, here the Department is particularly concerned about the transcripts of interviews of bank employees. Only one of the responsive transcripts involves a witness that is relevant to this case and discusses Credit Suisse, and the plaintiffs are already set to depose this witness. Another transcript, provided to the Department by the FCA, is privileged

Honorable Lorna G. Schofield
September 8, 2020
Page 3 of 3

under English law and was provided to the Department pursuant to a regulatory cooperation agreement that obligates the Department to hold the transcript as confidential.

      Beyond the application of Banking Law §36(10), the transcripts of the Department's interviews are more akin to attorney investigative notes than a traditional deposition transcript and are protected by the work product privilege. The relevant interviews were conducted in furtherance of a regulatory investigation, counsel for the banks were instructed to take no notes of the interview and they were not permitted to receive a copy of the transcripts. As such, only the Department received the transcripts, and solely for the purposes of assessing the conduct of its regulated entities. The protections of work product privilege apply as much to the work of a government attorney as they do to the work of a private attorney preparing for trial. *S.E.C. v. Cavanagh*, 1998 WL 132842 at *2 (S.D.N.Y. Mar. 23, 1998) (holding that attorney investigatory notes to enable Commission to decide whether to commence litigation "falls squarely within the protections of the work-product doctrine."). To override the work product privilege, "the party requesting [disclosure must] 'show […] that it has substantial need for the material to prepare its case and cannot, without hardship, obtain their substantial equivalent by other means.'" *Id. citing* Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiffs can make no such showing here, as they are going to depose the only relevant witness interviewed by the Department.

      The Department is not a party to this case, yet plaintiffs seek to compel it to produce millions of pages of documents that are either irrelevant to this case, available from a more convenient source, or already in their possession. The burden required to comply with the subpoena, particularly while most of the Department works remotely due to the impact of COVID-19, is unnecessary and improper. Beyond the associated burden, the subpoena implicates a privilege that is crucial to the Department's ability to function as a regulator. The Department is empowered to obtain information from its regulated institutions, and to hold that information as confidential, to help it monitor the safe and sound operations of its regulated institutions and to protect consumers, not as an appendage to plaintiffs' discovery efforts. The Department recognizes the importance of civil discovery. If the Department held records that were relevant to a litigation and unobtainable from another source, the situation would be different. Here, plaintiffs are engaged in a wide-ranging fishing expedition, without any reasonable expectation that information sought will further their case in the slightest. Given the burden, the core privilege issues implicated for the Department, and the availability of relevant evidence from better sources, the Department respectfully submits that the subpoena is improper, burdensome, and should be quashed in its entirety.

      Respectfully submitted,

Peter C. Dean
Deputy Superintendent
Email: peter.dean@dfs.ny.gov

cc (by ECF):   Counsel for Plaintiffs
                   Counsel for Defendants