# CAHILL GORDON & REINDEL LLP
## 32 OLD SLIP
## NEW YORK, NY 10005

HELENE R. BANKS
ANIRUDH BANSAL
DAVID L. BARASH
LANDIS C. BEST
BRADLEY J. BONDI
BROCKTON B. BOSSON
JONATHAN BROWNSON *
JOYDEEP CHOUDHURI *
JAMES J. CLARK
CHRISTOPHER W. CLEMENT
LISA COLLIER
AYANO K. CREED
PRUE CRIDDLE ±
SEAN M. DAVIS
STUART G. DOWNING
ADAM M. DWORKIN
ANASTASIA EFIMOVA
JENNIFER B. EZRING
HELENA S. FRANCESCHI
JOAN MURTAGH FRANKEL
JONATHAN J. FRANKEL

ARIEL GOLDMAN
PATRICK GORDON
JASON M. HALL
STEPHEN HARPER
WILLIAM M. HARTNETT
NOLA B. HELLER
CRAIG M. HOROWITZ
DOUGLAS S. HOROWITZ
TIMOTHY B. HOWELL
DAVID G. JANUSZEWSKI
ELAI KATZ
JAKE KEAVENY
BRIAN S. KELLEHER
RICHARD KELLY
CHÉRIE R. KISER ‡
JOEL KURTZBERG
TED B. LACEY
MARC R. LASHBROOK
ALIZA R. LEVINE
JOEL H. LEVITIN
GEOFFREY E. LIEBMANN

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM
_____

1990 K STREET, N.W.
WASHINGTON, DC 20006-1181
(202) 862-8900

CAHILL GORDON & REINDEL (UK) LLP
24 MONUMENT STREET
LONDON EC3R 8AJ
+44 (0) 20 7920 9800
_____

WRITER'S DIRECT NUMBER

212.701.3435

BRIAN T. MARKLEY
MEGHAN N. McDERMOTT
WILLIAM J. MILLER
NOAH B. NEWITZ
WARREN NEWTON §
DAVID R. OWEN
JOHN PAPACHRISTOS
LUIS R. PENALVER
KIMBERLY PETILLO-DÉCOSSARD
SHEILA C. RAMESH
MICHAEL W. REDDY
OLEG REZZY
THORN ROSENTHAL
TAMMY L. ROY
JONATHAN A. SCHAFFZIN
DARREN SILVER
JOSIAH M. SLOTNICK
RICHARD A. STIEGLITZ JR.
ROSS E. STURMAN
SUSANNA M. SUH
ANTHONY K. TAMA

JONATHAN D. THIER
SEAN P. TONOLLI
JOHN A. TRIPODORO
GLENN J. WALDRIP, JR.
HERBERT S. WASHER
MICHAEL B. WEISS
DAVID WISHENGRAD
C. ANTHONY WOLFE
COREY WRIGHT
ELIZABETH M. YAHL
JOSHUA M. ZELIG

* ADMITTED AS A SOLICITOR IN ENGLAND AND WALES ONLY
± ADMITTED AS A SOLICITOR IN WESTERN AUSTRALIA ONLY
‡ ADMITTED IN DC ONLY
§ ADMITTED AS AN ATTORNEY IN THE REPUBLIC OF SOUTH AFRICA ONLY

July 28, 2021

Re:   *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13-cv-7789 (S.D.N.Y.)

Dear Judge Schofield:

We write on behalf of the Credit Suisse Defendants to bring to the Court's attention the Second Circuit's recent summary order in the *SSA Bonds Antitrust Litigation*. --- Fed. Appx. ----, 2021 WL 3027170 (2d Cir. July 19, 2021) ("*SSA Bonds*"). We believe that the Second Circuit's analysis is relevant to key issues in the pending summary judgment motions in the *Foreign Exchange Benchmark Rates Antitrust Litigation*. In the *SSA Bonds* case, the Second Circuit affirmed Judge Ramos's dismissal of the complaint,[1] which alleged a single global conspiracy based on chatroom discussions among multiple banks' traders. As the Second Circuit put it, the *SSA Bonds* plaintiffs "cast a net so wide that the claimed antitrust conspiracy is implausible as alleged." 2021 WL 3027170, at *4.

In *SSA Bonds*, plaintiffs alleged that eleven dealer banks with offices around the world conspired every day over a multi-year period to artificially widen bid-ask spreads in the SSA bonds market. *Id.* The *SSA Bonds* plaintiffs compared their complaint favorably to Plaintiffs' Complaint in this case, arguing that "the [*FX*] complaint referenced a number of chat transcripts (fewer and less egregious than the chat transcripts referenced in the CAC) in which the defendants manipulated spreads and benchmark rates by sharing 'market-sensitive price and customer information and trading positions.'" Class Pls.' Opp. to Defs.' Mot. to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (ECF No. 424) at 40, *SSA Bonds*, No. 16-cv-03711 (S.D.N.Y. Feb. 23, 2018).

---

[1] *See In re SSA Bonds Antitrust Litigation*, No. 16-cv-03711, 2020 WL 1445783 (S.D.N.Y. Mar. 25, 2020) (granting defendants' motion to dismiss for failure to state a claim).

CAHILL GORDON & REINDEL LLP

-2-

Although the Second Circuit agreed that plaintiffs had adequately alleged anticompetitive conduct by certain individual traders, it rejected plaintiffs' theory of "an antitrust conspiracy involving *all* defendants and affecting *all* trades with the defendants" as "simply not plausible." *SSA Bonds*, 2021 WL 3027170, at *4 (emphasis in original). Credit Suisse's pending motion for summary judgment in the *FX* litigation raises precisely this same issue.

The FX market, like the SSA bonds market, "operates through bilateral over-the-counter transactions, with quickly expiring quotes" and a "decentralized, opaque, and frenetic nature." *Id.* Such a market structure, the Second Circuit explained, might render the SSA bonds market "vulnerable to manipulation by individual traders colluding on specific trades" but also renders implausible a vast conspiracy involving the entire market with traders in different countries "conspiring 'every day, nearly all day,' tainting every one of their trades for some seven years." *Id.* (internal citation omitted) ("[W]e conclude that the broad conspiracy alleged by plaintiffs is simply not plausible.").

The *SSA Bonds* plaintiffs' theory of a far-reaching global conspiracy based on episodic trader conduct, which the Second Circuit rejected, is virtually identical to the theory Plaintiffs seek to pursue here. Here, as in *SSA Bonds*, no evidence supports the vast overarching conspiracy alleged by Plaintiffs or Credit Suisse's participation in any such vast conspiracy. *See* Credit Suisse Defs.' Mem. in Supp. of Mot. for Summ. J. (ECF No. 1597). And here, as in *SSA Bonds*, Plaintiffs have failed to "link each of the defendants individually to specific acts of anticompetitive conduct" in furtherance of the alleged single, global conspiracy and failed to "explain how the conspirators were able to wield such control" over one of the world's largest financial markets. *SSA Bonds*, 2021 WL 3027170, at *4.

We respectfully submit that the *SSA Bonds* decision further supports granting summary judgment in favor of Credit Suisse.

Respectfully submitted,

/s/ Herbert S. Washer
Herbert S. Washer

Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

VIA ECF

2021 WL 3027170
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.
United States Court of Appeals, Second Circuit.

ALASKA DEPARTMENT OF REVENUE,
TREASURY DIVISION, Alaska Permanent Fund
Corporation, Iron Workers Pension Plan of Western
Pennsylvania, on Behalf of Themselves and All
Others Similarly Situated, Plaintiffs-Appellants,
Boston Retirement System, on Behalf of Itself and
All Others Similarly Situated, Irving Firemen's Relief
And Retirement Fund, City of Atlanta Firefighters
Pension Fund, on Behalf of Itself and All Others
Similarly Situated, Louisiana Sheriffs' Pension
Relief Fund, on Behalf of Itself and All Others
Similarly Situated, Sheet Metal Workers Pension
Plan of Northern California, Inter-local Pension
Fund Graphic Communications Conference of
the International Brotherhood of Teamsters, on
Behalf of Itself and All Others Similarly Situated,
City of Bristol Pension Fund, on Behalf of Itself
and in a Representative Capacity, On Behalf of All
Similarly Situated, Asbestos Workers Philadelphia
Welfare and Pension Fund, on Behalf of Itself
and All Others Similarly Situated, Painters and
Allied Trades District Council No. 35 Pension
Fund, on Behalf of Itself and All Others Similarly
Situated, Oklahoma Police Pension and Retirement
System, on Behalf of Itself, and, in a Representative
Capacity, on Behalf of All Those Similarly Situated,
Louisiana Municipal Police Employees Retirement
System, KBC Asset Management NV, City of Riviera
Beach Police Officers' Pension Fund, on Behalf
of Itself and All Others Similarly Situated, The
Police Retirement System of St. Louis, Plaintiffs,
v.
Amandeep Singh MANKU, Shailen Pau, Bhardeep
Singh Heer, Credit Suisse Securities (Europe)
Ltd., Credit Suisse International, Credit Suisse
AG, Crédit Agricole Corporate and Investment
Bank, Bnp Paribas Securities Corp., BNP Paribas,
Bank of America, N.A., Deutsche Bank AG, Hiren
Gudka, HSBC Holdings PLC, HSBC Bank USA,
N.A., HSBC Securities (USA) Inc., HSBC Bank
PLC, Bank of America, Credit Suisse Securities
(USA) LLC, Citigroup Inc., Citibank, N.A.,
Citigroup Global Markets Inc., Citigroup Global
Markets Limited, Royal Bank of Canada, RBC
Europe Limited, RBC Capital Markets LLC,
Nomura International PLC, Nomura Securities
International, Inc., Gary McDonald, Barclays
Capital Inc., Barclays Execution Services Limited,
Barclays Capital Securities Limited, Barclays
Bank PLC, The Toronto-Dominion Bank, TD
Securities (USA) LLC, Defendants-Appellees,
Merrill Lynch International, TD Bank, N.A., TD
Securities Limited, Deutsche Bank Securities
Inc., Nomura Holdings, Inc., John Doe
Defendants Nos. 1-100, Crédit Agricole S.A.,
Nomura Holdings, Inc., Bank of America Merrill
Lynch International Limited, Bank of America
Corporation, Merrill Lynch, Pierce, Fenner &
Smith, Credit Suisse Group AG, Defendants.[*]

[*]   The Clerk of the Court is respectfully directed to amend the official caption in this case to conform to the caption above.

20-1759-cv
|
July 19, 2021

Appeal from the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFFS-APPELLANTS: DANIEL L. BROCKETT (William B. Adams, Thomas J. Lepri, Christopher M. Seck, Jeremy D. Andersen, on the brief), Quinn Emanuel Urquhart & Sullivan, LLP, New York, New York, and Los Angeles, California, and Susan K. Alexander, Andrew S. Love, Joseph D. Daley, David W. Mitchell, Brian O. O'Mara, Steven M. Jodlowski, Carmen A. Medici, Ashley M. Kelly, Samuel H. Rudman, Robbins Geller Rudman & Dowd LLP, San Francisco, California, San Diego, California, and Melville, New York.

FOR DEFENDANTS-APPELLEES CITIGROUP INC., CITIBANK, N.A., CITIGROUP GLOBAL MARKETS INC., AND CITIGROUP GLOBAL MARKETS LIMITED: KAREN HOFFMAN LENT (Jay B. Kasner, on the brief), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York.

FOR DEFENDANTS-APPELLEES CREDIT SUISSE AG, CREDIT SUISSE SECURITIES (USA) LLC, CREDIT SUISSE SECURITIES (EUROPE) LIMITED, AND CREDIT SUISSE INTERNATIONAL: DAVID G. JANUSZEWSKI (Herbert S. Washer, Sheila C. Ramesh, Adam S. Mintz, on the brief), Cahill Gordon & Reindel LLP, New York New York.

FOR DEFENDANT-APPELLEE AMANDEEP SINGH MANKU: David H. McGill, Nathan M. Richardson, Kobre & Kim LLP, Washington, D.C.

FOR DEFENDANT-APPELLEE SHAILEN PAU: Richard F. Albert, Christopher B. Harwood, Nicole L. Buseman, Morvillo Abramowitz Grand Iason & Anello P.C., New York, New York.

FOR DEFENDANT-APPELLEE Derek A. Cohen, William J. Harrington, Eric

BHARDEEP SINGH HEER: Lawson, Benjamin Hayes, Goodwin Procter LLP, New York, New York, and Washington, D.C.

FOR DEFENDANT-APPELLEE CRÉDIT AGRICOLE CORPORATE AND INVESTMENT BANK: Lisa J. Fried, Benjamin A. Fleming, Benjamin F. Holt, Hogan Lovells US LLP, New York, New York and Washington, D.C.

FOR DEFENDANTS-APPELLEES BNP PARIBAS, AND BNP PARIBAS SECURITIES CORP.: Carmine D. Boccuzzi Jr., Timothy Thomas Leech, Cleary Gottlieb Steen & Hamilton LLP, New York, New York.

FOR DEFENDANTS-APPELLEES ROYAL BANK OF CANADA, RBC EUROPE LIMITED, AND RBC CAPITAL MARKETS LLC: Alexander J. Willscher, Matthew J. Porpora, Sullivan & Cromwell LLP, New York, New York.

FOR DEFENDANT-APPELLEE NOMURA INTERNATIONAL PLC: John D. Buretta, Cravath, Swaine & Moore LLP, New York, New York.

FOR DEFENDANT-APPELLEE NOMURA SECURITIES INTERNATIONAL, INC.: Aidan Synnott, Rachel J. Corrigan, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York.

FOR DEFENDANT-APPELLEE GARY MCDONALD: James R. Sigel, Bradley S. Lui, Michael F. Qian, Adam Hunt, Morrison & Foerster LLP, San Francisco, California, Washington, D.C., and New York, New York.

FOR DEFENDANTS-APPELLEES BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., BARCLAYS EXECUTION SERVICES LIMITED, AND BARCLAYS CAPITAL SECURITIES LIMITED: Barry G. Sher, Anthony Antonelli, Paul Hastings LLP, New York, New York.

FOR DEFENDANTS-APPELLEES THE TORONTO-DOMINION Paul S. Mishkin, Robert G. King, Benjamin D. Wasserman, Davis Polk & Wardwell LLP,

BANK, AND TD SECURITIES (USA) LLC: New York, New York.

PRESENT: DENNIS JACOBS, DENNY CHIN, WILLIAM J. NARDINI, Circuit Judges.

**SUMMARY ORDER**

Plaintiffs-appellants Alaska Department of Revenue, Treasury Division; the Alaska Permanent Fund Corporation; and the Iron Workers Pension Plan of Western Pennsylvania ("plaintiffs") are U.S. investors who traded in U.S. dollar-denominated ("USD") supranational, sovereign, and agency bonds ("SSA bonds") with defendants-appellees

("defendants"), who are entities that deal in USD SSA bonds and purportedly dominate the secondary market and certain individuals previously employed by some of the dealer entities.

Plaintiffs, who brought suit under Section 1 of the Sherman Act, 15 U.S.C. § 1, appeal from a partial final judgment dismissing their federal antitrust claims against one set of defendants (the "Domestic Dealer Defendants") [1] for failure to state a claim and against two other sets of defendants -- the "Foreign Dealer Defendants" [2] and the "Individual Defendants" [3] (together, the "Foreign Defendants") -- for lack of personal jurisdiction and improper venue. On appeal, plaintiffs argue that: (1) they have plausibly alleged an antitrust claim based on defendants' continuous and ongoing conspiracy to collude with each other in the secondary market for USD SSA bonds to plaintiffs' detriment; (2) personal jurisdiction and venue are proper as to all defendants under either the Clayton Act or New York's Long-Arm Statute; and (3) the district court abused its discretion in denying jurisdictional discovery. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

[1] The nine Domestic Dealer Defendants are: Barclays Capital Inc.; BNP Paribas Securities Corp.; Citigroup Inc.; Citibank, N.A.; Citigroup Global Markets Inc.; Credit Suisse Securities (USA) LLC; Nomura Securities International, Inc.; RBC Capital Markets LLC; and TD Securities (USA) LLC.

[2] The thirteen Foreign Dealer Defendants are: Barclays Bank PLC; Barclays Capital Securities Limited; Barclays Execution Services Limited (formerly known as Barclays Services Limited**)**; BNP Paribas; Citigroup Global Markets Limited; Crédit Agricole Corporate & Investment Bank; Credit Suisse AG; Credit Suisse International; Credit Suisse Securities (Europe) Limited; Nomura International plc; RBC Europe Limited; Royal Bank of Canada; and The Toronto-Dominion Bank.

[3] The four Individual Defendants are Amandeep Singh Manku, Bhardeep Singh Heer, Gary McDonald, and Shailen Pau.

**I.** *Background*[4]

[4] The following facts are drawn from plaintiffs' Second Amended Complaint ("SAC"), and are assumed to be true. *See Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 26 (2d Cir. 2015).

A. *The USD SSA Bond Market*

SSA bonds are debt securities issued by governmental and quasi-governmental entities to fund a range of economic and public-policy mandates. Entities issuing SSA bonds include: (1) supranational organizations, which are multilateral institutions with shareholders from multiple countries, (2) sovereign and sub-sovereign borrowers, which are national, state or provincial governments that issue debt in foreign currencies, and (3) agency borrowers, which are typically entities operated by or working on behalf of governments. There are approximately $1 trillion of SSA bonds outstanding globally. Investors generally regard SSA bonds as secure investments "because they often enjoy special legal status, and their credit-worthiness is often pegged to sovereign, regional, or international entities." J. App'x at 35. SSA bonds can also be dollar-denominated to target the U.S. bond market.

**\*2** After they are issued, SSA bonds can be resold and traded by dealers and investors in the secondary market. Investors trade SSA bonds in an over-the-counter market, transacting individually and privately with dealers as opposed to using an open exchange that matches buyers and sellers anonymously. An investor typically contacts one or more dealers by telephone, electronic chat messages, or an electronic trading platform to request a quote. The dealer relays the quote to the investor, who can then place an order.

Due to the short expiration periods of quotes and the time-consuming nature of contacting dealers, investors generally do not shop around with more than a few dealers at a time. Regardless of medium -- telephone, electronic chat messages, or electronic trading platforms -- investors have "no access to real time market data to validate whether dealers' quotes were competitive." *Id*. at 88. Furthermore, there is "no post-trade price transparency" and "limited ability to purchase secondary market trading information" for SSA bonds. *Id*. at 89. To learn the price of an SSA bond, investors must reach out to a dealer and request a quote, thus revealing their identity and the specific instrument and volume they seek to trade.

B. *The Alleged Antitrust Conspiracy*

Plaintiffs seek to represent a class comprised of all persons or entities who, from January 1, 2009 to December 31, 2015 (the "Class Period"), "directly entered into [USD] SSA bond transactions with Defendants, or their respective subsidiaries or affiliates, in the United States ... or otherwise involving U.S. trade or commerce." *Id*. at 232-33.

The crux of plaintiffs' claims is that all defendants collaborated and shared information such "that they effectively ceased" operating separately in the USD SSA bond market "and instead functioned as a single, unitary 'super-desk.'" *Id*. at 41. Plaintiffs allege that, for every single SSA bond transaction during the Class Period, defendants -- several banks operating as dealers in the USD SSA bond market (the "Dealer Defendants") and certain of their former employees responsible for the banks' USD SSA trading business (including the Individual Defendants) [5] -- conspired not to compete against each other in the secondary market for USD SSA bonds, and instead cooperated to achieve prices and terms more favorable to them and worse for their customers.

[5] The Individual Defendants are British citizens or residents who were employed by several of the Dealer Defendants as USD SSA bond traders and communicated with each other via chat messages about their transactions. They allegedly shared confidential customer information and pricing and volume of USD SSA bond transactions, and at times they sold and bought bonds on each other's behalf. The Individual Defendants were also alleged to be part of the same social circle.

Specifically, plaintiffs accuse defendants of colluding to artificially lower the price at which defendants purchased SSA bonds from consumers (the "bid") and artificially inflate the price at which defendants sold SSA bonds to consumers (the "ask"), thus artificially widening the bid-ask spread -- and their profits -- via anticompetitive methods. Citing electronic chatroom records between employees trading SSA bonds on behalf of the Dealer Defendants, plaintiffs allege that when an investor contacted one or more dealers to purchase a bond, defendants would communicate with each other via chat rooms and phone calls to achieve more favorable prices and terms for themselves, such as by artificially lowering dealer demand for investors' sales of USD SSA bonds to dealers and artificially inflating demand for dealers' sales of USD SSA bonds to investors. Plaintiffs also supplement their allegations with statistical analyses, claiming to identify artificially wide price margins for SSA bonds -- and thus artificially high profit margins for dealers of the bonds -- across the entire market for USD SSA bonds during the Class Period.

### C. *Procedural History*

**\*3** The initial complaint was filed on May 18, 2016. Following several years of litigation, plaintiffs filed the SAC on November 13, 2018. On September 30, 2019, the district court granted the Foreign Dealer Defendants' and Individual Defendants' motions to dismiss for lack of personal jurisdiction, and also ruled that venue was improper with respect to a subset of five Foreign Defendants who had moved to dismiss on that basis. [6] On March 18, 2020, the district court granted the Domestic Dealer Defendants' motion to dismiss for failure to state a claim. On May 8, 2020, the district court entered a partial final judgment pursuant to Fed. R. Civ. P. 54(b). This appeal followed.

[6] The five Foreign Dealer Defendants that raised a venue defense are: Barclays Capital Securities Limited, Barclays Execution Services Limited, Credit Suisse International, Credit Suisse Securities (Europe) Ltd., and Nomura International plc.

## II. *Discussion*

### A. *Standard of Review*

"We review a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020). "We review *de novo* the district court's decision to dismiss under Rule 12(b)(2)" for lack of personal jurisdiction. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "[W]e will apply the same [*de novo*] standard of review in Rule 12(b)(3) dismissals for improper venue as we do in Rule 12(b)(2) dismissals for lack of personal jurisdiction[.]" *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). "We review a district court's denial of jurisdictional discovery for abuse of discretion[.]" *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 446 (2d Cir. 2019) (internal quotation marks omitted).

### B. *Applicable Law*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While plaintiffs must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," *id.* (citation omitted), plausibility "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks, alteration, and citation omitted), "even if it strikes a savvy judge that actual proof of those facts is improbable." *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). As relevant here, "[n]o heightened pleading requirements apply in antitrust cases." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir. 2001). But "a bare bones statement of conspiracy or of injury under the antitrust laws without any supporting facts permits dismissal." *Heart Disease Rsch. Found. v. Gen. Motors Corp.*, 463 F.2d 98, 100 (2d Cir. 1972).

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To plead a plausible conspiracy under Section 1 of the Sherman Act, a plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made" to restrain trade. *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

In so doing, a plaintiff may "assert direct evidence that the defendants entered into an agreement in violation of the antitrust laws." *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) (discussing the rare antitrust "smoking gun" evidence), or, in the alternative, "present circumstantial facts supporting the *inference* that a conspiracy existed." *Id.* Under the latter method, allegations that defendants engaged in parallel conduct can establish a plausible conspiracy when they are accompanied by certain "plus factors," which "may include: a common motive to conspire; evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators; and evidence of a high level of

*\*4 For courts reviewing antitrust cases, "the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." *United States v. Apple, Inc.*, 791 F.3d 290, 319 (2d Cir. 2015) (alteration omitted) (quoting *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962)).

interfirm communications." *Id.* (internal quotation marks omitted). But a complaint may not state "in entirely general terms without any specification of any particular activities by any particular defendant." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (internal quotation marks omitted).

*C. Application*

Here, we conclude that plaintiffs have cast a net so wide that the claimed antitrust conspiracy is implausible as alleged.

As plaintiffs themselves note, the secondary market for USD SSA bonds operates through bilateral over-the-counter transactions, with quickly expiring quotes acquired after extended communications with dealers. Because of its decentralized, opaque, and frenetic nature, the secondary market for USD SSA Bonds may indeed be vulnerable to manipulation by individual traders colluding on specific trades.

But the flip side of this same coin is that the conspiracy alleged by plaintiffs -- a "super-desk" involving more than twenty entities in different countries as well as individual traders, conspiring "[e]very day, nearly all day," J. App'x at 169, tainting every one of their trades for some seven years -- is simply not plausible. Significantly, in casting this extremely wide net, plaintiffs have explicitly refused to plead, in the alternative, a narrower antitrust conspiracy involving only the Individual Defendants. Accordingly, we evaluate plaintiffs' claims as they are alleged: an antitrust conspiracy involving *all* defendants and affecting *all* trades with the defendants.

In so doing, we conclude that the SAC does not allege sufficient factual detail to establish the plausibility of the claimed conspiracy. The SAC fails to explain how the conspirators were able to wield such control over the secondary market as to impact every trade with every defendant and yield a viable claim for every plaintiff. The SAC also fails to link each of the defendants individually to

specific acts of anticompetitive conduct in furtherance of the conspiracy. Thus, while we agree with the district court that the SAC adequately alleges anticompetitive conduct on the part of the Individual Defendants, *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 237-38 (S.D.N.Y. 2019), we conclude that the broad conspiracy alleged by plaintiffs is simply not plausible. We therefore affirm the district court's dismissal of the plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Because we affirm the dismissal of plaintiffs' claims as to all defendants on plaintiffs' failure to plead a plausible conspiracy, we need not reach the issues of personal jurisdiction, venue, and jurisdictional discovery.

\* \* \*

For the foregoing reasons, we **AFFIRM** the partial final judgment of the district court.

**All Citations**

--- Fed.Appx. ----, 2021 WL 3027170

---

**End of Document**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.