August 2, 2021

<u>**VIA ECF**</u>

Honorable Lorna G. Schofield
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, New York 10007

Re:      *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 1:13-cv-07789 (LGS)

Dear Judge Schofield:

Class Plaintiffs in the above-captioned action respond to Credit Suisse's letter (ECF No. 1611) about the Second Circuit's recent summary order in the *SSA Bonds Antitrust Litigation*, --- Fed. Appx. ----, 2021 WL 3027170 (2d Cir. July 19, 2021) ("*SSA Bonds*").

This non-precedential summary order arising from an appeal of the district court's dismissal of a complaint addresses a fundamentally different set of facts, whether viewed in terms of the market in which the alleged conspiracy arises, the actual conspiracy alleged, or whether a conspiracy in the market has, in fact, already been proven to exist. That a different conspiracy in a different market involving different financial instruments has been found not to be plausible has little import here, where the plausibility of the conspiracy has been long determined. In short, *SSA Bonds* does not speak to ***any*** issues currently before the Court. Credit Suisse's attempt to assert that it has any bearing here is erroneous in several respects.

First, the question weighed by the Second Circuit – whether the existence of the alleged conspiracy was plausible – is simply not before the Court. In fact, the Court has already twice determined that the conspiracy Plaintiffs alleged against Defendants, including Credit Suisse, ***is*** plausible. *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 590 (S.D.N.Y. 2015) ("The U.S. Complaint sufficiently alleges the existence of a conspiracy in violation of Section 1 of the Sherman Act, and that all Defendants were part of that conspiracy."); *see also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 13 civ. 7789, 2016 WL 5108131, at *28 (Sept. 20, 2016) (denying in substantial part Defendants' motions to dismiss).[1]

While Credit Suisse asserts "as in *SSA Bonds*, no evidence supports the vast overarching conspiracy alleged by Plaintiffs or Credit Suisse's participation in any such vast conspiracy," ECF No. 1611 at 2, this assertion is inconsistent with this Court's previous orders. Nor are those orders limited to the ones in this case. Indeed, earlier this week, the Court appears to reject Credit Suisse's contention. *Allianz Global Investors GMBH v. Bank of America Corp.*, No. 18-cv-10364, 2021 WL 3192814, at *4 (S.D.N.Y. July 28, 2021) (holding that "chats includ[ing] comments like 'what kinda spreads are you showing' and 'what is your boys spread.' . . . are sufficient to plead Royal Bank of Canada's participation in the alleged conspiracy and acts giving rise to Plaintiff's alleged injury."). In support of Plaintiffs' cross motion for summary judgment, Plaintiffs proffered as exemplars hundreds of contemporaneous chats

---

[1]      Indeed, here, the Court affirmed the plausibility of a broader conspiracy than that currently alleged by Plaintiffs – a conspiracy including price-fixing with respect to benchmark "fix" transactions, limit order transactions, and exchange-based transactions. *Id.*

demonstrating traders, including traders at Credit Suisse, coordinated and agreed upon spreads with their competitors.  *See* ECF No. 1601-1 (PE 1).

Second, Credit Suisse's arguments are aimed at arguments Plaintiffs simply do not make.  The Court in *SSA Bonds* affirmed the dismissal of plaintiffs' complaint because it failed to plausibly allege the conspiracy it sought to allege – a conspiracy affecting "every trade with every defendant" over a period of seven years.  *SSA Bonds*, 2021 WL 3027170, at *4 ("[W]e evaluate plaintiffs' claims as they are alleged: an antitrust conspiracy involving ***all*** defendants and affecting ***all*** trades with the defendants") (emphasis added).

Plaintiffs' submissions throughout this proceeding, including in recent summary judgment filings, demonstrate an overarching conspiracy among 16 defendant banks to fix spreads to show customers.  Defendants' chat room discussions exploited a systematic and extremely interconnected web of chats with highly overlapping membership, where traders at competing banks worked together on a daily basis to widen and/or stabilize spreads.  Multiple traders testified that it was a common market practice to coordinate with competitors on spreads to show customers.  ECF No. 1599 at 12-13.

Credit Suisse's characterization of the SSA Bond market as equivalent to the FX market ignores FX market fundamentals.  Unlike the SSA Bond transactions, a FX trade is basically converting one currency to another.  This unique nature of FX transactions means the spreads in the FX market correlate horizontally across currency pairs.  Therefore, spread widening, especially in EUR/USD, would lead to spread widening in other currency pairs.  Plaintiffs also submitted evidence demonstrating vertical spread correlation across trade sizes and spread durability during normal market conditions.  Credit Suisse and its co-conspirators acknowledged these fundamental market facts in their own spread discussions.  ECF No. 1600, ¶¶242, 244-45, ECF No. 1599 at 18-20.  These fundamental aspects of the FX market made it unnecessary for traders to coordinate and agree upon a spread each time they showed a price to a customer.

Finally, Credit Suisse again elides the fact that the existence of a plausible price-fixing conspiracy here is, as Plaintiffs' briefing underscores, beyond question.  There was a price-fixing conspiracy in the FX market involving numerous Defendants.  *See* ECF No. 1599 at 24-25 (noting existence of guilty pleas to numerous Defendants' participation in a price-fixing conspiracy).  The only questions here are the breadth of the conspiracy and whether Credit Suisse was involved.  That Credit Suisse encouraged its traders to discuss spreads with competitors and that those discussions touched on "almost every currency pair," ECF No. 1605 at 7, n.3, is surely evidence that, unlike Credit Suisse's portrayal of *SSA Bonds*, conduct cannot be readily cabined chat-by-chat into discrete conspiracies.  These facts and the FX market's characteristics such as horizontal and vertical correlations reflect that a Credit Suisse trader's invocation of a "pact on spreads" with his competitors was not merely plausible, it was a market reality.  *See* ECF No. 1599 at 28.

We respectfully submit that the non-precedential *SSA Bonds* summary order is not inconsistent with a finding by this Court that Credit Suisse and other defendants engaged in an overarching conspiracy to widen and/or stabilize spreads throughout the FX market.

Respectfully submitted,

SCOTT+SCOTT ATTORNEYS                    HAUSFELD LLP
AT LAW LLP


*s/ Christopher M. Burke*                      *s/ Michael D. Hausfeld*

Christopher M. Burke                     Michael D. Hausfeld
707 Broadway, Suite 1000                 888 16th St. NW, Suite 300
San Diego, CA 92101                      Washington, DC 20006
Telephone: 619-233-4565                  Telephone: 202-540-7200

*Co-Lead Class Counsel*