**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER APPROVING THE SECOND DISTRIBUTION OF THE SETTLEMENT FUND AND DISTRIBUTION OF ATTORNEYS' FEES**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    THE COURT SHOULD APPROVE THE SECOND DISTRIBUTION ..................... 2

        A.    Background on the Claims Administration Process ........................................... 2

        B.    The Court Should Approve Epiq's Final Administrative Determinations.......... 4

        C.    *Pro Rata* Option 1 and Option 2 Claims Should Be Paid Subject
            to a Holdback .................................................................................................... 5

        D.    The Court Should Approve the Distribution Plan for the Second
            Distribution Claims ........................................................................................... 5

    II.    STATUS REPORT ON REMAINING CLAIMS AND SETTLEMENT FUND ........ 6

        A.    Unauthorized Claims ........................................................................................ 7

        B.    Pending Claims ................................................................................................. 7

        C.    Status of the Settlement Fund ........................................................................... 9

    III.    THE COURT SHOULD APPROVE PAYMENT OF THE REMAINING FEE
           AWARD ...................................................................................................................... 10

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Bank of Am., Corp.*,
   No. 14-CV-7126, 2020 WL 916853 (S.D.N.Y. Feb. 26, 2020), *aff'd sub nom.
   Alaska Elec. Pension Fund v. Fortinbras Asset Mgmt. GmbH*, 835 F. App'x
   647 (2d Cir. 2021) ................................................................................................................ 3, 5

*Blank v. Jacobs*,
   No. 03-cv-2111, 2013 WL 1310503 (E.D.N.Y. Mar. 27, 2013) ................................................ 3

*Contant v. Bank of America Corp.*,
   No. 1:17-cv-3139-LGS-SDA, Order, ECF No. 531 (S.D.N.Y. Nov. 16, 2021) ..................... 3, 4

*In re Citigroup Inc. Secs. Litig.*,
   No. 09 MD 2070, 2014 WL 2445714 (S.D.N.Y. May 30, 2014) ............................................. 3

*In re Goldome Secs. Litig.*,
   No. 88 Civ. 4765, 1991 WL 113263 (S.D.N.Y. June 20, 1991) ............................................... 3

**Statues, Rules, and Regulations**

Federal Rules of Civil Procedure
   Rule 23(c)(4) ........................................................................................................................... 11
   Rule 56.1 ................................................................................................................................. 11

**PRELIMINARY STATEMENT**

On August 6, 2018, the Court granted final approval to Settlements with 15 of the 16 defendants named in this Action, totaling $2,310,275,000 ("Settlement Fund"). Class Counsel invested the Settlement Fund in U.S. government securities, earning the Settlement Fund over $100 million in interest. This interest has more than paid for claims administration expenses, litigation expenses, and taxes. As a result, claimants will receive over $2 billion, which represents 87% of the Settlement Fund.

Since the Court's March 8, 2019, Order (ECF No. 1230) approving an "Initial Distribution" of $54 million to pay 26,937 Authorized Claims (the "Initial Distribution Claims"), Class Counsel has continued to work with its claims administrator and settlement experts to analyze and process claims. A substantial number of additional claims are now ready to be paid. Plaintiffs respectfully request the Court to authorize a "Second Distribution" of $435,114,487.03 to pay 22,904 Authorized Claims (the "Second Distribution Claims"). The Court's approval of the Second Distribution will bring the total number of approved claims to 49,841, which is 96% of claims expected to be paid.

Class Counsel continues to work diligently with the claims administrator and settlement experts to process the remaining 4% of claims (approximately 2,300 claims). These claims are largely complex, high-dollar claims that require additional scrutiny to protect the integrity of the claims process and avoid dilution of the Settlement Fund by inflated claim submissions. Plaintiffs aim to file a distribution motion seeking the Court's approval to pay the remaining claims within approximately six months. If feasible, Plaintiffs will seek Court authorization to pay some of these remaining claims earlier.

Class Counsel also requests the Court to authorize payment of the second half of the attorneys' fees awarded in connection with the Settlements. Per the Court's November 8, 2018

1

"Fee Order" (ECF No. 1140 at 11), the second half is payable upon substantial distribution of the Settlement Fund. *Id*. The Court's approval of the Second Distribution will result in the substantial distribution of the Settlement Fund, *i.e*., payment of 96% of claims. In addition, Class Counsel has devoted significant time to defending the Settlements and supervising the claims administration, while also continuing to incur substantial costs in litigating against the remaining defendant, Credit Suisse.

For these reasons, Plaintiffs respectfully moves the Court for an order authorizing (1) a second distribution of $435,114,487.03 from the Settlement Fund to pay 22,904 Authorized Claims and (2) the distribution of Class Counsel's remaining attorneys' fees.

## ARGUMENT

### I. THE COURT SHOULD APPROVE THE SECOND DISTRIBUTION

#### A. Background on the Claims Administration Process

The Plan of Distribution provides claimants with two claim submission options – Option 1 and Option 2. Kovach Decl., ¶4. Under Option 1, payment is calculated from transaction data produced by Settling Defendants. *Id*. Under Option 2, payment is calculated from transaction data produced by the claimant. *Id*. For Option 2 claims, Option 1 results are also calculated (where available), and the claimant's payment is based on the greater of the two values. *Id*., ¶7.

Processing Option 2 claims requires several steps. First, the "Settlement Experts" (Ankura and Velador) perform an algorithmic, trade-by-trade review of the claimant's transaction data and calculate claim value. *Id*., ¶32. The algorithms flag ineligible or erroneous transactions for further review and/or auditing. If there are no transaction-level deficiencies flagged by the algorithms, the claim is considered an "Authorized Claim" eligible for payment. *Id*. If there are deficiencies, the claimant is notified and has 30 days to cure by submitting additional information, and the claim

is reprocessed. *Id.*, ¶33. Epiq then issues a final administrative determination, accepting the claim in full (if cured), in part (if partially cured), or rejecting the claim in its entirety (if uncured). *Id.*

The following deficiencies lead to partial or full rejections of Option 2 claims:

- Inclusion of trades that are ineligible under the Settlements, including trades with non-defendants, outside the class period, in non-FX products (*e.g.*, precious metals or interest rates), on ineligible venues, or outside of the United States (*i.e.*, non-U.S. domiciled claimant trading with non-U.S. desk of a defendant).[1]

- Submission of trades with invalid or missing mandatory fields, including ISO codes (standardized currency pair codes), contract codes (for futures), product type, base amounts, contra amounts, value dates, and/or trade rates. These are mandatory fields because the Plan of Distribution requires these data points to calculate claim value. Trades missing these fields are therefore rejected.[2]

- Where the trade rate supplied is materially different from the prevailing daily rate and the claimant has not substantiated the trade with third party documentation showing the trade is genuine.[3]

---

[1] *In re Citigroup Inc. Secs. Litig.*, No. 09 MD 2070, 2014 WL 2445714, at *2-3 (S.D.N.Y. May 30, 2014) (upholding claims administrator's rejection of claims where claimants did not hold shares during the necessary time period and therefore "suffered no loss"); *In re Goldome Secs. Litig.*, No. 88 Civ. 4765, 1991 WL 113263, at *1, *3 (S.D.N.Y. June 20, 1991) (accepting claims administrator's rejection of claims where "(1) the purchase took place outside the class period; (2) the claim showed no purchase of the stock; . . . (5) the claim submitted was duplicate of a previously filed claim; (6) the claimant failed to correct a deficiency in the documents provided to the claims administrator after being given notice; or (7) the claimant withdrew the claim"); *Blank v. Jacobs*, No. 03-cv-2111, 2013 WL 1310503, at *5 (E.D.N.Y. Mar. 27, 2013) (approving decision to reject claims with no eligible transactions).

[2] *Goldome Secs.*, 1991 WL 113263, at *1, *3 (accepting claims administrator's rejection of claims where the claimant "failed to correct a deficiency in the documents provided to the claims administrator after being given notice").

[3] *Alaska Elec. Pension Fund v. Bank of Am., Corp.*, No. 14-CV-7126, 2020 WL 916853, at *4 (S.D.N.Y. Feb. 26, 2020), *aff'd sub nom. Alaska Elec. Pension Fund v. Fortinbras Asset Mgmt. GmbH*, 835 F. App'x 647 (2d Cir. 2021) (accepting claims administrator's decision to reject claim where claimant was unable to provide documentation proving that submitted transactions actually occurred); *Blank*, 2013 WL 1310503, at *5 (accepting claims administrator's "decision to reject any claims not properly documented unless any of those claimants has been able to cure the deficiencies"); *Contant v. Bank of America Corp.*, No. 1:17-cv-3139-LGS-SDA, Order, ECF No. 531, at 1-2 (S.D.N.Y. Nov. 16, 2021) (denying claim to the extent it lacked documentation to validate denied transactions).

- Where the trade size supplied is unusual or implausible and the claimant has not substantiated the trade size with third-party documentation showing the trade is genuine.[4]

Kovach Decl., ¶37.

After a final administrative determination, a claimant is not permitted to resubmit its claims but may, within 20 days, request Court review of the administrative determination. *Id*., ¶30. Class Counsel and Epiq review all requests for Court review and attempt to resolve objections. Kovach Decl., ¶30; Burke Decl., ¶9.

### B. The Court Should Approve Epiq's Final Administrative Determinations

This Motion seeks approval of Epiq's final administrative determinations to accept 6,882 Option 1 claims and 16,022 Option 2 claims. Of the Option 2 claims, Epiq accepted 4,665 claims in part and 11,357 claims in full. Kovach Decl., ¶14, Ex. 4 (listing Partially Accepted Claims). All 22,904 Second Distribution Claims have completed the processing steps outlined above, and the period to submit additional information to cure or seek Court review of final administrative determinations has expired. *Id.*, ¶30. Epiq has therefore determined that these claims are Authorized Claims eligible for payment. The following table shows a breakdown of the payment categories:

| Total Second Distribution Claims by Payment Category ||
|---|---|
| **Number of Claims** | **Payment Category / Kovach Ex. Number** |
| 6,882 | Total Option 1 Second Distribution Claims |
| 1,995 | *De Minimis* ($15) / Ex. 1 |
| 1,930 | Automatic ($150) / Ex. 2 |
| 2,957 | *Pro Rata* (>$150) / Ex. 3 |
| 16,022 | Total Option 2 Second Distribution Claims |
| 3,986 | *De Minimis* ($15) / Ex. 1 |
| 4,361 | Automatic ($150) / Ex. 2 |
| 7,675 | *Pro Rata* (>$150) / Ex. 3 |

*Id*., ¶¶12, 13.

---

[4]   *Id*.

4

### C.    *Pro Rata* Option 1 and Option 2 Claims Should Be Paid Subject to a Holdback

The Court should also approve a 40% holdback on *pro rata* Second Distribution Claims (the "Reserve").[5]  By comparison, *pro rata* claims in the Initial Distribution were subject to a 35% holdback.  Class Counsel, in consultation with Ankura, who are experts in modeling claims participation and calculating holdbacks, recommends increasing the holdback because the Second Distribution Claims are larger and more complex than the Initial Distribution Claims.  The Reserve will allow for fluctuations in the participation rate by volume, as the value of the remaining 4% of claims (discussed in §II.B., below) has been conservatively estimated, but the precise amount may fluctuate.

Class Counsel will use the Reserve to pay for expenses incurred in connection with administering the Settlements, and any contingencies that may arise after the distribution with respect to claims (including any appeals).  Class Counsel will then equalize any payment differentials between the Initial Distribution and subsequent distributions and will distribute any remaining Reserve *pro rata* in subsequent distribution(s) to Authorized Claimants.  *See Alaska Elec. Pension Fund*, 2020 WL 916853, at *2 (approving payment of claim subject to a holdback).

### D.    The Court Should Approve the Distribution Plan for the Second Distribution Claims

Claimants entitled to *de minimis* payments, automatic payments, or a single *pro rata* payment less than $1,000 will receive a check.  Kovach Decl., ¶38; Proposed Distribution Order, ¶3(c).  Claimants entitled to a *pro rata* payment greater than $1,000 will have the option of receiving a check or a wire.  Kovach Decl., ¶38(d); Proposed Distribution Order, ¶3(c).  Claimants who provide deficient wire instructions will be sent a check.  *Id.*

---

[5]    Because *de minimis* and automatic payments are not subject to proration, they will be paid in full.

To avoid the accumulation of uncashed checks, the checks will bear the notation "CASH PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED BY [DATE 90 DAYS AFTER ISSUE DATE]." Kovach Decl., ¶38(e); Proposed Distribution Order, ¶3(d). Epiq will also communicate with Authorized Claimants holding uncashed checks as the 90-day period closes. Kovach Decl., ¶38(f). Authorized Claimants who have not cashed their distribution checks or have not provided valid wire information will forfeit their right to payment and will not be permitted to participate in future distributions. Any forfeited amounts will be allocated to Authorized Claimants in subsequent distributions. Kovach Decl., ¶38(i); Proposed Distribution Order, ¶3(e).

## II. STATUS REPORT ON REMAINING CLAIMS AND SETTLEMENT FUND

The following chart breaks down the 108,600 submitted claims for the Court's convenience:

| Number of Claims | Category |
|---|---|
| 108,600 | Total Claims Submitted |
| 52,032 | Estimated Authorized Claims[6] |
| 56,568 | Unauthorized Claims |
| 26,937 | Authorized Claims in Initial Distribution |
| 23,019 | Option 1 |
| 3,918 | Option 2 |
| 22,904 | Proposed Authorized Claims in Second Distribution |
| 6,882 | Option 1 |
| 16,022 | Option 2 |
| 2,292 | Pending Claims |

The Court's approval of the Second Distribution will result in paying 49,841 Authorized Claims, or 96% of Estimated Authorized Claims (49,841 / 52,032 x 100 = 96%). Kovach Decl.,

---

[6] Estimated Authorized Claims are submitted claims, which based on their status have indicia that Epiq will likely be able to accept them in whole or in part as Authorized Claims. Estimated Authorized Claims includes the Initial Distribution Claims, Second Distribution Claims, and pending claims; it excludes claims that Epiq expects to reject in full as "Unauthorized Claims." Kovach Decl., ¶17.

¶¶8, 10. The remaining claims fall into two categories – Unauthorized Claims and pending claims. The discussion below addresses these remaining claims.

### A. Unauthorized Claims

Epiq has determined that 56,568 of the submitted claims are likely to be rejected in full. Kovach Decl., ¶¶19-28. Almost 21,000 of the Unauthorized Claims are withdrawn claims.[7] Kovach Decl., ¶20. Approximately 33,000 claims cannot receive payment because they were not eligible for Option 1, no Option 2 data was provided, or the claim calculated to $0 value due to all trades being transacted fully outside the United States or outside of the class period. *Id*., ¶¶21(a)-(b), 26. Other Unauthorized Claims were rejected because they were duplicates, missing signatures or authorization documents, submitted by a person excluded from the Settlement Class, or did not pass foreign data privacy compliance. *Id*., ¶¶21(c)-(d), 24, 27, 28.

All Unauthorized Claims have received at least one deficiency notice that was not cured within the time allotted. Some Unauthorized Claims have remained uncured more than 300 days. *Id*., ¶25.

### B. Pending Claims

2,292 claims are pending (*i.e*., they are not included in the Initial Distribution or Second Distribution and are not counted as Unauthorized Claims). Kovach Decl., ¶17. The pending claims fall within the following categories:

- *Option 2 Claims subject to audit*. These are Option 2 claims being audited to confirm their validity. Claimants must submit, among other things, third-party documentation (*e.g*., trade confirmations or broker statements) to verify some of the transactions. The audit process is ongoing.

- *Option 2 claims subject to Settlement Expert review*. These are high-value claims or improperly formatted claims not suitable for algorithmic assessment. When

---

[7] Most of the withdrawn claims are due to a third-party agent improperly submitting claims under both Option 1 and 2 for all its clients. Epiq required each claimant to elect to proceed under only one option, and the other claim was withdrawn. Kovach Decl., ¶20.

7

- deficiencies are identified by Settlement Experts, claimants have 30 days to cure or 20 days to dispute.

- *Claims converted from Option 1 to Option 2.* These claims, initially submitted under Option 1 and later converted to Option 2, are being processed as Option 2 claims. Claimants have 30 days to cure deficiencies or 20 days to dispute.

- *Resubmitted Option 2 claims.* These claims were resubmitted to cure deficiencies and are undergoing reprocessing. A final administrative determination will be issued.

- *Claims with deficiency notices that are likely to be resolved.* These are typically Option 2 claims with deficiencies, but the time to cure has not yet expired. Once responses have been received, these claims will continue in the claims administration process.

- *Disputed claims.* These claims were rejected in a final administrative determination, and the claimant may seek Court review.

*Id.*

Class Counsel estimates that processing the pending claims will be substantially complete within six months.[8] Given their complexity and size, processing the pending claims is time- and expert-intensive. For instance, claimants maintain their data in different formats, and some claims are presented in formats that have required significant expert work to excise irrelevant and/or deficient data. Further, some of the pending claims represent trillions of dollars of notional volume and therefore require heightened scrutiny and auditing. The extra time required to process these claims is also due in part to extensions given to claimants to cure deficiencies because of COVID-19. Over time, the need for extensions diminished. *Id.*, ¶18.

In connection with substantial completion, Plaintiffs also anticipate seeking the Court's approval of Epiq's rejection of claims that remain Unauthorized Claims and, likely, final claim

---

[8] If feasible, Plaintiffs will seek Court authorization to pay some of these remaining claims earlier.

8

determinations that are disputed.  This sequencing is intended to minimize the number of disputes brought to the Court.

Class Counsel will update the Court on the status of the claims process in three months.

### C. Status of the Settlement Fund

Class Counsel invested the Settlement Fund in U.S. government securities, earning the Settlement Fund over $100 million in interest.

| Settlement Fund | $2,310,275,000 |
|---|---:|
| **Interest (earned and estimated future, all sources)** | $106,811,050 |
| Interest (excluding fees & expenses interest) | $93,789,723 |
| Interest (attributable to attorneys' fees & litigation expenses, to date) | $13,021,327 |
| **Gross Settlement Fund (Settlement Fund + Interest)** | **$2,417,086,050** |

The interest has more than paid for claims administration expenses, litigation expenses, and taxes. As a result, claimants will receive over $2 billion, which represents 87% of the Settlement Fund. Burke Decl., ¶7.

| Distributions to Claimants | Amount |
|---|---:|
| Initial Distribution (authorized)[9] | $54,006,249 |
| Second Distribution (if approved) | $435,114,487 |
| Future Distributions (estimated) | $1,524,192,909 |
| **Total** | **$2,013,313,645** |

This exceeds what Class Counsel represented to the Court during the approval process. *See* 05/23/2018 *Final Approval Hearing Tr.*, at 4:18-25 ("class members are likely to see, once distribution occurs, . . . $1.95 billion").

---

[9] Certain payments from the Initial Distribution remain unnegotiated because checks were returned as undeliverable, checks were not cashed, wires failed, claims were withdrawn, or payments were held at the request of the claimant.  To the extent these funds remain unnegotiated, the funds will return to the Settlement Fund and be available for future distributions to Authorized Claimants.  Kovach Decl., ¶8.

9

### III. THE COURT SHOULD APPROVE PAYMENT OF THE REMAINING FEE AWARD

The Fee Order states, "Unless the Court orders otherwise upon application of Class Counsel, . . . half [of the fee award] . . . shall be payable upon the initial distribution," and "[t]he other half . . . shall be payable upon the substantial distribution of the settlement fund to the remaining claimants." ECF No. 1140, at 11. Class Counsel respectfully submits that the Court's approval of the Second Distribution will result in the substantial distribution of the Settlement Fund, *i.e.*, payment of 96% of claims. Class Counsel also asks the Court to recognize the resources (both in time and expenses) counsel has devoted, and will continue to devote, to claims administration and to ongoing litigation against Credit Suisse.

In addition to liaising with potential opt-outs and assisting class members with filing claims, Class Counsel has overseen Epiq and the Settlement Experts, engaging in frequent communication with, and review of, their work. This work has been extensive given the size of the Settlement Fund and complexity of claims. Class Counsel has also been in daily communication with claimants and their agents regarding the claims process. Class Counsel will continue to provide a high level of attention and effort to the remaining work of claims administration, including the completion of the remaining 4% of claims and the exhaustion of the Settlement Fund. Burke Decl., ¶11.

Class Counsel continues to prosecute the Class's claims against Credit Suisse. Burke Decl., ¶12. As set forth in Plaintiffs' Memorandum in Support of Attorneys' Fees and Expenses (ECF No. 938), the work done on behalf of the Class from the case's inception through December 31, 2017, included uncovering, through significant discovery a market-wide price fixing conspiracy, which expanded considerably on the allegations of the Department of Justice;

10

defending the allegations against multiple motions to dismiss; and negotiating and obtaining approval of some of the largest antitrust settlements ever reached.

After moving for attorneys' fees in 2018, Class Counsel has completed class and merits expert discovery. Class Counsel took or defended a total of 106 depositions. Class Counsel briefed class certification and related *Daubert* motions and obtained certification of a Rule 23(c)(4) litigation class. Class Counsel completed document discovery and built and continues to refine and maintain databases consisting of millions of pages of chats and billions of rows of data. Class Counsel filed affirmative and defensive summary judgment briefing, including voluminous Rule 56.1 statements and exhibits and related merits reports, and is presently preparing for trial. In prosecuting the claims on behalf of the Class, Class Counsel continues to incur substantial out-of-pocket costs to fund ongoing litigation expenses as the case proceeds to trial. Burke Decl., ¶12.

Class Counsel respectfully submits that we have demonstrated our commitment to representing the interests of the Class by devoting the attorney time and advancing the capital necessary to pursue the Class's claims through trial. Concurrently, we have protected and grown the Settlement Fund and overseen the integrity of the claims process. Further, the Fee Order excluded the payment of interest of Class Counsel's fees and expenses, which has resulted in a benefit to the Class of over $13 million. It is equitable to authorize payment of the remaining attorneys' fees to Class Counsel at this time.[10]

## CONCLUSION

Plaintiffs respectfully request that the Court enter the accompanying Proposed Order authorizing Epiq to implement the Distribution Plan and Class Counsel to receive payment of the second half of the fee award.

---

[10] If the Court authorizes the release of the second half of the fee award, Class Counsel would allocate the award to fund incurred and ongoing time and expenses.

11

Dated: November 23, 2021

| SCOTT+SCOTT ATTORNEYS AT LAW LLP | HAUSFELD LLP |
|---|---|
| *s/ Christopher M. Burke* | *s/ Michael D. Hausfeld* |
| CHRISTOPHER M. BURKE (CB-3648) | MICHAEL D. HAUSFELD |
| WALTER W. NOSS (WN-0529) | REENA A. GAMBHIR |
| KRISTEN M. ANDERSON (*pro hac vice*) | TIMOTHY S. KEARNS |
| KATE LV (*pro hac vice*) | SARAH R. LAFRENIERE |
| 600 W. Broadway, Suite 3300 | 888 16th Street NW, Suite 300 |
| San Diego, CA 92101 | Washington, DC 20006 |
| Telephone: 619-233-4565 | Telephone: 202-540-7143 |
| Facsimile: 619-233-0508 | Facsimile: 202-540-7201 |
| cburke@scott-scott.com | mhausfeld@hausfeld.com |
| wnoss@scott-scott.com | rgambhir@hausfeld.com |
| kanderson@scott-scott.com | tkearns@hausfeld.com |
| klv@scott-scott.com | slafreniere@hausfeld.com |

-and-   -and-

| SCOTT+SCOTT ATTORNEYS AT LAW LLP | HAUSFELD LLP |
|---|---|
| DAVID R. SCOTT (DS-8053) | MICHAEL P. LEHMANN |
| JOSEPH P. GUGLIELMO (JG-2447) | BONNY E. SWEENEY |
| DONALD A. BROGGI (DB-9661) | CHRISTOPHER L. LEBSOCK |
| The Helmsley Building | 600 Montgomery Street, Suite 3200 |
| 230 Park Avenue, 17th Floor | San Francisco, CA 94111 |
| New York, NY 10169 | Telephone: 415-633-1908 |
| Telephone: 212-223-6444 | Facsimile: 415-358-4980 |
| Facsimile: 212-223-6334 | mlehmann@hausfeld.com |
| david.scott@scott-scott.com | bsweeney@hausfeld.com |
| jguglielmo@scott-scott.com | clebsock@hausfeld.com |
| dbroggi@scott-scott.com | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 23, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                                            *s/* Christopher M. Burke
                                            Christopher M. Burke