IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Foreign Exchange Benchmark Rates Antitrust Litigation* | Civil Action No. 1:13-cv-7789-LGS |

## CLAIMANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR SECOND INTERIM DISTRIBUTION

On November 23, 2021, counsel for Plaintiffs' and for the settlement class in the above-captioned litigation ("Class Counsel") filed a Notice of Motion for Entry of an Order Approving the Second Distribution of the Settlement Fund and Distribution of Attorneys' Fees ("Distribution Motion") (ECF No. 1627).[1] The Distribution Motion asks the Court to authorize a "Second Distribution" of $435,114,487.03 to pay 22,904 "authorized claims," as well as distribution of Class Counsel's remaining attorneys' fees under the Court's fee order dated November 8, 2018 (ECF No. 1140).[2]

---

[1] On November 29, before being advised that a significant number of class members opposed the Distribution Motion, the Court granted it in the apparent belief that the motion was unopposed. ECF No. 1633. After learning of Claimants' intention to oppose the Distribution Motion, the Court stayed that order on November 30 and directed that class members objecting to the motion file their oppositions by December 1. ECF No. 1638. Claimants construe this as the Court provisionally vacating its November 29 order, making this Memorandum in Opposition to the Distribution Motion timely and appropriate. If this construction is incorrect and the Court has not vacated the order granting the Distribution Motion, then this submission should alternatively and additionally be deemed a motion for reconsideration of the order granting the Distribution Motion.

[2] To be clear, by their opposition to the Distribution Motion, Claimants are not suggesting that Class Counsel and other Plaintiffs' counsel who worked hard to achieve this landmark settlement over a period of years should not be paid their Court-approved attorneys' fees or reimbursed their Court-approved expenses. Rather, the purpose and goal of Claimants' opposition is to ensure that the settlement fund achieved through this settlement is equitably and accurately administered, and that the funds are allocated to all claiming class members in a manner that comports with the plain language of the settlement agreements and with due process. As explained below, to date, that has not occurred, and without the Court's intervention, in the manner requested herein, the administration and allocation of the settlement fund will remain hopelessly defective and subject to challenge.

Forex Capital Markets, LLC, Lucid Markets LLP, FXDirectDealer, LLC, Virtu Financial LLC, Mapleridge Capital Corporation, TG Capital Fund LP, NWI Management, L.P., and Contrarian Capital Management, LLC (collectively, "Claimants") each long ago filed claims with the class settlement fund under the Plan of Distribution in this matter. *See* Table 1. With limited exceptions, however, Claimants will not receive payment under the Distribution Motion, and their claims remain pending before the Claims Administrator with no transparency at the moment as to when they will be adjudicated and paid.[3] For the reasons set forth below, Claimants respectfully oppose the Distribution Motion and ask the Court to vacate its previously-entered order (ECF No. 1633) and deny the Distribution Motion.[4]

1. **The Distribution Motion is premature.** The settlement agreements entered into with Defendants and endorsed by the Court, pursuant to which the settlement fund was established, could not have been clearer: no distribution is to be made to *any* class members until *all* claims have been determined and *all* disputes have been adjudicated. Thus:

> The Net Settlement Fund shall be distributed by the Claims Administrator to, or for the account of, Authorized Claimants, as the case may be, ***only*** after the

---

[3] Contrarian Capital Management, NWI Management, and Virtu Financial all have some claims included in Class Counsel's proposed Second Distribution. However, all three also have additional claims that remain pending and are not included in the proposed distribution, some of which are substantial.

[4] Claimants respectfully object to the Court's November 30 decision (ECF No. 1638) requiring that "objections" to the Distribution Motion be filed just one day later, by December 1, 2021. Under S.D.N.Y. L.R. 6.1(b), parties opposing motions are normally entitled to fourteen days from the filing of the motion to submit responses, which in this case would be December 7 at the earliest, even without regard to the fact that Class Counsel filed their Distribution Motion just before the Thanksgiving holiday. Moreover, Class Counsel themselves proposed a briefing schedule under which Claimants would have until December 14 to submit their oppositions to the Distribution Motion. *See* ECF No. 1637. Under these circumstances, and given the complexity of the issues involved here, and further given that the fund here is in excess of $2 billion, Claimants believe that it is unfair to be required to submit their oppositions by December 1. Claimants are complying with the Court's directive by submitting this Memorandum today, but do so subject to the foregoing objection and while reserving all rights to raise additional issues in connection with the adjudication of their individual claims.

> Effective Date and *after*: (i) **all claims have been processed and evaluated by the Claims Administrator**, and, where requested, by the Settlement Administrator, and all claimants whose claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) all objections with respect to all rejected or disallowed claims have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; (iii) all matters with respect to the Fee and Expense Application have been resolved by the Court, and all appeals therefrom have been resolved or the time therefor has expired; and (iv) all fees and costs of administration have been paid.

Barclays Settlement Agreement, ECF No. 481-4, ¶ 11(g) (emphasis added). While this specific language comes from the Barclays Settlement Agreement, the language to that effect is identical across all fifteen settlement agreements—each of which was exhaustively negotiated by Class Counsel.[5] What is more, we are not aware of a class action settlement in *any* U.S. case which provided for claims to be paid on a pro-rated basis (as opposed to based on actual and full damages) and which authorized interim distributions on a rolling basis, rather than waiting until all claims have been finally determined before distributing the fund. Indeed, the very notion of a pro-rated distribution requires that both the numerator and denominator of the ratio be firmly established before a distribution takes place. As anxious as Claimants, like all class members, are to have their claims expeditiously adjudicated and to promptly receive their damages payments from settlements reached more than four years ago, the Court should strictly enforce the terms of the Settlement Agreements, and require Class Counsel to wait until all claims have been determined before anyone gets paid.[6]

---

[5] The settlement agreements also explicitly state that they can only be amended with written consent of Class Counsel and the defendant banks and by order of the Court, which has not occurred here.

[6] Claimants are of course aware that there was already an initial distribution of $50 million from the settlement fund that was approved by the Court and made in 2019. That, however, was a relatively immaterial distribution from a $2.3 billion fund, consisting largely of *de minimis* and small value claims.

Significantly, Class Counsel admit in the Distribution Motion that administration of the "remaining claims" will be substantially completed within six months, if not sooner. ECF No. 1628 at 1. The claims administration process is already fast approaching its fourth anniversary, since the original claims filing deadline (as extended) was in May 2018. If substantially all claims covering substantially all of the settlement fund can, as Class Counsel avers, be resolved within the next six months at the latest, then there is no reason for the Court to approve an interim distribution now, especially when such a distribution is likely to result in inequitable and inconsistent treatment for the class members left until the very end. Compliance with the plain terms of the settlement agreements, which are predicated on common-sense grounds and designed to protect all class members, is the only fair, reasonable, and equitable approach the Court could endorse to conclude this four-year claims administration process.

**2.     The proposed interim distribution is fundamentally unfair to Claimants.** The purpose of provisions like the one quoted in the preceding section is to ensure that the settlement fund is administered and distributed in a fashion that is fair and equitable to *all* class members—specifically by protecting class members from the consequences of making material and irrevocable distributions on some claims while other claims remain unprocessed and not fully adjudicated, especially when common issues may exist between the processed and distributed claims on the one hand and the unprocessed and undistributed claims on the other.

Class Counsel declares that resolution of the "remaining claims," including those of Claimants, has been delayed because those "are largely complex, high-dollar claims that require additional scrutiny to protect the integrity of the claims process and avoid dilution of the

---

The current proposed distribution of $435 million, by contrast, is a material and significant distribution which raises serious issues for class members with as-yet unprocessed claims, including Claimants.

Settlement Fund by inflated claim submissions." ECF No. 1638, at 1. As a threshold matter, Class Counsel's insinuation that the "high-dollar claims" represented by the Claimants are "inflated" or deliberately jiggered to dilute the settlement fund is entirely specious, and it reflects an inappropriate bias against large claimants that has unfortunately pervaded the administration of the fund from the outset. There is no basis in reality, and no authorization in any of the settlement agreements or in the Plan of Distribution, for Class Counsel or the Claims Administrator to expose large dollar value claims to heightened or additional scrutiny, or to hold them to a higher standard of proof than what is used for smaller claimants. Nor is there any factual basis to conclude that large dollar claims are more likely to be "inflated" or to rely on unreliable data than are the generally smaller claims Class Counsel proposes to pay in the Second Distribution.

To the contrary, Claimants, like other large claims filers, are seasoned and sophisticated institutions, with vast experience and expertise in the complex and highly-regulated world of foreign exchange, and with strong reputations for integrity in their business dealings. These entities are cornerstones of the FX markets and provide a substantial portion of the liquidity in those markets. Critically, *their transactions and trades provide much of the basis for the total market damages estimates developed by Class Counsel's experts, on which the amounts of the settlements with the Defendant banks are based*. Class Counsel's criticisms of Claimants' filings are wholly baseless: Claimants, like other large filers, have done their level best to provide as much documentation as possible for millions of trades executed over an extensive historical period, and they deserve respect for their substantial efforts to comply with the claims administration. Indeed, Claimants have been extremely cooperative throughout the claims process, in many cases removing from their filings thousands of trades that the Claims Administrator found

suspect even when Claimants disagreed with the Claims Administrator's suspicions. Rather than the scorn and skepticism with which Class Counsel and the Claims Administrator have systematically treated their fully defensible submissions, Claimants deserve the fair and equitable treatment owed to all members of the class.

Be all of that as it may, many of the "complexities" to which Class Counsel refers in relation to the large dollar-value claims concern the treatment of, and credit being given to, specific types of trades in Option 1 and/or Option 2 filings. A recurring issue in this regard has been the utter impropriety of the Claims Administrator rejecting an Option 2 claim in its entirety based on alleged issues with a small subset of trades within the filing, including issues allegedly arising in random data integrity audits. Another has been the inexplicable tendency of the Claims Administrator to reject trades from Option 2 submissions when those identical trades were included in Option 1 determinations. This has particularly been true for what are called "off-market pricing transactions," the rejection of which has also been problematic because Class Counsel and the Claims Administrator have not been forthcoming as to the sources of their market pricing determinations.[7]

If the Court is to approve and deny thousands of pro-rated claims (whether Option 1 or Option 2), and Class Counsel and the Claims Administrator are permitted to make settlement distributions, all before the complex issues common to all claims are resolved—either through discussions between class members and Class Counsel or by the Court when presented for its determination—then identically-situated claims and class members will be disparately treated, a

---

[7] To be clear, Claimants are not asking the Court to resolve these substantive issues at this time but merely cite them as illustrative examples of the types of issues common to the class as a whole that need to be resolved globally before any distributions are made from the settlement fund.

situation the Court should rightfully view as anathema. Again, the mechanism for avoiding such a situation is explicitly set forth in the settlement agreements themselves: *wait* to effect any significant distributions until all claims issues that may be relevant or common to the class as a whole have been identified and presented to all class members, and fully resolved.

To be crystal clear, the issue for Claimants is not the adequacy of Class Counsel's proposed 40% holdback on the Second Distribution: with the holdback, there would seem to be sufficient money left in the settlement fund to cover the remaining claims, which as noted include the largest, most complex, and highest value claims.[8] The issue, rather, is that the specific amounts proposed to be distributed to what Class Counsel calls "Second Distribution Claims" are based on policy decisions made by Class Counsel and the Claims Administrator with respect to the treatment of specific types of transactions—decisions that are not transparent to the rest of the class and that could unfairly serve to predetermine the "remaining claims" before the filers of those claims, including Claimants, have a full and fair opportunity to be heard on those issues.

The truth of the matter is that Class Counsel and the Claims Administrator have left Claimants and many other large filers entirely in the dark as to the status of their individual claims or the treatment of transactions submitted within those claims. In some cases, claimants submitted responses to random data integrity audits *more than fifteen months ago* and have still been given no indication as to how the information in those responses has been evaluated or when their claims will be finally determined. This lack of transparency boils down to fundamental fairness: why should a significant number of class members get paid now when Claimants and other large

---

[8] Class Counsel's own published statistics reflect that, on a recovery dollar basis, the remaining "pending claims" amount to more than half of the total value of the $2,310,275,000 fund, and could amount to as much as 75% of the settlement fund.

filers have not even been able to engage with Class Counsel or the Court on how to resolve issues that affect the entire class, much less been given insight into when and how their own claims will be addressed? The answer is simple: they shouldn't.

Larger filers such as the Claimants not only have a greater incentive than do smaller filers to present these issues fulsomely to Class Counsel and the Court, by virtue of the amount at stake for them, but also have the expertise and sophistication to do so on a full record and with a seasoned understanding of how the foreign exchange markets actually work in practice. For Class Counsel and the Court to foreclose dialogue on those issues, by authorizing distributions to smaller filers before Claimants and other large filers even have a chance to present them, raises significant issues of due process that should not be countenanced by a court of law.

## **CONCLUSION**

For the foregoing reasons, Claimants respectfully ask the Court to deny Class Counsel's Distribution Motion, vacate its Order of November 29 granting the motion (ECF No. 1633, which the Court stayed at ECF No. 1638), and enforce the settlement agreements with the Defendant banks by requiring Class Counsel to wait until after all claims have been adjudicated and determined before seeking any distributions from the settlement fund.

Dated: December 1, 2021

          Respectfully Submitted,

          /s/ *F. Franklin Amanat*
          F. Franklin Amanat
          **DICELLO LEVITT GUTZLER LLC**
          One Grand Central Place
          60 East 42nd Street, Suite 2400
          New York, New York 10165
          Telephone: (646) 678-1737
          famanat@dicellolevitt.com

**TABLE 1: LIST OF CLAIMANTS AND FILING DATES**

| CLAIMANT | ORIGINAL FILING DATE OF CLAIMS |
|---|---|
| Contrarian Capital Management, LLC | 6/19/2018 |
| Forex Capital Markets, LLC | 6/18/2018 |
| Lucid Markets LLP | 6/18/2018 |
| FXDirectDealer, LLC | 6/12/2018 |
| Mapleridge Capital Corporation | 5/23/2018 |
| NWI Management, L.P. | 6/18/2018 |
| TG Capital Fund LP | 5/23/2018 |
| Virtu Financial LLC | 6/18/2018 |