CAHILL GORDON & REINDEL LLP
32 OLD SLIP
NEW YORK, NY 10005

March 25, 2022

Re:   *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, Case No. 1:13-cv-07789-LGS

Dear Judge Schofield:

We write on behalf of Credit Suisse to respectfully request a pre-motion conference to seek permission to file a motion to decertify the Rule 23(c)(4)(A) class (the "Issue Class"). The Court has set an October trial of the class issues. Rule 23(c)(1) requires that courts "reassess their class rulings as the case develops" in order to ensure compliance with Rule 23. *Boucher* v. *Syracuse University*, 164 F.3d 113, 118 (2d Cir. 1999); *see also Mazzei* v. *The Money Store*, 829 F.3d 260, 266 (2d Cir. 2016). Defendants are prepared to promptly file a motion to decertify because developments have now made clear that Plaintiffs cannot determine class membership on a class-wide basis and, consequently, the Issue Class fails to satisfy both the predominance and superiority requirements of Rule 23(b)(3). The Court has not yet had the benefit of briefing on this issue and—particularly in light of this Court's recent denial of class certification in *Nypl* v. *JPMorgan Chase & Co., et al.*, 2022 WL 819771 (Mar. 18, 2022)—Credit Suisse respectfully submits that full briefing is now warranted.

**Individualized Issues Predominate in Determining Class Membership**

Controlling Second Circuit authority is clear that the predominance and superiority requirements of Rule 23(b)(3) apply with equal force to Rule 23(c)(4) issue classes. *See, e.g., In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006). The Second Circuit has also held that "individualized determinations of class member eligibility . . . go to the core of the predominance analysis," and that the predominance requirement of Rule 23 cannot be satisfied where such individualized determinations would overwhelm common issues. *In re Petrobras Securities*, 862 F.3d 250, 270-74 & n.21 (2d Cir. 2017).

Here, class membership can ***only*** be determined by many thousands of complex individualized inquiries. Specifically, the Issue Class definition requires that the members (1) "were either domiciled in the United States" or "traded in the United States" (*i.e.*, location); (2) entered into "spot, forward, and/or swap trades" that were not "benchmark trades [or] resting orders" (*i.e.*, type of trade); and (3) did so "where the Defendants provided liquidity." ECF No. 1331 at 14, 25. But as this Court has already recognized in its 2019 Order denying certification of a damages class, "tens or hundreds of thousands" of "individualized inquiries would be required to determine, for each trade: (1) the location of the class member's trading activity, (2) the type of trade and (3) whether the class member or the Defendant provided liquidity." ECF No. 1331 at 10, 17. The Court further held that Plaintiffs' method of identifying liquidity-provider trades was "unreliable," *id.* at 16, and that questions of trade location, and the exclusion of benchmark trades and resting orders, are "not susceptible to generalized proof," *id.* at 12. Thus, the same reasons that precluded certification of the damages class also preclude the continued certification of the Issue Class.

CAHILL GORDON & REINDEL LLP

-2-

Moreover, it is also clear that "no class may be certified that contains members lacking Article III standing," *Denney* v. *Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006), and that those who suffered no harm have no standing. *TransUnion LLC* v. *Ramirez*, 141 S. Ct. 2190, 2214 (2021) (remanding so Circuit Court "may consider in the first instance whether class certification is appropriate in light of our conclusion about standing"). Here, as this Court recently held, one must look at each class member's "net damages" to determine if they have suffered harm. *Nypl*, 2022 WL 819771, at *9. In the instant case, this will require thousands of individualized inquiries to establish, for example, whether an individual class member earned more as a liquidity provider (where they would benefit from the allegedly wider spreads caused by defendants) than they lost as a liquidity taker.

In certifying the Issue Class in 2019, the Court may have anticipated that Plaintiffs would identify, through the remaining merits and expert discovery, a valid class-wide approach to proving class membership. *See In re Petrobras Securities*, 862 F.3d at 270-74. They have not. In fact, when asked in interrogatories to explain how they could identify class members, Plaintiffs refused and took the position that this issue was "beyond the scope" of the issues certified. This failure requires decertification because the class does not meet Rule 23's predominance requirement. *See, e.g.*, *Mazzei*, 829 F.3d at 272-73 (affirming decertification after jury verdict where plaintiffs presented no class-wide evidence of class membership); ECF No. 1331 at 10 (citing *Royal Park Investments SA/NV* v. *HSBC Bank USA, N.A.*, 2018 WL 679495, at *5 (S.D.N.Y. Feb. 1, 2018) (declining to certify class where standing and membership would need to be determined on individual basis)).

**An Issue Class Is Not a Superior Method of Adjudication**

The inability to determine class membership and the nature of the Issue Class also raise Constitutional issues that outweigh any efficiencies that class litigation might yield.

*First*, the inability to determine class membership without individualized inquiries means that the parties (and non-parties) will not know who is bound by the outcome of the liability trial. This creates problems regardless of the outcome. If Credit Suisse prevails, plaintiffs in follow-on litigation could argue that they were not class members or that the class definition was so complex that they could not know whether they were. This raises notice and due process concerns that may prevent Credit Suisse from enforcing a verdict in its favor. *See, e.g., Twigg* v. *Sears, Roebuck & Co.*, 153 F.3d 1222, 1228-29 (11th Cir. 1998) (holding that enforcement of class action judgment "would not be consistent with due process" where court found it unlikely that plaintiff "reading the notice would come to the conclusion that it was applicable to him"); *Valentino* v. *Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (district court abused discretion in certifying issue class where class definition was such that "many potential members . . . cannot yet know if they are part of the class"). On the other hand, if Plaintiffs prevail, Credit Suisse may be able to establish that specific plaintiffs in any follow-on damages suits were not Issue Class members and therefore were not entitled to the benefit of the trial verdict. In that circumstance, the parties would need to re-try the liability issues. Thus, trying the case now undercuts any efficiencies that a class action might otherwise provide.

CAHILL GORDON & REINDEL LLP

-3-

This Court relied on similar logic in denying class certification in *Nypl*, reasoning that "whether and to what extent each purchaser was injured by the alleged conspiracy [was] obviously material to . . . class membership . . ." and that "the same individualized inquiries that defeat the predominance requirement make the class definition unmanageable . . . ." 2022 WL 819771, at *7, *10.  The Court explained that plaintiffs' failure to offer any "means to determine class membership based on common evidence or in some other administratively feasible way" raised due process and notice concerns, and that it "may be unfair to the defendant" by giving plaintiffs a second bite at the apple.  *Id.* at *9-*10.  Although Plaintiffs may argue that the Issue Class is not technically a "fail-safe" class, such classes "tend to be defined in terms of a 'legal injury,'" *id.* at *9, which is precisely the case here.  Whether, for example, a specific plaintiff traded with a bank that provided liquidity (rather than providing liquidity itself) bears directly on injury-in-fact.

*Second*, the Reexamination Clause of the Seventh Amendment provides that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States."  U.S. Const. amend. VII.  On summary judgment, this Court found that "questions remain about the scope of the [alleged conspiracy's] shared illegal goal and extent of the [alleged] conspirators' mutual dependence and assistance."  ECF No. 1650 at 9.  A jury will now need to answer those factual questions.  And if Plaintiffs prevail, subsequent juries in follow-on litigation would need to address the same issues when deciding proximate causation and damages.  For example, a subsequent jury would need to assess whether (i) a plaintiff paid an artificially high price, (ii) that purported injury flows from whatever the first jury determined made defendants' acts unlawful, or (iii) the purported injury is speculative.  Answering these questions will inevitably require the reexamination of the same factual questions about scope that the first jury will have examined.

The Seventh Amendment prohibits such reexamination.  *See, e.g., Blyden* v. *Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999) (reversing jury verdicts where "the district court allowed the damages juries to reexamine issues decided by the liability jury"); *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303-04 (7th Cir. 1995) (granting mandamus and decertifying class on Seventh Amendment grounds where first jury was to decide issue of defendant's alleged negligence and subsequent juries in follow-on litigation were to determine the overlapping issues of proximate causation and comparative negligence); *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 209 F.R.D. 323, 352 (S.D.N.Y. 2002) (denying certification of issue class on Seventh Amendment grounds where first jury would decide issue of general liability and "juries in follow-on suits would be charged with the impermissible task of sorting out" remaining issues, including "whether defendants were liable to a particular individual given the first jury's finding of general liability").

With a bifurcated trial plan, a court "must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."  *Rhone*, 51 F.3d at 1302-03.  Where, as here, the risk of reexamination is "so great," "class treatment can hardly be said to be superior to individual adjudication."  *Castano* v. *Am. Tobacco Co.*, 84 F.3d 734, 751 (5th Cir. 1996).

CAHILL GORDON & REINDEL LLP

-4-

                                      Respectfully submitted,

                                      CAHILL GORDON & REINDEL LLP

                                      <u>/s/ Herbert S. Washer</u>
                                      Herbert S. Washer
                                      32 Old Slip
                                      New York, NY 10005
                                      Telephone: 212-701-3000
                                      hwasher@cahill.com

                                      *Attorneys for Defendants Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse Securities (USA) LLC*

Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

<u>VIA ECF</u>