# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

## CREDIT SUISSE DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Rule 33.3 of the United States District Court for the Southern District of New York, Defendants Credit Suisse Group AG, Credit Suisse AG and Credit Suisse Securities (USA) LLC, (collectively, the "Credit Suisse Defendants"), through their undersigned counsel, submit this first set of Interrogatories to Plaintiffs.

In accordance with the definitions and instructions set forth further below, You are directed to give written answers to these Interrogatories. Your responses to these Interrogatories must be served on the undersigned counsel for the Credit Suisse Defendants within 30 days of service of these Interrogatories.

## INSTRUCTIONS AND DEFINITIONS

1. Each paragraph should herein be construed independently and, unless otherwise directed, without reference to any other paragraph for the purpose of limitation.

2. The use of any definition for the purpose of these Interrogatories shall not be deemed to constitute an agreement or acknowledgement on Your part or on the part of the Credit Suisse Defendants that such definition is accurate, meaningful or appropriate for any other purpose in this Action.

3.      Information requested in these Interrogatories shall include information within the knowledge or possession of any of Your agents, employees, attorneys, investigators or any other Persons, firms or entities directly or indirectly subject to Your control in any way whatsoever.

4.      Each Interrogatory shall be answered in its entirety. If any Interrogatory or subsection thereof cannot be answered in full, it shall be answered to the fullest extent possible with an explanation as to why a complete answer is not provided.

5.      If there is a claim of privilege as to any Communication concerning information requested by these Interrogatories, specify the privilege claimed, the Communication or answer to which that claim is made, the topic discussed in the Communication and the basis upon which the claim is asserted.

6.      These Interrogatories are continuing in nature and require supplemental or additional responses in accordance with Rule 33 of the Federal Rules of Civil Procedure.

7.      Separate and complete responses (or, as the case may be, separate objections) are required for each Interrogatory or subpart thereof.

8.      Unless otherwise instructed or clear from the context of the Interrogatory, these Interrogatories seek responsive information concerning the period from January 1, 2007 to December 31, 2015. The Credit Suisse Defendants reserve the right to expand the time frame of these and any future Interrogatories should the Court in this Action determine that the relevant time period for discovery exceeds the scope set forth herein.

9.      The definitions and rules of construction set forth in Rule 34 of the Federal Rules of Civil Procedure ("Federal Rules") and Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules")—including,

but not limited to, the definitions of "Documents," "Communications," "Concerning," and "Person"—are hereby incorporated and apply to these Interrogatories. These definitions apply throughout these Interrogatories without regard to capitalization. The Credit Suisse Defendants reserve the right to deliver and serve additional Interrogatories. In addition, as used in these Interrogatories, the words set forth below shall be defined as follows:

10. "Action" refers to the action pending in the United States District Court for the Southern District of New York, titled *In Re Foreign Exchange Benchmark Rates Antitrust Litigation*, Case No. 1:13-cv-07789 (LGS), and all cases consolidated with it.

11. "Class" refers the issue class certified in this Action under the Court's September 3, 2019 Class Certification Opinion and Order, Dkt. No. 1331.

12. "Class Period" refers to December 1, 2007 to December 31, 2013 (inclusive).

13. The term "Complaint" refers to Plaintiffs' Third Amended Consolidated Complaint filed in this Action on June 3, 2016.

14. The term "Defendants" refers to Bank of America Corporation; Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith Inc.; The Bank of Tokyo-Mitsubishi; Barclays Bank PLC; Barclays Capital Inc.; BNP Paribas Group; BNP Paribas North America, Inc.; BNP Securities Corp.; BNP Prime Brokerage, Inc.; Citigroup Inc.; Citibank, N.A.; Citicorp; Citigroup Global Markets Inc.; Credit Suisse Group AG; Credit Suisse AG; Credit Suisse Securities (USA) LLC; Deutsche Bank AG; Deutsche Bank Securities Inc.; The Goldman Sachs Group, Inc.; Goldman, Sachs & Co.; HSBC Holdings PLC; HSBC Bank PLC; HSBC North America Holdings, Inc.; HSBC Bank USA, N.A.; HSBC Securities (USA) Inc.; JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A.; Morgan Stanley; Morgan Stanley & Co, LLC; Morgan Stanley & Co. International plc; RBC Capital Markets LLC; Royal Bank of

3

Scotland Group PLC; RBS Securities, Inc.; Société Générale S.A.; Standard Chartered Bank; UBS AG; UBS Group AG; and UBS Securities LLC.

15. "Eligible Transactions" refers to FX transactions falling within the scope of the certified issue class in this Action under the Court's September 3, 2019 Class Certification Opinion and Order, Dkt. No. 1331.

16. "FX" refers to foreign exchange, as referenced in paragraph 1 of the Complaint.

17. "FX Instrument(s)" refers to any FX spot Transaction, forward, FX swap, FX option, FX futures contract, an option on a FX futures contract, or other instrument traded in the FX markets.

18. "FX-Related Transaction(s)" refers to any purchase, sale, trade, assignment, novation, or termination of any FX Instrument, whether over-the-counter ("OTC") or via interdealer broker ("IDB"), any exchange, other platform or means, and regardless of whether the transaction is merely contemplated or actually executed.

19. The term "Order" refers to a request to execute a trade, contract, assignment, novation, settlement, expiration, exercise, termination or any other agreement to exchange things of value regardless of form or structure (each, a "Transaction"), including, but not limited to, limit order, stop loss order, trailing stop order, market order, fixing order, or other type of order.

20. "Plaintiffs," "You," and "Your" refer to Aureus Currency Fund, L.P.; The City of Philadelphia, Board of Pensions and Retirement; Employees' Retirement System of the Government of the Virgin Islands; Employees' Retirement System of Puerto Rico Electric Power Authority; Fresno County Employees' Retirement Association; Haverhill Retirement System; Oklahoma Firefighters Pension and Retirement System; State-Boston Retirement

System; Syena Global Emerging Markets Fund, LP; Tiberius OC Fund, Ltd.; Value Recovery Fund L.L.C. (as assignee of Camulos Master Fund LP); United Food and Commercial Workers Union and Participating Food Industry Employers Tri-State Pension Fund; Systrax Corporation; J. Paul Antonello; Marc G. Federighi; Thomas Gramatis; Doug Harvey; Izze Trading Company; John Kerstein; Michael Melissinos; Mark Miller; Robert Miller; Richard Preschern d/b/a Preschern Trading; Peter Rives; Michael J. Smith; Jeffrey Sterk; and Kimberly Sterk.

21. To bring within the scope of these Interrogatories all information that might otherwise be construed to be outside of their scope, the following rules of construction apply: (i) the singular includes the plural and vice versa; (ii) the masculine, feminine, or neuter pronoun does not exclude other genders; (iii) the connectives "and" and "or" should be read either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope; (iv) the terms "any," "all," and "each" should be read to mean any, all, each, and every; (v) the word "including" should be read to mean including, without limitation; (vi) the present tense should be construed to include the past tense and vice versa; (vii) references to employees, officers, directors, or agents include both current and former employees, officers, directors, and agents; and (viii) defined terms should be given their broadest meaning regardless of whether they are capitalized in these Interrogatories.

**CREDIT SUISSE'S FIRST SET OF INTERROGATORIES TO PLAINTIFFS**

1. Do You contend that Defendants entered into an unlawful agreement with each other to fix bid-ask spreads? If Your response is anything other than an unqualified "no:" (a) identify every entity and person whom you believe participated in the alleged unlawful

agreement and the specific date (day, month, year) when that entity or person became a participant in the alleged unlawful agreement, (b) describe in detail every act that each such entity and person took to manifest its decision to join the alleged unlawful agreement, (c) state every alleged object or result of the alleged unlawful agreement, and (d) state with particularity the precise terms of the alleged unlawful agreement, including any changes therein during the Class Period.

2.  State whether You contend that the alleged unlawful agreement included a specific agreement regarding the percentage, pips, or other quantitative measure by which to fix spreads, and identify the facts and evidence that form the basis for Your contention, including identifying the percentage, pips or other quantitative measures that Defendants agreed upon for each currency pair, FX instrument type, and size transaction that you contend was part of the unlawful agreement.

3.  For each FX-Related Transaction Class members entered into on which the Class member allegedly suffered damages, identify and describe in detail how Defendants' alleged violations of the Sherman Act harmed the FX Transactions, including but not limited to the causal chain linking actions by the Defendants to the damages Class members allegedly suffered (including how such alleged violations by Defendants affected each FX instrument, currency pair, size, and trading venue) and any theoretical doctrines or concepts underlying Your theory of injury.

4.  Identify all means or mechanisms by which Defendants coordinated and maintained the alleged unlawful agreement across all relevant dimensions during the Class Period, including but not limited to the FX instruments, currency pairs, trade sizes, customer-types, and trade venues included in the alleged unlawful agreement.

5. Identify all transactions within the "Unified FX Cash Extract" as set forth in the May 31, 2018 Expert Report of Robin Poynder: Bank Data that You contend did not have wider bid-ask spreads as a result of the alleged unlawful agreement.

6. Do You contend that the alleged unlawful agreement led to increased adverse selection risk that lead to wider spreads for Class members, as set forth in Dr. Hal Singer's Merits Report at ¶ 50?  If Your response is anything other than an unqualified "no:" explain in detail what acts generated such increased adverse selection risk, how such increased adverse selection risk influenced transaction prices in the FX markets, and the effect of such increased adverse selection risk on spreads quoted by Defendants to Class members on all FX-Related transactions.

7. Do You contend that all conversations in interbank chatrooms were acts in furtherance of the alleged unlawful agreement?  If Your response is anything other than an unqualified "yes:" identify all interbank chatroom conversations that were in furtherance of the alleged unlawful agreement, which currency pairs and transactions such conversations affected, and how much of the alleged widening of each affected spread during the Class Period was caused by such interbank chatroom conversations.

8. Identify each Document or Communication among or between any two or more Defendants or other entities or persons that You contend, standing alone, itself constitutes an unlawful agreement.  This excludes Documents and Communications that You contend merely reflect an agreement(s) reached in another Communication.

9. State whether You contend that Class members have antitrust standing and are efficient enforcers of the antitrust laws; if Your answer is anything other than an unqualified "no," explain in detail the basis for your contention, including (a) how Class members' alleged

injuries are sufficiently direct, including under Plaintiffs' adverse selection theory of injury, and (b) how Plaintiffs are direct purchasers under *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720, 726, 735 (1977) given that the alleged unlawful agreement widened spreads in the interdealer markets and transactions on multi-dealer platforms are not included in the Class definition.

10. State whether You contend that the alleged unlawful agreement led Defendants to offer wider bid-ask spreads to Class members on all FX transactions on Defendants' single-dealer platforms; if Your answer is anything other than an unqualified "no," explain in detail how the alleged unlawful agreement impacted the spreads quoted on Defendants' single-dealer platforms, including transactions that were priced algorithmically.

11. Identify each member of the Rule 23(c)(4) OTC Class as defined in the Court's September 3, 2019 Opinion and Order, Dkt. No. 1331, describing in detail how You determined whether the person or entity entered into ten or more Eligible Transactions with a Defendant.

12. For each transaction reflected in the Unified FX Cash Extract as set forth in the May 31, 2018 Expert Report of Robin Poynder: Bank Data, identify whether you contend that the transaction is an Eligible Transaction.

13. For each transaction in the Unified FX Cash Extract as set forth in the May 31, 2018 Expert Report of Robin Poynder: Bank Data, identify whether the transaction resulted from a two-way price quote by a Defendant to the Class member.

14. Do You contend that Defendants that the alleged unlawful agreement led to wider bid-ask spreads for Class members' FX forwards, FX swaps, and FX options transactions? If Your response is anything other than an unqualified "no:" identify the mechanisms or processes leading to such changes in the markets for FX forwards, FX swaps, and FX options.

Dated: New York, New York
September 25, 2020

**CAHILL GORDON & REINDEL LLP**

By: /s/ Jason Hall
    David Januszewski
    Herbert Washer
    Elai Katz
    Jason Hall
    Sheila C. Ramesh
    32 Old Slip
    New York, NY 10005-1702
    212.701.3000

*Attorneys for Defendant Credit Suisse Securities (USA) LLC, Credit Suisse Group AG, Credit Suisse AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2020, I caused the foregoing to be served via electronic mail on the following:

wnoss@scott-scott.com

cburke@scott-scott.com

klv@scott-scott.com

tboardman@scott-scott.com

sberezney@koreintillery.com

mhausfeld@hausfeld.com

rgambhir@hausfeld.com

tkearns@hausfeld.com

/s/ Miles C. Wiley
MILES C. WILEY
32 Old Slip
New York, NY 10005
Telephone: 212-701-3395
mwiley@cahill.com