IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 13 Civ. 7789 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF THE CREDIT SUISSE DEFENDANTS' MOTION *IN LIMINE* NO. 3 TO EXCLUDE EVIDENCE OF CRIMINAL PROSECUTIONS OF NON-CREDIT SUISSE PERSONS AND ENTITIES**

The Credit Suisse Defendants ("CS") respectfully submit this motion *in limine* to exclude evidence and argument that certain other bank defendants, and certain of those banks' FX traders, were criminally prosecuted, pleaded guilty, or were convicted of Sherman Act or other criminal violations ("Criminal Prosecution Evidence," *see* Appendix A hereto).[1]

## PRELIMINARY STATEMENT[2]

The Criminal Prosecution Evidence is irrelevant to the only issue at trial—whether CS participated in a conspiracy with 15 other defendants to widen FX spreads in 52 currency pairs over six years. Neither CS nor any CS trader was criminally prosecuted, and none of this evidence so much as mentions CS or any CS trader. Nor do the criminal prosecutions have anything to do with the 16-bank, 52 currency pair spread-widening conspiracy that Plaintiffs allege here. Rather, the criminal prosecutions that Plaintiffs seek to offer overwhelmingly focus on completely different conduct, including manipulation of FX benchmarks and coordinated trading. They are not probative and thus should be excluded under Rules 401 and 402.

Moreover, the unduly prejudicial effect such evidence would have is clear, as is the extreme risk of jury confusion. For this reason, courts in conspiracy cases routinely refuse to admit evidence of one defendant's conviction or guilty plea as evidence of another defendant's guilt. And if the Evidence were admitted, it would necessitate extensive rebuttal by CS as to the actual import, and ultimate irrelevance of this evidence, resulting in mini-trials that would significantly increase the length and complexity of trial. The evidence also should be excluded under Rule 403.

---

[1] To the extent the Criminal Prosecution Evidence contains factual admissions by the parties who entered pleas, such evidence is the subject of CS's motion *in limine* No. 4. This motion is directed only to evidence of the criminal proceedings, and their outcomes.

[2] Internal quotation marks and citations omitted unless otherwise included.

**ARGUMENT**

I.     **The Criminal Prosecution Evidence is Irrelevant to Both Questions to Be Tried**

The Criminal Prosecution Evidence is not probative of the alleged spread-widening conspiracy.[3]  Instead, the pleas focus on *benchmark rate* manipulation and coordinated trading among employees of the banks that entered pleas, and include no admissions or facts suggesting any CS involvement in the narrow conspiracies that were the subject of the prosecutions.[4]  This Court has ruled that "benchmark trades . . . cannot serve as a basis for liability,"[5] so evidence of benchmark manipulation and other non-spread-related conduct, particularly where CS is not alleged to have had any involvement, has no relevance here.  And although certain of the prosecutions also involved an alleged conspiracy among four traders regarding "pricing" (but not spreads) in only CEEMEA currencies, that mini-conspiracy is not probative of the market-wide conspiracy that Plaintiffs allege.  *See* Washer Decl. Ex. 3-2 at ¶ 4(j); Washer Decl. Ex. 3-8 ¶ 17.

The fact that the guilty pleas did not involve admissions of a spread-widening conspiracy as to all currencies is itself an insurmountable hurdle to their admission.  But independent of that fatal flaw, the guilty pleas involved only a few currency pairs and narrower time periods—not the market-wide conspiracy Plaintiffs allege here.[6]  Plaintiffs' counsel explicitly acknowledges that

---

[3] *See* August 12, 2022 Declaration of Herbert S. Washer ("Washer Decl.") Exs. 3-1 (Barclays Plea); 3-2 (BNP Paribas Plea); 3-3 *(*Citi Plea); 3-4 (JPMorgan Plea); 3-5 (RBS Plea); and 3-6 (UBS Plea).

[4] Plaintiffs have suggested the pleas are admissible under Rule 803(22).  No fact within the scope of this trial is "essential to the judgment" in any of the pleas or convictions as required under 803(22).  Even if a hearsay exception did apply, Rule 803 is not a "back door vehicle for the introduction of evidence which is otherwise inadmissible." *Carpenters Health & Welfare Fund* v. *Coca-Cola Co.*, 2008 WL 9358563, *3–4 (N.D. Ga. Apr. 23, 2008).

[5] *See In re FX*, 407 F. Supp. 3d 422, 433 (S.D.N.Y. 2019).

[6] The Barclays, Citi, JP Morgan, and RBS pleas involved only the Euro/U.S. Dollar currency pair, and related to different portions of the alleged class period in this case.  UBS entered a guilty plea for its conduct in the submissions of benchmark interest rates.  The plea was entered because the DOJ found UBS's conduct in the FX market involving the Euro/U.S. Dollar currency pair violated its non-prosecution agreement for LIBOR-related conduct.  BNP's guilty plea involved only Central and Eastern European, Middle Eastern, and African ("CEEMEA") currencies.

"the governmental findings and allegations were all narrower in scope than [this] Action."[7] *See* Pls.' Mem. of Law in Supp. of Mot. for Final Approval of Fifteen Settlement Agreements and Plan of Distribution (Jan. 12, 2018) (ECF No. 925) at 14. And in response to a question raised at the allocution relating to BNP's plea, the federal prosecutor in that case made the same point:

> The conduct as pled in the civil case is a worldwide conspiracy to fix prices in foreign currency writ large for a number of years. That's the allegation. . . . The facts here are different. . . . [T]he facts here are that a former trader that the defendant employed engaged in frequent but episodic manipulation of particular currency pairs. It's obviously more circumscribed than the theory in that case. . . . There are very different sets of facts as pled in the civil case and as admitted to in this case.

Washer Decl. Ex. 3-7 at 21:16–22:12. Evidence that a few other banks, which are not on trial, entered guilty pleas for benchmark manipulation, coordinated trading and other conduct in a few currencies is irrelevant to the issues here.

Just as other banks' guilty pleas are irrelevant, so are the individual traders' criminal proceedings, which stem from the same conduct as the banks' pleas.[8] The challenged conduct in those proceedings was far narrower than what Plaintiffs allege, and focused on types of manipulation Plaintiffs do not focus on. None of the pleas or judgments involved the broad universe of currencies or the full time period at issue. Washer Decl. Ex. 3-10 (Jan. 15, 2021 Dep. of ▬▬▬▬▬▬▬▬) 105:2–106:13 (testifying that Plaintiffs' alleged spread-widening conspiracy is "drastically different from the activity we discussed"—alleged benchmark manipulation and coordinated trading in a single chatroom—that resulted in criminal prosecutions). Nor did any of the chatrooms at issue in the individual prosecutions involve any CS trader. *See id.* 138:14–140:12 (no CS trader participated in the chatroom at issue).

---

[7] *See also* Jan. 12, 2018 Pls.' Mem. of Law in Supp. of Lead Counsel's Mot. for Att'ys' Fees (ECF No. 938) at 17–18 (governmental findings "do not suffice to prove the more expansive allegations in this Action").

[8] *See, e.g.*, Washer Decl. Ex. 3-8 (Aiyer Criminal Judgment); Washer Decl. Ex. 3-9 (Cummins Plea Agreement).

3

Granting CS's motion will in no way hinder Plaintiffs' ability to put forward all probative evidence. If Plaintiffs can identify a relevant fact underlying the Criminal Prosecution Evidence, they can present evidence of that fact. Any facts could be admitted without the need to admit evidence of the prosecutions themselves. The separate fact of the prosecutions has no probative value to justify its admission. *See, e.g.*, *United States* v. *Murgio*, 2017 WL 365496, at *16 (S.D.N.Y. Jan. 12, 2017) (holding that agency's conclusions "themselves are not highly probative: the jury will have before it evidence from which it may reach (or not reach) the same conclusions").

The fundamental mismatch between the Criminal Prosecution Evidence and this case—where there is no mention of CS in the pleas and the pleas relate to entirely different conspiracies than what is alleged here—requires exclusion. *See In re DRAM Antitrust Litig.*, 2007 WL 9752971, at *13 (N.D. Cal. Feb. 20, 2007) ("[I]t is improper for the court to accept evidence of the co-defendants' guilty pleas as evidence tending to support an inference of [defendant's] collusive activity when none of those guilty pleas implicated [defendant] in their criminal activity"); *Index Fund, Inc.* v. *Hagopian*, 677 F. Supp. 710, 720 (S.D.N.Y. 1987) (former co-defendant's guilty plea inadmissible because it "failed to identify any particular transaction" so it could not "be employed to demonstrate that [remaining defendant] was a participant in the scheme").

## II. The Criminal Prosecution Evidence Should Be Excluded as Unduly Prejudicial and Likely to Cause Jury Confusion

Admitting the Criminal Prosecution Evidence would inevitably result in unfair prejudice to CS, which was not a party to any of the criminal proceedings. The Second Circuit has long cautioned against the "haphazard use of a criminal judgment merely for its aura of guilt." *Monticello Tobacco Co.* v. *American Tobacco Co.*, 197 F.2d 629, 632 (2d Cir. 1952). The risk of unfair prejudice is so clear and extreme that in the criminal context "the guilty plea of a co-defendant or co-conspirator is never admissible as substantive evidence of a defendant's guilt."

4

*United States* v. *Clayton*, 2021 WL 3121371, at *10 (6th Cir. July 23, 2021). This rule protects defendants from the jury's natural inclination "to conclude that if one defendant is guilty of committing an offense, the other defendant is guilty as well." *United States* v. *Peterman*, 841 F.2d 1474, 1480 (10th Cir. 1988), *cert. denied*, 488 U.S. 1004. The risk of unfair prejudice is far greater here because the guilty pleas relate to *different conspiracies* than that alleged here.

In this case, the Criminal Prosecution Evidence is peppered with references to "co-conspirators." It is almost inevitable that the jury would infer erroneously that the evidence establishes illegal conduct involving the alleged conspiracy to be tried, or illegal conduct by CS.

Admitting the Evidence would also risk the jury giving undue deference to those proceedings. *See, e.g.*, *Gil de Rebollo* v. *Miami Heat Ass'ns, Inc.*, 137 F.3d 56, 64 (1st Cir. 1998) ("[A]dmission of [the] criminal conviction would have allowed the jury to substitute the judgment reached in the criminal proceeding for its own.").[9]

Finally, admitting the Evidence would necessitate multiple, lengthy mini-trials to clarify how the criminal proceedings differ in substance and scope from the allegations here. CS would also be entitled to explain why certain traders were acquitted in their criminal cases. This too warrants exclusion of the evidence. *See, e.g.*, *City of New York* v. *Pullman Inc.*, 662 F.2d 910, 915 (2d Cir. 1981) (upholding exclusion where "the admission of [government] report would have been likely to protract an already prolonged trial with an inquiry into collateral issues").

## **CONCLUSION**

For these reasons, CS asks the Court to exclude the Criminal Prosecution Evidence and related argument.

---

[9] *See also RightCHOICE Managed Care, Inc.* v. *Hosp. Partners Inc.*, 2021 WL 4258747, at *4 (W.D. Mo. Sept. 17, 2021) (Rule 403 precludes introduction of former co-defendant's guilty plea where plea did not reference remaining defendants or allude to conduct in which they allegedly participated because "[i]ntroducing this plea agreement could result in the jury . . . inferring that the . . . Defendants are guilty by association").

Dated: August 12, 2022
      New York, New York

                                                                CAHILL GORDON & REINDEL LLP

                                          By:    <u>/s/ Herbert S. Washer</u>
                                                               Herbert S. Washer
                                                               Anirudh Bansal
                                                               Jason M. Hall
                                                               Edward Moss
                                                                Tammy L. Roy

                                                               32 Old Slip
                                                               New York, New York 10005
                                                               Telephone:  (212) 701–3000
                                                               Facsimile:  (212) 269–5420
                                                               hwasher@cahill.com
                                                               abansal@cahill.com
                                                               jhall@cahill.com
                                                               emoss@cahill.com
                                                               troy@cahill.com

                                                               *Attorneys for Defendants Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse Securities (USA) LLC*

**APPENDIX A**

1. Aiyer Criminal Indictment (▮ Ex. 1), *United States* v. *Aiyer*, 1:18-cr-00333 (S.D.N.Y. May 10, 2018), ECF No. 1

2. Aiyer Criminal Judgment (▮ Ex. 2), *United States* v. *Aiyer*, 1:18-cr-00333 (S.D.N.Y. Oct. 2, 2020), ECF No. 256

3. Barclays Plea Agreement (▮ Ex. 20, ▮ Ex. 3, ▮ Ex. 12, ▮ Ex. 8, ▮ Ex. 2, ▮), *United States* v. *Barclays PLC*, 3:15-cr-00077 (D. Conn. May 20, 2015), ECF No. 6

4. BNP Paribas Criminal Information (▮ Ex. 5), *United States* v. *BNP Paribas*, 18-cr-0061 (S.D.N.Y. Jan. 25, 2018), ECF No. 2

5. BNP Paribas Plea Agreement (▮ Ex. 2), *United States* v. *BNP Paribas*, 18-cr-0061 (S.D.N.Y. Feb. 2, 2018), ECF No. 4

6. Citigroup Plea Agreement (▮ Ex. 2, ▮ Ex. 2), *United States of America v. Citicorp*, 3:15-cr-00078 (D. Conn. May 20, 2015), ECF No. 8

7. Cummins Plea Agreement (▮ Ex. 1, ▮ Ex. 8, ▮ Ex. 6), *United States* v. *Cummins*, 1:17-cr-00026 (S.D.N.Y Jan. 13, 2017), ECF No. 6

8. Cummins Plea Hearing Transcript (▮ Ex. 2), *United States* v. *Cummins*, 1:17-cr-00026 (S.D.N.Y Feb. 7, 2017), ECF No. 13

9. JPMorgan Plea Agreement (▮ Ex. 3, ▮ Ex. 2), *United States* v. *JPMorgan Chase & Co.*, 3:15-cr-00079 (D. Conn. May 20, 2015), ECF No. 13

10. Katz Criminal Information (▮ Ex. 3), *United States* v. *Katz*, 1:17-cr-00003 (S.D.N.Y. Jan. 4, 2017), ECF No. 2

11. Katz Plea Agreement (▮ Ex. 2), *United States* v. *Katz*, 1:17-cr-00003 (S.D.N.Y. Jan. 4, 2017), ECF No. 6

12. Plea Hearing for Barclays, Citi, JPMorgan, and RBS (▮ Ex. 2, ▮ Ex. 2, ▮ Ex. 3, ▮ Ex. 3), *United States* v. *Barclays PLC; Citicorp; JP Morgan Chase & Co.; The Royal Bank of Scotland* PLC, 3:15-cr-00077 ECF No. 25, 3:15-cr-00078 ECF No. 12, 3:15-cr-00079 ECF No. 18, 3:15-cr-00080 ECF No. 13 (D. Conn. May 20, 2015)

    [Listed three separate times on Plaintiffs' exhibit list]

13. RBS Plea Agreement (▮ Ex. 4, ▮ Ex. 7, ▮ Ex. 36, ▮ Ex. 2, ▮ Ex. 1, ▮ Ex. 49, ▮), *United States* v. *The Royal Bank of Scotland*, 3:15-cr-00080 (D. Conn. May 20, 2015), ECF No. 9

14. Transcript of BNP Paribas Criminal Information Conference (▆▆ Ex. 4), *United States* v. *BNP Paribas*, 1:18-cr-00061 (S.D.N.Y. Jan. 25, 2018)

15. Transcript of BNP Paribas Criminal Sentencing Conference (▆▆ Ex. 3), *United States* v. *BNP Paribas*, 1:18-cr-00061 (S.D.N.Y. July 11, 2018), ECF No. 11

16. UBS Plea Agreement (▆▆ Ex. 21, ▆▆ Ex. 2, ▆▆), *United States* v. *UBS AG*, 3:15-cr-0076 (D. Conn. May 20, 2015), ECF No. 6

8