UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | Civil Action No. 1:13-cv-07789-LGS (Consolidated) <br><br> CLASS ACTION <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PROPOSED VERDICT FORM AND JURY INSTRUCTIONS** |

**I.     THE COURT SHOULD ADOPT PLAINTIFFS' PROPOSED SPECIAL VERDICT FORM**

Disregarding the Court's certified questions, Credit Suisse urges the Court to hand this complex, years-long, class-action antitrust conspiracy case spanning dozens of alleged conspirators and currency pairs to a jury on a single up-or-down vote on an improperly worded question. This approach is inconsistent with sound case-management practices, Second Circuit precedent, and simple common sense.

**A.     Plaintiffs' Detailed Special Verdict Form Is Appropriate Given the Complexity of This Certified-Issue Litigation**

While a single-sentence verdict form like Credit Suisse's proposal might be reasonable in a case presenting a single straightforward issue in a non-bifurcated trial, this is no such case. Plaintiffs allege a global conspiracy to fix spreads across the FX market. In all, Plaintiffs have identified 16 of the world's largest banks as co-conspirators in that conspiracy, which encompasses 52 currency pairs across a period of more than six years. The court has certified a class action for the resolution of two distinct issues under Rule 23(c)(4). Trial of these issues appears likely to require at least five weeks of testimony from dozens of witnesses and potentially thousands of exhibits.

In such "large and complex" antitrust cases, the Second Circuit has advised courts "to require special verdicts or the submission of interrogatories to the jury pursuant to Fed. R. Civ. P. 49." *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 279 (2d Cir. 1979); *see also Skidmore v. Baltimore & O.R. Co.*, 167 F.2d 54, 67 (2d Cir. 1948) ("[W]e deem such [a special] verdict usually preferable to the opaque general verdict."). This is in line with the guidance of the *Manual for Complex Litigation*, which states that special verdict forms "may help the jury focus on the issues, reduce the length and complexity of the instructions, and minimize the need for, or

1

scope of, retrial in the event of reversible error." Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION §11.633 (4th ed. 2004).

A detailed special verdict form "identif[ies] the basis for the jury's verdict, and thus . . . avoid[s] confusion, appellate uncertainty, and the need for additional proceedings." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1310-11 (2d Cir. 1993). In contrast, a verdict like the single-sentence verdict form submitted by Credit Suisse is an "'inseparable and inscrutable unit,'" and is thus "completely destroy[ed]" by a "single fault." *Jones v. Miles*, 656 F.2d 103, 108 (5th Cir. 1981) (quoting 5A Moore's Federal Practice & Proc. 49.02 (2d ed. 1980)); *see also Pac. Greyhound Lines v. Zane*, 160 F.2d 731, 738 n.7 (9th Cir. 1947) (advising against "a general and unexplained lump verdict" and encouraging the use of special verdicts). Moreover, here, as in many complex cases, "without special verdict questions, the jury would have had no means of structuring its deliberations in order to determine the essential facts of the case." *Envirex, Inc. v. Ecological Recovery Assocs., Inc.*, 454 F. Supp. 1329, 1339-40 (M.D. Pa. 1978), *aff'd*, 601 F.2d 574 (3d Cir. 1979).

Special verdicts are also the "preferred procedure" in complex cases because such verdicts "play an important role in rationally maximizing the use of scarce judicial resources." *Manufacturers Hanover Tr. Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 27 (2d Cir. 1986). For instance, in *Manufacturers Hanover Trust Co.*, which involved "six weeks of trial time to resolve complex securities issues," the Second Circuit cautioned that "allowing a lengthy and complex trial to conclude with one general verdict" would "risk wasting precious judicial resources" since "the reviewing court would be unable to determine the legal basis of the verdict." *Id.* at 27-28. Rather than such an "unexplained verdict," the court "emphasize[d] that the preferred procedure,

2

in the interest of avoiding confusion or unnecessary use of trial time," is the judicious use of Rule 49. *Id.* at 27.

A detailed special verdict form is even more critical where, as here, a trial will only resolve specific certified issues. To ensure that certified-issue or bifurcated trials do not run afoul of the Seventh Amendment, "trial judges frequently employ trial management procedures like special verdicts and detailed jury instructions to ensure that" the proper issues "are clearly presented to each set of jurors." *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 38 (E.D.N.Y. 2001). As the *Manual for Complex Litigation* states, "special verdict forms can provide the specificity necessary for instructing a second jury as to the aspects of the litigation previously resolved," thus allowing "later juries to implement the first jury's formal findings without confusion or uncertainty." MANUAL FOR COMPLEX LITIGATION §22.755; *see also* 2 NEWBERG & RUBENSTEIN ON CLASS ACTIONS §4:91 (6th ed.) ("[S]pecial verdict forms can avoid the problems raised by circumstances (such as when issue classes are certified) in which bifurcated trials are necessary.").

Thus, the Second Circuit has advised district courts facing bifurcated trials to "carefully craft the verdict form for the first jury so that the second jury knows what has been decided already." *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 169 n.13 (2d Cir. 2001). A detailed special verdict form, as Plaintiffs have proposed, allows the jury to make detailed factual findings that are "akin to instructions for the second jury to follow." *Id.* (citing Steven S. Gensler, BIFURCATION UNBOUND, 75 Wash. L. Rev. 705, 736-37 (2000)).

Detailed factual findings are particularly vital in this case, where the scope of the conspiracy encompassed by a verdict in favor of Plaintiffs will be a key issue in any future individual litigation for damages. For this reason, Plaintiffs have proposed a special verdict form that asks the jury to clearly identify the scope of any conspiracy found by the jury. Plaintiffs'

3

proposed Questions 1 and 2 mirror the questions that were certified by the Court for trial on a class-wide basis. Questions 3 and 4 ask the jury to pinpoint the temporal scope of the conspiracy found by the jury in response to Question 1. Questions 5 and 6 ask the jury to identify the co-conspirators involved in the conspiracy found in response to Question 1. And Questions 7 and 8 ask the jury to identify the currency pairs that were encompassed by the conspiracy found in response to Question 1.[1] Credit Suisse itself has endorsed this approach. In its decertification motion, Credit Suisse stated that "in determining whether there was a conspiracy and *the scope of any such conspiracy*, the OTC Class jury will need to decide *which (if any)* banks, currencies and time-periods were involved." ECF No. 1680, at 22 (emphasis added).

The jury's answers to these questions will firmly identify the boundaries of any conspiracy found by the jury in response to the Court's certified questions. These detailed findings will ensure that future juries considering whether to award damages to specific individual plaintiffs will not have to reconsider any such questions, protecting the Seventh Amendment interests of Credit Suisse while also advancing class members' interest in narrowing the issues in any future litigation for damages.

### B. The Court Should Reject Credit Suisse's Erroneous Single-Sentence Proposal

In contrast to Plaintiffs' considered approach, Credit Suisse proposes a single-sentence verdict form that cannot be squared with basic principles of antitrust law or this Court's own

---

[1] While Plaintiffs' proposed verdict form may be longer than Credit Suisse's parsimonious proposal, the complexity of the proposed verdict form mirrors the complexity of the issues that the jury is being asked to consider and the length of Plaintiffs' proposal is consistent with or shorter than verdict forms that have been used in other cases. *See*, *e.g.*, *Hamilton v. Beretta U.S.A. Corp.*, 222 F.3d 36, 40-41 (2d Cir. 2000) (following four-week trial, the jury returned a special verdict on verdict form that required the jury to determine whether lack of reasonable care, proximate cause, and damages had each been established for each of 25 defendants); *South Atlantic Partnership of Tennessee, Inc. v. Riese*, 284 F.3d 518, 528 (4th Cir. 2002) ("Given the complexity of the litigation, the Verdict included ten pages of special interrogatories.").

certification order.  Credit Suisse's proposed verdict question (and its proposed jury instructions) improperly and erroneously communicate to the jury that if Plaintiffs fail to establish any detail whatsoever about the alleged scope of the conspiracy, Plaintiffs' entire case must fail.  Under Credit Suisse's distorted interpretation of American antitrust law, a jury unanimously convinced that Credit Suisse knowingly conspired with all 15 Defendant Banks to fix spreads in all 52 currency pairs would nonetheless be compelled to return a verdict in favor of Credit Suisse if, for instance, the jury concluded that the conspiracy began on December 2, 2007 instead of December 1.

This all-or-nothing approach has no basis in American law.  Indeed, as discussed below with respect to Credit Suisse's equally erroneous jury instructions, the authorities ostensibly relied upon by Credit Suisse for their jury instructions directly refute this approach:

> In order to prove the conspiracy . . . [t]he plaintiff does not have to show that all of the means or methods which were agreed upon to accomplish this goal were actually used.  Nor does the plaintiff have to show that all of the persons alleged to have been members of the claimed conspiracy were in fact members.  What the plaintiff must prove is that the claimed conspiracy was knowingly formed; that it was formed with the intention to accomplish, by joint action, (price-fixing or some unlawful purpose or some lawful purpose by unlawful means); and that two or more persons were knowingly members of that conspiracy.

Leonard B. Sand, 4 MODERN FEDERAL JURY INSTRUCTION-CIVIL P 79.02 Price Fixing (2022), Instruction 79-6.

Credit Suisse's special verdict form also incorporates a legal standard inconsistent with the Sherman Act, increasing the likelihood that any jury verdict in its favor would be overturned.  Credit Suisse's verdict form would require that Plaintiffs prove a conspiracy to "widen" spreads.  Plaintiffs may prevail by establishing a conspiracy to fix, stabilize, maintain, *or* raise (here, widen) spreads in the FX market under governing law, and thus employing Credit Suisse's "widen" language will impose an artificial standard on any jury verdict.

Consistent with basic antitrust principles and Credit Suisse's own authorities, Plaintiffs' special verdict form allows the jury's verdict to match the scope of the conspiracy that is actually proved at trial and employ proper legal standards.  The Court should reject Credit Suisse's unfounded all-or-nothing verdict form and adopt Plaintiffs' proposed special verdict form.

## II. The Court Should Adopt Plaintiffs' Proposed Jury Instructions and Reject Credit Suisse's Misleading and Erroneous Proposed Instructions

### A. Plaintiffs Have Proposed Conventional and Accurate Instructions

Plaintiffs' proposed jury instructions accurately reflect the Court's certified issues and the burden that Plaintiffs must bear to prove their case.  These instructions are taken, in many instances without any modification beyond tense, from the ABA Model Jury Instructions in Civil Antitrust Cases, 2016 Edition and Kevin O'Malley, Jay E. Grenig & William C. Lee, FEDERAL JURY PRACTICE AND INSTRUCTIONS – CIVIL, §150.03 (5th ed. 2000).  These instructions are supplemented by clarifying instructions from relevant cases, particularly with the issue of past criminal convictions and Fifth Amendment testimony.  Plaintiffs' instructions set forth, in straightforward language, the law governing the questions the jury must answer.

### B. Credit Suisse Has Proposed Inaccurate and Unsupported Instructions

Consistent with the Court's Individual Rules and the Court's February 3, 2022 scheduling order, Plaintiffs' began preparing proposed jury instructions earlier this year and submitted a complete draft of proposed instructions to Credit Suisse on July 19, 2022, anticipating that Credit Suisse would shortly submit its own proposal and that the parties would meet and confer in good faith to submit joint proposed jury instructions as requested by the Court.

That did not occur.  After repeatedly indicating that a draft proposal would be forthcoming and then failing to meet the timelines it had represented to Plaintiffs, Credit Suisse finally provided Plaintiffs with a draft of its proposed jury instructions on August 16, 2022, at 10:18 PM ET.

6

Due to Credit Suisse's tardiness, the parties have not yet met and conferred regarding a joint proposal and Plaintiffs have not had sufficient time to fully evaluate and respond to Credit Suisse's proposed instructions. But even an initial review of Credit Suisse's proposed jury instructions reveals that many of the instructions are unsupported by caselaw and fashioned from whole cloth by Credit Suisse. Indeed, many of Credit Suisse's proposed instructions are not merely unsupported by their own ostensible "authorities," but directly contradicted by them. Because Credit Suisse's proposed instructions cannot be reconciled with governing law or even their own purported sources, the Court should reject Credit Suisse's proposed instructions.

While Plaintiffs intend to meet and confer as to Credit Suisse's instructions in the coming weeks, one core issue with Credit Suisse's proposed instructions is particularly pronounced and is likely to preclude material progress. Credit Suisse repeatedly seeks to instruct the jury that Plaintiffs must prove a conspiracy of exactly 16 banks, 52 conspiracy pairs, for every day of the period from December 1, 2007 to December 31, 2013. Not only is this not the law, it is directly contradicted by the cases Credit Suisse purports to have used for their jury instructions.

The instructions used in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07-1827 SI (N.D. Cal. June 28, 2012), ECF No. 6036 ("*TFT-LCD*") are instructive. Under the instruction "Contract, Combination, or Conspiracy," the *TFT-LCD* jury instructions specifically undermine Credit Suisse's contention that every co-conspirator must be a participant in the conspiracy, stating:

> It is not necessary that the evidence show that all of the means or methods claimed by the plaintiffs were agreed upon to carry out the alleged conspiracy; nor that all of the means or methods that were agreed upon were actually used or put into operation; ***nor that all the persons alleged to be members of the conspiracy actually were members*** . . .

*In re TFT-LCD (Flat Panel) Antitrust Litigation,* No. M 07-1827 SI (N.D. Cal. June 28, 2012), ECF No. 6036 at 11 (emphasis added).

7

This misstatement permeates the majority of Credit Suisse's instructions. Among these misstatements of the law:

- **"Proof of Existence of Conspiracy"** ("But the Plaintiffs do need to prove that all 16 banks actually entered into the alleged agreement. . . . The agreement may be shown if the proof establishes that all 16 banks knowingly worked together to accomplish the common purpose of widening spreads across 52 currency pairs from December 1, 2007 to December 31, 2013.")

- **"Conspiracy Defined"** ("If Credit Suisse and the 15 other banks pursued similar or even identical activities, but did not enter into an agreement to do so, that would be lawful, and you would answer 'No' on the verdict form.")

- **"Plaintiffs Must Prove Conspiracy As Alleged"** ("if you find that Plaintiffs have proven a conspiracy that involves fewer than 16 banks, then your verdict must be in favor of Credit Suisse. . . . Also, if you find that a 16 bank, 52 currency pair conspiracy existed, but that Credit Suisse was not a member of it as to all currency pairs for the entire time period from December 1, 2007 to December 31, 2013, then you must return a verdict for Credit Suisse, even though Credit Suisse may have been a member of some other conspiracy.")

- **"Proof of Credit Suisse's Membership in the Conspiracy"** ("Before you can find that Credit Suisse was a member of the 16 bank conspiracy alleged by Plaintiffs . . .")

While none of these can be reconciled with the language from *TFT-LCD*, it is not because *TFT-LCD* is a mere outlier. Indeed, the same "nor that all the persons alleged to be members of the conspiracy actually were members" language appears in *In re Universal Service Fund Telephone Billing Practices Litigation*, No. 02-MD-1468-JWL (D. Kan. Nov. 19, 2008), ECF No. 1048 at 19 (Instruction 15) and *In re Tableware Antitrust Litigation*, No. 04-cv-3514 (N.D. Cal. June 29, 2007), ECF No. 384 at 11. *See also* Leonard B. Sand, 4 MODERN FEDERAL JURY INSTRUCTION-CIVIL P 79.02 Price Fixing (2022), Instruction 79-6 ("What the plaintiff must prove, by the greater weight of the evidence, is that the members of the conspiracy, in some manner, came to a mutual understanding to try to (fix or attempt to fix or accomplish or try to accomplish a common and unlawful objective). The plaintiff does not have to show that all of the means or methods which are agreed upon to accomplish this goal were actually used. Nor does the plaintiff

8

have to show that all of the persons alleged to have been members of the claimed conspiracy were in fact members. What the plaintiff must prove is that the claimed conspiracy was knowingly formed; that it was formed with the intention to accomplish, by joint action, (price-fixing *or* some unlawful purpose *or* some lawful purpose by unlawful means); and that two or more persons were knowingly members of that conspiracy.").

In short, the legal citations they provide for their instructions directly undermine their essential proposition that the conspiracy must include every alleged co-conspirator. To the contrary, the law recognizes that the jury has the ability to determine the scope of the conspiracy. Plaintiffs prevail if they demonstrate a conspiracy to widen, fix, stabilize, or maintain spreads in the spot market and Credit Suisse's participation in the conspiracy. The jury may determine the breadth of that conspiracy in terms of co-conspirators, currency pairs, and duration.

Dated: August 19, 2022                    Respectfully submitted,

                                              s/ *Christopher M. Burke*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
CHRISTOPHER M. BURKE (CB-3648)
WALTER W. NOSS (WN-0529)
KRISTEN M. ANDERSON (*pro hac vice*)
KATE LV (*pro hac vice*)
600 West Broadway, Suite 3300
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com
klv@scott-scott.com

        **SCOTT+SCOTT ATTORNEYS AT LAW LLP**
DAVID R. SCOTT (DS-8053)
JOSEPH P. GUGLIELMO (JG-2447)
DONALD A. BROGGI (DB-9661)
SYLVIA M. SOKOL (SS-0317)
THOMAS K. BOARDMAN (TB-0530)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  212/223-6444
212/223-6334 (fax)
david.scott@scott-scott.com
jguglielmo@scott-scott.com
dbroggi@scott-scott.com
ssokol@scott-scott.com
tboardman@scott-scott.com

**HAUSFELD LLP**
MICHAEL D. HAUSFELD
REENA A. GAMBHIR (*pro hac vice*)
TIMOTHY S. KEARNS (*pro hac vice*)
NATHANIEL C. GIDDINGS (*pro hac vice*)
SARAH R. LAFRENIERE (*pro hac vice*)
888 16th Street NW, Suite 300
Washington, DC 20006
Telephone:  202/540-7143
202/540-7201 (fax)
mhausfeld@hausfeld.com
rgambhir@hausfeld.com
tkearns@hausfeld.com
ngiddings@hausfeld.com
slafreniere@hausfeld.com

**HAUSFELD LLP**
MICHAEL P. LEHMANN
CHRISTOPHER L. LEBSOCK (*pro hac vice*)
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone:  415/633-1908
415/358-4980 (fax)
mlehmann@hausfeld.com
clebsock@hausfeld.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
PATRICK J. COUGHLIN (PC-5116)
DAVID W. MITCHELL (*pro hac vice*)
RANDI D. BANDMAN (RB-7278)
ALEXANDRA S. BERNAY (*pro hac vice pending*)
CARMEN A. MEDICI (*pro hac vice pending*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
davidm@rgrdlaw.com
randib@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

**KOREIN TILLERY**
GEORGE A. ZELCS
205 N. Michigan Avenue, Suite 1950
Chicago, IL 60601-4269
Telephone:  312/641-9760
312/641-9751 (fax)
gzelcs@koreintillery.com

**KOREIN TILLERY, LLC**
STEPHEN M. TILLERY
STEVEN M. BEREZNEY
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone:  314/241-4844
314/241-3525 (fax)
stillery@koreintillery.com
sberezney@koreintillery.com

*Counsel for Class Plaintiffs*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2022, I caused the foregoing, to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

Executed on August 19, 2022, at San Diego, California.

*s/ Christopher M. Burke*
CHRISTOPHER M. BURKE