UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------x

In re FOREIGN EXCHANGE BENCHMARK  :   Civil Action No. 1:13-cv-07789-LGS
RATES ANTITRUST LITIGATION        :   (Consolidated)
---------------------------------------x
                                      CLASS ACTION

                                      PLAINTIFFS' MEMORANDUM OF LAW
                                      IN OPPOSITION TO CREDIT SUISSE'S
                                      MOTION *IN LIMINE* NO. 11 TO
                                      PRECLUDE KEITH UNDERWOOD FROM
                                      TESTIFYING AND TO EXCLUDE
                                      REPORTS AND STATEMENTS
                                      AUTHORED BY KEITH UNDERWOOD IN
                                      SEPARATE PROCEEDINGS INVOLVING
                                      UBS AG

**[REDACTED]**

**I.      INTRODUCTION**

Credit Suisse takes the extraordinary step of seeking to preclude Keith Underwood, a Credit Suisse subject matter expert witness, from testifying at trial. The reason why is understandable – Credit Suisse desperately wants to exclude Underwood because he submitted two expert reports in other litigation about chat room conduct which eviscerates Credit Suisse's defense. Credit Suisse's shifting litigation strategies do not alter the fact that Underwood possesses relevant information on core disputed issues as a fact witness that will allow the jury to reach a fully-informed decision. Moreover, Credit Suisse's own *merits* expert, Justin McCrary, cites Underwood in his report. Having repeatedly injected Underwood into this case, Credit Suisse cannot now be heard to complain about living with the fallout. Credit Suisse's Motion *in Limine* should be denied.

**II.     BACKGROUND**

Underwood claims to have 25 years of experience trading currencies; 17 years in London and 8 in New York.[1] *See* Ex. KK, ¶3 (10/25/18 Underwood Report), ¶3. He claims to have traded FX spot and "regularly provided quotes to customers for FX instruments and traded on electronic platforms such as EBS and Reuters." *Id.* He claims to be "familiar with the chatrooms used by FX traders and the jargon they use to discuss FX markets." *Id.*

Credit Suisse hired Underwood to "provide background information about FX spot trading during the Class Period" and to evaluate whether FX voice traders exchanged sensitive pricing information to competitor banks. *Id.*, ¶9 (10/25/18 Underwood Report). Underwood opined that Plaintiffs' expert did not support his opinions that spread information could be used by competitors to their advantage. *Id.*, ¶¶15-16.

---

[1] References to "Exs. F" through "Exs. RR" are to the exhibits attached to the Declaration of Christopher M. Burke in Support of Plaintiffs' Oppositions to Credit Suisse's Motions *in Limine*, filed concurrently herewith. Citations are omitted and emphasis is added, unless otherwise stated.

But Underwood said the exact opposite in two arbitrations involving settling co-defendant and alleged co-conspirator UBS. Underwood opined in a JAMS arbitration report filed on behalf of UBS that ▓▓▓▓▓▓▓▓ (UBS's former Global Co-Head of FX Spot trading) failed in his supervisory role to take steps to prevent FX traders under his direction from sharing "spreads (*i.e.*, prices)" with competitors. *See* Ex. LL, ¶11 (11/30/16 Underwood Report in ▓▓▓▓▓▓▓▓ *v. UBS AG*); *see also id.*, ¶33. Underwood analyzed many chats in which spreads were shared amongst competitors, which he said often "reveal[ed] sensitive and confidential currency price spread information to [the chat participant's] competitors" and concluded: "In my experience, the sharing of this information with competitors would be viewed as collusive and would contribute to reduced price competition to the detriment of clients." *Id.*, ¶34.

Soon after Underwood submitted his report in this case, Underwood submitted an expert report in a JAMS arbitration involving former UBS spot trader ▓▓▓▓▓▓. *See* Ex. MM (12/10/18 Underwood Report in ▓▓▓▓▓▓▓▓ *v. UBS Sec. LLC*). Underwood's ▓▓ report similarly concludes that spreads are sensitive and confidential information, and that ▓▓ repeatedly and inappropriately shared such information with UBS's competitors in violation of industry standards. *See id.*, ¶¶59, 64-65. The report rejected two key arguments that Credit Suisse and its experts intend to pursue before the jury in this case, stating that the spread information shared in chat rooms was not mere "market color." *Id.*, ¶61 and that spreads are essentially prices. *Id.*, ¶66 ("Spreads are essentially UBS prices, and thus constitute 'Sensitive Information.'").

Experts from both parties cite Underwood in their respective **merits** reports. One of Plaintiffs' merits experts, Dr. Hal Singer, cited Underwood's ▓▓▓▓ and ▓▓ reports in his opening merits report. *See* Ex. NN at 29, ¶41 & n.113 (01/23/20 Singer Report); *id.* at 19, ¶25 & n.66. Justin McCrary, a Credit Suisse merits rebuttal expert, cites the 10/25/18 Underwood class certification

report in his list of documents considered for his merits report. *See* Ex. OO, Appendix B at 2 (03/12/20 McCrary Report). Dr. McCrary testified in his merits deposition that the Underwood class certification report was a document "that I reviewed and that I cite to in the context of this report." *See* Ex. PP at 43:5-44:5 (07/30/20 McCrary Dep. Tr.). Dr. McCrary did not review Underwood's ▮▮▮ and ▮ reports. *Id.* at 59:2-19, 60:13-17. Credit Suisse said it will not call Underwood to testify at trial.

### III. ARGUMENT

#### A. Credit Suisse's Own Merits Expert Cites Underwood

Credit Suisse's Motion *in Limine* should be denied because its own merits expert, Dr. McCrary, cites Underwood in his ***merits*** report. While Dr. McCrary said that Underwood did not change his opinion. Ex. PP at 43:19-20 (07/30/20 McCrary Dep. Tr.), he testified that he reviewed and cited Underwood in his merits report, *id.* at 44:1-5. This makes Underwood fair game at trial. Plaintiffs should also be able to impeach Dr. McCrary on the fact that he inexplicably failed to consider the Underwood reports in ▮▮▮ and ▮ even though they were cited in at least two of Plaintiffs' merits reports. The jury would be entitled to discount Dr. McCrary's credibility for viewing only materials that support the position of the party paying his fees.

#### B. Underwood is a Percipient Fact Witness with Relevant Information

Even if Underwood was never hired as an expert, he is a fact witness with relevant information. Underwood claims to have over 25 years' experience trading FX spot and is familiar with the jargon used in FX chat rooms during the Class Period. Underwood monitored trader chat conduct while he was head of FX trading at settling Defendant Standard Chartered Bank during the Class Period. Ex. QQ at 42:6-22(Underwood Dep. Tr.). Underwood can be called as a fact witness to discuss information about FX spot trading and what the chat room jargon means.

Underwood can also offer testimony that is relevant to highly disputed issues that the jury will resolve in this case. Credit Suisse's main defense is that the chat room discussions about spreads were innocuous market color. Underwood unambiguously disagreed with Credit Suisse's primary defense. *See* Ex. MM (Underwood ▮ Report, ¶61). He also disagreed with Credit Suisse that spreads are not prices. *Id.*, ¶66. Underwood easily clears the low Rule 401 relevancy bar on both of these disputed issues; the fact that he also used to be Credit Suisse's expert only amplifies his significance.

The topics Plaintiffs intend to explore with Underwood are not hearsay. Plaintiffs can simply ask Underwood about these issues at trial. If he gives testimony that contradicts his written reports, Plaintiffs can then refer to those reports to probe the inconsistency.

### C. Credit Suisse Suffers No Unfair Prejudice by Admitting Underwood

The evidence Credit Suisse seeks to exclude here under Rule 403 is clearly prejudicial; few things can be considered more harmful to a defendant's case than to have its own expert torpedo the defense. But mere prejudice is not the standard. Instead, Rule 403 requires the prejudice to be "unfair." Fed. R. Evid. 403. "'Unfair prejudice' is that which might dispose a jury to render a verdict for reasons unrelated to the merits of the case." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010). Here, as described above, the evidence Plaintiffs seek to introduce goes squarely to the merits of this case. The Second Circuit has held that "a court does have the power to subpoena an expert witness and . . . can require him to state whatever opinions he may have previously formed," *Carter-Wallace, Inc. v. Otte*, 474 F.2d 529, 536 (2d Cir. 1972), and has set forth factors to consider in assessing whether to compel testimony about prior opinions. *Kaufman v. Edelstein*, 539

F.2d 811, 822 (2d Cir. 1976).[2]  These factors weigh in Plaintiffs' favor.  Underwood has independent marketplace experience based on his 25 years as an FX trader.  And Underwood is unique because he is the only expert in this case who offered opinions on highly-contested issues contrary to the party that hired him.

It is for this reason that Credit Suisse's reliance on *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458 (S.D.N.Y. 1995) (invoking Rule 403 because withdrawn expert was cumulative) is incorrect.  There is nothing cumulative about Underwood because Plaintiffs do not have another witness hired *by Defendants* admitting that spreads are sensitive information that should not be shared with competitors.  "[T]he very nature of a trial [is] a search for truth."  *Nix v. Whiteside*, 475 U.S. 157, 166 (1986).  Few things expose the truth more than an expert who disagrees with the party who hired him.

*Vandenbraak v. Alfieri* is instructive.  2005 WL 1242158 (D. Del. May 25, 2005).  There, the court permitted plaintiffs to read defendant's withdrawn expert's deposition testimony into evidence and allowed evidence that the expert was previously hired by defendant.  *Id.* at *1, *4.  The court analyzed the prejudice issue under Rule 403 and found the probative value outweighed any prejudice because "a fact finder must judge the weight and credibility of expert testimony, which naturally should include an understanding of the influences brought to bear on the expert."  *Id.* at *5.

Credit Suisse made its bed by hiring an expert who agrees with Plaintiffs and allowing its merits expert to cite him.  There is nothing unfair about making Credit Suisse lie in that bed.

## IV. CONCLUSION

Credit Suisse's Motion *in Limine* should be denied.

---

[2] *See also Fitzpatrick v. Holiday Inns, Inc.*, 507 F. Supp. 979, 980 (E.D. Pa. 1981) (holding plaintiff may seek testimony from an opponent's withdrawn expert to testify about opinions previously formed, citing *Carter-Wallace*, 474 F.2d at 536 and *Kaufman*, 539 F.2d at 817).

DATED:  August 19, 2022                    Respectfully submitted,

SCOTT+ SCOTT ATTORNEYS AT LAW LLP
CHRISTOPHER M. BURKE (CB-3648)
WALTER W. NOSS (WN-0529)
KRISTEN M. ANDERSON (*pro hac vice*)
KATE LV (*pro hac vice*)


                    s/ Christopher M. Burke
                CHRISTOPHER M. BURKE

600 West Broadway, Suite 3300
San Diego, CA  92101
Telephone:  619/233-4565
619/233-0508 (fax)
cburke@scott-scott.com
wnoss@scott-scott.com
kanderson@scott-scott.com
klv@scott-scott.com

SCOTT+ SCOTT ATTORNEYS AT LAW LLP
DAVID R. SCOTT (DS-8053)
JOSEPH P. GUGLIELMO (JG-2447)
DONALD A. BROGGI (DB-9661)
SYLVIA M. SOKOL (SS-0317)
THOMAS K. BOARDMAN (TB-0530)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY  10169
Telephone:  212/223-6444
212/223-6334 (fax)
david.scott@scott-scott.com
jguglielmo@scott-scott.com
dbroggi@scott-scott.com
ssokol@scott-scott.com
tboardman@scott-scott.com

HAUSFELD LLP
MICHAEL D. HAUSFELD
REENA A. GAMBHIR (*pro hac vice*)
TIMOTHY S. KEARNS (*pro hac vice*)
NATHANIEL C. GIDDINGS (*pro hac vice*)
SARAH R. LAFRENIERE (*pro hac vice*)
888 16th Street NW, Suite 300
Washington, DC  20006
Telephone:  202/540-7143
202/540-7201 (fax)
mhausfeld@hausfeld.com
rgambhir@hausfeld.com
tkearns@hausfeld.com
ngiddings@hausfeld.com
slafreniere@hausfeld.com

HAUSFELD LLP
MICHAEL P. LEHMANN
CHRISTOPHER L. LEBSOCK (*pro hac vice*)
600 Montgomery Street, Suite 3200
San Francisco, CA  94111
Telephone:  415/633-1908
415/358-4980 (fax)
mlehmann@hausfeld.com
clebsock@hausfeld.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (PC-5116)
DAVID W. MITCHELL (*pro hac vice*)
RANDI D. BANDMAN (RB-7278)
ALEXANDRA S. BERNAY (*pro hac vice* pending)
CARMEN A. MEDICI (*pro hac vice* pending)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
davidm@rgrdlaw.com
randib@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

        KOREIN TILLERY
        GEORGE A. ZELCS
        205 N. Michigan Avenue, Suite 1950
        Chicago, IL  60601-4269
        Telephone:  312/641-9760
        312/641-9751 (fax)
        gzelcs@koreintillery.com

        KOREIN TILLERY, LLC
        STEPHEN M. TILLERY
        STEVEN M. BEREZNEY
        505 North 7th Street, Suite 3600
        St. Louis, MO  63101
        Telephone:  314/241-4844
        314/241-3525 (fax)
        stillery@koreintillery.com
        sberezney@koreintillery.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

s/ Christopher M. Burke<br>
CHRISTOPHER M. BURKE