**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 13 Civ. 7789 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF CREDIT SUISSE DEFENDANTS' MOTION FOR RECONSIDERATION IN PART OF THE COURT'S DRAFT VERDICT FORM**

## **TABLE OF CONTENTS**

                                                                                                                          **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

LEGAL STANDARDS ................................................................................................................ 2

ARGUMENT ................................................................................................................................. 2

      I.      The Verdict Sheet Should Require the Jury to Identify the Traders Involved in Any Conspiracy They Find, Not Just the Banks ....................................................... 2

      II.     The Proposed Date Ranges in Verdict Draft 2 Are Unduly Suggestive ................. 4

CONCLUSION ............................................................................................................................... 5

The Credit Suisse Defendants ("Credit Suisse") respectfully submit this memorandum of law in support of their motion under Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3, to request that the Court reconsider a portion of its current draft verdict form, Court Draft 2 ("Verdict Draft 2"), annexed to the Court's September 3, 2022 Order (ECF No. 1879) (the "Verdict Form Order").

## PRELIMINARY STATEMENT

In its September 2, 2022 response to the Court's initial proposed verdict form, titled Court Draft 1 (ECF No. 1842) ("Verdict Draft 1"), Credit Suisse asked the Court to include in the verdict form (1) a question requiring the jury to identify the traders (not simply the banks) involved in any conspiracy the jury finds, and (2) the option of finding multiple conspiracies (ECF No. 1875 at 2-5). In its Verdict Form Order, the Court stated that it intends to adopt a verdict sheet substantially in the form of Verdict Draft 2, which includes additional questions permitting the jury to find multiple conspiracies, and the time frames and banks involved in any such conspiracies, but does not require the jury to identify the traders who participated.

Credit Suisse respectfully requests that the Court partially reconsider its Verdict Draft 2, to add the requirement that the jury identify the traders, not merely the banks, that are members of any conspiracy the jury finds. As discussed below, without this requirement, Verdict Draft 2 would permit the Plaintiffs to string together a series of mini-conspiracies (which Verdict Draft 2 rightly permits them to find) into one or more larger conspiracies, even where the proof does not support it.

Separately, we respectfully request that the Court revise the date range options for any conspiracy the jury finds (Verdict Draft 2, Questions 4A, 5A), since, as discussed below, the current formulation is unduly suggestive.

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3, "[t]he decision to grant or deny a motion for reconsideration . . . rests within the sound discretion of the district court."  *Kriss* v. *Bayrock Group LLC*, 2017 WL 1901966, at *1 (S.D.N.Y. May 8, 2017) (Schofield, J.) (citation and internal quotation marks omitted).  Reconsideration is appropriate where the movant can "point to controlling decisions or data that the court overlooked."  *Id*. (citation omitted).  These are "matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader* v. *CSX Transportation Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

**ARGUMENT**

I. **THE VERDICT SHEET SHOULD REQUIRE THE JURY TO IDENTIFY THE TRADERS INVOLVED IN ANY CONSPIRACY THEY FIND, NOT JUST THE BANKS**

In its Verdict Form Order, the Court declined to require the jury to identify the traders involved in any conspiracy it finds, "for substantially the same reasons stated in the Opinion and Order denying Defendants' motion to decertify the class.  The banks, including CS, are the defendants who allegedly conspired, albeit through individuals acting as their agents."  (ECF No. 1879 at 2.  Credit Suisse recognizes that under the doctrine of *respondeat superior*, a bank can be held ***liable*** for the unlawful acts of its traders who are found to be part of the conspiracy.  But that is a doctrine of liability; it does not define the scope of the conspiratorial agreement.  And it would be misleading and legally incorrect to permit the Plaintiffs to argue that simply because one trader at a bank is found to have been part of a conspiratorial agreement, *all* traders at that bank were also part of the same agreement.  See *AD/SAT, Division of Skylight, Inc.* v. *Associated Press,* 181 F.3d 216, 234 (2d Cir. 1999) ("[A]lthough the nature of trade associations is such that they are frequently the object of antitrust scrutiny, every action by a trade association is not concerted action

2

by the association's members. . . . [A]n antitrust plaintiff must present evidence tending to show that association members, in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective." (citation omitted)); Thomas V. Vakerics, *Antitrust Basics* § 6.10 ("In situations where a trade association, its officers, employees or members are found to have violated the antitrust laws, membership in the association will not automatically involve all members in the violation. There must, instead, be some evidence of actual knowledge of, and participation in, the illegal scheme in order to establish a violation of the antitrust laws by a particular association member.") (cited with approval in *AD/SAT*, 181 F. 3d at 234).

Indeed, if the verdict sheet simply asks the jury to find which banks participated in any conspiracy, but not which traders, it would allow the Plaintiffs to misleadingly string together a series of smaller conspiracies into one large conspiracy, with the false suggestion that all traders at a bank act as a monolith.  Consider, for example, a situation where the proof shows that:

- Trader 1 at Bank A, Trader 2 at Bank B, and Trader 3 at Bank C (none of which are Credit Suisse) are engaged in collusive discussions in a chatroom;  and
- A single Credit Suisse trader is in a different chatroom with an entirely different trader at Bank C, Trader 4, engaged in what the Plaintiffs seek to characterize as collusive discussions.  The Credit Suisse trader had no contact with any other traders at Banks A, B, or C, nor is there any proof connecting this discussion with any other allegedly collusive discussion.

On these facts, the most the evidence would support is a jury finding that the Credit Suisse trader conspired with *one* trader, Trader 4, at *one* bank, Bank C.  But in its current form, Verdict Draft 2 does not allow the jury to distinguish between Trader 4 at Bank C, with whom the Credit

3

Suisse trader *could* be found to have conspired, from other traders at Bank C, with whom the Credit Suisse trader clearly did *not* conspire.  And since Verdict Draft 2 asks the jury to find participation in a conspiracy at the *bank* level, but not the trader level, it would allow the Plaintiffs to argue to the jury that Credit Suisse participated in the conspiracy with Bank C, which in turn participated in the conspiracy with Banks A and B, falsely creating a single conspiracy among Credit Suisse and Banks A, B, *and* C, that the evidence clearly does not support.  The Plaintiffs could do this repeatedly, linking banks A, B, or C to numerous other banks through non-overlapping traders and cobbling together an all-bank conspiracy, when all the evidence supports is a conspiracy between one Credit Suisse trader, and one trader at a single other bank.

This problem can easily be avoided by including a question in the verdict sheet requiring the jury to name the traders whom they find are part of any conspiracy.  This would *not* require the verdict sheet to list all of the traders that could be part of a conspiracy; it would simply ask the jury to write in the names of the traders they determine to be part of any conspiracy the jury finds. The jury will hear and see ample evidence identifying particular traders for them to make this determination.  As indicated, without such a question, Verdict Draft 2 would permit the jury to find a conspiracy that the evidence simply does not permit.

## II.   THE PROPOSED DATE RANGES IN VERDICT DRAFT 2 ARE UNDULY SUGGESTIVE

Finally, we respectfully submit that the date options in Verdict Draft 2—which ask whether the conspiracy existed from "December 1, 2007 to December 12, 2013 (inclusive) *Or* The following lesser period" (Verdict Draft 2, Questions 4A, 5A)—are unduly and unnecessarily suggestive.  In short, the jury could simply be asked to identify the start and end dates of any conspiracy they find, and there is no apparent reason to frame the question as a dual choice between the Plaintiffs' position and all other possible time periods.

## **CONCLUSION**

For the reasons stated, Credit Suisse respectfully requests that the Court revise the verdict form to (1) require the jury to identify the traders involved in any conspiracy they find; and (2) ask the jury to simply fill in the period of any conspiracy they find, and omit the choice of finding the full date range alleged by the Plaintiffs.

Dated: September 16, 2022
New York, New York

CAHILL GORDON & REINDEL LLP

By: /s/ Herbert S. Washer
Herbert S. Washer
Anirudh Bansal
Jason M. Hall
Edward Moss
Tammy L. Roy
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
abansal@cahill.com
jhall@cahill.com
emoss@cahill.com
troy@cahill.com

*Attorneys for Defendants Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse Securities (USA) LLC*