October 6, 2022

<u>Via ECF</u>

Honorable Lorna G. Schofield
U.S. District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

    Re: *In re Foreign Exchange Benchmark Rates Antitrust Litigation*
       Case No. 1:13-cv-07789-LGS

Dear Judge Schofield:

  Pursuant to the Court's Order of October 3, 2022 (ECF No. 1946, the "Order"), the parties met and conferred in an effort to agree on which chats subject to the parties' September 29, 2022, letter are admissible, subject to redaction, or excluded based on the Court's guidance. The parties jointly submit this letter and the parties' positions on each disputed document are set forth below.

  Additionally, the parties request clarification regarding the Court's statements regarding the use of impeachment evidence. The parties will submit a joint letter by October 7, 2022 setting forth their respective positions regarding impeachment evidence.

**I.**  **Disputed Documents**

**PTX 64 (ECF 1942-3)**

Plaintiffs' Position:

**PTX64** is admissible because it references Bank of America's longstanding policy which informs traders that sharing spreads with competing banks was prohibited. The Court ruled "[c]hats that reference existing (not subsequent remedial) policies against information-sharing among competitors, which traders were informed prohibited sharing spreads, are admissible." Order, ¶1. At least as early as May 2009, three years before the alleged triggering event – the LIBOR investigation, Bank of America's policy made it clear – no spread discussions in multibank chat rooms. The same policy was restated in 2011 in a chat room in which a Credit Suisse trader also participated. Bank of America's policy concerning traders' conduct in multibank chat rooms did not change during the Class Period and always prohibited spread sharing with competing banks. The factual record also shows Bank of America failed to enforce its own policy. Plaintiffs' trial exhibit list contains more than 400 example spread chats between 2009 and 2012 involving Bank of America traders, more than 200 of whom were in chat rooms where Credit Suisse traders participated. In addition, following the chat in PTX64, Plaintiffs' exhibit list contains 52 examples of Bank of America traders discussing spreads with competitors, 29 of whom were with Credit Suisse traders, with the last one occurring in December 2013. This demonstrates the exhibit was neither subsequent nor remedial. *See* Appendix A to ECF No. 1942, detailing numerous chats occurring following the date of PTX64.

Moreover, Credit Suisse argues that PTX 64 shows Bank of America adopted a new policy which prohibit the Bank of America USD/CAD trader from talking about USD/CAD in multibank chat rooms. The chat shows this purported new rule was not about spread discussion. ( At 07:08:24, the Credit Suisse trader writes "u guys got much on the downside in usdcad? any orders or levels or anything like that?" At 07:09:17-07:11:42, the Bank of America trader replies "can't comment pal…Can't talk about cad." At 07:12:14, the Credit Suisse trader then asks "any other restrictions? Or just cad." At 07:12:20, the Bank of America trader answers "No others.") (emphasis added) Even though Plaintiffs do not believe the discussion regarding USD/CAD in this chat qualifies as a subsequent remedial measure, Plaintiffs propose the attached redactions to ease Defendants' concern.  But the Bank of America traders' statement at 07:15:57 "No asking for Spreads" is a restatement of a long-standing policy that applied to all Bank America traders regardless of what currency pairs they were trading or discussing in multibank chat rooms.  *See* Ex 1 (ATTACHED).

Credit Suisse's Position:

**PTX 64** is inadmissible under the second paragraph of the Court's Order because it references at least two Bank of America policy changes and the document does not reference efforts to circumvent the policy not to share spreads.  The two Bank of America policy changes are: (1) as the BoA USD/CAD dealer, the trader cannot talk about USD/CAD (*see* 7:11:42 (BoA trader says that he "[c]an't talk about cad")); and (2) BoA traders cannot talk about spreads (*see* 07:15:50-07:16:16 (BoA trader says: "Also / No asking for spreads / Bad is / Hey guys what is spread on 300 audnzd?  That looks like collusion")).  Plaintiffs are wrong that this was not a *change* to Bank of America's policies and merely reflects an old policy.  Indeed, the trader explains that the changes follow a meeting with lawyers and compliance.  Also, the trader's explanations of what he now can and can't say demonstrate that this is a new policy.  *See* 07:14:23 (BoA trader says "[n]o issues [on the] chat stuff  its  ok  I've had meetings with my lawyers and compliance on it as long as its vague information  no amount  no names  no class of customer its ok")).

There is also no evidence in the chat that the Bank of America trader is attempting to circumvent the policy against sharing spreads.  Indeed, Plaintiffs' summary exhibit of spread chats does not include any spread chats involving the Bank of America Trader in PTX 64 following the date of PTX 64 (9/12/2012).  The conduct of traders at Credit Suisse is irrelevant to whether Bank of America's policy changes are inadmissible subsequent remedial measures.

**PTX 751 (ECF 1942-4)**

Plaintiffs' Position:

**PTX 751** is admissible for the same reason as PTX 64. It references existing policies barring the sharing of confidential information, including spreads. PTX 751 is simply a restatements of Bank of America's long-standing and unchanged policy that traders ignored and the bank failed to enforce.[1]

---

[1]   As the Court stated, references in chats to policies against the sharing of spreads among competitors are, for the most part, admissible for many of the same reasons Defendants' Seventh Motion in Limine was denied in part." In that Order the Court held guidance regarding policies

Credit Suisse's Position:

**PTX 751** should be excluded under the second paragraph of the Court's Order because it references a policy change and the document does not reference efforts to circumvent the policy. At 12:58:04 the Bank of America trader says, "mate im sorry i dont want to sound like an idiot, but I'm not allowed to discuss sopreads on chat *anymore*...its a bit ridiculous but it could be seen as price fixing apparently." (emphasis added). This use of the word "anymore" clearly indicates that this is a revision to the firm's previous policies. Furthermore, there is no indication that the Bank of America trader is seeking to circumvent the policy.

**PTX 976 (ECF 1942-11)**

Plaintiffs' Position:

**PTX976** is admissible as redacted by Plaintiffs. Plaintiffs' proposed redactions remove specific language regarding closing of chat rooms. As redacted, Plaintiffs would instead use the part of the exhibit that says, "we are OK to continue the bank-to-bank chats as long as the information shared does not influence pricing (collusion of banks) . . . ." Again, this is not a new policy, but a reference to a pre-existing policy in response to closures at other banks. (*See* discussion at ECF No. 1942 at 3-4, explaining that Bank of America's policies did not change). As redacted, PTX976 fits squarely within the Court's Order. Order, ¶1.

Credit Suisse's Position:

**PTX 976** should be excluded under the second paragraph of the Court's Order because it references a policy change and the document does not reference efforts to circumvent the policy. The September 17, 2012 email at 15:01 describes remedial measures relating to the closing of chatrooms that Plaintiffs agree is not admissible. The same email also discusses the meeting and resultant policy changes mentioned by the Bank of America trader in PTX 64. For the same reasons set forth above, this document should be excluded. The Bank of America employees are discussing an internal policy change and do not discuss methods of circumvention. The portion that Plaintiffs flag ("we are OK to continue the bank-to-bank chats as long as the information shared does not influence pricing (collusion of banks)….") is an articulation of the policy change—information that influences pricing cannot be shared. Even though it articulates behavior that remains permissible, it can only be understood in the context of a policy change, precisely the evidence the Court has held inadmissible. Moreover, to the extent any portions of the emails do not directly discuss subsequent remedial measures, such portions are so intertwined with the discussions of subsequent remedial measures that the entire email is inadmissible.

**PTX 2508**

Plaintiffs' Position:

---

against information sharing and the like, was "highly probative to rebut Defendants' anticipated argument that the traders' actions were innocuous or normal and not evidence of a conspiracy." ECF 1872 at 8.

3

**PTX 2508** is an example of a Credit Suisse trader blatantly disregarding advice not to share spreads in chat rooms. See PTX 2508 at 620-21 (Credit Suisse trader shares spread immediately after being told spreads cannot be discussed).

Credit Suisse's Position:

**PTX 2508** should be excluded under the second paragraph of the Court's Order because it references a Bank of America policy change and the document does not reference efforts to circumvent the policy. Indeed it specifically shows that the trader is abiding by the policy. At 13:53:57 the Credit Suisse trader asks the BoA trader the spread in 40 eurcad and the BoA trader explains "sorry darling i been to a meeting / and unfortunately… cant discuss spreads on chat." At 09:43:42 the CS trader asks about spreads again and the BoA trader copies and pastes the prior discussion about how he can't discuss spreads. The reference to the "meeting" shows that this is a new policy and the BoA trader's refusal to answer the questions about spreads show there was no circumvention. The Credit Suisse trader's reaction to the policy change is entirely irrelevant to whether the evidence should be excluded as a subsequent remedial measure taken by Bank of America.

**PTX 2686**

Plaintiffs' Position:

**PTX 2686** is admissible under the Court's guidance. In this document, the Bank of America trader discussed that other banks might be scrutinized "in the future" and that even Bank of America "had not made a final decision." This falls squarely within the Court's Order and at least should be admissible as impeachment evidence if Defendants open the door, regardless of whether it touches upon any subsequent measures. "Excluded references to policy changes and chatroom closures may become admissible for 'impeachment' if Defendants open the door." Order, ¶3.

Credit Suisse's Position:

**PTX 2686** should be excluded under the second paragraph of the Court's Order because it references "the closure or prohibition of interbank chatrooms." In the chat, a Bank of America trader explains that he "[has a] meeting with legal/comp[laince later might be the end of chats." 08:24:07. Then a Citi trader describes a policy closing interbank chats that Barclays has *already adopted* "weird thing with barclays is / i believe / they can have chats / but no more than 1 person / so no group chats." 08:29:29-08:29:51. Nearly four hours later, the Bank of America trader reports that "for months we have been reviewing bank-bank chats and competition law" and that although they "have not made a final decision" it "makes me want to remain very quiet." 12:21:34-12:22:19. It would be an exception swallowing the rule to hold that discussions regarding potential remedial measures that are later adopted are nonetheless admissible.

Respectfully submitted,

| | |
|---|---|
| SCOTT+SCOTT ATTORNEYS AT LAW LLP | HAUSFELD LLP |
| *s/* Christopher M. Burke | *s/* Michael D. Hausfeld |
| Christopher M. Burke | Michael D. Hausfeld |
| 600 W. Broadway, Suite 3300 | 888 16th Street NW, Suite 300 |
| San Diego, CA 92101 | Washington, DC 20006 |
| Telephone: 619-233-4565 | Telephone: 202-540-7200 |
| cburke@scott-scott.com | mhausfeld@hausfeld.com |

*Attorneys for Plaintiffs*

CAHILL GORDON & REINDEL LLP

*s/* Jason M. Hall
Herbert S. Washer
Anirudh Bansal
Jason M. Hall
Edward Moss
Tammy L. Roy
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
abansal@cahill.com
jhall@cahill.com
emoss@cahill.com
troy@cahill.com

*Attorneys for Defendants*
*Credit Suisse Group AG, Credit Suisse AG,*
*and Credit Suisse Securities (USA) LLC*