October 9, 2022

<u>**Via ECF**</u>

Honorable Lorna G. Schofield
U.S. District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

      Re:   *In re Foreign Exchange Benchmark Rates Antitrust Litigation*
              Case No. 1:13-cv-07789-LGS

Dear Judge Schofield:

      The parties have a dispute regarding appropriate redactions to apply to evidence relating to criminal prosecutions, guilty pleas, and convictions of other banks and traders, and the Barclays-DFS Consent Order, which the Court addressed in its ruling on Credit Suisse's third, fourth, and fifth motions *in limine* respectively. Opinion and Order, ECF No. 1880 (Sept. 6, 2022) (the "MIL Order) at 4-6. The parties respectfully submit their respective positions herein and ask that the Court resolve the dispute so that the parties may conform their trial presentations to the Court's ruling. The parties will request a link to upload copies of the documents Plaintiffs intend to offer into evidence with the parties' proposed redactions highlighted. Plaintiffs' proposed redactions are highlighted in yellow. Where Credit Suisse objects to a redaction proposed by Plaintiffs, the portion of the proposed redaction is also underlined in blue highlight or the left margin includes a blue highlight. If the text is highlighted yellow without blue underlining or sidebar, the parties agree that portion should be redacted. Redactions that Credit Suisse proposes that Plaintiffs object to are highlighted in blue.

**<u>Credit Suisse's Position</u>**

**I.    Background: The Court Held that it Would Admit Factual Admissions Pertaining to the Conduct At-Issue and Other Admissions Necessary for Context**

      On August 12, 2022, Credit Suisse moved to exclude: evidence and argument that certain other banks, and those banks' FX traders, were criminally prosecuted, pleaded guilty, or were convicted of Sherman Act violations (Defendants' Motion in Limine ("MIL") 3, ECF 1727; evidence and argument concerning factual admissions contained in guilty pleas and plea allocutions of non-Credit Suisse persons and entities (Defendants' MIL 4, ECF 1738); and regulatory consent orders and settlements (Defendants' MIL 5, ECF 1746). On September 6, 2022, the Court granted in part and denied in part the Defendants' MIL 5 and denied Defendants' MILs 3 and 4. MIL Order at 4-6. As to MIL 5, the Court granted the motion except as to the factual admissions contained in the Barclays DFS Consent Order that are relevant to the conduct at issue in this case. MIL Order at 6. As to Defendants' MILs 3 and 4, the Court denied the motions, holding that "[t]he Court will admit those portions of the factual admissions pertaining to the conduct at issue in this case, *i.e.*, widening spreads" and "[o]ther related admissions may be admitted if necessary for context." MIL Order at 5. The Court noted that the guilty plea evidence

would only be admitted to prove whether a conspiracy existed, and not Credit Suisse's participation in any such conspiracy, and that a limiting instruction to this effect would be given. *Id.*

Plaintiffs have proposed redactions to the evidence covered by the Court's rulings on CS's MILs 3, 4, and 5, and the parties have resolved disputes relating to certain proposed redactions. Nonetheless, disputes remain as to 18 exhibits comprised of: criminal Informations against Jason Katz (PTX1591) and BNP Paribas (PTX2670); the Indictment and Criminal Judgment against Akshay Ayer; the plea agreements of Barclays (PTX2677), BNP Paribas (PTX2667), Citigroup (PTX2672), JP Morgan, RBS, UBS, Christopher Cummins (PTX2665), and Jason Katz (PTX2681); plea allocution transcripts of Barclays, Citigroup, JP Morgan, RBS (PTX1602, PTX2673, PTX2678),[1] BNP Paribas (PTX2669), and Christopher Cummins (PTX2671); and the Barclays DFS Consent Order (PTX1594). As to these disputed documents, Plaintiffs' proposed redactions are both under- and over-inclusive and should be rejected for several reasons.

First, the Plaintiffs decline to redact facts that were not admitted to by the banks and traders who pled guilty. This includes background regarding the FX markets that could confuse the jury since they will be hearing detailed evidence on the markets in this case, and inflammatory and prejudicial material including the size of fines paid by the pleading or settling institutions and traders. The Plaintiffs also seek to admit the *Government's* recitations about UBS's improprieties in the FX market, attached to UBS's plea agreement in the LIBOR matter, but to which there was no admission by UBS. The Plaintiffs even seek to admit the Indictment of Mr. Aiyer, even though he did not plead guilty to it, but rather was convicted after a trial, which naturally does not mean that the jury found every fact alleged in the Indictment.

At the same time, Plaintiffs propose to redact the majority of the factual bases underlying the other banks' and traders' pleas and the Barclays Consent Order, which are essential context for those banks' and traders' admissions. This too is highly prejudicial and will mislead the jury as to the facts underlying and leading to the guilty pleas and Consent Order. As Plaintiffs are aware, Credit Suisse will argue at trial that the conduct at issue in the guilty pleas and Consent Order was different in kind from the alleged conspiracy in this action. Plaintiffs' proposal to redact the evidence so it appears that the other banks' and traders' admissions focused solely on the conduct the Plaintiffs deem most similar to the allegations in this trial is simply misleading.[2]

Moreover, contrary to Plaintiffs' assertions, Credit Suisse's position is in no way inconsistent with the objections that Credit Suisse raised to Plaintiffs' proposed trial exhibits.

---

[1] PTX1602, PTX2673, and PTX2678 are the same transcript with different ECF header information. Credit Suisse makes the same objections to all three transcripts.

[2] Credit Suisse's proposal is entirely consistent with its requests that Plaintiffs not seek to prove "other bad acts" such as stop-loss jamming and benchmark manipulation. These allegations are irrelevant to whether the alleged conspiracy existed, and an attempt by Plaintiffs to prove such conduct would waste time and prejudice Credit Suisse by potentially imputing irrelevant bad acts *to Credit Suisse*. Nonetheless, other acts to which other banks admitted are necessary context to their guilty pleas and other resolutions, and in weighing the relevance of these resolutions to this case, it is essential that the jury be allowed to consider the complete factual bases for the resolutions.

Credit Suisse preserved but withdrew its prior objections to the guilty plea-related exhibits based on the Court's MIL rulings, but naturally this was subject to the Plaintiffs proffering which portions of the relevant materials they sought to admit, along with proposed redactions to conform to the Court's rulings, on which the Court directed the parties to meet and confer. The Plaintiffs sent us the voluminous materials and proposed redactions on October 5, 2022 at approximately 4:13 PM, after which the undersigned reviewed the materials and conferred with the Plaintiffs' counsel the following morning, October 6. We then sent the Plaintiffs' counsel our counter-redactions on October 8, and conferred with them about our proposals later that afternoon. Clearly there was no delay, much less any waiver of the Credit Suisse Defendants' right to hold the Plaintiffs to the Court's rulings.

In sum, Plaintiffs' proposed redactions are inconsistent with the Court's September 6th Order, would lead to substantial juror confusion, present the jury with highly inflammatory and prejudicial evidence, present the criminal prosecution evidence in a misleading light, and introduce evidence that has not been proven or admitted by the banks and traders involved. The Court should reject Plaintiffs' proposal and adopt Credit Suisse's proposed redactions. Specifically, and as set forth below, the Court should: (1) order Plaintiffs to redact background information regarding the FX markets that are irrelevant to the scope of the guilty pleas, and could confuse the jury; (2) order Plaintiffs to redact information that is irrelevant to the admissions made by the parties that pled guilty, including information regarding penalties and remedial measures; (3) reject Plaintiffs' proposed redactions of essential context regarding the conduct underlying the guilty pleas; (4) reject Plaintiffs' request to admit the UBS LIBOR guilty plea, and the Government's recitation of FX-related facts appended to the UBS plea agreement; and (5) reject Plaintiffs' request to admit the Aiyer Indictment.

## II.   Plaintiffs Should Redact Background Information Regarding the FX Marketplace From Each of the Disputed Documents

Plaintiffs fail to redact dozens of statements in the disputed documents that provide duplicative and unnecessary background information on the FX spot market. Such statements are not admissions of fact or guilt and they do not pertain to the scope of the alleged conspiracy in *this* case. Rather, those background statements purport to describe the "global" FX spot market, or its daily "worldwide trading volume," or a "typical[]" or "general[]" FX spot market trade.[3] The jury will hear extensive background information on these issues and the FX market in general in this trial, and all the descriptions in the plea materials will do is confuse the jury by providing them with potentially-competing accounts from official-looking documents that have the imprimatur of the United States Government.

---

[3] Paragraphs 4 and 4(b)-(f) of the Plea Agreements of The Royal Bank of Scotland PLC (PTX1587), Citicorp (PTX2672), JPMorgan Chase & Co. (PTX2679), and Barclays PLC (PTX2677). Paragraphs 4 and 4(b)-(g) of the Plea Agreement of BNP Paribas USA Inc. (PTX2667)  Paragraphs 2 and 4-9 of the BNP Paribas USA Inc. Information (PTX2670). Paragraphs 4, 6-12 of the Jason Katz Information (PTX1591). Paragraphs 1-4 of the Barclays DFS Consent Order (PTX1594).

### III. Plaintiffs Should Redact Information that is Irrelevant to Admissions Made by the Parties that Pled Guilty

Plaintiffs also propose to offer the plea agreements and Barclays Consent Order without redacting several highly prejudicial statements that are unnecessary to the jury's understanding of the underlying offense conduct or factual admissions of those cases, and will only confuse and distract the jury from the issues in this case.

The plea agreements of the Royal Bank of Scotland PLC (PTX1587), Citicorp (PTX2672), JPMorgan Chase & Co. (PTX2679), Barclays PLC (PTX2677), BNP Paribas USA, Inc. (PTX2667), Christopher Cummins (PTX2665), and Jason Katz (PTX2681), all contain discussions of the sentencing guidelines and statutory maximum penalties for the criminal offenses at issue in those actions,[4] as well as descriptions of the sentencing and cooperation agreements that were ultimately reached.[5] All of plea agreements also contain a number of extraneous statement that, while less prejudicial, are not admissions, and are entirely unnecessary to the jury's understanding of the facts underlying those resolutions, such as representation by counsel, the voluntariness of the pleas, and the consequences of those parties' violations of their respective plea agreements.[6] The plea agreements also contain descriptions of the statutory elements of the criminal conspiracy charges, which are not at issue here, and could confuse the jury when instructed by the Court on the elements they must find in this case.[7] Moreover, the plea agreements and the Barclays DFS Consent Order include statements of the significant criminal or regulatory fines in the tens or hundreds of millions of dollars, and other remedial measures the other banks agreed to in the criminal or regulatory enforcement actions, which serve no purpose here other than to unfairly prejudice the jury against the conduct at issue; the references to remedial measures also run afoul of Federal Rule of Evidence 407 and this Court's Order on MIL 8.[8]

---

[4] Paragraphs 6-8 in the Plea Agreements of The Royal Bank of Scotland PLC (PTX1587), Citicorp (PTX2672), JPMorgan Chase & Co. (PTX2679), Barclays PLC (PTX2677), and BNP Paribas USA Inc. (PTX2667). Paragraphs 6-9 in the Plea Agreements of Christopher Cummins (PTX2665) and Jason Katz (PTX2681).

[5] Paragraphs 10-12, 14-16, and 21-24 in the Plea Agreements of The Royal Bank of Scotland PLC (PTX1587), Citicorp (PTX2672), and JPMorgan Chase & Co. (PTX2679). Paragraphs 13-15 and 17-18 in the Plea Agreement of Barclays PLC (PTX2677). Paragraphs 10-18 of the Plea Agreement of BNP Paribas USA Inc. (PTX2667). Paragraphs 2-5 and 10-15 of the Plea Agreement of Christopher Cummins (PTX2665) and Jason Katz (PTX2681).

[6] Paragraphs 17-20 in the Plea Agreements of The Royal Bank of Scotland PLC (PTX1587), Citicorp (PTX2672), and JPMorgan Chase & Co. (PTX2679). Paragraphs 20-23 in the Plea Agreement of Barclays PLC (PTX2677). Paragraphs 19-26 in the Plea Agreement of BNP Paribas USA Inc. (PTX2667). Paragraphs 16-22 in the Plea Agreements of Christopher Cummins (PTX2665) and Jason Katz (PTX2681).

[7] Paragraph 5 in the Plea Agreements of The Royal Bank of Scotland PLC (PTX1587), Citicorp (PTX2672), JPMorgan Chase & Co. (PTX2679), Barclays PLC (PTX2677), and BNP Paribas USA Inc. (PTX2667). Similarly, the Barclays DFS Consent Order includes a recitation of the New York state banking lay and regulations that Barclays violated, at paragraphs 69-70 (PTX1594).

[8] Paragraph 9 in the Plea Agreements of The Royal Bank of Scotland PLC (PTX1587), Citicorp (PTX2672), JPMorgan Chase & Co. (PTX2679), and BNP Paribas USA Inc. (PTX2667). Paragraph 12 in the Plea

### IV. Plaintiffs Should Not Redact Information Regarding the Conduct Underlying the Guilty Pleas and Barclays DFS Consent Order, Which is Necessary Context for Those Admissions.

Not only do Plaintiffs fail to redact inflammatory statements within the disputed documents, they propose to redact factual admissions that give necessary context to the other banks' and traders' pleas (and the Barclays Consent Order), and that, if omitted, would misleadingly frame those resolutions as based only on the conduct the Plaintiffs believe is most similar to what they have alleged against Credit Suisse.

In addition to the "coordinat[ion] [of] the price, size, and timing of their bids and offers," the other banks and individuals admitted to an array of other conduct that clearly informed their decisions to resolve their cases.[9] To omit this would cast those resolutions as based entirely on the bid/offer coordination, which is factually incorrect and would only permit the Plaintiffs to misleadingly argue that those banks and traders were caught committing the conduct alleged against Credit Suisse, and admitted it. The full conduct to which the other banks and traders admitted in their pleas (and the Barclays Consent Order) is essential context the jury must hear to fully understand those resolutions, and the Plaintiffs should not be permitted to redact it.

### V. The *Government's* Recitation of FX-related Conduct in the UBS LIBOR Plea Agreement Should Not be Admitted.

Unlike the other banks' pleas, the UBS LIBOR plea agreement did not involve any factual admission or guilty plea by UBS to conduct relating to the FX spot market. Rather, UBS pled guilty to a conspiracy related to its submission of LIBOR rates, and the factual basis for the prosecution of UBS was predicated on a determination by the Government that UBS breached a non-prosecution agreement related to the LIBOR conduct.[1] That determination by the Government, described in Exhibit 1 to the LIBOR plea agreement, describes FX-related conduct, but it is clear that this is the Government's description, not an admission by UBS. (PTX 2666, Exhibit 1, paragraph 2 ("The Criminal Division, in an exercise of the discretion conferred upon it by the agreed upon terms of the NPA, has determined that UBS violated the terms of the NPA and declared a breach of the NPA. Relevant considerations in arriving at that determination and

---

Agreement of Barclays PLC (PTX2677). Paragraphs 68, 72-77 and 79-88 of the Barclays DFS Consent Order (PTX1594).

[9] Paragraphs 4(i)(i) and 13(i)-(iii), and Attachment B in the Plea Agreements of The Royal Bank of Scotland PLC (PTX1587), Citicorp (PTX2672), and JPMorgan Chase & Co. (PTX2679). Paragraphs 4(i)(i) and 16(i)-(iii) in the Plea Agreement of Barclays PLC (PTX2677). Paragraphs 15-16, 20-31, and 41-56 of the Barclays DFS Consent Order (PTX1594). Paragraphs 4(j)(v)-(vi) in the Plea Agreement of BNP Paribas USA Inc. (PTX2667). Plea Allocution of BNP Paribas USA Inc. at 14:17-19 (PTX2669). Paragraphs 4(j)(i)-(ii), 12(a)-(b) and 12(e)-(f) of the BNP Paribas USA Inc. Information (PTX2670). Paragraphs 15(e)-(f) of the Jason Katz Information (PTX1591). Plea Hearing Transcript of Plea Allocution of Christopher Cummins at 23:15-21 (PTX2671).

[1] Paragraph 1 and Exhibit 1 of the Plea Agreement of UBS AG.

making the declaration include the following:"). And while UBS is not permitted to contradict the Government's description, UBS made no admission concerning this FX-related conduct, and accordingly, the Government's recitation is not a "factual admission" admissible under the Court's ruling on MIL 4. As far as the remainder of the agreement and UBS's plea to LIBOR-related conduct, while we are not asking the Court to reconsider any aspect of its ruling on MIL 3, the Court may want to consider whether the LIBOR plea is any longer relevant or probative of any issue in this case, since the Government's un-admitted FX-related determinations are inadmissible.

### VI. The Aiyer Indictment Should Not be Admitted.

Finally, the Plaintiffs seek to offer the Indictment of Akshay Aiyer, a former JP Morgan trader who was convicted of FX-related offenses *after trial*. However, while the jury's verdict in that case was a finding that Mr. Aiyer had committed the essential elements of the offense charged, like any jury verdict in a criminal case, it was by no means a finding that *all* the allegations in the Indictment – which go well beyond the elements – were proven. Accordingly, unlike a guilty plea, where facts are established by the defendant's admissions, Aiyer's trial conviction does not provide a factual basis for the admission of his Indictment.

**Plaintiffs' Position:**

### I. Background: Plaintiffs Have Offered Proposals Rooted in – and Consistent with – this Court's Order with Respect to Defendants' Motion *in Limine* No. 4 and Offered Similar Proposals with Respect to Related Documents Not Encompassed Therein.

After losing its prior bids to exclude what this Court has deemed "highly probative" and admissible evidence of banks' guilty pleas and plea allocutions, Credit Suisse now seeks to flout the Court's repeated holdings on these issues by redacting the vast majority of the material that the Court has deemed admissible. Credit Suisse's positions are merely another in what has become a series of motions for reconsideration.[10] With respect to these documents, Credit Suisse informed Plaintiffs that it had withdrawn its objections in light of the Court's ruling on the motions *in limine*, signaling that those were the sole operative objections that had existed.[11] Now, less than 72 hours

---

[10] Credit Suisse itself acknowledges this fact while purporting to disclaim this fact, stating "while we are not asking the Court to reconsider any aspect of its ruling on MIL 3, the Court may want to consider whether the LIBOR plea is any longer relevant…"

[11] This is reflected in the Exhibit Lists with which the Court was provided by Walter Noss on October 7, 2022. This position was originally communicated to Plaintiffs by Credit Suisse's counsel on September 15, 2022 with respect to numerous of these documents, identifying that objections were "withdrawn over objection per ECF No. 1887" with respect to 2667, 2668, 2669, 2670, 2671, and 2681. The latest version of the exhibit list is consistent, indicating that Credit Suisse's objections were "withdrawn over objection" while identifying varying orders. Credit Suisse's resurrection of objections they have purported to withdraw is problematic, to say the least.

before trial, Credit Suisse lodges new objections to several documents and proposes redactions that effectively function as another motion to reconsider as to others.

On September 3, 2022, the Court issued its amended opinion and order on Credit Suisse's motions *in limine*. ECF No. 1880. In that opinion and order, the Court denied Credit Suisse's motions *in limine* 3 and 4, seeking to exclude, respectively "evidence of criminal prosecutions of non-Credit Suisse persons and entities" and "factual admissions contained in guilty pleas and plea allocutions of non-Credit Suisse persons and entities." *See* ECF Nos. 1727, 1738, 1880.

With respect to Defendants' Motion *in limine* 4, the Court stated:

> The Court will admit those portions of the factual admissions pertaining to the conduct at issue in this case, i.e., widening spreads, including lowering bid quotes and increasing ask quotes through an anticompetitive conspiracy. Other related admissions may be admitted if necessary for context. The parties shall meet and confer regarding which factual admissions Plaintiffs intend to present to the jury and shall advise the Court by 12:00 P.M. two trial days before they intend to offer the evidence of any disputes that the parties are unable to resolve.

ECF No. 1880, at 5-6. Defendants sought reconsideration of the Court's denial of their motion *in limine* number 3 as to certain of the guilty plea documents. *See* ECF No. 1892. The Court denied the motion. ECF No. 1930.

Consistent with the Court's direction in the motion *in limine* order and the Parties' Trial Stipulation ordered by the Court at ECF No. 1917, Plaintiffs provided Credit Suisse with proposed exhibits related to the criminal matters on October 5, 2022. Plaintiffs withdrew one proposed exhibit and proposed redactions or page extractions to the majority of remaining proposed exhibits falling into Credit Suisse's motions *in limine* numbers 3 and 4.

Plaintiffs provided proposals as to all exhibits that were the subject of Motion *in Limine* No. 3 (although not so required by the Court) and Motion *in Limine* No. 4, as required by the Court, as well as the Barclays NYDFS Order with respect to which the Court denied Defendants' Motion *in Limine* No. 5.[12] In all, Plaintiffs sent proposals as to the following documents:

| PTX # | Document Description |
|-------|----------------------|
| 1587  | RBS Plea Agreement |
| 1591  | Katz Information |
| 1594  | Barclays NYDFS Consent Order |
| 1602  | Transcript of Barclays Plea Hearing |
| 2659  | Aiyer Criminal Indictment |

---

[12] For avoidance of doubt, Plaintiffs do not purport that each of the documents constitute "factual admissions" such that they fall under the Court's ruling on Motion *in Limine* Number 4. ECF No. 1880. Because the other material arose in a similar context, however, Plaintiffs proposed redactions out of an abundance of caution.

| | |
|---|---|
| 2660 | Aiyer Criminal Judgment |
| 2665 | Cummins Plea Agreement |
| 2666 | UBS Plea Agreement |
| 2667 | BNP Plea Agreement |
| 2669 | Transcript of BNP Criminal Information Conference |
| 2670 | BNP Criminal Information |
| 2671 | Cummins Plea Hearing Transcript |
| 2672 | Citigroup Plea Agreement |
| 2673 | Transcript of Plea Hearing for Citigroup, Barclays, JPM, RBS |
| 2677 | Barclays Plea Agreement |
| 2678 | Plea Hearing for Barclays, Citi, JPM, and RBS |
| 2679 | JPM Plea Agreement |
| 2681 | Katz Plea Agreement |

The Parties met and conferred on October 6, 2022 and again on October 8, 2022 following the receipt of some of Credit Suisse's proposed redactions. Following that second meet and confer, Credit Suisse proposed a set of redactions to additional documents.

This is particularly problematic given the last-minute approach taken by Credit Suisse. While Plaintiffs had provided all materials by Wednesday, October 5, Credit Suisse offered no counter-proposals until 1:41 p.m. on October 8, 2022, proposing further redactions as to PTX Numbers 1587, 1602, 2665, 2667, 2669, 2670, 2671, 2672, 2673, 2677, and 2678.[13] Credit Suisse responded by email at 4:04 p.m. as to PTX2659, 2660, and 2666, revealing that it objected to the admissibility of numerous documents, even after its objections were withdrawn. The Parties met and conferred at 5:15 p.m. on October 8, 2022. After that discussion, at 7:54 p.m. on October 8, 2022, for the first time, Credit Suisse proposed redactions as to PTX1591, 1594, and 2681.

## II. Credit Suisse Has Already Withdrawn Its Objections to the Admissibility of the Documents in Question, Leaving Only the Precise Content of the Documents to be Determined.

As reflected below, *each* of the documents to which Plaintiffs made proposals has been the subject of anywhere from one to three of Credit Suisse's motions *in limine* or motions to reconsider such motions.

As a result of those decisions, Credit Suisse represented to Plaintiffs that it had withdrawn its objections to these documents while seeking to preserve past objections in the list for purposes of appeal. Indeed, for every exhibit at issue, Credit Suisse had represented to Plaintiffs (and, through the Parties' Joint Submission of Exhibit Lists, to the Court) that its objections were withdrawn. Nonetheless, on the eve of trial, Credit Suisse now seeks to resurrect long-withdrawn objections and exclude certain documents in their entirety.

---

[13] PTX1602, 2673, and 2678 are the same transcript with different ECF header information reflecting the specific criminal case in which each was docketed.

| PTX # | Document Description | Motion *in limine* ECF Nos. | Credit Suisse's "FRE Objections" per 10/7/2022 Exhibit List |
|---|---|---|---|
| 1587 | RBS Plea Agreement | 1726, 1736, 1892 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 1591 | Katz Information | 1726, 1736 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 1594 | Barclays NYDFS Consent Order | 1744 | withdrawn over objection per ECF No. 1887 |
| 1602 | Transcript of Barclays Plea Hearing | 1726, 1736 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 2659 | Aiyer Criminal Indictment | 1726, 1736 | withdrawn over objection per ECF No. 1887 |
| 2660 | Aiyer Criminal Judgment | 1726, 1736 | withdrawn over objection per ECF No. 1887 |
| 2665 | Cummins Plea Agreement | 1726, 1736 | withdrawn over objection per ECF No. 1887 |
| 2666 | UBS Plea Agreement | 1726, 1736 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 2667 | BNP Plea Agreement | 1726, 1736 | withdrawn over objection per ECF No. 1887 |
| 2669 | Transcript of BNP Criminal Information Conference | 1726, 1736 | withdrawn over objection per ECF No. 1887 |
| 2670 | BNP Criminal Information | 1726, 1736 | withdrawn over objection per ECF No. 1887 |
| 2671 | Cummins Plea Hearing Transcript | 1726, 1736 | withdrawn over objection per ECF No. 1887 |
| 2672 | Citigroup Plea Agreement | 1726, 1736, 1892 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 2673 | Transcript of Plea Hearing for Citigroup, Barclays, JPM, RBS | 1726, 1736 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 2677 | Barclays Plea Agreement | 1726, 1736, 1892 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 2678 | Plea Hearing for Barclays, Citi, JPM, and RBS | 1726, 1736 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 2679 | JPM Plea Agreement | 1726, 1736, 1892 | withdrawn over objection per ECF Nos. 1887 and 1930 |
| 2681 | Katz Plea Agreement | 1726, 1736 | withdrawn over objection per ECF No. 1887 |

Credit Suisse should not be permitted to seek an untimely motion to reconsider the exclusion of any of these documents. Their efforts to accomplish the same – whether by re-

9

challenging the admissibility of documents or simply redacting the documents out of existence – should be denied.

### III. Plaintiffs Have Proposed Redactions to Reduce the Risk of Confusion of Issues, Consistent with the Approach Demanded by Credit Suisse as to Other Trial Exhibits; Credit Suisse's Reversal on the Eve of Trial is Prejudicial.

In denying Defendants' motion *in limine* No. 4, the Court stated that "[t]he Court will admit those portions of the factual admissions pertaining to the conduct at issue in this case, i.e., widening spreads, including lowering bid quotes and increasing ask quotes through an anticompetitive conspiracy. Other related admissions may be admitted if ***necessary*** for context." ECF No. 1880, at 5 (emphasis added).

Thus, even though the Court granted even wider latitude to Plaintiffs for the admission of the plea agreements in finding that they are "highly probative of opportunity, intent and plan – essentially, the modus operandi" of the alleged conduct at issue in the current case (ECF 1930, at 2), Plaintiffs proposed to apply a narrower view, seeking to reduce the risk of confusion of the issues.

Plaintiffs have thus applied redactions to remove material from documents that relates to (1) unilateral conduct by banks and (2) allegations that specifically relate to subjects excluded from the current case – fix manipulation and collusive conduct aimed at triggering limit orders. Further redactions were made to exclude references to former Defendants' settlements of the above-captioned action and other discussions of this case. Plaintiffs proposed redactions that permitted the jury sufficient material to understand the context of the pleas, while omitting the material that did not "pertain to the conduct at issue in this case." ECF No. 1880, at 5.

Plaintiffs' proposed redactions seek to limit the risk of confusing the jury by removing references to the WM/Reuters or ECB fixes or non-collusive "bad act" conduct while retaining the other aspects of the documents. Plaintiffs' redactions do not flagellate the former Defendant banks with irrelevant unilateral sales conduct or accusations as to collateral matters relating to limit orders.

Credit Suisse, in contrast, seeks to introduce confusion. Credit Suisse has long taken the position that the reference to material not related to spread fixing constitutes "other bad acts" evidence and objected to myriad chat exhibits on this ground. Not four days prior, Credit Suisse communicated to Plaintiffs' counsel that it objected to numerous chat exhibits on the basis of the Court's motion *in limine* order because those exhibits contained reference to other conduct. To that end, on October 5, Credit Suisse sought – and, on October 6, secured – Plaintiffs' agreement that Plaintiffs would not reference stop-loss jamming, benchmark manipulation, or other bad acts when using the exhibits during trial. Credit Suisse similarly raised objections on the ground of other "bad acts" conduct with respect to two other exhibits.

Here, however, Credit Suisse seeks to amplify exactly the conduct that they seek to bowdlerize from the chat exhibits. With regard to the plea agreements and allocutions, Credit

Suisse wants to highlight the conduct that they insist in every other circumstance is unfairly prejudicial.

Both simply cannot be true. Credit Suisse has taken its position that such conduct should not be included in chat documents and Plaintiffs have redacted accordingly or withdrawn exhibits in light of these objections. Credit Suisse's reversal on the eve of trial that such material is ***necessary*** to include here is not cognizable. This is particularly so given their redactions to the entire substance of the plea agreements themselves, which would delete such material as a bank's understanding of its right to a trial by jury, the standard of proof at a criminal trial, and the elements of the offense for which each bank pleaded guilty.

Plaintiffs' proposed redactions narrow the scope of the material at question to eliminate conduct not at issue, consistent with the approach that has been taken – at Credit Suisse's insistence – across the entire array of plaintiffs' exhibits. Credit Suisse's proposals seek to amplify exactly that material to which it objects as prejudicial in every other context and resurrect objections it had already withdrawn to documents.

**IV.  Plaintiffs Have Proposed Modest Redactions to the Bank Criminal Materials to Redact References to Conduct Not at Issue in this Case and Unilateral Conduct, While Permitting the Jury to Understand Their Substance.**

    **a.  "The Cartel" Plea Agreements (1587, 2672, 2677, 2679)**

As noted, these plea agreements have already been the subject of at least two of Defendants' motions *in limine* and one motion for reconsideration. Seeking a fourth bite at the apple, Credit Suisse attempts to exclude information that the Court has repeatedly deemed relevant and highly probative.

Guided by the Court's order on Motion *in limine* No. 4, Plaintiffs have redacted references to conduct not at issue in this case, including discussion of the WM/Reuters and ECB fixes, references to Barclays' non-prosecution agreement, and "other relevant conduct" that does not relate to the conduct at issue in this case, to wit, "intentionally working customers' limit orders one or more levels, or 'pips,' away from the price confirmed with the customer;" "including sales markup, through the use of live hand signals, to prices given to customers that communicated with sales staff on open phone lines". *See* PTX2677-0018.

Credit Suisse takes a different approach. Their proposed redactions excise essential context for the jury, while proposing to include confusing references to other conduct that Credit Suisse has elsewhere sought to exclude as irrelevant and inadmissible. Credit Suisse redacts, for instance:

- the bank's understanding that it has the right "to have a trial by jury, at which it would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for it to be found guilty"; *see, e.g.* PTX2677-0002

11

- factual background information as to the offense charged, including discussion of the bid-ask spread (while, in contrast, re-inserting material as to the WM/Reuters fix); *see, e.g.* PTX2677-0004-0005; and

- the elements of the offense. *See* PTX2677-0021.

Credit Suisse further seeks to re-introduce conduct that, by the literal terms of the plea agreement, is "other relevant conduct" separate and apart from the charged offense, including "working customers' limit orders", "including sales markup", and accepting limit orders and then declining to fill them. *See* PTX2677-0018. It strains credulity to suggest that these items are ***necessary*** for context here, particularly given that they are set forth as conduct that is unilateral in nature.

### b. Barclays, Citigroup, JPMorgan, RBS Plea Transcript (1602, 2673, 2678)

Plaintiffs have proposed redactions that, like the plea agreements, remove conduct not at issue – references to unilateral "disclosure notice" conduct – that will only introduce confusion to the jury. Credit Suisse's contention that this conduct is necessary for context is groundless, given that the conduct in the banks' respective disclosure notices is not even identical and is largely unilateral in nature.

### c. UBS Plea Agreement (2666)

On May 20, 2015, UBS pleaded guilty to manipulating the LIBOR benchmark interest rate. The guilty plea was a result of UBS's breach of its December 2012 non-prosecution agreement that previously resolved the LIBOR investigation. According to the factual statement of breach attached to UBS's plea agreement, UBS engaged in, among other things, conspiracy "with other financial services firms acting as dealers in an FX spot market by agreeing to restrain competition in the purchase and sale of the EUR/USD currency pair in the United States and elsewhere." PTX2666-00026.

Recognizing that the UBS agreement arose in a different context, Plaintiffs proposed redactions to delete references to conduct not at issue, deleting the majority of the agreement that addressed LIBOR while retaining the factual basis which gave rise to the breach and the section entitled "UBS's agreement" which reflects the situation that gave rise to the plea.

On October 8, 2022, Credit Suisse informed Plaintiffs by email that the UBS Plea Agreement was not encompassed by the Court's order with respect to Motions *in limine* No. 3 or 4. This, of course, is contradicted by the fact that Credit Suisse's respective memoranda of law for each such motion refer to the UBS Plea Agreement. Moreover, had any doubt remained, the Court's explicit reference to the UBS Plea Agreement in its order denying Credit Suisse's motion for reconsideration makes clear that Credit Suisse's position is groundless. ECF No. 1892 at 2 n.1.

Credit Suisse proposed no redactions to the agreement and stood solely on its position that despite its incorporation of the UBS Plea Agreement in the appendix to both Motion *in limine* No. 3 and 4 and its inclusion in the Washer Declaration as to Motion *in limine* No. 3, *see* ECF ECF

No. 1727 at 8; ECF No. 1731-6; ECF No. 1738 at 8, the document is not encompassed by the Court's order on such motions.

### d. BNP Plea Agreement (2667)

Plaintiffs propose to redact matters that do not relate to conduct at issue in this action. This includes, *inter alia*, spoofing conduct, WM/Reuters fix related conduct, and coordinating trading to move through customer limit orders.

### e. BNP Transcript (2669)

Plaintiffs proposed redactions to the BNP transcript that would exclude references to spoofing conduct that was solely price manipulation ("agreeing to enter into non bona fide trades on an electronic FX trading platform with traders at other banks…"). This, along with "coordinating his trading with his coconspirators prior to and during fixes…" is conduct that does not fall within the Court's prior characterization of what would be admissible in light of the motion *in limine*. *See* ECF No. 1880 at 5 ("The Court will admit those portions of the factual admissions pertaining to the conduct at issue in this case, i.e. widening spreads, including lowering bid quotes and increasing ask quotes through an anticompetitive conspiracy.").

Credit Suisse, in contrast, seeks to introduce confusion by proposing to re-insert conduct not pertaining to the conduct at issue in this case -- material discussing spoofing and price manipulation. *See* PTX2669-0014. Credit Suisse's proposed redactions also would preserve a false suggestion by BNP Paribas's counsel that their "co-conspirators" were traders, as opposed to financial institutions, as reflected by the Plea Agreement.

### f. BNP Information (2670)

For avoidance of doubt, Plaintiffs do not seek the admission of the information as a "factual admission". Rather, out of an abundance of caution, Plaintiffs proffered redactions to the document consistent with the Court's order as to the "factual admission" materials. The purpose in doing so was to limit the scope of the information to the conduct at issue in the litigation so as to make it consistent with the other proposed criminal materials.

## II. Plaintiffs Have Proposed Redactions to Trader Criminal Materials to Reduce the Risk of Confusion.

### a. Jason Katz Information (1591)

For avoidance of doubt, Plaintiffs do not seek the admission of the information as a "factual admission". Rather, out of an abundance of caution, Plaintiffs proffered redactions to the document consistent with the Court's order as to the "factual admission" materials. The purpose in doing so was to limit the scope of the information to the conduct at issue in the litigation so as to make it consistent with the other proposed criminal materials. In this instance, Plaintiffs proposed redactions to eliminate references to conduct not at issue in the case ("coordinating their trading prior to and during fixes in a manner intended to manipulate final fix prices" and "coordinating

their trading in order to move pricing through their customers' limit order levels;"). Plaintiffs do not believe any further redactions are warranted. Plaintiffs have identified Mr. Katz as a "will-call" witness on their witness list and are entitled to question Mr. Katz as to the information at trial.

### b. Jason Katz Plea Agreement (2681)

Plaintiffs did not propose redactions to the Jason Katz plea agreement, which did not contain references to "conduct not at issue in this case."

Credit Suisse, on the other hand, deletes virtually the entirety of the agreement, deleting all context for the significance of the plea agreement, Katz's obligations under the agreement, the rights Katz waived by entering into the Plea Agreement, and the fact that Katz's plea was voluntary. Mr. Katz is on Plaintiffs' "will-call" list for trial and Plaintiffs are entitled to examine him on the scope of his plea.

### c. Christopher Cummins Plea Agreement (2665)

Plaintiffs did not propose redactions to the Christopher Cummins plea agreement, which did not contain references to "conduct not at issue in this case."

Credit Suisse, on the other hand, deletes virtually the entirety of the agreement, deleting all context for the significance of the plea agreement (for instance, the potential sentence), Cummins's obligations under the agreement, the rights Cummins waived by entering into the Plea Agreement, and the fact that Cummins' plea was voluntary.

### d. Cummins Transcript (2671)

Plaintiffs' proposed redactions are modest, eliminating references to conduct not at issue in this litigation.

### e. Aiyer Criminal Indictment and Criminal Judgment (2659, 2660)

Although it is not a "factual admission" under motion *in limine* number 4, Plaintiffs proposed redactions to the criminal indictment for consistency with the other criminal materials. Those redactions delete references to conduct not at issue in the litigation. Plaintiffs have proposed no redactions to the judgment, which does not reference conduct not at issue in the case.

Credit Suisse's objections as to admissibility are irrelevant to the dispute presently before the Court as to the scope of the "factual admissions" to be admitted and as noted above, have previously been withdrawn.

### III. Plaintiffs' Proposals to the Barclays NYDFS Order (1594) Delete Conduct Not at Issue in the Case, While Maintaining Context and Substance as to the Breadth and Scope of Misconduct.

Plaintiffs redacted references to conduct not at issue in this case, deleting material dealing with fix manipulation, misleading sales practices, and providing false and misleading information to customers and markets.

In contrast, Credit Suisse proposes to redact basic market information that has been agreed to by Barclays, re-introduce conduct not at issue in this litigation, and delete language that has been agreed to by Barclays as to the breadth of its conduct, including "As discussed within this Order, the misconduct at the Bank was systemic and involved various levels of employees, including a lack of appropriate supervision or intervention by certain managers both of FX trading desks and of FX Sales staff."; "The revenue produced by an FX trader's trading activity impacted the compensation of FX traders, along with other factors." *See* PTX1594-0016.

Lastly, Credit Suisse seeks to redact material about the NYDFS directing the termination of certain Barclays personnel. While Plaintiffs proposed redactions of individuals that Barclays terminated as a result of the investigation, recognizing that such terminations would fall into the category of subsequent remedial measures, Credit Suisse's proposed redactions do not fall into the same category, reflecting individuals whose departures predated the investigation and those terminated at the government's direction. Such conduct should not be deemed to fall within the category of subsequent remedial measures, because the policy underlying Rule 407 is aimed at encouraging voluntary improvements to improve safety, not to shield a defendant from scrutiny. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 246 n.13 (3d Cir. 2008) (noting "there is a possible exception to Rule 407 for remedial action mandated by superior governmental authority, such as a regulatory agency, because the policy goal of encouraging *voluntary* improvements for greater public safety would not necessarily be furthered by the exclusion of such evidence.") (citing *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1204 (8th Cir.1990); *Nexen Petroleum U.S.A., Inc. v. Sea Mar Div. of Pool Well Servs. Co.,* No. 06–3043, 2007 WL 2874805, at *5 (E.D. La. Sept.26, 2007)); *Herndon v. Seven Bar Flying Serv., Inc.*, 716 F.2d 1322, 1331 (10th Cir.1983) ("Where a superior authority requires a tort feasor to make post-accident repairs, the policy of encouraging voluntary repairs which underlies Rule 407 has no force—a tort feasor cannot be discouraged from voluntarily making repairs if he *must* make repairs in any case.").

Respectfully submitted,

| | |
|---|---|
| SCOTT+SCOTT ATTORNEYS AT LAW LLP | HAUSFELD LLP |
| *s/* Christopher M. Burke | *s/* Michael D. Hausfeld |
| Christopher M. Burke | Michael D. Hausfeld |
| 600 W. Broadway, Suite 3300 | 888 16th Street NW, Suite 300 |
| San Diego, CA 92101 | Washington, DC 20006 |
| Telephone: 619-233-4565 | Telephone: 202-540-7200 |
| cburke@scott-scott.com | mhausfeld@hausfeld.com |

*Attorneys for Plaintiffs*

CAHILL GORDON & REINDEL LLP

 *s/* Anirudh Bansal
Herbert S. Washer
Anirudh Bansal
Jason M. Hall
Edward Moss
Tammy L. Roy
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
abansal@cahill.com
jhall@cahill.com
emoss@cahill.com
troy@cahill.com

*Attorneys for Defendants*
*Credit Suisse Group AG, Credit Suisse AG,*
*and Credit Suisse Securities (USA) LLC*