October 10, 2022

<u>Via ECF</u>

Honorable Lorna G. Schofield
U.S. District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

      Re:    *In re Foreign Exchange Benchmark Rates Antitrust Litigation*
               Case No. 1:13-cv-07789-LGS

Dear Judge Schofield:

The parties have a dispute regarding the admissibility of 1006 summary exhibits. The parties respectfully submit their respective positions herein and ask that the Court resolve the dispute so that the parties may conform their trial presentations to the Court's ruling.

## I.    Plaintiffs' Position

Previously, both Plaintiffs and Credit Suisse exchanged proposed summary exhibits. Credit Suisse objected to having Dr. Singer serve as Plaintiffs' sponsor, which had been Plaintiffs' plan at trial. In response to that objection, and because Plaintiffs' 1006 chart relied upon evidence that has already been deemed admissible (ECF No. 1884), Plaintiffs decided not to present a Rule 1006 summary. Credit Suisse had relied upon Plaintiffs' proposed 1006 summary to construct numerous objectionable summary exhibits that it shared with Plaintiffs over the last week. Each of Credit Suisse's proposed summaries purported to rely exclusively on Plaintiffs' summary exhibit. Plaintiffs' decision to not pursue a Rule 1006 summary should have ended the matter. However, at 1:40 PM on Sunday October 8, 2022, Credit Suisse sent another batch of proposed summary exhibits, this time based on either "back up materials to the Rebuttal Report of Hal J. Singer" or "Plaintiff's Exhibit List" Additionally, Credit Suisse continues to list Dr. Jennifer Marietta-Westberg, as its witness "to Attest to F.R.E. 1006 Summary Exhibit(s)" on its most recent "will call" list for trial, despite the fact that this witness has *no* proper documents to sponsor and thus should not be testifying at all.

Credit Suisse's complaints regarding moving the goal posts are nonsense as it was its own conduct – seeking to disallow Dr. Singer from testifying about chats and objecting to him even serving as sponsoring witness – that resulted in Plaintiffs' decision not to use their summary exhibit. Credit Suisse's new gambit of seeking to use Dr. Singer's back up or (for certain proposed exhibits "Plaintiffs' Exhibit List" with various manipulations applied) is improper and untimely. Credit Suisse's suggestion that these slides are "simply categorizing" when they propose multiple and inscrutable methods of counting depending on the result they wish to obtain is outrageous. This is data mining and it is misleading.

Further, Credit Suisse's sudden and surprising objection to the term "examples" is misguided. There is no prejudice in stating the simple facts regarding the discovery record. As an empirical matter there are many more spread chats on Plaintiffs' Exhibit List than are even in the

summaries, let alone in the discovery record. Attempts by Credit Suisse to object to the term "examples" flies in the face of reality and if Plaintiffs were barred from explaining that the 2,500 chats are not the entire universe that would be false and would lead to error. This is a last-minute issue that Credit Suisse is also seeking to inject into objections to opening statements. There too, Credit Suisse is wrong.

Credit Suisse's effort to use a hearsay exception is odd and inapt. Credit Suisse claims it can make its misleading summaries based on Singer's Appendix after it has repeatedly questioned the document, arguing that Dr. Singer should be barred from testifying about chats and claiming Plaintiffs' exhibit was filled with errors. *Kreppel v. Guttman Breast Diagnostic Inst. Inc.*, Lexis 1999 U.S. Dist. LEXIS 19602 (S.D.N.Y.) is not on point. There the court allowed admission of a radiology report drafted by Defendants who later decided not to call the designated expert. Then, after the expert was subpoenaed and failed to appear, the court was asked to receive her report into evidence. The other side there never sought exclusion as Credit Suisse does here.

Credit Suisse's claims of "gamesmanship" are outrageous. For more than a week Plaintiffs have explained why Credit Suisse's proposed summaries fail to meet the standards of Rule 1006. That Credit Suisse spent time and effort revising facially improper summaries while at the same time objecting to Plaintiffs being able to have a witness sponsor the exact evidence they now claim is an admission and upon which they base their proposed exhibits, is through-the-looking glass behavior. Credit Suisse does not even try to argue that its new slides are timely. Nor could they as they were plainly received after the deadline imposed by Paragraph 16 of the Joint Trial Procedures Stipulation.

As Plaintiffs explained during a meet and confer and in correspondence, Credit Suisse's proposed summaries do not meet the standards for admission under Rule 1006. Further, the proposed exhibits were simply not "summar[ies], chart[s], or calculation[s] to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." F.R.E. 1006. Instead, Credit Suisse's proposed summaries are argumentative, misleading, confusing, and provide untimely expert opinion. Their latest charts suffer from the same serious infirmities and should not be admitted.

While Credit Suisse insists that it may have an expert on the stand to sponsor these newly disclosed exhibits, it is of no moment, because these exhibits were not provided within the timeline set forth by the pretrial order. The deadline to provide new summaries to Plaintiffs was October 6, 2022, the deadline entered by the Court. *See* ECF No. 1917, ¶16 (requiring exchange of exhibits by September 30, 2022 and responsive summary exhibits to be served by October 6, 2022). Credit Suisse blames Plaintiffs for its own objections.

For these reasons, Plaintiffs object to the proposed testimony and respectfully request the Court order Credit Suisse to remove Dr. Marietta-Westberg from its witness list and bar Credit Suisse from presenting at trial any of its proposed summary exhibits.

2

## II. The Purported 1006 Documents Credit Suisse Has Shared Are Not Proper Under F.R.E. 1006

"'[G]reat care must be taken to ensure that the proposed summary contains no annotation or suggestion, even inferential, that may be considered argumentative.'" It especially important that the summary be accurate and nonprejudicial." *UPS Store, Inc. v. Hagan*, No. 14-cv-1210, 2017 WL 3309721, at *5 (S.D.N.Y. Aug. 2, 2017) (quoting *Anderson v. Otis Elevator Co.*, No. 11-10200, 2012 WL 5493383, at *3 (E.D. Mich Nov. 13, 2012)). Moreover, the party offering the summary must "'establish that the summary is accurate and nonprejudicial.'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13-cv-816, 2018 WL 8996333, at *1 (S.D.N.Y. Mar. 5, 2018) (excluding summary that was "misleading because it was argumentative" and "raises an inference unsupported by the underlying data").

All of the exhibits Credit Suisse has belatedly disclosed are likely, and indeed, calculated to, mislead and confuse the jury and are excludable on that basis, particularly where they appear to conflict with the proposed jury instructions, the Court's preliminary charge and the verdict form. Further, the proposed summaries are untimely and improper expert analysis designed to circumvent Rule 26 of the Federal Rules of Civil Procedure.

Additionally, Credit Suisse objected to Plaintiffs' expert, Dr. Hal Singer serving as the sponsoring witness of Plaintiffs' proposed 1006 summary evidence. Now, with Plaintiffs having agreed not to have Dr. Singer serve as the sponsor, giving Credit Suisse the result it wanted, they complain. But, having secured this result, Credit Suisse cannot now reverse their decision by resurrecting the material.[1] Although Credit Suisse contended that Dr. Singer could not serve as a 1006 sponsor, they now seek to construct their own 1006 from materials on the "Backup Materials to Rebuttal Report of Hal Singer." Such a description is neither proper nor sufficient under 1006, and because Dr. Singer's rebuttal report is not in evidence, slides purportedly based upon its materials are not admissible as 1006 summaries. Ironically, Singer's backup material is basically the same summary exhibit Plaintiffs proposed under Rule 1006 (PTX2987). Plaintiffs agreed to withdraw PTX2987 after receiving Credit Suisse's objection that the summary chart "suffers from numerous errors" and "each of these errors render Plaintiffs' Proposed Summary Exhibit

---

[1] Credit Suisse's purported 1006 exhibits are unabashedly based on these compilations of evidence. *See generally*, "Source" on each proposed 1006 Summary, DTX1000-DTX1046. Rule 1006 explicitly requires that exhibits admitted under that Rule must be based on admissible evidence. Therefore, for Credit Suisse's graphs to be admitted as 1006 summaries of Plaintiffs' compilations of evidence, ***Plaintiffs' compilations of evidence themselves must be admissible, which absurdly would require Plaintiffs to proffer a sponsor to prove the admissibility of Credit Suisse's charts and graphs***. Credit Suisse had many, many years to compile their own spreadsheet of chat transcripts to prove their presumed theory that the spread discussions were too sporadic and scarce to constitute a conspiracy. Instead, they chose to put all their analytical eggs in Plaintiffs' basket, while simultaneously seeking to exclude said basket. Had they simply done the work themselves and now had a 1006 sponsor to attest to the validity of a compilation of chat transcripts, then Plaintiffs would have less of a quarrel. As it stands, however, Credit Suisse did not do the work and cannot now force Plaintiffs to prove the admissibility of ***Plaintiffs'*** compilations of evidence to support 1006 summaries that Credit Suisse seek to admit.

inadmissible." Now, after securing that victory, Credit Suisse turns around and seeks to present their own summary charts using the very material they claimed to be inaccurate.

### III. Credit Suisse Fails to Meet the Standards of Admission Under Rule 1006

To qualify under Rule 1006, the proponent of a summary exhibit must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. Fed. R. Evid. 1006. The word "must" means that summaries ***cannot*** be admitted unless they comply with these requirements. 31 Charles Alan Wright & Victor James Gold, FEDERAL PRACTICE AND PROCEDURE §8045. "The trial court has no discretion under Rule 1006 to relieve the proponent of this burden." *Id*.

"[T]o satisfy the 'make available' requirement, a party seeking to use a summary under Rule 1006 must identify its exhibit as such, provide a list or description of the documents supporting the exhibit, and state when and where they may be reviewed." *U.S. ex rel. Maris Equip. Co. v. Morganti, Inc.*, 163 F. Supp. 2d 174, 201 (E.D.N.Y. 2001), *aff'd sub nom. Morganti Inc. v. Liberty Bond Serv., Inc.*, 67 F. App'x 68 (2d Cir. 2003) (quoting *Air Safety v. Roman Catholic Archbishop*, 94 F.3d 1, 8 (1st Cir 1996)). It is "[not] enough to say that the documents have been available or could have been available or were available when they were not identified as the source for [a] summar[y]. *Id*. "Absent a particularized notice of a summary's contents and the identity of the source material, summary evidence should not be admissible under Rule 1006. This is true even if all the source materials have already been produced." Wright & Gold §8045.

Moreover, Credit Suisse cannot cure this defect by belatedly disclosing the exact underlying sources. "Rule 1006 of the Federal Rules of Evidence requires that a party against whom a summary exhibit is sought to be admitted must be accorded adequate time to examine the documents underlying the summary in order to check its accuracy." *Canada Dry Corp. v. Nehi Beverage Co., Inc. of Indianapolis*, 723 F.2d 512, 523 (7th Cir. 1983). The parties agreed on a specific time schedule for proper disclosure, including an October 6 deadline for responsive summary exhibits. The Court then gave that stipulation the force of law. ECF No. 1917. Credit Suisse should not profit from its decision to flout that law.

### IV. The Charts Are Confusing, Misleading and Unhelpful to the Jury

Not only are the charts inappropriate summaries under 1006, they also are "more confusing than they are helpful." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 190 (S.D.N.Y. 2008). This is one of the principal problems with many of Credit Suisse's purported summary documents. Like certain indices that were presented in the *Highland Capital* case, the materials at issue here should be excluded as both 1006 summary evidence and as a demonstrative because "it is largely insignificant to jurors and may very well confuse them." *Id. See also Chisholm v. Mem'l Sloan-Kettering*, 2011 U.S. Dist. LEXIS 53243, *23- *24 (S.D.N.Y. 2011) (excluding a number of exhibits under rule 1006 as being "misleading"). A critical failing applicable to many of Credit Suisse's charts that makes the charts misleading is that Credit Suisse's slides do not recognize that neither Dr. Singer's Appendix nor Plaintiffs' Exhibit List purport to represent the total universe of spread chats during the relevant period. Rather, Dr. Singer and Plaintiffs provided a set of examples based on a straightforward methodology of limited key word searches. *See John Wiley & Sons, Inc.*, 2018 WL 8996333, at *3 (holding it to be "inaccurate and

4

misleading" to have an exhibit appearing to be the universe of alleged counterfeit materials rather than "exemplars as examples of each work that Defendants allegedly infringed").

The confusing and unhelpful nature of Credit Suisse's proposed exhibits is exemplified by **DTX-1034**. That document's title states "Days on Which Half or More of the 16 Banks Discussed the Same Currency Pair on the Same Day on Singer's Appendix." The title alone is utterly confusing to a jury, as it implies, contrary to law, that there is some magic number of defendants that must have discussed the same currency pair on a particular day for the jury to find an agreement. The Court's preliminary charge and proposed jury instructions are in stark conflict with this slide's implication, both in terms of the number of participants that can make up a conspiracy as well as the Court's decision not to include specific currency pairs in the instructions or verdict form. *See* Court's October 3 Draft Preliminary Charge at §IV (defining conspiracy as an "agreement between two or more people or entities to violate or disregard the law"); Court Draft 2 Special Verdict Form ECF 1879 at 3 (no currency pairs listed on Special Verdict Form); Joint Submission of Proposed Case-Specific Jury Instructions ECF 1889 at page 16 (Credit Suisse Proposed Instruction 6b "To create such a relationship, two or more persons must enter into an that they will act together for an unlawful purpose.") The graph is utterly meaningless and confusing as well. For some reason Credit Suisse decided to start the chart not at two banks discussing the same currency pair, but at ***eight*** banks. This was presumably done because chats between 2 and 7 banks would not support the misleading narrative Credit Suisse is seeking to present the jury. The *de minimus* description regarding how the counting was accomplished also demonstrates that this is not a proper use of F.R.E. 1006. As explained above, the use of Dr. Singer's appendix as a source is improper as expert reports were agreed not to be put on either side's exhibit list and Rule 1006 summaries are meant to only include admissible evidence. "Under Rule 1006, "[s]ummary evidence is admissible so long as the underlying documents also constitute admissible evidence and are made available to the adverse party." *N.Y. City Transit Auth. v. Express Scripts, Inc.*, 2022 U.S. Dist. LEXIS 149324, *4 (S.D.N.Y. 2022) (quoting *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993)).

**DTX-1032** also presents confusing information in that it implies, by highlighting the "average number of spread chats per trading day" that there is some specific number of spread chats per day that must occur before a conspiracy can be found to exist. That is very likely to confuse the jury, particularly when contrasted with the Court's instructions and proposed verdict form. *See* October 3 Draft Preliminary Charge at §IV, Court Draft 2 Special Verdict Form ECF No. 1879 at 3; Joint Submission of Proposed Case-Specific Jury Instructions ECF No. 1889 at 16 (Credit Suisse Proposed Instruction 6b.) The minuscule print purporting to explain the counting method also demonstrates that the exhibit is not a proper 1006 exhibit. Certain chats are excluded and Bates numbers are provided, others are excluded without Bates references. Identical issues are raised by **DTX-1038** which narrows this misleading, skewed analysis to those chats specifically involving Credit Suisse and similarly implies that there is some magic number of spread chats that Credit Suisse must be in per day for them to be part of an agreement. This is, of course, contrary to law and to the Court's instructions. **DTX-1042** relies upon Plaintiffs' Exhibit List to provide a number of "Average number of multibank chats per trading day." Like the other similar slides that purport to show an average number of chats per day, DTX-1042 carries an unmistakable implication that there is some unspoken quantum of chats that must be met to find the existence of a conspiracy and every number below that threshold is not sufficient. **DTX-1044** relies on Plaintiffs' Exhibit List and purports to show an "average number of multibank chats that

5

include Credit Suisse per trading day." As with other exhibits showing a purported number of chats, it is misleading. The counting method on this exhibit also raises a number of issues as certain non-trading days are included yet the reported number of trades is "per trading day."

**DTX-1033** and **DTX-1041** are similarly likely to confuse and mislead the jury. DTX-1033 is a chart purporting to count the number of spread chats identified by Plaintiffs per trading day for a number of currency pairs, again implying that Plaintiffs' identification represents an outer bound on the number of such chats. DTX-1041 is a similar chart, but this chart only purports to count spread chats on Dr. Singer's Appendix that include Credit Suisse. Like the confusing nature of DTX-1038 and DTX-1032, this document appears to ascribe meaning to the number of currency pairs listed on Dr. Singer's Appendix. The scale used is purposely distorted as well. Further, DTX-1033 and DTX-1041 appear to adopt yet another method of counting chats. This additional method shows unequivocally that the charts are not simply summaries of voluminous evidence, but part of a stratagem meant to confuse the jury as to the facts and the law. These charts are cumulative of other confusing charts.

**DTX-1035** and **DTX-1036** should also not be allowed to go to the jury. Those documents purport to show a daily count of spread chats about the most frequently discussed currency pairs on Singer's Appendix. The daily counts of spread chats that appear on Singer's Appendix, which is not in evidence, are irrelevant to the issues to be tried and creating an artificial currency pair limitation is itself misleading and likely to introduce confusion. "Rule 1006 is not a back-door vehicle for the introduction of evidence which is otherwise inadmissible." *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004).

**DTX-1037** is not proper F.R.E. 1006 evidence. As with numerous other charts, this chart also is based on a document that is not in evidence. Further, it is irrelevant and misleading. Irrelevant matter is not made relevant via summary. *Jenifer v. Fleming, Ingram & Floyd, P.C.*, 2008 U.S. Dist. LEXIS 17740, *5, *7 (S.D. Ga. 2008). As with other documents Credit Suisse is seeking to admit via F.R.E. 1006, this document is misleading in that it implies that the "spread chats on Singer's Appendix" comprise the entire universe of such chats. This is wrong as an empirical matter. *A fortiori* it is not helpful to the jury, nor is it how summary evidence should be submitted. A different version using "Plaintiffs' Exhibit List" is submitted as **DTX-1043**. Like DTX-1037, this proposed exhibit should also not go to the jury and under no circumstances should both documents be allowed to go to the jury. Neither is relevant, but admission of both (with differing numbers) is plainly improper.

**DTX-1039** and **DTX-1040**, like DTX-1035 and DTX-1036, are not proper F.R.E. 1006 evidence. These two documents, again rely upon Dr. Singer's Appendix that is not in evidence, misleadingly make it appear as if Dr. Singer's Appendix is the entire universe of spread chats which include Credit Suisse. Further, the material illustrated in the graphs and pie charts is not relevant to the claims to be tried. The specific daily count of spread chats on a document not in evidence does not help the jury, but may mislead and confuse them. Similar exhibits specific to Credit Suisse that rely upon "Plaintiffs' Exhibit List" are **DTX-1045** and **DTX-1046**. Those exhibits also fail under F.R.E. 1006.

**DTX-1042** uses as its source not Dr. Singer's Appendix, but "Multibank chat transcripts to be admitted according to Plaintiffs' Fourth Revised Exhibit List and Credit Suisse's Objections

Thereto." This chart, which adopts yet another counting method, is similar to DTX 1032 that relies upon Singer's Appendix. Notably, however, the figures are different in terms of the number of chats that are listed. Admission of both DTX-1032 and DTX-1042 would greatly confuse and mislead the jury. As with the other documents, DTX-1042's source being the entire exhibit list is questionable and the counting method is also again concerning.

V.    **Credit Suisse's Proposed Summaries Are Actually Untimely Expert Analysis**

Rule 1006 is not a vehicle for expert opinion and analysis. *See Picard v. Sage Realty*, No. 20-cv-10109, 2022 WL 1125643, at *3 (S.D.N.Y. Apr. 15, 2022) (denying consideration at trial of charts offered as Rule 1006 summaries because the "analysis and conclusions contained in the proffered exhibits constitute improper expert testimony"); *U.S. v. Millan*, 730 F. App'x 488, 489 (9th Cir. 2018) (charts summarizing financial transactions prepared by person who was not offered as an expert witness were improperly admitted); *U.S. v. Shulick*, 994 F.3d 123, 138-39 (3d Cir. 2021) (summary exhibit prepared by a non-expert including assumptions and inferences was "classic expert testimony, rightly excluded"). Moreover, Rule 26 of the Federal Rules of Civil Procedure require timely expert disclosure. *See Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 2006 WL 44053, at *2 (S.D.N.Y. Jan. 9, 2006) (striking summaries by expert offered under Rule 1006 because they were not included in Rule 26(a)(2) expert disclosures).

Prior iterations of Credit Suisse's proposed exhibits also demonstrate that the slides are, in fact, a woefully belated attempt to supplement Dr. Melvin's report. Dr. Melvin had the opportunity to update his report months ago and did not. Because Dr. Melvin cannot update his reports at this time, Plaintiffs object to Credit Suisse's untimely designation of a new, highly experienced expert witness affiliated with Cornerstone, a firm that has provided expert support to Credit Suisse and its testifying witness throughout the litigation. The proposed Rule 1006 summary exhibits Plaintiffs reviewed earlier correspond to material in Dr. Melvin's report. In his merits report, Dr. Melvin argued that Plaintiffs' expert did not identify widespread sharing of CSI. Dr. Melvin accused Plaintiffs of failing to identify "any instances of spread CSI exchanges for 12 of the 52 at-issue currency pairs" and "only 6 of the 52 at-issue currency pairs had purported spread CSI exchange on more than 20 percent of days in the sample" with EUR/USD spread shared on "fewer than half of the 91 sample days." Melvin Merits Report, ¶¶116, 119, 121; *see also* Melvin Merits Report, at Exhibits 9, 10, 11. Dr. Melvin also provided expert opinion that the identified spread sharing chats related to large notional trades. Melvin Merits Report, ¶123; *see also* Melvin Merits Report, at Exhibits 12, 13. Dr. Melvin was required to present his opinions "at least 90 days before the date set for trial" under Rule 26. Fed. R. Civ. P. 26(a)(2)(D)(i). Credit Suisse cannot cloak updates to Dr. Melvin's expert report as Rule 1006 summaries.[2]

---

[2]    Previously, the Court granted Defendant's motion *in limine* to preclude Plaintiffs from bringing Keith Underwood to trial. The Court held Plaintiffs had provided "no explanation for the failure to comply with the disclosure requirement" for expert testimony, finding relevant Rule 26's deadlines. *See* ECF No. 1872. Similarly, when Credit Suisse submitted two additional expert reports by Drs. Kleidon and Melvin, Credit Suisse disclaimed any untimeliness concerns by agreeing the new reports would not be used at trial. This latest effort is a clever attempt to skirt the timeliness rules under Rule 26. Plaintiffs object.

## VI.      Credit Suisse's Witness Is Improper

Dr. Marietta-Westberg is, according to her Cornerstone biography, "[a]n experienced expert witness" who "consults on economic and financial issues arising in litigation and regulatory investigations in financial markets." According to the Cornerstone website, Dr. Marietta-Westberg "leads large teams to support academic and industry experts at all stages of litigation, including trial." Cornerstone has worked extensively with Dr. Kleidon, one of Credit Suisse's primary experts. The proposed Rule 1006 charts are far more extensive than mere summaries or even simple computations. It is manifest they reflect expert work and analysis went into the making of the exhibits. Dr. Marietta-Westberg's extensive expert work could unreasonably sway the jury into giving these improper summaries more weight than deserved.

For each of these reasons, Plaintiffs ask the Court to refuse to admit Credit Suisse's late-disclosed and improper purported summary exhibits.

**Credit Suisse's Position**

As this Court knows, to facilitate an efficient trial presentation, the parties agreed to pre-admit a substantial number of exhibits, largely consisting of chat discussions that Plaintiffs claim are evidence of the alleged conspiracy. Credit Suisse agreed to withdraw its objections to these chats in part so that the universe of chat evidence would be defined and Credit Suisse could make arguments to the jury based on that evidence.

For the vast majority of the "chat evidence," Plaintiffs have no sponsoring or foundational witness to explain the chat to the jury (or for Credit Suisse to cross examine on the chat), and there is certainly no single witness that can explain the 2,700 chats included on Plaintiffs' exhibit list. Rather, Plaintiffs have long represented that they would put in a summary exhibit of their chat evidence through a summary witness. It was understood that Credit Suisse would then respond with its own summary exhibits responsive to Plaintiffs' chat evidence, which would be presented through a summary witness. Both summary witnesses were then to be deposed (and cross-examined at trial).

On September 30, both sides timely disclosed their summary exhibits. As expected, Plaintiffs offered a summary chart, summarizing the pre-admitted chat evidence. Plaintiffs offered two versions of their chart, noting that they would only ultimately use one through one of two possible summary witnesses. Plaintiffs stated that their summary witness would either be their expert economist, Dr. Hal Singer, or a paralegal.[3]

Then, on October 7, Plaintiffs suddenly abandoned this long-discussed approach and withdrew both versions of their summary exhibit. Plaintiffs also now take the position that Credit Suisse should not be permitted to use its summary exhibits either. Plaintiffs object to each of

---

[3] Credit Suisse did not object to Plaintiffs' paralegal offering Plaintiffs' 1006 summary at trial or to using any other witness but Dr. Singer. Credit Suisse only objected to Dr. Singer's sponsorship of the proposed summary exhibit because it would have run afoul of the Court's *Daubert* ruling (ECF No. 1944 at 1–2) and because he would have simultaneously served as an expert witness in this trial, which would be confusing to the jury.

8

Credit Suisse's 1006 summary exhibits on the grounds that the exhibits fail to meet the standard of admission under Rule 1006, the summaries are confusing, misleading and unhelpful to the jury, and are improper and untimely expert opinions. Plaintiffs also object to Credit Suisse's summary witness, Jennifer Marietta-Westberg, sponsoring the summaries at trial.

Because, as described below, Credit Suisse's exhibits are summaries of already-admitted chat evidence, each of Credit Suisse's exhibits are proper summary exhibits and should be admitted whether or not Plaintiffs use their own summary chart. Each of Plaintiffs' objections are without merit, and Credit Suisse respectfully requests that the Court permit Credit Suisse to use their 1006 summaries in opening and to admit them through their summary witness.

Furthermore, it has become clear that Plaintiffs' real objection to Credit Suisse's exhibits is that Plaintiffs want to argue to the jury that the exhibits on Plaintiffs' exhibit list (and summarized in Credit Suisse's summary exhibits) are mere "examples" of the chats at issue and that there exists some unidentified larger universe of additional documents ***which will never be before the jury*** but should nonetheless be relied on by the jury in considering the claims in this case. Such an argument—that unadmitted evidence exists to support Plaintiffs' claims—is improper, highly prejudicial, and should not be countenanced.

I. **Credit Suisse Timely Disclosed Its 1006 Summaries and the Summaries Are Admissible Under Rule 1006**

Plaintiffs' characterization of Credit Suisse's disclosure of its 1006 summaries as "belated[]" is disingenuous at best. On September 30, Credit Suisse timely disclosed its 1006 summary exhibits. Credit Suisse updated its summary exhibits on October 9 merely in response to Plaintiffs' sudden withdrawal of its own summary exhibits. Credit Suisse's revised summaries are nearly identical to the summaries Credit Suisse disclosed on September 30, as required by the parties' stipulation.

Credit Suisse's need to update its summary exhibits reflects only the fact that, throughout this case, Plaintiffs have continually moved the goalposts on Credit Suisse. First, in discovery, Plaintiffs identified a universe of spread chats through their expert, Robin Poynder, that Plaintiffs claimed was evidence of the alleged conspiracy. Based on that supposedly random sample, Dr. Singer opined that the chats were "pervasive." In other words, Plaintiffs recognized that they needed to prove that the disparate chats were sufficient to constitute an attempt to fix by all 16 banks across the market, and they put in issue the concept that they needed to show a sufficient quantum of chats to do that.

Credit Suisse then based its own expert analyses on Mr. Poynder's universe of spread chats to support its argument that Plaintiffs had not, in fact, identified a sufficient number of communications to prove the alleged conspiracy.

In June, Plaintiffs suddenly jettisoned Mr. Poynder. After that, Plaintiffs represented that they would rely on a 1006 summary to put before the jury excerpts of some or all of the 2,700 chat transcripts on their exhibit list. On September 30, Plaintiffs disclosed two alternate 1006 summaries, each of which contained over 2,000 rows of excerpts from chats on their exhibit list (all in evidence, except for three to which Credit Suisse has objected on the basis of the Court's *in*

9

*limine* rulings) that contain discussions about spreads, along with columns for (i) the date of the excerpt, (ii) the participants in the chat, and (iii) the currency pair or pairs discussed in the excerpt.

On September 30, Credit Suisse also served 11 summary exhibits based almost exclusively on the 2,700 multibank chats on Plaintiffs' exhibit list. Plaintiffs objected to all of them. In response to certain of the objections raised by Plaintiffs, and in an effort to reach agreement, Credit Suisse agreed to withdraw two of its summary exhibits. In addition, Credit Suisse agreed to revise its remaining summary exhibits to rely entirely on either of Plaintiffs' two proposed summary exhibits. But because Plaintiffs did not disclose which summary exhibit they intended to use at trial, Credit Suisse incurred the time and expense of preparing two sets of revised 1006 summaries to be responsive to whichever version Plaintiffs ultimately decided to use.

After receiving Credit Suisse's updated 1006 summaries, and just four days before trial, Plaintiffs changed course yet again. Plaintiffs informed Credit Suisse that they would withdraw both of their 1006 summaries, and so, in their view Credit Suisse could no longer use its summary exhibits at trial. Plaintiffs are wrong. Credit Suisse's 1006 summaries, which it was forced to revise again in light of Plaintiffs' eleventh-hour withdrawal of their exhibits, are properly based on admissible evidence, and the Court should not allow Plaintiffs to prejudice Credit Suisse's defense on the eve of trial with their gamesmanship.[4]

Credit Suisse's 1006 summaries simply categorize the chat excerpts on Plaintiffs' own summaries (which, again, merely excerpt the chats on Plaintiffs' own 2,700-entry exhibit list). For example, Credit Suisse has summaries that show (i) the number of chats per trading day (a figure to which the parties have stipulated), (ii) the dates on which any chats (or chats about certain currency pairs) occurred, (iii) the number of days on which there are chats about certain currency pairs (and the number of chats on those days), and (iv) the number of chats involving Credit Suisse.[5] These summaries are based on the voluminous chats on Plaintiffs' exhibit list and the information taken directly from those chats (*e.g.*, date, participants, currency pair) that was copied into a spreadsheet attached as Appendix 1 to the most recent report submitted by Plaintiffs' expert economist, Dr. Hal Singer.[6] *See* Appendix 1 to the July 31, 2022 Rebuttal Report of Plaintiffs'

---

[4] Plaintiffs now argue that Credit Suisse should have created its own compilation of evidence on which it could base its 1006 summaries. Plaintiffs fail to recognize that their changing strategy in advance of trial made it impossible for Credit Suisse to know what universe of chats Plaintiffs ultimately would rely on to support their claim.

[5] Plaintiffs take particular issue with **DTX-1034**, but it is proper summary evidence just like the rest. To make that summary, Credit Suisse (i) took every day on which there were two or more chats about spreads about the same currency pair on Plaintiffs' summary exhibit, and (ii) counted the number of banks in those two or more chats. All that information was taken from Plaintiffs' summary and also appears in the chats themselves. The chart then shows the number of days on which 8, 9, 10, 11, 12, 13, 14, 15, and 16 banks were in those chats. As the Court knows, Plaintiffs' theory is that information was transmitted across chat rooms (which often involve four banks – meaning that two chatrooms often have 8 total banks), and the jury will need to determine which banks are involved if they find a conspiracy. This is a perfectly legitimate and relevant summary, and instead of speculating about why the summary contains what it contains, Plaintiffs can just depose Credit Suisse's witness and ask. They can also simply include the information for 2-7 banks on their own summary – which they already did in their rebuttal summaries.

[6] Five of Credit Suisse's 1006 summaries make no reference to Dr. Singer's Appendix 1 and instead provide

expert Dr. Hal Singer ("Singer Appendix 1").  Dr. Singer's Appendix contained nearly identical information to one of the two summary exhibits that Plaintiffs just withdrew.

Credit Suisse's 1006 summaries meet the Second Circuit standard of admissibility because "the underlying documents also constitute admissible evidence and [were] . . . available to the adverse party." *Tamarin* v. *Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993).  Not only was the underlying evidence "available" to Plaintiffs, but it is their own evidence—the chats on ***their*** exhibit list and the information ***their*** expert pulled directly from the face of those chats.  Each of Credit Suisse's summary slides cite the source—Plaintiffs' own expert and the documents on their exhibit list—and provide detailed notes on how the graphics were created.  *See* DTX 1032 through DTX 1046 (Credit Suisse's 1006 summaries).[7]  Plaintiffs' suggestion that their own information was somehow not made available to them is just false.

Plaintiffs cannot dispute that the underlying chats are admissible.  Putting aside that the information was taken directly from the chats, it was included on Singer Appendix 1, which is an admissible adoptive admission under Rule 801(d)(2)(B).  Fed. R. Evid. 801(d)(2)(B) ("statement is offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true"); *see also Kreppel* v. *Guttman Breast Diagnostic Inst., Inc.*, 1999 WL 1243891, at *1 (S.D.N.Y. Dec. 21, 1999).  In *Kreppel*, for example, the court found that the defendant expert report that plaintiff sought to admit was admissible as an adoptive admission because defendant's retention of the expert as its trial expert "cannot reasonably be viewed as anything but adoption of or acquiescence in those opinions." *Id.*  Indeed, Dr. Singer has relied so heavily on the chats in his Appendix 1 that Credit Suisse moved to exclude several of his opinions about chats.  That reliance provides another reason why Appendix 1 is admissible evidence.  *See, e.g.*, *In re General Motors LLC*, 2015 WL 8578945, at *2 (S.D.N.Y. Dec. 9, 2015) (the adoptive admission test is "whether the surrounding circumstances tie the possessor and the document together in some meaningful way," including when the adoptive party has "accepted and acted upon the evidence by, for example, taking an action of some importance").

II.     **Plaintiffs' Argument that Credit Suisse's 1006 Summaries Are Confusing, Misleading, or Unhelpful is Without Merit And Cannot Serve as a Basis for Exclusion**

Credit Suisse's 1006 summaries are admissible summaries that will be "used to facilitate the jury's deliberations and to avoid forcing the jury to examine boxes of documents in order to make simple calculations." *Fagiola* v. *National Gypsum Co.*, 906 F.2d 53, 57 (2d Cir. 1990).  That is all the more true here, where Plaintiffs will admit 2,700 chat transcripts into evidence, and refer to the volume of evidence that will be in front of the jury during trial (and suggest that there's more out there), without presenting the vast majority of it to the jury.  Credit Suisse is entitled to summarize that evidence for the jury.

Plaintiffs' cited cases are inapposite.  In *Highland Capital Mgmt., L.P.* v. *Schneider*, 551 F. Supp. 2d 173 (S.D.N.Y. 2008), the court excluded indices of recordings because they were

---

summaries of all of Plaintiffs' multibank chat evidence, as distinct from chats that discuss spreads.

[7] Credit Suisse will respectfully request a link to upload its proposed summary exhibits for the Court's review.

"duplicative" of the recordings' transcripts and "largely insignificant to jurors." *Id.* at 190. In contrast, Credit Suisse's 1006 summaries are not duplicative of any other evidence in this case and are essential to rebutting Plaintiffs' chat evidence. In a 32 hour trial, neither Plaintiffs nor Credit Suisse can hope to present to the jury each of the over 2,700 chats on Plaintiffs' exhibit list. Accordingly, 1006 summaries are vital to the jury's understanding of the voluminous evidence in the record.

In *Chisholm* v. *Memorial Sloan-Kettering*, 2011 U.S. Dist. LEXIS 53243 (S.D.N.Y. May 13, 2011), the court excluded an exhibit containing plaintiff's "history of job performances ratings, correction actions, and complaints of discrimination" because it "misrepresent[ed] some of that evidence as necessarily evincing complaints of racial discrimination." *Id.* at *23. It also excluded an exhibit titled "Transportation Employees with Access to Dispatch Desk April 9-17, 2007" because it summarized evidence from time periods outside April 9-17, 2007. Credit Suisse makes no such misrepresentations here. The 1006 summaries are based wholly on the chat evidence that is available to the jury, and they do not misrepresent the content of the chat evidence or go beyond that chat evidence.

Plaintiffs' other objections are without merit. *First*, any objection that the underlying documents to Credit Suisse's 1006 summaries are inadmissible is without merit for the reasons set forth above, as Singer Appendix 1 is an admissible adoptive admission.

*Second*, to the extent that Plaintiffs assert that Credit Suisse's 1006 summaries are misleading because they do not fairly represent underlying documents, those arguments go to weight rather than admissibility. *See Fagiola*, 906 F.2d at 57 (holding that objections that a summary exhibit did not fairly represent the documents and was excessively confusing or misleading go to its weight rather than its admissibility). It is well-settled that arguments as to the completeness of underlying documents go to the weight the jury may give the evidence, not admissibility. *See Sec. & Exch. Comm'n* v. *Dean*, 2019 WL 8683369, at *7 (S.D.N.Y. June 7, 2019) ("[T]he completeness of this evidence goes to the weight that the jury gives the evidence, not to the question of admissibility."); *U.S. ex rel. Evergreen Pipeline Constr. Co.* v. *Merritt Meridian Constr. Corp.*, 95 F.3d 153, 163 (2d Cir. 1996) (explaining that objections that a summary exhibit "d[oes] not fairly represent the [underlying] documents and [is] excessively confusing and misleading go more to [the summary's] weight than to its admissibility").

Plaintiffs have the opportunity to depose Credit Suisse's summary witness (the parties' agreement expressly provides for this) and to create their own summary charts to rebut Credit Suisse's. Indeed, they created such summaries and sent them to us before deciding to change their strategy.

*Third*, Plaintiffs' argument that Singer Appendix 1 and Plaintiffs' exhibit list do not cover the full universe of spread chat evidence, and that Credit Suisse's 1006 summaries should thus be excluded, is wrong. Plaintiffs' whole case is based on the notion that disparate chats in different chatrooms made up a single conspiracy. The jury is entitled to know how many chats, involving which banks and which currency pairs, and when those chats occurred. Credit Suisse would be severely hamstrung in its defense if it were not permitted to provide statistics about the underlying chats, and this information will be helpful to the jury in evaluating the evidence. And Plaintiffs

12

will have the opportunity to examine the 1006 summaries, depose the summary witness, and cross-examine the summary witness at trial. *See Fagiola*, 906 F.2d at 57.

**III.     Credit Suisse's 1006 Summaries Are Not Expert Analysis**

Credit Suisse is entitled to rebut the 2,700 chats on Plaintiffs' exhibit list with its 1006 summaries. The fact that Professor Melvin conducted certain analyses on the universe of spread chats identified by Robin Poynder does not preclude Credit Suisse from presenting 1006 summaries of the evidence Plaintiffs *now* rely on to support their case. As Plaintiffs note, Professor Melvin analyzed Mr. Poynder's designation of chats as containing purported Confidential Sensitive Information. Credit Suisse's 1006 summaries make no such analysis and reach no conclusions. Instead, Credit Suisse's 1006 summaries merely count up the number of spread chats, including the number of spread chats by currency pair or participants, as represented by Plaintiffs' own expert, and divide those spread chats by the number of trading days. No expertise is required for such a task. Simple calculations and simple analysis, as used in the 1006 summaries, do not constitute complex analysis necessitating presentation by an expert. *United States* v. *Ameren Missouri*, 229 F. Supp. 3d 906, 1016 (E.D. Mo. 2017) (declining to strike summary exhibit which "contain[ed] simple mathematic calculations").

Moreover, the summaries do not argue whether the number of chats is enough to support a conspiracy, as Plaintiffs suggest. They simply say how many chats Plaintiffs have put in evidence per trading day. Plaintiffs can argue that they have shown the jury plenty. (Indeed their opening refers to "thousands of chats.") Credit Suisse can – and in fact must be able to – argue that Plaintiffs have not presented sufficient evidence and to describe that evidence to the jury to help explain why.

**IV.     Plaintiffs' Argument that Credit Suisse's Witness is Improper is Without Merit**

Dr. Marietta-Westberg is a proper summary witness. She is not testifying in any expert capacity in this trial, and the 1006 summaries do not constitute expert work. *See Ameren Missouri*, 229 F. Supp. 3d at 906. Nevertheless, Credit Suisse will agree not to elicit any testimony from Dr. Marietta-Westberg about her credentials. Indeed, Credit Suisse will refer to her at trial as Ms. Marietta-Westberg. Accordingly, the jury will not know and, thus, cannot be swayed by her background. (This is completely different from Dr. Singer, who is already testifying as an expert in this case and has been precluded by the Court from offering certain opinions about chats.)

Credit Suisse respectfully requests that the Court permit Credit Suisse to use its 1006 summaries in opening and to admit them through their summary witness, Jennifer Marietta-Westberg. Credit Suisse further requests an order from this Court precluding Plaintiffs from arguing or suggesting to the jury that the chats admitted into evidence are only "examples" of the chats that support Plaintiffs' claims. Such an argument is improper and highly prejudicial.

Respectfully submitted,

| SCOTT+SCOTT ATTORNEYS AT LAW LLP | HAUSFELD LLP |
|---|---|
| *s*/ Christopher M. Burke | *s*/ Michael D. Hausfeld |
| Christopher M. Burke | Michael D. Hausfeld |
| 600 W. Broadway, Suite 3300 | 888 16th Street NW, Suite 300 |
| San Diego, CA 92101 | Washington, DC 20006 |
| Telephone: 619-233-4565 | Telephone: 202-540-7200 |
| cburke@scott-scott.com | mhausfeld@hausfeld.com |

*Attorneys for Plaintiffs*

CAHILL GORDON & REINDEL LLP

 *s*/ Herbert S. Washer
Herbert S. Washer
Anirudh Bansal
Jason M. Hall
Edward Moss
Tammy L. Roy
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
abansal@cahill.com
jhall@cahill.com
emoss@cahill.com
troy@cahill.com

*Attorneys for Defendants*
*Credit Suisse Group AG, Credit Suisse AG,*
*and Credit Suisse Securities (USA) LLC*