Credit Suisse's application is DENIED.  Testimony on the topic at issue is fairly within the scope of Mr. Robin's previously disclosed opinions for substantially the reasons stated below by Plaintiffs.

Dated:  October 10, 2022
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Re:   *In re Foreign Exchange Benchmark Rates Antitrust Litigation*
      Case No. 1:13-cv-07789-LGS

Dear Judge Schofield:

The parties have a dispute regarding the scope of the testimony of Plaintiffs' foreign exchange industry expert, Eric Robin, who Plaintiffs have indicated they intend to call on October 11 or October 12.

Credit Suisse's Position:

This Court ruled on September 6, 2022 that "all experts' testimony at trial will be limited to opinions that were timely disclosed in their expert reports."  *See* Order on Plaintiffs' Motion to Strike (ECF No. 1882).

On October 7, 2022, Plaintiffs served their updated witness list, adding for the first time the following topic of anticipated testimony for Mr. Robin: "spread[s] shown to customers are confidential bank information."  Mr. Robin did not disclose any opinion on this topic in either of the two expert reports he submitted during expert discovery (on January 23, 2020 and August 13, 2020, respectively), and this topic was not listed for Mr. Robin in Plaintiffs' witness list filed as part of the Parties' Joint Pre-Trial Order (ECF No. 1853) (Aug. 26, 2022).[1]  Indeed, neither of Mr. Robin's reports even use the phrase "confidential bank information," let alone contains an opinion that "spreads shown to customers" constitute confidential bank information.  Furthermore, neither report provides any basis or reasons to support an expert opinion by Mr. Robin—a former FX salesperson—that spreads (whether "shown to customers" or otherwise) are confidential bank information.  *See* Fed. R. Civ. Pro. 26(a)(2)(B) (an expert report must contain "a complete statement of all opinions the witness will express ***and the basis and reasons for them***") (emphasis added).  Because Mr. Robin did not properly disclose this opinion in his expert reports, he also cites no basis in any regulation, or bank policy, or any other authority to support any expert opinion on this topic.

---

[1] While, of course, it is an expert's report that controls on the issue of whether an opinion has been properly disclosed, Plaintiffs originally listed only three topics for Mr. Robin in the Parties' Joint Pre-Trial Order (ECF No. 1853) (Aug. 26, 2022):  "Eric Robin is an expert on the FX industry. Mr. Robin will testify about (1) the basics of the FX market and FX trading, with primary emphasis on FX spot transactions; and (2) what a 'spread' is in FX trading and how spreads constitute market makers' source of profit and customers' cost of trading; (3) the durability of and correlations across spreads."

When Credit Suisse promptly raised this issue with Plaintiffs' Counsel on October 8, 2022, Plaintiffs pointed to four paragraphs (¶¶ 7-10) in Mr. Robin's reply expert report that they claim disclose Mr. Robin's opinion on this topic. An excerpt from Mr. Robin's report, with the full text of these paragraphs, is attached as Exhibit A. None of these paragraphs come close to disclosing an opinion that spreads are "confidential bank information," or to defining what "confidential bank information" means in this context, or to explaining what qualifies Mr. Robin to offer expert opinions on this subject.

Neither Mr. Robin's reference to "market color," nor his criticisms of Dr. Melvin's opinions as to the benefits of sharing market color, discloses an opinion by Mr. Robin that spreads are "confidential" or the basis for any such opinion. That Plaintiffs believed it was necessary to add this separate topic to their updated witness list only further belies any argument that this topic already fell within Mr. Robin's prior disclosed opinions, or that it can be simply swept into Plaintiffs' general disclosure that Mr. Robin was to opine on "what a 'spread' is in FX trading and how spreads constitute market makers source of profit and customers' cost of trading."[2]

Plaintiffs have further argued that it has long been a contention of Plaintiffs that spreads are confidential "Competitively Sensitive Information" ("CSI")—a term used and defined by Plaintiffs' former—now withdrawn—expert, Robin Poynder.[3] Plaintiffs' argument only highlights their long-held position that the classification of certain information as "confidential" or "CSI" is a matter for expert opinion and thus, that such expert opinions must be disclosed under Rule 26. Moreover, Plaintiffs' argument misses the point. Plaintiffs cannot simply transfer the disclosed opinions of their abandoned expert to another testifying expert where they have not satisfied the expert disclosure requirements. Even if such tactics were permitted under the Federal Rules (and they are not), Plaintiffs have never disclosed *Mr. Robin's* purported basis for adopting any such opinion of Mr. Poynder's. And the Federal Rules require the disclosure of both "a complete statement of all opinions the witness will express" and "the basis and reasons for them." Finally, Plaintiffs' tactical decision months ago to drop their former expert on this subject, Mr. Poynder, prevented Credit Suisse from challenging whether any opinion on this topic is even a proper subject of expert testimony or whether Mr. Robin (or Mr. Poynder) is qualified to give it. Plaintiffs should not be permitted to reinsert this topic on the eve of trial.

Mr. Robin has never disclosed an opinion on the issue of whether spreads constitute confidential bank information. He should be prohibited from opining on the topic in accordance with Rule 26(a)(2) and this Court's September 6, 2022 Order.

---

[2] Parties' Joint Pre-Trial Order (ECF No. 1853) (Aug. 26, 2022).

[3] *See, e.g.,* Jan. 23, 2020 Expert Report of Robin Poynder ¶ 2 ("I was asked to focus on pricing, order, or customer information that FX traders at other banks could exploit to their advantage, to their customers' disadvantage, or both—as distinguished from generalised commentary or 'market colour'. I refer to this type of information throughout my report as 'Competitively Sensitive Information' ('CSI')...").

Plaintiffs' Position

Credit Suisse is manufacturing a dispute, objecting to Plaintiffs providing more granular information regarding the proposed testimony of Plaintiffs' FX industry expert, Eric Robin, in their October 7, 2022, witness list. Contrary to Credit Suisse's feigned surprise, this additional explanation is not a new subject, but was properly included in both the long-disclosed general topics and covered in Mr. Robin's **August 13, 2020** Rebuttal Report. The Court should deny Credit Suisse's request.

The Joint Pre-Trial Order which detailed the subject of testimony for Mr. Robin provides: "Eric Robin is an expert on the FX industry. Mr. Robin will testify about (1) the basics of the FX market and FX trading, with primary emphasis on FX spot transactions; and (2) what a 'spread' is in FX trading and how spreads constitute market makers' source of profit and customers' cost of trading; (3) the durability of and correlations across spreads." August 26, 2022 ECF 1853 at 6. The additional detail Plaintiffs provided is plainly encompassed by Topics 1 and 2. Explanation of the market and **what a spread is in FX trading** necessarily include information regarding how that information is kept, used, and understood in the market.

Credit Suisse's complaint that adding "spreads shown to customers are confidential bank information" and is "outside of Robin's disclosed opinions" is nonsense. Mr. Robin's Rebuttal Report contains a section entitled: "FX Traders Do Not Need to Exchange CSI [Competitively Sensitive Information]." Rebuttal Report, ¶¶7-10. Responding to Credit Suisse's expert, Mr. Robin opined: "Based on my experience in the industry and the record evidence, the types of information exchanged between FX traders during the Class Period that Mr. Poynder has found and labelled as 'CSI' is nowhere close to satisfying any reasonable definition of 'market color.'"[4] Rebuttal Report, ¶8. In other words, it is confidential bank information that should not be disclosed.

In paragraph 10, Mr. Robin specifically notes, "While larger trades carry more risk, and thus typically require larger spreads, Dr. Melvin provides no evidence or justification for why the **exchange of competitively sensitive information, including spreads**, would lead to narrower, rather than larger, customer spreads." Rebuttal Report, ¶10. Similarly, he opines that if traders had followed Dr. Melvin's approach "to understanding the status about liquidity and appropriate spreads available at a given time [this] would have violated the compliance policies at the market makers where I worked and appear to violate many of Defendants' policies that have been produced in this case." *Id.*; *see aslo id.* n.16. In footnote 16, Mr. Robin details how sharing competitively sensitive information violates internal policies, including the policies of Credit Suisse.[5] *Id.* Thus, Mr. Robin provided his own opinions based on his substantial industry experience and various corporate bank policies and other record evidence.

---

[4]   In his career, Mr Robin has worked in FX sales for SBC O'Connor (now UBS), NationsBank (now Bank of America), Deutsche Bank, JPMorgan, and Royal Bank of Scotland ("RBS"). He served as a Managing Director at JPMorgan and RBS.

[5]   In paragraph 6, Mr. Robin opines "that spread is the way prices are conveyed to customers and that dealers want a wider spread." Rebuttal Report at ¶6.

A reasonable interpretation of those paragraphs of Mr. Robin's report is that "spreads shown to customers constitute confidential bank information" and that they should not be shared with competitors. Even if by some stretch of the imagination, the topic clarification is considered an untimely disclosure, this is not what the Rule encompasses. Rather, the Rule requires a party to supplement its disclosures in a timely manner only "if the party learns that in *some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing*." Fed. R. Civ. P. 26(e)(1)(A). Here, the additional topic clarification is not material and, critically, this information was "made known" to Credit Suisse for more than two years. "The plain language of Rule 26(e) provides … that supplementation is unnecessary when information has been "otherwise made known to the other parties during the discovery process or in writing." *Aloe Vera of Am. Inc. v. United States*, 2014 U.S. Dist. LEXIS 94413, *10 (D. Ariz. 2014).

*United States v. Asare*, No. 15 CIV. 3556 (AT), 2019 WL 10854305, at *2 (S.D.N.Y. June 17, 2019) is instructive. In that case the court denied a motion to strike expert testimony on the grounds that the testimony was not identified in the joint pre-trial order and purportedly exceeded the scope of his expert report. The court examined the identified topics and found that while the opinion was not specifically identified it fell "squarely under the topics identified in the JPTO and his expert report" and further found that the topic related to HIV testing of patients prior to surgery was "subsumed under" other identified topics related to more general topics regarding the nature of HIV and standard medical safety precautions.[6]

In sum, Credit Suisse's last-gasp effort to limit Mr. Robin's testimony on matters plainly disclosed in his two-year-old report and generally disclosed in the JPTO fails. Even crediting Credit Suisse's faulty arguments, the draconian remedy they seek is precluded by the Rule which only covers those instances where the matter is not disclosed in some material respect and the information has not otherwise been made known. Neither situation exists here; Credit Suisse's efforts to derail Mr. Robin's testimony on the eve of trial fail.

Respectfully submitted,

| | |
|---|---|
| SCOTT+SCOTT ATTORNEYS AT LAW LLP | HAUSFELD LLP |
| *s/* Christopher M. Burke | *s/* Michael D. Hausfeld |
| Christopher M. Burke | Michael D. Hausfeld |

---

[6] Judge Pauley's decision in *Harkabi v. SanDisk Corp.*, No. 08 CIV. 8203 WHP, 2012 WL 2574717, at *3–4 (S.D.N.Y. June 20, 2012) is also supportive. There the court held "An expert's trial testimony may be precluded based on nondisclosure only when it " 'expound[s] a wholly new and complex approach designed to fill a significant and logical gap in the first [expert] report.' " There is no such issue here where Mr. Robin's opinion regarding the confidential nature of spreads has been known to Credit Suisse for more than two years and the topics identified in the JPTO are plainly general and encompass the additional detail Plaintiffs' provided.

| | |
|---|---|
| 600 W. Broadway, Suite 3300<br>San Diego, CA 92101<br>Telephone: 619-233-4565<br>cburke@scott-scott.com | 888 16th Street NW, Suite 300<br>Washington, DC 20006<br>Telephone: 202-540-7200<br>mhausfeld@hausfeld.com |

*Attorneys for Plaintiffs*

CAHILL GORDON & REINDEL LLP

 *s/* Jason M. Hall
Herbert S. Washer
Anirudh Bansal
Jason M. Hall
Edward Moss
Tammy L. Roy
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
abansal@cahill.com
jhall@cahill.com
emoss@cahill.com
troy@cahill.com

*Attorneys for Defendants*
*Credit Suisse Group AG, Credit Suisse AG,*
*and Credit Suisse Securities (USA) LLC*