# CAHILL GORDON & REINDEL LLP
## 32 OLD SLIP
## NEW YORK, NY 10005

DANIEL R. ANDERSON
HELENE R. BANKS
ANIRUDH BANSAL
DAVID L. BARASH
LANDIS C. BEST
BRADLEY J. BONDI
BROCKTON B. BOSSON
JONATHAN BROWNSON *
DONNA M. BRYAN
JOYDEEP CHOUDHURI *
JAMES J. CLARK
CHRISTOPHER W. CLEMENT
LISA COLLIER
AYANO K. CREED
PRUE CRIDDLE ±
SEAN M. DAVIS
STUART G. DOWNING
ADAM M. DWORKIN
ANASTASIA EFIMOVA
JENNIFER B. EZRING
HELENA S. FRANCESCHI
JOAN MURTAGH FRANKEL

JONATHAN J. FRANKEL
ARIEL GOLDMAN
PATRICK GORDON
JASON M. HALL
STEPHEN HARPER
WILLIAM M. HARTNETT
NOLA B. HELLER
CRAIG M. HOROWITZ
TIMOTHY B. HOWELL
DAVID G. JANUSZEWSKI
ELAI KATZ
JAKE KEAVENY
BRIAN S. KELLEHER
RICHARD KELLY
CHÉRIE R. KISER ‡
JOEL KURTZBERG
TED B. LACEY
MARC R. LASHBROOK
ALIZA R. LEVINE
JOEL H. LEVITIN
GEOFFREY E. LIEBMANN
BRIAN T. MARKLEY

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM

—————

1990 K STREET, N.W.
WASHINGTON, DC 20006-1181
(202) 862-8900

CAHILL GORDON & REINDEL (UK) LLP
20 FENCHURCH STREET
LONDON EC3M 3BY
+44 (0) 20 7920 9800

—————

WRITER'S DIRECT NUMBER

MEGHAN N. McDERMOTT
WILLIAM J. MILLER
EDWARD N. MOSS
NOAH B. NEWITZ
WARREN NEWTON §
DAVID R. OWEN
JOHN PAPACHRISTOS
LUIS R. PENALVER
KIMBERLY PETILLO-DÉCOSSARD
SHEILA C. RAMESH
MICHAEL W. REDDY
OLEG REZZY
THORN ROSENTHAL
TAMMY L. ROY
JONATHAN A. SCHAFFZIN
ANDREW SCHWARTZ
DARREN SKINNICK
JOSIAH M. SLOTNICK
RICHARD A. STIEGLITZ JR.
ROSS E. STURMAN
SUSANNA M. SUH
ANTHONY K. TAMA

JOHN A. TRIPODORO
GLENN J. WALDRIP, JR.
HERBERT S. WASHER
MICHAEL B. WEISS
DAVID WISHENGRAD
C. ANTHONY WOLFE
COREY WRIGHT
ELIZABETH M. YAHL
JOSHUA M. ZELIG

* ADMITTED AS A SOLICITOR IN
ENGLAND AND WALES ONLY
± ADMITTED AS A SOLICITOR IN
WESTERN AUSTRALIA ONLY
‡ ADMITTED IN DC ONLY
§ ADMITTED AS AN ATTORNEY
IN THE REPUBLIC OF SOUTH AFRICA
ONLY

(212) 701-3207

October 13, 2022

Re:   *In re Foreign Exchange Benchmark Rates Antitrust
      Litigation*, Case No. 1:13-cv-07789-LGS

Dear Judge Schofield:

The Credit Suisse Defendants respectfully submit this letter in response to Plaintiffs' October 13, 2022 letter (ECF 1983) (the "Letter") seeking to introduce evidence of (1) Plaintiffs' settlements with the co-defendant banks and (2) Credit Suisse's settlement with the New York Department of Financial Services, which this Court excluded (ECF 1880) upon Credit Suisse's motion *in limine*.

Plaintiffs contend that Credit Suisse "opened the door" to such evidence in its opening statements by (1) referring to former defendants, notwithstanding that the same types of remarks were made by Plaintiffs, their expert witness, and the Court, and by (2) noting, in response to Plaintiffs' references to guilty pleas by other banks, that that the jury would hear no evidence of criminal prosecutions of Credit Suisse, a true fact that in no way implicates the civil settlement with the NYDFS, and of which the Plaintiffs were notified in advance of the opening statements, and raised no objection.  For these and the reasons set forth below, Plaintiffs' eleventh hour attempt to manufacture a controversy to strengthen their case and prejudice Credit Suisse should not be countenanced.

## I.   Credit Suisse Did Not Open the Door to Evidence Regarding Resolution of the Suits Against the 15 Alleged Co-Conspirator Banks

It is black letter law that "Rule 408 bars evidence of settlements between plaintiffs and . . . former co-defendants." *McInnis* v. *A.M.F., Inc.*, 765 F.2d 240, 247-248 (1st Cir. 1985) (collecting cases).  Plaintiffs should not be permitted to override these principles to introduce severely prejudicial evidence based on a handful of references to "Defendants" that counsel made, similar to remarks made by Plaintiffs' counsel themselves, and based on slides provided in advance to

-2-

Plaintiffs that they failed to object to. While the parties have both worked hard to expunge ten years of references to the "other defendants" from their vocabulary, it is not surprising that both sides had a few slips. To that end, the Court has already instructed the jury that "[t]he banks that are alleged to have been part of the conspiracy with Credit Suisse are listed on your screen. They are the same banks that were listed on the papers you had at the bottom. The fact that these other banks are not defendants in this trial should have no effect on the decisions you reach and you shouldn't speculate about why Credit Suisse is here and some other bank may not be here." Trial Transcript ("Tr.") at 19:1-7. This instruction eliminates any risk of juror confusion or speculation about the absence of the other banks.

In defense counsel's opening statement, he described the 15 co-defendants as banks that were "sued" in making the point that there are more than 50 market makers and only 16 were alleged to be in the conspiracy – a point relevant to the plausibility of a conspiracy that would be undone if other market participants offered more attractive spreads to customers. Certainly there was no intent to introduce inadmissible evidence, and it is hard to see how any prejudice to Plaintiffs could result. Indeed, Plaintiffs themselves proposed a jury instruction including the language "***former defendants*** in this action, Barclays, BNP Paribas, Citi, JPMorgan Chase, and Royal Bank of Scotland (RBS). . . ." ECF 1889 at 34 (emphasis added). Questioning their expert Hal Singer, Plaintiffs' counsel twice referenced the "other defendants." Tr. 357:7-18; 364:23-365:18. Dr. Singer went even further: he referenced the "16 defendants" twice, Tr. 346:7; 352:3, the "15 remaining defendants," Tr. 365:18, and related references, e.g., Tr. 400:9-11 ("To make it in you had to have at least two defendant banks on a chat in which banks were trying to get at the right price"). Nor did Plaintiffs object to the jury instruction given by the Court that "[y]ou may find that the required agreement or conspiracy existed based on the course of dealing among the ***defendants***, through words they exchanged, or from their acts alone." Tr. 21:10-17.

Plaintiffs' belated objections to Credit Suisse's opening slides (Letter at 1) have also been waived. Pursuant to paragraph 15 of the September 20, 2022 Stipulation and Order regarding joint trial procedures (ECF No. 1917), Credit Suisse provided Plaintiffs with the slide deck on October 9, 2022. Plaintiffs were required to object by noon on October 10, 2022 but raised no objection. *See* ECF No. 1917 at 3. *See, e.g., U.S.* v. *Curanovic*, 490 Fed. Appx. 403, 404 (2d Cir. 2013) (finding that "the district court reasonably found that none of the defendants timely objected to the admission of these exhibits" because "Defendants were required to object to [the] exhibits . . . at the time they were admitted" and "were obligated to object . . . once it appeared that the government was offering the evidence for more than . . . the limitation agreed to before trial").

It is not surprising that Plaintiffs cite no case that opened the door to the admission of settlement agreements in an analogous situation. In *United States* v. *Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992), the Second Circuit stated that the evidence offered by the Government was admissible, non-hearsay testimony which "did not open the door to the introduction . . . [the defendant's] own hearsay or irrelevant statements." And in *Weyant* v. *Osk*, the trial court allowed the plaintiff to introduce evidence that the defendant had punched him after the defense counsel, in his opening, referenced background circumstances of plaintiff's arrest that called into question the defendant's

-3-

use of force. 182 F.3d 902, 1999 WL 491866 (2d Cir. July 8, 1999).  Because of defendant counsel's comments, the court reassessed the balancing under Rule 403.  *Id.* at *2.  Here, the minor references to other defendants by counsel will not "cause a false impression," do not constitute inadmissible evidence, and have been fully addressed by the Court's prudent jury instruction.

## II.   Credit Suisse Did Not Open the Door to Evidence from the NYDFS Order

Simply put, the Credit Suisse Defendants' opening statement neither "introduced inadmissible evidence," nor created any "false impression," both of which would be necessary to give the Court the "discretion to permit [the Plaintiffs] to introduce otherwise inadmissible evidence." *Rea*, 958 F. 2d at 1225.

First, the portion of Credit Suisse's opening statement the Plaintiffs complain of proffered no evidence whatsoever, but rather noted the *lack of evidence* that would be offered by the Plaintiffs, which is standard fare for an opening.  Specifically, in a direct and explicit response to the *Plaintiffs* having emphasized the criminal guilty pleas of other banks in their opening,[1] defense counsel appropriately and accurately distanced Credit Suisse from those guilty pleas by stating that "you'll hear no evidence that Credit Suisse was prosecuted and no evidence that Credit Suisse pleaded guilty to anything."  Tr. 76-77.

This is clearly a true statement, because there is no such evidence.  Credit Suisse was not criminally prosecuted and did not plead guilty to any antitrust conspiracy, and the jury will not and could not hear any such evidence.  Counsel was merely pointing out an *absence* of evidence connecting Credit Suisse to the guilty pleas on which the Plaintiffs rely so heavily, which is by no means introducing "inadmissible evidence," nor evidence of any sort.  Under the Plaintiffs' view, any time a defendant argued a lack of evidence or a failure of proof, it would "open the door" to additional evidence from the plaintiff at any time during the trial.

As to the second prong of the *Rea* standard, the Plaintiffs' argument that the opening statement was misleading is based entirely on the notion that the jury could have misconstrued counsel's use of the word "prosecution" to mean civil enforcement actions.  Letter at 2 n.1.  The Plaintiffs' strained reading of the word aside,[2] they omitted to mention that just before the portion of the opening they chose to quote, defense counsel made explicit that he was referring to "*criminal*

---

[1] *E.g.*, Tr. 29:1-8, 57:15-58:4 ("Banks and traders pleaded guilty. One trader was in prison. Five dealers pleaded guilty in connection with entering into and engaging in a conspiracy to fix prices of certain currencies"), 58:21-24.

[2] Plaintiffs rely on obscure and dated nomenclature in highly specific contexts to support their forced reading.  *Lesnow Bros. v. U.S.*, 78 F. Supp. 829, 831 (Ct. Cl. 1948) (analyzing a question of statutory interpretation relating to a Connecticut statute authorizing expiring corporations to "continue so far as may be necessary to enable them to prosecute and defend suits by or against them"); *Bohnen v. Harrison*, 232 F.2d 406, 409 (7th Cir. 1956) ("prosecute" as used in a Bureau of International Revenue regulation regarding the deduction of attorneys' fees for "prosecuting a claim for refund.").

-4-

prosecutions": "The first point you'll hear about these *criminal prosecutions*, you'll hear no evidence that Credit Suisse was prosecuted and no evidence that Credit Suisse *pleaded guilty* to anything." Tr. at 76-77 (emphasis added). The supposed ambiguity on which the Plaintiffs rely is a fiction, and there was nothing misleading about noting the absence of evidence of any criminal prosecution of Credit Suisse, as it is an entirely accurate statement of the record and distinguishes Credit Suisse from the other banks with whose guilty pleas the Plaintiffs are trying to use to tar Credit Suisse.[3]  Plaintiffs' "door opening" argument is simply an attempt at a second bite at admitting evidence that the Court rightly excluded, and there is absolutely no basis on which to revisit that ruling.[4]

In addition, the NYDFS order is unrelated to the criminal prosecutions of other banks that Plaintiffs have focused on.  The Consent Order settles an investigation of potential violations of New York laws and regulations (not federal antitrust law) and involves time periods and purported conduct (such as alleged front-running, the alleged misuse of electronic trading platforms, and the purported manipulation of benchmark fixing rates) that are not at issue.  Indeed, as the Court has ruled, "[u]nder Rule 403, the probative value is small because the Consent Order *focuses on conduct excluded from the class definition, or conduct with no bearing on the two issues to be tried*." ECF 1880 at 2 (emphasis added).  Thus, introduction of the NYDFS consent order would not constitute evidence "on the same issue" as the other bank's guilty pleas. *Weyant* v. *Okst*, 182 F.3d 902, 1999 WL 419866, at *2 (2d Cir. July 8, 1999) ("The rule of 'opening the door,' or 'curative admissibility,' gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence.") (citation omitted).

Plaintiffs have cited no case that opened the door in an analogous situation.  In *Duttle* v. *Bandler & Kass*, 1990 WL 113187, at *3-4 (S.D.N.Y. July 30, 1990), the court granted plaintiff's motion *in limine* preventing defendants from introducing evidence that a grand jury failed to indict defendants.  Here Credit Suisse did not seek to offer any evidence – again, it merely commented, accurately, on what would not be in evidence.  Moreover, the court in *Duttle* acknowledged that if at trial, proceedings related to the grand jury were admitted, the court would entertain argument that the jury should also learn of the fact that defendants were not indicted.  *Id.*  In *Johnson* v. *Elk Lake School District*, 283 F.3d 138, 146 (3d Cir. 2002), the defendant's attorney informed the jury

---

[3] Like the DFS settlement, the South African Competition Commission and European Commission Competition Authority actions the Plaintiffs reference in footnote 2 of their Brief are also civil, not criminal.

[4] Further undercutting the Plaintiffs' arguments about potential juror confusion, the Court has already preliminary instructed the jury that the opening statements are not evidence.  Tr. 8:22-9:8. *See also U.S.* v. *Elfgeeh*, 515 F.3d 100, 113 (2d Cir. 2008) (affirming conviction and observing that the district court held that counsel's remark in opening statement that money did not come from a criminal activity did not open the door to evidence that money was transmitted to terrorist organizations).

CAHILL GORDON & REINDEL LLP

-5-

that the plaintiff reported the defendant to the police for sexually harassing and abusing her, but the police did not arrest him. Acknowledging that the attorney's remark was not evidence, the appellate court found that the trial court's limiting instruction, made upon the plaintiff's objection and request for a mistrial, was sufficient to cure any prejudice. *Id.* The facts in *Johnson*—a case alleging sexual harassment and abuse—are clearly distinguishable. Significantly, in neither *Duttle* nor *Johnson* had the opposing counsel already put at issue guilty pleas and guilty verdicts of other parties as was the case here.

Even if Plaintiffs had satisfied the threshold requirements for this Court to exercise its discretion, the Court's prior Rule 403 analysis still holds. Admission of the Consent Order would serve to only prolong an already complicated trial, require Credit Suisse to present evidence explaining and disputing the numerous irrelevant issues contained in it, leading to significant juror confusion. *See Paolitto* v. *John Brown E. & C., Inc.,* 151 F.3d 60, 65 (2d Cir. 1998) ("The party against whom [an agency] determination is admitted must attempt to expose the weaknesses of the report, an effort that may well confuse or mislead the jury and result in an undue waste of time.") (citation omitted). Plaintiffs' suggestion to excise portions of the NYDFS Order is no answer, as it will likewise lead to prejudice and confusion, as the jurors will be left wondering what the missing pages reveal.

Finally, Plaintiffs have waived their door-opening argument. Not only did they not object to counsel's opening at the time, they failed to object to defendants' opening slides which were provided to the Plaintiffs on October 9th and which made clear Credit Suisse would point out this specific failure of proof in its opening remarks. The first slide in the section of the deck titled "Failure of Proof as to Credit Suisse," (Slide 20) stated, "CREDIT SUISSE NEVER PLEADED GUILTY" (Slide 21). As discussed above, pursuant to the September 20, 2022 Stipulation and Order regarding joint trial procedures (ECF No. 1917), Plaintiffs were required to object by noon on October 10, 2022 but raised no objection. *Id.* at 3. Had they done so instead of lying in wait, steps could have been taken to avoid this dispute, but they chose not to object. Plaintiffs' untimely and meritless argument is waived.

The Court should reject Plaintiffs' letter request.

Respectfully submitted,

CAHILL GORDON & REINDEL LLP

/s/ Herbert S. Washer

CAHILL GORDON & REINDEL LLP

-6-

Herbert S. Washer
Anirudh Bansal
Jason M. Hall
Edward Moss
Tammy L. Roy
32 Old Slip
New York, New York 10005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
abansal@cahill.com
jhall@cahill.com
emoss@cahill.com
troy@cahill.com

*Attorney for Defendants Credit Suisse Group AG, Credit Suisse AG, and Credit Suisse Securities (USA) LLC*

Honorable Lorna G. Schofield
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

<u>Via ECF</u>