October 15, 2022

**VIA ECF**

Honorable Lorna G. Schofield
U.S. District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY  10007

  Re: *In re Foreign Exchange Benchmark Rates Antitrust Litigation*
     Case No. 1:13-cv-07789-LGS

Dear Judge Schofield:

  Plaintiffs respectfully request that Credit Suisse be prohibited from eliciting testimony from Dr. Kleidon about Dr. Singer's regression.

  On September 30, 2022, the Court issued an order stating that:

Dr. Singer shall not opine that the Conduct coefficient produced by his regression analysis measures the average difference in spreads between the entire conspiracy period and the post-conspiracy period he analyzed.  Dr. Singer may, however, opine that his analysis measures the average difference in spreads between the second half of 2013 (the last six months of the alleged conspiracy period) and the first half of 2014.  Counsel may argue whatever reasonable inferences may be drawn from such opinion.  The parties may not directly or indirectly reference the Court's ruling as the reason for Dr. Singer's opinion being revised to comply with this order.

  On Thursday, October 13, 2022, Credit Suisse provided Plaintiffs with the set of demonstratives it intends to use with Dr. Kleidon.  Consistent with their description of his testimony on their witness list (Dr. Kleidon will provide "expert testimony regarding flaws in Plaintiffs' expert analyses, and empirical analysis of trading in the FX marketplace"), the demonstratives Credit Suisse disclosed relate solely to Dr. Singer's regression.  *See* Ex. 1.  That Dr. Kleidon is only going to testify to the regression is further bolstered by the fact that Credit Suisse has an expert, Dr. Mathur, who is designated to respond to the entirety of Dr. Singer's trial testimony.

  Dr. Singer did not offer any opinions that relied on his regression.[1]  The Court acknowledged as much during cross-examination Friday morning.  October 14, 2022 Trial Tr. at

---

[1] Oct. 13, 2022 Trial Tr. at 344:8-20 ("[T]he first major conclusion is that the traditional economic indicators that I used here are consistent with the existence of a conspiracy and a price fixing conspiracy, and inconsistent with conduct that you would expect to observe if each bank were acting in its own individual interest.  The second major conclusion that I reached is that the traditional economic indicators support the conclusion that Credit Suisse participated in the alleged conspiracy.").  Despite what appeared to be efforts by Credit Suisse's counsel to bait Dr. Singer

451:1-453:18. The Court also repeatedly sustained objections when Credit Suisse attempted to cross examine Dr. Singer on his regression analysis because it exceeded the scope of direct examination. *See* Oct. 14, 2022 Trial Tr. at 453:9-18, 454:3-10, 456:15-21. Plaintiffs are therefore surprised Credit Suisse intends to offer Dr. Kleidon to discuss a regression which is not in evidence.[2] This material, which is outside the scope of Plaintiffs' case in chief, is not necessary where the issues to be decided are whether a conspiracy existed and whether Credit Suisse was a member of that conspiracy. It is fundamental that this conspiracy need not be successful in order for Credit Suisse to be found liable. *See United States v. Aiyer*, 33 F.4th 97, 118 (2d Cir. 2022) ("actual effects on the market are, subject to only a few, narrow exceptions, irrelevant in a case alleging a *per se* violation of the Sherman Act.").

Further, Dr. Kleidon cannot introduce a competing model implying no one was injured by Defendants' conduct because he did not do one himself; he only challenged Dr. Singer's model. Dr. Kleidon's proposed testimony is not only beyond the evidence introduced at trial, but is also beyond the limited issue of common agreement. Testimony "rebutting" conclusions and analytical methods that were not presented to the jury would not "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). To be offered at trial, expert testimony must be "'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).

Credit Suisse is trying again to discuss the entirety of Dr. Singer's regression in an effort to undermine his credibility. This is just like Credit Suisse's improper questioning at the end of Dr. Singer's cross examination.[3] Because this anticipated testimony would not assist the jury in

---

into opening the door to discussing his entire regression, Dr. Singer did not discuss his regression. *See* Oct. 13, 2022 Trial Tr. at 435:6-17 ("Q. You have no idea if the quote was inflated, right, because you did not do any analysis to determine whether spreads were wider, and you're not offering an opinion as to whether or not there was an agreement, right? A. The first part of your question is untrue. Today I'm not offering – what was the second – what was the second question, I'm sorry? You said I've done no analysis, and you know I have. But what was the second question? Q. You're not offering the opinion that spreads were wider, correct, widened as a result of this conspiracy? You didn't offer that on direct, correct, sir? A. I did not offer that opinion to the jury today, correct.").

[2] This is akin to offering a rebuttal expert opinion where no initial opinion exists, which courts routinely find is inappropriate. *See Internet Servs. v. Immersion Corp.*, No. 06-CV-2009, 2008 WL 2051028, at *3 (N.D. Cal. May 13, 2008) (unreported) (collecting cases). "Rebuttal evidence is properly admissible when it will 'explain, repel, counteract or disprove the evidence of the adverse party.'" *Finizie v. Principi*, 69 F. App'x 571, 574 (3d Cir. 2003) (quoting *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974)).

[3] Oct. 14, 2022 Trial Tr. at 456:15-21 ("Q. And you had prepared an analysis. You spent four years working on an analysis to try to show that spreads were wider during the alleged

evaluating the evidence in this case and would instead likely confuse the jury and unfairly prejudice Plaintiffs, Plaintiffs request the Court instruct Defendants not to elicit testimony from Dr. Kleidon on Dr. Singer's regressions which are not in evidence.

Respectfully submitted,

| SCOTT+SCOTT ATTORNEYS AT LAW LLP | HAUSFELD LLP |
|---|---|
| *s/* Christopher M. Burke | *s/* Michael D. Hausfeld |
| Christopher M. Burke | Michael D. Hausfeld |
| 600 W. Broadway, Suite 3300 | 888 16th Street NW, Suite 300 |
| San Diego, CA 92101 | Washington, DC 20006 |
| Telephone: 619-233-4565 | Telephone: 202-540-7200 |
| cburke@scott-scott.com | mhausfeld@hausfeld.com |

*Attorneys for Plaintiffs*

---

conspiracy period? MR. HAUSFELD: Objection, your Honor. THE COURT: Sustained. Q. And you didn't tell the jury that? THE COURT: Sustained."). Plaintiffs reserve the right to seek a jury instruction to cure the damage done by this and other improper attorney argument which violated certain pretrial orders.