```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
                                                              :
IN RE FOREIGN EXCHANGE BENCHMARK                              :     13 Civ. 7789 (LGS)
RATES ANTITRUST LITIGATION.                                   :
                                                              :         **OPINION**
                                                              :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

WHEREAS, on August 26, 2022, Defendants moved to exclude at trial certain proposed testimony of Plaintiffs' experts Dr. Hal J. Singer and Mr. Eric Robin. On September 30, 2022, the Court issued a short order (Dkt. No. 1944), resolving Defendants' motion and stating that the reasoning for those decisions would be forthcoming in a separate opinion. The reasons for the Order at Dkt. No. 1944 are below. All references to Rules are to the Federal Rules of Evidence.

### I.   Dr. Singer's Testimony About the Number or Frequency of Chats

Defendants' application to preclude Dr. Singer from presenting "factual narrative" about the chats that he examined was granted in part and denied in part. Dr. Singer was permitted to testify about how many and what kind of chats were collected and why. Explaining the collection methodology required Dr. Singer to explain, from the perspective of an antitrust economist, what kinds of information exchange are inconsistent with competition and likely to result in wider spreads, and why the searches used to collect these chats were appropriate. In presenting that testimony, he was permitted to include some illustrative discussion of specific chats. Dr. Singer was precluded, however, from going beyond the testimony required to explain the basis for those opinions. For example, Dr. Singer was precluded from interpreting chats or opining on whether specific chats involve the sharing of price information among competitors, and from reading excessive numbers of chats into the record.

Defendants' application to preclude Dr. Singer from describing the alleged conspirators' spread chats as "routine" was denied. Defendants' argument is well taken that "routine" is not a technical term, and jurors need no economic expertise to determine whether a given number of chats over a given time period is "routine." But it would have been odd and counterproductive to preclude Dr. Singer from using layman's terms to characterize the number and frequency of chats or from using certain words in doing so.

## II.     Dr. Singer and Mr. Robin's Testimony About Guilty Pleas and Settlements

Plaintiffs' experts were precluded from offering opinions about the likely significance of guilty pleas and regulatory settlements. Defendants' motions in limine to preclude evidence of regulatory settlements were for the most part granted because the fact of settlement is inadmissible to prove liability under Rule 408.[1] (Dkt. 1880, 1st, 5th and 7th MILs.) Economic expert testimony that seeks to explain why someone might rationally make the decision to settle therefore is irrelevant under Rule 402. Guilty plea evidence was permitted at trial because the probative value of those pleas outweighed the risk of prejudice as explained in the Order denying Defendants' motion in limine. (Dkt. 1880, 3rd and 4th MILs.) However, expert testimony on the likely reasons for those pleas would have been only minimally helpful to the jury while amplifying any prejudicial effect, and thus was excluded under Rules 702 and 403.

Class counsel credibly argued that Dr. Singer's review of regulatory settlements and guilty pleas was relevant as a basis for his economic analysis to show that spreads were widened during the period in which the conduct covered by those settlement and pleas occurred. That testimony was nevertheless excluded under Rules 403 and 702. It would have been a "backdoor"

---

[1] Credit Suisse's motion in limine was denied as to one regulatory settlement, which contained factual admissions of one of Credit Suisse's alleged co-conspirators, but Plaintiffs did not offer that evidence at trial, so the permissibility of expert testimony about that evidence is moot.

way of introducing prejudicial and inadmissible evidence of settlements, and in his September 14, 2022, declaration in opposition to Defendants' motion, Dr. Singer conceded "that regulatory settlements and guilty pleas are not necessary to assess the economic effects of an alleged conspiracy." Even if Dr. Singer's testimony had been restricted to the admissible evidence of guilty pleas and criminal convictions, his opinion that such criminal consequences are consistent with the existence of a conspiracy would not have helped the jurors understand any concept beyond their common understanding.

For the same reason, Mr. Robin was precluded from testifying about guilty pleas and regulatory settlements because the opinion proffered -- that these regulatory outcomes would have been unlikely had the activity in the chatrooms been proper -- is not based on any special expertise of Mr. Robin's and creates a high risk of prejudice by encouraging the substitution of the regulators' conclusions for the jury's own.

As Defendants argue only in a footnote that Mr. Robin is not qualified to opine on the concept of "market color," they forfeit that argument. *See Fin. Guaranty Ins. Co. v. Putnam Advisory Co., LLC*, No. 12 Civ. 7372, 2020 WL 264146, at *2 (S.D.N.Y. Jan. 17, 2020). In any event, the argument is unpersuasive on the merits. Putting aside the term "market color," Defendants do not dispute that Mr. Robin is qualified as an expert to opine on the FX industry, FX trading practices and whether certain practices were routine or problematic. In light of his extensive experience, the fact that Mr. Robin has worked at only three of the sixteen alleged co-conspirator banks and has not worked in a compliance department is immaterial, and he is qualified to opine whether a trading practice was generally accepted or not. To the extent Defendants sought to preclude other unidentified "factual narrative" Mr. Robin might offer, that request was denied.

**III.     Dr. Singer's Regression Analysis**

Defendants' application to preclude several of Dr. Singer's conclusions about the alleged narrowing of spreads was granted in relevant part.  While regression analysis is in general a reliable methodology to estimate the relationship between certain variables, Defendants persuasively argued that the Conduct coefficient produced by Dr. Singer's regression analysis actually measures variation in spreads only between the last six months of 2013 on the one hand and the first six months of 2014 on the other.  Neither Plaintiffs nor Dr. Singer in his declaration rebut the assertions of Defendants and their experts that a regression in which the "Conduct" variable is turned "on" only for that twelve-month period produces precisely the the same coefficient of 0.0000408 that Dr. Singer claims describes the difference between the entire conspiracy period and the post-conspiracy period.  Nor does Dr. Singer dispute that his use of year-fixed effects variables in combination with the Conduct variable results in perfect collinearity for each year except the twelve-month period discussed above.  Dr. Singer therefore was precluded under Rule 702 from opining that the current Conduct coefficient produced by his regression analysis measures the average difference in spreads between the entire conspiracy period and the post-conspiracy period he analyzed.

Defendants' other challenges to Dr. Singer's opinions were overruled, but the challenged testimony was not offered at trial.  In particular, the Court permitted, but Plaintiffs did not offer, Dr. Singer's opinion that spreads were wider in the last six months that the alleged conspiracy existed and the first six months after it allegedly ended; Dr. Singer's opinions derived from his "cointegration regression" analysis of the correlation between interbank and customer spreads; and Dr. Singer's opinion that the incidence of chats in which spreads were shared coincided and correlated with wider spreads.  Defendants' challenges to that testimony therefore are moot.

### IV. Dr. Singer and Mr. Robin's Testimony About "Transmission Theories"

Defendants' application to preclude Plaintiffs' experts testimony about so-called "Transmission Theories" was denied. The parties use the term "Transmission Theories" to describe theorized mechanisms that "would allow a supposed agreement in one chat about one spread to affect other spreads." Defendants identified three such theories: "vertical and horizontal correlations," "adverse selection" and "feedback loops." As neither of the latter two theories was addressed in expert testimony at trial, the admissibility of such testimony is moot. Expert testimony is admissible on the third theory, which addresses purported correlations between spreads. Contrary to Defendants' arguments, expert opinions about correlations between spreads are directly relevant to whether Plaintiffs proved the existence of a broad, global conspiracy to widen spreads. Accordingly, Defendants' relevance challenge to Dr. Singer and Mr. Robin's testimony on this topic was rejected.

### V. Dr. Singer and Mr. Robin's Testimony About Spread Durability or Stability

Defendants' challenge to expert testimony about the purported durability or stability of spreads was denied. Defendants argued that Mr. Robin's opening merits report contains only a brief discussion of spread stability with a single citation of dubious value. Mr. Robin's reply report, however, contains a detailed discussion of the issue supported both by Mr. Robin's experience working for market-making banks and numerous citations to record evidence and scholarship. Mr. Robin based his opinion in significant part on spread matrices; he cited numerous sources explaining the role of spread matrices; and he explained the relationship between those matrices and the EBS data used by Dr. Melvin. Plaintiffs' claim that Mr. Robin's and, by extension, Dr. Singer's opinions about spread stability are not based on sufficient facts and data is unpersuasive.

## VI. Conclusion

For the foregoing reasons, Plaintiffs' motion was granted in part and denied in part with respect to both Dr. Singer and Mr. Robin's testimony.

Dated: October 20, 2022
       New York, New York

                                  LORNA G. SCHOFIELD
                                  UNITED STATES DISTRICT JUDGE