```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
                                                             :
IN RE FOREIGN EXCHANGE BENCHMARK                             :    13 Civ. 7789 (LGS)
RATES ANTITRUST LITIGATION.                                  :
                                                             :    OPINION
                                                             :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

WHEREAS, on August 26, 2022, Plaintiffs moved to exclude at trial certain proposed testimony of the Credit Suisse Defendants' ("Credit Suisse") experts Michael Melvin, Ph.D., Divya Mathur, Ph.D., Allan W. Kleidon, Ph.D., and Professor Justin McCrary. The parties subsequently resolved Plaintiffs' challenges to Professor McCrary and part of Dr. Kleidon's testimony, discussed at §§ II.D and III of Plaintiffs' memorandum of law, and those portions of Plaintiffs' motion are DENIED as moot. On September 30, 2022, the Court issued a short Order resolving the remainder of Plaintiffs' motion and stating that the reasoning for those decisions would be forthcoming in a separate Order (Dkt. No. 1944). The reasons for the Order at Dkt. No. 1944 are below. All references to Rules are to the Federal Rules of Evidence.

### I.     Dr. Melvin

Plaintiffs moved to exclude Dr. Melvin's testimony in full on the ground that he lacks the required qualifications and to exclude seven specific types of his opinions. Plaintiffs moved to exclude three types of opinions as unreliable: (1) opinions based on the absence of data, (2) opinions that chats might have benefited customers and (3) opinions that spreads generally are volatile rather than stable. Plaintiffs sought to exclude the following four types of opinions as unhelpful to the jury: (4) opinions that offer irrelevant pro-competitive justifications for price-fixing, (5) legal conclusions, (6) opinions that speculate about trader motives and intent and (7)

opinions that invoke *post hoc* industry codes of conduct. Plaintiffs' motion was denied because Plaintiffs' arguments either go to the weight of the testimony rather than admissibility or they were moot at the time of the Order at Dkt. No. 1944.

Plaintiffs' argument that Dr. Melvin is unqualified is unpersuasive. Plaintiffs did not dispute that Dr. Melvin has deep knowledge of the FX industry from his long experience on the research side analyzing FX trading activity. Plaintiffs' argument that Dr. Melvin was not a trader is irrelevant to most of his opinions, which concern broader market dynamics. To the extent Dr. Melvin's lack of personal chatroom experience is relevant to his perspective on any opinion, that is a fair topic for cross-examination but not a basis for exclusion. Plaintiffs' argument that Dr. Melvin does not couch his opinions in terms of the legal definition of an antitrust conspiracy also is unpersuasive. Defendants already represented that Dr. Melvin will not testify about whether a conspiracy existed, mooting Plaintiffs' third motion in limine, and such legal conclusions would be inappropriate expert testimony in any event.

Plaintiffs' first challenge to specific opinions of Dr. Melvin's -- seeking to preclude opinions on inferences drawn from the absence of data -- is unpersuasive and in any event is moot. The opinions at issue draw inferences not from the absence of data but from certain market dynamics that, in Dr. Melvin's opinion, would result in differences between data from the interbank and customer segments. Prior to trial, the parties jointly proposed a jury instruction to the effect that jurors should not draw inferences based on the absence of data. Had Dr. Melvin offered opinions that carried a risk of encouraging the jury to draw such conclusions, an instruction along those lines could have cured any potential prejudice. Because Dr. Melvin's testimony did not suggest those inferences to the jury, no instruction ultimately was necessary.

Plaintiffs' second and fourth challenges to specific opinions of Dr. Melvin's -- that certain chats might have benefited consumers and constituted something other than price fixing -- were rejected for the same reason Plaintiffs' second, seventh and part of Plaintiffs' eighth motions in limine were denied.  Dr. Melvin did not, and was not permitted to, opine that an agreement among competitors to fix prices benefited consumers or was otherwise legitimate, pro-competitive or reasonable.  But Dr. Melvin was permitted to opine on potential explanations for chatroom conduct other than illegal price fixing.

Plaintiffs' third specific challenge -- that Dr. Melvin's opinions about spread volatility are unreliable -- goes only to the weight of the testimony.  Arguments about what EBS data does and does not show, the representativeness of the trading days Dr. Melvin analyzed, and the existence of scholarship that contradicts Dr. Melvin's conclusions, could all be brought out on cross-examination.

Plaintiffs' fifth and sixth specific challenges -- to opinions that are legal conclusions or opinions about trader motives and intent -- are moot because these matters were already addressed in rulings on Plaintiffs' motions in limine.  (Dkt. No. 1887, 3rd and 8th MILs.)

Plaintiffs' seventh specific challenge seeks preclusion of opinions that invoke *post hoc* industry codes on the basis that opinions based on are not helpful to the jury.  This argument goes only to the weight of the evidence and not its admissibility.

## II. Dr. Mathur

Plaintiffs' application to exclude Dr. Mathur's testimony was denied.  Plaintiffs' arguments that Dr. Mathur lacks certain qualifications, and that her opinions are unreliable because they measure the alleged conspiracy against a counterfactual, idealized conspiracy, are unpersuasive.

Plaintiffs do not dispute Dr. Mathur's qualifications as an antitrust economist generally, and contrary to Plaintiffs' argument, Dr. Mathur's lack of FX-specific expertise does not render her unqualified. As with Plaintiffs' experts, an industry expert like Dr. Melvin may testify about structural features of the FX industry, and an antitrust economist like Dr. Mathur may then explain how those features affect competition. Plaintiffs were free to dispute Dr. Melvin's industry premises and Dr. Mathur's economic conclusions, including with some of the purportedly contrary record evidence Plaintiffs cited, but the existence of competing evidence and theories is not a reason to preclude testimony.

Plaintiffs are also unsuccessful in challenging the relevance of Dr. Mathur's opinions that the FX market is not conducive to price-fixing. Plaintiffs are correct that a jury could find that a conspiracy existed even if it was not successful or effective. Contrary to Plaintiffs' argument, however, the likely success or effectiveness of a conspiracy -- i.e., the economic incentive to conspire in the first place -- is probative circumstantial evidence of whether a conspiracy existed.

### III. Dr. Kleidon

Plaintiffs' application to preclude Dr. Kleidon's sensitivity analysis of Dr. Singer's regression analysis was granted. Plaintiffs persuasively argued that Dr. Kleidon's sensitivity analysis used an unreliable method and was applied unreliably. Further discussion is unnecessary because Dr. Singer did not offer any regression analysis at trial. Because Defendants elected not to present any of Dr. Kleidon's other opinions that they were permitted to offer, Plaintiffs' application to preclude those opinions is moot.

Dated: October 21, 2022
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE