UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER APPROVING THE FIFTH DISTRIBUTION OF THE <u>SETTLEMENT FUND</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    THE COURT SHOULD APPROVE THE FIFTH DISTRIBUTION .......................... 2

        A.    Background on the Claims Administration Process ........................................... 2

        B.    The Court Should Approve Epiq's Final Administrative Determinations.......... 4

        C.    *Pro Rata* Option 1 and Option 2 Claims Should Be Paid Subject to a Holdback ......................................................................................................... 4

        D.    The Court Should Approve the Distribution Plan for the Fifth Distribution Claims ................................................................................................ 5

    II.    STATUS REPORT ON REMAINING CLAIMS AND SETTLEMENT FUND ........ 6

        A.    Unauthorized Claims ............................................................................................ 7

        B.    Disputed Claims .................................................................................................... 7

CONCLUSION .............................................................................................................................. 8

**PRELIMINARY STATEMENT**

Since the Court's October 4, 2022, Order (ECF No. 1951) approving the "Fourth Distribution" of $225,204,639.84 to pay 160 Authorized Claims, Class Counsel has continued to work with its claims administrator and settlement experts to analyze and process claims. Plaintiffs respectfully request the Court to authorize a "Fifth Distribution" of $190,000,182.70 to pay 98 Authorized Claims (the "Fifth Distribution Claims"). The Court's approval of the Fifth Distribution will bring the total number of approved claims to 51,995, which is 99.99% of claims expected to be paid.

If the Court approves the Fifth Distribution Claims, six claims will remain pending. As mentioned in Plaintiffs' previous motion (ECF No. 1936, at 1), Epiq received 24 dispute letters indicating the claimant's intent to seek Court review of Epiq's administrative determinations. Class Counsel has successfully conferred with claimants to resolve 18 of those disputes, as well as other disputes which arose after the filing of the fourth distribution, which are included in this Fifth Distribution. Class Counsel has not been able to resolve five disputes, and those claims will be presented to the Court for adjudication in a future motion. Finally, Class Counsel continues to meet and confer on one dispute to determine if a resolution can be reached. This remaining claim is complex involving large files of claim data and audit documentation and a high dollar value. Class Counsel are working to narrow or eliminate the number of issues for Court review. The meet and confers involve quantitative analysis that takes time to run and review, given the size of the files, as well as preparation of experts to engage with the claimant. Once the meet and confers conclude, we will file a pre-motion letter with the Court proposing a briefing schedule for the remaining disputes and request that the Court approve Epiq's determinations on the Unauthorized Claims.

**ARGUMENT**

I. **THE COURT SHOULD APPROVE THE FIFTH DISTRIBUTION**

   A. **Background on the Claims Administration Process**

The Plan of Distribution provides claimants with two claim submission options – Option 1 and Option 2. Kovach Decl., ¶4.[1] Under Option 1, payment is calculated from transaction data produced by Settling Defendants. *Id*. Under Option 2, payment is calculated from transaction data produced by the claimant. *Id*. For Option 2 claims, Option 1 results are also calculated (where available), and the claimant's payment is based on the greater of the two values. *Id*., ¶7.

Processing Option 2 claims requires several steps. First, the "Settlement Experts" (Ankura and Velador) perform an algorithmic, trade-by-trade review of the claimant's transaction data and calculate claim value. *Id*., ¶30. The algorithms flag ineligible or erroneous transactions for further review and/or auditing. If there are no transaction-level deficiencies flagged by the algorithms, the claim is considered an "Authorized Claim" eligible for payment. *Id*. If there are deficiencies, the claimant is notified and has 30 days to cure by submitting additional information, and the claim is reprocessed. *Id*., ¶31. Epiq then issues a final administrative determination, accepting the claim in full (if cured), in part (if partially cured), or rejecting the claim in its entirety (if uncured). *Id*.

The following deficiencies lead to partial or full rejections of Option 2 claims:

- Inclusion of trades that are ineligible under the Settlements, including trades with non-defendants, outside the Class Period, in non-FX products (*e.g.*, precious metals or interest rates), on ineligible venues, or outside of the United States (*i.e.*, non-U.S. domiciled claimant trading with non-U.S. desk of a defendant).[2]

---

[1] "Kovach Decl." refers to the Declaration of Loree Kovach in Support of Plaintiffs' Motion for Entry of Order of an Order Approving the Fifth Distribution of the Settlement Fund, filed concurrently herewith.

[2] *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070(SHS), 2014 WL 2445714, at *2-*3 (S.D.N.Y. May 30, 2014) (upholding claims administrator's rejection of claims where claimants did not hold shares during the necessary time period and therefore "suffered no loss"); *In re*


- Submission of trades with invalid or missing mandatory fields, including ISO codes (standardized currency pair codes), contract codes (for futures), product type, base amounts, contra amounts, value dates, and/or trade rates. These are mandatory fields because the Plan of Distribution requires these data points to calculate claim value. Trades missing these fields are therefore rejected.[3]

- Where the trade rate supplied is materially different from the prevailing daily rate and the claimant has not substantiated the trade with third party documentation showing the trade is genuine.[4]

- Where the trade size supplied is unusual or implausible and the claimant has not substantiated the trade size with third-party documentation showing the trade is genuine.[5]

Kovach Decl., ¶35.

After a final administrative determination, a claimant is not permitted to resubmit its claims but may, within 20 days, request Court review of the administrative determination. *Id.*, ¶28. Class Counsel and Epiq review all requests for Court review and attempt to resolve objections. *Id.*

---

*Goldome Sec. Litig.*, No. 88 Civ. 4765 (JES), 1991 WL 113263, at *1, *3 (S.D.N.Y. June 20, 1991) (accepting claims administrator's rejection of claims where "(1) the purchase took place outside the class period; (2) the claim showed no purchase of the stock; . . . (5) the claim submitted was duplicate of a previously filed claim; (6) the claimant failed to correct a deficiency in the documents provided to the claims administrator after being given notice; or (7) the claimant withdrew the claim"); *Blank v. Jacobs*, No. 03-CV-2111(JS)(WDW), 2013 WL 1310503, at *5 (E.D.N.Y. Mar. 27, 2013) (approving decision to reject claims with no eligible transactions).

[3]   *Goldome*, 1991 WL 113263, at *1, *3 (accepting claims administrator's rejection of claims where the claimant "failed to correct a deficiency in the documents provided to the claims administrator after being given notice").

[4]   *Alaska Elec. Pension Fund v. Bank of Am., Corp.*, No. 14-CV-7126 (JMF), 2020 WL 916853, at *4 (S.D.N.Y. Feb. 26, 2020) (accepting claims administrator's decision to reject claim where claimant was unable to provide documentation proving that submitted transactions actually occurred), *aff'd sub nom. Alaska Elec. Pension Fund v. Fortinbras Asset Mgmt. GmbH*, 835 F. App'x 647 (2d Cir. 2021); *Blank*, 2013 WL 1310503, at *5 (accepting claims administrator's "decision to reject any claims not properly documented unless any of those claimants has been able to cure the deficiencies"); *Contant v. Bank of Am. Corp.*, No. 1:17-cv-3139-LGS-SDA, Order, ECF No. 531 at 1-2 (S.D.N.Y. Nov. 16, 2021) (denying claim to the extent it lacked documentation to validate denied transactions).

[5]   *Id.*

3

B.   **The Court Should Approve Epiq's Final Administrative Determinations**

This Motion seeks approval of Epiq's final administrative determinations to accept 32 Option 1 claims and 66 Option 2 claims. Of the Option 2 claims, Epiq accepted 52 claims in part and 12 claims in full. Kovach Decl., ¶14, Ex. 4 (listing Partially Accepted Claims). All 98 Fifth Distribution Claims have completed the processing steps outlined above, and the period to submit additional information to cure or seek Court review of final administrative determinations has expired or has been waived by the claimant. Kovach Decl., ¶28. Epiq has therefore determined that these claims are Authorized Claims eligible for payment. The following table shows a breakdown of the payment categories:

| Total Fourth Distribution Claims by Payment Category ||
|---|---|
| **Number of Claims** | **Payment Category / Kovach Ex. Number** |
| 32 | Total Option 1 Fifth Distribution Claims |
| 1 | *De Minimis* ($15) / Ex. 1 |
| 4 | Automatic ($150) / Ex. 2 |
| 27 | *Pro Rata* (>$150) / Ex. 3 |
| 66 | Total Option 2 Fifth Distribution Claims |
| 0 | *De Minimis* ($15) / Ex. 1 |
| 0 | Automatic ($150) / Ex. 2 |
| 66 | *Pro Rata* (>$150) / Ex. 3 |

Kovach Decl., ¶¶11-13.

C.   ***Pro Rata* Option 1 and Option 2 Claims Should Be Paid Subject to a Holdback**

The Court should also approve a 40% holdback on *pro rata* Fifth Distribution Claims (the "Reserve").[6] Class Counsel, in consultation with Ankura, who are experts in modeling claims participation and calculating holdbacks, recommends maintaining the holdback at the level the Court approved in connection with the Fourth Distribution (40%). The Reserve will allow for

---

[6] Because *de minimis* and automatic payments are not subject to proration, they will be paid in full.

4

fluctuations in the participation rate by volume, as the value of the remaining disputed claims (discussed in §II.B., below) has been conservatively estimated.

Class Counsel will use the Reserve to pay for expenses incurred in connection with administering the Settlements and any contingencies that may arise after the distribution with respect to claims (including any appeals). Class Counsel will then equalize any payment differentials between the Initial Distribution and subsequent distributions and will distribute any remaining Reserve *pro rata* in subsequent distribution(s) to Authorized Claimants. *See Alaska Elec.*, 2020 WL 916853, at *2 (approving payment of claim subject to a holdback).

### D. The Court Should Approve the Distribution Plan for the Fifth Distribution Claims

Claimants entitled to *de minimis* payments, automatic payments, or a single *pro rata* payment less than $1,000 will receive a check. Kovach Decl., ¶36(d); Proposed Distribution Order, ¶3(c).[7] Claimants entitled to a *pro rata* payment greater than $1,000 will have the option of receiving a check or a wire. Kovach Decl., ¶36(d); Proposed Distribution Order, ¶3(c). Claimants who provide deficient wire instructions will be sent a check. *Id*.

To avoid the accumulation of uncashed checks, the checks will bear the notation "CASH PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED BY [DATE 90 DAYS AFTER ISSUE DATE]." Kovach Decl., ¶36(e); Proposed Distribution Order, ¶3(d). Epiq will also communicate with Authorized Claimants holding uncashed checks as the 90-day period closes. Kovach Decl., ¶36(f). Authorized Claimants who have not cashed their distribution checks or have not provided valid wire information will forfeit their right to payment and will not be permitted to participate in future distributions. Any forfeited amounts will be

---

[7] "Proposed Distribution Order" refers to the [Proposed] Order Approving the Fifth Distribution of the Settlement Fund, filed concurrently herewith.

5

allocated to Authorized Claimants in subsequent distributions.  *Id*.; Proposed Distribution Order, ¶3(e).

## II.     STATUS REPORT ON REMAINING CLAIMS AND SETTLEMENT FUND

The following chart breaks down the 108,746 submitted claims:

| Number of Claims | Category |
|---|---|
| 108,746 | Total Claims Submitted |
| 51,995 | Estimated Authorized Claims[8] |
| 56,751 | Unauthorized Claims |
| 26,937 | Authorized Claims in Initial Distribution |
| 23,019 | Option 1 |
| 3,918 | Option 2 |
| 22,904 | Authorized Claims in Second Distribution |
| 6,882 | Option 1 |
| 16,022 | Option 2 |
| 2,031 | Authorized Claims in Third Distribution |
| 172 | Option 1 |
| 1,859 | Option 2 |
| 160 | Authorized Claims in Fourth Distribution |
| 40 | Option 1 |
| 120 | Option 2 |
| 98 | Authorized Claims in Fifth Distribution |
| 32 | Option 1 |
| 66 | Option 2 |

The Court's approval of the Fifth Distribution will result in paying 98 Authorized Claims. Kovach Decl., ¶10.  The remaining claims fall into two categories – Unauthorized Claims and disputed claims.  The discussion below addresses these remaining claims.

---

[8]     Estimated Authorized Claims are submitted claims, which based on their status have indicia that Epiq will likely be able to accept them in whole or in part as Authorized Claims. Estimated Authorized Claims includes the Initial Distribution Claims, Second Distribution Claims, Third Distribution Claims, Fourth Distribution Claims, and these Fifth Distribution Claims; it excludes claims that Epiq expects to reject in full as "Unauthorized Claims."  Kovach Decl., ¶17.

### A. Unauthorized Claims

Epiq has determined that 56,751 of the submitted claims are likely to be rejected in full. Kovach Decl., ¶18. Almost 21,000 of the Unauthorized Claims are withdrawn claims.[9] *Id.*, ¶19. Approximately 35,000 claims cannot receive payment because they were not eligible for Option 1 or no Option 2 data was provided. *Id.*, ¶¶20-25. Other Unauthorized Claims were rejected because they were duplicates, missing signatures or authorization documents, submitted by a person excluded from the Settlement Class, or did not pass foreign data privacy compliance. *Id*. All Unauthorized Claims have received at least one deficiency notice that was not cured within the time allotted. Some Unauthorized Claims have remained uncured for more than 500 days. *Id.*, ¶23.

### B. Disputed Claims

To date, Epiq has received six active dispute letters indicating the claimant's intent to seek Court review of Epiq's administrative determinations. *Id.*, ¶28. As noted above, Class Counsel has engaged in meet and confers with these claimants and has been able to resolve all but five disputes; those claims will be presented to the Court for adjudication in a future motion. Further, Class Counsel continues to confer with one claimant.

Once these meet and confers have concluded, Plaintiffs will move for approval of Epiq's determinations on the Unauthorized Claims and any disputed claims in connection with the next distribution motion. This sequencing is intended to minimize the number of disputes brought to the Court and to ensure that all disputes are presented in a single motion so that any appeals of the Court's determinations may be consolidated before the Second Circuit. Plaintiffs will

---

[9] Most of the withdrawn claims are due to a third-party agent improperly submitting claims under both Option 1 and 2 for all its clients. Epiq required each claimant to elect to proceed under only one option, and the other claim was withdrawn. *Id.*, ¶19.

subsequently present the Court with a status update and proposed briefing schedule, which is dependent on how many claimants intend to present their objections to the Court.

## CONCLUSION

Plaintiffs respectfully request that the Court enter the accompanying Proposed Order approving the Fifth Distribution and authorizing Epiq to implement the Distribution Plan.

Dated: July 18, 2023

| | |
|---|---|
| SCOTT+SCOTT ATTORNEYS AT LAW LLP | HAUSFELD LLP |
| | |
| *s/ Kristen M. Anderson* | *s/ Michael D. Hausfeld* |
| KRISTEN M. ANDERSON (*pro hac vice*) | MICHAEL D. HAUSFELD |
| DAVID R. SCOTT (DS-8053) | REENA A. GAMBHIR |
| JOSEPH P. GUGLIELMO (JG-2447) | TIMOTHY S. KEARNS |
| DONALD A. BROGGI (DB-9661) | SARAH R. LAFRENIERE |
| The Helmsley Building | 888 16th Street NW, Suite 300 |
| 230 Park Avenue, 17th Floor | Washington, DC 20006 |
| New York, NY 10169 | Telephone: 202-540-7143 |
| Telephone: 212-223-6444 | Facsimile:  202-540-7201 |
| Facsimile:  212-223-6334 | mhausfeld@hausfeld.com |
| kanderson@scott-scott.com | rgambhir@hausfeld.com |
| david.scott@scott-scott.com | tkearns@hausfeld.com |
| jguglielmo@scott-scott.com | slafreniere@hausfeld.com |
| dbroggi@scott-scott.com | |
| | -and- |
| -and- | |
| | HAUSFELD LLP |
| KOREIN TILLERY PC | MICHAEL P. LEHMANN |
| | CHRISTOPHER L. LEBSOCK |
| *s/ Christopher M. Burke* | 600 Montgomery Street, Suite 3200 |
| CHRISTOPHER M. BURKE | San Francisco, CA 94111 |
| 707 Broadway, Suite 1410 | Telephone: 415-633-1908 |
| San Diego, CA 92101 | Facsimile:  415-358-4980 |
| Tel: (619) 6225-5620 | mlehmann@hausfeld.com |
| cburke@koreintillery.com | clebsock@hausfeld.com |

**CERTIFICATE OF SERVICE**

    I hereby certify that on July 18, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                                                 *s/ Michael D. Hausfeld*
                                                 MICHAEL D. HAUSFELD