UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF
AN ORDER APPROVING THE CLAIMS ADMINISTRATOR'S DETERMINATIONS
<u>REGARDING UNAUTHORIZED CLAIMS AND DISPUTED CLAIMS</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1
BACKGROUND .............................................................................................................................. 2
        A.      The Settlement Agreement ........................................................................... 2
        B.      Processing of Claims .................................................................................... 3
ARGUMENT .................................................................................................................................... 6
    I.      THE COURT SHOULD APPROVE EPIQ'S FINAL ADMINISTRATIVE DETERMINATIONS TO REJECT THE UNAUTHORIZED CLAIMS AND DISPUTED CLAIMS AND PAY THE FINAL AUTHORIZED CLAIM ............ 6
        A.      Unauthorized Claims .................................................................................... 6
        B.      Disputed Claims ........................................................................................... 7
        C.      Final Authorized Claim .............................................................................. 10
    II.     RELEASE OF CLAIMS ....................................................................................... 11
CONCLUSION ............................................................................................................................... 12

i

**PRELIMINARY STATEMENT**

This Motion completes the presentation to the Court of Epiq Class Action & Claims Solutions, Inc.'s ("Epiq") determinations on all 108,746 claims submitted against the Settlements and seeks approval of Epiq's final administrative determinations regarding five Disputed Claims, 56,751 Unauthorized Claims, and one Authorized Claim.

Since the Court's July 19, 2023 Order (ECF No. 2068) approving the "Fifth Distribution" of $190,000,182.70 to pay 98 Authorized Claims, Class Counsel has continued to meet and confer regarding one complex disputed claim to determine if a resolution can be reached. Class Counsel was able to resolve this dispute and submits this claim for the Court's approval.

There are five claims where the claimant indicated their intent to seek Court review of Epiq's administrative determinations (the "Disputed Claims"). The Disputed Claims make baseless arguments that contradict the Plan of Distribution. Class Counsel therefore respectfully requests that the Court reject the Disputed Claims' arguments in their entirety and enter the accompanying Proposed Order accepting Epiq's administrative determinations as to the Disputed Claims.

In addition to the Disputed Claims, Epiq has determined that 56,751 claims should be rejected in full because they are "Unauthorized Claims." Declaration of Loree Kovach in Support of Plaintiffs' Motion for Entry of an Order Approving the Claims Administrator's Determinations Regarding Unauthorized Claims and Disputed Claims ("Kovach Decl."), ¶31. As discussed further herein, the Unauthorized Claims include (i) withdrawn claims; (ii) claims that were not eligible for Option 1, or no Option 2 data was provided; (iii) claims submitted under Option 2 that were rejected in full; (iv) duplicate claims; (v) claims missing signatures or authorization documents; (vi) claims submitted by a person excluded from the Settlement Class; (vii) claims that failed foreign data privacy compliance; or (viii) claimants that were listed on the federal government's

1

list of persons or entities prohibited from receiving payment from a person or entity in the United States. All Unauthorized Claims have received at least one deficiency notice and a 30-day period of time to cure, but the claims were never cured. Some Unauthorized Claims have remained uncured for more than 1,200 days. Accordingly, Class Counsel respectfully request the Court to grant the accompanying Proposed Order accepting Epiq's administrative determination to reject the Unauthorized Claims in full.

The Court's entry of the Proposed Order will finally resolve all claims in this claims administration, bar the submission or modification of claims for any reason as of October 13, 2023, and release claims related to the administration process.

## BACKGROUND

### A. The Settlement Agreement

The Court-approved Settlement Agreements (*e.g.*, ECF No. 481-5)[1] define the Direct Settlement Class to include:

> [a]ll Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into an FX Instrument directly with a Defendant, a direct or indirect parent, subsidiary, or division of a Defendant, a Released Party, or co-conspirator where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, transacted FX Instruments in the United States or its territories.

*Id.*, ¶3(a)(i). The Exchange-Only Settlement Class is defined to include:

> [a]ll Persons who, between January 1, 2003 and the date of the Preliminary Approval Order, entered into FX Exchange-Traded Instruments where such Persons were either domiciled in the United States or its territories or, if domiciled outside the United States or its territories, entered into FX Exchange-Traded Instruments on a U.S. exchange.

*Id.*, ¶3(a)(ii).

---

[1] This section quotes from the Stipulation and Agreement of Settlement with Bank of America Corporation, Bank of America, N.A., and Merrill Lynch, Pierce, Fenner & Smith Incorporated. ECF No. 481-5. The Settlement Agreements with the other settling Defendants contain identical terms.

The Settlement Agreements require that each claimant "submit a proof of claim" and provide "such documents or proof as Class Lead Counsel and the Claims Administrator, in their discretion, may deem acceptable[.]" *Id.*, ¶11(c)(i). After a claimant submits its proof of claim and supporting documents, the Settlement Agreements authorize "the Claims Administrator" to "determine whether the proof of claim . . . is in accordance with [the] Settlement Agreement . . . and the extent, if any, to which each claim shall be allowed, subject to review by the Court[.]" *Id.*, ¶11(c)(iii).

The Settlement Agreements further state that "[p]roofs of claim that do not meet the submission requirements may be rejected" and requires that "[p]rior to rejection of a proof of claim," the Claims Administrator "communicate with the claimant in order to remedy the curable deficiencies in the proofs of claim submitted." *Id.*, ¶11(c)(iv). If the Claims Administrator decides to reject a claim in whole or in part, the Settlement Agreements require the Claims Administrator to set forth the reasons for its rejection in writing. *Id.* Any claimant "desir[ing] to contest such rejection" is then obligated to "serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation" within 20 days of "the date of mailing of the [rejection] notice." *Id.*, ¶11(c)(v). Subsequently, "[i]f a dispute concerning a claim [could not] be otherwise resolved," Class Counsel is required to "present the request for review to the [district court]." *Id.*

### B. Processing of Claims

The Plan of Distribution provides claimants with two claim submission options – Option 1 and Option 2. Kovach Decl., ¶4. Under Option 1, payment is calculated from transaction data produced by Settling Defendants. *Id*. Under Option 2, payment is calculated from transaction data produced by the claimant. *Id*. The Notice and Claim Form advised claimants that Option 1 is not

3

recommended for all claimants because certain types of trades by claimants would not be identifiable in Settling Defendants' data. *Id*.

Processing Option 2 claims requires several steps. First, the "Settlement Experts" (Ankura Consulting Group LLC and Velador Associates Ltd.) perform an algorithmic, trade-by-trade review of the claimant's transaction data to calculate claim value. *Id*., ¶28. The algorithms flag ineligible or erroneous transactions for further review and/or auditing. *Id*. If there are no transaction-level deficiencies flagged by the algorithms, the claim is considered an "Authorized Claim" eligible for payment. *Id*. If there are deficiencies, the claimant is notified by rejection letter and has 30 days to cure by removing ineligible trades and/or submitting additional information to substantiate the claim. *Id*., ¶29. All 56,751 Unauthorized Claims have received such notice. Kovach Decl., ¶31. Some Unauthorized Claims have remained uncured for more than 1,200 days. *Id.*

If the claimant resubmits the claim, the claim is reprocessed. *Id*., ¶29. Epiq then issues a final administrative determination, accepting the claim in full (if cured), in part (if partially cured), or rejecting the claim in its entirety (if uncured). *Id*.

The following deficiencies led to partial or full rejections of Option 2 claims:

- Inclusion of trades that are ineligible under the Settlements, including trades with non-Defendants, outside the Class Period, in non-FX products (*e.g*., precious metals or interest rates), on ineligible venues, or outside of the United States (*i.e*., non-U.S. domiciled claimant trading with non-U.S. desk of a Defendant).[2]

---

[2] *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070(SHS), 2014 WL 2445714, at *2-3 (S.D.N.Y. May 30, 2014) (upholding claims administrator's rejection of claims where claimants did not hold shares during the necessary time period and therefore "suffered no loss"); *In re Goldome Sec. Litig.*, No. 88 Civ. 4765 (JES), 1991 WL 113263, at *1, *3 (S.D.N.Y. June 20, 1991) (accepting claims administrator's rejection of claims where "(1) the purchase took place outside the class period; (2) the claim showed no purchase of the stock; . . . (5) the claim submitted was duplicate of a previously filed claim; (6) the claimant failed to correct a deficiency in the documents provided to the claims administrator after being given notice; or (7) the claimant

- Submission of trades with invalid or missing mandatory fields, including ISO codes (standardized currency pair codes), contract codes (for futures), product type, base amounts, contra amounts, value dates, and/or trade rates. These are mandatory fields because the Plan of Distribution requires these data points to calculate claim value. Trades missing these fields are therefore rejected.[3]

- Where the trade rate supplied is materially different from the prevailing daily rate and the claimant has not substantiated the trade with third-party documentation showing the trade is genuine.[4]

- Where the trade size supplied is unusual or implausible and the claimant has not substantiated the trade size with third-party documentation showing the trade is genuine.[5]

Kovach Decl., ¶30.

After a final administrative determination, a claimant is not permitted to resubmit its claims but may, within 20 days, request Court review of the claim's administrative determination. *Id*., ¶36. Class Counsel and Epiq review all requests for Court review and attempt to resolve the disputes. *Id*. The five Disputed Claims have all received follow-up letters explaining why their claim is being rejected, and the parties could not reach an accord. *Id.*, ¶37.

---

withdrew the claim"); *Blank v. Jacobs*, No. 03-CV-2111(JS)(WDW), 2013 WL 1310503, at *5 (E.D.N.Y. Mar. 27, 2013) (approving decision to reject claims with no eligible transactions).

[3]  *Goldome*, 1991 WL 113263, at *1, *3 (accepting claims administrator's rejection of claims where the claimant "failed to correct a deficiency in the documents provided to the claims administrator after being given notice").

[4]  *Alaska Elec. Pension Fund v. Bank of Am., Corp*., No. 14-CV-7126 (JMF), 2020 WL 916853, at *4 (S.D.N.Y. Feb. 26, 2020) (accepting claims administrator's decision to reject claim where claimant was unable to provide documentation proving that submitted transactions actually occurred), *aff'd sub nom. Alaska Elec. Pension Fund v. Fortinbras Asset Mgmt. GmbH*, 835 F. App'x 647 (2d Cir. 2021); *Blank*, 2013 WL 1310503, at *5 (accepting claims administrator's "decision to reject any claims not properly documented unless any of those claimants has been able to cure the deficiencies"); *Contant v. Bank of Am. Corp*., No. 1:17-cv-3139-LGS-SDA, Order, ECF No. 531 at 1-2 (S.D.N.Y. Nov. 16, 2021) (denying claim to the extent it lacked documentation to validate denied transactions), *upheld by Contant v. AMA Cap., LLC*, 66 F.4th 59, 62 (2d Cir. 2023) (holding "that the district court did not err by denying [claimant's/appellant's] claims on the grounds that they lacked the requisite transactional records").

[5]  *Id*.

**ARGUMENT**

**I.  THE COURT SHOULD APPROVE EPIQ'S FINAL ADMINISTRATIVE DETERMINATIONS TO REJECT THE UNAUTHORIZED CLAIMS AND DISPUTED CLAIMS AND PAY THE FINAL AUTHORIZED CLAIM**

This Motion seeks approval of Epiq's final administrative determinations regarding 56,751 Unauthorized Claims, five Disputed Claims, and one Authorized Claim.

**A.   Unauthorized Claims**

Epiq has determined that 56,751 of the submitted claims should be rejected in full. Kovach Decl., ¶31.  Almost 21,000 of the Unauthorized Claims are withdrawn claims.[6]  *Id*., ¶35. Approximately 33,000 claims cannot receive payment because they were not eligible for Option 1, no Option 2 data was provided, or the Option 2 data could not be processed. *Id*., ¶33. Other Unauthorized Claims were rejected because they were duplicates, missing signatures or authorization documents, submitted by a person excluded from the Settlement Class, failed foreign data privacy compliance, or were listed on the federal government's list of persons or entities prohibited from receiving payment from a person or entity in the United States. *Id*., ¶¶32, 34. Epiq made substantial efforts to contact claimants that had submitted Unauthorized Claims and instruct them on how to cure any deficiencies, if curable at all. *Id*., ¶¶24, 26, 28-29. All Unauthorized Claims have received at least one deficiency notice that was not cured or objected to Epiq's determination within the deadline allotted. *Id*., ¶31. Some Unauthorized Claims have remained uncured for more than 1,200 days. *Id*. Because the Unauthorized Claims are deficient and have not cured or objected, the Court should uphold the Claims Administrator's administrative determination to reject them in their entirety.

---

[6] Most of the withdrawn claims are due to a third-party agent improperly submitting claims under both Option 1 and 2 for all its clients. Epiq required each claimant to elect to proceed only under Option 1 or 2, and the other claim was withdrawn. *Id*., ¶35.

### B.     Disputed Claims

Epiq has received 103 Dispute Letters objecting to the final administrative determination on claims. Kovach Decl., ¶36. Class Counsel spent significant time conferring with the claimants who submitted Dispute Letters and were able to resolve, without Court intervention, 98 of the disputes. *Id*. Accordingly, there are five active Dispute Letters indicating the claimant's direction to seek Court review of Epiq's administrative determinations. *Id.*, ¶37. As discussed below, these claimants (i) submitted transactions that do not qualify under the Court-approved settlement class definition; (ii) failed to submit any transactions under Option 2, and Option 1 was not available to the claimant; or (iii) submitted transactions that had a net delta risk of zero and were valued using the conversion ratio in the Court-approved Plan of Distribution. *Id.*

Charles Dorgay, Disputed Claim No. 1 (Claim No. 10013815). This claimant traded with non-Defendant bank, State Street Bank. Under the Direct Settlement Class definition in the Settlement Agreement, only trades directly with Defendants or Released Parties are eligible to participate in the settlements. ECF No. 481-5, ¶3(a)(i). The Claims Administrator has found that this claim is ineligible to participate in the settlements because there is no eligible trade data. Kovach Decl., Ex. 3. Courts routinely uphold the claims administrator's decision to reject claims that do not fit the eligibility criteria of the settlement class definition. *Blank*, 2013 WL 1310503, at *5; *Citigroup*, 2014 WL 2445714, at *2-3. Accordingly, Class Counsel respectfully request that the Court treat Disputed Claim No. 1 as an ineligible claimant with no eligible trade data.

Zbigniew Brylewicz, Disputed Claim No. 2 (Claim No. 10005620). This claimant is domiciled in Poland and all his transactions submitted under Option 2 were executed outside of the United States with a non-Defendant Polish bank, Bank Ochrony Środowiska. Under the Court-approved Plan of Distribution, trades executed by non-U.S. domiciled claimants are only eligible if they were executed in the United States or its territories. Additionally, only trades executed with

7

Defendant banks are eligible to participate in the Settlements. The Claims Administrator has determined that this claimant's foreign domicile, foreign transaction locations, and transactions with a non-Defendant bank result in the claim being ineligible under the Settlements. Kovach Decl., Ex. 3. Again, this claim does not fit the eligibility criteria under the settlement class definition. *Blank*, 2013 WL 1310503, at *5; *Citigroup*, 2014 WL 2445714, at *2-3. Therefore, Class Counsel respectfully request that the Court treat Disputed Claim No. 2 as an ineligible claimant with no eligible trade data.

Sean Waraich, Disputed Claim No. 3 (Claim No. 10000935). This claimant submitted Option 2 data that was substantially deficient, with non-Defendant counterparties, incorrect trading venues, and fabricated trade/value dates. As an example, there is a GBP/JPY trade executed on New Year's Eve and delivered on New Year's Eve which is patently not credible. The audit documentation also failed to substantiate the Option 2 data submission because there were no value dates provided and no proof of trading directly with Defendant banks. The Option 2 data stated "Integral" as the venue, but the audit documentation showed "ICM" as the venue. The audit documentation also proved that ICM was the counterparty to all transactions. If the claimant did trade directly with Defendant banks, then there would have been onboarding documentation and ISDA agreements, but the claimant never provided such proof. *See Contant*, 66 F.4th at 68 (upholding rejection of claim where claims administrator had "found, among other things, that [claimant] had not provided documentation necessary to validate the overwhelming majority of its claims and rejected [claimant's] claims with respect to any transactions that had not been sufficiently substantiated"). The Claims Administrator found that none of the claimant's trades could be attributed to Defendant banks, and therefore, this claim is ineligible under the Settlements. Kovach Decl., Ex. 3; *see also Blank*, 2013 WL 1310503, at *5; *Citigroup*, 2014 WL 2445714, at

\*2-3.  Thus, Class Counsel respectfully request that the Court treat Disputed Claim No. 3 as an ineligible claimant with no eligible trade data.

  <u>Anthony Naylor Singletary, Disputed Claim No. 4 (2075513)</u>.  This claimant submitted a claim under Option 1; however, no eligible transactions were found for the claim in the Settling Defendant bank database for the claim.  The claim form advises claimants that Option 1 is not available to all claimants, including those who traded using a prime broker(s), asset/investment manager(s), or on electronic communications networks because of naming conventions used in the Defendant bank database.  In accordance with the Plan of Distribution, the Claims Administrator offered this claimant an opportunity to submit an Option 2 claim, but the claimant declined, stating he was only interested in having the Court review his Option 1 dispute.  The Claims Administrator determined this claim is ineligible to participate in the Settlements because there is no trade data under Option 1 and the claimant refused to file an Option 2 claim.  Kovach Decl., Ex. 3.  Where claimants fail to submit any eligible transactions, courts routinely accept the claims administrator's rejection of such claims.  *Citigroup*, 2014 WL 2445714, at \*2-3; *Goldome*, 1991 WL 113263, at \*1, \*3.  Therefore, Class Counsel respectfully request that the Court treat Disputed Claim No. 4 as an ineligible claimant with no eligible trade data.

  <u>Gregor L. McIntosh, Disputed Claim No. 5 (10013447)</u>.  This claimant submitted Option 2 data containing FX futures and FX options on futures.  For certain FX futures contracts, the claimant held a short position that was due to expire in December 2011.  Prior to this date, to avoid or postpone delivery of the underlying currency, the claimant engaged in a transaction known as a "roll," in which a trader rolls an existing position from one future expiry date to a new expiry date further in the future.  When this occurs, the delta risk of the two futures transactions is equal and opposite, so the net delta risk is zero.  Because rolls are not an instrument for which the Plan of

Distribution provided a specific formula for determining claim value, these transactions fall under §VIII.A.7 of the Plan of Distribution entitled "other FX products." Other FX products "will be decomposed into the [specifically listed] individual instrument where possible" (*i.e.*, spot, forward, swap, option, future) and valued consistently with such instrument. Plan of Distribution §VIII.A.7 (available at http://www.fxantitrustsettlement.com/docs/PlanofDistribution.pdf). Rolls of futures positions on an exchange mirror over-the-counter FX swap transactions where the two swap legs, *e.g.*, spot and forward, are of equal size. In this instance, there also is net delta risk of zero. Therefore, for futures "rolls" where there was no risk on the transactions, the Claims Administrator applied the conversion ratio that is applied to FX swaps under the Plan of Distribution §IX.D. The claimant disputes the Claims Administrator's application of the conversion ratio to its futures rolls. Kovach Decl., Ex. 3. Application of the Plan of Distribution to this claimant's transactions should be upheld. *See*, *e.g.*, *In re Citigroup Inc. Sec. Litig.*, No. 07-CV-9901 SHS, 2014 WL 7399039, at *2-4 (S.D.N.Y. Dec. 29, 2014) (upholding "claim administrator's interpretation of the Settlement's Plan of Allocation, specifically the calculation of the losses on [the claimant's] put option sale"). Accordingly, Class Counsel respectfully request that the Court uphold the Claims Administrator's application of the conversion ratio to Disputed Claim No. 5 and payment of futures "rolls" under the Plan of Distribution §IX.D and administrative determination to accept this claim in part.

### C.     Final Authorized Claim

This Motion seeks approval of Epiq's final administrative determinations to accept one Option 2 claim, which Epiq partially accepted. Kovach Decl., ¶¶13-15, Ex. 1 (listing Partially-Accepted Claim). This Option 2 claim has completed the processing steps outlined above, and the period to submit additional information to cure or seek Court review of final administrative

determinations has expired or has been waived by the claimant. Kovach Decl., ¶13. Epiq has therefore determined that this claim is an Authorized Claim eligible for payment.

## II.   RELEASE OF CLAIMS

Now that Epiq's determinations on all 108,746 claims submitted against the Settlements are before the Court, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlements, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement.

Accordingly, Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, and release and discharge such persons from any and all claims arising out of that involvement, and order that all Settlement Class Members and other claimants, whether or not they receive payment from the Net Settlement Fund, are barred from making any further claims against the Net Settlement Fund, Class Plaintiffs, Class Counsel, the Claims Administrator, the Settlement Administrator, the Escrow Agent or any other agent retained by Class Plaintiffs or Class Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund (including but not limited to Ankura Consulting Group LLC and Velador Associates Ltd.), or any other person released under the Settlements beyond the amounts allocated to Authorized Claimants. This release language is set out in the accompanying Proposed Order Approving the Claims Administrator's Administrative

11

Determinations Regarding Unauthorized Claims and Disputed Claims, and authorizing payment of the final Authorized Claim, ¶¶4-5.

Similar language has been routinely approved by courts in connection with the distribution of settlement proceeds. *See*, *e.g.*, *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, Lead Case No. 4:14-cv-03428 (NFA), ECF No. 384, at 7 (S.D. Tex. Nov. 17, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlements, are hereby released and discharged from any and all claims arising out of that involvement, and all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlements beyond the amounts allocated to Authorized Claimants"); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) (approving substantially similar language in order authorizing distribution of settlement proceeds); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, No. CV 12-3824, 2015 WL 12839121, at *1-2 (E.D. Pa. Jan. 21, 2015) (same); *Romero v. US Unwired, Inc.*, No. CV 04-2312, 2012 WL 12995289, at *2 (E.D. La. Mar. 8, 2012) (same).

## CONCLUSION

Plaintiffs respectfully request that the Court enter the accompanying Proposed Order Approving the Claims Administrator's Determinations Regarding Unauthorized Claims and Disputed Claims, and authorizing payment of the final Authorized Claim.

Dated: October 13, 2023

| | |
|---|---|
| KOREIN TILLERY P.C. | HAUSFELD LLP |
| | |
| *s/ Christopher M. Burke* | *s/ Michael D. Hausfeld* |
| CHRISTOPHER M. BURKE | MICHAEL D. HAUSFELD |
| 707 Broadway, Suite 1410 | REENA A. GAMBHIR |
| San Diego, CA 92101 | TIMOTHY S. KEARNS |
| Tel: (619) 6225-5620 | SARAH R. LAFRENIERE |
| cburke@koreintillery.com | 888 16th Street NW, Suite 300 |
| | Washington, DC 20006 |
| -and- | Telephone: 202-540-7143 |
| | Facsimile:  202-540-7201 |
| SCOTT+SCOTT | mhausfeld@hausfeld.com |
| ATTORNEYS AT LAW LLP | rgambhir@hausfeld.com |
| | tkearns@hausfeld.com |
| *s/ Kristen M. Anderson* | slafreniere@hausfeld.com |
| KRISTEN M. ANDERSON (*pro hac vice*) | |
| DAVID R. SCOTT (DS-8053) | -and- |
| JOSEPH P. GUGLIELMO (JG-2447) | |
| DONALD A. BROGGI (DB-9661) | HAUSFELD LLP |
| The Helmsley Building | MICHAEL P. LEHMANN |
| 230 Park Avenue, 17th Floor | CHRISTOPHER L. LEBSOCK |
| New York, NY 10169 | 600 Montgomery Street, Suite 3200 |
| Telephone: 212-223-6444 | San Francisco, CA 94111 |
| Facsimile:  212-223-6334 | Telephone: 415-633-1908 |
| kanderson@scott-scott.com | Facsimile:  415-358-4980 |
| david.scott@scott-scott.com | mlehmann@hausfeld.com |
| jguglielmo@scott-scott.com | clebsock@hausfeld.com |
| dbroggi@scott-scott.com | |

## CERTIFICATE OF SERVICE

    I hereby certify that on October 13, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                            *s/ Christopher M. Burke*
                            Christopher M. Burke