# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No, 1:13-cv-07789-LGS |
|---|---|

**MEMORANDUM OF OPPOSTION BY GREGOR L. MCINTOSH (THE "CLAIMANT") TO A MOTION BY PLAINTIFFS FOR ENTRY OF AN ORDER APPROVING CLAIMS ADMINISTRATOR'S PARTIAL REJECTION OF DISPUTED CLAIM NO. 10013447**

By this Memorandum, Claimant opposes Plaintiffs' request that the Court approve Claims Administrator's partial rejection of claim no. 10013447 (the "Disputed Claim"), and respectfully asks that the Court order that the Disputed Claim be accepted in its entirety.

Unless otherwise defined herein, all capitalised terms have the meanings ascribed to them in (i) the Third Consolidated Amended Class Action Complaint, (ii) the Settlement Agreements, (iii) the Plan of Distribution, all as approved by the Court, and (iv) Plaintiffs' Motion of October 23, 2023 (the "Motion") to which this Memorandum of opposition relates, including the attachments to the Motion.

Submitted herewith, in support of Claimant's opposition to Plaintiffs' Motion, are :

- o   Copy of an e-mail sent by Claimant to Claims Administrator on July 11, 2022 (Exhibit 1).

- o   Copy of an e-mail exchange between Claimant and Claims Administrator on October 16, 2023 (Exhibit 2).

- o   An extract from trade data submitted by Claimant to Claims Administrator, including only the trades subject of the Disputed Claim, with added information and Claimant computations relating to the contentious Trades (Exhibit 3).

1

Contents of the exhibits to the Memorandum in support of the Motion and which relate exclusively to the Disputed Claim are incorporated herein by reference.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 4

BACKGROUND ................................................................................................... 4

ARGUMENT ........................................................................................................ 6

CONCLUSION .................................................................................................... 8

## PRELIMINARY STATEMENT

Claimant contests Claims Administrator's unsupported administrative determination, and Plaintiffs' baseless assertion that ten of the many but largest trades by Claimant in FX futures on the Chicago Mercantile Exchange ("CME"), having a Conversation Ratio of **1.0** as stipulated in the Plan of Distribution, be treated as analogous to and administratively processed in the Settlement as FX swaps with the lower Conversion Ratio of **0.001**.

The ten eligible trades in FX futures which Claims Administrator has subjectively and inappropriately treated as FX swaps result for those trades in inexistent or negligible Eligible Participation amounts ("EPAs"), which are neither compliant nor consistent with the provisions of the Plan of Distribution.

An order by the Court approving Claims Administrator's partial rejection of the Disputed Claim, for the unsubstantiated reasons alleged by Plaintiffs in the Motion, would unfairly deprive Claimant of EPAs representing close to 50% of all EPAs resulting from trades in FX futures submitted by Claimant to Claims Administrator, supported by all necessary trade data and the broker statements required for any Option 2 claim.

## BACKGROUND

Claims Administrator issued three separate Claim Assessments relating to the Disputed Claim, the first two of which omitted to take into account all trades in FX futures executed through Citigroup and Morgan Stanley (the "Brokers") and the third of which included the missing trades in FX futures, ten of which (the "Trades") were falsely deemed by Claims Administrator to be analogous to

4

FX swaps and processed as such in the third and latest, hereby contested Claim Assessment.

The ten Trades had for purpose to maintain existing currency market exposures while both (i) deferring the delivery of the underlying currencies on settlement of the nearby expiring FX future and (ii) seeking, through short term fluctuations in the EUR:USD spot rate, to minimise negative carry or maximise positive carry resulting from the Trades in FX futures with different expiration dates. Claimant, for that reason, systematically declined Brokers' suggestions that the equally sized and offsetting Trades in FX futures with different expirations be executed by way of exchange traded "*calendar spreads*" having different CME product codes to those of the underlying FX future. Buy and sell side Trades of equal size during a single trading session, for different maturities, were therefore not executed simultaneously, nor necessarily within minutes of each other, Brokers having on each occasion been instructed by telephone to "*work the orders at best*" to achieve the hoped for effects. Claimant informed Claims Administrator of this in an e-mail dated July 11, 2022 (see Exhibit 1 to this Memorandum - paragraph highlighted in yellow).

Brokers' statements in Claimant's possession and submitted to Claims Administrator do not include trade timestamps, and Claims Administrator has confirmed that neither of the Brokers (Defendants Citigroup and Morgan Stanley) has supplied or been asked by Claims Administrator to provide it with data, including trade timestamps if any, relating to the Trades (see Exhibit 2 to this Memorandum - paragraph highlighted in yellow).

Claimant has meanwhile reached out to his last known contact and account relationship officer at Morgan Stanley, where Claimant's account was closed in 2013, in an effort to seek Brokers' confirmation, by way of trade timestamps or otherwise, that Trades were not executed simultaneously, whether by way of calendar spread trades or in some other form. Claimant, at the time of this writing, hasn't received any call-backs from his attempts to contact the person concerned.

5

Plaintiffs allege that the Trades were "*rolls*" mirroring over-the-counter FX swap transactions, involving no net delta risk from exposure to fluctuations in currency rates; that they should fall under §VIII.A.7 of the Plan of Distribution relating to "*Other FX products*" and that, according to the provisions of that Section, claim values of the Trades should be determined by applying the Conversion Ratio applicable to FX swaps under §IX.D of the Plan of Distribution.

Claimant contests all of Plaintiffs' allegations as set out in the preceding paragraph. and the resulting treatment of Trades as FX swaps instead of as outright trades in FX futures executed at different times.

§VIII.A.5.(b) of the Plan of Distribution provides that, because FX futures are mechanically similar to FX forwards, the Conversion Ratio will be **1.0**.

§VIII.A.3 of the Plan of Distribution provides, in the first bulleted subset, that the process employed by Claims Administrator to flag FX spot and FX forward trades that might, in combination, constitute an FX swap trade, will involve reviewing trade records "*within time slices*" to identify trades with different value dates that fit the two sided criteria of an FX swap.

§VIII.A.7 of the Plan of Distribution provides that *Other FX products* will be decomposed, where possible [using unspecified methodology], into the individual FX instruments dealt with elsewhere in §VIII.A of the Plan of Distribution.

## **ARGUMENT**

Any parallel between an FX swap traded over-the-counter ("OTC") and Trades in FX futures on the CME can be drawn only if and when the two sides or legs of contractually agreed or otherwise related trades are committed to or executed simultaneously and with the same counterparty, such that the spot FX rate underpinning the pricing of the two legs of the trade can be shown to be identical.

The difference between the spot FX rate serving as basis for both the nearby leg of an FX swap and the forward FX rate at which the swap is settled at maturity will always reflect the cost or benefit of carry resulting from the differential in interest rates agreed to by the contracting parties.

In the case of exchange traded FX futures, on CME or elsewhere, and unlike with FX swaps traded OTC where the counterparties agree on all of the terms of the swap, including interest rates, the net interest rate differential which determines fair value (the "FV") of an FX future, and thus the amount of positive or negative carry of the FX future, is derived from interbank benchmark interest rates set on a daily basis for the relevant duration and currency pair. FV of an FX future, because of arbitrage plays by some FX market participants, at all times equals or very closely approximates, in terms of pips or ticks, the spot rate plus or minus positive or negative carry for the period between trade and settlement dates of the FX future.

Any interval in time between the closing-out of an existing position in a nearby expiring FX future and opening of a similarly sized position in the same FX future but with a further out settlement date exposes the trader to FX market risk in the meanwhile. Only trades in FX futures executed by way of certain CME exchange traded calendar spread products would allow a nearby expiring FX future to be "*rolled*" over to a later contract expiry without exposing the trader to FX market currency exchange rate risks. Calendar spread trades, of which there were none in Claimant's case, would have shown differently from outright trades in FX futures in Brokers' statements.

In its administrative determination that the Trades were akin to FX swaps and should be processed as such, Claims Administrator has relied on the stated and questionable process involving the review of trade records within "*time slices*" which, in Claimant's case and in the absence of trade timestamps for each of the Trades, cannot have been smaller than the day (FX futures trading session) during which each Trade was executed through the CME.

Claims Administrator, in its processing of the Trades, and Plaintiffs', in the

7

Motion, seem oblivious to the fact that currency exchange rates can change rapidly, sometimes very significantly, in the space of minutes or even seconds.

Trade related data submitted to Claims Administrator, and computations by Claimant based on the data and international benchmark interest rates on Trade dates, show beyond doubt that the alleged FX swap trades did not involve simultaneously executed transactions in the nearby expiring and further out settlement date FX futures. Deviations between trade rates and FV of the later expiring FX future are of a size which cannot be explained otherwise than by non-simultaneous Trades in the two FX futures (see Exhibit 3 to this Memorandum).

Claims Administrator and Plaintiffs have ignored the realities behind the Trades and, not surprisingly, failed to demonstrate that the Trades in FX futures were in any way the equivalent of or analogous to FX swaps.

## CONCLUSION

Claimant respectfully requests that the Court deny Plaintiffs' Motion to the extent that it seeks the Court's approval of rejection of the partially Disputed Claim; and order that the Disputed Claim be accepted in its entirety.

Dated: October 27, 2023

Gregor L. McIntosh

# gregor.mcintosh@bluewin.ch

| | |
|---|---|
| **De:** | gregor.mcintosh@bluewin.ch |
| **Envoyé:** | lundi, 11 juillet 2022 15:27 |
| **À:** | 'FXDataRequest@fxantitrustsettlement.com' |
| **Cc:** | 'Info@FXAntitrustSettlement.com' |
| **Objet:** | RE: Claims 1451079 and 10013447 - For the urgent attention of Claims Administrators (AH) and (MK) |

Dear Andy,

It was good to talk Thursday even though our discussion didn't yield anything conclusive. Thank you for having forwarded meanwhile what you see as justification for the reclassification of trades in FX Futures on the CME as FX Swaps for the purposes of calculating the EPAs resulting from my claims.

First, I confirm, as is apparent from the e-mail chain below, that I did **not** receive the e-mail notification of May 2nd, 2022, the reason for this being that my e-mail address, while the spelling is correct, was set in uppercase letters instead of lower case as is the norm, at least in Switzerland and most of Europe. This was, to my knowledge, the second time this has happened. I have no way of knowing whether I didn't receive other e-mail notifications of the same or a different type but, as I said on our call, did not receive e-mail notifications relating to any of the first, second or third claim assessments posted to the portal.

Turning to the heart of the matter at hand and the reasons for our disagreement regarding Epiq's treatment of the ten trades in FX exchange traded futures incorrectly classified and processed as if they constituted FX swaps:

1. I was already familiar with the two bulleted subsets to section VIII(A)(3)(c) of the plan of distribution. Those subsets and the whole of section VIII(A)(3) apply only to FX swaps, defined in the plan of distribution as "*an agreement to buy and sell one currency against another currency with defined rates of exchange and <u>on two defined dates, traded OTC</u>*". This is consistent with how FX swaps are commonly understood and characterised, i.e. as "*agreements between two counterparties, acting OTC, and comprising two separate but contractually linked legs to be settled on different dates as stipulated in the swap agreement*".
2. The bulleted subsets to paragraph (3)(c) of section VIII(A) serve only to point to situations where it might not be clear, from the FX swap trade records of either a Settling Defendant or Claimant, whether two FX transactions constitute standalone trades or may be part of a single combined FX swap trade, conducted OTC, and where it might be appropriate for the Claims Administrator to rely on processes designed to identify trades that may effectively be constituent of an FX Swap as defined.
3. Nothing in the above, in paragraph (3) of section VIII(A), or indeed in section VIII(A) as a whole, even remotely suggests that the criteria applicable to FX swaps should or could for any reason, by analogy or otherwise based on considerations of a subjective nature, be extended to the treatment of FX futures as separately provided for in section VIII(A)(5) of the plan of distribution.
4. FX futures, in contrast to swaps, are standardised, one-leg only exchange traded contracts calling for receipt or delivery of one currency against another, at a future date and without any contractually associated or compensating FX spot transaction. The sale or purchase of an FX futures contract is never devoid of the risks that could arise due to unpredictable events affecting FX markets in general and trading conditions within or from one day to another.
5. You rightly point out in your e-mail that FX futures are mechanically similar to forwards, thus should be treated similarly to FX forwards throughout the Plan of Distribution, including having the same conversion ratio, i.e. <u>of 1.0</u>. This is consistent with the fact that the delta ratio of a futures contract of any type, including FX futures and forwards alike, cannot be anything other than 1.0.
6. The above applies to trades in the same or a different FX futures contract, whether conducted within the same, a close-by or further out trading session.

1

7. Moreover, as touched upon in our call Thursday and although not directly relevant to the stated and court approved treatment of FX futures under the terms of the plan of distribution:

   - Price differentials between the exchange traded rates of a nearby FX futures contract and those of contracts involving the same currency but of longer duration often differ(ed) quite widely from the contango or backwardation to be expected based on the differences in interest rates offered in the respective currencies over the term period concerned; and were notoriously volatile in the weeks and days leading up to the final hours of trading of the nearby contract.
   - Banks or brokers in house and perhaps at times shared knowledge of the intentions of holders of significant positions in a soon to expire futures contract likely explain part of this phenomenon; and this of itself supports the fact that delta risk remains at 1.0 up until the final minute of trading in an expiring future.
   - None of my trades in FX futures were conducted on a spread limited basis, or as what some banks or brokers refer to as "spread trades". To the contrary, all of the trades on the CME via Citi/Morgan Stanley, except of course when a currency position was closed out in totality, were executed following instructions to separately buy or sell futures, on a best-efforts basis and with a view to minimizing, but sometimes unsuccessfully, the differentials in rates between two or more trades in futures of different duration involving the same currencies.

I can only suggest in these circumstances that Epiq reconsider its position, reprocess the ten trades with the required conversion ratio of 1.0, and recalculate the EPAs of the trades concerned using the relative damage factors applicable to the rectified STVs in accordance with the plan of distribution.

Should Epiq remain unwilling to do so, please put me in touch with class counsel so that I can review the situation with them. My claim may be insignificant in the overall context of the FX settlement but that is not sufficient reason for it to receive treatment that isn't in strict conformity with the plan of distribution, or which might constitute unequal treatment compared to other claims including trades in FX futures.

I note also in passing that Epiq's raw date file comprising the falsely purported FX swap trades misstates by three months or so the trade dates of two of the ten transactions of which I dispute the treatment as swaps for the reasons outlined herein. If Citi/Morgan Stanley submitted trade data in respect of my accounts which isn't in the same formats as the statements I uploaded in support of my claim, would you please provide me with copies of the relevant data files.

You indicated in our call that I couldn't for some reason file a dispute resolution notice. Why is that, when other claimants are given the option of doing so? Is it because I wasn't sent a claim deficiency notice even though Epiq evidently disagreed with the legitimate classification of the ten disputed transactions as trades as FX futures?

Finally, please confirm my understanding that the circa $7.5k (or was it $5.7k?) payout you referred to as being part of the third distribution awaiting court approval will be in addition to the circa $4.7k included in the second distribution, in both cases after deducting the 40% holdback; and that the participation I expect from a fourth and final distribution will come on top of those two. Would you be kind enough to remind me of the exact amounts of the first two distributions?

Many thanks and kind regards.

Greg McIntosh


De : FXDataRequest@fxantitrustsettlement.com <FXDataRequest@fxantitrustsettlement.com>
Envoyé : jeudi, 7 juillet 2022 22:49
À : 'gregor.mcintosh@bluewin.ch' <gregor.mcintosh@bluewin.ch>
Cc : Info@FXAntitrustSettlement.com
Objet : RE: Claims 1451079 and 10013447 - For the urgent attention of Claims Administrators (AH) and (MK)


Dear Greg,

Thank you for joining the call. The below portion from the bulleted paragraph under VIII(A)(3)(c) of the Plan of Distribution describes the process of re-classifying certain trades as swaps:

VIII(A)(3)(c):
In the FX swap trade records of both Settling Defendants and Claimants, FX swaps may be represented by two standalone constituent trades (*e.g.*, one FX spot trade and one FX forward trade) rather than as a single combined FX swap trade. Therefore, the Claims Administrator will implement a process to flag FX spot and FX forward trades that appear as standalone trades but are actually part of a single combined FX swap trade. The process will review trade records within time slices to identify trades with different value dates that fit the criteria of two sides of an FX swap to identify FX swaps.

# gregor.mcintosh@bluewin.ch

| | |
|---|---|
| **De:** | Info@FXAntitrustSettlement.com |
| **Envoyé:** | lundi, 16 octobre 2023 23:44 |
| **À:** | gregor.mcintosh@bluewin.ch |
| **Objet:** | RE: Claim no: 10013447 - In re Foreign Exchange Benchmark Rates Antitrust Litigation - Dispute Letter from Class Counsel |

Greg,

Thank you for your email. Below please find answers to your questions.

1. Correct. Being "double spaced" means that each line should be separated from the next with a line which is void of text. In other words, a blank line should appear in between each line of text.
2. We are looking into this inquiry and will provide you with an answer as soon as possible.
3. We are unable to provide because your claim does not have any eligible transactions in the Defendant data. In other words, your claim has no Option 1 volume.

We tracked your mailed package with the letter and Order, and it appears that it was successfully delivered today.

The Final Claims Motion was filed on Friday, October 13, 2023 at the end of the day. Weekends are outside of the Claims Administrator's working hours. Today, we are sending the Motion and accompanying documents to Claimants who filed disputes.

Kind regards,

Foreign Exchange Antitrust Litigation
Claims Administrator (MK)
http://www.fxantitrustsettlement.com
Info@fxantitrustsettlement.com

---

**From:** gregor.mcintosh@bluewin.ch <gregor.mcintosh@bluewin.ch>
**Sent:** Sunday, October 15, 2023 5:39 AM
**To:** Info@FXAntitrustSettlement.com
**Cc:** FXDataRequest@fxantitrustsettlement.com
**Subject:** RE: Claim no: 10013447 - In re Foreign Exchange Benchmark Rates Antitrust Litigation - Dispute Letter from Class Counsel

**CAUTION:** This email originated from outside of Epiq. Do not click links or open attachments unless you recognize the sender and know the content is safe. Report phishing by using the "Phish Alert Report" button above.

For the attention of Claims Administrator (MK)

Dear Morgan,

1

Thank you for forwarding the letter from Class Counsel with its attachment.

I disagree for a number of reasons with Class Counsel's determination on behalf of Plaintiffs that the Court should overrule my objections to how Claims Administration has treated the ten trades in FX futures to which the dispute relates. I have the following questions, requests and comments, on which feedback from Claims Administration is essential before I decide on whether or not to actually submit an opposition brief :

1. Can you please clarify what is meant by 10 pages "*double spaced*" as that term is used in Class Counsel's letter of October 12th, 2023. Does it mean that each line in the opposition brief should be separated from the next with a line which is void of text, or does it mean something else?

2. Any opposition brief I may decide to submit for the Court's consideration in the dispute will likely include at least one exhibit demonstrating why the ten FX trades concerned were not, under any reading or defendable analysis, constituents of what could be considered to be or construed as having been analogous to FX swaps. Will the exhibit(s), not more than one to three pages I expect, fall within the ten page limitation?

3. Please provide me, by e-mail, with extracts from the FX trade data submitted to Claims Administration by Defendants Citigroup and Morgan Stanley, and / or separately by the Chicago Mercantile Exchange (CME) in relation to trades in FX futures on that exchange, as part of the FX Settlement discovery process. I need this information only to the extent that it identifies and relates to the ten trades in FX futures of which the treatment as FX swaps in the third claim assessment is disputed.

For the record, I have so far received neither of :

- The FedEx Overnight courier you refer to in your e-mail below. I guess this may be because of the different time zones and that the envelope may therefore be delivered tomorrow, and, if it just contains a hard copy of what you sent me via e-mail, shouldn't add anything to my current thoughts on this matter.

- Plaintiffs' Final Claims Motion, with attachments and exhibits, which Class Counsel say in their letter would be filed with the Court last Friday, October 13th. I will need to see the contents of the motion, insofar as they relate to my claim and dispute, well ahead of the October 27 deadline for submission of opposition briefs.

In view of the tight deadline, please kindly ensure I receive all of the above mentioned information and documents no later than this <u>Tuesday, October 17th, 2023</u>.

Thank you for your continued collaboration and assistance.

With kind regards.

Greg McIntosh


De : Info@FXAntitrustSettlement.com <Info@FXAntitrustSettlement.com>
Envoyé : jeudi, 12 octobre 2023 22:31
À : 'gregor.mcintosh@bluewin.ch' <gregor.mcintosh@bluewin.ch>
Objet : In re Foreign Exchange Benchmark Rates Antitrust Litigation - Dispute Letter from Class Counsel

Dear Gregor,

Attached please find a letter from Class Counsel regarding your dispute for claim number 10013447 that is being submitted to the Court for review. This letter has also been mailed to you via FedEx Overnight, and you should receive it tomorrow.

Kind regards,

Foreign Exchange Antitrust Litigation
Claims Administrator (MK)
http://www.fxantitrustsettlement.com
Info@fxantitrustsettlement.com

EXHIBIT 3

Claim no: 10013447

**Extracts from trade data submitted to and verified by Claims Administrator** | **Data added by Claimant in support of opposition to partial rejection of Disputed Claim**

| Claimant name | Claim no. | Broker/FCM | Exchange name | Transaction type | Trade date | Trade timestamp | Time zone | CME product code | Trade rate | Number of contracts | Base currency | Quoted currency | Buy/Sell (contract) | Base amount | Contra amount | Contract expiry date | No. of days between trade & contract expiry dates | Difference between nearby and further out expiring FX future trade rates | 3 mth USD LIBOR (1) % p.a | 3 mth EUR LIBOR (1) % p.a | 3 mth interest rate differential % p.a | Fair value rate (FV) of FX future at trade date (2) | EUR/USD FX future bid/ask spread (1 Pip max.) | Net FX rate delta effect to Claimant Pip's | % of FV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Gregor L. McIntosh | 10013447 | Morgan Stanley / Citigroup | CME / Globex | FX future | 2011-12-13 | Not available | U.S. (EST) | CME Globex: 6E | 1,32030 | 400 | EUR | USD | BUY | 50 000 000,00 | 66 015 000,00 | 2011-12-19 | | | | | | | | | |
| Gregor L. McIntosh | 10013447 | Morgan Stanley / Citigroup | CME / Globex | FX future | 2011-12-13 | Not available | U.S. (EST) | CME Globex: 6E | 1,32200 | 400 | EUR | USD | SELL | 50 000 000,00 | 66 100 000,00 | 2012-03-19 | 97 | 0,00170 | 0,54625% | 1,35643% | 0,81018% | 1,32318 | -0,0001 | -10,8 | -0,08% |
| Gregor L. McIntosh | 10013447 | Morgan Stanley / Citigroup | CME / Globex | FX future | 2012-03-13 | Not available | U.S. (EST) | CME Globex: 6E | 1,31490 | 400 | EUR | USD | BUY | 50 000 000,00 | 65 745 000,00 | 2012-03-19 | | | | | | | | | |
| Gregor L. McIntosh | 10013447 | Morgan Stanley / Citigroup | CME / Globex | FX future | 2012-03-13 | Not available | U.S. (EST) | CME Globex: 6E | 1,31555 | 400 | EUR | USD | SELL | 50 000 000,00 | 65 777 500,00 | 2012-06-18 | 97 | 0,00065 | 0,47365% | 0,78400% | -0,31035% | 1,31380 | -0,0001 | 18,5 | 0,14% |
| Gregor L. McIntosh | 10013447 | Morgan Stanley / Citigroup | CME / Globex | FX future | 2012-06-05 | Not available | U.S. (EST) | CME Globex: 6E | 1,24930 | 256 | EUR | USD | BUY | 32 000 000,00 | 39 977 600,00 | 2012-06-18 | | | | | | | | | |
| Gregor L. McIntosh | 10013447 | Morgan Stanley / Citigroup | CME / Globex | FX future | 2012-06-05 | Not available | U.S. (EST) | CME Globex: 6E | 1,25045 | 256 | EUR | USD | SELL | 32 000 000,00 | 40 014 400,00 | 2012-09-17 | 104 | 0,00115 | 0,46785% | 0,58657% | -0,11872% | 1,24887 | -0,0001 | 16,8 | 0,13% |
| Gregor L. McIntosh | 10013447 | Morgan Stanley / Citigroup | CME / Globex | FX future | 2012-06-06 | Not available | U.S. (EST) | CME Globex: 6E | 1,24460 | 144 | EUR | USD | BUY | 18 000 000,00 | 22 402 800,00 | 2012-06-18 | | | | | | | | | |
| Gregor L. McIntosh | 10013447 | Morgan Stanley / Citigroup | CME / Globex | FX future | 2012-06-06 | Not available | U.S. (EST) | CME Globex: 6E | 1,24575 | 144 | EUR | USD | SELL | 18 000 000,00 | 22 423 500,00 | 2012-09-17 | 103 | 0,00115 | 0,46785% | 0,58471% | -0,11686% | 1,24418 | -0,0001 | 16,7 | 0,13% |
| Gregor L. McIntosh | 10013447 | Morgan Stanley | CME / Globex | FX future | 2012-12-13 | Not available | U.S. (EST) | CME Globex: 6E | 1,30820 | 450 | EUR | USD | BUY | 56 250 000,00 | 73 586 250,00 | 2012-12-17 | | | | | | | | | |
| Gregor L. McIntosh | 10013447 | Morgan Stanley | CME / Globex | FX future | 2012-12-13 | Not available | U.S. (EST) | CME Globex: 6E | 1,30935 | 450 | EUR | USD | SELL | 56 250 000,00 | 73 650 937,50 | 2013-03-18 | 95 | 0,00115 | 0,30800% | 0,12214% | 0,18586% | 1,30884 | -0,0001 | 6,1 | 0,05% |

(1) Source : www.global-rates.com (historical interbank interest rates).
(2) Fair value equals the trade rate of the nearby expiring FX future plus or minus the net differential in daily 3 month interbank benchmark interest rates (negative or positive carry) for the number of days between the trade and settlement dates of the later expiring FX future.