**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE FOREIGN EXCHANGE BENCHMARK RATES ANTITRUST LITIGATION | No. 1:13-cv-07789-LGS |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER APPROVING DISTRIBUTION OF THE NET SETTLEMENT FUND**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.    THE SETTLEMENTS' RECOVERY WAS AN EXCELLENT RESULT FOR THE SETTLEMENT CLASSES ............................................................................... 1

II.   DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ................................ 2

       A.    The Reserve ................................................................................................. 3

       B.    Forfeited Funds ............................................................................................ 5

       C.    Interest Earned on the Settlement Fund ..................................................... 6

       D.    Disbursement of Interest Generated by the Settlement Fund ................... 7

            1.    The Court Has Authority to Award Litigation Expenses to Class Counsel from the Settlement Fund ............................................. 7

            2.    The Equities Weigh in Favor of Class Counsel's Request ......................... 8

III.   SETTLEMENT FUND ACCOUNTING ................................................................... 11

IV.   DISTRIBUTION PLAN ............................................................................................ 13

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................................................8
    Rule 23(b)(3) .........................................................................................................................9
    Rule 23(c)(4) .........................................................................................................................9

**OTHER AUTHORITIES**

John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries are Mostly Less than Single Damages*, 100 IOWA L. REV. 1997 (2015) ..........................................2

**PRELIMINARY STATEMENT**

The Court's April 5, 2024 Orders (ECF Nos. 2089 and 2090) ("Sixth Distribution Orders") approved Epiq Class Action & Claims Solutions, Inc.'s ("Epiq") administrative determinations on all 108,746 claims submitted in this claims administration. The Sixth Distribution Orders also barred any new claims and modifications to existing claims as of October 13, 2023. The appellate periods having now run on the Court's orders approving all of Epiq's claim determinations, Class Counsel respectfully requests that the Court approve the proposed plan for distributing the balance of the Net Settlement Fund.[1] In addition, Class Counsel respectfully seeks Court approval to disburse part of the interest earned on the Settlement Fund to Class Counsel to defray the substantial costs we advanced when pursuing claims against Credit Suisse on behalf of the class. Accordingly, Class Counsel respectfully requests that the Court enter the accompanying Proposed Order Approving Distribution of the Net Settlement Fund.

**ARGUMENT**

**I.   THE SETTLEMENTS' RECOVERY WAS AN EXCELLENT RESULT FOR THE SETTLEMENT CLASSES**

The Settlements, recovering $2,310,275,000, were an excellent result for the Settlement Classes. At the time the Settlements were submitted for final approval, they represented the third largest antitrust class action settlement in U.S. legal history. Class Counsel estimated that damages for the period within the statute of limitations (December 1, 2007 to December 31, 2013, the "operative class period")[2] were $5.4 billion to $7 billion and that the recovery represented 33-43% of estimated single damages. ECF No. 925 at 17.

---

[1]   Unless otherwise defined, all initial capitalized terms have the same meanings as set forth in the Stipulations of Settlement. ECF Nos. 481-1-481-15.

[2]   ECF No. 661 at 34.

Based on the volume of claims, Class Counsel estimates that Authorized Claims will receive full compensation for single damages for the operative class period, even after deducting attorneys' fees and expenses, the costs of providing notice of the Settlements to the Settlement Classes, and claims administration expenses. This is a tremendous result compared to the average recovery in private antitrust cases of 19% of single damages. John M. Connor & Robert H. Lande, *Not Treble Damages: Cartel Recoveries are Mostly Less than Single Damages*, 100 IOWA L. REV. 1997 (2015) (finding for private U.S. cartel cases between 1990 and 2014, weighing settlements according to size of market; figures not net of fees, costs, and expenses).

## II.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

A total of 108,746 claims were submitted in this claims administration. Of those, Epiq (fully) rejected 56,755 claims ("Unauthorized Claims") and accepted (in full or in part) 51,991 claims ("Authorized Claims"). *See* Declaration of Loree Kovach in Support of Plaintiffs' Motion for Entry of an Order Approving Distribution of the Net Settlement Fund, filed herewith ("Kovach Decl."), ¶6.

The Plan of Distribution included three payment levels: *De Minimis* ($15), Automatic ($150), and *Pro Rata* (>$150). The following table shows the number of Authorized Claims included in each of these categories.

| Number of Claims | Category |
|---|---|
| 17,926 | *De Minimis* Claims |
| 14,841 | Automatic Claims |
| 19,224 | *Pro Rata* Claims |

Kovach Decl., ¶¶8, 13. The *De Minimis* and Automatic pay feature of the Plan of Distribution simplified the claims administration process with respect to these claims and saved claims administration resources and costs associated with valuing and paying such claims. Authorized Claims meeting certain value thresholds were assigned to the *De Mimimis* and Automatic payment

2

levels, and, following Court approval, these claims were paid in full. Accordingly, these claims are fully resolved.

The 19,224 *Pro Rata* Authorized Claims were not paid in full but were subject to a holdback of funds (the "Reserve"). Kovach Decl., ¶13. This motion seeks the Court's authorization to pay the balance of the Net Settlement Fund to *pro rata* Authorized Claims entitled to receive additional funds. The Net Settlement Fund includes the Reserve (*see* §II.A., *infra*), Forfeited Funds (*see* §II.B., *infra*), and interest earned on the investment of the settlement fund (*see* §II.C., *infra*) – less all claims administration expenses and notice costs, attorneys' fees and expenses, Taxes and Tax Expenses, and any other costs, expenses, and fees authorized by the Court (*see* §II.D., *infra*).

### A.  The Reserve

Due to the complexity of the claims administration process, Authorized Claims were paid in six separate distributions, each of which was approved by the Court. *See* ECF Nos. 1230, 1633, 1698, 1951, 2068, 2090 (the "Distribution Orders"). The six distributions and number of claims approved in each are listed below.

| Number of Claims | Category |
|---|---|
| 26,937 | Authorized Claims in Initial Distribution[3] |
| 23,019 | Option 1 |
| 3,918 | Option 2 |
| 22,904 | Authorized Claims in Second Distribution[4] |
| 6,882 | Option 1 |
| 16,022 | Option 2 |

---

[3]  106 claims from the Initial Distribution were ultimately either paid in a different distribution or became ineligible for payment due to the request of the claimant or upon further examination of the claim by Epiq.

[4]  21 claims from the Second Distribution were ultimately either paid in a different distribution or became ineligible for payment due to the request of the claimant or upon further examination of the claim by Epiq.

3

| Number of Claims | Category |
|---|---|
| 2,031 | Authorized Claims in Third Distribution[5] |
| 172 | Option 1 |
| 1,859 | Option 2 |
| 160 | Authorized Claims in Fourth Distribution |
| 40 | Option 1 |
| 120 | Option 2 |
| 98 | Authorized Claims in Fifth Distribution |
| 32 | Option 1 |
| 66 | Option 2 |
| 1 | Authorized Claims in Sixth Distribution |
| 0 | Option 1 |
| 1 | Option 2 |

Kovach Decl., ¶7.

In general, the smaller, simpler claims were paid in the earlier distribution rounds. For example, the First Distribution included only Option 1 claims and *De Minimis* and Automatic Option 2 claims.[6] Larger, more complex claims were paid later, as many of these claims were subject to additional fidelity checks and audit processes.

In order to pay claims in the earlier distribution rounds before all claims had been fully processed and valued, total eligible volume for all Authorized Claims ("settlement-wide eligible volume") had to be estimated. Class Counsel, working with our Settlement Experts at Ankura and Velador, estimated settlement-wide eligible volume using base, optimistic, and conservative cases. Authorized Claims were valued based on the conservative case estimate of settlement-wide eligible volume. Authorized Claims paid in the First Distribution were subject to a 35% holdback based on the conservative estimate of settlement-wide eligible volume. After the First

---

[5]    13 claims from the Third Distribution were ultimately either paid in a different distribution or became ineligible for payment due to the request of the claimant or upon further examination of the claim by Epiq.

[6]    The Court is respectfully referred to Plaintiffs' prior distribution motions for a description of Option 1 and Option 2 and the claims administration steps required for processing each type of claim. *See* ECF Nos. 1215, 1628, 1692, 1936, 2065, 2076.

Distribution, the conservative case changed, and Authorized Claims in the Second through Sixth Distributions were subject to a 40% holdback. These funds, totaling $767,336,080.17, constitute the Reserve. Kovach Decl., ¶¶12, 14.

### B.  Forfeited Funds

Epiq has attempted to pay each Authorized Claim; however, $14,049,720.70 in claim payments were not negotiated because checks were returned as undeliverable, checks were not cashed, wires failed, or claims were withdrawn ("Forfeited Funds"). Kovach Decl., ¶¶9, 15-16.

Pursuant to the Court's Distribution Orders, claimants entitled to a payment of less than $1,000 were issued checks. Claimants entitled to payments greater than $1,000 were given the option of receiving a check or a wire. Claimants who provided deficient wire instructions were subsequently issued checks. To avoid the accumulation of uncashed checks, the checks bore the notation, "CASH PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED BY [DATE 90 DAYS AFTER ISSUE DATE]." Distribution Orders, ¶¶3.c, 3.d.

Following issuance of the checks, Epiq performed extensive follow-up with Authorized Claimants via personalized telephone calls and emails to urge them to negotiate the checks, submit revised wire instructions, or request re-issues. Kovach Decl., ¶9. For distribution checks that were returned to Epiq as undeliverable, in addition to personalized outreach, Epiq attempted to locate new addresses by running the undeliverable addresses through the USPS National Change of Address database and, where appropriate, via Internet search techniques. *Id.* Where a new address was located, Epiq updated the database accordingly and re-issued a distribution check to the Authorized Claimant at the new address. *Id.* Subsequent re-issued distribution checks had the notation that if they were not cashed within 90 days from the issue date, their entitlement to recovery is subject to being irrevocably forfeited and the funds re-allocated to other Authorized Claimants in subsequent distributions. *Id.*, ¶10.

5

Pursuant to the Distribution Orders, claimants who did not cash their checks and/or did not provide valid wire information (including those who returned funds) were deemed to forfeit their right to payment under the Settlements and are barred from participating in future distributions. Further, the Distribution Orders provide that any forfeited funds shall be reallocated to eligible Authorized Claims in subsequent distributions. Distribution Orders, ¶3.e.

1,797 *Pro Rata* Authorized Claims are not eligible to participate in this distribution due to not negotiating and/or returning in full their first claim payments. Kovach Decl., ¶13. Accordingly, 17,427 *Pro Rata* Authorized Claims are eligible to participate in this Distribution. *Id*. Those claims are set out in Exhibit 1 of the Kovach Declaration.

### C. Interest Earned on the Settlement Fund

Class Counsel negotiated provisions in the Stipulations requiring Settling Defendants to pay the settlement funds into the Escrow Account within ten to 14 days following preliminary approval of the Settlements by the Court. Stipulations, ¶10(b). The Court preliminarily approved the Settlements on December 15, 2015 (Bank of America, Barclays, BNP Paribas, Citigroup, Goldman Sachs, JPMorgan, RBS, and UBS), September 8, 2017 (BTMU, Morgan Stanley, RBC, Société Générale, and Standard Chartered), and September 29, 2017 (Deutsche Bank). ECF Nos. 536, 866, 882.

Pursuant to the Stipulations, the settlement funds were deposited into the Escrow Account and invested exclusively in instruments backed by the full faith and credit of the United States or fully insured by the United States or an agency thereof. The proceeds of these investments were reinvested in similar instruments at their then-current market rates as they matured. Stipulations, ¶10(d). Class Counsel diligently shepherded the investment of the Settlement Fund, which generated $120,218,557 in interest, net of taxes, as of June 1, 2024.

Of the approximately $120 million interest earned by the Settlement Fund, $13,021,327 is attributable to interest earned on the attorneys' fees and expenses that the Court awarded Class Counsel in 2018 and which was paid in 2019 and 2021. By way of background, on January 12, 2018, Class Counsel moved for attorneys' fees and payment of litigation expenses incurred from the inception of the Action through December 31, 2017. ECF No. 937. On August 16, 2018, the Court entered an order reimbursing Class Counsel for $22,490,654.29 in litigation expenses. ECF No. 1115 at 4. On November 8, 2018, the Court awarded Class Counsel attorneys' fees equivalent to 13% of the Settlement Funds to be paid in stages based upon the timing of distributions to claimants. ECF No. 1140. The Court also denied Class Counsel's request for interest on their fees and expenses at that time. *See* ECF Nos. 1115, 1140. Pursuant to the Court-ordered payment schedule, Class Counsel received the first half of the attorneys' fees award in March 2019 and the second half at the end of 2021.

### D.    Disbursement of Interest Generated by the Settlement Fund

Class Counsel proposes that $107,197,230 of the interest earned, plus future interest generated by the Settlement Fund, be allocated and distributed to Authorized Claims and request that $13,021,327 of the interest be paid to Class Counsel to defray unreimbursed expenses incurred in pursuing claims against Credit Suisse on behalf of the class.

#### 1.    The Court Has Authority to Award Litigation Expenses to Class Counsel from the Settlement Fund

The Court has authority to award payment of litigation expenses to Class Counsel pursuant to ¶10(f) of the Stipulations, which provide that settlement proceeds may be used to pay for certain expenses, including, as relevant here, "any other Court approved fees and expenses." *See, e.g.*, ECF No. 481-1, ¶10(f)(i)-(v). Further, in approving each of the six prior distributions, the Court "retain[ed] jurisdiction to consider any further applications concerning the administration of the

7

Settlements" and to grant "other further relief as this Court deems appropriate." Distribution Orders, ¶4.

There is no due process or Rule 23 notice issue with awarding the requested interest to reimburse Class Counsel for litigation expenses because Class Members were advised that Class Counsel would seek an award of attorneys' fees and expenses including interest. Settlement Notice at 11-12;[7] Fee and Expense Memo, ECF No. 938 at 2; Stipulations, ¶9(a). No Class Member objected to Class Counsel's request for interest. As discussed herein, Class Counsel is limiting our request for litigation expenses to the amount of interest generated by the Settlement Fund that is attributable to the Fee and Expense Award before it was withdrawn from the fund.

### 2. The Equities Weigh in Favor of Class Counsel's Request

Class Counsel respectfully requests that the Court exercise its discretion to award a portion of the interest to defray a portion of Class Counsel's unreimbursed expenses. The equities justify granting the requested relief to Class Counsel. First, Class Counsel devoted significant time and diligently worked with the Claims Administrator and Settlement Experts throughout the claims process, which began in 2017. To date, Class Counsel has devoted thousands of hours to settlement and claims administration since December 31, 2017 (the cutoff date of Class Counsel's prior motion for attorneys' fees and expenses). The claims process was unusually lengthy and complicated due to, among other things, the hardship caused by the COVID-19 pandemic, the volume of data from Defendants and claimants that had to be cleaned and put into useable form, and the size and complexity of the claims process.

---

[7] Notice of Class Action Settlements and Proof of Claim Form, http://www.fxantitrustsettlement.com/notice (last visited July 16, 2024).

8

While overseeing the settlement process, Class Counsel continued to zealously litigate the remaining claims against Credit Suisse through a jury verdict at trial. On September 3, 2019, pursuant to Rule 23(c)(4), the Court certified two issues for class-wide treatment: (1) whether a conspiracy existed to widen spreads in the spot market, and (2) whether Credit Suisse participated in the conspiracy. ECF No. 1331 at 25. Class Counsel understood that continuing to advance the class's claims against Credit Suisse would not provide a damages award at the end, even assuming complete victory on the merits at trial. Without a damages award, there was no mechanism for Class Counsel to seek attorneys' fees and expenses as part of the judgment against Credit Suisse. Nevertheless, Class Counsel dedicated top attorneys and incurred significant litigation expenses, just as they would have done if the Court had certified a Rule 23(b)(3) damages class.

Between January 1, 2018 and November 19, 2020,[8] Class Counsel advanced litigation expenses totaling $17,624,071 as detailed below:

- Expert expenses, including the five who offered class certification and merits opinions and were deposed by Credit Suisse at each stage of the litigation, totaled $12,698,315.

- E-discovery database costs in connection with maintaining millions of pages of chats and a platform (Sandbox) for expert analysis of transaction data consisting of billions of rows of data. These costs total $2,773,212 for the e-discovery database and $1,701,452.60 for hosting the Sandbox transaction data platform.[9]

---

[8] On November 19, 2020, the Court approved notice to members of the Rule 23(c)(4) issues class (the "Litigation Class"), stating that Litigation Class members "will not owe money to Class Counsel for attorneys' fees or expenses related to the Threshold Issues trial." ECF No. 1546 (approving Notice of Certified Litigation Class, substantially in the form attached as Exhibit 2 to the Declaration of Christopher M. Burke and Michael Hausfeld, ECF No. 1509-2, at 6). Therefore, Class Counsel does not include any expenses incurred after November 19, 2020, which are considered expenses attributable to the Threshold Issues trial against Credit Suisse.

[9] On May 18, 2023, the Court authorized $2,525,564.43 in reimbursement to Class Counsel for half of the Sandbox expenses paid/incurred between January 1, 2019 and April 2023 (inclusive). ECF No. 2060. The reimbursed Sandbox expenses were attributable to settlement claims administration. The other half of the Sandbox expenses were paid out of the Litigation

9

- Foreign barristers and solicitors' expenses incurred to enforce the Court's Hague orders, which was necessary to preserve testimony of foreign nationals for trial, totaling $446,519.

- Court reporter and transcript costs totaling $1,808.

- Bank and wire fee totaling $2,765.

These expenses were incurred for the benefit of the class to improve their chances of obtaining additional recoveries from Credit Suisse, the only non-settling defendant. Under the circumstances, where Class Counsel worked for years on behalf of the class to maximize class members' opportunities in future individual actions with little prospect of compensation for that work, the equities justify awarding Class Counsel a portion of the interest earned by the Settlement Funds to defray a portion of their out-of-pocket expenses.

Granting Class Counsel's request would not unfairly prejudice the Settlement Class. In the Settlement Notice, the Class was informed that "[t]he Net Settlement Fund will be no less than $1,894,425,500 (82% of the Settlement Fund) after all costs, fees, and expenses are deducted (if such fees and expenses are approved by the Court)."[10] If the Court approves Class Counsel's request to allocate $13 million of interest to defray part of the substantial out-of-pocket expenses they advanced in litigating this action, the Net Settlement Fund going to Class Members will still exceed $2 billion (87% of the Settlement Fund), well above the threshold of 82% disclosed in the Settlement Notice. In addition, because the rest of the interest generated by the Settlement Fund exceeds total claims administration expenses, Authorized Claimants will receive more than 100%

---

Fund, which was funded by Class Counsel. This Motion seeks reimbursement of only those Sandbox expenses paid from the Litigation Fund between January 1, 2018 and November 19, 2020 totaling $1,701,452.60.

[10] Notice of Class Action Settlements and Proof of Claim Form, http://www.fxantitrustsettlement.com/notice (last visited July 16, 2024).

10

of their holdbacks. Therefore, granting the requested relief to Class Counsel will not deprive claimants of their expected share of the Settlement Fund.

Under these exceptional circumstances, the equities weigh in favor of granting Class Counsel's request.

## III.  SETTLEMENT FUND ACCOUNTING

This section provides the Court with an accounting of the Settlement Fund to date.

| Settlement Fund | |
|---|---:|
| Settlement Amount | $2,310,275,000 |
|     Interest Net of Taxes (as of 6/1/24) | $120,518,557 |
| Gross Settlement Fund | $2,430,793,557 |
| **Notice and Claims** | |
| Method of Notice: direct mail notice to class members identified by Settling Defendants; direct mail notice to brokers, give-up banks, and futures commission merchants; publication notice in The Wall Street Journal, Financial Times, FX Week, Investor's Business Daily, The New York Times (international edition), The Guardian UK, The Globe and Mail, La Presse, PR Newswire, and on the Settlement Website. | |
| Notices Mailed | 703,010 |
|     Notices Undeliverable | 98,641 |
| Claim Forms Received | 108,746 |
|     Authorized Claims | 51,991 |
|     Unauthorized Claims | 56,755 |
| Opt-Outs | 44 |
| Objections | 2 |
| **Payments to Authorized Claimants** | |
| Method of Payment: check or wire | |
| Funds Authorized to be Paid to Claimants | $1,176,482,544.07 |
| Funds Negotiated by Authorized Claimants | $1,162,432,823.37 |
| Forfeited Funds | $14,049,720.70 |
| Reserve | $767,336,080.17 |
| *Continued on next page* | |

| **Estimated Total Payments to Authorized Claimants**[11] | | |
|---|---|---|
| All Authorized Claims | | 108,746 |
| | Option 1 | Option 2 |
| Average Payment[12] | $42,000 | $49,000 |
| Median Payment | $150 | $150 |
| Largest Payment[13] | $56,000,000 | $101,000,000 |
| Smallest Payment | $15 | $15 |
| *Pro Rata* Authorized Claims | | 19,224 |
| | Option 1 | Option 2 |
| Average Payment[14] | $123,000 | $116,000 |
| Median Payment[15] | $2,000 | $2,600 |
| Largest Payment[16] | $56,000,000 | $101,000,000 |
| Smallest Payment[17] | $150 | $170 |
| **Fees, Costs, and Expenses**[18] | | |
| Attorneys' Fees Awarded (through 12/31/17) | | $300,335,750.00 (12%) |
| Litigation Expenses Awarded (incurred through 12/31/17) | | $22,490,654.29 (<0.01%) |
| Additional Litigation Expenses Requested (incurred from 1/1/18 – 11/19/20) | | $13,021,327.00 (<0.01%) |
| Notice and Claims Administration Costs (incurred through 7/1/2024) | | $45,550,391.92 (<0.02%) |
| Plaintiff Service Awards | | $0 (0%) |

---

[11] This section estimates full, final payments to all Authorized Claimants; figures are rounded. The estimates are based on numerous assumptions, including but not limited to, the amount of interest net of taxes generated by the Settlement Fund; that interest will be distributed on a *pro rata* basis; and the total amount of fees, costs, and expenses paid from the Settlement Fund. Changes in these and other components of the estimate will impact this analysis.

[12] Rounded to nearest $1,000.

[13] Rounded to nearest $1,000,000.

[14] Rounded to nearest $1,000.

[15] Rounded to nearest $100.

[16] Rounded to nearest $1,000,000.

[17] Rounded to nearest $10.

[18] Numbers in parentheses are as a percentage of the Gross Settlement Fund as of June 1, 2024.

## IV.   DISTRIBUTION PLAN

This section describes Class Counsel's proposed distribution plan for the balance of the Net Settlement Fund ("Distribution Plan").  This Distribution Plan is also set out in the accompanying Proposed Order.

**Identification of Claimants.**  The balance of the Net Settlement Fund will be paid to the *Pro Rata* Authorized Claims that negotiated their first payment and are listed in Ex. 1 of the Kovach Declaration.[19]  *De Minimis* and Automatic Authorized Claims have been paid in full and are therefore not entitled to any further claim payments.  In addition, all Authorized Claims who failed to negotiate their first payment and/or returned their first payment in full to the settlement fund are also not eligible to receive any further payments pursuant to the Distribution Orders.  For completeness, Unauthorized Claims (those rejected in full by Epiq) are likewise ineligible to receive any payments from the Settlements.

**Initial Distribution of the Net Settlement Fund.** Class Counsel proposes to distribute the Net Settlement Fund in two (or more) rounds of distributions.  Class Counsel has met and conferred with a claimant who we understand is considering filing an objection to Class Counsel's proposal to allocate *pro rata* the interest generated by the investment of the Settlement Funds.  To the extent this class member objects, Class Counsel will address the objection on reply.  Because funds cannot be clawed back once distributed, Class Counsel requires finality as to the methodology for allocating the interest before distributing this portion of the Net Settlement Fund.

---

[19]    As discussed below, for each distribution, Epiq will eliminate any Authorized Claim whose *pro rata* share calculates to less than $10.00. Such "*de minimis*" amounts are regularly established to promote cost-effective distributions and to avoid incurring costs that surpass the amounts paid to claimants.  372 claims with a scheduled payment less than $10 are excluded from the Reserve Distribution.  These claims account for approximately $456 of funds that will be redistributed.

13

Therefore, Class Counsel proposes that the initial distribution will be of the Reserve only. As discussed above, the claimants paid in the First Distribution were subject to a 35% holdback, and those in the Second through Sixth Distributions were subject to a 40% holdback. Claimants will be paid the holdback amounts specific to their claims.

**Subsequent Distributions of the Net Settlement Fund.**  Once there is finality on the methodology for allocating interest, Class Counsel will distribute the interest in one or more subsequent distributions to eligible Authorized Claims. These rounds of distribution will also reallocate all Forfeited Funds on a *pro rata* basis (calculated by multiplying each claimant's fraction of settlement-wide eligible volume by the amount of Forfeited Funds). Put simply, an Authorized Claim's fraction of settlement-wide eligible volume will be multiplied by the balance of the Net Settlement Fund (including Forfeited Funds and interest) to arrive at an ultimate payment amount.

**How Payments Will Be Made.**  For each distribution of the balance of the Net Settlement Fund, Epiq will eliminate from distribution any Authorized Claim whose *pro rata* share calculates to less than $10.00. Claimants entitled to a payment of less than $1,000 will receive a check. Kovach Decl., ¶17.e.; Proposed Order, ¶3.e.iv. Claimants entitled to a payment greater than $1,000 will have the option of receiving a check or a wire. *Id*. Claimants who provide deficient wire instructions will be sent a check. *Id*.

To avoid the accumulation of uncashed checks, the checks will bear the notation "CASH PROMPTLY; VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED BY [DATE 90 DAYS AFTER ISSUE DATE]." Kovach Decl., ¶17.f.; Proposed Order, ¶3.e.v. Epiq will also communicate with Authorized Claims holding uncashed checks as the 90-day period closes. Kovach Decl., ¶17.g. Authorized Claims who have not cashed their distribution checks or

14

have not provided valid wire information will forfeit their right to payment and will not be permitted to participate in future distributions. Any Forfeited Funds will be allocated to Authorized Claims in subsequent distributions. Kovach Decl., ¶17.j.; Proposed Order, ¶3.e.vi.

## CONCLUSION

For the foregoing reasons, Class Counsel requests that the Court enter the accompanying Proposed Order Approving the Distribution Plan for the Net Settlement Fund and awarding Class Counsel trial expenses.

Dated: July 19, 2024                                                                Respectfully submitted,

**KOREIN TILLERY P.C.**                                                **HAUSFELD LLP**

*s/ Christopher M. Burke*                                              *s/ Michael D. Hausfeld*
CHRISTOPHER M. BURKE                                         MICHAEL D. HAUSFELD
401 West A Street, Suite 1430                                     REENA A. GAMBHIR
San Diego, CA 92101                                                   TIMOTHY S. KEARNS
Tel: (619) 6225-5620                                                     SARAH R. LAFRENIERE
cburke@koreintillery.com                                            888 16th Street NW, Suite 300
                                                                                     Washington, DC 20006
-and-                                                                            Telephone: 202-540-7143
                                                                                     Facsimile:  202-540-7201
**SCOTT+SCOTT**                                                        mhausfeld@hausfeld.com
**ATTORNEYS AT LAW LLP**                                    rgambhir@hausfeld.com
                                                                                     tkearns@hausfeld.com
*s/ Kristen M. Anderson*                                              slafreniere@hausfeld.com
KRISTEN M. ANDERSON (*pro hac vice*)
DAVID R. SCOTT (DS-8053)                                       -and-
JOSEPH P. GUGLIELMO (JG-2447)
DONALD A. BROGGI (DB-9661)                                **HAUSFELD LLP**
The Helmsley Building
230 Park Avenue, 17th Floor                                       MICHAEL P. LEHMANN
New York, NY 10169                                                   CHRISTOPHER L. LEBSOCK
Telephone: 212-223-6444                                            600 Montgomery Street, Suite 3200
Facsimile:  212-223-6334                                            San Francisco, CA 94111
kanderson@scott-scott.com                                         Telephone: 415-633-1908
david.scott@scott-scott.com                                        Facsimile:  415-358-4980
jguglielmo@scott-scott.com                                        mlehmann@hausfeld.com
dbroggi@scott-scott.com                                             clebsock@hausfeld.com

*Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

                                 *s/ Christopher M. Burke*
                                 CHRISTOPHER M. BURKE